# EXHIBIT 2

## (PART I)

Vol. I
pgs. 1-15

No. 102923

Pate III
Bolers
EXAMINER IN CHIEF

ADVERSE **INTERFERENCE**

DISTRIBUTED     SEP 23 1996



Butterfield et al PN 5,002,0

V.

Melchior SN 07/576,45

Variable Camshaft Timing For
Internal Combustion Engine

Group 3402

Exhibit 2 page 1

PTO-257

Date

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE     **FYI**

BEFORE THE BOARD OF PATENT APPEALS     JUL 10 1992
AND INTERFERENCES

RECEIVED IN
BOX INTERFERENCE

| | |
|---|---|
| Jean F. Melchior ) | |
| ) | |
| Senior Party ) | |
| ) | Interference No. 102,923 |
| v. ) | |
| ) | Examiner of Interference: |
| Roger Butterfield et al. ) | James R. Boler |
| ) | |
| Junior Party ) | |

Honorable Commissioner of
    Patents and Trademarks
Box Interference
Washington, D.C.  20231

### DESIGNATION OF LEAD ATTORNEY
#### UNDER 37 CFR 1.613

Sir:

    Roger P. Butterfield et al., Junior Party herein,

hereby designates as its lead attorney:

> Thomas A. Meehan
> WILLIAN BRINKS OLDS
>   HOFER GILSON & LIONE
> 1130 Edison Plaza
> Toledo, Ohio  43604-1537
> Telephone: (419) 244-6578
> Facsimile: (419) 244-8862

    Mr. Meehan's Registration Number is 19713.

> Respectfully Submitted
>
> ROGER P. BUTTERFIELD, et al.
>
>
> By  _Greg Dziegielewski_
> Greg Dziegielewski
> Registration Number 28,073

Exhibit 2 page 2

#14
FYI

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE    SEP 28 1992
BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

RECEIVED IN
BOX INTERFERENCE

Butterfield et al,              )
                                )
              Junior Party,     )
                                )
v.                              )    Interference No. 102,923
                                )
Melchior,                       )    Examiner-in-Chief James R. Boler
                                )
              Senior Party.     )
_____/

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing MOTION
FOR JUDGMENT BY SENIOR PARTY UNDER 37 CFR 1.633(a), SENIOR
PARTY'S PRELIMINARY MOTION UNDER 37 CFR 1.633(c) TO REDEFINE
INTERFERING SUBJECT MATTER and SENIOR PARTY'S PRELIMINARY MOTION
FOR BENEFIT PURSUANT TO 37 CFR 1.633(f) were sent by Federal
Express, postage prepaid, on this 25th day of September, 1992,
to the following:  Thomas A. Meehan, Esq., WILLIAN BRINKS OLDS
HOFER GILSON & LIONE, 1130 Edison Plaza, Toledo, Ohio 43604-
1537 and Greg Dziegielewski, Esq., BORG-WARNER AUTOMOTIVE, INC.,
6700 18-½ Mile Road, P.O. Box 8022, Sterling Hgts., Michigan
48311-8022.

Robert C. Collins
Registration No. 27,430
BARNES, KISSELLE, RAISCH, CHOATE,
WHITTEMORE & HULBERT, P.C.
3500 Penobscot Building
Detroit, Michigan 48226
(313) 962-4790

WJW/RCC/dap
[DAP-43/RCC]

CERTIFICATE OF MAILING (37 CFR 1.8a)

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with
the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope
addressed to the: Commissioner of Patents and Trademarks, Washington, D.C. 20231.

                                    Denise Sinnhuber
                                    (Type or print name of person mailing paper)

Date: Sept. 25, 1992
                                    Denise Sinnhuber
                                    (Signature of person mailing paper)

Exhibit 2 page 3

FYI

#16 SEP 28 1992

RECEIVED IN
BOX INTERFERENCE

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

Butterfield et al,                )
                                   )
            Junior Party,          )
                                   )    Interference No. 102,923
v.                                 )
                                   )    Examiner-in-Chief James R. Boler
Melchior,                          )
                                   )
            Senior Party.          )
_____/

### SENIOR PARTY'S PRELIMINARY MOTION UNDER
### 37 CFR 1.633(c) TO REDEFINE INTERFERING SUBJECT MATTER

Senior Party in the above-identified Interference hereby moves pursuant to 37 CFR 1.633(c) and 1.637(c) to redefine the interfering subject matter by (1) adding or substituting a new Count for the single Count of the Interference as originally defined, and (2) modifying the designation of claims in Senior Party's application and Junior Party's patent as to correspondence with both the present Count and the proposed additional/substitute Count.

Reference is made to Senior Party's concurrent Motion for Judgment under 37 CFR 1.633(a) that claims 1 and 4 of Junior Party's patent are unpatentable over Garcea 3,721,220, and to

---

**CERTIFICATE OF MAILING (37 CFR 1.8a)**

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the: Commissioner of Patents and Trademarks, Washington, D.C. 20231.

Denise Sinnhuber
(Type or print name of person mailing paper)

Date: Sept. 25, 1992

Denise Sinnhuber
(Signature of person mailing paper)

Exhibit 2 page 4

Senior Party's concurrent Motion for benefit under 37 CFR 1.633(f) relative to the new Count proposed herein to be added or substituted.

## Proposal for New Count

Senior Party's concurrent Motion for Judgment demonstrates that claim 1 of Junior Party's patent, identical to Count I of the Interference as originally defined, is unpatentable over Garcea 3,721,220. However, the bases for unpatentability do not apply to all interfering subject matter in the present Interference. Senior Party therefore proposes the following Count, to be added to the Interference as new Count II, or to be substituted for current Count I in view of unpatentability of claims corresponding thereto:

### Proposed Count II

In an internal combustion engine having a crankshaft, at least one camshaft, the at least one camshaft being position variable relative to the crankshaft and being subject to torque reversals, the method comprising:

providing oppositely acting first and second hydraulic means for varying the position of the at least one camshaft;

varying the position of the at least one camshaft relative to the crankshaft by transferring hydraulic fluid from one of the first and second hydraulic means to the other of the first and second hydraulic means; and

actuating the first and second hydraulic means for varying the position of the at least one camshaft relative to the crankshaft in reaction to torque reversals in the at least one camshaft.

-2-

Exhibit 2 page 5

The proposed Count II is identical to claim 54 in Senior Party's application, and to claim 2 in Junior Party's patent.

Claim 54 of Senior Party's patent (identical to proposed Count II) patentably distinguishes over Garcea '220 in at least two respects - i.e., (1) Garcea does not disclose oppositely acting first and second hydraulic means for varying the position of the at least one camshaft, and (2) there are no means in Garcea for transferring hydraulic fluid from one to the other of the first and second hydraulic means. Bruss et al 4,627,825 (copy enclosed) does disclose oppositely acting first and second hydraulic means in the form of the hydraulic actuated pistons 25, which are positively displaced by hydraulic fluid in opposite directions in their respective cylinders. Bruss also discloses a three-position valving control arrangement that is effective to pressurize one of the two piston cylinders while venting the other of oil to a return sump 22, and that has an intermediate position wherein the cylinders are unvented and hydraulically locked or blocked from movement. However, Bruss does not disclose or suggest any means for transferring hydraulic fluid from one of the two cylinders to the other of the two cylinders for any purpose, let alone for the purpose of varying the position of the camshaft relative to the crankshaft. Accordingly, it is submitted that Senior Party's claim 54 (identical to proposed Count II) is patentable over the art of record.

-3-

Exhibit 2 page 6

Proposed Count II, identical to Senior Party's claim 54, reads on and is supported by Senior Party's application as follows:

> In an internal combustion engine (p. 1, lines 19-23; p. 3, lines 15-18; p. 17, lines 14-24: claims 10 and 17) having a crankshaft (p. 17, line 17), at least one camshaft (1), the at least one camshaft (1) being position variable relative to the crankshaft and being subject to torque reversals (p. 1, lines 23-27; p. 2, lines 1-4; p. 4, lines 26-27, p. 5, lines 2-27; p. 6, lines 1-6), the method comprising:
>
> providing oppositely acting first (13,32) and second (14,33) hydraulic means for varying the position of the at least one camshaft (1);
>
> varying the position of the at least one camshaft (1) relative to the crankshaft by transferring (18,19) hydraulic fluid from one (13,32) of the first and second hydraulic means to the other (14,33) of the first and second hydraulic means; and
>
> actuating (operating distributing means 22) the first and second hydraulic means for varying the position of the at least one camshaft relative to the crankshaft in reaction to torque reversals in the at least one camshaft.

Proposed Count II is identical to claim 2 of the Junior Party's patent.

Claims 54-55 and 57-58 of Senior Party's application, and claims 2-3 and 5-6 of Junior Party's patent, correspond to proposed Count II.

-4-

Exhibit 2 page 7

**Designation of Claims Corresponding to the Counts**

Senior Party moves pursuant to 37 CFR 1.633(c)(3) and (4) to redesignate the claims in Senior Party's application and Junior Party's patent relative to correspondence with the Counts.

Claim 53 of Senior Party's application and claim 1 of Junior Party's patent are identical to Count I. Claim 56 of Senior Party's application and claim 4 of Junior Party's patent are method claims that are essentially identical in substance to respective claims 53 and 1, and therefore correspond to Count I.

Claims 54-55 and 57-58 of Senior Party's application, and claims 2-3 and 5-6 of Junior Party's patent, patentably define over Count I as noted above, and therefore should be designated as not corresponding to Count I. Rather, claims 54-55 and 57-58 of Senior Party's application, and claims 2-3 and 5-6 of Junior Party's patent, should be designated as corresponding to new/substitute Count II proposed above.

————————————

Wherefore, Senior Party moves that new Count II proposed hereinabove be either added to or substituted for current Count I, and that the Party's claims be designated as

-5-

Exhibit 2 page 8

corresponding to Counts I and II as follows:  Present Count I, Senior Party claims 53 and 56, Junior Party claims 1 and 4; New Count II, Senior Party claims 54-55 and 57-58, Junior Party claims 2-3 and 5-6.

