# EXHIBIT 2
## (PART II)

| 2.   The "varying" of the position of the ... camshaft relative to the crankshaft is accomplished by "transferring hydraulic fluid" from one of the hydraulic means to the other. | The "transferring" of hydraulic fluid is accomplished by providing "valve means" (this "reads on" the spool valve 92 of the '023 specification and drawing) for selectively permitting flow _out of_ one or another of the hydraulic means _to_ the other, and further by providing "check valve means" (check valves 84, 86 of the '023 specification and drawing) to permit flow _into_ only one or the other of the cylinders (emphasis supplied). |

This arrangement of a "valve means" and a "check valve means," in combination, is not shown in the Garcea patent (3,721,220), which Senior Party apparently considers to be the most pertinent prior art reference, given its reliance solely on Garcea in its Motion For Judgment Under 37 CFR §1.633(a) with respect to Claims 1 and 4.  Further, the "first and second _oppositely acting_ hydraulic cylinders" limitation does not read on the pistons 22 of Garcea, which _act in the same direction_.

In its Reply to Junior Party's Opposition To Senior Party's Motion To Redefine Interfering Subject Matter Under 37 CFR §1.633(c), Senior Party points out that the Bruss et al. patent, 4,627,825, does disclose a VCT system using first and second oppositely acting hydraulic means in the form of pistons 25.  However, Senior Party made no effort therein to establish why it would be "obvious" to rearrange the hydraulic cylinders of Garcea to meet the disclosure of Bruss et al., contrary to the explicit teachings of Garcea, and in spite of

- 5 -

Exhibit 2 page 46

the massive reconstruction of Garcea that would be required to accommodate the arrangement. Such a reconstruction, it is submitted, would be a "hindsight" reconstruction of Garcea, which is impermissible under 35 U.S.C. §103. See, Panduit Corp. v. Dennison Mfg. Co., 1 U.S.P.Q.2d 1593, 1602 (Fed. Cir. 1988), requiring some reasons for the selective combination of the features of the prior art, other than hindsight gleaned from the invention itself, to support the application of 35 U.S.C. §103.

Further, in its aforesaid Reply at page 3, Senior Party, while pointing out that Bruss et al. "discloses a three-position valving control arrangement that is effective to pressurize one of the two piston cylinders while venting the other of oil to a return sump 22," admits that Bruss et al. does not disclose or suggest any means for transferring hydraulic fluid from one of the two cylinders to the other for any purpose. Further, neither Garcea nor Bruss et al. discloses any structure corresponding to the "check valve means" of the Proposed Count III, which is also a feature of Proposed Count VI.

Accordingly, it is respectfully submitted that each of Proposed Counts III and VI is a "separate patentable invention" with respect to Count I and Proposed Count II under the standards of 37 CFR §1.601(n), notwithstanding the Garcea and Bruss et al. patents, alone or in any combination with one another that is permissible under 35 U.S.C. §103.

It is also submitted that each of Proposed Counts V and VI is a "separate patentable invention" with respect to proposed Count III by virtue of their dependency from Claim 4,

Exhibit 2 page 47

proposed Count IV, direct in the case of Proposed Count V and indirect in the case of Proposed Count VI.

In its Motion For Judgment Under 37 CFR §1.633(c) with respect to Claim 4 (and Claim 1) of the Junior Party involved patent, Senior Party, at page 3 thereof, apparently contends that the "engine control unit" of Claim 4 "reads on" (although not asserting this as a "material fact") the lever 40, linkage 44, accelerator pedal 45, the bottle 53, etc. of Garcea. However, the engine control unit of Claim 4 is an additional element in Junior Party's VCT system, an element over and above the conventional accelerator control system found in conventional automobiles, in that it is a "microprocessor" (column 2, lines 13-21) or an "electronic" engine control unit (column 6, lines 52-58) which controls the operation of the VCT system by controlling the operation of the spool valve 92. In comparison to the structure and function of the accelerator control system of Garcea, the "engine control unit" of Claim 4, as it is further specified in Claim 5/Proposed Count V and in Claim 6/Proposed Count VI, is novel because each of Proposed Counts V and VI requires that the controlled function, namely the function of "actuating" from Claim 4, be the function of "transferring hydraulic fluid [from one hydraulic means to the other] when permitted by a control signal from the engine control unit" (Claim 5/Proposed Count V).

The structure required by Claim 6/Proposed Count VI, which depends from Claim 5, is independently patentable over Proposed Count V because of its inclusion of material limitations with respect to "first and second oppositely acting hydraulic cylinders," a "valve for selectively permitting flow" and "check valve means," for the reasons set

- 7 -

Exhibit 2 page 48

forth above in support of the patentability of Proposed Count
III over Proposed Count II.  Further, Proposed Count VI is
independently patentable over Proposed Count III by virtue of
its inclusion of a material limitation with respect to an
"engine control unit" from its primary parent claim, Claim 4,
and the function of such engine control unit, as further
specified in its secondary parent claim, Claim 5.

Accordingly, it is respectfully submitted that each of
Proposed Counts V and VI is a "separate patentable invention"
with respect to Count I, Proposed Counts II and III and each
other under the standards of 37 CFR §1.601(n), notwithstanding
the Garcea and Bruss et al. patents alone or in any
combination with one another that is permissible under 35
U.S.C. §103.

It is also to be noted that Senior Party does not
disclose any embodiment having "first and second oppositely
acting hydraulic cylinders," which is a feature of Proposed
Counts III and VI, does not disclose any embodiment having the
combination of "valve means"/"check valve means," which is a
feature of Proposed Counts III and VI, and does not disclose
any embodiment having an "engine control unit," as defined in
Proposed Count IV, and as further limited by each of Proposed
Counts V and VI.  Thus, in any redeclaration of this
Interference based on one or more of Proposed Counts III-VI,
Junior Party will claim entitlement to judgment under 37 CFR
§1.633(a) and (g) on "right to make" (lack of support under 35
U.S.C. §112) grounds with respect to Senior Party's involved
and priority applications, respectively.

- 8 -

Exhibit 2 page 49

## Conclusion

For the reasons stated, the Examiner of Interferences should deny the Senior Party Motion to Strike which is at issue herein; further, if the Examiner of Interference does decide to grant Senior Party's Alternative Motion to file a Supplemental Opposition, such Alternative Motion should only be granted subject to the right of Junior Party, as the movant in the Preliminary Motion at issue, to file a Supplemental Reply.

