# EXHIBIT 3

5497738

| | ISSUE CLASSIFICATION | | |
|---|---|---|---|
| Class | Sub-class | | |
| 123 | | | |

© ©

| UTILITY SERIAL NUMBER | 08 056635 | PATENT DATE MAR 12 1996 | PATENT NUMBER 5497738 |
|---|---|---|---|

| SERIAL NUMBER 08/056,635 | FILING DATE 05/03/93 | CLASS 123 | SUBCLASS | GROUP ART UNIT 3402 | EXAMINER |
|---|---|---|---|---|---|

APPLICANTS

EDWARD C. SIEMON, ITHACA, NY; STANLEY B. QUINN JR., ITHACA, NY.

**CONTINUING DATA*********************
VERIFIED    CIP of SN 07/940,273 filed 9/3/92, now US 5,218,935

Yes
nt

NOTE - DISCLAIMER
The term of this patent
subsequent to 06/15/10
has been disclaimed

**FOREIGN/PCT APPLICATIONS************
VERIFIED

None
nt

SEP 17 1996

FOREIGN FILING LICENSE GRANTED 07/29/93

| Foreign priority claimed ☐ yes ☒ no 35 USC 119 conditions met ☐ yes ☐ no nt | AS FILED | STATE OR COUNTRY NY | SHEETS DRWG. 13 | TOTAL CLAIMS 22 | INDEP. CLAIMS 3 | FILING FEE RECEIVED $884.00 | ATTORNEY'S DOCKET NO. 92007 |
|---|---|---|---|---|---|---|---|
| Verified and Acknowledged    Examiner's initials | | | | | | | |

ADDRESS

BORG-WARNER AUTOMOTIVE, INC.
PATENT DOCKET ADMINISTRATOR
6700 18-1/2 MILE ROAD
P. O. BOX 8022
STERLING HEIGHTS, MI 48311-8022

TITLE

VCT CONTROL WITH A DIRECT ELECTROMECHANICAL ACTUATOR

U.S. DEPT. of COMM.-Pat. & TM Office — PTO-436L (rev. 10-78)

PARTS OF APPLICATION
FILED SEPARATELY

Applications Examiner

NOTICE OF ALLOWANCE MAILED

8-23-95

Assistant Examiner

CLAIMS ALLOWED

| Total Claims 13 | Print Claim 1 |
|---|---|

ISSUE FEE

| Amount Due 1210 | Date Paid 1/01/95 |
|---|---|

WEILUN LO
PATENT EXAMINER
GROUP 3400

Primary Examiner

DRAWING

| Sheets Drwg. 13 | Figs. Drwg. 20 | Print Fig. 20 |
|---|---|---|

ISSUE BATCH NUMBER    055

PRM PTO-1267    U.S. Department of Commerce
(v. 11-92)    Patent and Trademark Office

DISCLAIMER LABEL

Application No.
08 056,635

Terminal disclaimer has been entered and recorded under 35 U.S.C. 253 in this file.

DO NOT DESTROY

Form PTO-436A
(Rev. 8/92)

PREPARED FOR ISSUE

WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

Exhibit 3 page 1

(FACE)

US005497738A

# United States Patent [19]

## Siemon et al.

| | |
|---|---|
| [11] | Patent Number: | 5,497,738 |
| [45] | Date of Patent: | * Mar. 12, 1996 |

[54] **VCT CONTROL WITH A DIRECT ELECTROMECHANICAL ACTUATOR**

[75] Inventors: Edward C. Siemon; Stanley B. Quinn, Jr., both of Ithaca, N.Y.

[73] Assignee: Borg-Warner Automotive, Inc., Sterling Heights, Mich.

[*] Notice: The portion of the term of this patent subsequent to Jun. 15, 2010, has been disclaimed.

[21] Appl. No.: 56,635

[22] Filed: May 3, 1993

### Related U.S. Application Data

[63] Continuation-in-part of Ser. No. 940,273, Sep. 3, 1992, Pat. No. 5,218,935.

[51] Int. Cl.⁶ ............................................. F01L 1/34
[52] U.S. Cl. ......................... 123/90.17; 123/90.31; 137/312
[58] Field of Search ..................... 123/90.15, 90.17, 123/90.31; 74/568 R; 137/312, 625.65; 464/1, 2, 160

[56] References Cited

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,762,141 | 8/1988 | Karpis | 137/312 |
| 4,856,465 | 8/1989 | Denz et al. | 123/90.17 |
| 4,858,572 | 8/1989 | Shirai et al. | 123/90.17 |
| 5,000,420 | 3/1991 | Hendrixon | 137/625.65 |
| 5,012,774 | 5/1991 | Strauber et al. | 123/90.17 |
| 5,056,477 | 10/1991 | Linder et al. | 123/90.17 |
| 5,088,456 | 2/1992 | Suga | 123/90.17 |
| 5,150,671 | 9/1992 | Suga | 123/90.17 |
| 5,172,659 | 12/1992 | Butterfield et al. | 123/90.17 |
| 5,201,289 | 4/1993 | Imai | 123/90.17 |
| 5,218,935 | 6/1993 | Quinn, Jr. et al. | 123/90.17 |
| 5,271,360 | 12/1993 | Kano et al. | 123/90.17 |

*Primary Examiner*—Weilun Lo
*Attorney, Agent, or Firm*—Willian Brinks Hofer et al.; Greg Dziegielewski

[57] **ABSTRACT**

A camshaft (126) has a vane (160) secured to an end thereof for non-oscillating rotation therewith. The camshaft also carries a sprocket (132) which can rotate with the camshaft but which is also oscillatable with the camshaft. The vane has opposed lobes (160a, 160b) which are received in opposed recesses (132a, 132b), respectively, of the sprocket. The recesses have greater circumferential extent than the lobes to permit the vane and sprocket to oscillate with respect to one another, and thereby permit the camshaft to change in phase relative to a crankshaft whose phase relative to the sprocket is fixed by virtue of a chain drive extending therebetween. The camshaft tends to change in reaction to pulses which it experiences during its normal operation, and it is permitted to change only in a given direction, either to advance or retard, by selectively blocking or permitting the flow of hydraulic fluid, preferably engine oil, through the return lines (194, 196) from the recesses by controlling the position of a vented spool (200) within a valve body (198) of a control valve (192) in response to a signal indicative of an engine operating condition from an engine control unit (208) via cable (238). The vented spool is selectively positioned within the valve body by a electromechanical actuator (201) which is controlled by the engine control unit. The spool is centered when an optimum phase angle between crankshaft and camshaft is achieved.

13 Claims, 13 Drawing Sheets



Exhibit 3 page 2

92007 

## IN THE UNITED STATES PATENT & TRADEMARK OFFICE

In re Application of: Edward C. Siemon and Stanley B. Quinn, Jr.

Serial No.: 08/056,635

Filed: May 03, 1993

For: VCT CONTROL WITH A DIRECT
ELECTROMECHANICAL ACTUATOR

Attorney Docket No.: 92007

Date: June 18, 1993

ATTENTION: <u>Application Division,
Special Handling Unit</u>

### RESPONSE TO NOTICE TO FILE MISSING PARTS OF APPLICATION

Honorable Commissioner of Patents
& Trademarks
Washington, D.C. 20231

Dear Sir:

In response to the Notice to File Missing Parts of Application mailed June 08, 1993, please find enclosed the Declaration form signed by the inventors and a copy of the Form PTO-1533.

The Patent and Trademark Office is authorized to charge the surcharge of $130.00 or any fees incurred in the filing of this Declaration to our Deposit Account No. 02-3182.

Respectfully submitted,

Greg Dziegielewski
Reg. No. 28,073

BORG-WARNER AUTOMOTIVE, INC.
6700 18-1/2 Mile Road
P.O. Box 8022
Sterling Heights, Michigan 48311-8022
(313) 726-4431

### CERTIFICATE OF MAILING (37 CFR 1.8a)

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the: Commissioner of Patents and Trademarks, Washington, D.C. 20231.

