# EXHIBIT 6

**BRENT TOWNSHEND, Plaintiff, v. ROCKWELL INTERNATIONAL CORP. and CONEXANT SYSTEMS, Inc., Defendants. CONEXANT SYSTEMS, Inc., Defendant and Counterclaimant v. BRENT TOWNSHEND and 3COM Corporation, Counterdefendants**

No. C 99-0400 SBA

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*2000 U.S. Dist. LEXIS 5070; 55 U.S.P.Q.2D (BNA) 1011; 2000-1 Trade Cas. (CCH) P72,890*

March 28, 2000, Decided
March 28, 2000, Filed

**DISPOSITION:** [*1] Townshend's request for judicial notice GRANTED. 3Com and Townshend's motion to dismiss Conexant's first counterclaim alleging conspiracy to restrain trade GRANTED WITH PREJUDICE. 3Com and Townshend's motion to dismiss Conexant's counterclaim alleging attempted monopolization and conspiracy to monopolize GRANTED WITH PREJUDICE. 3Com and Townshend's motion to dismiss Conexant's counterclaim asserting a state law claim for unfair competition GRANTED WITH PREJUDICE. Townshend's motion to dismiss Conexant's counterclaim asserting inequitable conduct GRANTED WITH LEAVE TO AMEND. Townshend's motion to strike Conexant's affirmative defense of inequitable conduct GRANTED WITH LEAVE TO AMEND. Townshend's motion to dismiss Conexant's counterclaim for patent misuse GRANTED WITH PREJUDICE. Townshend's motion to strike Conexant's sixth affirmative defense of patent misuse GRANTED WITH PREJUDICE. 3Com's motion to strike Paragraphs 86, 87, and 99 DENIED.

**LexisNexis(R) Headnotes**

**COUNSEL:** For BRENT TOWNSHEND, Plaintiff: Robert P. Feldman, Kenneth B. Wilson, James C. Yoon, Vera M. Elson, Sean J. Petrie, Laura Grant, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA.

For ROCKWELL INTERNATIONAL CORP., CONEXANT SYSTEMS INC, defendants: [*2] Mark A. Flagel, Susan S. Azad, Steven D. Atlee, Stacey R. Sternberg, Belinda S. Lee, Michael J. Lawrence, Latham & Watkins, Los Angeles, CA.

For ROCKWELL INTERNATIONAL CORP., CONEXANT SYSTEMS INC, Counter-claimants: Mark A. Flagel, Susan S. Azad, Steven D. Atlee, Stacey R. Sternberg, Belinda S. Lee, Michael J. Lawrence, Latham & Watkins, Los Angeles, CA.

For BRENT TOWNSHEND, Counter-defendant: Robert P. Feldman, Kenneth B. Wilson, James C. Yoon, Vera M. Elson, Sean J. Petrie, Laura Grant, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA.

For 3COM CORPORATION, Counter-defendant: Bradley J. Hulbert, Christopher M. Cavan, Amir N. Penn, McDonnell Boehnen Hulbert & Berghoff, Chicago, IL.

For 3COM CORPORATION, Counter-defendant: Stephen V. Bomse, Heller Ehrman White & McAuliffe, San Francisco, CA.

**JUDGES:** SAUNDRA BROWN ARMSTRONG, United States District Judge.

**OPINIONBY:** SAUNDRA BROWN ARMSTRONG

**OPINION:**

ORDER

Case 1:05-cv-00048-SLR    Document 15-8    Filed 03/11/2005    Page 3 of 16

Page 2

2000 U.S. Dist. LEXIS 5070, \*; 55 U.S.P.Q.2D (BNA) 1011;
2000-1 Trade Cas. (CCH) P72,890

Pending before the Court is Townshend's request for judicial notice (Docket 49-1), Townshend's motion to dismiss Conexant's first, second, third, fifth and sixth counterclaims and to strike Conexant's sixth and seventh affirmative defenses (Docket 47-1), 3Com's motion to dismiss [\*3] Conexant's first, second, and third counterclaims (Docket 44-1), and 3Com's motion to strike Paragraphs 86, 87, and 99 from Conexant's answer (Docket 44-2). For the following reasons, the Court GRANTS Townshend's request for judicial notice. The Court GRANTS 3Com and Townshend's motion to dismiss Conexant's first, second, and third counterclaims and dismisses these claims without leave to amend. The Court GRANTS Townshend's motion to dismiss Conexant's fifth counterclaim with leave to amend and GRANTS Townshend's motion to dismiss Conexant's seventh affirmative defense with leave to amend. The Court GRANTS Townshend's motion to dismiss Conexant's sixth counterclaim without leave to amend and grants the motion to strike Conexant's sixth affirmative defense without leave to amend. The Court DENIES 3Com's motion to strike Paragraphs 86, 87, and 99.

## BACKGROUND

Plaintiff Brent Townshend is the inventor of the technology underlying "56K modems." A 56K modem allows a computer user to access information at 56,000 bits per second ("56K"). In December 1994, Plaintiff filed a United States patent application for 56K modem technology.

In April 1996, Townshend entered into a licensing [\*4] agreement with U.S. Robotics ("USR") - now part of 3Com Corporation - to make and sell the technology covered by Townshend's patents.

On October 14, 1997, Townshend commenced an action in the San Mateo Superior Count against defendant Rockwell and co-defendant Conexant Systems, Inc. (formerly known as Rockwell Semiconductor Systems, Inc.) asserting state claims for unfair competition, misappropriation of trade secrets, breach of contract and breach of confidence. Townshend alleged that Rockwell and Conexant Systems (collectively "Conexant") had misappropriated information which he had disclosed to them during negotiations over a possible licensing agreement in August 1995.

On September 1, 1998, September 15, 1998, and November 10, 1998, U.S. patents 5,801,695, 5,809,075, and 5,835,538 were issued to Townshend based on the 56K modem technology which he had developed. The 1996 licensing agreement between Townshend and USR provided that 3Com would have an option to purchase Townshend's patents between March 1, 1999 and March 31, 1999. On March 30, 1999, 3Com exercised its option to purchase Townshend's patents. In tandem with the exercise of that option, 3Com executed an Assignment [\*5] and License Agreement granting all ownership rights back to Townshend, including the right to enforce the patents and collect damages for past infringement. Under the new agreement, 3Com retained only a non-exclusive license in the patents.

On January 27, 1999, Townshend obtained authorization from 3Com to file suit on the patents and filed a federal complaint against Rockwell and Conexant. On that same day, he dismissed the state case without prejudice.

In the federal action pending before this Court, Townshend has asserted three claims of patent infringement and has reasserted the four state law claims that he dismissed in the state action. Defendant moved to dismiss the state claims, and this Court denied the motion on April 26, 1999.

Conexant answered the complaint, asserting several counterclaims and affirmative defenses, which are at issue, in the present motion. These allegations assert that Townshend and 3Com have engaged in antitrust violations, including Sections 1 and 2 of the Sherman Act and *Cal. Bus. & Prof. Code § 17200* and that Townshend has engaged in inequitable conduct and patent misuse. Conexant alleges that 3Com conspired with Townshend to obtain invalid patents [\*6] purporting to cover technology facilitating the operation of 56K PCM modem chipset products, to fraudulently procure an industry standard for the operation of these products which it claims requires Townshend's technology, to deny the technology to 3Com's competitors or condition the availability of the technology on reciprocal dealing with 3Com. See Answer P 82.

