IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HITACHI, LTD., and UNISIA NORTH AMERICA, INC.,<br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>BORGWARNER INC., and<br>BORGWARNER MORSE TEC INC.,<br><br>　　　　　　Defendants. | Civil Action No. 05-048-SLR |
| BORGWARNER INC.,<br><br>　　　　　　Counterclaimant,<br><br>　　　v.<br><br>HITACHI, LTD., and UNISIA NORTH AMERICA, INC.,<br><br>　　　　　　Counterdefendants. | |

**PLAINTIFFS HITACHI, LTD.'S AND UNISIA NORTH AMERICA, INC.'S FOURTH NOTICE OF DEPOSITION OF DEFENDANTS BORGWARNER INC. AND <u>BORGWARNER MORSE TEC INC. PURSUANT TO RULE 30(b)(6)</u>**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs Hitachi, Ltd. ("Hitachi") and Unisia North America, Inc. ("UNAI") will take the deposition of defendants BorgWarner Inc. and BorgWarner Morse Tec Inc. (collectively "BorgWarner") commencing at a time and place as may be agreed upon by counsel. The deposition will continue from day to day until complete. The deposition will be taken for the purposes of discovery, for use at trial or hearings, and for any other purpose allowed under the orders of the presiding Court and the Federal Rules of Civil Procedure. Some or all of the

deposition testimony may be recorded by stenographic, audio, audio visual, and/or real-time computer means.

Pursuant to Rule 30(b)(6), BorgWarner must designate one or more officers, directors, or managing agents or other persons who are competent to testify on its behalf concerning the matters set forth in Schedule A, and who consents to give such testimony. No later than five (5) business days prior to the deposition, BorgWarner is requested to set forth in writing the identity of each witness who will testify in response to this notice and the matters on which the person will testify.

                                                                                    ASHBY & GEDDES

                                                                                     */s/ Tiffany Geyer Lydon*
                                                                                      _____
                                                                                      Steven J. Balick (I.D. #2114)
                                                                                      John G. Day (I.D. #2403)
                                                                                      Tiffany Geyer Lydon (I.D. #3950)
                                                                                      222 Delaware Avenue, 17th Floor
                                                                                      P.O. Box 1150
                                                                                       Wilmington, DE 19899
                                                                                      (302) 654-1888
                                                                                       sbalick@ashby-geddes.com
                                                                                       jday@ashby-geddes.com
                                                                                       tlydon@ashby-geddes.com

                                                                                      *Attorneys for Plaintiff Hitachi, Ltd. and*
                                                                                      *Unisia North America, Inc.*

*Of Counsel*:

Michael D. Kaminski
C. Edward Polk, Jr.
Liane M. Peterson
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5109
(202) 672-5300

Dated: November 28, 2005
164007.1

## SCHEDULE A

### Definitions

1. "BorgWarner" refers to Defendants BorgWarner Inc. and BorgWarner Morse Tec Inc., BorgWarner Automotive, Inc., any predecessor or successor of BorgWarner Inc., BorgWarner Morse Tec Inc. and BorgWarner Automotive, Inc., and any past or present division, subsidiary, affiliate, joint venture, director, officer, agent, employee, consultant, attorney, accountant, or representative of BorgWarner Inc., BorgWarner Morse Tec Inc and BorgWarner Automotive, Inc.

2. The term "document" and/or "documents" shall be construed to have the broadest meaning permitted under the Federal Rules of Civil Procedure and includes, without limitation, any information containing paper, computer file or other medium and materials, including drafts, whether handwritten, printed, recorded, filmed or produced by any other mechanical or electronic process and includes writings and printed matter of any kind and description, computer generated documents, Communication, e-mails, faxes, photographs, graphs, charts, drawings, tapes, computer disks, notes, messages, laboratory notebooks, notebooks, reports, notes and records of any oral communications, and other data compilations from which information can be obtained, as defined by FED. R. EVID. 1001(1) and (2), in the possession, custody or control of BorgWarner, or known to it, wherever located. The term also includes any and all things subject to discovery pursuant to Rule 34(a) of the Federal Rules of Civil Procedure. Any translation of a document as well as any copy of any document that contains any marking, comment, or notation not appearing on the original document or that is an alteration of the original in any way is to be considered a separate document. Each copy of any document that is discovered at a different location or in the possession or custody of a different person than

the original is to be considered a separate document. The term "document" also shall be construed to include "tangible things" in the broadest meaning permitted under the Federal Rules of Civil Procedure.

