IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HITACHI, LTD., and UNISIA NORTH AMERICA, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>BORGWARNER INC.,<br>and BORGWARNER MORSE TEC INC.,<br><br>    Defendants.<br>_____<br>BORGWARNER INC.,<br><br>    Counterclaimant,<br><br>    v.<br><br>HITACHI, LTD., and UNISIA NORTH AMERICA, INC.<br><br>    Counterdefendants. | Civil Action No. 05-048-SLR |

**DEFENDANTS' FIFTH NOTICE OF DEPOSITION**

**OF PLAINTIFF HITACHI, LTD.**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, and the Local Rules of this Court, commencing at a time and place to be mutually agreed upon by counsel, Defendants BorgWarner Inc. and BorgWarner Morse TEC Inc. ("BorgWarner"), by and through its counsel, will take the deposition upon oral examination, of Plaintiff Hitachi, Ltd. and Unisia North America, Inc. ("Hitachi"), through one or more officers, directors, managing agents or other persons who consent to testify on Hitachi's behalf with regard to the deposition topics set forth in Schedule A (attached hereto).

The depositions will take place under oath and before a duly authorized notary public, or other person authorized by law to administer oaths. The depositions will be recorded by stenographic means by a court reporter and by audio and visual means by a videographer. Pursuant to the order of the Special Master, you are requested to set forth in writing the identity of each witness who will testify in response to this notice and the matters on which the person will testify no later than 10:00 a.m. EST on December 9, 2005.

Dated: December 7, 2005

/s/ Mary B. Matterer
Richard K. Herrmann (I.D. #405)
Lewis H. Lazarus (I.D. #2374)
Mary B. Matterer (I.D. #2696)
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19899
(302) 888-6800
mmatterer@morrisjames.com

Hugh A. Abrams *(pro hac vice)*
Marc A. Cavan *(pro hac vice)*
Lara V. Fleishman *(pro hac vice)*
Lisa A. Schneider *(pro hac vice)*
Sidley Austin Brown & Wood, LLP
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for BorgWarner Inc., and BorgWarner Morse Tec Inc.*

## **SCHEDULE A**

## **DEFINITIONS**

A.  "Hitachi" as used herein shall mean plaintiff Hitachi, Ltd., any corporate affiliates, including Unisia North America, Inc., Unisia of Georgia Corporation and Hitachi Automotive Products (USA), Inc., and any parent or parents, subsidiaries, domestic or foreign, partners, officers, directors, successors, predecessors, assigns, and the employees, attorneys and agents of any and all of them.

B.  "UNAI" as used herein shall mean plaintiff Unisia North America, Inc., any corporate affiliates, and any parent or parents, subsidiaries, domestic or foreign, partners, officers, directors, successors, predecessors, assigns, and the employees, attorneys and agents of any and all of them.

C.  "UGC" as used herein shall mean Unisia of Georgia Corporation, any corporate affiliates, and any parent or parents, subsidiaries, domestic or foreign, partners, officers, directors, successors, predecessors, assigns, and the employees, attorneys and agents of any and all of them.

D.  "EMS" shall mean Hitachi EMS (Engine Management System) Division.

E.  "HAP" shall mean Hitachi Automotive Products (USA), Inc., any corporate affiliates, and any parent or parents, subsidiaries, domestic or foreign, partners, officers, directors, successors, predecessors, assigns, and the employees, attorneys and agents of any and all of them.

F.     "Defendants" or "BorgWarner" as used herein shall mean BorgWarner Inc., and BorgWarner Morse TEC Inc.

G.     The term "patent-in-suit" or "the '738 patent" shall mean U.S. Patent No. 5,497,738.

H.     The term "variable camshaft timing components" or "VCT components" as used herein shall include, without limitation, components used, or which can be used, in a system for controlling the timing of the opening and closing of an intake valve and/or exhaust valve (or for controlling the position of a camshaft relative to the position of a crankshaft or another camshaft) in an internal combustion engine, such components including without limitation:

(1) camshaft sprockets capable of being hydraulically adjusted (e.g., sprockets with body vanes), (2) camshaft position sensors, (3) variable timing control solenoids and solenoid valves, (4) variable timing control systems and related components, (5) camshaft phase adjustment systems, and (6) electronic control units, and software and hardware contained therein;

that have been, are, or are currently planned to be made, used, prototyped, sold, offered or intended for sale in the United States, or imported or exported by or on Hitachi's behalf, or imported into the United States as part of an engine or vehicle system.

