## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HITACHI, LTD. and<br>UNISIA NORTH AMERICA, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 05-048-SLR |
| v. | ) | |
| | ) | |
| BORGWARNER INC. | ) | |
| and BORGWARNER MORSE TEC INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| BORGWARNER INC., | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HITACHI, LTD. and | ) | |
| UNISIA NORTH AMERICA, INC., | ) | |
| | ) | |
| Counterdefendants. | ) | |

## NOTICE OF SUBPOENA DIRECTED TO
## FORD MOTOR COMPANY

PLEASE TAKE NOTICE that Defendants BorgWarner Inc. and BorgWarner Morse TEC

Inc. ("BorgWarner"), pursuant to Rule 45 of the Federal Rules of Civil Procedure, will serve the

attached subpoena upon Ford Motor Company care of David J. Leitch, Senior Vice President and

General Counsel, commanding Ford Motor Company ("Ford"), through one or more of its

officers, directors, managing agents or other persons who consent to testify on Ford's behalf with

regard to the deposition topics set forth in Schedule A (attached hereto) to appear for deposition pursuant to Federal Rule Civil Procedure 30(b)(6).

The deposition will take place under oath and before a duly authorized notary public, or other person authorized by law to administer oaths on a date and time and at a location agreed to by the parties and Ford. The deposition will be recorded by stenographic means by a court reporter and by audio and visual means by a videographer.

The attached subpoena will also command Ford to produce the documents designated in Schedule B (attached hereto) to the Subpoena within fifteen days, or at a mutually agreeable time and place.

Dated: December 23, 2005

Richard K. Herrmann (I.D. #405)
Lewis H. Lazarus (I.D. #2374)
Mary B. Matterer (I.D. #2696)
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
(302) 888-6800
mmatterer@morrisjames.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of December, 2005, I electronically filed the

foregoing document, **NOTICE OF SUBPOENA DIRECTED TO FORD MOTOR**

**COMPANY**, with the Clerk of the Court using CM/ECF which will send notification of such

filing to the following:

Steven J. Balick, Esq.
John G. Day, Esq.
ASHBY & GEDDES
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801


Additionally, I hereby certify that on the 23rd day of December, 2005, the foregoing

document was served via email and overnight mail on the following non-registered participants:

Michael D. Kaminski, Esq.
Liane Peterson, Esq.
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5109
mkaminski@foley.com
lpeterson@foley.com

Richard K. Herrmann (#405)
Mary B. Matterer (I.D. #2696)
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
mmatterer@morrisjames.com

Attorneys for BORGWARNER INC. and
BORGWARNER MORSE TEC INC.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# United States District Court

### Eastern District of Michigan
## SUBPOENA IN A CIVIL CASE

Hitachi, Ltd. and
Unisia North America, Inc.
      Plaintiffs

     v.

BorgWarner Inc. and
BorgWarner Morse Tec, Inc.
      Defendants

CASE NUMBER:    05-048 (SLR) (District of Delaware)

TO:    Ford Motor Company
       c/o David J. Leitch, Senior Vice President and General Counsel
       1 American Road
       Dearborn, MI 48126

---

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

---

**X**  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| To be determined<br><br>See attached Schedule A for topics | **To be determined.<br>The depositions will be recorded by stenographic means by a court reporter and by audio and visual means by a videographer** |

---

**X**  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See Schedule B, attached hereto.**

| PLACE | DATE AND TIME |
|---|---|
| To be determined | **To be determined** |

---

☐  YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

---

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant) | Date |
|---|---|
| *[signature]*<br>Mary B. Matterer (Attorney for Defendants) | **December 23, 2005** |

Issuing Officer's Name, Address, and Phone Number:
**Mary B. Matterer, Morris James Hitchens & Williams LLP, 222 Delaware Avenue, 10th Floor, Wilmington, DE 19801   (302) 888-6800**

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

## Rule 45, Federal Rules of Civil Procedure, Parts C & D

**(c) PROTECTION OF PERSONS SUBJECT TO SUB-POENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, of commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# SCHEDULE   A

## SCHEDULE A

## DEFINITIONS

A.    "Ford" as used herein shall mean Ford Motor Company, any corporate affiliates, and any parent or parents, subsidiaries, domestic or foreign, partners, officers, directors, successors, predecessors, assigns, and the employees, attorneys and agents of any and all of them.

B.    "Hitachi" as used herein shall mean plaintiff Hitachi, Ltd., any corporate affiliates, including Unisia North America, Inc., Unisia of Georgia Corporation and Hitachi Automotive Products (USA), Inc., and any parent or parents, subsidiaries, domestic or foreign, partners, officers, directors, successors, predecessors, assigns, and the employees, attorneys and agents of any and all of them, including Unisia JECS.

