# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| HITACHI, LTD., and UNISIA NORTH AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BORGWARNER INC., and BORGWARNER MORSE TEC INC., <br><br> Defendants. | **REDACTED PUBLIC VERSION** <br><br> Civil Action No. 05-048-SLR |
| BORGWARNER INC., <br><br> Counterclaimant, <br><br> v. <br><br> HITACHI, LTD., and UNISIA NORTH AMERICA, INC., <br><br> Counterdefendants. |  |

## PLAINTIFFS' PARTIAL OPPOSITION TO
## DEFENDANTS' MOTION TO AMEND SCHEDULING ORDER

*Of Counsel:*

Kenneth E. Krosin
Michael D. Kaminski
Pavan Agarwal
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
(202) 672-5300

Dated: March 2, 2006

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Ave., 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HITACHI, LTD., and UNISIA NORTH AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BORGWARNER INC., and BORGWARNER MORSE TEC INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. 05-048-SLR |
| BORGWARNER INC., <br><br> Counterclaimant, <br><br> v. <br><br> HITACHI, LTD., and UNISIA NORTH AMERICA, INC., <br><br> Counterdefendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |

## PLAINTIFFS' PARTIAL OPPOSITION TO
## DEFENDANTS' MOTION TO AMEND SCHEDULING ORDER

Plaintiffs Hitachi Ltd. and Unisia North America, Inc. ("Hitachi") respond to defendants'

motion to amend the scheduling order (D.I. 191). Plaintiffs do not oppose the motion as it relates

to extending the overall schedule. Hitachi agrees that more time is needed to finish discovery,

including time to address numerous deficiencies in BorgWarner's production. However, Hitachi

asked BorgWarner, and now requests this Court (or Special Master Seitz if so designated) for

concurrent implementation of the following conditions on the extended discovery period:

1.    A discovery plan for the remaining discovery. The original discovery deadline was mid-January. It was extended for six weeks, until February 24. Now, BorgWarner seeks another eight weeks of unbounded discovery. The proposed plan instead would set forth an understanding that would map out the remaining discovery—how many depositions on what topics, what additional documents will be produced, etc. Hitachi simply requests some clear (and enforceable) understandings as to what will and will not be permitted during this extended discovery period. (A proposed list of plan details is set forth on the next page.)

2.    Given the parties' history with discovery disputes, Hitachi believes that the parties will be unable to independently reach agreement on such a discovery plan without neutral assistance. We therefore propose pursuing this under the supervision of the Special Master.

3.    Once the plain is in place, the fact discovery period should not be further extended.

Attached as Exhibit 1 hereto is a copy of the e-mail correspondence from yesterday relating to the present motion to amend the scheduling order, and, more particularly, the motion to extend fact discovery.[1] As Hitachi expressed to BorgWarner, completely unbounded fact discovery does not seem appropriate at this late stage. Fact discovery has been proceeding since last April, and it already has been extended for 6 weeks.

---

[1]    BorgWarner first approached Hitachi with its two-month extension proposal mid-afternoon on Tuesday.

2

I.    HITACHI'S PROPOSED PLAN FOR REMAINING FACT DISCOVERY

Hitachi asks that a mutual plan for further fact discovery include the following:

A.    A schedule of when remaining documents to be produced will be produced.

B.    A schedule of when the remaining "privileged documents" logs will be
exchanged.

C.    A schedule of remaining depositions of both sides' witnesses.

E.    A schedule of outstanding third party discovery depositions to be taken by
BorgWarner.

F.    A schedule for supplementation of written discovery.

G.    A listing of any other pending discovery disputes, with a mechanism of resolution.

H.    A prohibition against new discovery requests (but allowing for "clean-up"
discovery of prior requests).

Hitachi believes that one option could be a personal, "sit-down" meeting conducted by
Special Master Seitz to develop this plan. BorgWarner is opposed to developing such a plan (see
Exhibit 1) and prefers that any extended fact discovery be unbounded.

Hitachi affirmatively seeks judicial intervention and oversight in this instance. In fact,
this is the same reason why Hitachi first suggested the appointment of a Special Master for
discovery purposes.

II.    **HITACHI STILL HAS OUTSTANDING DISCOVERY TO BE RECEIVED
       FROM BORGWARNER.**

A significant number of unresolved issues remain for discovery that Hitachi seeks from

BorgWarner (*see* Exhibits 2 to 7 hereto), including:

A.    Depositions Still Outstanding (*See e.g. Exhibit 2*)

    1.    A witness to clarify differences between BorgWarner statements and
          testimony about its prior VCT sales.

    2.    Testimony relating to financial and development issues from the dozen or
          so boxes of BorgWarner documents produced since the beginning of
          February.

    3.    Testimony relating to the pending categories in Hitachi's Fifth Rule
          30(b)(6) Notice.

B.    Documents Still Sought (*See e.g.* Exhibits 3, 5 to 7)

    1.    Various categories of financial documents. (Hitachi already has produced
          these same categories of documents to BorgWarner.)

    2.    Documents relating to sales of solenoids allegedly covered by the patent-
          in-suit.

    3.    Documents relating to yearly price-reductions for systems sold to GM,
          which are relevant to the damages issues.

    4.    Documents relating to GM's decision to use an "oil-assist" VCT system.

    5.    Documents relating to dealings with **REDACTED**

    6.    Documents relating to BW presentations and promotional materials that
          are directed to fundamental differences between the BW system and
          Hitachi's system.

C.    Other Disputes (Which May Require Depositions)

    1.    Production of certain documents from BorgWarner's "privileged
          documents" list. (*See* Exhibit 4.)

    2.    Unresolved disputes before Special Master Seitz.

The foregoing documents and categories of information are critical to Hitachi's case, including as to damages, validity and enforceability.

To provide some exemplary understanding of the outstanding disputes, first, until very recently, BorgWarner failed to produce extensive financial and related documents. Hitachi had requests outstanding from April 2005 for such documents. As one example, Document Request No. 67 states "All documents concerning BorgWarner's revenues, costs, and profits relating to any product using or embodying the inventions claimed in the '738 patent, by product and year, during the period of the alleged infringement of the '738 patent." BorgWarner had represented that all the relevant financial documents to this and other related requests were produced before the depositions that Hitachi eventually took in January 2006. Hitachi took depositions of BorgWarner on the financial front, and learned at these depositions that only a small amount of information had been produced and extensive additional unproduced financial information existed at BorgWarner. By letter dated January 20, 2006, Hitachi sought the Special Master's assistance to obtain this information. *See* Exhibit 8. Since the beginning of February, Hitachi has received a large amount of financial documentation, and Hitachi understands that further financial documents still remain to be produced.

Second, Hitachi issued other document requests in April 2005 seeking information on BorgWarner's efforts to commercialize its VCT products before and after BorgWarner obtained the patent in suit. For example, Document Request No. 53 stated "All documents and things concerning BorgWarner's design, development or commercialization of variable camshaft timing systems, including any experimental or commercial systems, that BorgWarner alleges embody the subject matter disclosed in the '738 patent." Request No. 54 stated "All documents referring or relating to BorgWarner's efforts to sell variable camshaft timing products, including any

correspondence with actual or potential customers concerning BorgWarner's variable camshaft timing systems."

Having received almost nothing regarding VCT development or attempted sales for the post-1995 period, Hitachi pointed out this fact to BorgWarner. BorgWarner stated that it had produced all such documents, and the lack of documents post-1995 was because BorgWarner had little or no documentation for its new VCT product. Following depositions of BW personnel, believing that additional documents must exist, Hitachi raised this issue and the efforts to sell issue with the Special Master on January 20, 2006. *See* Exhibit 8. As a result, since the beginning of February 2006, BorgWarner has produced numerous boxes of information regarding these topics. Further, the new production includes documents relating to BorgWarner's current VCT device, which Hitachi previously raised with the Special Master in November 2005 and for which BorgWarner previously had claimed it had completed production. *See* Exhibits 9 to 11.