Respectfully submitted,

BARNES, KISSELLE, RAISCH, CHOATE, WHITTEMORE & HULBERT, P.C.

By: _____
Robert C. Collins
Registration No. 27,430
Telephone (313) 962-4790

WJW/RCC/dap

[DAP-43/RCC]

-6-

Exhibit 2 page 9

# United States Patent [19]

## Bruss et al.

| | |
|---|---|
| [11] | Patent Number: **4,627,825** |
| [45] | Date of Patent: **Dec. 9, 1986** |

[54] **APPARATUS FOR THE ANGULAR ADJUSTMENT OF A SHAFT, SUCH AS A CAMSHAFT, WITH RESPECT TO A DRIVE WHEEL**

[75] Inventors: Karl-Heinz Bruss, Monchen-Gladbach; Hans Baumgartner, Viersen, both of Fed. Rep. of Germany

[73] Assignee: Pierburg GmbH & Co. KG, Neuss, Fed. Rep. of Germany

[21] Appl. No.: 728,318

[22] Filed: Apr. 29, 1985

[30] **Foreign Application Priority Data**

Apr. 28, 1984 [DE] Fed. Rep. of Germany ....... 3415861

[51] Int. Cl.⁴ .......................... F01L 1/34; F16D 3/10
[52] U.S. Cl. ........................................ 464/2; 123/90.15; 123/90.17; 123/90.12
[58] Field of Search ............... 123/90.15, 90.16, 90.17, 123/90.12; 464/2

[56] **References Cited**

**U.S. PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| 2,191,459 | 2/1940 | Duncan | 123/90.17 |
| 3,685,499 | 8/1972 | Meacham et al. | 123/90.15 |
| ~~3,921,228~~ | 3/1973 | Gances | 123/90.15 |
| 4,481,912 | 11/1984 | Stwiorok et al. | 123/90.15 |
| 4,494,495 | 1/1985 | Nakamura et al. | 123/90.15 |
| 4,498,431 | 2/1985 | Nakamura et al. | 123/90.17 |
| 4,535,731 | 8/1985 | Banfi | 123/90.17 |
| 4,561,390 | 12/1985 | Nakamura et al. | 123/90.15 |

**FOREIGN PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| 1081718 | 5/1960 | Fed. Rep. of Germany . | |
| 1947362 | 4/1971 | Fed. Rep. of Germany . | |
| 2525746 | 6/1974 | Fed. Rep. of Germany ... | 123/90.15 |
| 375951 | 10/1939 | Italy | 123/90.15 |
| 1413099 | 11/1975 | United Kingdom . | |

*Primary Examiner*—Ira S. Lazarus
*Attorney, Agent, or Firm*—Roberts, Spiecens & Cohen

[57] **ABSTRACT**

Apparatus for the angular displacement of a shaft, such as a camshaft, with respect to a drive wheel comprising a coupling having opposed cylinders by which an active relative displacement can be effected in opposite directions. The position of the shaft and of the drive wheel is determined by pulse transmitters and sensors and is evaluated in an electronic circuit for the determination of the angular displacement and its control.

**25 Claims, 8 Drawing Figures**



Exhibit 2 page 10



FIG.1

FIG.2

Exhibit 2 page 11



FIG.3

FIG.4

FIG.6

FIG.5

Exhibit 2 page 12



FIG. 7

FIG 8

Exhibit 2 page 13

4,627,825

1

# APPARATUS FOR THE ANGULAR ADJUSTMENT OF A SHAFT, SUCH AS A CAMSHAFT, WITH RESPECT TO A DRIVE WHEEL

## DESCRIPTION OF PRIOR ART

European Patent Application No. 0 069 868 discloses apparatus for the angular adjustment of a camshaft with respect to a drive wheel.

By means of this apparatus, the angular adjustment is obtained as a function of speed of rotation and load for controlling the operation of an internal combustion engine. A reference-angle position and angular rotation of the engine crankshaft which is connected to the drive wheel are detected by pulse transmitters and sensors and the signals produced are processed to form a setting-value signal.

This setting-value signal is fed to a setting device which can be driven by a plurality of drive motors and whose position is indicated as an actual-value signal by a gang potentiometer. This device is very expensive and of complicated construction and requires the availability of considerable setting power. Furthermore, the detection of the actual-value appears to be too inaccurate since the actual value is not indicated directly by the camshaft.

German Application OS No. 20 32 581 discloses apparatus for changing valve timing in which the camshaft is automatically set back for low power of the engine and set forward at higher power. For this purpose, a coupling device includes two pistons acted on by engine pressure oil within cylindrical bores. The pistons act in the same direction and are intended to produce an angular displacement. However, no means are disclosed for the resetting of this displacement, aside from possible resetting due to emergence of oil between the piston and the cylinder, whereby active displacement is possible only in one direction.

## SUMMARY OF THE INVENTION

An object of this invention is to provide apparatus of the aforesaid type in which active displacement in opposite directions is possible, while the mechanical expenditure and complexity is minimized. In addition, a very precise recognition or control of the angular displacement is made possible.

In accordance with the above and further objects of the invention, there is provided apparatus for the relative angular displacement of a shaft and a drive wheel for the shaft comprising hydraulic means including at least one pair of hydraulic cylinders disposed in radial opposition in the shaft and including respective pistons which are displaceable in opposite directions in the cylinders. A three position valve means controls the flow of pressure fluid to the hydraulic cylinders for controlling relative angular displacement between the shaft and drive wheel. The three position valve means has first and second end positions and an intermediate position, and in each end position a respective cylinder is pressurized while the other cylinder is vented to effect relative angular displacement selectively in opposite directions. In the intermediate position, the cylinders are unvented and are blocked from movement.

In further accordance with the invention, the three position valve means may be directly actuated to its respective positions electromagnetically or pneumatically or in an alternative embodiment the venting of the

2

cylinders can be controlled by electrically actuated valves.

According to a feature of the invention, the relative angular displacement between the shaft and the drive wheel is effected by balls disposed in the cylinders in contact with the pistons in the cylinders, said balls bearing against inclined surfaces of the drive wheel such that upon displacement of the pistons, the outwardly displaced ball will act on the respective inclined surface of the drive wheel to apply a force which has a component acting tangentially relative to the shaft so as to displace the drive wheel angularly with respect to the shaft.

In further accordance with the invention, the relative angular positions of the drive wheel and shaft are sensed during rotation thereof and means are provided responsive to the sensed relative angular positions of the drive wheel and shaft for producing signals for adjusting the relative angular positions. The sensing means comprises sensors respectively associated with the shaft and drive wheel, pluse transmitters respectively coupled to the shaft and drive wheel for periodically activating the sensors during each rotation thereof, counters connected to the sensors for producing signals indicative of the relative angular positions of the drive wheel and shaft and means receiving the signals from the counters for adjusting the relative angular position between the shaft and drive wheel.

By the invention there has been created a device of diversified use for controlling a coupling device which is of very simple mechanical and hydraulic construction. By the use of pulse transmitters arranged directly on the coupling member, i.e. the shaft and drive wheel, accurate detection of the displacement angle is made possible. By digitally handling the counted reference signals which characterize the angular displacement and the counted actual-value signals, a relationship is established with a stored characteristic-control without any need for analog to digital conversion. The relative angular displacement can be effected in either direction without need for high displacement power.

## BRIEF DESCRIPTION OF THE FIGURES OF THE DRAWING

Several embodiments of the invention are shown in the drawing and will be described hereafter.

FIG. 1 shows one embodiment according to the invention, of a coupling device in side elevation, and partly in cross section.

FIG. 2 is a transverse cross section through the shaft and drive wheel of the embodiment in FIG. 1.

FIGS. 3, 4 and 5 are partial cross sections of the apparatus showing variations of the embodiment of FIG. 1.

FIG. 6 is a sectional view of a detail of an interlock of the apparatus.

FIG. 7 is a schematic block diagram of a circuit for the detection and control of the angular displacement of the coupling members.

FIG. 8 is a schematic block diagram of an alternative embodiment of the circuit.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

FIG. 1 shows apparatus of the invention which comprises a bearing bracket 1 having two bearings 2, 3 receiving a shaft 6 formed by two shaft parts 4, 5. A centering pin 7 on the part 4 simultaneously forms a

Exhibit 2 page 14

4,627,825

3

journal shaft for a drive wheel 10 having teeth 9 as well as a centering pin for part 5. The shaft part 4 is provided, in the region of the bearing 2, with two circumferential grooves 11, 12 which are aligned with and in communication with boreholes 13, 14 in the bearing bracket 1. The grooves 11 and 12 open into the bearing 2. Each of the boreholes 13, 14 is connected via separate throttles 15 to a delivery conduit 16 of an oil pump 17. The boreholes 13, 14 are connected to respective boreholes 18, 19 whose communication with an oil reservoir 22 is controlled by respective electrically actuatable valves 20, 21.

Each of the grooves 11, 12 extends to a respective borehole 23, 24 which in turn extend to corresponding cylinders 26, 27 symmetrically arranged on shaft 6 in diametric opposition. Each cylinder, as best seen from FIG. 2 slidably receives a piston 25. A transverse borehole 28 connects the boreholes 23, 24 and receives a slide 29 which is spring-loaded at both ends and blocks communication of the boreholes 23, 24 and the cylinders 26, 27 when equal pressures prevail in the boreholes 23, 24. The end surfaces 30, 31 of the slide 29 are subjected, in each case, via a respective conduit 32 to the pressure prevailing at the boreholes 23, 24 respectively.

In this way, when unequal pressure exists in the boreholes 23, 24, i.e. when one of the valves 20, 21 is open to vent the associated cylinder to the reservoir 22, the slide 29 is pushed into the borehole which has then been relieved of pressure so that the cross sections of the boreholes 23, 24 are open and oil can flow into one of the cylinders 26, 27 and out of the other. In this way, there is obtained a corresponding opposite displacement of the pistons 25, one of which pistons is pushed out of the pressurized cylinder against a ball 33. As seen in FIG. 2 each cylinder contains a respective piston and ball. Each ball faces an inclined surface 34 of the drive wheel 10 and rests against a surface 35 of the cylinder in the shaft. When the piston 25 acts to press the associated ball 33 outwardly, the ball exerts bearing force against inclined surface 34, to produce reaction force on surface 35 extending tangentially to the shaft 6 to cause angular displacement of shaft 6 relative to drive wheel 10. The angular displacement can be effected in opposite directions due to the diametrically opposed and symmetrically arranged cylinders 26, 27. In this way, relative angular adjustment can be made between the shaft 6 and drive wheel 10 in opposite directions without interfering with the angular drive of shaft 6 from drive wheel 10.