Respectfully submitted,

Thomas A. Meehan
Lead Attorney
Registration No. 19,713

WILLIAN BRINKS OLDS
HOFER GILSON & LIONE
1130 Edison Plaza
Toledo, Ohio  43604-1537
(419) 244-6578

- 9 -

Exhibit 2 page 50

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Junior Party Opposition To Senior Party's Motion Under 37 CFR §1.635 To Strike Junior Party's Reply Or In The Alternative For Leave To File a Supplemental Opposition was served on counsel for Senior Party by Federal Express, prepaid, with confirmation copies by first class mail, postage prepaid, to Robert C. Collins, Esq., Barnes, Kisselle, Raisch, Choate, Whittemore & Hulbert, P.C., 3500 Penobscot Building, Detroit, Michigan 48226, and to Douglas E. Jackson, Esq., Larson and Taylor, 727 Twenty-Third Street, South, Arlington, VA 22202, this 20th day of November, 1992.

Thomas A. Meehan
Lead Attorney
Registration Number 19,713

- 10 -

Exhibit 2 page 51

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing SENIOR PARTY REPLY TO JUNIOR PARTY OPPOSITION TO SENIOR PARTY'S MOTION UNDER 37 CFR 1.635 TO STRIKE A PORTION OF "JUNIOR PARTY'S REPLY TO SENIOR PARTY'S OPPOSITION TO JUNIOR PARTY PRELIMINARY MOTION UNDER 37 CFR 1.633(e)(1)", was sent by Federal Express, postage prepaid, on this ___7th___ day of December, 1992, to the following: Thomas A. Meehan, Esq., WILLIAN BRINKS OLDS HOFER GILSON & LIONE, 1130 Edison Plaza, Toledo, Ohio 43604-1537 and Greg Dziegielewski, Esq., BORG-WARNER AUTOMOTIVE, INC., 6700 18½ Mile Road, P.O. Box 8022, Sterling Heights, Michigan 48311-8022.

                    Robert C. Collins, Esq.
                    BARNES, KISSELLE, RAISCH, CHOATE,
                        WHITTEMORE & HULBERT, P.C.
                    3500 Penobscot Building
                    Detroit, Michigan    48226
                    (313)  962-4790

WJW/RCC/bp

[WJW/79/bp]

Exhibit 2 page 52





IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

#53

RECEIVED

DEC 16 1992

Butterfield, et al,                    )
                                       )
          Junior Party,                )
                                       )
vs.                                    )    Interference No. 103 APPEALS
                                       )    Examiner-in-Chief PATENT R. Boler
                                       )    AND INTERFERENCES
Melchior,                              )
                                       )
          Senior Party.                )
_____)

SENIOR PARTY REPLY TO JUNIOR PARTY OPPOSITION TO
SENIOR PARTY'S MOTION UNDER 37 CFR 1.635 TO STRIKE
JUNIOR PARTY'S REPLY OR IN THE ALTERNATIVE FOR
LEAVE TO FILE A SUPPLEMENTAL OPPOSITION

     Junior Party filed a "Second" Preliminary Motion Under 37 CFR
1.633(c)(4) to redefine the subject Interference by designating
claims 3-6 of its involved patent as not corresponding to Count I.
Senior Party filed an Opposition thereto noting, among other
deficiencies, that Junior Party's Motion did not take into
consideration the fact that claims 3-6 of its involved patent define
interfering subject matter.    Junior Party then filed a "Reply"
proposing to add new Counts to the Interference identical to claims 3-
6 of its involved patent.

CERTIFICATE OF MAILING (37 CFR 1.8a)

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited
with the United States Postal Service on the date shown with sufficient postage as first class mail in an envelope
addressed to the: Commissioner of Patents and Trademarks, Washington, D.C. 20231.

                                        Ellen Psujek
                                        (Type or print name of person mailing paper)

Date:  December 7, 1992

                                        (Signature of person mailing paper)

-1-

Exhibit 2 page 53

Junior Party's "Reply" raises totally new issues that should have been incorporated in a timely filed Preliminary Motion to add new Counts, and thus goes far beyond the purpose of a "reply" as set forth in 37 CFR 1.638(b).    Indeed, such "Reply" constitutes an untimely back-door Motion under 37 CFR 1.633(c)(1) to add new Counts to the Interference.    Therefore, Senior Party has filed a Motion to Strike this Junior Party "Reply" pursuant to 37 CFR 1.618.

Junior Party has opposed Senior Party's Motion to Strike, and has requested that such Motion be denied.    However, Junior Party has consented to the granting of Senior Party's alternative Motion for Leave to File a Supplemental Opposition but only on the condition that Junior Party is also granted leave to file a Supplemental Reply to such Supplemental Opposition. Senior Party hereby does not consent to this conditional consent of Junior Party, but maintains its alternative Motion for Leave to File a Supplemental Opposition in the event of denial of Senior Party's Motion to Strike.

Motion to Strike

As set forth in Senior Party's Motion to Strike, the purpose of a "Reply" to opposition to any motion is to address points raised in such opposition, and not to present totally new issues for consideration.    37 CFR 1.638(b); 49 FR 48422; 1050 OG 411.    The purpose of a "Reply" is certainly not to afford Junior Party in this case an opportunity to file a back-door motion under 37 CFR 1.633(c)(1) to redefine the Interference by adding new Counts.    Such a motion should have been filed among the Preliminary Motions, and is therefore now untimely.    37 CFR 1.636(a).

Exhibit 2 page 54

In addition to raising totally new issues regarding Junior Party's proposed Counts, it has also been noted that Junior Party's "Reply" does not comply with the provisions of 37 CFR 1.637(c)(1)(v) regarding addition of new Counts in that Junior Party's "Reply" makes no attempt whatsoever to "show that each proposed count defines a separate patentable invention from every other count in the interference." Indeed, Junior Party only now, by way of its instant "Opposition," and again belatedly, seeks to make such an thrice-belated showing.

Therefore, it is believed and respectfully submitted that Junior Party's "Reply" to Senior Party's Opposition to Junior Party's Second Preliminary Motion Under 37 CFR 1.633(c)(4) is improper, untimely and incomplete, and therefore should be summarily stricken pursuant to 37 CFR 1.618.

Junior Party Opposition

Junior Party has opposed Senior Party's Motion to Strike, as best as can be determined, on three alleged grounds:

1.    Alleged failure to include a "Statement of the Material Facts in Support of the Motion";

2.    Allegedly that no authority exists under the Interference Rules for "striking" any paper; and

3.    An alleged "estoppel" arising from an alleged "admission" by Senior Party, in its request for Declaration of Interference in its involved application, in requesting that each of claims 1-6 of the Junior Party involved patent be preliminarily designated as a separate Count in this Interference.

Senior Party contests each and every one of these allegations.

-3-

Exhibit 2 page 55

<u>Arguments Why the Relief Requested In Senior Party Motion Should Be</u>
<u>Granted Despite Junior Party's Opposition Thereto</u>

1.    Junior Party asserts that Senior Party's Motion fails to comply with 37 CFR 1.637(a)(2) in that Senior Party's Motion supposedly does not include discussion under a subtitle or heading "Statement of Material Facts In Support of Motion."  Senior Party's Motion contains a brief and succinct statement of the precise relief requested, and statement of all material facts in support.  There is also a full and detailed discussion of the reasons why the relief should be granted.  The cited Rule does not require separate headings or subtitles.  This basis for opposition can be dismissed out of hand.