Date: June 18, 1993

Olive Carrick

Exhibit 3 page 3

*# 3*

92007    **DECLARATION FOR PATENT APPLICATION**

As a below named inventor, I hereby declare that my residence, post office address and citizenship are as stated below next to my name; I believe that I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled

VCT CONTROL WITH A DIRECT ELECTROMECHANICAL ACTUATOR

the specification of which (check one): ___ is attached hereto; _X_ was filed on May 03, 1993, as Application Serial No. 08/056,635 , and was amended on (or amended through) _____ (if applicable). I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment(s) referred to above. I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, § 1.56(a). I hereby claim foreign priority benefits under Title 35, United States Code, § 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed.

Prior Foreign Application(s)                Priority Claimed

_____    __Yes __No

(Number)    (Country)    (Day/Month/Year Filed)

_____    __Yes __No

(Number)    (Country)    (Day/Month/Year Filed)

_____    __Yes __No

(Number)    (Country)    (Day/Month/Year Filed)

I hereby claim the benefit under Title 35, United States Code, § 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, § 112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, § 1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

_____

(Application Serial No.) (Filing Date) (Status: Patented,
                                        Pending or Abandoned)

_____

(Application Serial No.) (Filing Date) (Status: Patented,
                                        Pending or Abandoned)

Exhibit 3 page 4

92007                         - 2 -

I hereby declare that all statements made herein of my own knowledge are true
and that all statements made on information and belief are believed to be true;
and further that these statements were made with the knowledge that willful false
statements and the like so made are punishable by fine or imprisonment, or both,
under Section 1001 of Title 18 of the United States Code and that such willful
false statements may jeopardize the validity of the application or any patent
issued thereon.

POWER OF ATTORNEY:  I (We) hereby appoint as my (our) attorneys, with full
powers of substitution and revocation, to prosecute this application and transact
all business in the Patent and Trademark Office connected therewith:

| Attorney | Reg. No. | Telephone No. |
|---|---|---|
| Greg Dziegielewski | 28,073 | 313-726-4431 |
| Gerald R. Black | 29,514 | 313-726-4432 |
| Thomas A. Meehan | 19,713 | 419-244-6578 |
| David D. Murray | 28,647 | 419-244-6578 |
| Vincent L. Barker, Jr. | 21,130 | 419-244-6578 |
| David B. Kelley | 33,718 | 419-244-6578 |
| Larry R. Meenan | 33,423 | 419-244-6578 |

Please Direct Telephone Calls To:
                    Thomas A. Meehan        419-244-6578

Send correspondence to:   Borg-Warner Automotive, Inc.
                          Patent Docket Administrator
                          6700 18-1/2 Mile Road
                          P.O. Box 8022
                          Sterling Heights, Michigan  48311-8022

Name of First or Sole Inventor:          Citizenship:

    Edward C. Siemon                         U.S.A.

Residence Address-Street:                POST OFFICE
                                         Address-Street

    119 Simsbury Drive                      119 Simsbury Drive
City (Zip):                              City (Zip):
    Ithaca        14850                     Ithaca        14850
State or Country:                        State or Country:
    New York                                New York

Date:                  Signature:

    MAY 27, 1993        Edward C. Siemon

Exhibit 3 page 5

92007                                    - 3 -

Name of Second Joint Inventor:              Citizenship:

    Stanley B. Quinn, Jr.                       U.S.A.

Residence Address-Street:                   POST OFFICE
                                            Address-Street
    113 Terrace View Drive                      113 Terrace View Drive

City (Zip):                                 City (Zip):
    Ithaca      14850                           Ithaca      14850

State or Country:                           State or Country:
    New York                                    New York

Date:                       Signature:

    5/24/93

Name of Third Joint Inventor:               Citizenship:


Residence Address-Street:                   POST OFFICE
                                            Address-Street


City (Zip):                                 City (Zip):


State or Country:                           State or Country:


Date:                       Signature:


Name of Fourth Joint Inventor:              Citizenship:


Residence Address-Street:                   POST OFFICE
                                            Address-Street


City (Zip):                                 City (Zip):


State or Country:                           State or Country:


Date:                       Signature:


Exhibit 3 page 6

SUPPLEMENTAL DECLARATION FOR A CONTINUATION-IN-PART APPLICATION

As a below named inventor, I hereby declare that my residence, post office address and citizenship are as stated below next to my name; I believe that I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled

VCT CONTROL WITH A DIRECT ELECTROMECHANICAL ACTUATOR

the specification of which (check one): ___ is attached hereto; _X_ was filed on May 03, 1993, as Application Serial No. 08/056,635, and was amended on (or amended through) _____ (if applicable). I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment(s) referred to above. I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, § 1.56(a). I hereby claim foreign priority benefits under Title 35, United States Code, § 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed.

Prior Foreign Application(s)          Priority Claimed

_____     __Yes __No

(Number)   (Country)   (Day/Month/Year Filed)

_____     __Yes __No

(Number)   (Country)   (Day/Month/Year Filed)

_____     __Yes __No

(Number)   (Country)   (Day/Month/Year Filed)

I hereby claim the benefit under Title 35, United States Code, § 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, § 112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, § 1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

U.S. Serial No. 07/940,273 Filed 09/03/1992 Now Patent No. 5,218,935

(Application Serial No.) (Filing Date) (Status: Patented, Pending or Abandoned)

_____

(Application Serial No.) (Filing Date) (Status: Patented, Pending or Abandoned)

Exhibit 3 page 7

91016A                        - 2 -

I hereby declare that all statements made herein of my own knowledge are true
and that all statements made on information and belief are believed to be true;
and further that these statements were made with the knowledge that willful false
statements and the like so made are punishable by fine or imprisonment, or both,
under Section 1001 of Title 18 of the United States Code and that such willful
false statements may jeopardize the validity of the application or any patent
issued thereon.

POWER OF ATTORNEY:  I (We) hereby appoint as my (our) attorneys, with full
powers of substitution and revocation, to prosecute this application and transact
all business in the Patent and Trademark Office connected therewith:

| Attorney | Reg. No. | Telephone No. |
|----------|----------|---------------|
| Greg Dziegielewski | 28,073 | 313-726-4431 |
| Gerald R. Black | 29,514 | 313-726-4432 |
| Thomas A. Meehan | 19,713 | 419-244-6578 |
| David D. Murray | 28,647 | 419-244-6578 |
| Vincent L. Barker, Jr. | 21,130 | 419-244-6578 |
| Larry R. Meehan | 33,423 | 419-244-6578 |
| David A. Spenard | 37,449 | 419-244-6578 |

Please Direct Telephone Calls To:
                    David A. Spenard       419-244-6578


Send correspondence to:   Borg-Warner Automotive, Inc.
                          Patent Docket Administrator
                          6700 18-1/2 Mile Road
                          P.O. Box 8022
                          Sterling Heights, Michigan  48311-8022


Name of First or Sole Inventor:       Citizenship:


  Edward C. Siemon                        U.S.A.

Residence Address-Street:          POST OFFICE
                                   Address-Street

  119 Simsbury Drive                119 Simsbury Drive

City (Zip):                        City (Zip):
  Ithaca      14850                  Ithaca     14850

State or Country:                  State or Country:
  New York                           New York


Date:                   Signature:

  Nov. 15, 1993           Edward C. Siemon

Exhibit 3 page 8

91016A                    - 3 -

Name of Second Joint Inventor:        Citizenship:

__Stanley B. Quinn, Jr.__              __U.S.A.__


Residence Address-Street:             POST OFFICE
                                      Address-Street
__113 Terrace View Drive__            __113 Terrace View Drive__

City (Zip):                           City (Zip):
__Ithaca__        __14850__           __Ithaca__        __14850__

State or Country:                     State or Country:
__New York__                          __New York__

Date:                     Signature:
_November 15, 1993_

Exhibit 3 page 9

| | | | | |
|---|---|---|---|---|
| | TRANSMITTAL LETTER | | Attorney's Docket No. 91016A | |
| Serial No. 08/056,635 | Filing Date May 3, 1992 | Examiner W. Lo | Group Art Unit 3402 | |

**Inventor(s)**
Edward C. Siemon et al.

**Title of Invention**
VCT CONTROL WITH A DIRECT ELECTRO-MECHANICAL ACTUATOR

## TO THE COMMISSIONER OF PATENTS AND TRADEMARKS

Transmitted herewith is _a Preliminary Amendment, Supplemental Declaration, Terminal Disclaimer._

[ ]  Small entity status of this application under 37 CFR § 1.27 has been established by verified statement previously submitted.