The allegations are based on Conexant's contention that 3Com and Townshend lobbied the International Telecommunications Union ("ITU") to adopt an industry standard which embodied Townshend's technology. See Answer P 93. Conexant also alleges that 3Com and Townshend submitted a proposed licensing arrangement to the ITU in September 1997 which violated the Patent Policy of the ITU's Standards Board. See id. Conexant further alleges that 3Com and Townshend did not disclose to the ITU that Townshend had filed a trade secret action in state court against Conexant or that Townshend intended to file a patent infringement suit against Conexant. See id. at P 95. In February 1998, the ITU recommended adoption of the V.90 standard for 56K chipset modems. Conexant alleges that 3Com and Townshend have asserted that the [\*7] V.90 standard incorporates Townshend's technology. Conexant argues

Case 1:05-cv-00048-SLR    Document 15-8    Filed 03/11/2005    Page 4 of 16

Page 3

2000 U.S. Dist. LEXIS 5070, *; 55 U.S.P.Q.2D (BNA) 1011;
2000-1 Trade Cas. (CCH) P72,890

that this assertion, combined with 3Com and Townshend's lobbying activities before the ITU and their proposed licensing terms, constitute anticompetitive conduct.

Townshend first requests judicial notice of (1) Conexant's filing before the Securities Exchange Commission ("SEC") and (2) specific records from the ITU. Townshend also moves to dismiss Conexant's first, second, and third counterclaims and moves to strike two affirmative defenses. Counterdefendant 3Com also brings a motion to dismiss Conexant's first, second, and third counterclaims and moves to strike three paragraphs (86, 87, and 99) from Conexant's answer.

ANALYSIS

I. REQUEST FOR JUDICIAL NOTICE

LEGAL STANDARD

*Fed.R.Evid. 201* provides that a judicially noticed fact is "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." In a civil action or proceeding, the Court shall instruct the jury to accept as conclusive any fact judicially noticed. [*8] *Fed.R.Evid. 201(g).* Information requested to be judicially noticed must be relevant to the matter before the Court. See *29 Am Jur 2d Evid. § 25* (1994).

DISCUSSION

Townshend has requested judicial notice of Conexant's SEC filings and records from the ITU. The request is unopposed.

Conexant's SEC filings contain statements regarding Conexant's market share for modem chipset products, which are relevant to Conexant's arguments regarding 3Com's market share in the 56K PCM modem product market. An SEC filing is a public document which can be readily verified. The Court finds that this filing presents information relevant to this action and that this information is capable of accurate and ready determination. The Court GRANTS Townshend's request for judicial notice of Conexant's SEC filings.

Townshend also requests that the Court take judicial notice of certain records from the ITU. The ITU records are relevant to this action given Conexant's allegations that 3Com and Townshend engaged in anti-competitive conduct by deceiving the ITU in connection with the patents at issue. Given the relevance of the ITU records and the lack of any challenge to the accuracy of this information, [*9] the Court GRANTS Townshend's request for judicial notice of the ITU records.

II. MOTION TO DISMISS COUNTERCLAIMS AND TO STRIKE AFFIRMATIVE DEFENSES

LEGAL STANDARD

A. MOTION TO DISMISS

Under *Federal Rule of Civil Procedure 12(b)(6)*, a motion to dismiss should not be granted unless it appears beyond a doubt that the non-moving party "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).* For purposes of such a motion, the pleading is construed in a light most favorable to the non-moving party and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen, 395 U.S. 411, 421, 23 L. Ed. 2d 404, 89 S. Ct. 1843 (1969); Everest and Jennings, Inc. v. American Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994).* Although the court is generally confined to consideration of the allegations in the pleadings, when the pleading is accompanied by attached documents, such documents are deemed part of the pleading and may be considered in evaluating the merits of a Rule 12(b)(6) motion. *Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 (9th Cir. 1990).* [*10]

"[A] document is not 'outside' the [pleading] if the pleading specifically refers to the document and if its authenticity is not questioned." *Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).* Moreover, the Court may consider matters of which it may properly take judicial notice without converting the motion to dismiss to one for summary judgment. *Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994)* (records and reports to administrative bodies); *Emrich v. Touche Ross & Co., 846 F.2d 1190, 1198 (9th Cir. 1988)* (court records).

When the pleading is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).* Leave to amend is properly denied "where the amendment would be futile." *DeSoto Yellow Freight Sys., 957 F.2d 655, 658 (9th Cir. 1992).*

B. MOTION TO STRIKE

Under *Federal Rule of Civil Procedure 12(f)*, a court has the discretion to strike a [*11] pleading, or portions thereof. *Federal Savings and Loan v. Gemini Management, 921 F.2d 241, 243 (9th Cir. 1990).* Rule 12(f) provides that a court "may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "The function of a rule 12(f) motion to strike is to avoid the expenditure of time and money

Page 4

2000 U.S. Dist. LEXIS 5070, *; 55 U.S.P.Q.2D (BNA) 1011;
2000-1 Trade Cas. (CCH) P72,890

that must arise form litigating spurious issues by dispensing with those issues prior to trial. . . . " *Sidney-Vinstein v. A. H. Robins, Co., 697 F.2d 880, 885 (9th Cir. 1983)*.

Motions to strike are disfavored, and should not be granted unless it is clear that the matter to be stricken can have no possible bearing upon the subject matter of the litigation. *Naton v. Bank of California, 72 F.R.D. 550 (1976)*, citing 2A J. Moore, Federal Practice, Section 12.2(2) at 244429 (2d ed. 1975). In addition, motions to strike are rarely granted in the absence of a showing of prejudice to the moving party. See *61 Am.Jur.2d Pleading § 505* (West 1999). However, if a pleading is deficient, the Court may strike the pleading and require the non-moving party to submit an amended pleading which includes [*12] more specific allegations. See *Farlow v. Union Central Life Insurance Company, 874 F.2d 791 (11th Cir. 1989)*(granting leave to amend in conjunction with a motion to strike state law claims from a complaint); *Williams v. California 1st Bank, 859 F.2d 664 (9th Cir. 1988)*(granting motion to strike affirmative defense and giving defendant leave to amend the defense as a counterclaim); *Miles v. Ertl Company, 722 F.2d 434 (8th Cir. 1983)*(granting plaintiff leave to amend after striking the complaint). In addition, a court within this district has indicated the appropriateness of granting leave to amend in conjunction with a motion to strike allegations of inequitable conduct. See *Chiron v. Abbott Laboratories, 156 F.R.D. 219, 222 (1994)*(granting plaintiff's motion to strike an affirmative defense of inequitable conduct and providing defendants with the opportunity to amend their answer to plead the defense with the requisite particularity).

DISCUSSION

A. FIRST COUNTERCLAIM - SHERMAN SECTION 1

Both Townshend and 3Com have moved to dismiss the first counterclaim asserted by Conexant, which alleges conspiracy in restraint [*13] of trade in violation of Section 1 of the Sherman Act. An allegation of conspiracy pursuant to Section 1 of the Sherman Act requires (1) an agreement or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intend to harm or restrain competition, and (3) which actually injures competition. See *Les Shockley Racing v. National Hot Rod Assoc., 884 F.2d 504, 507 (9th Cir. 1989)*. In the first counterclaim, Conexant alleges that Townshend and 3Com have combined and conspired to obtain invalid patents, to deceive the ITU into incorporating Townshend's patent into the industry standard, to deny competitors access to this technology, to restrain competition, and to file this lawsuit in order to prevent Conexant from using Townshend's technology. See Answer P 104.