3. The "'738 patent" refers to U.S. Patent No. 5,497,738, titled "VCT Control with a Direct Electromechanical Actuator."

4. "Hitachi and UNAI Accused Devices" means the Hitachi or UNAI product(s) that BorgWarner accused of infringement in its Counterclaim and Third Party Complaint, and any other Hitachi or UNAI product(s) that BorgWarner alleges infringes the '738 patent.

5. "Prior Art" includes, by way of example and without limitation, subject matter described in 35 U.S.C. § 103 and each and every subdivision of 35 U.S.C. § 102, including any patent, publication, or other activity asserted by anyone to be prior art.

6. "related to the '738 Patent" means and includes:

    a. all U.S. and non-U.S. patents and patent applications that claim the benefit, directly or indirectly, of the filing date of the '738 patent;

    b. all U.S. and non-U.S. patents and patent applications from which the '738 patent claims the benefit, directly or indirectly, of the filing date;

    c. all U.S. and non-U.S. patents and patent applications that claim the benefit, directly or indirectly, of the filing date of the same patent or patent application from which the '738 patent claims benefit;

    d. all U.S. and non-U.S. patents and patent applications cited in the "Background of the Invention" section of the '738 patent; and

    e. any U.S. and non-U.S. patents and patent applications having a substantially similar disclosure as the '738 patent.

7. "All" or "each" shall be construed as "all and each."

8. "And" or "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

9. "Communication" or "Communications" shall be construed to mean any transmission of letters, numbers, images, symbols, data or other information by any means, including, but not limited to, any oral, written or electronic means.

10. "relate," "related," "related to," and "relating to" shall be construed in its broadest sense to require information or documents which construe, comprise, concern, pertain to, mention, explain, identify, describe, discuss, refer to (directly or indirectly), reflect, comment upon or summarize the subject of the request for documents and things.

11. "Person," "persons," "entity," or "entities" refers to any natural person or legal, business or governmental entity or association.

12. The IMECHE article refers to the article entitled "A UNIQUE APPROACH TO DESIGN OF A VCT MECHANISM," as shown in BorgWarner's production documents BW 013198-202 and BW 0049639-66, including all versions of that article such as drafts and the final version submitted to the Institute of Mechanical Engineers.

13. The IMECHE presentation refers to any oral, document, slide, overhead or computer generated presentation derived from, based upon, associated with, or related to the IMECHE article, including but not limited to any verbal presentation of the IMECHE article as described in BorgWarner production documents BW 013738-39.

14. The IMECHE seminar refers to the seminar hosted, organized, or sponsored by the Institute of Mechanical Engineers on or about September 24, 1991 entitled "A European Seminar – Camshaft Drives," as indicated by BorgWarner Production document BW 0013198.

**Deposition Topics**

1. The delivery of any prototypes of VCT systems or components to third parties during the period 1988-1995, including but not limited to Ford, BMW, Yamaha, Mercedes Benz, INA, Porsche, and General Motors.

2. The structure and operation of any prototypes of VCT systems or components to third parties during the period 1988-1995, including but not limited to Ford, BMW, Yamaha, Mercedes Benz, INA, Porsche, and General Motors.

3. The structure and operation of the prototypes listed in BorgWarner production document BW 0068219, including but not limited to the structure and operation of the (a) actuation mechanism for the spool (*e.g.*, DPCS, stepper motor, variable force solenoid, electric motor), (b) electronic control module, (c) cam and crank sensors, (d) spool valve, (e) VCT structure (*e.g.*, vane or opposed pistons) and (f) VCT actuation method (*e.g.*, cam torsionals, torsional assist, hybrid system).