I.     The term "concerning" means comprising, relating to, referring to, reflecting, describing, evidencing or constituting.

J.     "Documents" as used herein is employed in the broadest possible sense and means without limitation any written, printed, typed, stored, photographed, recorded or otherwise reproduced communication, compilation or reproduction including computer or electronically

4

generated or stored information or data whether assertedly privileged or not and including all copies of drafts of any document which differs in any respect from the original.

K.    "And" means "and/or." "Or" means "and/or." The plural of any word used herein includes the singular and the singular includes the plural. The masculine gender of any word used herein includes the feminine and the neuter. The past tense of a verb used herein includes the present tense and the present tense includes the past tense.

L.    "Any," "all," "each" or "every" means any and all, each and every.

M.    The terms "make," "use," "sell," "offer to sell," and "import" each assume the broadest possible meaning given those terms under U.S.C. § 154 and 35 U.S.C. §271(a).

## DEPOSITION TOPICS

1.    The circumstances upon which Hitachi first became aware of the patent-in-suit including the dates and the identities of the persons involved.

2.    Any opinions of counsel regarding the '738 patent received by Hitachi.

3.    All actions taken by Hitachi concerning the patent-in-suit and variable camshaft timing products, including any design around attempts.

4.    Any communications between or among Hitachi employees, or between Hitachi and any third party, concerning the patent-in-suit.

5.    Hitachi's understanding concerning the documents marked HIT441250-372.

6.The corporate structure of Hitachi, including, but not limited to, the relationship between EMS, UNAI, UGC, and HAP.

7.The manner in which any variable camshaft timing components supplied by Hitachi (whether by EMS, UNAI, HAP, or UGC) to its customers located in the United States or who sell, offer to sell or import VCT components into the United States (whether as individual components or in an engine or in a vehicle), including, but not limited to Nissan, are used by its customers, including, but not limited to, how those variable camshaft timing components interact with each other and other engine components.

8.Communications concerning VCT components manufactured and/or sold by Hitachi between Hitachi (whether by EMS, UNAI, HAP, or UGC) and any third party located in the United States who sells, offers to sell or imports VCT components into the United States (whether as individual components or in an engine or in a vehicle).

9.Financial statements prepared by UGC related to VCT components, including but not limited to balance sheets, profit and loss statements, and cash flow calculations.

10.Financial statements prepared by UNAI related to VCT components, including but not limited to balance sheets, profit and loss statements, and cash flow calculations.

11.Financial statements prepared by HAP related to VCT components, including but not limited to balance sheets, profit and loss statements, and cash flow calculations.

12.Identification of all companies known to Hitachi (whether by EMS, UNAI, HAP, or UGC) that sell VCT components to customers in the United States, including the valve body, solenoid, cam angle sensor, and crank angle sensor.

13. Alternatives to VCT.

14. Hitachi's (including EMS, UNAI, UGC, or HAP) knowledge of whether or not VCT systems with PWM solenoids are acceptable for the customer applications for which Hitachi supplies, directly or indirectly, VCT systems or components.

15. Hitachi's (including EMS, UNAI, UGC, or HAP) future plans to sell VCT components to customers in the United States, including but not limited to Ford, Nissan and Honda, or to customers who sell, offer to sell or import VCT components into the United States (whether as individual components or in an engine or in a vehicle).

16. The price that UGC sells VCT components to any third party customers in the United States and the manner of establishing or setting that price.

17. An explanation of why the spreadsheets marked as defendants' exhibits 48-50 do not contain entries for all model numbers of the components listed on defendants' exhibit 15.

18. An explanation of whether the spreadsheets marked as defendants' exhibits 48-50 contain all sales for the model numbers of the components listed on defendants' exhibit 15.

19. An explanation of why the price listed on the spreadsheets marked as defendants' exhibits 48-50 is sometimes zero.

20. An identification of all components sold by Hitachi (whether by EMS, UNAI, HAP, or UGC) to any customer in the United States that are or can be used in an engine containing VCT components purchased from Hitachi.

21.     The total number of VCT components sold by Hitachi (whether by EMS, UNAI, HAP, or UGC) in the United States or to customers who sell, offer to sell or import VCT components into the United States (whether as individual components or in an engine or in a vehicle), the total price received for those components, the total costs involved in the manufacture and sale of those components and the total profits received on those components.