C.    "Defendants" or "BorgWarner" as used herein shall mean BorgWarner Inc., and BorgWarner Morse TEC Inc.

D.    The term "patent-in-suit" or "the '738 patent" shall mean U.S. Patent No. 5,497,738.

E.    "Ford Engine" as used herein is any engine, including the Duratec 30 engine, that has been, is, or is currently planned to be made, used, prototyped, sold, offered or intended for sale in the United States or imported into the United States by Ford. [see comments on schedule B re this definition -- also pertains to Ford Vehicle]

F.    "Ford Vehicle" as used herein is any vehicle, including the Ford Fusion, Mazda 6 wagon and Mazda 6 sedan, that has been, is, or is currently planned to be made, used, prototyped, sold, offered or intended for sale in the United States or imported into the United States by Ford.

G.     The term "Ford Variable Camshaft Timing Component System" or "Ford VCT Component System" as used herein shall mean any components (both in combination and on a component-by-component basis) used to vary the camshaft timing in the Ford engines.

H.     "Hitachi VCT Component System" as used herein means any components (both in combination and on a component-by-component basis) used to vary the camshaft timing in the Ford engines that (1) are purchased by Ford from Hitachi (either directly or indirectly) in the United States or (2) are purchased by Ford from Hitachi (either directly or indirectly) outside of the United States and then imported into the United States.

I.     "Non-Hitachi VCT Component System" as used herein means any components (both in combination and on a component-by-component basis) used to vary the camshaft timing in the Ford engines that (1) are purchased by Ford from an entity other than Hitachi in the United States or (2) are purchased by Ford from an entity other than Hitachi outside of the United States and then imported into the United States.

J.     "Hitachi Non-VCT Components" as used herein shall include any parts other than VCT component systems that (1) are purchased by Ford from Hitachi (either directly or indirectly) in the United States or (2) are purchased by Ford from Hitachi (either directly or indirectly) outside of the United States and then imported into the United States.

K.     The term "concerning" means comprising, relating to, referring to, reflecting, describing, evidencing or constituting.

L.     "Documents" as used herein is employed in the broadest possible sense and means without limitation any written, printed, typed, stored, photographed, recorded or otherwise

2

reproduced communication, compilation or reproduction including computer or electronically generated or stored information or data whether assertedly privileged or not and including all copies of drafts of any document which differs in any respect from the original.

M.    "And" means "and/or." "Or" means "and/or."   The plural of any word used herein includes the singular and the singular includes the plural.   The masculine gender of any word used herein includes the feminine and the neuter.   The past tense of a verb used herein includes the present tense and the present tense includes the past tense.

N.    "Any," "all," "each" or "every" means any and all, each and every.

O.    The terms "make," "use," "sell," "offer to sell," and "import" each assume the broadest possible meaning given those terms under 35 U.S.C. § 154 and 35 U.S.C. §271(a).

## DEPOSITION TOPICS

1.    The structure and operation of all Ford VCT Component Systems.

2.    The documents produced in response to Schedule B of this subpoena.

3.    The years of production for all Ford Vehicles containing Hitachi VCT Component Systems and the quantity of each such Ford Vehicle sold on a year-by-year basis.

4.    The years of production for all Ford Engines containing Hitachi VCT Component Systems and the quantity of each such Ford Engine sold on a year-by-year basis.

5.    The volume of Hitachi VCT Component Systems purchased on a year-by-year basis, including the volume of each part or component forming such a system.

6.    Ford's purchase price for Hitachi VCT Component Systems, including the purchase price of each part of component forming such a system, and the manner for establishing or setting that price.

7.    All contracts or agreements between Hitachi and Ford for the sale of Hitachi VCT Component Sytems or Hitachi Non-VCT Components used in Ford Vehicles.

8.    Any decision by Ford to switch from an on-off VCT Component System to a linear Hitachi VCT Component System and the benefits and disadvantages of an on-off VCT component system as compared to a linear VCT component system.

9. Any decision by Ford to switch from a helical-type VCT Component System to a vane-type VCT Component System and the benefits and disadvantages of a helical-type VCT Component System as compared to a vane-type VCT Component System.

4

10.    The identity, volume, and purchase price of any Hitachi non-VCT Component Systems that were purchased (or received) in conjunction with Hitachi VCT Component Systems.

11.    The identity, volume, and purchase price of any non-Hitachi VCT Component Systems.

12.    The manner in which Hitachi VCT Component Systems are purchased, offered for purchase, and/or imported into the United States for use by Ford (whether as individual components or in an engine and/or vehicle).