## III.    COMMENTS ON BORGWARNER'S PROPOSED "LITIGATION TIMETABLE"

BorgWarner never sent to Hitachi the draft "litigation timetable" set forth in Exhibit 1 to BorgWarner's opening brief. Having now seen it, Hitachi provides the following observations:

A.    Hitachi requests an appropriate restriction on the scope of fact discovery for the extended period.

B.    BorgWarner has included a specific date for the claim construction hearing, and suggests a November 2006 trial date, but that depends, of course, on the Court's schedule.

C.    Hitachi is generally agreeable to the remaining new dates proposed by BorgWarner. However, Hitachi believes that the precise dates for the expert discovery, claim

6

construction, and summary judgment briefs would best be based upon the Court's schedule for

the claim construction/summary judgment hearing and trial.

## III.   CONCLUSION

Hitachi needs the additional fact discovery time period to address the deficiencies in

BorgWarner's production.  Hitachi's partial opposition to the motion to amend the Scheduling

Order only relates to its request for some clear (and enforceable) understandings as to what will

and will not be permitted during the extended fact discovery period.

ASHBY & GEDDES

*/s/ John G. Day*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Ave., 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Of Counsel:*

*Attorneys for Plaintiffs*

Kenneth E. Krosin
Michael D. Kaminski
Pavan Agarwal
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
(202) 672-5300

Dated:  February 23, 2006
166986.1

7

# EXHIBIT 1

## Kaminski, Michael D.

| | |
|---|---|
| **From:** | Hirshfeld, Lara [lhirshfeld@sidley.com] |
| **Sent:** | Wednesday, February 22, 2006 5:17 PM |
| **To:** | Agarwal, Pavan K.; Rein, Thomas D. |
| **Cc:** | Peterson, Liane M.; Krosin, Kenneth E.; Polk, Jr., C. Edward; Abrams, Hugh; Cavan, Marc A.; Schneider, Lisa A.; SBalick; JDay; TLydon; Kaminski, Michael D. |

Subject: RE: Hitachi v. BorgWarner - Schedule

Pavan -

As Tom indicated earlier, we have been urging a revised schedule for weeks now. Rather than working with us to amend the schedule, you have opted to parse out extensions in 2 week increments. Your latest suggestion for a 2 week extension and then for the parties to work out a mutually agreeable further extension is simply untenable. These 2 week extensions have proven insufficient given the outstanding discovery in this case.

Further, just look at the email exchange between counsel on this topic and you will see indisputably that we attempted to mutually resolve this issue. I am not going to rehash this any further. Discovery is set to close on Friday, and we must preserve our rights. Accordingly, we are filing our motion today.

Of course, even after we file our motion we are willing to discuss a mutually agreeable schedule (1) without the conditions set forth in Mike's email, and (2) that does not involve additional piecemeal 2 week extensions.

Lara

---

From: Agarwal, Pavan K. [mailto:PAgarwal@foley.com]
Sent: Wednesday, February 22, 2006 3:29 PM
To: Rein, Thomas D.
Cc: Peterson, Liane M.; Krosin, Kenneth E.; Polk, Jr., C. Edward; Abrams, Hugh; Cavan, Marc A.; Schneider, Lisa A.; SBalick; JDay; TLydon; Hirshfeld, Lara; Kaminski, Michael D.; Agarwal, Pavan K.
Subject: RE: Hitachi v. BorgWarner - Schedule

Tom,

In the limited instances in which you actually tell us before filing a motion, you expect that we agree precisely to your schedule, no matter how significant the alteration, and give us little to no time to respond.

How about we agree to 2 week extension, and commit that the parties will work out a mutually agreeable further extension over the next few business days? Please send us a proposal. This will protect both sides in the interim, and we can try to avoid the Court's intervention. Perhaps if he is able and amenable, the Special Master can mediate the discussion to find out from each side what is truly needed going forward. We will also have time to mutually approach Judge Robinson to determine her trial schedule after August.

You state that the discovery needs differ, but the fact remains that we need particular discovery from BW just as much as you argue that you need discovery from Hitachi. The Special Master will rule on areas for both sides in this regard.

Thanks
Pavan

Pavan Agarwal
Foley & Lardner LLP

3000 K. Street, N.W., Suite 500
Washington, D.C. 20007

202.945.6162 (phone)
202.672.5399 (fax)
pagarwal@foley.com

-----Original Message-----
From: Rein, Thomas D. [mailto:trein@Sidley.com]
Sent: Wednesday, February 22, 2006 3:59 PM
To: Agarwal, Pavan K.
Cc: Peterson, Liane M.; Krosin, Kenneth E.; Polk, Jr., C. Edward; Abrams, Hugh; Cavan, Marc A.;
Schneider, Lisa A.; SBalick; JDay; TLydon; Hirshfeld, Lara; Kaminski, Michael D.
Subject: RE: Hitachi v. BorgWarner - Schedule

Pavan,

We did try to work out a mutually acceptable extension. We have been reaching out to you on this
for weeks. But now that discovery is scheduled to close on Friday, we have no choice but to bring a
motion to protect ourselves. If there is a schedule you will agree to without trying to attach all sorts
of strings and conditions, please let me know.

Contrary to what you suggest, our discovery needs are very different from yours. I suspect you
recognize that, and that is why you want to "bound" discovery on both sides. We have suggested
ways to minimize the burden and will work with you on that, but we have repeatedly advised you
that we cannot carve out in advance what exactly it is that we will need. How can we know that
before you provide us with some of the information we have long been requesting? To this date,
you still have yet to identify what ECU information you will provide -- or when. Nor have you
responded to numerous other inquiries we have made. Without a motion, we generally receive no
substantive response at all.

Tom


Thomas D. Rein
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
Direct #: (312) 853-7117
FAX:     (312) 853-7036
E-mail:  trein@sidley.com


From: Agarwal, Pavan K. [mailto:PAgarwal@foley.com]
Sent: Wednesday, February 22, 2006 2:36 PM
To: Hirshfeld, Lara; Kaminski, Michael D.
Cc: Peterson, Liane M.; Krosin, Kenneth E.; Polk, Jr., C. Edward; Abrams, Hugh; Rein,
Thomas D.; Cavan, Marc A.; Schneider, Lisa A.; SBalick; JDay; TLydon; Agarwal, Pavan K.
Subject: RE: Hitachi v. BorgWarner - Schedule

Lara:

We are disappointed with your response. Please note that the intention was that the remaining discovery during this second extended period not be unbounded for both sides. Both sides would be mutually limited. We are actively working on addressing what we understand are the remaining issues that you have raised, and we hope that you are actively doing the same for our issues.

Further, by working together, we might find a mutually acceptable extension and scope, and also get a sense of what the Court can do in terms of the major motions and trial date. (We asked for your comments on this aspect but you refuse to discuss it.)

Unfortunately, as BW has done with each of its non-stipulated requests for extension, it sounds like you wish to file a motion without reasonably trying to work out an agreement.

Thanks

Pavan

Pavan Agarwal
Foley & Lardner LLP
3000 K. Street, N.W., Suite 500
Washington, D.C. 20007

202.945.6162 (phone)
202.672.5399 (fax)
pagarwal@foley.com

-----Original Message-----
**From:** Hirshfeld, Lara [mailto:lhirshfeld@sidley.com]
**Sent:** Wednesday, February 22, 2006 3:03 PM
**To:** Kaminski, Michael D.; Agarwal, Pavan K.
**Cc:** Peterson, Liane M.; Krosin, Kenneth E.; Polk, Jr., C. Edward; Abrams, Hugh; Rein, Thomas D.; Cavan, Marc A.; Schneider, Lisa A.; SBalick; JDay; TLydon
**Subject:** RE: Hitachi v. BorgWarner - Schedule

Ken,

The strings and conditions set forth below are unacceptable and unworkable. We cannot know *a priori* exactly what documents we need or what depositions we need to conduct before receiving any information at all on Hitachi's ECUs or some of the other information you owe us. Nor can we agree that there will be no further discovery extensions, since we have no control over the timing of your production, your identification of appropriate witnesses or your production of such witnesses.