The shaft 6 and the drive wheel 10 are coupled to pulse transmitters 36, 38 each of which is arranged at the outer circumferences thereof and the transmitters 36, 38 act on sensors 37, 39 secured to the bearing bracket 1.

FIG. 3 shows a variant of the apparatus in FIG. 1 and identical parts having the same reference numerals will not be discussed in detail.

In FIG. 3, shaft part 40, which corresponds to the shaft part 4 of the apparatus of FIG. 1, is supported on a bearing 41.

The shaft part 40 has a central axial bore 42 which receives a bushing 43 in which a slide 44 is mounted for axial displacement by a setting or actuating member 46 which is fixedly secured in a cover cap 45. The slide 44 is displaced by setting member 46 through a rod 47 inserted into the slide 44. Displacement of the slide takes place against the force of two springs 48, 49 so

4

that three defined positions of the slide can be obtained. These positions are a center position as shown in FIG. 3 and opposite end positions as shown in FIGS. 4 and 5. The slide 44 has separated cylindrical sections 52, 53 formed by cutouts 50, 51, which act on control boreholes 54, 55 in the bushing 43 connected via outer annular grooves 56, 57 in the bushing 43 with boreholes 23, 24 which lead to the cylinders 26, 27. The space 58 which is formed by the cutout 50 between the cylinder sections 52, 53 is in communication, via a bore 59 and annular groove 60 in the bushing 43, with a relief borehole 61 which opens at the end of the shaft part 40 into the space within the cover cap 45.

In the region of the bearing 41, the shaft part 40 has a groove 62 which is connected to a borehole 63 which is in communication with the pump so that oil can flow via the groove 62 and transverse boreholes 64, 65 and via a longitudinal borehole 66 in the shaft part 50 to chambers 67, 68 formed between slide 44 and bushing 43 on the one hand, and slide 44 and the bottom of the borehole 42 on the other hand to place said chambers under pressure.

In the position of the slide shown in FIG. 3, the cylinder sections 52, 53 close the control boreholes 54, 55 so that no oil can flow into or out of the cylinders. The same condition thus exists as obtained by the slide 29 in FIG. 1.

In FIG. 4, the slide 44 is in an end position in which oil can flow from chamber 68 into the control borehole 55 and from there to the cylinder 27 while at the same time oil can flow out of the cylinder 26 since the cylinder sections 52, 53 have exposed the control boreholes 54, 55. The oil flowing out of the cylinder 26 via the control borehole 54 and the space 58 into the relief borehole 61 discharges into the space below the cover cap.

FIG. 5 shows the slide 44 in the opposite end position in which oil flows via the control borehole 54 into the cylinder 26 and oil discharges from the cylinder 27 via the control borehole 55 and the relief borehole 61.

At both end positions, the result is obtained that the particular piston 55 which is urged out of the pressurized cylinder as is shown in FIG. 2 and has already been described, acts against the ball 33, whereby the angular displacement takes place.

From the above, it is seen that the combination of the bushing and slide represent a three position valve means in the shaft having first and second end positions and an intermediate position, said valve means in each said end position venting a respective cylinder while rendering the other cylinder operative which has the effect of causing angular adjustment of the relative position of the shaft and drive member while the direction of angular adjustment is determined. In the intermediate position, the valve means causes the cylinders to be unvented and the pistons to be blocked.

In the embodiment of FIG. 1, the slide 29 also forms a three position valve means in the shaft having first and second end positions and an intermediate position. In each end position a respective cylinder is vented while the other cylinder is pressurized which has the effect of causing angular adjustment of the relative position of the shaft and drive wheel while the direction of angular adjustment is determined. In the intermediate position, the cylinders are unvented and the pistons are blocked.

The actuating member 46 can be of electromagnetic or pneumatic construction. The pneumatic actuator would be actuatable by corresponding pressure action

Exhibit 2 page 15

4,627,825

5

selectively from a reservoir or a source of pressure under the control of a solenoid valve (not shown).

FIG. 6 shows a portion of the shaft part (4 or 40) and of the drive wheel 10 in which, in one of the end positions of the angular displacement between the drive wheel 10 and the shaft 6, a spring-loaded connecting element 69, in the form of a piston, engages into a bore 70 in the drive wheel 10, whereby a locked connection is produced between the drive wheel 10 and the shaft 6. This connection is released when the corresponding cylinder is acted on by oil pressure, i.e. the oil pressure acts on the connecting element 69, so that element 69 is moved against the force of a spring 71 to release the locking engagement. After displacement, a subsequent locking engagement is obtained by the connecting element 69 which is actuated as a function of the oil pressure in the other cylinder, that is since this cylinder is relieved of pressure the connecting element 69 is also relieved of pressure so that the spring 71 produces a displacement towards the drive wheel 10 and engagement of the connecting element 69 into the recess 70 when they come into alignment.

FIG. 7 shows a schematic block diagram in which is seen a circuit for sensing the relative angular displacement of the shaft and drive wheel and for controlling the valves 20, 21 to effect relative angular displacement in order to adjust the relative positions of the drive wheel and shaft.

The shaft 6 and the drive wheel 10 carry the pulse transmitters 36, 38 which, upon approach to the sensors 37, 39, produce a signal in the sensors.

The signal produced by the pulse transmitter 36 of the drive wheel 10 is taken as a reference signal indicative of the maximum possible angular displacement.

The signal produced by the pulse transmitter 38 of the shaft 6, represents an actual-value signal and for maximum angular displacement is advanced in time relative to the reference signal by a period equal to that of the reference signal. In other words, in a position of maximum adjustment, the transmitter 38 produces a signal in sensor 39 before transmitter 36 produces a signal in sensor 37 by a period equal to the reference signal. In FIG. 7 the shaft 6 is illustrated as being angularly adjusted about midway of its maximum advanced position relative to the drive wheel 10. The actual-value signal from sensor 39 activates a counter 40 and the reference signal from sensor 37 activates another counter 41 for the duration of the signal and concurrently stops the counter 40 at the start of the reference signal. During their activation, the counters 40, 41 count the pulses from a pulse generator 42 which operates with constant frequency. The counter outputs are fed to a divider 43 whose output is the ratio of the outputs which represents the relative angular displacement between zero and the maximum value. This output can be modified in customary manner by means of a correction-value storage 44 and optionally by means of further information signals (e.g. speed of rotation, load, etc.) to produce a correction signal which can be fed as an electrical signal via an amplifier 45 to the valves 20, 21.

FIG. 8 shows an alternative circuit in which the shaft 6 has a plurality of pulse transmitters 38' whose signals are counted via the sensor 39 by a counter 46 until the pulse transmitter 36' of the drive wheel 10 produces, via the sensor 37, a signal which stops the counter 46. The output of the counter 46 is representative of the relative angular displacement of the shaft and drive wheel since a given angular displacement is associated with each

6

counted pulse. The output signal for counter 46 can be changed by means of a correction-value storage 47, and optionally by means of further information signals, to produce a correction signal which can be fed via an amplifier 48 as an electrical signal to the valves 20, 21.

The circuits of FIGS. 7 and 8 can also be used in combination with the device of FIG. 3, in which case the apparatus does not require the means of FIG. 6 for the locking connection of the drive wheel 10 and the shaft 6 in the end positions of the angular displacement. When an electromagnetic actuator is used, the electrical signal is directly fed to the actuator and when a pneumatic actuator is used, the electrical signal operates a solenoid valve which selectively connects the actuator to a pressure source or vents the actuator to a reservoir.

A locking action is obtained between the shaft and drive wheel, in the desired angular relation thereof, by the position of the slide valve shown in FIG. 3 in which no oil can flow into or out of the cylinders thereby producing hydraulic interlocking. Alternatively or in combination the locking connection between the drive wheel 10 and shaft 6 can be obtained as shown in FIG. 6.

From the above, it is seen that the invention provides apparatus for adjusting the relative angular position between the rotating shaft member and drive member which comprises coupling means as seen in FIG. 2 for drivingly connecting the shaft member and drive member in driving relation and including means for enabling the shaft member and drive member to be relatively angularly adjustable while maintaining the driving relation therebetween, the latter means being inclusive of the hydraulic cylinders 26, 27, in radial opposition with the respective pistons 25 slidably mounted for movement in opposite directions in the cylinders. The movement of the pistons in the cylinders causes the shaft and drive members to undergo relative angular displacement in a direction corresponding to the direction of movement of the pistons. This is due to the provision of the balls 33 which act on the inclined surfaces 34 of the drive member. The flow of the pressure fluid to the hydraulic cylinders to displace the pistons is controlled by the valve means which thereby controls the relative angular position of the shaft and drive members. As seen in FIGS. 1 and 3-5, two embodiments of valve means have been shown, each of which has first and second positions in each of which a respective one of the cylinders is pressurized while the other is vented. The direction of relative angular adjustment is opposite depending on whether the valve means is in its first or second position.

In both embodiments the valve means has an intermediate position in which the pressure in the cylinders is applied respectively in opposite direction to the valve means. In the intermediate position, the cylinders are unvented and the pistons are blocked.

Although the invention has been described in relation to specific embodiments thereof, it will become apparent to those skilled in the art that numerous modifications and variations can be made within the scope and spirit of the invention as defined in the attached claims.