2.    Junior Party also complains that Senior Party's Motion only seeks to strike rather than return its "reply".  Since the "reply" consists in its entirety of improper subject matter, Senior Party was and is undoubtedly entitled to have the entire "reply" struck from the record. The authority of the Examiner-in-Chief under 37 CFR 1.618(a) to return an entire improper filing undoubtedly includes the authority to strike an entire filing when all of the same is improper.  Of course, Senior Party would not object if the Examiner-in-Chief were to de facto strike the entire Junior Party "reply" by returning the same to Junior Party as an Unauthorized Paper pursuant to 37 CFR §1.618(a).

3.    Junior Party attempts to avoid the fact that it has raised "totally new issues not heretofore addressed" in its "reply" by attempting to raise a specious argument of admission and estoppel. Junior Party would have this Board believe that up to now "it [Junior Party] previously thought" that Senior Party had admitted that each

Exhibit 2 page 56

of its claims 55, 57 and 58 (and also claim 56/proposed Count IV) is a "separate patentable invention over Count I and proposed Count II". It is respectfully submitted this is a totally false basis upon which Junior Party once again attempts to bootstrap further totally new issues and present further untimely filings that should have been presented long ago.

In copying all of the interfering claims 1-6 of Junior Party's involved '023 patent into Senior Party's involved application, and requesting that Interference be declared on this initial frame work with six Counts corresponding to each of the copied claims, Senior Party did not allege that each of the six proposed Counts at that stage was a separate patentable invention. Junior Party would have us believe that it so thought this was the case at that time, and then continued to so think until now.

First, it is certainly not inappropriate preliminarily to suggest, as Senior Party did, that multiple Counts be set up in an original declaration of Interference, when no record is yet made. Reduction of counts can then take place through preliminary motions, etc.

Secondly, in the declaration of the requested Interference, Examiner-in-Chief Boler selected Junior Party patent claim 1 as a proposed Count 1 and relegated the remaining claims 2-6 of Junior Party patent and claims 54-58 copied into the Senior Party application as corresponding to this single Count, i.e., an initial determination that proposed Counts 2-6 were not patentable over proposed Count I. Hence way back in the declaration of the Interference, the Patent Office raised the issue of patentability of Senior Party patent

-5-

Exhibit 2 page 57

claims 2-6 over Senior Party patent claim 1.  Is the Patent Office now estopped to decide otherwise?

Third, Senior Party long ago and repeatedly thereafter has asserted the unpatentability of Junior Party patent claims 1 and 4 in Senior Party's Motion for Judgment dated September 25, 1992.  In addition, in Senior Party's Preliminary Motion Under 37 CFR 1.633(c) To Redefine Interfering Subject Matter, also dated September 25, 1992, at page 5 thereof, Senior Party clearly pointed out that claims 54-55 and 57-58 of Senior Party's application, and claims 2-3 and 5-6 of Junior Party's patent patentably define over the unpatentable Count I, and therefore should be designated as not corresponding to Count I.  However, Senior Party also stated on page 5 third paragraph: "Rather, claims 54-55 and 57-58 of Senior Party's application, and claims 2-3 and 5-6 of Junior Party's patent, should be designated as <u>corresponding to</u> new/substitute Count II proposed above." (underscoring added).  Senior Party also pointed out in the second paragraph on page 5, that: "Claim 56 of Senior Party's application and claim 4 of Junior Party's patent are method claims that are essentially identical in substance to respective claims 53 and 1, and therefore <u>correspond to</u> Count I." (underscoring added).

Certainly if Junior Party was under any apprehension up to the filing of these papers on September 25, 1992 regarding Senior Party's position, the filing of the above-cited Senior Party Motion certainly should have put any such misthinking to rest.

Subsequently, on October 13, 1992 Senior Party gave further notice of its position when it filed "Senior Party's Opposition to Junior Party's First Preliminary Motion Under 37 CFR 1.633(c)(4)".

Exhibit 2 page 58

At the bottom of page 2 and top of page 3 of this Senior Party Opposition, Senior Party stated:

> "In summary, for the reasons set forth in Senior Party's Preliminary Motion to Redefine, Senior Party agrees that Junior Party's patent claim 2 defines patentable subject matter over claim 1/Count I. However, since Junior Party's claim 2 also defines interfering subject matter, it is necessary and appropriate to add a new Count II identical to Junior Party's patent claim 2 and to which Junior Party's patent claims 2-3 and 5-6 (together with Senior Party's corresponding application claims) correspond". (Underscoring added).

Junior Party was again given a third notice that Senior Party asserted that Junior Party patent claims are not patentable over Junior Party patent claim 1 in "Senior Party's Opposition to Junior Party's Second Preliminary Motion Under 37 CFR 1.633(c)(4)" dated October 13, 1992. On page 5 of this Senior Party Opposition, Senior Party's stated:

> "Thus, it is submitted that Junior Party's patent claims 3 and 5-6 are in fact patentable over claim 1/Count I, but are not patentable over claim 2. Thus, claims 2-3 and 5-6 should be designated as corresponding to Count II proposed by Senior Party in its Motion to Redefine. Junior Party patent claim 4 is not patentable over claim 1/Count I for reasons set forth above." (underscoring added).

A fourth notice was again given in "Senior Party's Response to Junior Party's Opposition To Senior Party's Motion To Redefine Interfering Subject Matter Under 37 CFR 1.633(c)" dated October 26, 1992. Senior Party requested on page 7 thereof:

> "6. Therefore, it is respectfully submitted that the only appropriate course of action is

> to add proposed Count II to the interference,
> and to designate Senior Party claims 54-55 and
> 57-58, and Junior Party claims 2-3 and 5-6 <u>as
> corresponding thereto</u>, and such action is
> respectfully requested." (underscoring added).

In view of the above facts of record, it is unconscionable that Junior Party would now falsely assert that (1) Senior Party in its Motion to Strike dated November 10, 1992, to which the Junior Party Opposition at issue is directed, for the first time asserted that Junior Party patent claims 3, 5 and 6 (Senior Party application claims 55, 57 and 58) were not "separate patentable inventions", and then (2) to further falsely state that this falsely alleged position of Senior Party was "now being withdrawn" with its November 10, 1992 Motion to Strike.