[ ]  A verified statement to establish small entity status under 37 CFR §§ 1.9 and 1.27 is enclosed.

[ ]  Petition for a ___ month(s) extension of time.

[x]  No additional fee is required.

[ ]  The fee has been calculated as shown below:

| | Claims Remaining After Amendment | | Highest No. Previously Paid For | Present Extra | | Small Entity | | or | | Other Than Small Entity | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Rate | Add'l Fee | | | Rate | Add'l Fee |
| Total | | Minus | | | | x $11 = | $ | | | x $22 = | $ |
| Indep. | | Minus | | | | x $37 = | $ | | | x $74 = | $ |
| First Presentation of Multiple Dep. Claim | | | | | | +$115 = | $ | | | + $230 = | $ |
| | | | | | | total add'l fee | $ | | | total add'l fee | $ |

[ ]  Please charge Deposit Account No. 23-1925 (WILLIAM BRINKS HOFER GILSON & LIONE) in the amount of $_____.  A duplicate copy of this sheet is enclosed.

[ ]  A check in the amount of $_____ to cover the filing fee is enclosed.

[x]  The Commissioner is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this communication or credit any overpayment to Deposit Account No. 23-1925.  A duplicate copy of this sheet is enclosed.

[x]  I hereby petition under 37 CFR § 1.136(a) for any extension of time required to ensure that this paper is timely filed.  Please charge any associated fees which have not otherwise been paid to Deposit Account No. 23-1925.  A duplicate copy of this sheet is enclosed.

Respectfully submitted,

WILLIAM BRINKS HOFER
GILSON & LIONE
1130 Edison Plaza
TOLEDO, OHIO 43604-1537
(419) 244-6578

David A. Spenard
Registration No. 37,449
Attorney for Applicant

Exhibit 3 page 10

rev. 04/1993



**TERMINAL DISCLAIMER**

In re application of:        :    Group Art Unit:  3402
                            :
EDWARD C. SIEMON ET AL.      :
                            :
Serial No. 08/056,635        :    Examiner:  W. Lo
                            :
Filed:  May 3, 1992          :
                            :
For: VCT CONTROL WITH A      :    Atty. Dkt. No.:  91016A
     DIRECT ELECTROMECHANICAL :
     ACTUATOR                :

_____

     Petitioner, <u>Borg-Warner Automotive, Inc.</u>, is the owner of
100 percent interest in the instant application.  Petitioner
hereby disclaims, except as provided below, the terminal part of
the statutory term of any patent granted on the instant
application, which would extend beyond the expiration date of the
full statutory term defined in 35 U.S.C. 154 to 156 and 173 as
shortened by any terminal disclaimer filed prior to the grant of
any patent granted on pending second application Number
<u>07/940,273</u>, filed on <u>September 3, 1992</u>, now <u>U.S. Patent 5,218,935</u>
issued <u>June 15, 1993</u>.  Petitioner hereby agrees that any patent
so granted on the instant application shall be enforceable only
for and during such period that it and any patent granted on the
second application are commonly owned.  This agreement runs with
any patent granted on the instant application and is binding upon
the grantee, its successors or assigns.

     In making the above disclaimer, petitioner does not disclaim
the terminal part of any patent granted on the instant
application that would extend to the expiration date of the full
statutory term as defined in 35 U.S.C. 154 to 156 and 173 of any
patent granted on the second application, as shortened by any
terminal disclaimer filed prior to the patent grant, in the event
that any such granted patent:  expires for failure to pay a

Exhibit 3 page 11

maintenance fee, is held unenforceable, is found invalid by a court of competent jurisdiction, is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321, has all claims canceled by a reexamination certificate, is reissued, or is in any manner terminated prior to the expiration of its full statutory term as presently shortened by any terminal disclaimer filed prior to its grant.

For submissions on behalf of an organization (e.g., corporation, partnership, university, government agency, etc.), the undersigned (whose title is supplied below) is empowered to act on behalf of the organization.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

| 11/15/93 | |
|---|---|
| Date | Signature |
| | Greg Dziegielewski |
| | Assistant Secretary |
| | Typed or printed name and title if applicable |

Terminal disclaimer fee under 37 CFR 1.20(d) is included.

PTO suggested wording for terminal disclaimer was unchanged.

Exhibit 3 page 12

DEC-20-93 MON 15:36    WILL  N BRINKS HOFER    FAX NO. 419  18862    P. 02

#9
7/H

FAX COPY RECEIVED 12-21-93
DEC 2 0 1993 ACCEPTABLE

GROUP 3400

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of:          :    Group Art Unit: 3402
                               :
EDWARD C. SIEMON ET AL.        :
                               :
Serial No. 08/056,635          :    Examiner:  W. Lo
                               :
Filed:  May 3, 1992            :
                               :
For: VCT CONTROL WITH A        :    Atty. Dkt. No.:  91016A
     DIRECT ELECTRO-           :
     MECHANICAL ACTUATOR       :

SUPPLEMENTAL SUBMISSION OF CERTIFICATE
UNDER 37 C.F.R. §3.73(B)

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

This paper is in response to the most recent telephone
conversation which has taken place between Examiner and
counsel for Applicants regarding the above-named
application.  No Office Action has been issued as of the
date of filing this paper.

In order to convert the above-named application into a
continuation-in-part of co-pending application Serial No.
940,273 (now U.S. Patent 5,218,935), a Preliminary
Amendment, Terminal Disclaimer, and Supplemental Declaration
were filed on November 23, 1993.  On December 20, 1993,
Examiner telephoned counsel for Applicants and stated that
several deficiencies existed with the Terminal Disclaimer as
filed.

To correct the deficiencies, a certificate under 37
C.F.R. §3.73(b) was completed by Assignee and is attached
hereto.  This certificate is intended to supplement the

148
#110

Exhibit 3 page 13

YC30008  12/21/93  08056635    23-1925  030  148    110.00CH

previously submitted documents to complete the prosecution
of the above-named application.  Further, authorization is
granted to charge the recording fee of $110.00 to deposit
account 23-1925.  A photocopy of this authorization is
attached hereto for use by the Billing Department.

    Counsel wishes to thank Examiner for his patience and
assistance in this matter.

                    Respectfully submitted,

                    David A. Spenard
                    Registration No. 37,449

Willian Brinks Hofer Gilson & Lione
1130 Edison Plaza
Toledo, Ohio 43604-1537
(419) 244-6578

Exhibit 3 page 14

DEC-20-93 MON 15:36    WILL⸱⸱N BRINKS HOFER    FAX NO. 419⸱⸱48862    P. 04

DEC.-20'93(MON) 15:26    BORG-WARNER AUTO. INC    TEL:1 810 726 6590    P. 002

CERTIFICATE UNDER 37 C.F.R. § 3.73(b)

Applicant:  _____ Edward C. Siemon, et al. _____

Application No.: _08/055,635_    Filed: _05/03/93_

For:  VCT With Direct Electromechanical Actuator

Borg-Warner Automotive, Inc.     Corporation of the State of Delaware
_(Name of Assignee)_                    _(Type of Assignee, e.g. corporation, partnership, university, government agency, etc.)_

certifies that it is the assignee of the entire right, title and interest in the patent application identified above by virtue of either:

A. [x] An assignment from the inventor(s) of the patent application identified above. The assignment was recorded in the
   X   Patent and Trademark Office at Reel _6585_, Frame _0366_, or for which a copy thereof is attached.

OR

B. [ ] A chain of title from the inventor(s), of the patent application identified above, to the current assignee as shown below:

    1. From: _____    To: _____
       The document was recorded in the Patent and Trademark Office at
       Reel _____ Frame _____ or for which a copy thereof is attached.

    2. From: _____    To: _____
       The document was recorded in the Patent and Trademark Office at
       Reel _____ Frame _____ or for which a copy thereof is attached.

    3. From: _____    To: _____
       The document was recorded in the Patent and Trademark Office at
       Reel _____ Frame _____ or for which a copy thereof is attached.

    [ ] Additional documents in the chain of title are listed on a supplemental sheet.

[ ] Copies of assignments or other documents in the chain of title are attached.

The undersigned has reviewed all the documents in the chain of title of the patent application identified above and, to the best
of undersigned's knowledge and belief, title is in the assignee identified above.