1. Sufficiency of Conspiracy Allegation

Both 3Com and Townshend move to dismiss Conexant's first counterclaim on the basis that licensors and licensees are legally incapable of conspiring under Section 1 of the Sherman Act. In response, Conexant argues the determination of whether these two entities are capable of conspiring is a question of fact which cannot [*14] be resolved in a 12(b)(6) motion to dismiss. Conexant also asserts that 3Com and Townshend have independent economic motivations which would make them legally capable of conspiring under the antitrust laws.

a) Question of Fact

In *Los Angeles Memorial Coliseum Commission v. National Football League, et al., 726 F.2d 1381, 1387 (9th Cir. 1984)*, the Ninth Circuit explained that "the nature of an entity and its ability to combine or conspire in violation of § 1 [of the Sherman Act] is a fact question." In that case, the Ninth Circuit affirmed the district court's rejection of a defense which asserted that the defendants were incapable of conspiring because they were a single entity. Given the Ninth Circuit's finding that the ability of an entity to enter a conspiracy is a question of fact, the Court finds that 3Com and Townshend's contention that they are incapable of entering into a conspiracy cannot be resolved in a 12(b)(6) motion to dismiss.

b) Legal Credibility to Enter Conspiracy

Even if the Court were to evaluate the allegations regarding 3Com and Townshend's capability to enter into a conspiracy, the case law regarding the ability of licensors and licensees [*15] to enter a conspiracy does not establish that 3Com and Townshend are legally incapable of conspiring under Section 1 of the Sherman Act.

3Com and Townshend rely on the Supreme Court's holding in *Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 81 L. Ed. 2d 628, 104 S. Ct. 2731 (1984)* for their position that they are legally incapable of conspiring under the antitrust laws. In Copperweld, the Supreme Court considered the issue of whether a parent company and its subsidiary could conspire under the Sherman Act and held that these two entities could not conspire. This holding was based upon the Supreme Court's reasoning that coordinated activity by parties who lack independent sources of economic power and separate interests did not warrant scrutiny under the antitrust laws. *Copperweld, 467 U.S. at 771*. The Court expressly limited its holding to parent companies and their subsidiaries and has not extended this holding to the

Case 1:05-cv-00048-SLR    Document 15-8    Filed 03/11/2005    Page 6 of 16

Page 5

2000 U.S. Dist. LEXIS 5070, *; 55 U.S.P.Q.2D (BNA) 1011;
2000-1 Trade Cas. (CCH) P72,890

licensor/licensee context, which is at issue in the motion before this Court. Because of the limited holding in Copperweld, the Court does not find that Copperweld requires a finding in this case that 3Com and [*16] Townshend are legally incapable of conspiring under the antitrust laws.

3Com and Townshend also rely upon a case within this district which held in the context of a motion for summary judgment that a patent holder and its exclusive licensee were legally incapable of entering into an antitrust conspiracy. See *Levi Case Co. v. ATS Products, 788 F. Supp. 428 (N.D. Cal. 1992)*(Walker, J.). In Levi Case, the court granted summary judgment to a patentee and its exclusive licensee on the basis that they were legally incapable of engaging in the alleged conspiratorial acts in dealing with sublicensees.

While the facts in Levi Case resulted in a finding by that court that a patent holder and its exclusive licensee were incapable of entering into a conspiracy with respect to their conduct with sublicensees, the court did not set forth a bright-line rule that patent holders and their licensees could never conspire. In fact, the Levi Case court explained that the relationship between a patent holder and its licensee could be a conspiracy in violation of the antitrust laws if the relationship "deprived the marketplace of independent actors." *Levi Case, 788 F. Supp. at 431.* [*17]

The conspiratorial conduct alleged in this action involves "agreements [between 3Com and Townshend] to expand the market power conferred by Townshend's patents by (i) fraudulently obtaining from the ITU a standard incorporating those patents; (ii) using the market power conferred by that standard as leverage to acquire competitors' technology; and (iii) barring competitors from access to the patents they need in order to block them from manufacturing standard-complaint products, and thus, preventing them from competing in the relevant markets." Def Opp. at 9. Conexant asserts that 3Com and Townshend lack any legitimate joint interest which would justify a finding that 3Com and Townshend are incapable of entering into a conspiracy because "neither a patent owner nor its licensee has any business engaging in concerted action to create market power beyond that conferred by their patents." Def. Opp. at 9. n1

n1 Conexant also argues that 3Com became a non-exclusive licensee in March 1999, which removes any shield from conspiracy liability conferred by Levi Case. See Def. Opp. at 9. However, Conexant has alleged conspiratorial acts occurring prior to March 1999, at a time period when the exclusive license was still in effect.

[*18]

The Levi Case court explained that a patent holder and licensee could be legally capable of entering into a conspiracy if the alleged conduct deprived the marketplace of independent actors. Conexant has argued that Townshend and 3Com are independent actors n2 and has alleged that Townshend and 3Com acted jointly to unlawfully expand the market power conferred by Townshend's patents. The independent motivations of Townshend and 3Com combined with the allegations that Townshend and 3Com acted jointly with respect to Townshend's patents render 3Com and Townshend legally capable of entering a conspiracy under the reasoning of Levi Case.

n2 At the hearing, Conexant represented that 3Com and Townshend are independent actors in that they have different interests with respect to the patented technology. 3Com, as a competitor in the market for products incorporating the patented technology, has an interest in excluding competitors, whereas Townshend, who does not manufacture or sell products incorporating the patented technology, does not share this interest. Townshend has represented that his interest in this action is to maximize the licensing revenue from his patents.

[*19]

Because the question of capability to enter a conspiracy is a question of fact and because the case law does not establish that Townshend and 3Com are legally incapable of entering into a conspiracy under the factual circumstances alleged by Conexant, the Court finds that 3Com and Townshend's 12(b)(6) challenge to their capability to enter a conspiracy does not warrant dismissal of Conexant's first counterclaim.

2. Sufficiency of Allegations of Injury

Townshend and 3Com also challenge Conexant's counterclaim for conspiracy on the basis that the alleged antitrust injury is insufficient to state a claim under Section 1 of the Sherman Act. The allegations plead that 3Com and Townshend have used the market power conferred by the ITU standard to injure competition generally and to injure Conexant specifically.

a) Injury to Competition

Conexant argues that the allegations of antitrust injury adequately plead that 3Com and Townshend have

used the market power conferred by the ITU standard to injure competition generally because Townshend's Licensing Proposal sets out proposed terms which violate ITU's Telecommunications Standards Board (TSB) Patent Policy. Conexant alleges that the proposed [*20] terms of the Licensing Proposal violate TSB's Patent Policy by denying access to Townshend's technology or conditioning the availability of the technology on reciprocal dealing, by extracting cross-licenses at fixed, artificially low rates and by attempting to double-charge Conexant and its customers by requiring them each to pay a separate license fee for Townshend's patents. See Answer PP 93-99.

The issue before this Court is whether Conexant has adequately plead antitrust injury through its allegations that the licensing terms proposed by 3Com violate the TSB Patent Policy. The TSB Patent Policy provides that if a standardization proposal incorporates technology which is patented or is part of a pending patent application, the patent holder should either waive his rights or "be willing to negotiate licenses with other parties on a non-discriminatory basis on reasonable terms and conditions." See Rees Decl., Ex. A, App. 1, 1.2.2. However, the policy goes on to state that "such negotiations are left to the parties concerned and are performed outside the ITU-T (Standardization Sector)." See id. The ITU does not consider the substance of the licensing provisions in deciding [*21] whether or not to adopt a particular standard. Instead, the ITU assesses whether the patent holder is willing to negotiate such terms. If a patent holder is not willing to negotiate licenses, the TSB patent policy provides that "no Recommendation can be established." See id. at 1.2.3.