4. The prototype deliveries to Ford listed in BorgWarner production document BW 0068243, including but not limited to (a) the date any purchase order, or other order, by Ford, (b) the date BorgWarner accepted any such order, and (c) the date each prototype was delivered to Ford.

5. Prototype deliveries to Ford relating to the Zeta program, including but not limited to prototype deliveries referenced in BorgWarner production document BW 009534-35.

6. Prototype deliveries to Yamaha relating to the JTT program, including but not limited to

4

      prototype deliveries referenced in BorgWarner production document BW 0067990-91.

7. Facts regarding the following Ford vehicle designations (*see* BW 0068219): CDT 139, CDW 27, DN 101, FN-09, FN-10, FN-116, MN-12.

8. Ford's testing of any BorgWarner VCT systems or components, including but not limited to (a) any testing inside of Ford or at its facility, (b) fleet vehicle testing, (c) testing relating to law enforcement vehicles in Detroit, and (d) testing relating to taxi cabs in Las Vegas.

9. The length of testing for any prototype BorgWarner VCT system or components.

10. Payment received by BorgWarner for any prototype VCT systems or components to third-parties, including but not limited to Ford, BMW, Yamaha, Mercedes Benz, INA, Porsche, and General Motors.

11. Confidentiality or secrecy agreements between BorgWarner and third parties (including but not limited to Ford, BMW, Yamaha, Mercedes Benz, INA, Porsche, and General Motors) relating to any BorgWarner VCT system or components.

12. All records relating to prototype testing of any BorgWarner VCT system.

13. The manner, method, or system by which third-parties (including but not limited to Ford, BMW, Yamaha, Mercedes Benz, INA, Porsche, and General Motors) tested any BorgWarner VCT system or components, and BW's interaction with any such third party regarding such testing.

14. All facts concerning the IMECHE article and the IMECHE presentation.

15. Preparation of the IMECHE article, including but not limited to (a) the decision to present this article at the Camshaft Drives Seminar, (b) all drafts of the article, and (c) all persons having knowledge regarding the IMECHE article.

16. The IMECHE presentation, including but not limited to (a) the person(s) presenting the IMECHE article at the Camshaft Drives Seminar on behalf of BorgWarner, (b) all persons attending the Camshaft Drives Seminar during presentation of the IMECHE article, (c) all materials made available at the Camshaft Drives Seminar, and (d) all persons having knowledge regarding the IMECHE presentation.

17. The slides referenced in BorgWarner production document BW 0049647, including but not limited to (a) the person(s) who prepared the slides, (b) the person(s) who presented the slides at the Camshaft Drives Seminar and (c) any changes to the slides prior to the Camshaft Drives Seminar.

18. The figures referenced in the IMECHE article.

19. The handwritten notes on BorgWarner production documents BW 0049639, 0049648, 0049653-6, 0049664 and 0049666.

20. BorgWarner's actions regarding the IMECHE article following its use at the deposition of Roger Butterfield in August 1993 during the Interference involving U.S. Patent No. 5,002,023.

21. Documents relating to the topics identified in above paragraphs.

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of November, 2005, the attached **PLAINTIFFS HITACHI, LTD.'S AND UNISIA NORTH AMERICA, INC.'S FOURTH NOTICE OF DEPOSITION OF DEFENDANTS BORGWARNER INC. AND BORGWARNER MORSE TEC INC. PURSUANT TO RULE 30(b)(6)** was served upon the following counsel of record in the manner indicated:

| | |
|---|---|
| Richard K. Herrmann, Esquire<br>Morris, James, Hitchens & Williams LLP<br>222 Delaware Avenue, 10th Floor<br>P.O. Box 2306<br>Wilmington, DE  19801 | <u>VIA EMAIL & HAND DELIVERY</u> |
| Hugh A. Abrams, Esquire<br>Sidley Austin Brown & Wood, LLP<br>10 South Dearborn Street<br>Chicago, IL  60603 | <u>VIA EMAIL & FEDERAL EXPRESS</u> |

*/s/ Tiffany Geyer Lydon*
_____
Tiffany Geyer Lydon