22.     Any profitability analysis for VCT components sold in the United States, including data on budgeted and actual sales within the United States.

23.     Any marketing efforts for VCT components, including those that occurred within the United States, that were directed to customers in the United States, or occurred at events attended by customers located in the United States.

24.     Hitachi's knowledge regarding past, present and future sales of VCT components to customers outside the United States that are sold, offered for sale or imported into the United States (whether as individual components or in an engine or in a vehicle).

25.     Any license agreements between any Hitachi corporate affiliate and UGC, including, but not limited to, the amount of any royalties paid by UGC to that Hitachi corporate affiliate and the method of calculating the royalty rate.

26.     Any agreements between Hitachi (whether EMS, UNAI, HAP, or UGC) and customers, including but not limited to Nissan and Ford, regarding the amount of VCT components to be sold to those customers in the United States.

27.     Any license agreements between Hitachi and Denso, including, but not limited to, the amount of any royalties paid by Hitachi to Denso and the method of calculating the royalty rate.

28. Customary royalty rates in the automotive industry.

29. Hitachi's product launch plans for any VCT component.

30. Hitachi's strategic and long range plans for VCT components.

31. The proportion of EMS' sales, costs and profits attributable to VCT components.

32. Hitachi's understanding of the document marked HIT 24622-31 (also marked as Defendant's Exhibit 52).

33. Hitachi's understanding of the document marked HIT 5398 (also marked as Defendant's Exhibit 54).

34. Hitachi's understanding of the document marked UGC00561 (also marked as Defendant's Exhibit 56).

35. Hitachi's understanding of the document regarding Nissan Part Numbers and corresponding purchase prices from UJ and sales price to Nissan (UGC00441) (also marked as Defendant's Exhibit 58).

36. Hitachi's understanding of the document marked UGC005322-5338 (also marked as Defendant's Exhibit 59).

37. Hitachi's understanding of the document marked HIT 441384-441403 (also marked as Defendant's Exhibit 62).

38. Hitachi's understanding of the document marked HIT 0441418-0441423 (also marked as Defendant's Exhibit 63).

39. Hitachi's understanding of the document marked HIT 006833 (also marked as Defendant's Exhibit 70).

40. Hitachi's understanding of the document marked HIT 0441248 (also marked as Defendant's Exhibit 73).

41. Hitachi's understanding of the document marked HIT 0441249 (also marked as Defendant's Exhibit 74).

42. Hitachi's understanding of the document marked HIT 119823-119830.

43. Hitachi's understanding of the document marked HIT 0439729.

44. Hitachi's understanding of the document marked HIT 029805.

45. Hitachi's understanding of the document marked UNAI 11469-11472.

46. Hitachi's understanding of the document marked UNAI 10385-10387.

47. Hitachi's understanding of the document marked UNAI 10317-10318.

48. Hitachi's understanding of the document marked UNAI 09717-09719.

49. Hitachi's understanding of the document marked HIT 57934-57945.

50. Hitachi's understanding of the document marked HIT 129836-37.

51. The cooperation agreement between Hitachi and BorgWarner, including any benefits and information received by Hitachi under the cooperation agreement, as well as any meetings between Hitachi and BorgWarner pursuant to the agreement.

52. Documents relating to the topics identified in the above paragraphs.

Case 1:05-cv-00048-SLR    Document 129    Filed 12/07/2005    Page 11 of 12

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of December, 2005, I electronically filed the foregoing document, **DEFENDANTS' FIFTH NOTICE OF DEPOSITION OF PLAINTIFF HITACHI LTD.**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Steven J. Balick, Esq.
John G. Day, Esq.
ASHBY & GEDDES
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 7th day of December, 2005, the foregoing document was served via email and overnight mail on the following non-registered participants:

Michael D. Kaminski, Esq.
Liane Peterson, Esq.
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5109
mkaminski@foley.com
lpeterson@foley.com

                    /s/ Mary B. Matterer
                    Richard K. Herrmann (#405)
                    Mary B. Matterer (I.D. #2696)
                    MORRIS, JAMES, HITCHENS & WILLIAMS LLP
                    222 Delaware Avenue, 10th Floor
                    Wilmington, Delaware 19801
                    302.888.6800
                    mmatterer@morrisjames.com

                    Attorneys for Defendants and Counterclaimant,
                    BORGWARNER INC., and
                    BORGWARNER MORSE TEC INC.