13.    Alternatives to Hitachi VCT Component Systems, including whether any non-Hitachi VCT Component Systems are acceptable to Ford for the Ford engines, and whether any non-VCT Component Systems are acceptable to Ford for such engines.

14.    Benefits possessed by Hitachi VCT Component Systems in comparison to non-Hitachi VCT Component Systems currently available.

15.    Ford's reasons and motivations for purchasing Hitachi VCT Component Systems.

16.    Ford's reasons and motivations for purchasing any cam angle sensors or crank angle sensors from Hitachi.

17.    All comparisons of Hitachi VCT Component Systems and non-Hitachi VCT Component Systems.

18.     All knowledge with respect to marketing and sales efforts for Hitachi VCT Component Systems, including those directed to customers and/or events attended by customers.

19.     Instructions or suggestions received from Hitachi regarding the use of VCT Component Systems.

20.     Communications between Ford and Hitachi regarding VCT Component Systems.

21.     Communications between Ford and Hitachi concerning the pending litigation between Hitachi and BorgWarner.

22.     Communications between Ford and Hitachi concerning the patent-in-suit.

23.     Documents relating to the topics identified in the above paragraphs.

# SCHEDULE   B

## SCHEDULE B

## DEFINITIONS

In the document requests appearing below, the following definitions shall apply:

A.    "Ford" as used herein shall mean Ford Motor Company, any corporate affiliates, and any parent or parents, subsidiaries, domestic or foreign, partners, officers, directors, successors, predecessors, assigns, and the employees, attorneys and agents of any and all of them.

B.    "Hitachi" as used herein shall mean plaintiff Hitachi, Ltd., any corporate affiliates, including Unisia North America, Inc., Unisia of Georgia Corporation and Hitachi Automotive Products (USA), Inc., and any parent or parents, subsidiaries, domestic or foreign, partners, officers, directors, successors, predecessors, assigns, and the employees, attorneys and agents of any and all of them, including Unisia JECS.

C.    "Defendants" or "BorgWarner" as used herein shall mean BorgWarner Inc., and BorgWarner Morse TEC Inc.

D.    The term "patent-in-suit" or "the '738 patent" shall mean U.S. Patent No. 5,497,738.

E.    "Ford Engine" as used herein is any engine, including the Duratec 30 engine, that has been, is, or is currently planned to be made, used, prototyped, sold, offered or intended for sale in the United States or imported into the United States by Ford.

F.    "Ford Vehicle" as used herein is any vehicle, including the Ford Fusion, Mazda 6 wagon and Mazda 6 sedan, that has been, is, or is currently planned to be made, used, prototyped, sold, offered or intended for sale in the United States or imported into the United States by Ford.

G.    The term "Ford Variable Camshaft Timing Component System" or "Ford VCT Component System" as used herein shall mean any components (both in combination and on a component-by-component basis) used to vary the camshaft timing in the Ford engines.

H.    "Hitachi VCT Component System" as used herein means any components (both in combination and on a component-by-component basis) used to vary the camshaft timing in the Ford engines that (1) are purchased by Ford from Hitachi (either directly or indirectly) in the United States or (2) are purchased by Ford from Hitachi (either directly or indirectly) outside of the United States and then imported into the United States.

I.    "Non-Hitachi VCT Component System" as used herein means any components (both in combination and on a component-by-component basis) used to vary the camshaft timing in the Ford engines that (1) are purchased by Ford from an entity other than Hitachi in the United States or (2) are purchased by Ford from an entity other than Hitachi outside of the United States and then imported into the United States.

J.    "Hitachi Non-VCT Components" as used herein shall include any parts other than VCT component systems that (1) are purchased by Ford from Hitachi (either directly or indirectly) in the United States or (2) are purchased by Ford from Hitachi (either directly or indirectly) outside of the United States and then imported into the United States.

K.    The term "concerning" means comprising, relating to, referring to, reflecting, describing, evidencing or constituting.

L.    "Documents" as used herein is employed in the broadest possible sense and means without limitation any written, printed, typed, stored, photographed, recorded or otherwise

2

reproduced communication, compilation or reproduction including computer or electronically generated or stored information or data whether assertedly privileged or not and including all copies of drafts of any document which differs in any respect from the original.

M.    "Communications" includes, without limitation, every manner or means of statement, utterance, notation, disclaimer, transfer or exchange of information of any nature whatsoever, by or to whomever, whether oral or written, or whether face-to-face, by telephone, mail, personal delivery or otherwise, including but not limited to, letters, correspondence, conversations, memoranda, dialogue, discussions, meetings, interview, consultations, agreements and other understandings.

N.    "Person" shall refer to any natural person, firm, association, partnership, corporation, group, organization, or other form of legal business entity.