We also take issue with the accusations you make, and wonder how you can even level such charges when it was your firm that concealed information from us and the

Special Master. The entire reason that we need to seek an extension is because Hitachi did not provide information that should have been produced long ago and claims it cannot produce that information for many more weeks.

In any case, because discovery is scheduled to close on Friday and you will not agree to the schedule we are proposing, we have no choice but to file our Motion later this afternoon.

Lara

---

**From:** Kaminski, Michael D. [mailto:MKaminski@foley.com]
**Sent:** Wednesday, February 22, 2006 12:29 PM
**To:** Hirshfeld, Lara; Agarwal, Pavan K.
**Cc:** Peterson, Liane M.; Krosin, Kenneth E.; Polk, Jr., C. Edward; Abrams, Hugh; Rein, Thomas D.; Cavan, Marc A.; Schneider, Lisa A.; SBalick; JDay; TLydon
**Subject:** RE: Hitachi v. BorgWarner - Schedule

Lara:

We have reviewed your e-mail and have discussed your proposal with Hitachi and with our Delaware counsel. We are not opposed to extending the period of discovery to some extent. However, we would want any agreement to be subject to the following conditions:

1.     Judicial approval of a detailed plan for what that discovery will entail. We need to have in place a detailed understanding and plan about how many depositions on what topics, what additional documents will be sought (with no further documents requested), etc. During the last two months, many of BW's demands on Hitachi have been needlessly burdensome without leading to any progress on the merits, and in our view they therefore have been largely counterproductive. Also, oral agreements about the scope of depositions have not been honored by BorgWarner's counsel, which causes us concern about extending the fact discovery period. If we are to agree to such an extension, we want there to be some clear (and enforceable) understandings as to what will and will not be permitted during this extended discovery period.

2.     Given our history, we are not optimistic that the parties will be able to reach timely agreement on such a detailed plan without neutral assistance. We therefore propose pursuing this under the supervision of the Special Master.

3.     There will be no further extensions of the fact discovery period beyond whatever new date is set now.

A couple of additional points: First, we need clarification on some of the points raised in your letter, as we have gotten mixed signals from you. For example, you mention that you intend third-party depositions of Ford and Honda. However, we also have heard that such

depositions may not be in the offing at all.  We would appreciate
your confirming for us where things stand, the correspondence with those
third parties, and what your intentions are, in connection with this third-
party discovery, some of which we understand Mary has been handling
and which may impact the very questions that BW is asking us.  And
second, although this is something that we really had hoped to avoid,
your proposal obviously will necessitate all of the remaining dates in the
case schedule being reset as well.  However, you have not included a
proposal for the rest of the case schedule, and before we agree in a
vacuum to a new fact discovery cut-off, we would like to hear your
thoughts as to what the remainder of the schedule would look like as a
result of your proposed extension of fact discovery.

Please let us know whether you agree to this approach.

Mike

Michael D. Kaminski
FOLEY & LARDNER LLP
3000 K St., N.W.
Washington, D.C.  20007-5109
(202) 672-5490
(202) 672-5399 (fax)
mkaminski@foley.com
www.foley.com

-----Original Message-----
From: Hirshfeld, Lara [mailto:lhirshfeld@sidley.com]
Sent: Tuesday, February 21, 2006 2:33 PM
To: Agarwal, Pavan K.
Cc: Kaminski, Michael D.; Peterson, Liane M.; Krosin, Kenneth E.; Polk, Jr., C.
Edward; Abrams, Hugh; Rein, Thomas D.; Cavan, Marc A.; Schneider, Lisa A.
Subject: Hitachi v. BorgWarner - Schedule

Pavan -

After reviewing your letter motions filed with Special Discovery Master Seitz
earlier today, we are at a loss as to how you expect to complete fact discovery
by this Friday.  It is inevitable that we will exceed the current fact discovery cut-
off date if we provide you with any of the discovery sought in your motions.  At
this point, we are still owed at least the following discovery: (1) the production of
all cost and profit data and the deposition of a competent witness on the subject
(thus far you have only sent documentation on the solenoid and actuator
components - not the sensors); (2) discovery on Honda VCT components,
including in particular the spool, and a deposition of a competent witness on the
subject; (3) complete sales summaries, specifically for the April to September
2005 period and for all sales made to UGC (you still have not responded to our
letter describing the discrepancies); (4) discovery from Ford and Honda
(including potential depositions); (5) the financial documentation (and possibly a
deposition) from Nissan, which was subpoenaed months ago and who you
represent; and (6) a deposition of a competent witness to testify on
BorgWarner's 8th 30(b)(6) Notice served earlier today.  In addition, there is the
discovery sought by our pending motion to compel discovery relating to

Hitachi's sales of ECUs and the motion seeking discovery on additional VCT
components (e.g., oil pumps and sensors). Considering that you have now
moved to compel additional depositions of BorgWarner and the production of
documents, as well as the fact that it will take on your end at least 4 weeks to
provide us with just a subset of the ECU documents that we have requested,
what do you propose? It seems to us that pushing out the entire schedule an
additional 2 months makes sense. Please let us know by tomorrow morning
whether this is acceptable to you. If we are unable to mutually agree to a new
schedule, we will file a motion to adjust the schedule.

Regards,

Lara

Sidley Austin LLP mail server made the following annotation
-----------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Tr
that, unless expressly stated otherwise, any U.S. federal t
communication, including attachments, was not intended or w
used, by any taxpayer for the purpose of avoiding any penal
taxpayer by the Internal Revenue Service.  In addition, if
to by other parties in promoting, marketing or recommending
investment plan or arrangement, then (i) the advice should
with the promotion or marketing by others of the transactio
communication and (ii) the taxpayer should seek advice base
circumstances from an independent tax advisor.

************************************************************
This e-mail is sent by a law firm and may contain informati
If you are not the intended recipient, please delete the e-
immediately.

************************************************************

The preceding email message may be confidential or
protected by the attorney-client privilege. It is not
intended for transmission to, or receipt by, any
unauthorized persons. If you have received this message
in error, please (i) do not read it, (ii) reply to the sender
that you received the message in error, and (iii) erase or
destroy the message. Legal advice contained in the
preceding message is solely for the benefit of the Foley &
Lardner LLP client(s) represented by the Firm in the
particular matter that is the subject of this message, and
may not be relied upon by any other party.

Internal Revenue Service regulations require that certain
types of written advice include a disclaimer. To the extent
the preceding message contains advice relating to a
Federal tax issue, unless expressly stated otherwise the
advice is not intended or written to be used, and it cannot
be used by the recipient or any other taxpayer, for the

purpose of avoiding Federal tax penalties, and was not
written to support the promotion or marketing of any
transaction or matter discussed herein.

Sidley Austin LLP mail server made the following annotations on
----------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasur
that, unless expressly stated otherwise, any U.S. federal tax ad
communication, including attachments, was not intended or writte
used, by any taxpayer for the purpose of avoiding any penalties
taxpayer by the Internal Revenue Service.  In addition, if any s
to by other parties in promoting, marketing or recommending any
investment plan or arrangement, then (i) the advice should be co
with the promotion or marketing by others of the transaction(s)
communication and (ii) the taxpayer should seek advice based on
circumstances from an independent tax advisor.

****************************************************************
This e-mail is sent by a law firm and may contain information th
If you are not the intended recipient, please delete the e-mail
immediately.