What is claimed is:

1. Apparatus for the relative angular displacement of a shaft and a drive wheel for said shaft in which said angular displacement is effected by hydraulic means as a function of whether or not pressure fluid is fed to the apparatus, said apparatus comprising at least one pair of hydraulic cylinders disposed in radial opposition in said

Exhibit 2 page 16

4,627,825

7

shaft and including respective pistons displaceable in opposite directions in said cylinders, and three position valve means for controlling flow of pressure fluid to said hydraulic cylinders for controlling relative angular displacement between said shaft and drive wheel, said valve means having first and second end positions and an intermediate position, said valve means in each said end position pressurizing a respective cylinder while the other cylinder is vented to effect relative angular displacement selectively in opposite directions, said cylinders being unvented with the valve means in said intermediate position to block said pistons.

2. Apparatus as claimed in claim 1 wherein said shaft has boreholes constituting respective inlets to said cylinders, said valve means blocking said inlets in said intermediate position.

3. Apparatus as claimed in claim 2 comprising drive means for actuating said valve means to move the valve means between said positions.

4. Apparatus as claimed in claim 3 comprising means for setting the position of said drive means and thereby the position of said valve means.

5. Apparatus as claimed in claim 3 wherein said drive means is electromagnetic.

6. Apparatus as claimed in claim 3 wherein said drive means is pneumatic.

7. Apparatus as claimed in claim 3 wherein said drive means comprises means responsive to pressure difference between said inlets.

8. Apparatus as claimed in claim 7 comprising outlet bores for respectively venting each cylinder, a reservoir connected to said outlet bores, said outlet bores being respectively connected to said inlets and electrically actuatable valves for respectively blocking communication between said outlet bores and said reservoir.

9. Apparatus as claimed in claim 1 comprising a ball in each cylinder in bearing contact with said shaft, the piston in each cylinder bearing under pressure against the respective ball when said cylinder is pressurized, and a drive wheel surrounding said shaft and in bearing contact with the balls under the action of the pressurized pistons to produce forces on said balls acting tangentially of said shaft.

10. Apparatus as claimed in claim 9 wherein said drive wheel has surfaces against which the balls are in contact, said surfaces being inclined with respect to the axes of the cylinders.

11. Apparatus as claimed in claim 1 further comprising mechanical locking means for producing a locked connection between said shaft and said drive wheel in predetermined, relative angular positions thereof.

12. Apparatus as claimed in claim 11 wherein said locking means comprises a spring-loaded connecting element, said shaft and drive wheel having recesses in which said connecting element is engaged under its spring loading to produce said locked connection, and means for subjecting said connecting element to the pressure of the pressure fluid with said valve means in said end positions to retract said connecting element from said recesses and thereby release said locked connection.

13. Apparatus as claimed in claim 4 comprising means for sensing the relative angular positions of said drive wheel and said shaft during rotation thereof, and means responsive to the sensed relative angular positions of the drive wheel and shaft for producing signals for adjusting said relative angular positions.

8

14. Apparatus as claimed in claim 13 wherein said sensing means comprises sensors respectively associated with said shaft and said drive wheel, pulse transmitters respectively coupled with said shaft and drive wheel for periodically activating the sensors during each rotation thereof, counter means connected to said sensors for producing signals indicative of the relative angular positions of the drive wheel and shaft and means receiving the signals from the counter means for supplying signals to said setting means for setting the position of said valve means when the relative angular position between the shaft and drive wheel is to be adjusted.

15. Apparatus as claimed in claim 14 wherein said means which supplies signals to the setting means forms a ratio of signals from said counter means representing angular offset between the shaft and drive wheel and a reference angle.

16. Apparatus as claimed in claim 14 wherein the counter means receives a reference signal from one of said sensors and counted signals from the other of said sensors indicating relative angular offset of the shaft and drive wheel.

17. Apparatus as claimed in claim 8 comprising means for sensing the relative angular positions of said drive wheel and said shaft during rotation thereof, and means responsive to the sensed relative angular positions of the drive wheel and shaft for producing signals for adjusting said relative angular positions.

18. Apparatus as claimed in claim 17 wherein said sensing means comprises sensors respectively associated with said shaft and said drive wheel, pulse transmitters respectively coupled with said shaft and drive wheel for periodically activating the sensors during each rotation thereof, counter means connected to said sensors for producing signals indicative of the relative angular positions of the drive wheel and shaft and means receiving the signals from the counter means for supplying signals to said electrically actuatable valves for selectively venting the cylinders to the reservoir when the relative angular position between the shaft and drive wheel is to be adjusted.

19. Apparatus as claimed in claim 18 wherein said means which supplies signals to the electrically actuatable valves forms a ratio of signals from said counter means representing angular offset between the shaft and drive wheel and a reference angle.

20. Apparatus as claimed in claim 18 wherein the counter means receives a reference signal from one of said sensors and counted signals from the other of said sensors indicating relative angular offset of the shaft and drive wheel.

21. Apparatus for adjusting the relative angular position between a rotating shaft member and a drive member for said shaft member, said apparatus comprising coupling means for drivingly connecting the shaft member and the drive member in driving relation, said coupling means including means for enabling said shaft member and drive member to be relatively angularly adjustable while maintaining the driving relation therebetween, the latter means including a pair of hydraulic cylinders in radial opposition in said members and respective pistons slidably mounted for movement in opposite directions in said cylinders, the movement of said pistons in said cylinders causing the shaft member and drive member to undergo relative angular displacement in a direction corresponding to the direction of movement of the pistons, means for providing pressure fluid, and valve means for controlling flow of the

Exhibit 2 page 17

4,627,825

9

pressure fluid to said hydraulic cylinders for displacing said pistons and thereby controlling the relative angular position of said shaft and drive members, said valve means having first and second positions in each of which a respective one of said cylinders is pressurized while the other is vented, the direction of relative angular adjustment being opposite with said valve means in said first and second positions.

22. Apparatus as claimed in claim 21 wherein said valve means has an intermediate position in which the pressure in said cylinders is applied respectively in opposite directions to said valve means.

23. Apparatus as claimed in claim 21 wherein said coupling means further comprises a ball in each cylinder in bearing contact with said one member, the piston in each cylinder bearing under pressure against the respective ball when said cylinder is pressurized, the other of said members surrounding said one member and in bearing contact with the balls under the action of the pressurized pistons to produce forces in said balls acting tangentially of said one member.

10

24. Apparatus as claimed in claim 23 wherein said other member has surfaces against which the balls are in contact, said surfaces being inclined with respect to the axes of the cylinders.

25. Apparatus as claimed in claim 21 comprising means for sensing the relative angular positions of said drive member and said shaft member during rotation thereof, and, means responsive to the sensed relative angular positions of the drive member and shaft member for producing signals for adjusting said relative angular positions, said sensing means comprising sensors respectively associated with said shaft member and said drive member, pulse transmitters respectively coupled with said shaft member and drive member for periodically activating the sensors during each rotation thereof, counter means connected to said sensors for producing signals indicative of the relative angular positions of the drive member and shaft member and means receiving the signals from the counter means for adjusting the relative angular position between the shaft member and drive member.

* * * * *

25

30

35

40

45

50

55

60

65

Exhibit 2 page 18

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE          FYI

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

OCT 16 1992

RECEIVED IN
BOX INTERFERENCE
#18

Butterfield et al,                )
                                   )
        Junior Party,              )
                                   )
        vs.                        )      Interference No. 102,923
                                   )      Examiner-in-Chief James R. Boler
                                   )
Melchior,                          )
                                   )
        Senior Party.              )
_____/

SENIOR PARTY'S OPPOSITION TO JUNIOR PARTY'S SECOND
PRELIMINARY MOTION UNDER 37 CFR 1.633(c)(4)

Junior Party has moved to redefine the interfering subject
matter by designating claims 3-6 of its involved patent 5,002,023
as not corresponding to patent claim 1/Count I.  Junior Party does
not suggest what should be done with its patent claims 3-6 (or the
identical claims of Junior Party's application), which clearly define
interfering subject matter.  Accordingly, the Motion is incomplete.
In addition, as will be noted hereinafter, claim 4 of Junior Party's
involved patent is not patentable over claim 1/Count I.

_____

CERTIFICATE OF MAILING (37 CFR 1.8a)

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with
the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope
addressed to the: Commissioner of Patents and Trademarks, Washington, D.C. 20231.

                                        ELLEN PSUJEK
                                        (Type or print name of person mailing paper)

Date:  October 13, 1992

                                        (Signature of person mailing paper)

-1-                                          Exhibit 2 page 19

Reference is made to Senior Party's Preliminary Motion Under 37 CFR 1.633(c) To Redefine Interfering Subject Matter, in which it is proposed to designate claims 3 and 5-6 (together with claim 2) of Junior Party's involved patent (together with the corresponding claims of Senior Party's involved application) as not corresponding to Count I/claim 1, and to add an additional Count identical to Junior Party's patent claim 2 to which these claims correspond. Reference is also made to Senior Party's Motion for Judgment Under 37 CFR 1.633(a), in which it shown that claim 1 of Junior Party's involved patent (Count I) and claim 4 of Junior Party's patent are both anticipated by Garcea 3,721,220.

Thus, Senior Party **opposes** Junior Party's Second Preliminary Motion as being incomplete relative to claims 3 and 5-6 of the involved patent, and as being incorrect relative to claim 4.

As noted in Senior Party's Preliminary Motion for Judgment, claim 4 of Senior Party's patent is anticipated by the prior art Garcea '220, as is claim 1/Count I. Since Junior Party's claim 4 is anticipated by the prior art, it necessarily follows that Junior Party's claim 4 cannot be patentable over the Count by definition.

Furthermore, putting aside for the moment the fact that Junior Party's patent claim 4 is not patentable in and of itself, the prior art demonstrates that Junior Party's claim 4 is not patentable over Count I/claim 1. The only difference between Junior Party's patent claim 4 and Junior Party's patent claim 1 (Count I) lies in the recitations in claim 4 of "an engine control unit for controlling the operation of the engine," and actuation of the position-varying means "in response to a control signal from the engine control unit".