It is evident that Junior Party is grasping at straws in attempting to set up some "equitable" basis for filing yet another belated reply seeking to cure defects in its prior filings, defects which Senior Party long ago has duly pointed out in its timely filings. Junior Party has devoted all of pages 4 through 8 of its "Opposition" at issue to an attempt to argue belatedly the merits of the totally new "separate patentable invention" issues first improperly raised in Junior Party's "Reply" which Senior Party is seeking to have stricken or returned, thus again in its instant Opposition raising further totally new issues not heretofore addressed. These untimely, grossly belated Junior Party filings are clearly beyond the letter and spirit of the Interference Rules providing only for (1) a Motion, (2) an Opposition and (3) a Reply. These dilatory actions on the part of Junior Party are hardly in compliance with the provisions of Rule 601 (oft-cited by Junior

Exhibit 2 page 60

Party) which require that "This [INTERFERENCE] subpart shall be construed to secure the just, speedy, and inexpensive determination of every interference." (underscoring added to those policy provisions which Junior Party has consistently ignored).

For the foregoing reasons, Junior Party's Opposition to Senior Party's Motion to Strike Junior Party's Reply should be ignored and Junior Party's Motion to Strike should be granted, or alternatively, Junior Party's Reply returned as an improper paper.

Reply to Merits of Junior Party Opposition Arguments Regarding "Separate Patentable Inventions"

Since Junior Party has again filed another improper, belated and untimely reply to now belatedly address its argument for separate patentable inventions as to its proposed Counts III, V and VI, Senior Party is again improperly burdened with addressing these further new issues presented on pages 4-8 of the Junior Party Opposition at issue.

1. First of all, in formulating proposed Counts III and VI and determining patentability thereof over proposed Count II (to which both parties agree), the subject matter as defined in Count II must be taken to be prior art (37 CFR §1.601(n)). Therefore, referring to the method recited in proposed Count II, it is already a given that the presumed prior art provides "opposite acting first and second hydraulic means for varying the position of the at least one camshaft". It is also given that is done in the presumed prior art "by transferring hydraulic fluid from one of the first and second hydraulic means to the other first and second hydraulic means". Thus, as to the first distinction pointed out by Junior Party of its proposed Counts III and VI, the only difference is that the proposed

Counts III and IV hydraulic means are further defined therein as
<u>cylinders</u>.  This use of "cylinders" for opposite acting first and
second hydraulic means for varying the position of a camshaft relative
to its associated crankshaft is clearly disclosed in the prior art
Bruss et al patent 4,627,825, and as understood this is so admitted
by Junior Party.

      2.    The second distinction asserted by Junior Party between
proposed Counts III and VI over proposed Count II is that there be
provided "valve means" (such as spool valve 92 of the '023 patent),
and also that there be provided "check valve means".  However, since
it is presumbed to be old, per the language of proposed Count II, to
vary of the position of the camshaft relative to crankshaft by
transferring hydraulic fluid from one of the hydraulic means to the
other, and giving the broadest possible construction to the language
of proposed Counts III and VI, these "valve means" and "check valve
means" distinctions do not support patentability.  The Shirai patent
4,858,572, previously cited by Senior Party, but conveniently ignored
by Junior Party, provides such spool valve and check valve structure
needed to make this obvious modification, once it is presumed to be
old that the camshaft/crankshaft "varying" is to be accomplished by
transferring hydraulic fluid from one of the hydraulic cylinders to
the other.  Moreover, it is to be noted that Garcea 3,721,220 also
discloses a back check valve 29 for each of its hydraulic cylinders,
even though they act in the same direction.  Hence, it is respectfully
submitted that Junior Party's proposed Counts III and VI are not
patentable over proposed Count II.

Exhibit 2 page 62

Junior Party also asserts that its proposed Counts V and VI are "separate patentable inventions" with respect to proposed Count III by virtue of dependency from claim 4 (proposed Count IV), direct or successive. That is, Junior Party asserts that the only "patentable" distinction between its claims 5 and 6 (proposed Counts V and VI) and its claim 3 (proposed Count III) lies in the recitation of the "engine control unit" in claim 4 and the "control signal" in claim 5. In this regard, Junior Party relies on the recitation in its proposed Count IV of an "engine control unit for controlling the operation of the engine", and further, the recitation of "actuating, in response to a control signal from the engine control unit, the means for varying the position..." In support of this argument, Junior Party again impermissibly attempts to read limitations into claim 4 not present in the language of claim 4 (proposed Count IV), i.e., "microprocessor" or "electronic". This of course violates well recognized rules of count formulation. There is no recitation of either a "microprocessor" or "electronic" control signal in Junior Party claim 4.

Moreover, Junior Party fails to address the showings of the "microprocessor" and "electronic" engine control units disclosed in both Bruss et al 4,627,825 and Shirai et al 4,858,572: see column 3, lines 56-60 of Shirai '572, i.e., solenoid 68 receives an order or a command from a controller 82 in the form of a microcomputer, and likewise the electronic circuitry of FIGS. 7 or 8 of Bruss et al '825, as described at column 5, lines 23-68 and column 6, lines 1-15. Hence, even if such limitations are impermissably read into claim

Exhibit 2 page 63

4, the same do not lend patentability thereto over Bruss et al '825 and/or Shirai et al '572.

Likewise, for the reasons set forth above, Junior Party claim 6 (proposed Count VI), which depends from claim 5, is not patentable over claim 5 (proposed Count V) and proposed Count VI is not patentable over proposed Count III.

Accordingly, it is respectfully submitted that Count I, as well as proposed Count IV, are not patentable for the reasons set forth in Senior Party's Motion for Judgment Under 37 CFR 1.633(a) over Garcea 3,721,220, and that Junior Party's proposed provisional Counts III, IV, V and VI are not separate patentable inventions over proposed Count II, much less over each other.

The last paragraph on page 8 of Junior Party "Opposition" at issue is a gratuitous argument and disguised premature "motion" of "no right to make," and as such this paragraph can be ignored as non-relevant to Senior Party Motion to Strike at issue. Nonetheless, it does evidence Junior Party's unending desire to fill the Patent Office with further untimely and redundant filings.

Conclusion

For the reasons stated, Senior Party Motion to Strike (or Return) which is at issue here should be granted; or in the alternative, Senior Party should be unconditionally granted leave to file the Provisional Supplemental Opposition to Junior Party's base motion

-12-

Exhibit 2 page 64

and Provisional Motion for Benefit (both enclosed with Senior Party's Motion to Strike) with respect to the Counts proposed in Junior Party's "Reply".

Respectfully submitted,

BARNES, KISSELLE, RAISCH, CHOATE,
    WHITTEMORE & HULBERT, P.C.

By:_____
    Robert C. Collins
    Registration No. 27,430
    Telephone: (313) 962-4790

WJW/RCC/bp
[WJW/80/bp]

-13-

Exhibit 2 page 65

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing SENIOR PARTY REPLY TO JUNIOR PARTY OPPOSITION TO SENIOR PARTY'S MOTION UNDER 37 CFR 1.635 TO STRIKE JUNIOR PARTY'S REPLY OR IN THE ALTERNATIVE FOR LEAVE TO FILE A SUPPLEMENTAL OPPOSITION, was sent by Federal Express, postage prepaid, on this ___7th___ day of December, 1992, to the following: Thomas A. Meehan, Esq., WILLIAN BRINKS OLDS HOFER GILSON & LIONE, 1130 Edison Plaza, Toledo, Ohio 43604-1537 and Greg Dziegielewski, Esq., BORG-WARNER AUTOMOTIVE, INC., 6700 18½ Mile Road, P.O. Box 8022, Sterling Heights, Michigan 48311-8022.