The undersigned (whose title is supplied below) is empowered to act on behalf of the assignee.

I hereby declare that all statements made herein of my own knowledge are true, and that all statements made on information
and belief are believed to be true; and further, that these statements are made with the knowledge that willful false statements,
and the like so made, are punishable by fine or imprisonment, or both, under Section 1001, Title 18 of the United States Code,
and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

Date  :  _December 20, 1993_

Name  :  _Greg Dziegielewski - Reg. No. 28,073_

Title :  _Assistant Secretary_

Signature: _[signature]_

Exhibit 3 page 15

PROSECUTION BY ASSIGNEE

CERTIFICATE UNDER 37 C.F.R. § 3.73(b)

Applicant: _____

Application No.: _____ Filed: _____

For: _____

_____ , a _____
(Name of Assignee)                        (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)

certifies that it is the assignee of the entire right, title and interest in the patent application identified above by virtue of either:

A. [ ]  An assignment from the inventor(s) of the patent application identified above.  The assignment was recorded in the
        Patent and Trademark Office at  Reel _____, Frame _____, or for which a copy thereof is attached.

OR

B. [ ]  A chain of title from the inventor(s), of the patent application identified above, to the current assignee as shown below:

        1. From: _____  To: _____
           The document was recorded in the Patent and Trademark Office at
           Reel _____, Frame _____, or for which a copy thereof is attached.

        2. From: _____  To: _____
           The document was recorded in the Patent and Trademark Office at
           Reel _____, Frame _____, or for which a copy thereof is attached.

        3. From: _____  To: _____
           The document was recorded in the Patent and Trademark Office at
           Reel _____, Frame _____, or for which a copy thereof is attached.

        [ ] Additional documents in the chain of title are listed on a supplemental sheet.

[ ] Copies of assignments or other documents in the chain of title are attached.

The undersigned has reviewed all the documents in the chain of title of the patent application identified above and, to the best
of undersigned's knowledge and belief, title is in the assignee identified above .

The undersigned (whose title is supplied below) is empowered to act on behalf of the assignee.

I hereby declare that all statements made herein of my own knowledge are true, and that all statements made on information
and belief are believed to be true; and further, that these statements are made with the knowledge that willful false statements,
and the like so made, are punishable by fine or imprisonment, or both, under Section 1001, Title 18 of the United States Code,
and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

Date        : _____

Name       : _____

Title        : _____

Signature: _____

Exhibit 3 page 16

DEC-20-93 MON 15:35    WILL**AN BRINKS HOFER    FAX NO. 419^48862    P.01

## WILLIAN BRINKS HOFER GILSON & LIONE

1130 EDISON PLAZA

| CHICAGO OFFICE | TOLEDO, OHIO 43604-1537 | ARLINGTON, VA- OFFICE |
| NBC TOWER | | CRYSTAL PLAZA ONE |
| 455 NORTH CITYFRONT PLAZA DRIVE | TELEPHONE 419 244-6878 | SUITE 208 |
| SUITE 3600 | | 2001 JEFFERSON DAVIS HWY. |
| CHICAGO, ILLINOIS 60611-5599 | TELEX 140342 | ARLINGTON, VIRGINIA 22202-3805 |
| TELEPHONE 312 321-4800 | | TELEPHONE 703 415-0303 |
| TELEX 254300 | FACSIMILE 419 244-8863 | TELEX 140864 |
| FACSIMILE 312 321-0299 | | FACSIMILE 703 415-0304 |

WASHINGTON OFFICE
2000 K STREET, N.W.
SUITE 808
WASHINGTON, D.C. 20006-1809
TELEPHONE 202 429-0588
TELEX 880 382-9805
FACSIMILE 202 293-1830

INDIANAPOLIS OFFICE
ONE INDIANA SQUARE
SUITE 3495
INDIANAPOLIS, INDIANA 46204-2013
TELEPHONE 317 636-0886
TELEX 488632
FACSIMILE 317 634-6701

### FACSIMILE COVER SHEET

DATE:    December 20, 1993

NO. OF PAGES    4
(Including Cover Sheet)

TIME:    15:30

| NAME/FIRM/LOCATION | FACSIMILE NUMBERS: |
|---|---|
| TO: Examiner W. Lo, USPTO | ( 703 ) 305-3463 |
| | ( ) _____ |

If you have any problems receiving this transmission please call (419) 244-6578 and ask for _____

FROM:    David A. Spenard

CONFIRMATION COPY TO FOLLOW: YES___ NO_X_

THIS MESSAGE IS INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED. It may contain privileged, confidential, attorney work product, or trade secret information which is exempt for disclosure under applicable laws. If you are NOT the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message is strictly prohibited. If you have received this message in error, please notify us immediately by telephone and return the original message (and all copies) to us by mail at the above address. We will reimburse you for postage. Thank you.

### MESSAGE

Examiner Lo:
        Attached is the documentation which you require.  If you have any questions or need anything further, please call.
                Very truly yours,

Client Name/Number    9]0]6A

RECEIVED
DEC 20 1993
GROUP 3400

Exhibit 3 page 17

# EXHIBIT 4

1 of 2 DOCUMENTS

**TRUEPOSITION, INC. and KSI, INC., Plaintiffs/ Counterclaim Defendants v. ALLEN TELECOM, INC. Defendant/ Counterclaim Plaintiff.**

**C.A. No. 01-823 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 881*

**January 21, 2003, Decided**

**SUBSEQUENT HISTORY:** As Amended September 4, 2003.

**DISPOSITION:** [*1] Motion to dismiss and/ or strike granted in part and denied in part. Claim dismissed.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Trueposition Inc, KSI Inc, PLAINTIFFS: Donald F Parsons, Jr, Morris, Nichols, Arsht & Tunnell, Wilmington, DE USA.

For Allen Telecom Inc, DEFENDANT: John Leonard Reed, Timothy Ryan Dudderar, Duane Morris LLP, Wilmington, DE USA.

For Allen Telecom Inc, COUNTER-CLAIMANT: John Leonard Reed, Timothy Ryan Dudderar, Duane Morris LLP, Wilmington, DE USA.

For Trueposition Inc, KSI Inc, COUNTER-DEFENDANTS: Donald F. Parsons, Jr, Morris, Nichols, Arsht & Tunnell, Wilmington, DE USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

**I. INTRODUCTION**

On December 11, 2001, the plaintiffs, TruePosition, Inc. and KSI, Inc. (collectively "TruePosition") filed a complaint against the defendant, Allen Telecom, Inc. ("Allen"). In the complaint, TruePosition alleges that Allen has infringed three of its patents, namely U.S. Patent No. 4,728,959 ("the '959 patent"), U.S. Patent No. 6,108,555 ("the '555 patent"), and U.S. Patent No. 6,119,013 ("the '013 [*2] patent"). Each of these patents discloses a technology for locating cellular phones. In its Answer and Counterclaims (D.I. 6, 48), the defendant asserted six affirmative defenses to the plaintiffs' claims, as well as five counterclaims.

Presently before the court is TruePosition's Motion to Dismiss and/ or Strike the Defendant's Counterclaims III, IV, and V, and Affirmative Defenses III and VI (D.I. 58). For the following reasons, the court will grant in part and deny in part the plaintiffs' motion.