The ITU recommended the V.90 standard in February 1998 and ratified the standard in September 1998. The proposed licensing terms were submitted to the ITU in September 1997, before adoption of the V.90 standard occurred. As required by the TSB patent policy, 3Com stated its willingness to negotiate licenses by submitting a "Proposed Key Terms and Conditions for Licensing Patents Relating to an ITU-T Standard for V.PCM." See Rees Decl., Ex. B. This submission contains the proposed terms which Conexant now contends are discriminatory, unfair, and unreasonable. n3 Here, the ITU, whose members included Rockwell (Conexant's predecessor), adopted the V.90 standard after receiving 3Com's submission. The adoption of the V.90 standard by the ITU suggests that the ITU was satisfied that the proposed terms submitted by 3Com evidenced a willingness by 3Com to negotiate non-discriminatory, fair, and reasonable [*22] terms. n4

n3 Conexant alleges that "the Townshend Licensing Proposal, along with other accompanying statements to the ITU, violated the rules of the TSB Patent Policy....3Com and Townshend ostensibly represented that Townshend was willing to negotiate licenses with other parties on a non-discriminatory basis." Answer P 93.

n4 Conexant has also alleged that 3Com and Townshend failed to disclose Townshend's trade secret action to the ITU prior to adoption of the V.90 standard. Conexant, the defendant in the trade secret action, was a member of the ITU during this time and has not alleged any injury to competition resulting from this failure to disclose.

At the hearing and in its papers, Conexant has argued that the licensing terms are injurious to competition because 3Com and Townshend sought unfair royalty rates, double-charging of customers and manufacturers, mandatory cross-licenses, and reservation of the right to condition licenses on the resolution of litigation.

Under the terms of the Patent Act, a [*23] patent owner has the legal right to refuse to license his or her patent to others. Pursuant to *35 U.S.C. § 271*(d), "no patent owner otherwise entitled to relief...[shall be] deemed guilty of...illegal extension of the patent right by reason of his having...(4) refused to license or use any rights to the patent." *35 U.S.C. § 271*(d). The Federal Circuit has indicated that "the antitrust laws do not negate a patentee's right to exclude others from patent property." *In Re Independent Service Organizations Antitrust Litigation, 203 F.3d 1322 (Fed. Cir. 2000)*(internal quotations and citations omitted). Given that a patent holder is permitted under the antitrust laws to completely exclude others from practicing his or her technology, the Court finds that 3Com's submission of proposed licensing terms with which it was willing to license does not state a violation of the antitrust laws.

Even if the Court were to consider the unfair terms alleged by Conexant, the Court finds that these terms do not state an injury to competition. First, with respect to the proposed royalty rates, the Court notes the initial licensing proposal [*24] dated September 1997 sought a maximum $ 1.25 per-unit royalty for client-end products and a maximum $ 9.00 per-port royalty for server-end products. See Rees Decl., Ex. B at 4. In September 1998, after the V.90 standard had been adopted, 3Com submitted a revised licensing proposal which sought a maximum $ 1.25 per-unit royalty for client-end products and a maximum $ 2.50 per-port royalty for server-end products. See Rees Decl., Ex. C at 4. Conexant has not

Case 1:05-cv-00048-SLR    Document 15-8    Filed 03/11/2005    Page 8 of 16

Page 7
2000 U.S. Dist. LEXIS 5070, *; 55 U.S.P.Q.2D (BNA) 1011;
2000-1 Trade Cas. (CCH) P72,890

explained how the royalty rates state unfair terms. A patent owner's pursuit of optimum royalty income is not an act in restraint of trade which violates the antitrust laws. See *Genentech v. Eli Lilly*, 998 F.2d 931, 948 (Fed. Cir. 1993). Second, with respect to the allegations of double-charging, Conexant alleges that the licensing proposal "purports to require both Conexant and its customers to each separately pay for a license." See Answer P 98. Townshend argues that this allegation mischaracterizes the licensing proposal. The licensing proposal sets forth one royalty rate for client-end products and one royalty rate for server-end products. See Rees Decl., Ex. B and C. The proposal does not suggest [*25] that modem chipest manufacturers and modem chipset makers would each be obligated to pay royalties on the same product. In addition, an attempt to double-charge is prohibited under the doctrine of patent exhaustion. See *Intel v. ULSI System Tech.*, 995 F.2d 1566 (Fed. Cir. 1993). Third, with respect to the mandatory cross-licensing provisions, Conexant has not identified any authority for the proposition that cross-licensing constitutes anticompetitive conduct. Generally, cross-licensing is considered a pro-competitive practice because it can facilitate the integration of complementary technologies. See U.S. Dep't of Justice and FTC, Antitrust Guidelines for the Licensing of Intellectual Property (1995). In fact, the terms of the licensing proposal indicate that 3Com sought cross-licenses for technologies which "are specified in the V.PCM Standard or are related to V.PCM technologies and are otherwise practically necessary or desirable, for technical or economic reasons, in order to make a commercially viable product compliant with the V.PCM Standard." See Rees Decl., Ex. B at 4. Based on this representation by 3Com and the lack of authority by Conexant in [*26] support of its argument that the cross-licensing practice is anticompetitive, the Court finds that this allegation does not state an antitrust injury. Finally, Conexant alleges that the licensing proposal purports to condition licenses on the resolution of litigation. Because a patent owner has the legal right to refuse to license his or her patent on any terms, the existence of a predicate condition to a license agreement cannot state an antitrust violation. See *Genentech*, 998 F.2d at 949 (finding that a patentee's right to select its licensees is not an antitrust violation). The Court finds that the proposed licensing terms do not state an injury to competition in violation of the antitrust laws.

In addition to alleging that the proposed licensing terms constitute injury to competition, Conexant has also alleged that the filing of Townshend's infringement suit is an antitrust injury resulting from a conspiracy between 3Com and Townshend. A patentee has the legal right to bring suit against those who infringe his or her patents. See *35 U.S.C. § 271*. Conexant's allegations that Townshend initiated a patent infringement suit - without any [*27] additional allegation of anti-competitive aspects of this suit -- does not state an antitrust injury, nor does it identify any antitrust injury caused by a conspiracy between 3Com and Townshend.

The Court finds that Conexant has not stated an injury to competition, either in its allegations regarding the proposed licensing terms or its allegations regarding the filing of Townshend's infringement suit. At the hearing on the motion, Conexant did not identify any other antitrust injury which it could allege in its answer.

b) Injury to Conexant

Conexant also argues that injury to itself is sufficient to alleged injury to competition under Section 1. Injury to a competitor does not necessarily allege injury to competition. See *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 50 L. Ed. 2d 701, 97 S. Ct. 690 (1977). Conexant must specifically indicate how the allegedly anticompetitive acts undertaken by Townshend and 3Com resulted in antitrust injury in order to state a claim. As indicated above, Conexant has not stated any allegations of antitrust injury.

The Court finds that Conexant's first counterclaim does not state a claim for conspiracy to restrain trade [*28] in violation of Section 1 of the Sherman Act. Conexant has not sufficiently alleged an antitrust injury or provided any arguments indicating that it could amend this counterclaim to add factual allegations to state an antitrust injury. 3Com and Townshend's motion to dismiss is GRANTED, and the first counterclaim is DISMISSED without leave to amend.