O.    "And" means "and/or." "Or" means "and/or."  The plural of any word used herein includes the singular and the singular includes the plural.  The masculine gender of any word used herein includes the feminine and the neuter.  The past tense of a verb used herein includes the present tense and the present tense includes the past tense.

O.    The terms "make," "use," "sell," "offer to sell," and "import" each assume the broadest possible meaning given those terms under 35 U.S.C. § 154 and 35 U.S.C. §271(a).

## INSTRUCTIONS

Please comply with the following instructions:

A.      All documents that respond, in whole or in part, to any portion of the requests below are to be produced in their entirety, including all attachments and enclosures.

B.      All documents shall be produced either in the order and in the manner that they are kept in the usual course of business or shall be organized and labeled to correspond with the categories of this Request. The documents shall be produced in their original file folder, binder or other cover or container unless that is not possible. Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label or other means of identification of such cover or other container shall be attached to the document.

C.      Any document called for herein that you claim to be privileged against discovery on any ground shall be identified on a privilege log.

D.      Notwithstanding any claim that a document is protected from disclosure, any document so withheld must be produced with the portion claimed to be protected excised.

E.      To the extent no responsive documents exist in response to a Request, and therefore no responsive documents will be produced in response to that Request, please so indicate in the response.

F.     Documents containing confidential information shall be marked "confidential" or "confidential attorneys eyes only" and their disclosure shall be limited in accordance with the Protective Order entered in Civil Action No. 05-048-SLR.

## REQUESTS

1.     Documents referring or relating to Hitachi VCT Component Systems, including without limitation Ford service manuals.

2.     Documents referring or relating to all Ford VCT Component Systems, including any schematic diagrams.

3.     Documents sufficient to determine the years of production for all Ford Vehicles that employ Hitachi VCT Component Systems and the quantity of each such Ford Vehicle sold on a year-by-year basis.

4.     Documents sufficient to determine the years of production for all Ford Engines that employ Hitachi VCT Component Systems and the quantity of each such Ford Engine sold on a year-by-year basis.

5.     Documents sufficient to determine the volume of Hitachi VCT Component Systems purchased on a year-by-year basis, including the volume of each part or component forming such a system.

6.     Documents sufficient to determine Ford's purchase price for Hitachi VCT Component Systems (as a system and on an individual component basis) and the manner for establishing or setting that price.

7.      All contracts or agreements between Hitachi and Ford for the sale of Hitachi components or devices used in Ford Vehicles, including, but not limited to, Hitachi VCT Component Systems.

8.      Documents referring or relating to any decision by Ford to switch from an on-off VCT Component System to a linear Hitachi VCT Component System and the benefits and disadvantages of an on-off VCT component system as compared to a linear VCT component system.

9.      Documents referring or relating to any decision by Ford to switch from a helical-type VCT Component System to a vane-type VCT Component System and the benefits and disadvantages of a helical-type VCT Component System as compared to a vane-type VCT Component System.

10.      Documents sufficient to show the identity, volume, and purchase price of any Hitachi non-VCT Component Systems that were purchased (or received) in conjunction with Hitachi VCT Component Systems.

11.      Documents sufficient to show the identity, volume, and purchase price of any non-Hitachi VCT Component Systems.

12.      Documents sufficient to show the manner in which Hitachi VCT Component Systems are purchased, offered for purchase, and/or imported into the United States for use by Ford (whether as individual components or in an engine and/or vehicle).

13.    Documents referring or relating to alternatives to Hitachi VCT Component Systems, including whether any non-Hitachi VCT Component Systems are acceptable to Ford for the Ford engines.

14.    Documents referring or relating to the benefits possessed by Hitachi VCT Component Systems in comparison to non-Hitachi VCT Component Systems currently available.

15.    Documents referring or relating to Ford's reasons and motivations for purchasing Hitachi VCT Component Systems.

16.    Documents referring or relating to Ford's reasons and motivations for purchasing any cam angle sensors or crank angle sensors from Hitachi.

17.    Documents referring or relating to comparisons of Hitachi VCT Component Systems and non-Hitachi VCT Component Systems.

18.    Documents referring or relating to marketing and sales efforts for Hitachi VCT Component Systems, including those directed to customers and/or events attended by customers.

19.    Documents referring or relating to instructions or suggestions received from Hitachi regarding the use of VCT Component Systems.

20.    All communications between Ford and Hitachi regarding VCT Component Systems.

21.    All communications between Ford and Hitachi concerning the pending litigation between Hitachi and BorgWarner.

22.    All communications between Ford and Hitachi concerning the patent-in-suit.

7

23.    Communications between Ford and Hitachi concerning the design, structure and operation of Hitachi VCT Component Systems.