****************************************************************

The preceding email message may be confidential or protected by
the attorney-client privilege. It is not intended for transmission to,
or receipt by, any unauthorized persons. If you have received this
message in error, please (i) do not read it, (ii) reply to the sender
that you received the message in error, and (iii) erase or destroy
the message. Legal advice contained in the preceding message is
solely for the benefit of the Foley & Lardner LLP client(s)
represented by the Firm in the particular matter that is the subject
of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of
written advice include a disclaimer. To the extent the preceding
message contains advice relating to a Federal tax issue, unless
expressly stated otherwise the advice is not intended or written to
be used, and it cannot be used by the recipient or any other
taxpayer, for the purpose of avoiding Federal tax penalties, and was
not written to support the promotion or marketing of any
transaction or matter discussed herein.

Sidley Austin LLP mail server made the following annotations on 02/22/06,
--------------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulati
that, unless expressly stated otherwise, any U.S. federal tax advice conta
communication, including attachments, was not intended or written to be us
used, by any taxpayer for the purpose of avoiding any penalties that may b
taxpayer by the Internal Revenue Service.  In addition, if any such tax ad

to by other parties in promoting, marketing or recommending any partnershi
investment plan or arrangement, then (i) the advice should be construed as
with the promotion or marketing by others of the transaction(s) or matter(
communication and (ii) the taxpayer should seek advice based on the taxpay
circumstances from an independent tax advisor.

*******************************************************************
This e-mail is sent by a law firm and may contain information that is priv
If you are not the intended recipient, please delete the e-mail and any at
immediately.

*******************************************************************


The preceding email message may be confidential or protected by the
attorney-client privilege. It is not intended for transmission to, or receipt by,
any unauthorized persons. If you have received this message in error, please
(i) do not read it, (ii) reply to the sender that you received the message in
error, and (iii) erase or destroy the message. Legal advice contained in the
preceding message is solely for the benefit of the Foley & Lardner LLP client
(s) represented by the Firm in the particular matter that is the subject of this
message, and may not be relied upon by any other party.


Internal Revenue Service regulations require that certain types of written
advice include a disclaimer. To the extent the preceding message contains
advice relating to a Federal tax issue, unless expressly stated otherwise the
advice is not intended or written to be used, and it cannot be used by the
recipient or any other taxpayer, for the purpose of avoiding Federal tax
penalties, and was not written to support the promotion or marketing of any
transaction or matter discussed herein.

Sidley Austin LLP mail server made the following annotations on 02/22/06, 16:14:58:
----------------------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we in
that, unless expressly stated otherwise, any U.S. federal tax advice contained in th
communication, including attachments, was not intended or written to be used, and ca
used, by any taxpayer for the purpose of avoiding any penalties that may be imposed
taxpayer by the Internal Revenue Service. In addition, if any such tax advice is us
to by other parties in promoting, marketing or recommending any partnership or other
investment plan or arrangement, then (i) the advice should be construed as written i
with the promotion or marketing by others of the transaction(s) or matter(s) address
communication and (ii) the taxpayer should seek advice based on the taxpayer's parti
circumstances from an independent tax advisor.

*************************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or
If you are not the intended recipient, please delete the e-mail and any attachments
immediately.

*************************************************************************************

# EXHIBIT 2

# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

**222 DELAWARE AVENUE**

**P. O. BOX 1150**

**WILMINGTON, DELAWARE 19899**

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

February 21, 2006

VIA EMAIL AND FIRST CLASS MAIL

Collins J. Seitz, Jr., Esquire
Connolly Bove, Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, Delaware 19801

> Re: *Hitachi Ltd. v. BorgWarner, Inc.*
> C.A. No. 05-048-SLR

Dear Special Master Seitz:

We request your assistance in obtaining several categories of relevant documents that BorgWarner refuses to produce. In particular, Hitachi requests your assistance in obtaining documents relating to BorgWarner's: (i) profit and loss statements and long-range plans (including underlying cost data) from 1999 through 2001; (ii) solenoid sales to a company called ICD; (iii) contractual reductions in the price of VCT systems sold to General Motors; (iv) use of an oil-assist VCT system for its sales to General Motors; and (v) relevant VCT licensing agreements of the same scope that BorgWarner has asked of Hitachi.

## I.     HITACHI IS ENTITLED TO FULL PRODUCTION OF BORGWARNER'S PROFIT & LOSS STATEMENTS AND LONG RANGE PLANS, INCLUDING UNDERLYING COST DATA

Despite repeated requests from Hitachi, BorgWarner refuses to produce its "profit & loss statements" and "long-range plans" (including underlying cost data) for the period from 1999 through 2001. BorgWarner argues that these documents are irrelevant because it was not selling VCT systems at this time. This position is untenable. BorgWarner has not excluded these years from its damages claims. Indeed, BorgWarner is certain to allege entitlement to a reasonable royalty during 1999 through 2001. Accordingly, BorgWarner's market expectations (*i.e.*, market forecasts and long range plans) and financial situation (*e.g.*, profit and loss statements) are certainly relevant to the hypothetical negotiation that the Court must envision during this time.

BorgWarner's position is quite surprising, considering its arguments regarding the critical nature of financial information from this same time period, 1999 through 2005, the damages period alleged by BorgWarner in this case.

Mr. Collins J. Seitz, Jr.
February 21, 2006
Page 2

In addition, a BorgWarner witness has already testified to the relative ease for BorgWarner to gather this information.    **REDACTED**
                                            As such, there is no justifiable reason for
BorgWarner's refusal to produce this information.

## II.    HITACHI IS ENTITLED TO DOCUMENTS RELATING TO BORGWARNER'S SOLENOID SALES ALLEGEDLY COVERED BY THE PATENT IN SUIT

BorgWarner is also resisting production regarding solenoid sales to a company called ICD. To put this dispute in context, General Motors recently became BorgWarner's first commercial VCT customer. BorgWarner alleges that its sales to GM fall within the scope of claims asserted in this case, and intends to rely upon these sales as a basis for damages. Notably, BorgWarner does not sell its solenoids directly to General Motors. Instead, BorgWarner sells to a company called ICD, who then sells to GM. Hitachi simply asks for relevant documents concerning BorgWarner's sales to ICD.

On February 7th, Hitachi sent BorgWarner a deficiency letter seeking several categories of documents relating to ICD. Hitachi requested:

> all documents relating to BorgWarner's sales of solenoids to ICD, including but not limited to sales relating to the GM HV V6 program. If ICD also sells BorgWarner solenoids to other customers besides GM, please provide this information as well. These documents should include cost information for sales from BorgWarner to ICD, and cost information for sales of solenoids from ICD to GM. To the extent that ICD sells to other customers, please include documentation (including cost information) regarding these transactions as well. We also expect documentation showing why BorgWarner does not sell its solenoids directly to GM and what roles ICD plays in the R&D, sales, and/or marketing of BorgWarner's VCT systems. Please also produce all contracts, agreements, other information regarding the same between BorgWarner and ICD.

February 7th Polk Letter, at 3 (Exhibit 2). In reply, BorgWarner indicated that it will produce nothing more than "the Purchase Order for ICD." February 15th Hirshfeld letter, at 2 (Exhibit 3). BorgWarner's position in meritless. Hitachi is entitled to discover the role that ICD plays in the sales of VCT systems allegedly covered by the patent-in-suit. If ICD sells these same solenoids to other customers at different prices, then this information would be highly relevant to BorgWarner's damages claims. Hitachi is also entitled to discover any contractual arrangements between BorgWarner and ICD regarding these sales. This information may provide come clarity into ICD's role in these sales.

While there certainly will be documents that are under the control of ICD, Hitachi cannot believe that BorgWarner has no documentation in its own possession, custody or control relating to its solenoid sales to ICD. Certainly, BorgWarner has had correspondence and meetings with ICD.

Mr. Collins J. Seitz, Jr.
February 21, 2006
Page 3

And, certainly there are agreements in place between ICD and BorgWarner regarding these sales.
Any suggestion to the contrary would most certainly be out of touch with commercial reality.