Exhibit 2 page 20

However, Garcea '220 clearly shows such "engine control unit" and signal-responsive means for varying the camshaft position. See in particular the engine throttle control pedal 61 in FIG. 3 with the cable 44 providing a mechanical "signal" to the lever 40, and the throttle control cable 50 with capsule 55 and cable 60 providing the corresponding mechanical "signal" to the lever 40 in FIG. 4. In this connection, it is noted that Junior Party's patent claim 4 does not recite an "electronic" engine control unit or means responsive to an "electrical" control signal. It is well established that Junior Party's claim 4 is to be given the broadest interpretation that it will reasonable support. DeGeorge v. Bernier, 226 USPQ 750, 760-61 (Fed.Cir. 1985); Mead v. McKirnow, 199 USPQ 513 (CCPA 1978); Lamont v. Berguer, 7 USPQ2d 1580 (BPAI 1988). The disclosure of such mechanical means in Garcea is, of course, for exactly the same purpose as that recited in Junior Party's claim 4. Thus, provision of an "engine control unit" and "signal-responsive means" for accomplishing the task of varying camshaft position in claim 1 would have been obvious to persons of ordinary skill in the art in view of Garcea, which is to say that claim 4 is not patentable over claim 1.

Moreover, even if one were to assume for the sake of discussion that the "engine control unit" and "signal-responsive means" in Junior Party patent claim 4 were somehow to be interpreted or limited to electronic control means and an electronic control signal, such would still not be patentable over claim 1 in view of Bruss 4,627,825 or Shirai 4,858,572. (Copies of Bruss and Garcea were enclosed with Senior Party's Preliminary Motion to Redefine. A copy of Shirai is enclosed.) Both of these patents disclose an electronic control

-3-

Exhibit 2 page 21

unit and means responsive to an electrical signal therefrom for varying camshaft timing. See Bruss FIGS. 7 and 8 with electronic control means 40-48 and electrical signal-responsive valves 20, 21, and Shirai FIG. 1 with electronic control unit 82 and solenoid valve 62, 68. In both of such prior art disclosures, the engine control unit and signal-responsive means are for the same purpose as recited in Junior Party claim 4 - i.e., varying the position of the camshaft. Thus, it would have been obvious to persons of ordinary skill in the art to employ such electronic control unit and electronic signal-responsive means in combination with the subject matter of Junior Party claim 1, which is to say that Junior Party claim 4 is not patentable over Junior Party claim 1.

It is noted that Junior Party does not assert patentability of claim 3 over claim 2, or claim 6 over claim 5. This supports Senior Party's Motion to add a new Count II identical to Junior Party's patent claim 2, and to designate Junior Party's patent claims 2-3 and 5-6 (as well as Senior Party's application claims 54-55 and 57-58) as corresponding thereto.

At pages 4-5 of its Motion, Junior Party offers a gratuitous discussion of "obviousness" of Senior Party's application FIG. 7. Although this discussion of "obviousness" of FIG. 7 is of interest in the face of Junior Party's concurrent assertion that Senior Party's FIG. 7 would be inoperative, it is irrelevant to the issues at hand.

Junior Party also suggests in passing at page 5 of its Motion that Senior Party cannot support Junior Party's patent claims 4 and 6. No corresponding Motion has been filed, and such suggestion can be ignored.

-4-

Exhibit 2 page 22

Thus, it is submitted that Junior Party's patent claims 3 and 5-6 are in fact patentable over claim 1/Count I, but are not patentable over claim 2. Thus, claims 2-3 and 5-6 should be designated as corresponding to Count II proposed by Senior Party in its Motion to Redefine. Junior Party patent claim 4 is not patentable over claim 1/Count I for reasons set forth above.

Thus, Senior Party's Motion to Redefine should be granted for the reasons stated therein and hereinabove, and Junior Party's Second Motion to Redefine should be denied.

Respectfully submitted,

BARNES, KISSELLE, RAISCH, CHOATE,
    WHITTEMORE & HULBERT, P.C.

By: Robert C. Collins
    Registration No. 27,430
    Telephone: (313) 962-4790

WJW/RCC/bp
[WJW/76/bp]

Exhibit 2 page 23

# United States Patent [19]

## Shirai et al.

[11]  Patent Number:  **4,858,572**

[45]  Date of Patent:  **Aug. 22, 1989**

[54]  **DEVICE FOR ADJUSTING AN ANGULAR PHASE DIFFERENCE BETWEEN TWO ELEMENTS**

[75]  Inventors:  Eiji Shirai, Okazaki; Yoshio Okabe, Chiryu, Yukimori Kobayashi, Gamagohri, all of Japan

[73]  Assignee:  Aisin Seiki Kabushiki Kaisha, Kariya, Japan

[21]  Appl. No.:  252,054

[22]  Filed:  Sep. 30, 1988

[30]  **Foreign Application Priority Data**

Sep. 30, 1987 [JP]  Japan ................................. 62-246880

[51]  Int. Cl.⁴ ........................... F01L 1/34; F01L 9/02
[52]  U.S. Cl. ........................... 123/90.12; 123/90.15; 123/90.31
[58]  Field of Search ............... 123/90.12, 90.13, 90.15, 123/90.16, 90.27, 90.31, 90.17

[56]  **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,827,413 | 8/1974 | Meacham | 123/90.15 |
| 4,421,074 | 12/1983 | Garcea et al. | 123/90.15 |
| 4,535,731 | 8/1985 | Banfi | 123/90.17 |
| 4,601,266 | 7/1986 | Oldfield et al. | 123/90.15 |
| 4,762,097 | 8/1988 | Baker | 123/90.31 |
| 4,787,345 | 11/1988 | Thoma | 123/90.17 |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3247916 | 6/1984 | Fed. Rep. of Germany | 123/90.31 |
| 0268810 | 11/1986 | Japan | 123/90.15 |

*Primary Examiner*—Charles J. Myhre
*Assistant Examiner*—Weilun Lo
*Attorney, Agent, or Firm*—Oblon, Spivak, McClelland, Maier, & Neustadt

[57]  **ABSTRACT**

For adjusting an angular phase difference between an engine crank shaft and an engine cam shaft, fluid under pressure is supplied into one or more chambers defined therebetween. The adjusted condition is maintained or held by mechanical engagement between both shafts.

**9 Claims, 3 Drawing Sheets**



Exhibit 2 page 24



FIG. 1

Exhibit 2 page 25



FIG. 2

Exhibit 2 page 26

U.S. Patent    Aug. 22, 1989    Sheet 3 of 3    4,858,572



FIG.3



FIG.4

Exhibit 2 page 27

4,858,572

1

## DEVICE FOR ADJUSTING AN ANGULAR PHASE DIFFERENCE BETWEEN TWO ELEMENTS

### BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to a device for adjusting an angular phase difference and in particular to a device for adjusting an angular phase difference between an engine crank shaft and an engine cam shaft.

2. Description of the Prior Art

A conventional device of this kind is disclosed in U.S. Pat. No. 2,861,557, for example. In the conventional device, a drive member to be driven by an engine crank shaft is rotatably mounted on an engine cam shaft having a cam member which acts on a tappet. A hub is also fixedly mounted on the cam shaft so as to be enclosed by the drive member. The drive member is provided with a pair of equi-spaced vanes, each of which is extended inwardly in the radial direction so as to be brought into sliding engagement with an outer surface of the hub. The hub is also provided with a pair of equi-spaced vanes, each of which is extended outwardly in the radial direction so as to be brought into engagement with an inner surface of the drive member. Thus, between each of the vanes of the drive member and each of the vanes of the hub there is defined an oil chamber to which fluid under pressure is supplied. In such a construction, when fluid under pressure is supplied into each oil chamber, the volume thereof is increased, thereby increasing an angular phase difference between the drive member and the hub. Thus, the cam shaft is advanced through an angle relative to the crank shaft.

However, since fluid in each chamber serves for transmitting the rotational torque from the crank shaft to the cam shaft in the above-mentioned construction, the pressure of the fluid has to overcome the rotational torque from the crank shaft in order to retain or hold the advanced condition of the cam shaft relative to the crank shaft. This means that a high powered oil pump as to be used. In other words, fluid which already circulates in an engine system for the lubrication thereof cannot be utilized.

Further, in the conventional device, before advance of the cam shaft relative to the drive member, a ball holding the connection therebetween is moved outwardly in the radial direction as a result of centrifugal effect on the ball. This means that the cam shaft may not be advanced relative to the drive member while the engine is operated at a low speed.

### SUMMARY OF THE INVENTION

It is, therefore, a primary object of the present invention to provide a device for adjusting an angular phase difference without the aforementioned drawbacks.

Another object of the present invention is to provide a device for adjusting an angular phase difference, which may be actuated by fluid at a relatively low pressure.

Still another object of the present invention is to provide a device for adjusting an angular phase difference, which may be operated regardless of an engine speed.

In order to achieve the above objects, and in accordance with the purposes of the present invention, a device is provided for adjusting an angular phase difference between a cam shaft rotatably supported on an

2

engine and having a cam member which acts on a tappet, and a drive member rotatably mounted on the cam shaft and driven by the rotational torque from a crank shaft. The device includes a hub fixedly mounted on the cam shaft and enclosed by the drive member to define a chamber between the drive member and the hub, the chamber having a pair of circumferentially opposed walls. A vane is fixedly mounted to the hub and extends outwardly therefrom in the radial direction and into the chamber so as to divide the chamber into a first section and a second section which are fluid tightly separated from each other. A fluid supplying means supplies fluid under pressure to a selected one of the first section and the second section via respective first and second passage means, together with means for preventing counter flow of the fluid under pressure from the first and second sections. A first connecting means mechanically connects the hub and the drive member when the vane is in abutment with one of the circumferentially opposed walls of the chamber and releases the mechanical connection between the hub and the drive member when the pressure of the fluid in the first passage means exceeds a set value. Second connecting means mechanically connect the hub and the drive member when the vane is brought into abutment with the other of the circumferentially opposed walls of the chamber after a rotary movement of the hub through a set angle, and releases this mechanical connection when the fluid pressure in the second passage means exceeds a set value.