                         Robert C. Collins, Esq.
                    BARNES, KISSELLE, RAISCH, CHOATE,
                         WHITTEMORE & HULBERT, P.C.
                    3500 Penobscot Building
                    Detroit, Michigan    48226
                    (313)  962-4790

WJW/RCC/bp

[WJW/80/bp]

Exhibit 2 page 66

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing SENIOR PARTY'S OPPOSITION TO JUNIOR PARTY'S MOTION UNDER 37 CFR 1.605 TO PERMIT FILING OF SUPPLEMENTAL OPPOSITION TO SENIOR PARTY'S RESPONSE TO JUNIOR PARTY'S OPPOSITION TO SENIOR PARTY'S MOTION FOR JUDGMENT UNDER 37 CFR 1.633(a) was sent by Federal Express, postage prepaid, on this 23rd day of December, 1992, to the following:  Thomas A. Meehan, Esq., WILLIAN BRINKS OLDS HOFER GILSON & LIONE, 1130 Edison Plaza, Toledo, Ohio 43604-1537, and Greg Dziegielewski, Esq., BORG-WARNER AUTOMOTIVE, INC., 6700 18½ Mile Road, P.O. Box 8022, Sterling Heights, Michigan 48311-80922.

Robert C. Collins
Registration No. 27,430
BARNES, KISSELLE, RAISCH, CHOATE,
WHITTEMORE & HULBERT, P.C.
3500 Penobscot Building
Detroit, Michigan  48226
(313) 962-4790

WJW/RCC/ds

[DS-49/RCC]

-4-

Exhibit 2 page 67

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing SENIOR PARTY'S PROPOSED REPLY TO JUNIOR PARTY PROPOSED SUPPLEMENTAL OPPOSITION TO SENIOR PARTY'S RESPONSE TO JUNIOR PARTY'S OPPOSITION TO SENIOR PARTY'S MOTION FOR JUDGMENT UNDER 37 CFR Section 1.633(a) was sent by Federal Express, postage prepaid, on this 23rd day of December, 1992, to the following: Thomas A. Meehan, Esq., WILLIAN BRINKS OLDS HOFER GILSON & LIONE, 1130 Edison Plaza, Toledo, Ohio 43604-1537, and Greg Dziegielewski, Esq., BORG-WARNER AUTOMOTIVE, INC., 6700 18½ Mile Road, P.O. Box 8022, Sterling Heights, Michigan 48311-80922.

                          Robert C. Collins
                          Registration No. 27,430
                          BARNES, KISSELLE, RAISCH, CHOATE,
                          WHITTEMORE & HULBERT, P.C.
                          3500 PENOBSCOT BUILDING
                          Detroit, Michigan 48226
                          (313) 962-4790

WJW/RCC/ds

[DS-49/RCC]

-9-

Exhibit 2 page 68

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing SENIOR PARTY OPPOSITION TO JUNIOR PARTY MOTION UNDER 37 CFR §1.635 and 1.640(a) TO CONDUCT ORAL HEARING WITH RESPECT TO PENDING MOTIONS AND PRELIMINARY MOTIONS was served on counsel for Junior Party by facsimile transmission, with confirmation copies by first class mail, postage prepaid, on this 23rd day of March, 1993, to the following: THOMAS A. MEEHAN, ESQ., Willian Brinks Olds Hofer Gilson & Lione, 1130 Edison Plaza, Toledo, Ohio 43604-1537 and GREG DZIEGIELEWSKI, ESQ., Borg-Warner Automotive, Inc., 6700 18½ Mile Road, P.O. Box 8022, Sterling Heights, Michigan 48311-8022.

Robert C. Collins
BARNES, KISSELLE, RAISCH, CHOATE,
    WHITTEMORE & HULBERT, P.C.
3500 Penobscot Building
Detroit, Michigan   48226
(313)  962-4790

WJW/RCC/bp

[WJW/82/bp]

Exhibit 2 page 69

#64

FYI

MAY 10 1993

RECEIVED IN
BOX INTERFERENCE

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

Butterfield et al            )
                             )
        Junior Party,        )
                             )
vs.                          )        Interference No. 102,923
                             )        Examiner-in-Chief William F. Pate
                             )
Melchior,                    )
                             )
        Senior Party.        )
_____/

### SERVICE OF PRELIMINARY STATEMENT

I hereby certify that the Senior Party's PRELIMINARY STATEMENT was served on Junior Party Butterfield et al, by first class mail, postage prepaid, on this 5 *th* day of May, 1993, to the following: Thomas A. Meehan, Esq., WILLIAN BRINKS OLDS HOFER GILSON & LIONE, 1130 Edison Plaza, Toledo, Ohio 43604-1537 and Greg Dziegielewski, Esq., BORG-WARNER AUTOMOTIVE, INC., 6700 18½ Mile Road, P.O. Box 8022, Sterling Heights, Michigan 48311-8022.

By: _____
    ROBERT C. COLLINS, (Reg. No. 27,430)
    BARNES, KISSELLE, RAISCH, CHOATE,
        WHITTEMORE & HULBERT, P.C.
    3500 Penobscot Building
    Detroit, Michigan  48226
    (313)  962-4790

WJW/RCC/bp
[WJW/84/bp]

---

### CERTIFICATE OF MAILING (37 CFR 1.8(a))

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the: Commissioner of Patents and Trademarks, Washington, D.C. 20231.

ELLEN PSUJEK
(Type or print name of person mailing paper)

Date: May 5, 1993

_____
(Signature of person mailing paper)

Exhibit 2 page 70

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing FILING OF SENIOR PARTY TESTIMONY UNDER CROSS-EXAMINATION with copies of the "correction pages" and pages bearing notarized witness signatures, but not including the transcripts themselves, was served on counsel for Junior Party by Federal Express courier, with confirmation copies by first class mail, postage prepaid, on this 23rd day of November, 1993, to THOMAS A. MEEHAN, ESQ., Willian Brinks Olds Hofer Gilson & Lione, 1130 Edison Plaza, Toledo, Ohio 43604-1537 and to GREG DZIEGIELEWSKI, ESQ., Borg-Warner Automotive, Inc., 6700 18½ Mile Road, P.O. Box 8022, Sterling Heights, Michigan 48311-8022.