**II. STANDARDS OF REVIEW**

The plaintiffs move to dismiss Counterclaims III, IV, and V pursuant to *Federal Rule of Civil Procedure 12(b)(6)*. Dismissal is appropriate pursuant to this Rule if the complaint fails "to state a claim upon which relief can be granted." *FED. R. CIV. P. 12(b)(6)*. In this inquiry, the court must accept as true and view in the light most favorable to the non-movant the well-pleaded allegations of the complaint. *Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000)*. The court 'need not accept as true "unsupported conclusions and unwarranted inferences." ' *Id.* (quoting *City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998))* [*3] (quoting *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997))*. However, it is the duty of the court 'to view the complaint as a whole and to

base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable.' *232 F.3d at 184* (quoting *City of Pittsburgh, 147 F.3d at 263).*

The plaintiffs rely upon *Federal Rules of Civil Procedure 8* and *12(f)* for their motion to strike Affirmative Defenses III and VI. Rule 8 requires a "short and plain" statement of a claim or defense. *FED. R. CIV. P. 8(a)* and (b). It is well settled that the Federal Rules intend a liberal pleading standard. *See Leatherman v. Tarrant county Narcotic Intelligence & Coordination Unit, 507 U.S. 163, 168, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993)* (holding that federal courts may not impose a more demanding standard of pleading beyond "the liberal system of 'notice pleading' set up by the Federal Rules"). Indeed, Rule 8 expressly mandates that "each averment of a pleading shall be simple, concise, and direct." *FED. R. CIV. P. 8(e).*

Rule 12(f) allows a court to [*4] strike "any insufficient defense" from any pleading. *FED. R. CIV. P. 12(f).* Motions to strike affirmative defenses are disfavored. *Proctor & Gamble Co. v. Nabisco Brands, Inc., 697 F. Supp. 1360, 1362 (D. Del. 1988).* When ruling on such a motion, "the court must construe all facts in favor of the nonmoving party ... and deny the motion if the defense is sufficient under the law." *Id.*

## III. DISCUSSION

### A. Counterclaim III

Counterclaim III alleges tortious interference with a contract. The plaintiffs move to dismiss the counterclaim pursuant to Rule 12(b)(6) on the grounds that it fails to plead an essential element of the alleged tort, namely, a breach of the relevant contract.

The tort of interference with a contract requires "an intentional act that is a significant factor in causing the breach of the contract." n1 *Cantor Fitzgerald, L.P. v. Cantor, 724 A.2d 571, 584 (Del. Ch. 1998).* Without a breach, there is no viable tortious interference claim. As to this point, Delaware law is well-settled. *See id.; see also Associated/ Acc Int'l, LTD. v. Dupont Flooring Sys. Franchise Co., 2002 U.S. Dist. LEXIS 6464,* at *27-28 (D. [*5] Del. 2002); *DeBakey Corp. v. Raytheon Serv. Co., 2000 Del. Ch. LEXIS 129, 2002 WL 1273317 (Del. Ch. 2000); Boyer v. Wilmington Materials, 1997 Del. Ch. LEXIS 97, 1997 WL 382979 (Del. Ch. 1997); Irwin & Leighton, Inc. v. W.M. Anderson Co., 532 A.2d 983, 992 (Del. Ch. 1987).* There is no discussion in these cases as to behavior that could constitute tortious interference when no breach of contract occurs. Presumably, this is because there is no conduct that could constitute the tort of interference with a contract, unless a breach of that contract results. n2

n1 Contrary to the defendant's paraphrasing, the court did not style this element as requiring only some kind of interference and no resultant breach. *See* Answering Brief at 9.n2 Although the defendant acknowledges that "a review of the relevant case law shows that the cases are universally precipitated by a breach of contract," it maintains that "the absence of a total breach does not foreclose recovery for damages caused by improper interference." Answering Brief at 10-11. This assertion is unpersuasive as it applies to interference with a contract, particularly given Allen's conspicuous failure to cite any supporting caselaw for it. Furthermore, Allen's contention that a breach of contract is not required in such a case because "the applicable tort here is, for a reason, labeled 'tortious *interference* with contractual relations' not 'tortious *breach* of contractual relations,'" Answering Brief at 12 n.5 (emphasis added), is astounding in its fatuity. The tort is not labeled "tortious breach of contractual relations" because a non-party to a contract generally is not bound by the contract and thus can not breach the contract. *See, e.g., Traffas v. Bridge Capital Investors II, 1993 U.S. Dist. LEXIS 12028, 1993 WL 339293 (D. Kan. 1993),* at *3 ("It would be a novel holding for the court to rule that a breach of contract action can be maintained against a person who is not a party to the contract being sued upon ... A party to a contract cannot sue a person who is not a party to that contract for breach of contract."); *Credit Gen. Ins. Co. v. Midwest Indem. Corp.,916 F. Supp. 766, 772 (N.D. Ill. 1996)* (finding "ludicrous" the defendants' contention that a non-party to a contract can breach that contract).

[*6]

In this case, the contract at issue is between AT&T Wireless Services, Inc. ("AT&T") and Allen for the purchase of Allen's wireless location systems, which systems are the subject of the present patent infringement suit. In its counterclaim, Allen alleges that the plaintiffs, by filing the present suit and by publicizing it, intended to cause a breach of the AT&T contract. Answer and Counterclaims (D.I. 48) PP 17-18. This is insufficient to state a claim of tortious interference with a contract because, as the defendant concedes, there has been no breach of the AT&T contract. n3 Answering Brief at 10. Therefore, Counterclaim III must be dismissed.

2003 U.S. Dist. LEXIS 881, *

n3 The court is mindful of Allen's contention that "much of this may ... be a matter of semantics." Answering Brief at 12 n.6. Allen argues that, because the original AT&T contract was modified subsequent to TruePosition's initiation of the present suit, it suffered a complete loss of the original anticipated contract. *Id.* Apparently, Allen wishes the court to view this "loss" as a breach. However, a mutual modification of a contract certainly is not a breach. *See, e.g., Anderson v. Golden, 569 F. Supp. 122, 140 (S.D. Ga. 1982)* (distinguishing between breach and mutual modification). To the extent such a loss represents the loss of an economic expectation, the corresponding tort is interference with a prospective business opportunity. The court reiterates that Delaware law requires a breach to sustain the tort of interference with a contract.

[*7]

## B. Counterclaim IV

Counterclaim IV alleges tortious interference with prospective business opportunities. The elements of this tort are: '(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner.' *DeBonaventura v. Nationwide Mut. Ins. Co., 428 A. 2d 1151, 1153 (Del. 1981)* (quoting *DeBonaventura v. Nationwide Mut. Ins. Co., 419 A.2d 942, 947 (Del. Ch. 1980)*) (citations omitted). The plaintiffs move to dismiss the counterclaim on the grounds that the defendant cannot prove all of the required elements, namely, a prospective business opportunity, or an interference with that opportunity.

The only "prospective business opportunity" at issue in the counterclaim is the AT&T contract. As stated above, the defendant acknowledges a completed and continuing contract with AT&T. Allen's expected business opportunity, thus, appears to have been consummated before the allegedly tortious conduct of the plaintiffs. [*8] This is particularly true because "the probability of the business opportunity must be assessed at the time of the alleged interference." *Malpiede v. Townson, 780 A.2d 1075, 1099 (Del. 2001)*. In this case, the alleged interference occurred after Allen had been awarded the contract with AT&T. Answer and Counterclaims (D.I. 48) P 17.

Allen maintains, however, that the plaintiffs' interference caused a modification of the expected contract terms. Following TruePosition's commencement of a patent infringement action against Allen and a press

release announcing the same, Allen allegedly incurred additional legal expenses in renegotiating certain provisions of the AT&T contract, more onerous indemnification terms in the contract, and damages to its reputation. Thus, Allen contends, TruePosition's actions interfered with its expected business opportunity in that the final terms of the AT&T contract differed from the original terms. For purposes of this motion only, this is sufficient to state a claim of tortious interference with prospective business opportunities. *See McHugh v. Board of Educ., 100 F. Supp. 2d 231, 247 n.15 (D. Del. 2000)* (noting that the [*9] tort requires "a valid business relationship or expectancy" and citing cases).

Assuming that these facts constitute a sufficient interference, the counterclaim may be challenged on other grounds, namely, that Allen has not shown that the plaintiffs engaged in any wrongful conduct. To sustain the tort of interference with a business opportunity, the interference must have been improper. *Bohatiuk v. Delaware Chiropractic Servs. Network, L.L.C., 1997 Del. Super. LEXIS 215, at *8-10 (Del. Super. 1997)*. The conduct at issue is the filing of a patent infringement suit and the public announcement of the suit by a press release. Normally, lawful actions cannot form the basis of a claim of tortious interference, particularly in light of TruePosition's "privilege to compete and protect its own business interests." *Acierno v. Preit-Rubin, Inc., 199 F.R.D. 157, 164-65 (D. Del. 2001)* (dismissing tortious interference with contractual relations claim because defendant corporation and real estate investment trust, in failing to affirmatively suggest to County that competitor plaintiff's property be included in a traffic impact study, committed no wrongful conduct) [*10] (citing caselaw). In this case, however, the defendant also has alleged the counterclaim of "sham litigation." In the sham litigation context, the mere initiation of a lawsuit may be wrongful if it constitutes unlawful antitrust activity. Because the court will allow the "sham litigation" counterclaim to stand, *see infra* Section I.C., the tortious interference with a prospective business opportunity claim must survive as well. It is axiomatic that if the defendant can prove that the instant lawsuit is merely a "sham" and violative of antitrust law, then the filing of the lawsuit constitutes improper conduct. Therefore, in the interest of consistency, and viewing the pleadings in the light most favorable to Allen, Counterclaim IV survives the instant motion to dismiss.