B. SECOND COUNTERCLAIM - SEERMAN SECTION 2

The second counterclaim is for attempted monopoly and conspiracy to monopolize in violation of Section 2 of the Sherman Act. A claim for attempted monopolization requires (1) a specific intent to control prices or to destroy competition in the relevant market; (2) predatory or anticompetitive conduct; and (3) a dangerous probability of achieving monopoly power; and (4) causal antitrust injury. See *McGlinchy v. Shell Chem Co.*, 845 F.2d 802 (9th Cir. 1988). A claim for conspiracy to monopolize requires (1) a conspiracy; (2) an attempt to monopolize; and (3) a causal antitrust injury. See *Morgan Strand Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484 (9th Cir. 1991). Conexant alleges that 3Com and Townshend have willfully engaged in conduct creating a dangerous [*29] probability that 3Com will acquire and maintain monopoly power in the market for 56K modem chipset products and that 3Com and Townshend will acquire and maintain monopoly power in the related 56K modem technology market. See

Case 1:05-cv-00048-SLR   Document 15-8   Filed 03/11/2005   Page 9 of 16

Page 8
2000 U.S. Dist. LEXIS 5070, *; 55 U.S.P.Q.2D (BNA) 1011;
2000-1 Trade Cas. (CCH) P72,890

Answer P 108. Conexant also alleges that 3Com and Townshend have acted with a specific intent to monopolize these markets. See Answer P 109.

This counterclaim concerns two relevant markets for 56K PCM modem chipsets: the "product" market and the "technology" market. Conexant defines that product market as "chipset devices which are capable of transmitting data and information over ordinary telephone lines at speeds up to 56 kilobits per second." Answer P 78. Conexant defines the technology market as proprietary technology necessary to practice a 56K PCM modem and has explained that this market includes Townshend's patents as well as other proprietary technology.

1. Attempted Monopoly

The first allegation in Conexant's counterclaim is for attempted monopolization. An attempted monopolization claim requires (1) a specific intent to control prices or to destroy competition in the relevant market; (2) predatory or anticompetitive conduct; (3) a dangerous [*30] probability of achieving monopoly power; and (4) causal antitrust injury. See *McGlinchy v. Shell Chem. Co., 845 F.2d 802 (9th Cir. 1988)*. In its opposition, Conexant concedes that the allegations related to attempted monopolization apply only to 3Com. See Def. Opp. at 12.

a) Specific Intent

A claim for attempted monopolization requires allegations of a specific intent to control prices or to destroy competition in the relevant market. *McGlinchy v. Shell Chem. Co., 845 F.2d 802 (9th Cir. 1988)*. Conexant argues that it has alleged the following facts to demonstrate anti-competitive intent: (1) 3Com and Townshend deceived the ITU by convincing the ITU to adopt an industry standard incorporating Townshend's patented technology and then refusing to license this patented technology to Conexant on fair terms; (2) 3Com prepared an internal memo in which 3Com officers indicated they would not make Townshend's technology available to Conexant. See Def. Opp. at 13; Answer P 87.

With respect to the allegation of anti-competitive intent based upon deception of the ITU and subsequent refusal to license to Conexant, the Court finds that the alleged facts [*31] do not support an inference of anti-competitive intent. 3Com provided the ITU with the allegedly "unfair" licensing terms before the ITU adopted the V.90 standard, and 3Com stated its willingness to license with potential licensees in accordance with these terms. See supra. In addition, there is no allegation that 3Com has refused to license with Conexant in accordance with the proposed terms submitted to the ITU. The Court finds that 3Com's alleged conduct before the ITU does not support an inference of anti-competitive intent.

With respect to the 3Com memo, Conexant argues that this memo reveals that "3Com set out to abuse the market power conferred upon it by the ITU standard - namely, by refusing to license Townshend's patents to Conexant in order to restrain trade and monopolize the relevant markets." Def. Opp. at 14 (emphasis added). The internal memo, which was written in 1996 before the V.90 standard was adopted, does not specifically discuss the ITU standard or any market power conferred by this standard. This allegation does not support an inference of anti-competitive intent to abuse the market power conferred by the ITU standard.

Conexant's counterclaim for [*32] attempted monopolization against 3Com does not provide allegations to support an inference of anticompetitive intent.

b) Anticompetitive Conduct

The second element in a claim for attempted monopolization is an allegation of anti-competitive conduct. Although the attempted monopolization claim is limited to 3Com, Conexant has identified the following anti-competitive conduct: 3Com and Townshend's conduct during the ITU standards-setting process, 3Com and Townshend's refusal to license Townshend's patents on fair terms and Townshend's current patent infringement suit against Conexant.

i) Conduct before the ITU

In support of its argument that 3Com's conduct before the ITU constitutes anti-competitive conduct, Conexant relies upon In re Dell, slip op., No. 931-0097 (LEXIS, Trade Library, FTC file). In that case, Dell lobbied a video electronics association for an industry standard incorporating Dell's patented technology but failed to disclose that it held this patent during its lobbying efforts. The Federal Trade Commission found that Dell's actions violated Section 5 of the FTC Act and issued a consent order prohibiting Dell from attempting to enforce the non-disclosed patent [*33] for a ten-year period.

Dell is not analogous to the instant case for several reasons. First, Townshend's patens issued after the ITU had adopted the V.90 standard, whereas in Dell, the patent owner had an issued patent at the time the standard-setting proceeding took place. 3Com informed the ITU that Townshend had pending patent applications covering 56K chipset modem technology, while the patent owner in Dell did not disclose the existence of the patent to the standards-setting organization. Conexant has not asserted that the ITU could have adopted a V.90

Case 1:05-cv-00048-SLR    Document 15-8    Filed 03/11/2005    Page 10 of 16

Page 9

2000 U.S. Dist. LEXIS 5070, *; 55 U.S.P.Q.2D (BNA) 1011;
2000-1 Trade Cas. (CCH) P72,890

standard which did not encompass Townshend's technology, whereas in Dell, the standards-setting body was choosing among options, and there was a possibility that they could have adopted a standard which did not incorporate Dell's patent. Because Dell is distinguishable from this case for several reasons, the Court finds that Dell does not provide support for Conexant's argument that 3Com's conduct before the ITU, including the proposed licensing terms, was anticompetitive. n5

> n5 3Com makes the additional argument that if the Court were to find that this conduct is anti-competitive, its actions before the ITO would be immune from suit in light of the Noerr-Pennington doctrine. This doctrine confers immunity for acts that would otherwise be considered anti-competitive if these acts are directed towards influencing government action.

Given the Court's finding that the conduct alleged by Conexant does not state any anti-competitive conduct by 3Com before the ITU, the Court does not reach the issue of Noerr-Pennington immunity.

[*34]

ii) Refusal to License

Conexant next identifies 3Com's refusal to license on fair terms as an example of anticompetitive conduct. The Court again notes that 3Com made the proposed licensing terms and conditions -- which Conexant now contends are unfair -- available to the ITU and its members before the V.90 standard was adopted. There is no allegation that 3Com has refused to license to Conexant in accordance with these proposed licensing terms and conditions. The Court finds that Conexant has not identified anti-competitive conduct by 3Com regarding refusal to license.

iii) Townshend's infringement suit

Conexant's third assertion is that the patent infringement suit filed by Townshend constitutes anticompetitive conduct sufficient to support a claim for attempted monopolization against 3Com. However, Conexant has conceded in its opposition that the attempted monopolization claim applies only to 3Com, not to Townshend. Def. Opp. at 12. The Court finds that this allegation does not state any anti-competition conduct by 3Com.