In addition, BorgWarner

REDACTED                    Hitachi is entitled to know if BorgWarner is
                                                                                          This
information would, again, be relevant to BorgWarner's damages claims. In either case, Hitachi has
requested relevant information that should be produced. BorgWarner cannot justify its refusal to
produce these documents.

III.    HITACHI IS ENTITLED TO ALL DOCUMENTS RELATING TO THE   REDACTED
        PRICE REDUCTION IN VCT SYSTEMS SOLD TO GENERAL MOTORS

        Recently-produced documents from BorgWarner show that GM receives a
reduction in the price of BorgWarner's VCT systems        REDACTED             (Hitachi
had not previously known about this.) In its February 7th deficiency letter, Hitachi asked for:

                all documents relating to this contractual provision, including internal
                meeting minutes, draft contracts and correspondence/meetings with
                General Motors regarding the price reduction. Similarly, certain
                documents relating to the HV V6 indicate that the VCT system used
                with this program was originally intended to be, or at least suggested
                to be, a    REDACTED        VCT system.

(Exhibit 2). BorgWarner has not specifically responded to this request.[1] As such, Hitachi seeks
assistance from the Special Master in obtaining this information. Certainly, a contractual reduction
in the price that BorgWarner sells its VCT system is relevant to BorgWarner's claims for lost profits,
and for a reasonable royalty which envisions a hypothetical contract negotiation between the
patentee and alleged infringer. Moreover, the process by which this reduction was negotiated is
highly relevant evidence regarding any "hypothetical" negotiation between Hitachi and BorgWarner.
As such, this information must be produced.

IV.     HITACHI IS ENTITLED TO INFORMATION REGARDING GENERAL MOTOR'S
        DECISION TO USE AN OIL-ASSIST VCT SYSTEM.

        Hitachi also requested "all documents relating to GM's decision to use a oil-assist VCT
system with the HV V6   REDACTED      This information is relevant to the enablement of the
asserted '738 patent. In order to comply with the enablement requirement, the patent disclosure
must teach a skilled artisan how to make and use the claimed invention without undue
experimentation. See 35 U.S.C. § 112.

---

[1] BorgWarner indicated that it would be producing additional documents, but did not indicate
whether any of that production related to documents between BorgWarner and GM regarding this
contractual provision. (Exhibit 3).

Mr. Collins J. Seitz, Jr.
February 21, 2006
Page 4

The requested information is relevant to whether the '738 patent is, in fact, enabled. As the Special Master is well aware, BorgWarner has had significant problems developing a commercial CTA system.

Although BorgWarner's document production is supposedly on-going, it has not indicated any intent to produce these particular documents. Accordingly, Hitachi requests an Order compelling their production.

V.    HITACHI IS ENTITLED TO ALL RELEVANT LICENSE AGREEMENTS

Finally, BorgWarner states that it will only produce license agreements that it intends to rely upon in this case, presumably only those license agreements with a favorable (i.e., high) royalty rate. BorgWarner suggests that other relevant license agreements will not be produced because of confidentiality obligations. February 15th Hirshfeld letter, at 4 (Exhibit 3).

This position is without merit. BorgWarner makes no suggestion that it even asked for permission to produce the withheld license agreements. Hitachi had similar confidentiality obligations for its license agreements, but has been diligent in its efforts to secure permission for prompt production of the license agreements in response to BorgWarner's request. There is no reason why BorgWarner cannot follow this same procedure. Nor has Hitachi selectively chosen to produce only those license agreements that it would choose to rely upon, i.e., those that are favorable to Hitachi's position. BorgWarner should not be allowed to selectively choose what portion of the relevant evidence will be before the Court in this action. What is good enough for BorgWarner to demand should be good enough for BorgWarner to produce.

*    *    *

For these reasons, Hitachi requests an Order from the Special Master compelling BorgWarner to produce all relevant documents regarding its: (i) profit and loss statements and long range plans (including underlying cost data) from 1999 through 2001; (ii) solenoid sales to ICD; (iii) contractual reductions in the price of VCT systems sold to General Motors; (iv) use of an oil-assist VCT system for its sales to General Motors; and (v) relevant VCT licensing agreements of the same scope that BorgWarner has asked of Hitachi.

Respectfully,

John G. Day

JGD: nml
Attachments
166843.1
cc:    Richard K. Herrmann, Esquire (via electronic mail)
       Hugh A. Abrams, Esquire (via electronic mail)
       Kenneth E. Krosin, Esquire (via electronic mail)

# EXHIBIT 3

# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW
## 222 DELAWARE AVENUE
### P. O. BOX 1150
## WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

February 21, 2006

VIA EMAIL AND FIRST CLASS MAIL

Collins J. Seitz, Jr., Esquire
Connolly Bove, Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, Delaware 19801

> Re:   *Hitachi Ltd. v. BorgWarner, Inc.*
> C.A. No. 05-048-SLR

Dear Special Master Seitz:

Hitachi submits this request for assistance in scheduling depositions that BorgWarner refuses to schedule. Specifically, Hitachi asks for BorgWarner to produce a Rule 30(b)(6) witness to testify about: (i) payments received by BorgWarner for its prior VCT systems; (ii) BorgWarner's recently-produced financial documents; and (iii) still-pending topics relating to Hitachi's Fifth 30(b)(6) deposition notice.

## I.   INCONSISTENCIES IN BORGWARNER'S STATEMENTS AND TESTIMONY ABOUT THE PAYMENTS RECEIVED FOR ITS PRIOR VCT SALES MUST BE CLARIFIED

BorgWarner's deposition testimony is at odds with recently-produced documents. BorgWarner glosses over the inconsistencies and refuses to provide a witness to explain these differences. *See* Exhibit 1.

As the Special Master is aware, the '738 patent is titled "VCT Control with a Direct Electromechanical Actuator." This patent claims a variable force solenoid as the actuator, while its parent (U.S. Patent No. 5,218,935) claims an actuator that is an obvious variant of the variable force solenoid, a stepper motor. During discovery, Hitachi learned that BorgWarner made potentially-invalidating sales of prior VCT systems. *Accord* 35 U.S.C. § 102(b) (declaring that a patent is invalid if product is "on sale" more than a year before the filing date of the patent). Hitachi has

Mr. Collins J. Seitz, Jr.
February 21, 2006
Page 2

issued numerous discovery requests directed to these prior sales.[1]  Of particular importance, for this
letter, are sales made by BorgWarner in 1991 for the  REDACTED

On January 19th, Hitachi took a 30(b)(6) deposition of BorgWarner directed to its prior VCT
sales.   During that deposition, Hitachi inquired about BorgWarner's recovery of costs for its
prototype VCT systems. This information is relevant to whether these prior sales trigger the on-sale
bar. *See Petrolite Corp. v. Baker Hughes, Inc.*, 96 F.3d 1423, 1426-27 (Fed. Cir. 1996) (noting
"payment" received for the device as a factor in whether a prior sale was for experimental or
commercial purposes).  In reply to Hitachi's questions,

REDACTED

Three days later, another BorgWarner 30(b)(6)
designee

REDACTED

After being ordered by the Special Master, BorgWarner
revised its response to Hitachi's Interrogatory No. 22.  In that response, BorgWarner again indicated

**REDACTED**

However, BorgWarner's newly-produced documents cast doubt (and contradict) this
testimony for at least three reasons.

First, it appears from the new documents that BorgWarner's          **REDACTED**

---

[1]      This topic is, at least, covered by Hitachi's first, second, third, and fourth sets of
document requests, fourth 30(b)(6) deposition notice, and Interrogatory No. 22.

Mr. Collins J. Seitz, Jr.
February 21, 2006
Page 3

Hitachi did not have the opportunity to question BorgWarner on this cost recovery strategy, or how it may relate to BorgWarner's prototype deliveries, because these documents were produced well after the relevant depositions occurred.

Second, it appears from the new documents that BorgWarner had an agreement in place to
REDACTED
                Again, this information is relevant to determine if BorgWarner's sales were for "on – sale" purposes.