### BRIEF DESCRIPTION OF THE DRAWINGS

The above and other objects, features and advantages of the present invention will become more apparent and more readily appreciated from the following detailed description of preferred exemplary embodiments of the present invention, taken in connection with the accompanying drawings, in which:

FIG. 1 is a veiw, partially in section, showing the entire device for adjusting an angular phase difference according to the invention;

FIG. 2 is a cross-sectional view taken along line A—A of FIG. 1;

FIG. 3 is a view for showing the relationship between a cam meber on a cam shaft and a tappet; and

FIG. 4 is a cross-sectional view of another construction of a valve of the invention.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring now to FIGS. 1 through 3, a device 10 includes a cam shaft 11 which is rotatably supported on an engine 12. At a portion of the cam shaft 11, there is fixedly mounted a cam 13 (FIG. 3) which acts on an upper surface of a tappet 14 as is well-known. On a left end portion of the cam shaft 11, there is rotatably mounted a drive member 15 having teeth 15a to which rotational torque is transmitted via a bel 15 from a crank shaft 16 which is rotated by the engine 12.

The drive member 15 is provided at an inner side thereof with a plurality of circumferentially equi-space projections 17, each of which extends inwardly in the radial direction. An inner end portion of each projection 17 is in sliding engagement with an outer surface of a hub 18 which is fixedly mounted on the cam shaft 11 and is enclosed by the drive member 15. Between the drive member 15 and the hub 18, there are defined six chambers 20, 21, 22, 23, 24 and 25 which are arranged in

Exhibit 2 page 28

4,858,572

3

an equi-spaced manner in the circumferential direction. Each chamber 20, 21, 22, 23, 24 and 25 has a pair of circumferentially opposed, radially extending walls 20a and 20b, 21a and 21b, 22a and 22b, 23a and 23b, 24a and 24b, 25a and 25b.

On the hub 18, six vanes 30, 31, 32, 33, 34 and 35, are fixedly mounted in an equi-spaced manner in the circumferential direction. The vane 30, which projects outwardly from the hub 19 in the radial direction, is extended into the corresponding chamber 20 so that the chamber 20 is divided into a first section 20c and a second section 20d, both of which are fluid-tightly separated from each other. The chambers 21, 22, 23, 24 and 25 are so divided in a manner similar to the chamber 20.

In the condition shown in FIG. 2, the vanes 30, 31, 32, 33, 34 and 35 are in abutment with the walls 20a, 21a, 22a, 23a, 24a and 25a, respectively. For maintaining such a condition, a first connecting means 36 is employed. The connecting means is in the form of a pin 37 extending into a radial bore 39 of one of the projections, the pin 37 being urged inwardly by a spring 38 accommodated in the bore 39. An upper end of the pin 37 is fitted into a large-radius portion 40a of a radial hole 40 in the hub 18. The hub 18 is thus prevented from rotary movement relative to the drive member 15.

Fluid under pressure is supplied to the first sections 20c, 21c, 22c, 23c, 24c and 25c or to the second sections 20d, 21d, 22d, 23d, 24d and 25d from a fluid supply means 60 which will be described below. In order to supply fluid to the first section 20c, fluid under pressure 30 passes through the radial hole 40 while pushing the pin 37 fully into the bore 39 against the load of the spring 38, and enters a circumferential groove 50 in the hub 18. Due to continuous supply of fluid in each first section, the vanes and the hub 18 are brought into clockwise unitary rotation relative to the drive member 15. This rotation of the hub 18 is completed when a pin 47 of a second connecting means 46 in another projection 17 is urged inwardly in the radial direction by spring 48 upon being brought into alignment with a large-radius portion 142a of the hole 142.

The fluid supplying means 60 is provided for supplying fluid under pressure to either respective first sections 20c, 21c, 22c, 23c, 24c and 25c via a first passage means 70 or respective second sections 20d, 21d, 22d, 23d, 24d and 25d via a second passage means 75. The fluid supplying means 60 includes an oil pump 80 from which fluid under pressure is delivered. Oil from pump 80 may also be utilized for the lubrication of the entire system. A switching valve apparatus 61 has a casing 62 in which a sliding member 63 is mounted. Normally, the sliding member 63 is urged in the leftward direction by a spring 64 so as to establish the fluid communication between an inlet port 65 to which fluid is supplied from the pump 80 and a first outlet port 66.

On the other hand, upon actuation of a solenoid 68 due to receipt of an order or a command from a controller 82 in the form of a microcomputer, the sliding member 63 is moved in the rightward direction against the load of the spring 64.

In the cam shaft 11, there are formed a first path 71 and a second path 76 which respectively belong to the first passage means 70 and the second passage means 75. Between the first outlet port 66 (the second outlet port 67) and the first path 71 (the second path 76) there is interposed a first check-valve 72 (a second check-valve 77) for preventing counter flow of fluid to the oil pump 80. The first path 71 (the second path 76) is in fluid

4

communication with a first annular passage 73 (a second annular passage 78).

The first annular passage 73 is in fluid communication with the first sections 20c, 21c, 22c, 23c, 24c and 24c via, respectively, a set of the hole 40 and the groove 50, a set of a hole 41 and a groove 51, sets of holes and grooves (not shown) similarly communicated to first sections 22c, 23c, 24c, and a set of a hole 45 and a groove 55. The second sections 20d, 21d, 22d, 23d, 24d and 15d are in fluid communication with the second annular passage 78 via, respectively, a set of the hole 142 and a groove 152, a set of a hole 143 and a groove 153, a set of a hole 144 and a groove 154 and sets of holes and grooves (not shown) similarly communicated to second sections 20d, 21d and 25d.

The controller 82 is electrically connected to a first sensor 88 which detects an amount of opening of a throttle valve 89 operatively connected to an accelerator pedal 90, and a second sensor 91 which detects the speed or the rotational number of the engine 12. In response to signals from both sensors 88 and 91, the controller 82 controls the valve apparatus 61. In this embodiment, the solenoid 68 is actuated when the amount of the opening of the throttle valve 89 is large during the low speed operation of the engine 12 so as not to generate an angular phase difference between the cam shaft 11 and the crank shaft 16. For easy assembly of the device 10, a left wall 92 of the drive member 15 is detachably and movably held to the cam shaft 11 by a bolt 93 and a spacer 94. Further, for assuring the smooth rotation of the drive member 15 on the cam shaft 11, a bearing 95 is employed.

In operation, when the engine 12 is started, the pressure of fluid delivered from the oil pump 80 is increased up to a set value. Fluid under the resulting pressure is supplied to the valve apparatus 61. If the solenoid 68 is not actuated, fluid is supplied to the holes 40, 41, 45 (and the non-illustrated holes for the first sections 22c, 23c and 24c), via the first check valve 72. Fluid under pressure supplied into the hole 40 urges the pin 36 fully into the bore 39, thereby releasing the connection between the hub 18 and the drive member 15. Then, fluid under pressure is supplied into the first sections 20c, 21c, 22c, 23c, 24c and 25c via the grooves 50, 51, 55 (and the nonillustrated grooves for the first sections 22c, 23c and 24c), thereby rotating the vanes 30, 31, 32, 33, 34 and 35 by the angle θ in the clockwise direction, together with the hub 18. Upon fitting of the pin 47 into the large-radius portion 142a of the hole 142, such rotation is terminated. Thus, the cam shaft 11 which is fixedly connected to the hub 18 is advanced through an angle relative to the crank shaft 16, which is operatively connected to the drive member 15. Due to an irregular profile of the cam member 13 as shown in FIG. 3, the torque applied to the cam shaft 11 is increased or decreased periodically. In the former case, though the pressure in the first passage means 70 is increased, the resulting pressure is prevented from counter-flowing to the oil pump 80 by the check valv 72.

On the other hand, for returning the cam shaft 11 from the advanced condition to the original condition, respective vanes 30, 31, 32, 33, 34 and 35 are rotated in the counter-clockwise direction by supplying fluid under pressure to the second sections 20d, 21d, 22d, 23d, 24d and 25d via sec nd passage means 75. Since the rotational direction of ach vane is the same as the rotational direction of the drive member, each vane is easily turned to its original position as shown in FIG.

Exhibit 2 page 29

4,858,572

5

2 by the fluid pressure. During the returning rotary movement of each vane, fluid in each first section is drained through a non-illustrated clearance between the hub 18 and the cam shaft 11.

As shown in FIG. 4, instead of the pair of check-valves 72 and 77, a single check-valve 98 which is disposed between the valve apparatus 61 and the oil pump 80 is possible. According to this construction, fluid is drained from a port 99a or 99b to the lubricating circuit.

Obviously, numerous modifications and variations of the present invention are possible in light of the above teachings. It is therefore to be understood that within the scope of the appended claims, the invention may be practiced otherwise than as specifically described herein.

What is claimed as new and desired to be secured by letters patent of the United States is:

1. A device for adjusting an angular phase difference between a cam shaft rotatably supported on an engine and having a cam member which acts on a tappet, and a drive member rotatably mounted on said cam shaft and driven by the rotational torque from a crank shaft, comprising:

a hub fixedly mounted on said cam shaft and enclosed by said drive member;

a chamber defined between said drive member and said hub and having a pair of circumferentially opposed walls;

a vane fixedly mounted to said hub and extended outwardly therefrom in the radial direction into said chamber so as to divide said chamber into a first section and a second section which are fluid-tightly separated from each other;

a fluid supplying means for supplying fluid under pressure to a selected one of said first section and said second section via respective first and second passage means;

means for preventing counter flow of said fluid under pressure from said first and second sections;

a first connecting means for mechanically connecting said hub and said drive member when said vane is in abutment with one of said circumferentially opposed walls of said chamber and for releasing the mechanical connection between said hub and said

6

drive member when the pressure of fluid in said first passage means exceeds a set value; and

a second connecting means for mechanically connecting said hub and said drive member when said vane is brought into abutment with an other of said circumferentially opposed walls of said chamber after a rotary movement of said hub through a set angle and for releasing the mechanical connection between said hub and said drive member when the fluid pressure in said second passage means exceeds a set value.

2. A device in accordance with claim 1 further including at least one additional chamber and one vane in each said additional chamber, wherein all of said chambers and said vanes are arranged in an equi-spaced manner in the circumferential direction.

3. A device in accordance with claim 1 wherein said fluid supplying means includes an oil pump from which fluid under pressure is delivered, a switching valve apparatus connected to said oil pump and alternately connected to said first passage means and said second passage means, and one-way valve means preventing counter flow of fluid to said oil pump and comprising said means for preventing counter flow.