Robert C. Collins, Esq.
BARNES, KISSELLE, RAISCH, CHOATE,
WHITTEMORE & HULBERT, P.C.
3500 Penobscot Building
Detroit, Michigan 48226
(313) 962-4790

WJW/RCC/srs

Exhibit 2 page 71

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing NOTICE OF INCORRECT FILING OF SENIOR PARTY TESTIMONY UNDER CROSS-EXAMINATION was served on counsel for Junior Party by first class mail, postage prepaid, on this 15th day of December, 1993, to the following:  Thomas A. Meehan, Esq., WILLIAN BRINKS OLDS HOFER GILSON & LIONE, 1130 Edison Plaza, Toledo, Ohio 43604-1537 and Greg Dziegielewski, Esq., BORG-WARNER AUTOMOTIVE, INC., 6700 18½ Mile Road, P.O. Box 8022, Sterling Heights, Michigan 48311-8022.

Robert C. Collins
Registration No. 27,430
BARNES, KISSELLE, RAISCH, CHOATE,
WHITTEMORE & HULBERT, P.C.
3500 Penobscot Building
645 Griswold Street
Detroit, Michigan  48226-4217

WJW/RCC/ds

[DS-60/RCC]

Exhibit 2 page 72

#79

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES                    FYI

'JAN 3 1 1994

| | | |
|---|---|---|
| Roger P. Butterfield et al. | ) | |
| | ) | RECEIVED IN |
| Junior Party | ) | BOX INTERFERENCE |
| | ) | |
| v. | ) | Interference No. 102,923 |
| | ) | |
| Jean F. Melchior | ) | Examiner-in-Chief |
| | ) | William F. Pate, III |
| Senior Party | ) | |

Honorable Commissioner of
    Patents and Trademarks
Box Interference
Washington, D.C.  20231


JUNIOR PARTY OPENING BRIEF
FOR FINAL HEARING

Willian Brinks Hofer
   Gilson & Lione
Suite 1130 Edison Plaza
Toledo, Ohio  43604-1537
Telephone:  (419) 244-6578
Facsimile:  (419) 244-8862
By:  Thomas A. Meehan
       Registration 19,713
Attorney For Junior Party

P/S c fm 1/26/94

"RIBBON COPY FOR PARTY Butt"

Exhibit 2 page 73

# TABLE OF CONTENTS

**Page**

Table of Authorities .......... 5

Statement of The Issues Presented
For Decision In the Interference .......... 7

Background of the Interference .......... 9

Arguments .......... 13

  I.   The Examiner-In-Chief Erred In Holding Claims 1
And 4 of Junior Party's Involved Patent To Be
Unpatentable Over U.S. Patent 3,721,220 (Garcea) .......... 13

    A.  Background .......... 13

    B.  Burden of Proof - Presumption of Validity .......... 16

    C.  Claim 1 of Junior Party's Involved Patent
Is Patentable Over Garcea '220 .......... 19

    D.  Claim 4 of Junior Party's Involved Patent
Is Patentable Over Garcea '220 .......... 24

  II.  The Examiner-In-Chief Erred In Refusing To
Hold That Each Of Claims 3-6 Of Junior Party's
Involved Patent Is Directed To A Separate
Patentable Invention And Does Not Correspond
To The Count .......... 27

    A.  Background .......... 27

    B.  Argument .......... 28

  III.  Junior Party Conceived The Invention of The
Count Prior to Any Date On Which Senior Party
Is Entitled To Rely And Can Prove. .......... 38

    A.  Senior Party is Not Entitled To Rely
On Any Date Prior To October 28, 1988 .......... 38

    B.  Junior Party Conceived The Invention Of
The Count Long Prior To Senior Party's
Claimed Conception Date of October 28,
1988, To Wit, On or About March 17, 1988 .......... 39

Exhibit 2 page 74

Page

IV.   Junior Party Was Reasonably Diligent In Reducing
      The Invention Of The Count To Practice From A
      Time Prior To Any Provable Date Of Conception
      That Senior Party Is Entitled To Rely On                  41

      A.   Junior Party Began The Exercise Of Reasonable
           Diligence No Later Than Early Summer 1988             41

      B.   Junior Party Actually Reduced The Invention
           Of The Count To Practice On Or About
           February 14, 1989 And/Or February 23, 24, 1989
           And Was Reasonably Diligent In Its Efforts
           Leading To Such Reduction To Practice At All
           Times From A Time Prior To Senior Party's
           Claimed October 28, 1988 Conception Date              43

      C.   Conclusion                                            45

V.    Subsequent To Its Date(s) Of Actual Reduction To
      Practice On Or About February 14, 1989 And/Or
      February 23, 24, 1989 Until Its Constructive Reduction
      To Practice On October 16, 1989, Junior Party
      Continued To Be Reasonably Diligent In Its Efforts
      To Further Reduce The Invention Of The Count To
      Practice; In Any Event, Junior Party Is Not Guilty
      Of Suppression Or Concealment Of The Invention
      During This Period Of Time                                 46

      A.   March 1989                                            46

      B.   April 1989                                            47

      C.   May 1989                                              48

      D.   June 1989                                             48

      E.   July 1989                                             50

      F.   August 1989                                           51

      G.   September 1989                                        52

      H.   October 1989 and Beyond                               53

      I.   Conclusion                                            53

-3-

Exhibit 2 page 75

Page

VI.   Senior Party Is Not Entitled To A Finding That It
      Was Reasonably Diligent In Its Efforts To Reduce
      The Invention Of The Count To Practice At Any Time
      Prior To Its January 13, 1989 French Priority Date      54

Conclusions                                                   55

Appendix (Count II)                                           57

-4-

Exhibit 2 page 76

#82

## TABLE OF AUTHORITIES

**Cases**                                                                **Page**

Buildex, Inc. v. Kason Indus. Inc., 849 F.2d 1461,
   7 USPQ2d 1325 (Fed. Cir. 1988)                              18

Coleman v. Dines, 754 F.2d 353, 224 USPQ 857
   (Fed. Cir. 1985)                                            40

Colorado v. New Mexico, 467 U.S. 310 (1983)                    18

DeGeorge v. Bernier, 768 F.2d 1318,
   226 USPQ 750 (Fed. Cir. 1985)                               25

Dewey v. Lawton, 347 F.2d 629, 146 USPQ 187
   (CCPA 1965)                                                 53-54

Graham v. John Deere, 383 U.S.1, 148 USPQ 459 (1966)           18

Lamont v. Berguer, 7 USPQ2d 1580
   (BPAI 1988) (expanded panel)                                17, 25

Langevin v. Nicholson, 110 F.2d 687,
   45 USPQ92 (CCPA 1940)                                       17

Mead v. McKirnow, 199 USPQ 513 (CCPA 1978)                     25

In re Nelson, 420 F.2d 1079,
   164 USPQ 458 (CCPA 1970)                  41, 46, 53, 55

Okada v. Hitosumachi, 16 USPQ2d 1789
   (Comm'r Pats 1990)                                          17

Panduit v. Dennison Mfg. Co., 810 F.2d 1561,
   1 USPQ2d 1593 (Fed. Cir. 1987)                              35