## C. Counterclaim V

TruePosition moves for the dismissal of Counterclaim V, which alleges "sham litigation," on the grounds that such a cause of action does not exist. The term "sham litigation" refers to an exception to the doctrine of antitrust immunity. Immunity to certain antitrust suits was established by the Supreme Court in

2003 U.S. Dist. LEXIS 881, *

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 5 L. Ed. 2d 464, 81 S. Ct. 523 (1961), [*11] and *Mine Workers v. Pennington*, 381 U.S. 657, 14 L. Ed. 2d 626, 85 S. Ct. 1585 (1965). These cases established that "the Sherman Act does not prohibit ... persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." *Noerr*, 365 U.S. at 136. The Supreme Court refused to "impute to Congress an intent to invade" the First Amendment right to petition. *Id.* at 136. Thus, the *Noerr-Pennington* doctrine protects those who petition the government from antitrust liability.

Later caselaw extended *Noerr* antitrust immunity to "the approach of citizens ... to administrative agencies ... and to courts." *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 30 L. Ed. 2d 642, 92 S. Ct. 609 (1972). However, such immunity is not afforded to "sham" petitioning that is only "an attempt to interfere directly with the business relationships of a competitor." *Noerr*, 365 U.S. at 144. Litigation is a mere "sham" if it is objectively baseless and subjectively motivated to interfere [*12] with business competition by using a governmental process 'as an anticompetitive weapon.' *Professional Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 123 L. Ed. 2d 611, 113 S. Ct. 1920 (1993) (quoting *Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380, 113 L. Ed. 2d 382, 111 S. Ct. 1344 (1991)).

The plaintiffs urge that "sham litigation" is not a cognizable cause of action. The court cannot agree. A counterclaim of sham litigation is, essentially, an assertion that antitrust law has been violated. Indeed, in litigation leading to the Court's decision in *Professional Real Estate Investors*, Columbia Pictures had sued the defendant, PRE, for copyright infringement. 508 U.S. at 52. The defendant counterclaimed, accusing Columbia of violations of §§ 1 and 2 of the Sherman Act, 26 Stat. 209, as amended, 15 U.S.C. §§ 1-2. *Id.* "In particular, PRE alleged that Columbia's copyright action was a mere sham that cloaked underlying acts of monopolization and conspiracy to restrain trade." *Id.* Although the counterclaim did not survive summary judgment on the facts of the case, the Court upheld the validity [*13] of the sham counterclaim itself. Indeed, in announcing a two-part test for its application, the Court only clarified the existence and context of the sham litigation exception. n4

n4 Of course, as already stated, a violation of antitrust law underlies any sham exception to antitrust immunity. Although the defendant has not specifically pled a violation of the Sherman

Act in Counterclaim V, the invocation of the sham litigation doctrine is sufficient to give notice of the basis of its claim. This is particularly true in the context of a Rule 12(b)(6) motion to dismiss, and in light of both the liberal pleading philosophy of the Federal Rules and the court's responsibility 'to examine the complaint to determine if the allegations provide for relief on any possible theory.' *O ' Boyle v. Jiffy Lube Int'l, Inc.*, 866 F.2d 88, 93 (3d Cir. 1989) (quoting C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1357, at 601-02 (1969) (footnotes omitted)).

Since *Professional Real Estate Investors*, [*14] the sham litigation exception has been invoked in varied contexts. For example, in a recent case, the Supreme Court refused to strip antitrust immunity from an employer who filed a losing and retaliatory lawsuit where the suit was not objectively baseless. *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 153 L. Ed. 2d 499, 122 S. Ct. 2390 (2002). In so doing, the Court implicitly held that the sham litigation exception applies to the National Labor Relations Act in the same way it applies to the Sherman Act. *See* 122 S. Ct. at 2402 (Scalia, J., concurring) ("The implication of our decision today is that ... we will construe the National Labor Relations Act ... in the same way we have already construed the Sherman Act: to prohibit only lawsuits that are *both* objectively baseless *and* subjectively intended to abuse process.") (emphasis in original). Other courts have applied the immunity principles *of Noerr-Pennington* to other contexts. *See, e.g., State of Missouri v. National Organization of Women*, 620 F.2d 1301, 1318-19 (8th Cir. 1980) (applying *Noerr-Pennington* liability principles to state tort laws); [*15] *Video International Production, Inc. v. Warner-Amex Cable Communications, Inc.*, 858 F.2d 1075, 1084(5th Cir. 1988) (holding that *Noerr-Pennington* doctrine applies to Civil Rights Act liability); *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 614-15 (8th Cir. 1980) (same). It follows that if the *Noerr-Pennington* immunity principles apply in these contexts, the sham litigation exception to immunity applies as well. n5 Other cases have explicitly or implicitly accepted the sham exception in the patent infringement context. *See, e.g., Carroll Touch, Inc. v. Electro Mechanical Sys.*, 15 F.3d 1573 (D.C. Cir. 1993) (discussing sham litigation counterclaim in patent infringement context); *U.S. Philips Corp. v. Sears Roebuck & Co.*, 55 F.3d 592, 597 (Fed. Cir. 1995) (rejecting sham counterclaim on the facts of the case).

2003 U.S. Dist. LEXIS 881, *

n5 Unlike the defendant, however, the court recognizes a distinction between the *Noerr-Pennington* doctrine, which shields petitioners from antitrust liability, and the sham litigation exception, which strips this immunity when the petition is meritless and anticompetitive in nature. *See, e.g.,* Answering Brief at 15 ('... the Noerr-Pennington *[i.e.,* "sham litigation"] doctrine ...').

[*16]

In sum, the court can find no justification for refusing to allow the sham exception to be litigated in the instant case. Indeed, a copyright infringement action, like that at issue in *Professional Real Estate Investors,* and a patent infringement action such as the one at issue here present such analogous contexts regarding the application of the sham litigation exception that it would strain credibility to announce a relevant and dispositive difference between them. Thus, Counterclaim V may remain, to succeed or fail as it may in the ensuing litigation. n6

n6 In this vein, the court stresses that the defendant, of course, will be tasked in the ensuing litigation with proving the elements of the sham litigation exception, namely, that the present patent infringement suit is objectively baseless and subjectively motivated by an intent to interfere with competition. *See Carroll Touch, 15 F.3d at 1583* (holding that sham litigation counterclaim could not survive summary judgment because defendant did not establish a genuine issue regarding whether the patent infringement action was baseless).

[*17]

### D. Affirmative Defense III

As its third affirmative defense, Alien alleges that TruePosition engaged in "fraud and/ or inequitable conduct" in acquiring the relevant patents. The plaintiffs move to strike the defense, as well as Counterclaim I, which is predicated on the inequitable conduct defense, on the grounds that the affirmative defense does not meet the pleading requirements of *Federal Rule of Civil Procedure 9(b).*

Rule 9 requires that all pleadings of fraud or mistake "be stated with particularity." FED. R. CIV. P. 9(b). n7 These averments, however, remain subject to the liberal pleading standard of Rule 8, which requires only a "short and plain" statement of a claim or defense. *See In re Westinghouse Sec. Litig., 90 F.3d 696, 703 (3d Cir. 1996)* (citing cases); *see generally Leatherman, 507 U.S.*

*at 168* (holding that federal courts may not impose a more demanding standard of pleading beyond "the liberal system of 'notice pleading' set up by the Federal Rules"); 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER FEDERAL PRACTICE & PROCEDURE § 1281, at 520-21 (1990) (pleading with particularity under Rule 9(b) should be done consistently with [*18] the general philosophy of Rule 8); 2A JAMES W. MOORE, MORRE'S FEDERAL PRACTICE P 8.13, at 8-58 (2d ed. 1995) (the mandate of Rule 8 applies "even where the Rules command particularity, as in the pleading of fraud under Rule 9(b)") (footnote omitted).

n7 Because the court has found that Alien's pleadings satisfy the heightened pleading requirements of Rule 9(b), it need not address the defendant's argument that Rule 9(b) may not apply to allegations of inequitable conduct.