The Court finds that Conexant has not identified any anti-competitive conduct by 3Com in support of a claim for attempted monopolization.

c) Probability of [*35] Monopolization

The third element in a claim for attempted monopolization is an allegation of a dangerous probability of achieving monopoly power, which includes allegations regarding the market power held by the antitrust defendant.

i. Product Market

Conexant alleges that 3Com has a 50% share of the "product market." See Answer P 81. The Ninth Circuit has indicated that market share is insufficient to show market power and has found that courts should also evaluate the presence of entry barriers and the inability of competitors to expand output. See *Rebel Oil Co., Inc., v. Atlantic Richfield Co., 51 F.3d 1421, fn 10 (9th Cir. 1995)*(rejecting bright-line rule and finding that an analysis of market power should be decided by analyzing market share, entry barriers and the capacity of existing competitors to expand output). Here, Conexant has alleged that 3Com has a 50% market share in the product market and that this market contains entry barriers in the form of Townshend's patents and the ITU standard. These allegations satisfy two of the three criteria for Rebel Oil. However, Conexant has not alleged that competitors are unable to expand output, which is [*36] the third factor set forth by the Ninth Circuit in Rebel Oil. At the hearing, Conexant argued that the proposed licensing terms effectively prohibit competitors from building standard-complaint products, but Conexant has not demonstrated that it can allege facts to support this argument. There is no allegation that 3Com has refused to license Townshend's technology in accordance with the proposed terms submitted to ITU or that competitors are unable to license Townshend's technology in order to build standard-complaint products. Conexant has not alleged facts to show that competitors are unable to expand output, and as such, has not alleged that 3Com has a dangerous probability of monopolization in the product market.

ii. Technology Market

Conexant has not alleged any market share in the technology market. Instead, Conexant argues that under Dell, an industry standard confers market power, and because Townshend's patents are allegedly incorporated into the V.90 standard, these patents have market power in the technology market.

In Dell, the FTC recognized that an industry standard which incorporates patented technology can confer market power in a market for products [*37] incorporating the industry standard. However, the FTC did not consider the issue of whether this standard conferred market power in a market consisting of proprietary technology.

Case 1:05-cv-00048-SLR Document 15-8 Filed 03/11/2005 Page 11 of 16

Page 10
2000 U.S. Dist. LEXIS 5070, \*; 55 U.S.P.Q.2D (BNA) 1011;
2000-1 Trade Cas. (CCH) P72,890

In a market consisting of proprietary technology necessary to practice a 56 K modem, any party who has secured proprietary rights to such technology (i.e. - a patent) possesses the legal right to exclude others from practicing technology which has been protected. See 35 U.S.C. § 271. The adoption of a industry standard incorporating such proprietary technology does not confer any power to exclude that exceeds the exclusionary power to which a patent holder is otherwise legally entitled. Moreover, Conexant has not alleged that the adoption of the V.90 standard prevents the development of proprietary technology that could otherwise be developed.

In the absence of allegations of market share in the technology market or allegations that the industry standard prevents the development of proprietary technology that could otherwise be developed, Conexant has not alleged that the alleged incorporation of Townshend's patents into the V.90 standard presents a dangerous probability of [\*38] monopolization in the market for proprietary technology.

d) Causal antitrust injury

The fourth element of a claim for attempted monopolization is causal antitrust injury - an injury to competition caused by 3Com's conduct. As discussed in the analysis of the Sherman Section 1 counterclaim, Conexant has not alleged a sufficient injury under the antitrust laws and has not demonstrated that it can amend its answer to state additional factual allegations. See supra. The existence of the proposed licensing terms in and of themselves do not state injury to competition.

The Court finds that Conexant's second counterclaim fails to state a claim against 3Com for attempted monopolization of either the product market or the technology market. The claims for attempted monopolization lack allegations of anti-competitive intent, anti-competitive conduct, a dangerous probability of achieving monopoly power, and causal antitrust injury, and Conexant has not demonstrated that it can amend these claims to cure the identified deficiencies. n6 The Court GRANTS 3Com and Townshend's motion and dismisses the counterclaim for attempted monopolization without leave to amend.

n6 Because Conexant has not demonstrated that it can allege injury to competition, any amendment to the other elements of a claim for attempted monopolization would be futile.

[\*39]

2. Conspiracy to Monopolize

The second counterclaim asserted by Conexant under Section 2 is conspiracy to monopolize, which generally requires (1) a conspiracy (2) an attempt to monopolize and (3) a causal antitrust injury. See *Morgan Strand Wheeler & Biggs v. Radiology, Ltd., 924 F.2d 1484 (9th Cir. 1991)*.

a) Conspiracy

The first element in a claim for conspiracy to monopolize is an allegation of concerted action to monopolize a relevant market. As discussed in the analysis of the Section 1 counterclaim, the question of whether two entities are capable of conspiring under the antitrust laws is a question of fact, and the case law does not establish that a patent holder and licensee under the circumstances of this case are legally incapable of entering into a conspiracy. The Court finds that 3Com and Townshend's 12(b)(6) challenge to the sufficiency of Conexant's conspiracy allegation does not warrant dismissal of this claim.

b) Attempt to monopolize

The second requirement in support of a claim for conspiracy to monopolize is an allegation that the parties attempted to monopolize a relevant market. An attempt to monopolize requires (1) a specific intent to control [\*40] prices or destroy competition in the relevant market; (2) predatory or anticompetitive conduct; (3) a dangerous probability of achieving monopoly power; and (4) causal antitrust injury. See *McGlinchy v. Shell Chem. Co., 845 F.2d 802 (9th Cir. 1988)*.

As to 3Com, Conexant's allegations that 3Com attempted to monopolize the product market and the technology market n7 are deficient because they lack allegations of anti-competitive intent, anti-competitive conduct, a dangerous probability of achieving monopoly power, and causal antitrust injury. See supra.

n7 As previously noted, Conexant cannot maintain a section 2 claim for monopolization of a "technology" market.

Conexant has conceded that it is not pursuing a claim for attempted monopolization against Townshend. Def. Opp. at 12. Given that Conexant is not pursuing a claim for attempted monopolization against Townshend, Conexant also cannot maintain a claim for conspiracy to monopolize against Townshend because a claim for conspiracy to monopolize [\*41] includes an allegation of attempted monopolization as one of its elements. See *Morgan Strand Wheeler & Biggs v. Radiology, Ltd., 924 F.2d 1484 (9th Cir. 1991)*. Conexant has not alleged Townshend is a market participant in either the product

Case 1:05-cv-00048-SLR    Document 15-8    Filed 03/11/2005    Page 12 of 16

Page 11
2000 U.S. Dist. LEXIS 5070, \*; 55 U.S.P.Q.2D (BNA) 1011;
2000-1 Trade Cas. (CCH) P72,890

market or the technology market and has not alleged that Townshend had an intent to monopolize either market. The Court finds that the attempted monopolization element as to Townshend is deficient.

c) Causal antitrust injury

Finally, a claim for conspiracy to monopolize requires a causal antitrust injury. Conexant has failed to sufficiently allege an antitrust injury caused by 3Com or Townshend's conduct. See supra.

The Court finds that Conexant has failed to state a claim for conspiracy to monopolize against 3Com and Townshend. Conexant has failed to allege that 3Com and Townshend attempted to monopolize the product market or the technology market and has failed to allege any antitrust injury resulting from 3Com and Townshend's conduct. Conexant has not demonstrated that it can amend this claim to add additional factual allegations. The Court GRANTS 3Com and Townshend's motion and dismisses the counterclaim for conspiracy [\*42] to monopolize without leave to amend.

## C. THIRD COUNTERCLAIM - UNFAIR COMPETITION

Conexant's third counterclaim asserts a claim for unfair competition in violation of *Cal. Bus. & Prof. Code § 17200*. 3Com and Townshend argue that because Conexant's federal claims are deficient, this state claim should be dismissed as well. Conexant contends that its third counterclaim should be maintained because California case law provides an interpretation of the term "unfair" which is broader than the federal antitrust laws. See *Cel-Tech Communications, Inc., v. L.A. Cellular, 20 Cal. 4th 163, 973 P.2d 527 (1999)*. In Cel-Tech, the California Supreme Court made the following finding:

> When a plaintiff who claims to have suffered injury from a direct competitor's "unfair" act or practice invokes section 17200, the word "unfair" in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition. *20 Cal. 4th at 186-87*.