Third, it appears from the new documents that BorgWarner

REDACTED

                                Again, this information directly relates to the commercial aspect of BorgWarner's prior VCT sales.

Although Hitachi has asked for a witness to explain these newly produced documents, BorgWarner has declined. *See* Exhibit 1, Hirshfeld Letter dated 2/15/06. Incredibly, BorgWarner's counsel suggests that these documents "have nothing to do with the prototypes you questioned Mr. Butterfield about in his individual deposition, and in the 30(b)(6) deposition." *See id.* Counsel's arguments simply reinforce the need for a deponent. Hitachi cannot understand how

REDACTED

In any event, these new documents bear directly on the "payment" BorgWarner received for delivering prototypes to REDACT and Hitachi is entitled to testimony on this topic. BorgWarner cannot act as judge and jury on this issue by belatedly producing documents, and then preventing Hitachi from obtaining relevant information as to the meaning of these documents. As such, Hitachi respectfully requests an order requiring BorgWarner to produce a deponent.[2]

## II.    HITACHI IS ENTITLED TO DEPOSITION TESTIMONY FOR BORGWARNER'S BELATEDLY PRODUCED FINANCIAL DOCUMENTS

In recent weeks, BorgWarner has spend considerable time and effort writing letters about the untimely production of Hitachi financial documents.

---

[2]     These topics fully come within previous notices, such as Hitachi's fourth 30(b)(6) notice. Nonetheless, to avoid any confusion on the scope of such a further deposition, Hitachi seeks an order compelling BW to produce a witness for a Sixth Notice of Deposition, attached hereto as Exhibit 2.

Mr. Collins J. Seitz, Jr.
February 21, 2006
Page 4

Cleverly, this tactic has diverted attention away from BorgWarner's own belated production in this area. Indeed, BorgWarner has produced boxes of new financial documents. The vast majority of these documents fall within the same categories that BorgWarner has accused Hitachi of belatedly producing and for which Hitachi is being required to give deposition testimony. While the issue of which side's documents are the most belatedly produced is without importance, Hitachi is equally entitled to review these belatedly produced documents and seek deposition testimony to the extent any of these documents are unclear or raise new issues. Indeed, these documents are so freshly out of the box that Hitachi has not fully grasped their substance.

Hitachi requests an opportunity to finish reviewing these documents within the week, and obtain deposition testimony to the extent required.

### III. NO DEPOSITION HAS BEEN SCHEDULED FOR THE PENDING CATEGORIES OF HITACHI'S FIFTH RULE 30(b)(6) NOTICE

Also, we have not been able to get a date certain for Hitachi's Fifth Rule 30(b)(6) Notice (Exhibit 9). In that Fifth Notice, after discussions with BorgWarner, Hitachi agreed to withdraw Categories 13-17. The other Categories are pending. Although most of those Categories are ones that BorgWarner has already taken deposition testimony on, Hitachi has not been successful in getting a deposition date from BorgWarner for this deposition.

As such, Hitachi respectfully requests an order requiring BorgWarner to produce a deponent for these pending Categories.

Respectfully,

John G. Day

JGD: nml
Attachments
166844.1

cc:    Richard K. Herrmann, Esquire (via electronic mail)
       Hugh A. Abrams, Esquire (via electronic mail)
       Kenneth E. Krosin, Esquire (via electronic mail)

# EXHIBIT 4

## Kaminski, Michael D.

| | |
|---|---|
| **From:** | Hirshfeld, Lara [lhirshfeld@sidley.com] |
| **Sent:** | Wednesday, February 22, 2006 6:22 PM |
| **To:** | Polk, Jr., C. Edward |
| **Cc:** | Schneider, Lisa A.; Rein, Thomas D.; Cavan, Marc A.; Abrams, Hugh; Krosin, Kenneth E.; Kaminski, Michael D.; Agarwal, Pavan K.; Peterson, Liane M. |

**Subject:** RE: Documents on BW's and Brinks Hofer's Privilege Log

Ed,

As you have likely been working on your brief for some time on this issue, we are not sure, without seeing your brief, whether one week is sufficient for a response. Thus, we will respond to your proposed briefing schedule when we have a better idea of the scope of this dispute. Given that the first date in the proposed briefing schedule is over a week away, we fail to see any urgency.

Lara

---

**From:** Polk, Jr., C. Edward [mailto:EPolk@foley.com]
**Sent:** Wednesday, February 22, 2006 4:42 PM
**To:** Hirshfeld, Lara
**Cc:** Schneider, Lisa A.; Rein, Thomas D.; Cavan, Marc A.; Abrams, Hugh; Krosin, Kenneth E.; Kaminski, Michael D.; Agarwal, Pavan K.; Peterson, Liane M.
**Subject:** RE: Documents on BW's and Brinks Hofer's Privilege Log

Lara,

Please provide a response to our proposed briefing schedule, as it appears that the fraud-exception issue will certainly have to be brought to the Special Master's attention. You will still have plenty of time to establish a position on the other documents.

Ed

-----Original Message-----
**From:** Hirshfeld, Lara [mailto:lhirshfeld@sidley.com]
**Sent:** Wednesday, February 22, 2006 5:34 PM
**To:** Polk, Jr., C. Edward
**Cc:** Schneider, Lisa A.; Rein, Thomas D.; Cavan, Marc A.; Abrams, Hugh; Krosin, Kenneth E.; Kaminski, Michael D.; Agarwal, Pavan K.; Peterson, Liane M.
**Subject:** RE: Documents on BW's and Brinks Hofer's Privilege Log

Ed -

Your allegations, particularly related to the fraud exception of the attorney client privilege, are blatantly unfounded and unsupported. Nevertheless, as we are in the process of preparing our privilege log for the recently produced file histories, we will also assess the privilege log entries identified below. We will respond to you as quickly as possible, but do not anticipate being able to do so tomorrow.

Lara

---

**From:** Polk, Jr., C. Edward [mailto:EPolk@foley.com]
**Sent:** Wednesday, February 22, 2006 2:37 PM
**To:** Hirshfeld, Lara
**Cc:** Schneider, Lisa A.; Rein, Thomas D.; Cavan, Marc A.; Abrams, Hugh; Krosin, Kenneth E.; Kaminski, Michael D.; Agarwal, Pavan K.; Peterson, Liane M.
**Subject:** Documents on BW's and Brinks Hofer's Privilege Log

Lara,

In order to streamline any issues that may be brought to the Special Master, we'd like to address certain documents on BW's and Brinks Hofer's privilege log that we believe should be produced or, at least, produced in redacted form.

First, we are seeking documents on BW's and Brinks Hofer's privilege log relating to the prosecution of the '738 patent, including due to the fraud exception of the attorney client privilege. We know that you will disagree, but please let us know by tomorrow morning if there is any need to further discuss this issue.

Second, we believe that the following entries on your privilege log are either not privileged or should be produced in redacted form. These entries are:

27-29, 34, 35, 38, 40, 137, 139, 401, 440, 519, 530, 532-33, 588-90, 594-96, 634-44, 646, 601, 607, 611-12, 615, 639-46, 651, 653, 656, 690, 744, 769, 771-72, 784, 788, 799, 809, 841-843, 850, 853, 943-44, 948, 964-65, 976-77, 993-94, 1000-07, 1012-1025, 1035, 1037, 1039-40, 1042, 1051, 1053, 1055, 1064-73, 1079, 1084, 1089, 1096, 1104, 1111, 1127, 1140-42, 1149, 1157, 1162-64, 1167-68, 1185, 1187,-88, 1193-93.1, 1207, 1210-11, 1215, 1218, 1220, 1224-25, 1227, 1233, 1237, 1242-43, 1253, 1257-58, 1262-63, 1266, 1268, 1285, 1288, 1300, 1303, 1305, and 1310.