4. A device in accordance with claim 3 wherein said one-way valve means comprises a first check-valve and a second check valve disposed in said first passage means and said second passage means respectively.

5. A device in accordance with claim 3 wherein said one-way valve means is a single check-valve disposed between said switching valve and said oil pump.

6. A device in accordance with claim 3 wherein said switching valve is an electrically operated valve.

7. A device in accordance with claim 6 including microcomputer means for controlling said electrically operated valve.

8. A device in accordance with claim 7 wherein said microcomputer means comprises means for controlling said electrically operated valve based on a set of parameter signals.

9. A device in accordance with claim 8 wherein said parameter signals are an engine speed and an amount of opening of a throttle valve.

* * * * *

Exhibit 2 page 30

FY1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

OCT 1 6 1992

RECEIVED IN
BOX INTERFERENCE

Butterfield et al, )
)
    Junior Party, )
)
    vs. )        Interference No. 102,923
)        Examiner-in-Chief James R. Boler
)
Melchior, )
)
    Senior Party. )
_____/

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing SENIOR PARTY'S OPPOSITION TO JUNIOR PARTY'S FIRST PRELIMINARY MOTION UNDER 37 CFR 1.633(c)(4); SENIOR PARTY'S OPPOSITION TO JUNIOR PARTY'S SECOND PRELIMINARY MOTION UNDER 37 CFR 1.633(c)(4); SENIOR PARTY'S OPPOSITION TO JUNIOR PARTY'S PRELIMINARY MOTION UNDER 37 CFR 1.633(a); and SENIOR PARTY'S OPPOSITION TO JUNIOR PARTY'S PRELIMINARY MOTION UNDER 37 CFR 1.633(g), were sent by Federal Express, postage prepaid, on this 13th day of October, 1992, to the following: Thomas A. Meehan, Esq., WILLIAN BRINKS OLDS HOFER GILSON & LIONE, 1130 Edison Plaza, Toledo, Ohio  43604-1537 and Greg Dziegielewski, Esq., BORG-WARNER AUTOMOTIVE, INC., 6700 18½ Mile Road, P.O. Box 8022, Sterling Heights, Michigan 48311-8022.

                              Robert C. Collins
                              Registration No. 27,430
                              BARNES, KISSELLE, RAISCH, CHOATE,
                                  WHITTEMORE & HULBERT, P.C.
                              3500 Penobscot Building
                              Detroit, Michigan    48226
                              (313)  962-4790

WJW/RCC/bp
[WJW/76/bp]

CERTIFICATE OF MAILING (37 CFR 1.8a)

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the: Commissioner of Patents and Trademarks, Washington, D.C. 20231.

                              ELLEN PSULIK
                              (Type or print name of person mailing paper)

Date  October 13, 1992

                              (Signature of person mailing paper)

Exhibit 2 page 31

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing SENIOR PARTY'S
OPPOSITION TO JUNIOR PARTY'S PRELIMINARY MOTION UNDER 37 CFR
1.633(e)(1), was sent by Federal Express, postage prepaid, on this
14th day of October, 1992, to the following: Thomas A. Meehan,
Esq., WILLIAN BRINKS OLDS HOFER GILSON & LIONE, 1130 Edison Plaza,
Toledo, Ohio 43604-1537 and Greg Dziegielewski, Esq., BORG-WARNER
AUTOMOTIVE, INC., 6700 18½ Mile Road, P.O. Box 8022, Sterling Heights,
Michigan 48311-8022.

```
                         Robert C. Collins
                         BARNES, KISSELLE, RAISCH, CHOATE,
                              WHITTEMORE & HULBERT, P.C.
                         3500 Penobscot Building
                         Detroit, Michigan   48226
                         (313)  962-4790
```

WJW/RCC/bp

[WJW/77/bp]

-16-

Exhibit 2 page 32

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE    **FYI**

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

OCT 2 9 1992

RECEIVED IN
BOX INTERFERENCE

Butterfield et al,                    )
                                      )
        Junior Party,                 )
                                      )
    vs.                               )    Interference No. 102,923
                                      )    Examiner-in-Chief James R. Boler
                                      )
Melchior,                             )
                                      )
        Senior Party.                 )
_____/

## CERTIFICATE OF SERVICE

I hereby certify that a copies of the foregoing SENIOR PARTY'S RESPONSE TO JUNIOR PARTY'S OPPOSITION TO SENIOR PARTY'S MOTION FOR JUDGMENT UNDER 37 CFR 1.633(a); SENIOR PARTY'S RESPONSE TO JUNIOR PARTY'S OPPOSITION TO SENIOR PARTY'S MOTION TO REDEFINE INTERFERING SUBJECT MATTER UNDER 37 CFR 1.633(c); and SENIOR PARTY'S RESPONSE TO JUNIOR PARTY'S OPPOSITION TO SENIOR PARTY'S MOTION FOR BENEFIT UNDER 37 CFR 1.633(f), were sent by Federal Express, postage prepaid, on this __26th__ day of October, 1992, to the following: Thomas A. Meehan, Esq., WILLIAN BRINKS OLDS HOFER GILSON & LIONE, 1130 Edison Plaza, Toledo, Ohio 43604-1537 and Greg Dziegielewski, Esq., BORG-WARNER AUTOMOTIVE, INC., 6700 18½ Mile Road, P.O. Box 8022, Sterling Heights, Michigan 48311-8022.

                                Robert C. Collins
                                BARNES, KISSELLE, RAISCH, CHOATE,
                                    WHITTEMORE & HULBERT, P.C.
                                3500 Penobscot Building
                                Detroit, Michigan    48226
                                (313)  962-4790

WJW/RCC/bp
[WJW/77/bp]

_____

### CERTIFICATE OF MAILING (37 CFR 1.84)

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the: Commissioner of Patents and Trademarks, Washington, D.C. 20231.

ELLEN PSLIEK
(Type or print name of person mailing paper)

Date: __October 26, 1992__

(Signature of person mailing paper)

Exhibit 2 page 33

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing SUPPLEMENTAL SUBMISSION, was sent by telefax (Confirmation Copy by first class mail, postage prepaid), on this ___26th___ day of October, 1992, to the following, each of whom was sent a copy of the resumè and attachment by telefax on October 22, 1992: Thomas A. Meehan, Esq., WILLIAN BRINKS OLDS HOFER GILSON & LIONE, 1130 Edison Plaza, Toledo, Ohio 43604-1537, (telefax number: 1-419-244-8862) and Greg Dziegielewski, Esq., BORG-WARNER AUTOMOTIVE, INC., 6700 18½ Mile Road, P.O. Box 8022, Sterling Heights, Michigan 48311-8022, (telefax number: 1-313-726-6590).

Robert C. Collins
BARNES, KISSELLE, RAISCH, CHOATE,
    WHITTEMORE & HULBERT, P.C.
3500 Penobscot Building
Detroit, Michigan    48226
(313) 962-4790

WJW/RCC/bp

[WJW/77/bp]

---

**CERTIFICATE OF MAILING (37 CFR 1.8a)**

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the: Commissioner of Patents and Trademarks, Washington, D.C. 20231.

Date: ___October 26, 1992___

ELLEN PSUJEK
(Type or print name of person mailing paper)

(Signature of person mailing paper)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing SENIOR PARTY'S MOTION UNDER 37 CFR 1.635 TO STRIKE A PORTION OF "JUNIOR PARTY'S REPLY TO SENIOR PARTY'S OPPOSITION TO JUNIOR PARTY PRELIMINARY MOTION UNDER 37 CFR 1.633(e)(1)", was sent by Federal Express, postage prepaid, on this ___10th___ day of November, 1992, to the following: Thomas A. Meehan, Esq., WILLIAN BRINKS OLDS HOFER GILSON & LIONE, 1130 Edison Plaza, Toledo, Ohio 43604-1537 and Greg Dziegielewski, Esq., BORG-WARNER AUTOMOTIVE, INC., 6700 18½ Mile Road, P.O. Box 8022, Sterling Heights, Michigan 48311-8022.

                                    Robert C. Collins
                                    BARNES, KISSELLE, RAISCH, CHOATE,
                                        WHITTEMORE & HULBERT, P.C.
                                    3500 Penobscot Building
                                    Detroit, Michigan    48226
                                    (313)  962-4790

WJW/RCC/bp

[WJW/77/bp]

Exhibit 2 page 35

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing SENIOR PARTY'S MOTION UNDER 37 CFR 1.635 TO STRIKE "JUNIOR PARTY RESPONSE TO SENIOR PARTY'S OPPOSITION TO JUNIOR PARTY'S SECOND PRELIMINARY MOTION UNDER 37 CFR 1.633(c)(4)", OR IN THE ALTERNATIVE FOR LEAVE TO FILE A SUPPLEMENTAL OPPOSITION TO SUCH JUNIOR PARTY SECOND PRELIMINARY MOTION, was sent by Federal Express, postage prepaid, on this   10th   day of November, 1992, to the following: Thomas A. Meehan, Esq., WILLIAN BRINKS OLDS HOFER GILSON & LIONE, 1130 Edison Plaza, Toledo, Ohio 43604-1537 and Greg Dziegielewski, Esq., BORG-WARNER AUTOMOTIVE, INC., 6700 18½ Mile Road, P.O. Box 8022, Sterling Heights, Michigan 48311-8022.

                                Robert C. Collins
                                BARNES, KISSELLE, RAISCH, CHOATE,
                                    WHITTEMORE & HULBERT, P.C.
                                3500 Penobscot Building
                                Detroit, Michigan   48226
                                (313) 962-4790

WJW/RCC/bp

[WJW/77/bp]

-5-

Exhibit 2 page 36

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing SENIOR PARTY OPPOSITION TO JUNIOR PARTY PROVISIONAL MOTION UNDER 37 CFR 1.635 and 1.639(c) TO ORDER TAKING OF TESTIMONY, was sent by Federal Express, postage prepaid, on this ___10th___ day of November, 1992, to the following: Thomas A. Meehan, Esq., WILLIAN BRINKS OLDS HOFER GILSON & LIONE, 1130 Edison Plaza, Toledo, Ohio  43604-1537 and Greg Dziegielewski, Esq., BORG-WARNER AUTOMOTIVE, INC., 6700 18½ Mile Road, P.O. Box 8022, Sterling Heights, Michigan 48311-8022.