Price v. Symsek, 988 F.2d 1187
   26 USPQ2d 1031 (Fed. Cir. 1993)                             17, 18

Radio Corporation of America v.
   Radio Eng'g Lab. Inc., 293 U.S.1,
   21 USPQ 353 (1934)                                          17

Richardson v. Suzuki Motor Co., 868 F.2d 1226,
   9 USPQ2d 1913, (Fed. Cir. 1989)                             18

In re Van Geuns, 988 F.2d 1181, 26 USPQ2d 1057
   (Fed. Cir. 1993)                                            37

Weisner v. Weigert, 666 F.2d 582, 212 USPQ 721
   (CCPA 1981)                                                 45, 53

-5-

Exhibit 2 page 77

#82

**Statutes**                                                    **Page**

35 U.S.C. §102                                                   18
35 U.S.C. §102(g)                                            29, 41
35 U.S.C. §103                                25, 29, 30, 31, 35, 36
35 U.S.C. §104                                                   38
35 U.S.C. §112                                                   37
35 U.S.C. §119                                                   38
35 U.S.C. §282                                               17, 24, 31
35 U.S.C. §365                                                   38


**Other Authorities**                                           **Page**

37 CFR §1.601                                                    23
37 CFR §1.601(n)                                             28, 36
37 CFR §1.607                                                33, 37
37 CFR §1.624                                                    38
37 CFR §1.628                                                    38
37 CFR §1.629                                                    38
37 CFR §1.633(a)          12, 14, 16, 19, 26, 27, 28, 32, 34, 37
37 CFR §1.633(c)                                             32, 35, 38
37 CFR §1.633(c)(4)                          12, 24, 27, 28, 32, 37
37 CFR §1.633(g)                                             32, 37
37 CFR §1.635                                                32, 38
37 CFR §1.637(b)                                                 32
37 CFR §1.637(c)(1)(v)                                           33
37 CFR §1.638                                                    32
37 CFR §1.639(b)                                                 14
37 CFR §1.655(a)                                             23, 37
37 CFR §1.656(h)                                                 38

Exhibit 2 page 78

STATEMENT OF THE
ISSUES PRESENTED FOR
DECISION IN THE INTERFERENCE

I.    Did the Examiner-In-Chief err in holding Claims 1 and 4
      of Junior Party's involved patent to be unpatentable over
      U.S. Patent 3,721,220 (Garcea)?

II.   Did the Examiner-In-Chief err in refusing to hold that
      each of Claims 3-6 of Junior Party's involved patent is
      directed to a separate patentable invention and does not
      correspond to the Count?

III.  Did the Junior Party conceive the invention of the Count
      prior to the Senior Party's claimed October 28, 1988
      conception date and prior to its January 13, 1989 French
      priority date?

IV.   Did the Junior Party actually reduce the invention of the
      Count to practice in the United States on or about
      February 14, 1989 and/or on or about February 23, 1989?

V.    Was Junior Party reasonably diligent in its efforts to
      reduce the invention of the Count to practice from a time
      prior to Senior Party's claimed October 28, 1988
      conception date and prior to its January 13, 1989 French
      priority date until Junior Party's claimed February 14,
      1989 and/or February 23, 1989 actual reduction to
      practice date(s)?

VI.   Was Junior Party's activities between its claimed date(s)
      of actual reduction to practice of February 14, 1989
      and/or February 23, 1989 until its October 16, 1989 date
      of constructive reduction to practice adequate to
      constitute continuing reasonable diligence leading to a

-7-

Exhibit 2 page 79

reduction to practice and/or to avoid a finding of
suppression or concealment?

VII. Is Senior Party's claim of diligence between its claimed
October 28, 1988 conception date and its January 13, 1989
French priority date supported by the evidence?

-8-

Exhibit 2 page 80

## BACKGROUND OF THE INTERFERENCE

The Count in this interference, a verbatim duplication of Claim 2 of Junior Party's involved patent (U.S. Patent 5,002,023), relates to a method for varying the phase angle between a crankshaft and a camshaft of an internal combustion engine. Methods of this type are often referred to as "VCT" (variable camshaft timing) or "VVT" (variable valve timing) systems, and are beneficial in controlling the operation of an internal combustion engine, specifically an automobile engine, to provide better performance of one or more of its operating characteristics, such as idle quality, fuel economy, reduced emissions or increased torque.

Succinctly stated, the VCT system of the Count of this interference is a self-actuated, hydraulic system. The self-actuation feature is based on the use of the inherent torque pulsations experienced by an internal combustion engine camshaft as it sequentially opens and closes the engine valves that are operated by it. These torque pulses are put to beneficial use in a VCT system of the Count as a motive force to pump hydraulic fluid, preferably engine oil, from one of two opposed hydraulic operators to the other, or vice versa. The operation of the hydraulic operators is effective to "advance " the rotational position of the camshaft relative to that of the crankshaft, or to "retard" such rotational position, depending on the direction of the hydraulic fluid flow between the hydraulic operators.

The use of a self-actuation or torque pulse actuation feature of a VCT system of the Count, as opposed to using a separate hydraulic fluid pump or an oversized engine oil pump, simplifies the VCT system, and it speeds up its response time

-9-

Exhibit 2 page 81

to permit the VCT system to more quickly respond to changes in engine operating loads or speeds.

The Junior Party involved patent was filed on October 16, 1989, and is based on one of a pair of alternative embodiments of the VCT system of the Count which were conceived by the Junior Party inventors on or about March 17, 1988. This activity is confirmed by the testimony of each of the named Junior Party inventors and is corroborated by separate sketches of alternative embodiments of such a VCT system each bearing the date of March 17, 1988. The fact of the conception of such a system as of a time frame shortly thereafter is corroborated by the deposition testimony of no less than two (2) of their fellow employees at its Ithaca, New York facility of the Borg-Warner Automotive ("BWA") organization, each with a strong engineering background, to whom the involved Junior Party patent application and patent was assigned.

A high degree of promise in the torque-pulse actuated hydraulic VCT system that had been conceived in March 1988 by the Junior Party inventors was very quickly recognized by their superiors in the BWA organization, and a substantial research and development program directed to the development of operable hardware was approved and funded by BWA by early Summer 1988. Substantial activity under this program was underway by July 1988 and continued unabated thereafter until the October 1989 filing date of the involved patent (and, indeed, for years thereafter). During this development activity, BWA's work relative to a VCT system according to the Count was disclosed to its target customer, Ford Motor Company ("Ford"), initially in general terms and later, after entry into a confidentiality agreement on or about August 17, 1988, in much more detail. Frequent and detailed discussions

-10-

Exhibit 2 page 82

between representatives of BWA and Ford with respect to the subject matter of the Count took place thereafter.