The pleading requirements are satisfied by Alien's third affirmative defense. The defense constitutes one paragraph which names the title and publication date of at least one allegedly withheld material prior art publication. In the context of alleged inequitable conduct before the PTO during a patent prosecution, "pleadings that disclose the name of the [allegedly withheld] relevant prior art and disclose the acts of the alleged fraud fulfill the requirements of Rule 9(b)." *EMC Corp. v. Storage Tech. Corp., 921 F. Supp. 1261, 1263 (D. Del. 1996).* [*19] The third affirmative defense discloses at least this much, and thus suffices "to apprise the other party of what is being alleged in a manner sufficient to permit responsive pleadings" as Rule 9 requires. 5 WRIGHT & MILLER § 1296 (1990).

TruePosition objects that the named publication is relevant to only certain of their patents and, therefore, the defendant has not sufficiently pled the defense of inequitable conduct as to the other patents. The court declines, however, to weigh the relevance and materiality of the allegedly withheld prior art for purposes of this motion. It is the court's duty for purposes of this motion only to test the sufficiency of the pleading, not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).* Furthermore, the Third Circuit has made clear that, although "it is certainly true that allegations of 'date, place or time'" satisfy the pleading requirements, "nothing in [Rule 9] requires them." *Seville Industrial Machinery v. Southmost Machinery, 742 F.2d 786, 791.* The affirmative defense, as pled, suffices to place the plaintiffs on notice of the misconduct with [*20] which they are charged. *Id.; see also Scripps Clinic and Research Found., et al. v. Baxter Travenol Lab., et al,*

*1988 U.S. Dist. LEXIS 1972, 1988 WL 22602,* at *3 (D. Del.) (defense of inequitable conduct sufficiently pled when defendant simply "alleged that [the plaintiff] failed to identify to the PTO relevant prior art of which it was aware").

The motion to strike the third affirmative defense, and to dismiss Counterclaim I, which is at least partially premised on the defense of inequitable conduct, is denied.

### E. Affirmative Defense VI

Finally, the plaintiffs move to strike Affirmative Defense VI, abuse of process, on the grounds that it is not a defense to a patent infringement action, and that, in any event, it has not been pled properly.

The plaintiffs are correct that abuse of process is not a defense to a patent infringement action. Rather, it is a tort, *see* PROSSER, LAW OF TORTS, § 121 (4th Ed. 1971), which should have been pled as a counterclaim. This mistake is not fatal, however. *Federal Rule of Civil Procedure 8(c)* states that "when a party has mistakenly designated ... a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading [*21] as if there had been a proper designation." *FED. R. CIV. P. 8(c).* The court will view the defendant's averment of the "defense" of abuse of process as a counterclaim.

Abuse of process may be alleged in a patent infringement case as in any other. *See, e.g., Bayer AG v. Sony Elecs., Inc., 229 F. Supp. 2d 332 (D. Del. 2002).* A claim of abuse of process is established when "the defendant ... proves that the plaintiff had an 'ulterior purpose' and committed 'a willful act in the use of the process that is not proper in the regular conduct of the proceedings.'" *Id. at 368* (quoting *Feinman v. Bank of Delaware, 728 F. Supp. 1105, 1115 (D. Del. 1990), aff'd, 909 F.2d 1475 (3d Cir. 1990)).* "There must be 'some definite act or threat not authorized by the process or aimed at an objective not legitimate in the use of process ... there is no liability where the [plaintiff] has done nothing more than carry out the process to its authorized conclusion.'" *Id.* (citations omitted).

The defendant has asserted that the "plaintiffs have abused the judicial process by bringing the present action based on the patents that plaintiffs [*22] know are invalid, unenforceable, and/ or not infringed." Answer

and Counterclaims (D.I. 48) at 8. There is no elaboration in the Answer and Counterclaims. The defendant's briefing, however, contends that "the same averments with regard to TruePositions tortious interference with Allen's business contracts and relations also establish a basis to proceed against TruePosition for abuse of process." Answering Brief at 17-18 n.10.

The defendant's averments are sufficient to sustain a Rule 8, Rule 12(f), or Rule 12(b)(6) motion to strike and/ or dismiss. Allen has offered a "short and plain" statement of the claim and has presented a factual context that, viewed in the light most favorable to Allen, states an abuse of process claim. Again, it is the court's duty for purposes of this motion only to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *Kost, 1 F.3d at 183.* Despite the defendant's anemic presentation of its abuse of process claim, the facts presented in the context of its sham litigation and tortious interference claims suffice to state a claim for relief for abuse of process as well. The plaintiffs' motion to [*23] dismiss the claim is denied.

### IV. CONCLUSION

The court concludes that the defendant's tortious interference with a contract claim can not be sustained because there has been no breach of contract. Allen's other counterclaims of tortious interference with prospective business opportunities, sham litigation, declaratory judgment, and abuse of process survive this motion to dismiss. Likewise, the defendant's third affirmative defense of fraud and/ or inequitable conduct may remain.

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. TruePosition's Motion to Dismiss and/ or Strike (D.I. 58) is GRANTED IN PART and DENIED IN PART.

2. Counterclaim III, alleging tortious interference with a contract, is DISMISSED.

Dated: January 21, 2003

 Gregory M. Sleet

 UNITED STATES DISTRICT JUDGE

# EXHIBIT 5

4 of 8 DOCUMENTS

**UNION CARBIDE CHEMS. & PLASTICS TECH. CORP. and UNION CARBIDE CORP., Plaintiff, Counter-Defendant v. SHELL OIL CO., SHELL CHEMICAL CO., and CRI CATALYST CO., Defendants, Counter-Plaintiffs.**

Civil Action No. 99-CV-274-SLR

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2000 U.S. Dist. LEXIS 14648*

September 29, 2000, Decided

NOTICE: [*1]   FOR ELECTRONIC PUBLICATION ONLY

**DISPOSITION:** Plaintiff's motion to strike defendant's affirmative defense and to dismiss defendant's counterclaim with respect to allegations of inequitable conduct denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For plaintiff, counter-defendant: Jeffrey B. Bove, Esquire, R. Eric Hutz, Esquire, Connolly, Bove, Lodge & Hutz, Wilmington, Delaware.

For plaintiff, counter-defendant: Steven J. Glassman, Esquire, Benjamin C. Hsing, Esquire, Of counsel, Kaye, Scholer, Fierman, Hays & Handler, New York, New York.

For defendant, counter-plaintiff: Allen M. Terrell, Jr., Esquire, Jeffrey L Moyer, Esquire, Richards, Layton & Finger, Wilmington, Delaware.

For defendant, counter-plaintiff: William Slusser, Esquire, Of counsel, Slusser & Frost, Houston, Texas.

For defendant, counter-plaintiff: John D. Norris, Esquire, Of counsel, Howrey, Simon, Arnold & White, Houston, Texas.

**JUDGES:** Sue L. Robinson, Chief Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM OPINION**

Dated: September 29, 2000
Wilmington, Delaware

**ROBINSON, Chief Judge**

**I. INTRODUCTION**

Plaintiff Union Carbide Chemicals & Plastics Technology Corporation filed this patent infringement action on [*2] May 3, 1999 against defendant Shell Oil Company, Shell Chemical Company, and CRI Catalyst Company (collectively, "defendant"), alleging that defendant infringes U.S. Patent No. *4,908,343* ("the *'343* patent"); U.S. Patent No. *4,916,243* ("the *'243* patent"); and U.S. Patent No. *5,057,481* ("the *'481* patent"). The *'343* and *'243* patents relate to particular types of catalysts and processes for making ethylene oxide. The *'481* patent relates to compositions used in coatings applications. Plaintiff Union Carbide Corporation joined this litigation through an amended complaint on January 4, 2000. (D.I. 75)

Defendant, in its answer to plaintiff's amended complaint, has denied infringement of all three patents-in-suit and filed affirmative defenses and counterclaims alleging that all three patents are invalid, unenforceable, and not infringed. Specifically, defendant alleges that the *'243* patent is unenforceable because it was procured by misrepresentations to the Patent and Trademark Office ("PTO"). (D.I. 78)

Plaintiff n1 is incorporated in Delaware and has its principal place of business in Connecticut. (D.I. 75, PP

4-5) Defendant is a Delaware corporation with its principal place of business [*3] in Texas. (D.I. 75, PP 7-9; D.I. 78 PP 7-9) The court has jurisdiction over this action under *28 U.S.C. § § 1331* and 1338. Venue is proper in this judicial district by virtue of *28 U.S.C. § § 1391*(c) and 1400(b).