In opposing the motion [\*43] to dismiss, Conexant contends that its allegations in the § 17200 claim regarding 3Com and Townshend's "deception" before the ITU are sufficient to state a claim in that these allegations mirror the anti-competitive conduct engaged in by patent owner in Dell. The facts in Dell regarding a patent holder's failure to disclose an issued patent to a standard-setting body are distinguishable from the facts in this case, where 3Com notified the ITU of the Townshend's pending patent applications and submitted proposed licensing terms prior to the adoption of the standard. See supra. Under Dell, Conexant has not stated allegations of anti-competitive conduct.

In addition, the allegations regarding 3Com and Townshend's conduct before the ITU do not otherwise meet the definition of "unfair" set forth in Cel-Tech. The allegations do not state that this conduct threatens an incipient violation of the antitrust laws, violates the policy or spirit of one of those laws, or otherwise significantly threatens or harms competition. Conexant has not alleged any injury to competition resulting from 3Com or Townshend's conduct. See supra. Conexant has also not demonstrated that [\*44] it can amend this claim to allege facts regarding additional "unfair" practices other than the allegations of conduct before the ITU specifically referenced in the opposition. The Court DISMISSES the third counterclaim without leave to amend.

## D. INEQUITABLE CONDUCT

The fifth counterclaim alleges that Townshend engaged in inequitable conduct before the Patent and Trademark Office (PTO) in obtaining his patents. The seventh affirmative defense also alleges inequitable conduct. Townshend moves to dismiss the fifth counterclaim and to strike the seventh affirmative defense.

Allegations of inequitable conduct involve fraud and as such are subject to the heightened pleading requirements of *Fed.R.Civ.P. 9(b)*. *Advanced Cardiovascular Systems, Inc. v. Medtronic, Inc., 1996 U.S. Dist. LEXIS 11700, 41 U.S.P.Q.2D (BNA) 1770 (N.D. Cal. 1996)*(Jensen, J.). Specifically, a party asserting a claim for inequitable conduct is required to state the "time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Advanced Cardiovascular Systems, 41 U.S.P.Q.2D (BNA) at 1775*(citing *Schreiber Distributing v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1996)*); [\*45] see also *Sun Microsystems, Inc. v. Dataram Corp., 1997 U.S. Dist. LEXIS 4557 (N.D. Cal. Feb. 4, 1997)*(Williams, J.)(finding that a claim of inequitable conduct should set forth details regarding when the misrepresentations or omissions took place, who made or failed to make the representations, and which patents are at issue). Here, Conexant has merely alleged that inequitable conduct took place in obtaining Townshend's patents. This allegation is insufficient for the heightened pleading standard required for fraud claims.

Case 1:05-cv-00048-SLR   Document 15-8   Filed 03/11/2005   Page 13 of 16

Page 12

2000 U.S. Dist. LEXIS 5070, *; 55 U.S.P.Q.2D (BNA) 1011;
2000-1 Trade Cas. (CCH) P72,890

The Court GRANTS Townshend's motion to dismiss the fifth counterclaim. In its opposition, Conexant indicates that it can cure this deficiency by alleging additional facts regarding an alleged misrepresentation by Townshend to the PTO during prosecution of U.S. Patent No. 5,801,695. See Def. Opp. at 21. The Court GRANTS Conexant's request to amend this claim to include specific allegations of fraud to support a claim of inequitable conduct.

Townshend also moves to strike Conexant's seventh affirmative defense, which asserts inequitable conduct. The Court GRANTS Townshend's motion to strike without prejudice to Conexant amending its answer to [*46] plead the defense of inequitable conduct with the requisite particularity.

### E. PATENT MISUSE

The sixth counterclaim and sixth affirmative defense allege that Townshend's patents are unenforceable due to patent misuse. Townshend moves to dismiss the sixth counterclaim and to strike the sixth affirmative defense.

The doctrine of patent misuse in an extension of the equitable doctrine of unclean hands, whereby a court of equity will not lend its support to enforcement of a patent that has been misused. *Braun v. Abbott Laboratories, 124 F.3d 1419, 1427.* (Fed. Cir. 1997). The purpose of this doctrine is to restrain practices that draw "anticompetitive strength from the patent right." *Braun, 124 F.3d at 1427.*

The issue before the Court is whether Conexant has identified any anti-competitive practice by Townshend that is premised upon his patent rights. Conexant contends that the allegations regarding Townshend's conduct before the ITU and his proposed licensing terms provide sufficient allegations of anti-competitive conduct to state a patent misuse claim. See Def. Opp. at 20.

As the Court has previously discussed, these allegations do not [*47] identify any anti-competitive conduct. Pursuant to *35 U.S.C. § 271*(d), a patentee is not deemed guilty of misuse or illegal extension of the patent right by refusing to license or use any rights to the patent. Because a complete refusal to license does not constitute patent misuse, the Court finds that a statement of proposed licensing terms, which indicates a willingness to license in accordance with these terms, cannot constitute patent misuse. In addition, the ITU was aware of Townshend's pending patent applications and was also aware of the proposed licensing terms for Townshend's patented technology prior to adoption of the V.90 standard, and it made a decision to adopt the V.90 standard after it had received this information. See supra.

The Court finds that these allegations do not state anti-competitive conduct by Townshend, and as such, Conexant has not alleged a claim for patent misuse. Moreover, Conexant has not demonstrated that it can amend this claim to state additional factual allegations of anti-competitive conduct by Townshend. The Court GRANTS Townshend's motion to dismiss the sixth counterclaim without leave to amend and GRANTS Townshend's [*48] motion to strike the sixth affirmative defense without leave to amend.

### III. 3COM'S MOTION TO STRIKE

3Com moves to strike Paragraphs 86, 87, and 99 from Conexant's answer on the basis that these allegations improperly use 3Com confidential information in violation of a state court protective order entered into between the parties in the state court trade secret action filed by Townshend in San Mateo Superior Court.

At the time 3Com filed the motion to strike before this Court, it had also filed a motion in San Mateo Superior Court for contempt and for sanctions against Conexant for violating the protective order. See 3Com Reply, Ex. H. On October 21, 1999, the San Mateo Superior Court held a hearing on 3Com's motion for contempt and for sanctions and declined to consider the motion, citing a lack of jurisdiction and lack of standing because Townshend had dismissed the state action without prejudice. See Letter from Christopher Cavan to Court dated October 25, 1999.

The first issue before this Court is whether Conexant has violated the state court protective order. The state court order, which was entered into by Townshend and Rockwell on March 25, 1998, required [*49] that information designated as "Confidential" or "Highly Confidential - Attorney's Eyes Only" be used by the parties "solely in connection with this litigation." 3Com Reply, Ex. H, Stipulated Protective Order PP 3, 4. The order further provided that "within sixty days after receiving notice of the entry of an order, judgment or decree finally disposing of this action, including any appeals therefrom, all persons having received information designated as "Confidential" or "Highly Confidential- Attorney's Eyes Only" hereunder shall return such material and all copies thereof to counsel for the producing party, or shall certify destruction thereof." See id. at P 25. 3Com, as a third party to this action, signed a stipulation on June 11, 1998, agreeing to be bound by the state court order. See 3Com Reply, Ex. H.