Please let us know as soon as possible if any of these documents were inadvertently put on BW's privilege log or should have been produced in redacted form. We will then consider moving to compel production of some or all of these documents.

To the extent that any of the foregoing issues need to be addressed in front of the Special Master, we suggest the following briefing schedule:

Hitachi's motion to compel would be due March 6
Borg Warner's response would be due March 13
Hitachi's reply would be due March 17th

Your prompt response is greatly appreciated.

C. Edward Polk, Jr.
Foley & Lardner LLP
Washington Harbour
3000K Street, NW, Suite 500
Washington, DC 20007
202-295-4634
epolk@foley.com

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to,

or receipt by, any unauthorized persons. If you have received this
message in error, please (i) do not read it, (ii) reply to the sender
that you received the message in error, and (iii) erase or destroy
the message. Legal advice contained in the preceding message is
solely for the benefit of the Foley & Lardner LLP client(s)
represented by the Firm in the particular matter that is the subject
of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of
written advice include a disclaimer. To the extent the preceding
message contains advice relating to a Federal tax issue, unless
expressly stated otherwise the advice is not intended or written to
be used, and it cannot be used by the recipient or any other
taxpayer, for the purpose of avoiding Federal tax penalties, and was
not written to support the promotion or marketing of any
transaction or matter discussed herein.

Sidley Austin LLP mail server made the following annotations on 02/22/06,
--------------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulati
that, unless expressly stated otherwise, any U.S. federal tax advice conta
communication, including attachments, was not intended or written to be us
used, by any taxpayer for the purpose of avoiding any penalties that may b
taxpayer by the Internal Revenue Service. In addition, if any such tax ad
to by other parties in promoting, marketing or recommending any partnershi
investment plan or arrangement, then (i) the advice should be construed as
with the promotion or marketing by others of the transaction(s) or matter(
communication and (ii) the taxpayer should seek advice based on the taxpay
circumstances from an independent tax advisor.

*******************************************************************
This e-mail is sent by a law firm and may contain information that is priv
If you are not the intended recipient, please delete the e-mail and any at
immediately.

*******************************************************************

The preceding email message may be confidential or protected by the
attorney-client privilege. It is not intended for transmission to, or receipt by,
any unauthorized persons. If you have received this message in error, please
(i) do not read it, (ii) reply to the sender that you received the message in
error, and (iii) erase or destroy the message. Legal advice contained in the
preceding message is solely for the benefit of the Foley & Lardner LLP client
(s) represented by the Firm in the particular matter that is the subject of this
message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written
advice include a disclaimer. To the extent the preceding message contains

advice relating to a Federal tax issue, unless expressly stated otherwise the
advice is not intended or written to be used, and it cannot be used by the
recipient or any other taxpayer, for the purpose of avoiding Federal tax
penalties, and was not written to support the promotion or marketing of any
transaction or matter discussed herein.

Sidley Austin LLP mail server made the following annotations on 02/22/06, 17:19:54:
--------------------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we in
that, unless expressly stated otherwise, any U.S. federal tax advice contained in th
communication, including attachments, was not intended or written to be used, and ca
used, by any taxpayer for the purpose of avoiding any penalties that may be imposed
taxpayer by the Internal Revenue Service.  In addition, if any such tax advice is us
to by other parties in promoting, marketing or recommending any partnership or other
investment plan or arrangement, then (i) the advice should be construed as written i
with the promotion or marketing by others of the transaction(s) or matter(s) address
communication and (ii) the taxpayer should seek advice based on the taxpayer's parti
circumstances from an independent tax advisor.

*************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or
If you are not the intended recipient, please delete the e-mail and any attachments
immediately.

*************************************************************************

# EXHIBIT 5



**FOLEY & LARDNER LLP**
**ATTORNEYS AT LAW**

WASHINGTON HARBOUR
3000 K STREET, N.W., SUITE 500
WASHINGTON, D.C. 20007-5143
202.672.5300 TEL
202.672.5399 FAX
www.foley.com

WRITER'S DIRECT LINE
202.295.4634
epolk@foley.com EMAIL

CLIENT/MATTER NUMBER
069765-0128

February 7, 2006

<span style="text-decoration: underline;">VIA FACSIMILE</span>

Lara Hirshfeld
Sidley Austin Brown & Wood LLP
One South Dearborn Street
Chicago, Illinois 60603

      Re:    *Hitachi, Ltd., et al. v. BorgWarner Inc.*, No. 05-048-SLR

Dear Lara:

      We note the following deficiencies in BorgWarner's document production. Each deficiency is explained with reference to recent testimony from BorgWarner's witnesses.

**Financial Documents (Stephen Hughes)**

      We understand from your letter dated February 3, 2006 to the Special Master, that you are in the process of sending additional financial documents. We provide the following guidance for the documents that should be produced. As you are aware, Mr. Hughes testified about a number of VCT related financial documents that are sent from reporting units in BorgWarner (*e.g.*, Ithaca, Cortland, Sallisaw, Dixon and the Mexico facility) to its corporate headquarters in Detroit, Michigan on a monthly basis. These documents include profit and loss statements, balance sheets, cash flow statements, head count statements, economic value reports and inventory turns. Please produce each such report that has been created by these units since January 1999. For each profit and loss statement, please produce the underlying data relating to sales, cost of sales, selling expenses, administrative expenses, R&D costs and net profit.

      **REDACTED**

      Mr. Hughes also testified REDACTED regarding long range business plans maintained at the Ithaca, Cortland, Sallisaw, Dixon and Mexico facilities. Please produce these documents

---

    [1]    We note the recent production referenced in your letter to the Special Master. However, the few financial documents sent on January 31st **REDACTED**      Please

provide an explanation for these documents.

BOSTON     JACKSONVILLE     NEW YORK     SAN DIEGO/DEL MAR     TAMPA
BRUSSELS     LOS ANGELES     ORLANDO     SAN FRANCISCO     TOKYO
CHICAGO     MADISON     SACRAMENTO     SILICON VALLEY     WASHINGTON, D.C.
DETROIT     MILWAUKEE     SAN DIEGO     TALLAHASSEE     WEST PALM BEACH

WASH_1537750.1

# ∎FOLEY

Lara Hirshfeld
February 7, 2006
Page 2

since January 1999, including information provided from BorgWarner's sales department in
Auburn Hills, Michigan that was used by each facility to create their long range business plans.

Mr. Hughes also testified            REDACTED
            Please produce all customer lists maintained by BorgWarner from 1988 to the
present, as these documents are relevant for both prior art and damages purposes.

Mr. Hughes  testified            REDACTED

            Please produce all documents relating to this contractual
provision, including internal meeting minutes, draft contracts and correspondence/meetings with
General Motors regarding the price reduction. Similarly, certain documents relating to the HV
V6 indicate that the VCT system used with this program was originally intended to be, or at least
suggested to be,        REDACTED            Please produce all documents
relating to the decision to use a oil-assist VCT system with the HV V6.   REDACTED

Regarding Hughes Exhibit 3            REDACTED

            Also provide the data underlying the projections in Exhibit 3,
which were "derived with input from our sales department, from external marketing services and
also from projections from the customer." Please provide all relevant documents from the "sales
department", "external marketing services" and "projections from the customer" for the past six
years, including the information specifically relied upon by Mr. Hughes to create Exhibit 3.
Based upon Mr. Hughes testimony, this information should include

            REDACTED

            Regarding the external marketing services referenced in Mr.
Hughes' testimony, please produce all projections from companies such as J.D. Powers that
show "automotive industry trends, production figures and sales figures" for the past six years.
Mr. Hughes testified that BorgWarner uses these projections "as a check and balance between
what we think, what the customer tells us, and what the external market will accept."[2]

      We have reviewed BorgWarner's most recent production dated February 2, 2006 and
identified what appears to be information from      **REDACTED**
            Please confirm this is the type of information referenced by Mr.
Hughes. We cannot, however, locate any other documents in BorgWarner's production relating
to external marketing studies. Please produce all projections from external marketing services
for the past 6 years in your next production.