                    _____
                    Robert C. Collins
                    BARNES, KISSELLE, RAISCH, CHOATE,
                        WHITTEMORE & HULBERT, P.C.
                    3500 Penobscot Building
                    Detroit, Michigan   48226
                    (313)  962-4790

WJW/RCC/bp


[WJW/77/bp]

Exhibit 2 page 37

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PROVISIONAL MOTION FOR BENEFIT BY SENIOR PARTY PURSUANT TO 37 CFR 1.633(f), was sent by Federal Express, postage prepaid, on this ___10th___ day of November, 1992, to the following: Thomas A. Meehan, Esq., WILLIAN BRINKS OLDS HOFER GILSON & LIONE, 1130 Edison Plaza, Toledo, Ohio 43604-1537 and Greg Dziegielewski, Esq., BORG-WARNER AUTOMOTIVE, INC., 6700 18½ Mile Road, P.O. Box 8022, Sterling Heights, Michigan 48311-8022.

Robert C. Collins
BARNES, KISSELLE, RAISCH, CHOATE,
    WHITTEMORE & HULBERT, P.C.
3500 Penobscot Building
Detroit, Michigan    48226
(313) 962-4790

WJW/RCC/bp

[WJW/77/bp]

Exhibit 2 page 38

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PROVISIONAL SUPPLEMENTAL OPPOSITION BY SENIOR PARTY TO JUNIOR PARTY'S SECOND PRELIMINARY MOTION UNDER 37 CFR 1.633(c)(4), was sent by Federal Express, postage prepaid, on this __10th__ day of November, 1992, to the following: Thomas A. Meehan, Esq., WILLIAN BRINKS OLDS HOFER GILSON & LIONE, 1130 Edison Plaza, Toledo, Ohio 43604-1537 and Greg Dziegielewski, Esq., BORG-WARNER AUTOMOTIVE, INC., 6700 18½ Mile Road, P.O. Box 8022, Sterling Heights, Michigan 48311-8022.

                    Robert C. Collins
                    BARNES, KISSELLE, RAISCH, CHOATE,
                        WHITTEMORE & HULBERT, P.C.
                    3500 Penobscot Building
                    Detroit, Michigan   48226
                    (313) 962-4790

WJW/RCC/bp


[WJW/77/bp]

-4-

Exhibit 2 page 39

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing SENIOR PARTY OPPOSITION TO JUNIOR PARTY'S PRELIMINARY MOTION UNDER 37 CFR 1.633(f) IN SUPPORT OF ITS PENDING PRELIMINARY MOTION UNDER 37 CFR 1.633(e)(1), was sent by Federal Express, postage prepaid, on this _17_ day of November, 1992, to the following: Thomas A. Meehan, Esq., WILLIAN BRINKS OLDS HOFER GILSON & LIONE, 1130 Edison Plaza, Toledo, Ohio 43604-1537 and Greg Dzieqielewski, Esq., BORG-WARNER AUTOMOTIVE, INC., 6700 18½ Mile Road, P.O. Box 8022, Sterling Heights, Michigan 48311-8022.

Robert C. Collins, Esq.
BARNES, KISSELLE, RAISCH, CHOATE,
WHITTEMORE & HULBERT, P.C.
3500 Penobscot Building
Detroit, Michigan    48226
(313)  962-4790

WJW/RCC/bp

[WJW/79/bp]

-16-

Exhibit 2 page 40

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing NOTICE REGARDING ADDITIONAL INTERFERENCE was served on Party-Butterfield, this _19th_ day of November, 1992, by Federal Express, prepaid, addressed to: Thomas A. Meehan, Esq., WILLIAN BRINKS OLDS HOFER GILSON & LIONE, 1130 Edison Plaza, Toledo, Ohio 43604-1537 and Greg Dziegielewski, Esq., BORG-WARNER AUTOMOTIVE, INC., 6700 18½ Mile Road, P.O. Box 9022, Sterling Heights, Michigan 48311-8022.

Robert C. Collins
Registration No. 27,430
BARNES, KISSELLE, RAISCH, CHOATE,
    WHITTEMORE & HULBERT, P.C.
3500 Penobscot Building
Detroit, Michigan   48226
(313)  962-4790

WJW/RCC/bp
[WJW/76/bp]

-3-

Exhibit 2 page 41

I HEREBY CERTIFY THAT THIS CORRESPONDENCE IS BEING DEPOSITED
WITH THE UNITED STATES POSTAL SERVICE AS FIRST CLASS M   IN
AN ENVELOPE ADDRESSED TO:  COMMISSIONER OF PATEN.  AND
TRADEMARKS, WASHINGTON, D.C. 20231 ON:

November 20, 1992
                    (DATE OF DEPOSIT)

November 20, 1992
        (DATE OF SIGNATURE)

#47

FYI

NOV 23 1992

RECEIVED IN
BOX INTERFERENCE

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

### BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

| | | |
|---|---|---|
| Jean F. Melchior | ) | |
| | ) | |
| Senior Party | ) | |
| | ) | Interference No. 102,923 |
| V. | ) | |
| | ) | Examiner of Interferences: |
| Roger P. Butterfield et al. | ) | James R. Boler |
| | ) | |
| Junior Party | ) | |

Honorable Commissioner of
  Patents and Trademarks
Box Interference
Washington, D.C.  20231

### JUNIOR PARTY OPPOSITION TO SENIOR PARTY'S MOTION UNDER 37 CFR §1.635 TO STRIKE JUNIOR PARTY'S REPLY OR IN THE ALTERNATIVE FOR LEAVE TO FILE A SUPPLEMENTAL OPPOSITION

In connection with its 37 CFR 1.633(c)(4) Preliminary
Motion, Junior Party has filed a Reply to Senior Party's
Opposition.  Senior Party now seeks to strike that Reply, or,
in the alternative, to receive leave to file a response to
that Reply.

Junior Party hereby opposes the Motion to Strike, and
requests that such Motion be denied.

Exhibit 2 page 42

Junior Party consents to the granting of the Alternative Motion For Leave To File A Supplemental Opposition on the condition that it is granted subject to Leave for Junior Party to file a Supplemental Reply to Such Supplemental Opposition; otherwise, Junior Party opposes such Alternative Motion and requests that it be denied.

## Material Facts Set Forth In The Motion Which Are In Dispute

Again, Senior Party has not favored Counsel for Junior Party, or the Examiner of Interferences, with a "Statement of The Material Facts In Support of The Motion." Therefore, Junior Party cannot ascertain which of those facts are in dispute.

## Arguments Why The Relief Requested in The Motion Should Be Denied

Notwithstanding that Junior Party, on many prior occasions, has reminded Senior Party of its regulatory obligation under 37 CFR §1.637(a) to include with every motion "a statement of the material facts in support of the motion", Senior Party has again failed to include such a statement in the Motion at issue. Neither Junior Party nor the Examiner of Interferences should be required to exercise imagination in attempting to sort out "material facts" from "argument" in a stew that includes both. For this reason alone, the present Motion To Strike should be denied, and the Alternative Motion should be denied except on the granting of the condition stated by Junior Party.

No authority exists under the interference rules for "striking" any paper, and the Motion at issue does not attempt

- 2 -

Exhibit 2 page 43

to support its request for such an extraordinary remedy:  no
regulation, no statute, no case law.

37 CFR §1.618(a) ("Return of Unauthorized Papers")
provides for the return of any paper not authorized by, or
[ ] not in compliance with, the requirements of this
[INTERFERENCES] subpart."  Since Junior Party's Opposition was
an "authorized" paper, Senior Party's only possible objection
to it is that it was, somehow, not "in compliance" with the
applicable Rule.  However, the Examiner of Interferences is
respectfully reminded of the right of a party under such Rule
to thereafter file a "corrected paper" under the portion of
such rule which reads, "A party may be permitted to file a
corrected paper under such conditions as may be deemed
appropriate by an examiner-in-chief," further keeping in mind
the provisions of Rule 601 which require that "This
[INTERFERENCES] subpart shall be construed to secure the just,
speedy, and inexpensive determination of every interference."
(Emphasis supplied.)

With respect to the merits of Senior Party's contentions
regarding Junior Party's Reply, namely that Junior Party in
attempting to add new Counts is raising "totally new issues
not heretofore addressed," such contentions are patently
false.  Senior Party itself, in its March 25, 1992 filing
under 37 CFR §1.607 in its involved application, requested
that each of Claims 1-6 of the Junior Party involved patent be
a separate count in this interference.  Junior Party's
proposed provisional counts III, IV, V and VI are identical to
Claims 3-6 of its '023 patent and identical to Claims 55-58,
respectively, of Senior Party's involved application.  Senior
Party thus, in effect, has admitted that each of its Claims
55, 57 and 58 (and also Claim 56/Proposed Count IV) is a

- 3 -

Exhibit 2 page 44

"separate patentable invention."  Therefore, Senior Party
should not now be permitted to challenge the according of such
status to those claims.  In any event, it would be
unconscionable and a violation of the principle of estoppel to
permit Senior Party to now withdraw its treatment of such
claims as "separate patentable inventions" by granting a
Motion to Strike, without affording Junior Party, as the
movant in the motion at issue, a full opportunity to establish
what it previously thought was admitted by Senior Party in a
prior filing in connection with this Interference.

     With respect to a showing that each of proposed Counts
III, IV, V and VI is a separate patentable invention over
proposed Count II, which each of the Parties agrees is
separately patentable over Count I, Junior Party points out
the following differences between such proposed counts.

| Proposed Count II | Proposed Counts III and VI |
|---|---|
| 1.  The hydraulic operators are described as: "oppositely acting first and second hydraulic means." | The hydraulic operators are described as: "the first and second hydraulic means, are first and second oppositely acting hydraulic cylinders" (emphasis supplied). |

- 4 -

Exhibit 2 page 45