The first prototype hardware corresponding to the Count was tested and documented on at least two occasions in February 1989. This testing, in conjunction with contemporaneous computer calculations, confirmed the main question as to the feasibility of the system, namely that the magnitude of the torque pulses in an automotive engine camshaft would be adequate to operate the phase changing hydraulic operators.

Equipment and process development work relating to a self-actuating hydraulic VCT system that was conceived by the Junior Party inventors intensified further after the testing of the prototype in February 1989, as more engineering and technical personnel were added to the project. Thus, by the October 1989 filing date of the Junior Party involved patent, BWA had expended many hundreds of thousands of Dollars in support of the development of the technology of the Count.

The Senior Party involved application was filed in the United States on September 13, 1990 and claimed, and was later held to be entitled to, the benefit of a PCT filing date of January 5, 1990 and a French filing date of January 13, 1989. Senior Party did not prove, and has not claimed, the benefit of any development activity in the United States prior to its French priority date with respect to its activity under the Count. Senior Party's sole claim with respect to activity in the United States under the Count relates to a verbal and slide presentation depicting some, but not all, of the features of its involved application to a group of General Motors employees. The presentation was made in conjunction with a presentation of another disclosure not encompassed by

-11-

Exhibit 2 page 83

the Count at a General Motors facility in Warren, Michigan on
October 28, 1988, and no written materials disclosing the
invention of the Count were left with the General Motors
personnel at the conclusion of the combined presentation.
Furthermore, the originals of the materials that were claimed
to have been shown to the General Motors personnel were
apparently discarded, and were not available for review by
Junior Party during the testimony phase of this interference.
In any case, this presentation, which lasted approximately
one-half day according to the testimony of the Senior Party
witnesses, was more than 3 months after the implementation of
an aggressive research and development program with respect to
torque-pulse actuated, hydraulic VCT technology by BWA with
respect to the invention of the Count.  Moreover, neither
Senior Party nor any of its agents did anything further in the
United States with respect to the subject matter of the Count
prior to its French priority date, some 2-1/2 months later.

     During the preliminary motion period in this
interference, the Examiner of Interferences granted Senior
Party's motion under 37 CFR §1.633(a) and held, over Junior
Party's opposition, that Claims 1 and 4 of Junior Party's
involved patent were anticipated by a file wrapper reference
in Junior Party's involved patent.  Since the interference had
originally been declared based on a single Count that was a
verbatim duplication of Claim 1 of the involved patent, this
action necessitated a redeclaration of the interference, and
the interference was redeclared based on its present Count.
The Examiner of Interferences also denied Junior Party's
[second] preliminary motion under 37 CFR §1.633(c)(4) to have
Claims 3, 5 and 6 of its involved patent to be directed to

-12-

Exhibit 2 page 84

separate patentable inventions from the original Count.[1]
Junior Party intends to argue that these preliminary motions
were erroneously decided, at least in part if not wholly.[2]

ARGUMENTS

I.    The Examiner-In-Chief Erred In Holding Claims 1 And 4 Of
      Junior Party's Involved Patent To Be Unpatentable Over
      U.S. Patent 3,721,220 (Garcea).


A.    Background

      This interference was originally declared, following the
copying of claims from Junior Party's issued involved patent
into a pending Senior Party application, based on a Count, now
identified as Count I, which was a verbatim duplication of
Claim 1 of Junior Party's involved patent.  Such claim reads
as follows:

> In an internal combustion engine having
> a crankshaft, at least one camshaft, the
> at least one camshaft being position
> variable relative to the crankshaft and
> being subject to torque reversals during
> the operation thereof, and means for
> varying the position of the at least one
> camshaft relative to the crankshaft, the
> method comprising:
>
> actuating means [sic, "the means"] for
> varying the position of the at least one
> camshaft relative to the crankshaft in

---

[1]The motion was also based on the asserted independent
patentability of Claim 4 over the original count, but was
rendered moot as to Claim 4 by virtue of the holding that Claim 4
was anticipated by a file wrapper prior art reference.

[2]No preliminary motion period was set as to the redeclared
interference, and Junior Party was never given the opportunity to
move for the independent patentability of Claims 3, 5 and 6 over
the "new" count.

-13-

Exhibit 2 page 85

reaction to torque reversals in the at
least one camshaft.

Senior Party moved under 37 CFR §1.633(a) for judgment
that such Claim 1, together with Claim 4 of the Junior Party
involved patent, was not patentable to Junior Party as being
"anticipated by Garcea 3,721,220" ("'220"), a file wrapper
reference in the application on which the involved Junior
Party patent was granted.

Claim 4 of Junior Party's involved patent, as to which
the motion also applied and was eventually granted, reads as
follows:

>In an internal combustion engine have a
>crankshaft, at least one camshaft, and an
>engine control unit for controlling the
>operation of the engine, the at least one
>camshaft being position variable relative
>to the crankshaft and being subject to
>torque reversals, the method of varying
>the position of the at least one camshaft
>relative to the crankshaft comprising:
>
>actuating, in response to a control signal
>from the engine control unit, the means
>for varying the position of the at least
>one camshaft in reaction to torque
>reversals in the at least one camshaft.

The motion with respect to the patentability of Claims 1
and 4 of Junior Party's involved patent contained the
following [claims] "charts," (which were supported only by
attorney argument, as opposed to testimonial affidavit
evidence of the type permitted under 37 CFR 1.639(b)):

| Butterfield 5,002,023 Claim 1 | Garcea 3,721,220 |
|---|---|
| In an internal | Col 1, line 14; |

-14-

Exhibit 2 page 86

combustion engine

having a crankshaft,                     Col 1, line 18;
                                         Col 4, lines 15-16;

at least one camshaft,                   Camshaft 7 - Col 4,
                                         line 13;

the at least one                         Col 2, lines 39-56;
camshaft being position                  Col 3, lines 20-67;
variable relative to the                 Col 4, lines 17-66;
crankshaft and being                     Col 5, lines 50-75;
subject to torque reversals              Col 6, lines 1-11;
during the operation thereof,

and means for varying the                pistons 22, blind holes
position of the at least                 21 (cylinders) acting
one camshaft relative to                 between projections 17
the crankshaft,                          and 19; Col 4,
                                         lines 11-66;

the method comprising:

actuating (sic, said) means              lever 40, pin 39, lever 38,
for varying the position                 abutment 37, bushing 36
of the at least one camshaft             (with non-illustrated drain
relative to the crankshaft               hole), Col 4, lines 66-75;
                                         Col 5, lines 1-75;
                                         Col 6, lines 1-11;

in reaction to torque                    Col 3, lines 20-73;
reversals in the at                      Col 4, lines 50-75;
least one camshaft,                      Col 5, lines 43-75;
                                         Col 6, lines 1-11;

Butterfield 5,002,023                    Garcea 3,721,220
    Claim 4

In an internal combustion               Col 1, line 14;
engine

having a crankshaft,                     Col 1, line 18;
                                         Col 4, lines 15-16;

-15-

Exhibit 2 page 87