> n1 Union Carbide Chemicals & Plastics Technology Corporation and Union Carbide Corporation are hereinafter referred to collectively as "plaintiff."

Currently before the court is defendant's motion to strike under *Fed. R. Civ. P. 12(f)* defendant's affirmative defense, and under *Fed. R. Civ. P. 12(b)(6)* to dismiss defendant's counterclaim with respect to allegations of inequitable conduct. (D.I. 84) Because defendant's subsequent filings with this court clarify its pleadings, plaintiff's motion is denied.

## II. BACKGROUND

Plaintiff brings this motion claiming that defendant's inequitable conduct allegation fails to meet the particularity requirement of *Fed. R. Civ. P. 9(b)* n2 and leaves plaintiff guessing as to the details of its alleged wrongdoing. [*4] Plaintiff specifically complains about the affirmative defense in paragraph thirty-eight of defendant's answer which is repeated and realleged as a counterclaim in paragraph fifty. (D.I. 85 at 3) Paragraph thirty-eight reads:

> The *'243* patent is unenforceable because it was procured by misrepresentations to the PTO regarding the materiality of Union Carbide's own commercial activities to the patentability of claims pending in the prosecution of patent applications leading to the issuance of the patent and by misrepresentations regarding data submitted to the PTO to support the patentability of pending claims. During the prosecution of the *'243* patent, a continuation-in-part application was filed containing claims barred under *35 U.S.C. § 102*(b) as a result of Union Carbide's commercial use of the processes of these claims more than one year before their effective filing date. In a statement to the PTO, the applicants, through their attorneys, acknowledged the commercialization of the invention, but did so in a manner that obscured and misrepresented the significance of the event to the patentability of then pending claims. Additionally, during the prosecution [*5] of the *'243* patent, Union Carbide, on its own initiative, conducted tests based on the teachings of cited prior art references in an effort to distinguish the claimed invention from the teachings of these references. During this testing, Union Carbide deviated from the teachings of the prior art in ways yielding results that inaccurately portrayed the claimed invention as falling outside the teachings of the prior art. Union Carbide also selectively submitted data tending to support the patentability of claims while not submitting data tending to show the contrary. All these misrepresentations were highly material to the PTO proceedings, were made with reckless or intentional disregard of the duty of candor required in proceedings before the PTO, and were made with an intent to deceive the PTO.

(D.I. 78, P 38)

> n2 Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

Plaintiff contends the above paragraph does not [*6] satisfy Rule 9(b) because the allegations: (1) fail to identify what Union Carbide tests are alleged to have deviated from the teachings of the prior art, (2) fail to state how any such tests purportedly deviated from the prior art to yield misleading results, (3) fail to identify what data is alleged to have been "selectively submitted" to the PTO in support of the patentability of the claims, or what "data tending to show the contrary" is alleged to have been withheld, and (4) fail to state how any such data tended to support or refute patentability.

Defendant claims that plaintiff reads the Rule 9(b) requirements too broadly. Defendant claims there is no requirement to identify particular tests and, in any event, plaintiff is aware of the tests to which defendant refers. In its opposition to plaintiff's motion to strike, defendant contends that plaintiff submitted only two declarations that purported to duplicate examples in the prior art cited by the examiner as a basis for rejecting pending claims. Defendant attached those two declarations and claimed that the prior art references and tests they refer to in the

pleadings are consistently referred to throughout the declarations. [*7] n3

n3 The defendant is referring to two 37 C.F.R. § 132 declarations signed by: (1) the inventor, Dr. Madan Bhasin, on December 28, 1979 ("the Bhasin declaration"), and (2) Dr. Thomas Notermann on December 29, 1979 ("the Notermann declaration"). (D.I. 97 at 6)

Plaintiff argues that it submitted not two, but seven declarations during the prosecution of the '243 patent -- four of which discuss testing of catalysts prepared from the teachings of the prior art. In the four declarations, eighteen catalysts were prepared based on five prior art references and twenty tests were conducted to determine whether the catalysts were synergistic. Plaintiff claims that even if defendant limited their inequitable conduct allegations to the two declarations cited in defendant's opposition brief, they would still be guessing about the specifics of the inequitable conduct allegations. In the two cited declarations, fifteen catalysts were prepared based on four prior art references and fifteen tests were conducted to determine [*8] whether those catalysts were synergistic.

## III. DISCUSSION

The purpose of *Fed. R. Civ. P. 9(b)* is "to place the [parties] on notice of the precise misconduct with which they are charged, and to safeguard [the parties] against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984). The particularity requirement of Rule 9 applies to inequitable conduct charges. See *EMC Corp. v. Storage Tech. Corp.,* 921 F. Supp. 1261, 1263 (D. Del. 1996). Pleadings that disclose the relevant prior art and alert the patentee to the alleged fraud satisfy the requirements of Rule 9(b). Id. Rule 9(b) does not require that the pleadings allege the time, date, and place of the alleged misconduct. Id.

Here, the defendant's pleadings do appear to be "bare-boned" on their face. However, its brief submitted in opposition to the present motion sufficiently clarified its pleadings to overcome Rule 9(b)'s requirements. (D.I. 97) In that brief, defendant cites two specific 37 C.F.R. § 132 declarations that were part of the '243 patent's prosecution history. In the Bhasin declaration, [*9] the inventor, through his attorney, responded to a rejection based on U.S. Patent Nos. 3,548,018; 4,038,175; 4,014,913; 4,096,164; and 4,162,262. (D.I. 97, Ex. A at 115) The examiner contended that the above references disclosed combinations of potassium and cesium in silver

catalysts for ethylene oxide manufacture to provide the synergism which Bhasin claimed to be his invention. (Id.) To overcome the rejection, Bhasin selected examples from four of the five cited references to show the use of a silver catalyst containing both potassium and cesium which would demonstrate whether such synergism is inherently taught by the references. (Id. at 116) Bhasin then prepared several catalysts and conducted several tests to determine whether the catalysts were synergistic.

When defendant pleads that plaintiff "conducted tests based on the teachings of cited prior art references in an effort to distinguish the claimed invention from the teachings of these references," defendant is, in the court's opinion, referring to the five prior art references cited above. When defendant pleads that plaintiff "deviated from the teachings of the prior art" and "selectively submitted data tending [*10] to support the patentability of claims," defendant is suggesting that Bhasin did not select representative samples from the prior art references as he proclaimed in his declaration.

The Notermann declaration explains that Notermann evaluated the catalysts prepared by Bhasin. Notermann concurred with Bhasin's opinion that the catalysts he selected were the best choices in determining whether the cited references showed a synergistic combination of silver, cesium, and potassium for the manufacturing of ethylene oxide. (D.I. 97, Ex. B at 105)

This court has allowed a party to clarify its pleadings through responses to interrogatories. See *Scripps Clinic & Research Found. v. Baxter Travenol Labs., Inc.,* 1988 U.S. Dist. LEXIS 1972, 7 U.S.P.Q.2D (BNA) 1562, 1564 (D. Del. 1988). Likewise, the court will allow defendant to clarify its affirmative defenses and counterclaims through its opposition brief. Note, however, insufficiently pled allegations of inequitable conduct shall not be used to justify subsequent discovery into such allegations. See *EMC Corp.,* 921 F. Supp. at 1263.

Defendant's clarification has sufficiently put plaintiff on notice of the precise misconduct with which they [*11] are charged. Defendant will still carry the burden at trial to show that plaintiff did indeed engage in that conduct.

## IV. CONCLUSION

Plaintiff's motion to strike defendant's affirmative defense and to dismiss defendant's counterclaim with respect to allegations of inequitable conduct is denied. Defendant shall have thirty days to amend its answer to include the clarifications laid out in its opposition brief.