In *On Command Video Corporation v. Lodgenet Entertainment Corp., 976 F. Supp. 917 (N.D. Cal. 1997)* (Armstrong, J.), this Court interpreted a protective order which contained a provision stating that "any

Page 13

2000 U.S. Dist. LEXIS 5070, *; 55 U.S.P.Q.2D (BNA) 1011;
2000-1 Trade Cas. (CCH) P72,890

information designated as Confidential Information shall not be used by the other party for any purpose other than in connection with preparation of the [*50] parties [sic] analysis of issues presented in this litigation." *Lodgenet, 976 F. Supp. at 920.* In Lodgenet, the plaintiff obtained materials from the defendant under a protective order for a federal patent infringement suit and then filed a state court trade secret action which used confidential material from the protective order as the basis for its claims. This Court found that the plaintiff's actions violated the protective order because the purpose of the provision was to "limit the use of confidential information to this case. By using such information to file a separate lawsuit in another forum, plaintiff violated the plain terms of the protective order." *Lodgenet, 976 F. Supp. at 922.* Applying the reasoning of Lodgenet to 3Com's motion, the Court finds that Conexant has not complied with the literal terms of the state court order. Conexant has obtained confidential information from a trade secret action between Townshend and Conexant and has used this information in a federal forum to assert an antitrust counterclaim against 3Com. The protective order in the state action expressly provided that confidential information would be used [*51] "solely in connection with this litigation." See 3Com Reply, Ex. H, Stipulated Protective Order at PP 3, 4 (emphasis added). The protective order was entered into between the parties as plaintiff and defendant in Case No. 402639 in the San Mateo Superior Court. Pursuant to Lodgenet, the state court protective order does not extend to the use of confidential information in the federal action.

In addition, the state protective order provided that "within sixty days after receiving notice of the entry of an order, judgment or decree finally disposing of this action, including any appeals therefrom, all persons having received information designated as "Confidential" or "Highly Confidential- Attorney's Eyes Only" hereunder shall return such material and all copies thereof to counsel for the producing party, or shall certify destruction thereof." See id. at P 25. The state action was voluntarily dismissed by Townshend on January 27, 1999. In a letter to 3Com dated July 19, 1999, counsel for Conexant stated its intent not to return any confidential 3Com materials. See 3Com Reply, Ex. H. Because Conexant did not return confidential information to 3Com or certify destruction [*52] of this information within the time limitations set forth in the state court protective order, Conexant has technically violated the provision of this protective order regarding the return or destruction of information designated as "Confidential" or "Highly Confidential." However, the Court acknowledges that this technical violation is mooted by the fact that prior to the date required by the state court order for the return or destruction of this information, 3Com authorized the use of this information in the federal action. See infra.

The next issue before the Court is whether Conexant's non-compliance with the provisions of the state court protective order provides a basis for striking Paragraphs 86, 87, and 99 from Conexant's answer.

The record reflects that after the federal action was filed, counsel for Conexant contacted counsel for 3Com for its position on the use of Confidential and Highly Confidential information produced by 3Com in the trade secret action. 3Com responded to this inquiry on March 1, 1999 by indicating that it was not opposed to Conexant's use of documents produced by 3Com in response to subpoenas issuing out of the trade secret action, "provided that [*53] an identical Protective Order is entered" in the federal action. Lawrence Decl., Ex. 4.

On March 26, 1999, Magistrate Judge Zimmerman approved an interim protective order for this action. The interim protective order adopted the state court protective order in its entirety and provided that the parties could "use in this lawsuit any discovery....from the State Action as if the discovery has been provided in this lawsuit." Stipulation and Order Re: Entry of Protective Order and Cross Use of State Court Discovery P 3 (Docket 18-1).

3Com does not dispute that it advised Conexant that it had no objection to the use of confidential information in the federal action provided that an identical protective order was entered. 3Com also does not dispute that the interim federal protective order is identical to the state court order. Instead, 3Com objects to the federal protective order on the grounds that it did not consent to this order and was not given notice or an opportunity to be heard.

The Court finds that 3Com's objections regarding lack of consent, notice, and opportunity to be heard do not warrant a motion to strike. Conexant sought and obtained 3Com's position with respect to the [*54] use of confidential information in the federal action prior to any such disclosures being made. Further, Conexant entered into a federal protective order which fully accommodated 3Com's stated position. Finally, Conexant has complied with the terms of the federal protective order in the use of confidential information obtained by 3Com.

Under the terms of the federal protective order, the parties were permitted to use discovery obtained in the state court action. Conexant's statement of its intent to use confidential information obtained by 3Com and its allegations based upon this information are consistent with the terms of the federal protective order.

Case 1:05-cv-00048-SLR    Document 15-8    Filed 03/11/2005    Page 15 of 16

Page 14

2000 U.S. Dist. LEXIS 5070, *; 55 U.S.P.Q.2D (BNA) 1011;
2000-1 Trade Cas. (CCH) P72,890

Although the Court finds that Conexant has not complied with the literal terms of the state court order, the Court further finds that Conexant acted appropriately and that the statements by 3Com and the subsequent actions taken by Conexant with respect to the federal protective order are compelling and adequately address 3Com's position regarding the use of confidential information in this action. The Court DENIES 3Com's motion to strike.

## CONCLUSION

Townshend's request for judicial notice is GRANTED.

3Com and Townshend's [*55] motion to dismiss Conexant's first counterclaim alleging conspiracy to restrain trade is GRANTED WITH PREJUDICE.

3Com and Townshend's motion to dismiss Conexant's counterclaim alleging attempted monopolization and conspiracy to monopolize is GRANTED WITH PREJUDICE.

3Com and Townshend's motion to dismiss Conexant's counterclaim asserting a state law claim for unfair competition is GRANTED WITH PREJUDICE.

Townshend's motion to dismiss Conexant's counterclaim asserting inequitable conduct is GRANTED WITH LEAVE TO AMEND. Townshend's motion to strike Conexant's affirmative defense of inequitable conduct is GRANTED WITH LEAVE TO AMEND.

Townshend's motion to dismiss Conexant's counterclaim for patent misuse is GRANTED WITH PREJUDICE. Townshend's motion to strike Conexant's sixth affirmative defense of patent misuse is GRANTED WITH PREJUDICE.

3Com's motion to strike Paragraphs 86, 87, and 99 is DENIED.

Conexant shall submit an amended answer within twenty (20) days of the date of this order.

This matter is set for a telephonic case management conference on **Thursday, May 4, 2000 at 3:00 p.m.**

Plaintiff shall initiate the conference by calling chambers at (510) 637-3559. At least [*56] ten (10) days prior to the conference, the parties shall submit a case management conference statement. Failure to timely file such a statement may result in sanctions.

IT IS SO ORDERED.

Dated: 3/28/00

SAUNDRA BROWN ARMSTRONG

United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of March, 2005, the attached **APPENDIX TO PLAINTIFF'S ANSWERING BRIEF OPPOSING DEFENDANTS' MOTION UNDER FED. R. CIV. P. 12(f) TO STRIKE PLAINTIFF'S ALLEGATIONS OF INEQUITABLE CONDUCT IN THE COMPLAINT** was served upon the following counsel of record in the manner indicated:

| | |
|---|---|
| Richard K. Herrmann, Esq.<br>Morris, James, Hitchens & Williams LLP<br>222 Delaware Avenue, 10th Floor<br>P.O. Box 2306<br>Wilmington, DE  19899 | **VIA ECF FILE AND SERVE** |
| Hugh A. Abrams, Esq.<br>Marc A. Cavan, Esq.<br>Hillary A. Mann, Esq.<br>Sidley Austin Brown & Wood, LLP<br>10 South Dearborn Street<br>Chicago, IL  60603 | **VIA FEDERAL EXPRESS** |

　　　　　　　　　　　　　　　　　　　　*/s/ John G. Day*
　　　　　　　　　　　　　　　　　　　　John G. Day