---

[2]      To the extend not specifically requested in this letter, please produce all relevant
information on the AS 400 computer system (*e.g.*, the J.D. Edwards database) located at the
Ithaca facility, and other similar financial databases used at the Cortland, Sallisaw, Dixon and
Mexico facilities.

# ▪FOLEY

Lara Hirshfeld
February 7, 2006
Page 3

Mr. Hughes also testified that BorgWarner's VCT systems are all sold
REDACTED                                              Please
provide all documents relating to the policies, practices and negotiation strategies that
BorgWarner follows in setting VCT prices for its customers. As you are certainly aware, this is
relevant to BorgWarner's claims for a reasonable royalty in this case.

Mr. Hughes testified ·
REDACTED

Please produce
all technical and financial documentation relating to any VCT business (actual, expected or lost
VCT business) for these companies, including R&D, prototypes, pricing, and any reasons for a
loss of business or opportunities to do business with these companies. Although we have
identified some quote-related documents for these systems, we find very little technical
documentation. Please produce all VCT related documents for these companies.

In addition, please produce all documents relating to BorgWarner's sales of solenoids to
ICD, including but not limited to sales relating to the GM HV V6 program. If ICD also sells
BorgWarner solenoids to other customers besides GM, please provide this information as well.
These documents should include cost information for sales from BorgWarner to ICD, and cost
information for sales of solenoids from ICD to GM. To the extent that ICD sells to other
customers, please include documentation (including cost information) regarding these
transactions as well. We also expect documentation showing why BorgWarner does not sell its
solenoids directly to GM and what roles ICD plays in the R&D, sales, and/or marketing of
BorgWarner's VCT systems. Please also produce all contracts, agreements, other information
regarding the same between BorgWarner and ICD.

## Presentations and Prototypes (Stanley Dembosky)

Mr. Dembosky testified (*Id.* at 23-24) about several articles written by BorgWarner
employees regarding VCT. Please confirm that all articles by BorgWarner, including the vane-
type VCT system, have been produced. We have seen documents, *e.g.* on the SAE website, but
have few, if any, such documents in BorgWarner's production.

Mr. Dembosky also testified that
REDACTED

BorgWarner has produced
additional RFQ in recent productions. Please confirm that BorgWarner has produced all RFQ's
relating to VCT sales from 1988 the present. These documents are crucial to Hitachi's prior art
case, and to rebutting BorgWarner's claims of lost profits.

Mr. Dembosky also testified (Tr. at 18-23) that BorgWarner has made various
presentations on its current VCT system. We note your recent productions on this topic (*e.g.*,
(BW 0103765-83). Please confirm that all VCT presentations have now been produced.

# ∎FOLEY

Lara Hirshfeld
February 7, 2006
Page 4

## Greg Dziegielewski:

We requested (Tr. at 29) confirmation on the ownership interest of BorgWarner Automotive Transmission and Engine Components in the '738 patent. Please identify the appropriate documents in BorgWarner's production, and verify the corporate ownership of this entity in the '738 patent beginning in 1993. The same is true for the '935 patent. We also requested (Tr. at 33-35) all documents regarding any agreements between Morse TEC and BorgWarner Inc. If BorgWarner is going to introduce any evidence on this point, we have a right to know about it now. Please produce this information or identify its location in BorgWarner's document production.

Mr. Dziegielewski (Tr. at 119) voluntarily referenced and testified about the contents of seminars apparently provided by BorgWarner's counsel to its engineers. Please promptly produce all documents relating to such seminars. BorgWarner also elicited testimony from Mr. Dziegielewski concerning his participation in the interference with Jean Melchior before the USPTO, Tr. at 144. He spoke openly (Tr. at 145-46) about the reports that were issued to management, and represented the substance of their content. Accordingly, BorgWarner has willingly waived privilege and attorney work product relating to these documents. Please promptly produce all internal BorgWarner reports and notes involving Mr. Dziegielewski as to the interference, and other documents showing any evaluation of the interference in the U.S. with Jean Melchior.

### Automotive Parts Licenses

We have received several BorgWarner automotive part licenses. Has BorgWarner completed its production of automotive part licenses? If not, please confirm when BorgWarner will complete its production.

## IMECHE

As requested in our letter dated January 31, 2006, please produce all documents from Gohan Gobelt relating to IMECHE. Given that Mr. Gobelt was the primary person responsible for product sales in England during the relevant time period, we expect that Mr. Gobelt may have relevant documentation relating to this case. Similarly, Roger Butterfield testified that three other persons may have attended, or otherwise been involved with, the IMECHE seminar, presentation and/or article. These persons are Phil Mott, Paul Dusinberre and, as mentioned, Johann (or Gohan) Gobelt. Please confirm that you have, or currently are, searching for relevant documents (including emails, travel reservations (air and hotel) and phone records) relating to these individuals.

We note your correspondence indicating that Mr. Gobelt's documents may be hard to locate because he has not worked for BorgWarner for nearly a decade. We do not understand this concern as BorgWarner has produced numerous documents from persons who left BorgWarner more that a decade ago, e.g., Jim Ward (BW 0051445) and G. H. Studtmann (BW 007867). Please explain why Mr. Gobelt's documents will be more difficult to obtain than other

# ▪FOLEY

Lara Hirshfeld
February 7, 2006
Page 5

persons involved in this case. Please let us know if there are any electronic databases and/or servers that may contain this information so that we can consult an electronic document recovery specialist on how best to retrieve this information.

## Responses to Discovery Requests

In its response to several requests in Hitachi's Third Request for the Production of Documents and Things (e.g., Request Nos. 92-104), BorgWarner indicates that it will only produce documents that are "reasonably relevant to the on-going litigation." BorgWarner makes similar objections to requests in Hitachi's Fourth Request for the Production of Documents and Things (e.g., Request Nos. 127-144). Given the BorgWarner and Hitachi will most definitely disagree of what is "reasonably relevant" to this litigation, please identify the documents or class of documents that are currently being withheld by BorgWarner.

In its response to Hitachi's First Set of Requests for Admission, BorgWarner did not supply a response to request numbers 23(b) through 35 because Hitachi has alleged exceeded the limit of 35. As BorgWarner has included multiple subparts in many of its discovery requests, see, e.g., BorgWarner's Interrogatory Requests Nos. 1-4, 5, 10-14 and 17-21, this objection is unfounded. Please provide the requested discovery responses.

BorgWarner's absolute refusal to respond to any of the requests for authentication in Hitachi's Second Set of Requests for Admission based on the number of requests is also completely unfounded. Apparently BorgWarner felt it proper to propound 44 requests for authentication. There is no reason why BorgWarner could not have provided responses to at least a similar number of Hitachi's requests for authentication.

## Recently Produced Documents

As noted, we've had an opportunity to review documents produced on February 3, 2006. We note that one such document                REDACTED
        However, we cannot locate documents relating to that program between BorgWarner
        Please produce all documents relating to any VCT projects between BorgWarner and
REDACTED                        As noted in prior letters, we understand that REDACTED may have been involved in early VCT systems involving BorgWarner and/or Ford (including the program), in addition to the more recent work referenced in        REDACTED

Recent documents also show that Stan Quinn has been involved with development of BorgWarner's VCT system while employed with Ricardo. Please produce all documents reflecting Mr. Quinn's VCT related activities for BorgWarner during his employment with Ricardo.

# FOLEY

Lara Hirshfeld
February 7, 2006
Page 6

## Prosecution Histories

We cannot locate the prosecution history, and related documents, for U.S. Patent No. 5,657,725 in BorgWarner's earlier or later productions. Please produce all documents relating to this patent, which is covered at least by Hitachi's document request numbers 1-3, 26, 33, 35.

Please let me know if you have any questions and/or need further clarification.

Best regards,

C. Edward Polk, Jr.