# EXHIBIT 6

# ▪FOLEY

**FOLEY & LARDNER LLP**
**ATTORNEYS AT LAW**

**WASHINGTON HARBOUR**
**3000 K STREET, N.W., SUITE 500**
**WASHINGTON, D.C. 20007-5143**
**202.672.5300 TEL**
**202.672.5399 FAX**
**www.foley.com**

WRITER'S DIRECT LINE
202.295.4634
apolk@foley.com EMAIL

CLIENT/MATTER NUMBER
069765-0128

February 14, 2006

Via Facsimile

Lara Hirshfeld
Sidley Austin Brown & Wood LLP
One South Dearborn Street
Chicago, Illinois 60603

     Re:    *Hitachi, Ltd., et al. v. BorgWarner Inc.*, No. 05-048-SLR

Dear Lara:

     We appreciate your revised reply to Interrogatory No. 22, but we request clarification for the following topics therein.

REDACTED

     While you identified the type of electromechanical actuators used with the    REDACTED deliveries, you did not identify the number of stepper motor prototype VCT systems that BorgWarner actually delivered to Ford or the dates on which those deliveries were made to Ford. BorgWarner's documents also are unclear on this point. For example,

  REDACTED

                Because Mr. Butterfield was not able to resolve this discrepancy, Butterfield Tr. at 176, please confirm the number of stepper motor VCT systems that were sold and/or delivered to Ford prior to May 2, 1993.

     Also, please confirm the configuration and operation of the spool valve (including the spool) that was used in the stepper-motor VCT systems delivered to Ford.

## REDACTED

     If you are unable to confirm whether these exhibits accurately describe the stepper-motor VCT systems delivered to Ford, please describe the alternate spool valve configurations that may have been delivered to Ford.

| BOSTON | JACKSONVILLE | NEW YORK | SAN DIEGO/DEL MAR | TAMPA |
| BRUSSELS | LOS ANGELES | ORLANDO | SAN FRANCISCO | TOKYO |
| CHICAGO | MADISON | SACRAMENTO | SILICON VALLEY | WASHINGTON, D.C. |
| DETROIT | MILWAUKEE | SAN DIEGO | TALLAHASSEE | WEST PALM BEACH |

WASH_1540918.1

# ▪FOLEY

Lara Hirshfeld
February 14, 2006
Page 2

REDACTED

## PROTOTYPE COSTS

We understand your responses to Interrogatory No. 22 that "any payment received for prototypes was designed to recover costs" to mean that BorgWarner did not seek other costs, such as engineering or man-hour costs, from Ford or any other VCT customers. In line with this response, Roger Butterfield testified as follows:

REDACTED

These newly produced documents should have been produced months ago, and Hitachi has certainly been prejudiced by their late disclosure. Accordingly, Hitachi is requesting

# ▪FOLEY

Lara Hirshfeld
February 14, 2006
Page 3

additional time with Mr. Butterfield (or another knowledgeable designee) to provide 30(b)(6)
deposition testimony for these documents. Hitachi is also entitled to any further documentation
on Borg Warner's prototype cost recovery from Ford and other customers (or potential
customers). For example, Hitachi is entitled to testimony and additional documentation showing

REDACTED

As "action items": Please provide a convenient time to continue Hitachi's Fourth
30(b)(6) Deposition of Borg Warner. Also, please produce any additional documents being
withheld at least one week prior to this deposition. In addition, I have not yet received a
response to my February 7th deficiency letter. Please provide a prompt response to this letter,
including your present search efforts for documents from Mr. Gobelt. As mentioned, Hitachi
may want to hire a document recovery specialist to search any Borg Warner servers and/or
databases that could contain this information.

We would like a prompt response from Borg Warner to determine if Special Master
intervention is necessary on any topics mentioned in this letter or the February 7th deficiency
letter.

Sincerely,

C. Edward Polk, Jr.

# EXHIBIT 7

## Kaminski, Michael D.

| | |
|---|---|
| **From:** | Hirshfeld, Lara [lhirshfeld@sidley.com] |
| **Sent:** | Wednesday, February 22, 2006 2:18 PM |
| **To:** | Polk, Jr., C. Edward |
| **Cc:** | Krosin, Kenneth E.; Peterson, Liane M.; Kaminski, Michael D.; Agarwal, Pavan K.; Schneider, Lisa A.; Rein, Thomas D.; Cavan, Marc A.; Abrams, Hugh |

Subject: RE:

Ed -

Your new request for additional documentation related to capacity is inappropriate given that discovery is set to close on Friday.  Further, at no point in your email do you point to a single document request that would cover such documentation.  In our review of your requests served to date, there is nothing that encompasses this new document request.  Please clarify.

Lara

> **From:** Polk, Jr., C. Edward [mailto:EPolk@foley.com]
> **Sent:** Wednesday, February 22, 2006 9:59 AM
> **To:** Hirshfeld, Lara
> **Subject:**
>
> Lara,
>
> In one of your letters of February 15th, you indicated that BW has already produced "all profit and loss statements, balance sheets, cash flow statements, head count statements, economic value reports and inventory turns from Ithaca, Cortland, Sallisaw, Dixon and Mexico" for the period from 2002-05.  And, as you are aware, we are requesting this same information from 1999 to 2002 by our letter to the Special Master.  Regarding this overall issue, we also have been unable to locate documents detailing BW's capacity to make VCT sales during the entire damages period.  We understand that BW might seek lost profit damages for the entire damages period, not just when it began selling VCTs around the 2002 time frame.  Therefore, we need to fully understand BW's position relating to its capacity to make VCT sales in 1999-2005.  In addition to the documents noted above, this information would include documents relating to BW's capitol spending and its relationships with VCT component suppliers during this time.  Please let us know the bates numbers where such documents can be found.
>
> C. Edward Polk, Jr.
> Foley & Lardner LLP
> Washington Harbour
> 3000K Street, NW, Suite 500
> Washington, DC 20007
> 202-295-4634
> epolk@foley.com

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in

error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client (s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

Sidley Austin LLP mail server made the following annotations on 02/22/06, 13:16:05:
--------------------------------------------------------------------------------

IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we in that, unless expressly stated otherwise, any U.S. federal tax advice contained in th communication, including attachments, was not intended or written to be used, and ca used, by any taxpayer for the purpose of avoiding any penalties that may be imposed taxpayer by the Internal Revenue Service.  In addition, if any such tax advice is us to by other parties in promoting, marketing or recommending any partnership or other investment plan or arrangement, then (i) the advice should be construed as written i with the promotion or marketing by others of the transaction(s) or matter(s) address communication and (ii) the taxpayer should seek advice based on the taxpayer's parti circumstances from an independent tax advisor.

********************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or If you are not the intended recipient, please delete the e-mail and any attachments immediately.

********************************************************************************

EXHIBIT 8

# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW
222 DELAWARE AVENUE
P. O. BOX 1150
WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888
FACSIMILE
302-654-2067

January 20, 2006

Collins J. Seitz, Jr., Esquire
Connolly Bove, Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, Delaware 19801

VIA HAND DELIVERY AND
VIA ELECTRONIC MAIL

Re:    *Hitachi Ltd. v. BorgWarner, Inc.*
C.A. No. 05-048-SLR

Dear Special Master Seitz:

Hitachi respectfully requests your immediate assistance regarding BorgWarner's failure to produce relevant R&D and sales documents after 1995, lack of response to Hitachi's Interrogatory No. 22, deficient production of financial documents, and deficient production of relevant VCT patent applications and prosecution histories. Each deficiency is addressed below.

1. BorgWarner has provided very little documentation regarding the R&D and sales (or attempted sales) of its VCT products after the 1995 time frame, and yet wants to introduce testimony regarding lost profits damages at trial. To rebut such testimony, Hitachi needs to see if BorgWarner actually had the ability (*i.e.*, working products) to make VCT sales during the relevant time period. And, because it generally takes several years to actually design, develop and prototype a VCT system, Hitachi will need the full picture of BorgWarner's R&D and sales efforts for at least the last 10 years. Although BorgWarner has produced documentation for the period before 1995
**REDACTED**                              , it has not produced the same scope and level of documentation after this time period. More specifically, for the period after 1995, BorgWarner produced very little internal and external meeting minutes, customer correspondence, design drawings, communications with suppliers, or product cancellations as compared with the period before 1995. BorgWarner's documents after 1995 show brief glimpses of development work with at least

**REDACTED**

---

[1]    BorgWarner is currently selling a VCT product (HVV6) to General Motors that it contends is covered by the asserted '738 patent. Although BorgWarner has produced some documentation regarding the HVV6, in light of the extensive development needed for such components, Hitachi does not believe that BorgWarner has produced all relevant documentation for this product or others under development after 1995.

Collins J. Seitz, Jr., Esquire
January 20, 2006
Page 2

    2. BorgWarner should be required to produce documents showing

BorgWarner's documents before 1995 show    **REDACTED**

                      Given that
BorgWarner will claim its lost sales were due to infringement, Hitachi is entitled to learn if

    **REDACTED**

                    This would include correspondence,
etc. that BorgWarner would have made with such automakers (and any other automaker for which
BorgWarner might claim lost VCT sales) after 1995. It has taken BorgWarner almost two decades
to produced its first commercial VCT product and Hitachi is entitled to learn why. As evidenced by
recent conversations, BorgWarner's counsel is fully aware of the deficiencies in its post-1995
document production. Nonetheless, counsel inexplicably has failed to remedy these deficiencies in a
timely manner. Accordingly, Hitachi seeks assistance from the Special Master to obtain meaningful
document production in this area.

    3. Hitachi submitted an interrogatory request (Request No. 22) seeking the structure
and operation of BorgWarner's prototype VCT systems that were sold to third parties more that a
year before the filing date of the asserted '738 patent. Incredibly, BorgWarner's counsel asserted
that they could not understand the interrogatory and provided no information whatsoever.
BorgWarner did not point to a single document where the requested information could be found.
Hitachi's interrogatory specifically identified the documents in BorgWarner's production that
showed or made reference to the subject prototypes. Answering this interrogatory would have been
no more burdensome for BorgWarner than it was for Hitachi to answer BorgWarner's Interrogatory
No. 1, which related to the structure and operation of the accused products in this case. Hitachi is
entitled to information relating to the validity of the asserted '738 patent. Accordingly, Hitachi
seeks assistance from the Special Master to obtain an answer to its Interrogatory No. 22.

    4. In its January 18, 2006, letter to the Special Master, BorgWarner raises many
issues regarding Hitachi's production of financial information. BorgWarner's counsel raises these
issues with the most unclean of hands. For example, during recent testimony (*i.e.*, January 18th)
from one of BorgWarner's financial witnesses, Steve Hughes, Hitachi learned that BorgWarner's
VCT business units (*e.g.*, Ithaca, Courtland, Sallisaw, Dixon and Mexico) have generated for a
number of years profit and loss statements, balance sheets, cash flow statements, headcount
statements, economic value reports and inventory turns on a monthly basis. These reports, which
are sent to BorgWarner's corporate headquarters, have not been produced to Hitachi despite
numerous requests for documents covering these topics. Hitachi also learned that BorgWarner's
sales department in Auburn Hills, Michigan assists these VCT business units to produce sales
projections, marketing surveys (*e.g.*, JD Power) and customer projections on a regular basis. Again,
Hitachi has not received these documents. Apparently, BorgWarner has a computer system called
AS-400 at its Ithaca location that keeps all financial information for that location. Mr. Hughes
indicated that it would be quite easy to print out financial reports using the AS-400 system covering
varying lengths of times. Other business units may have similar databases. In either case, Hitachi
has not received meaningful documentation commensurate with the level of information contained in
the AS-400 and similar financial databases maintained by BorgWarner. Nor has BorgWarner
produced its annual reports. Hitachi respectfully requests the Special Master's assistance in

Collins J. Seitz, Jr., Esquire
January 20, 2006
Page 3

obtaining meaningful production of BorgWarner's financial documents. (Hitachi notes that the ease of searching and printing these reports stands in clear contrast to the Hitachi computer database that includes some 15000 parts and is not readily searchable, as fully explained in Hitachi's other letter of today.)

     5. BorgWarner has not produced all patent applications and associated file histories, whether issued, pending or abandoned, that relate to the subject matter disclosed in the '738 patent. At a recent meet and confer, Hitachi narrowed its request to those applications and associated prosecution histories disclosing a vane or piston type VCT system, and those applications that claim priority to or from the asserted '738 patent, including the patents incorporated by reference in the specification and related applications to such patents disclosed in the specification. Further, BorgWarner has produced few documents from the file histories for non-U.S. counterpart applications to the '738 patent and the patents cited in the '738 patent. All such file histories are highly relevant to numerous legal issues concerning the '738 patent, including validity, infringement, and inequitable conduct. Indeed, for abandoned cases, the applications and file histories are not available to Hitachi through any other sources.

     6. BorgWarner should update its response to Hitachi's interrogatory that requests identification of all known prior art to include all prior art cited in the applications identified in the preceding paragraph. Hitachi seeks the Special Master's assistance to ensure that BorgWarner fully produces this information.

     7. On December 2, 2005, Hitachi took the deposition of Stanley Quinn, one of the inventors of the '738 patent. BorgWarner has made this inventor available for a second day on February 1, 2006, after the close of discovery. Based on the testimony to date, Hitachi may need to file a motion to compel. Hitachi requests a ruling that it can file a motion to compel up to one week following his deposition.

     Hitachi appreciates any assistance that the Special Master can provide in obtaining this highly relevant information from BorgWarner.

               Respectfully,

               Tiffany Geyer Lydon

TGL/dmf
165871.1

cc:   Richard K. Herrmann, Esquire (via electronic mail)
      Hugh A. Abrams, Esquire (via electronic mail)
      Kenneth E. Krosin, Esquire (via electronic mail)

# EXHIBIT 9

# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

222 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

November 30, 2005

Collins J. Seitz, Jr., Esquire
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
PO Box 2207
Wilmington, Delaware 19899-2207

BY HAND DELIVERY AND
ELECTRONIC MAIL

Re:   *Hitachi, Ltd. v. BorgWarner Inc., et al.,*
      C.A. No. 05-48-SLR

Dear Special Master Seitz:

This letter provides an explanation of the unresolved issues that Hitachi currently has with BorgWarner ("BW") -- in connection with which we request your assistance as the Special Discovery Master appointed by Chief Judge Robinson in the above-referenced case.

1. Deposition Scheduling

BW repeatedly has been uncooperative and unreasonable in scheduling deposition dates for Hitachi's witnesses. As expressly set forth in the Scheduling Order, it was agreed that BW would conduct depositions of those witnesses in Japan, to the extent acceptable arrangements could be made. BW initially proposed that such depositions occur in a hotel room or at a law firm in Japan, contrary to Japanese law requiring that depositions occur at the U.S. Embassy or Osaka Consulate. Hitachi could not agree to this proposal because it violated Japanese law. Accordingly, BW made arrangements in June to hold depositions at the U.S. Consulate in Osaka during the week of November 28-December 2.

At the November 3 hearing, Judge Robinson required BW to identify the Hitachi witnesses to be deposed in Osaka. Following the hearing, however, BW repeatedly changed its mind on which of these witnesses it intended to depose, modified the order in which the depositions were to be taken, and changed the expected time for each deposition. Needless to say, this conduct caused considerable confusion and consternation at Hitachi, as the potential deponents were constantly required to rearrange their schedules. Only days before the depositions were to occur, BW notified Hitachi that it had been unable to arrange for a court reporter for December 1 and 2, even though it had since June to make acceptable arrangements. This resulted in unnecessary costs to Hitachi in sending attorneys to Japan to prepare witnesses and defend the depositions. The situation remained

Collins J. Seitz, Jr., Esquire
November 30, 2005
Page 2

unresolved until the morning of November 29, when BW finally indicated that the depositions would not go forward.

On November 30, BW reserved the U.S. Consulate in Osaka for December 12-16, 19-22, December 27-30 and January 3-6. Given the time to obtain required visas, Hitachi requests that all remaining Hitachi depositions begin on December 19 and continue through January 6. This will allow BW twelve full days to complete depositions of all Hitachi witnesses located in Japan prior to the deadline for completion of fact discovery. Hitachi also requests that BW provide Hitachi with a list identifying the individuals it wants to depose and the expected length of the depositions. Hitachi will then set a schedule for the depositions, based on witness availability, and requests that this schedule not be changed, except for exceptional circumstances. Hitachi requests an order requiring BW to make appropriate visa arrangements for court reporters, interpreters, and/or videographers to avoid any last minute cancellations (such as occurred with the Osaka depositions this week).

Meanwhile, BW continues to frustrate Hitachi's efforts to schedule the depositions Hitachi wishes to take. For example, it has repeatedly refused to double-track depositions, even though the fact discovery period will end on January 13, 2006. As another example, BW is refusing to voluntarily produce Mr. Beels (a BW employee in Germany) for deposition, even though Hitachi understands that unlike Japanese law, German law permits depositions.

2. Damages

BW has not yet identified the theories it intends to rely on for damages (e.g., reasonable royalty, lost profits, or other theories). Hitachi asked for this information by interrogatory on May 25 and BW initially responded that the interrogatory was premature.

In its first supplemental response, BW stated only that it intended to claim damages in accordance with 35 U.S.C. §§ 284 and 285 and that it had not yet fully determined those damages because they "are based, at least in part, on the quantity of infringing products by Hitachi, which information has not yet been disclosed by Hitachi to BW." Regardless of whether Hitachi has disclosed the quantity of products alleged to be infringing (which it since has), BW certainly should be able to state at this point in the case whether it intends to claim reasonable royalties or lost profits.

As of November 18 (the date on which the parties supplemented their interrogatory responses), BW still had not provided the requested information. If BW were to provide this information to Hitachi, the discovery process would be simplified and more streamlined, as Hitachi would have a better sense of what information will be required for its damages expert. With this information Hitachi also will be able to better prepare its witnesses for upcoming depositions.

3. Incomplete Document Production

On several occasions, Hitachi has written to BW and pointed out deficiencies in its document production. To date, Hitachi has not received any additional documents or a response for most of the categories of documents identified. Some of these documents would have been relevant to the Rule 30(b)(6) deposition Hitachi conducted on October 5, as well as to the depositions of BW

Collins J. Seitz, Jr., Esquire
November 30, 2005
Page 3

engineers held on October 15 and 16. In addition, Hitachi needs many of these documents in order to take complete depositions of several BW witnesses scheduled during the next few weeks.

The following is a list of the categories of documents for which Hitachi still awaits a response from BW:

a. Invention disclosure for the patent at issue, U.S. Patent No. 5,497,738 ("the '738 patent").

b. Board minutes relating to the '738 patent or VCT devices in general. BW has indicated that there are no board minutes related to the Hitachi VCT device, but has not indicated whether there are minutes related to the '738 patent or VCT devices in general. Hitachi also seeks documents regarding change in ownership of the '738 patent from BW Automotive Inc. to BW Inc.

c. Investigation, testing and/or analysis of devices (Hitachi and others) accused of infringing the '738 patent.

d. Communications or negotiations in an effort to license the '738 patent, including identification of prior art cited during such negotiations or communications.

e. During the October 5 Rule 30(b)(6) deposition of BW, Mr. Abrams indicated that BW produced all prior art it received during license negotiations. Hitachi asked BW to identify this prior art but has never received a response.

f. Documents related to BW's current device. BW responded that it produced all documents related to damages, but did not say whether it produced documents related to the current device.

4. Deficient Interrogatory Responses and Refusal to Supplement

**Response to Interrogatory Nos. 3, 7 and 9:** BW's response to Hitachi's interrogatory regarding conception and reduction to practice continues to be inadequate. BW has cited four isolated documents and continues to simply refer to Rule 33(d) for the remaining documents. Despite a thorough review, Hitachi has been unable to determine all the relevant documents related to conception and reduction to practice, much less associate them with any given person or circumstance. BW is plainly in a better position to decipher its own documents in this regard. In addition, BW has contended in other interrogatory responses (to Hitachi's invalidity contentions) that it has an "earlier invention" than certain § 102(e) references cited by Hitachi. At a minimum, BW has failed to describe its contentions in reasonable detail.

Proper identification of all conception and reduction to practice documents is essential to validity issues in this case. Hitachi has requested that BW provide the bates number of each document that BW intends to rely on for conception and reduction to practice, and particularly to documents that BW intends to rely on as part of its contention that it has an "earlier invention" date

Collins J. Seitz, Jr., Esquire
November 30, 2005
Page 4

than any § 102(e) reference that Hitachi has cited. This information would have been quite relevant to BW engineer depositions that occurred on October 15 and 16, and will be quite important to upcoming depositions of inventors and other persons scheduled for December 1, 7, and 8. Without this information, Hitachi may be precluded from completing these depositions in one sitting.

In addition, Hitachi has requested that BW supplement its responses to Interrogatory Nos. 7 and 9, which rely upon documents produced under Rule 33(d), and identify those documents by bates number. BW has refused to do this. These documents would have been relevant to and would have aided Hitachi in conducting at least the October 5 BW Rule 30(b)(6) deposition.

Response to Hitachi's Invalidity Contentions: Pursuant to the Scheduling Order, Hitachi provided BW with its detailed invalidity contentions under 35 U.S.C. §§ 102, 103 and 112. As part of its contentions, Hitachi provided detailed combinations of references under § 103 and identified motivation to combine such references. BW gave no substantive response to Hitachi's section 103 arguments. Hitachi believes that this violates the Scheduling Order, which states that the "adequacy of all such interrogatory answers shall be judged by the level of detail each party provides, i.e., the more detail a party provides, the more detail a party shall receive."

BW argues that Hitachi was somehow late in identifying certain prior art references. Hitachi, however, complied fully with the Scheduling Order by providing its invalidity contentions on the specified date. Hitachi even provided BW with an earlier disclosure of the prior art references that it was considering relying upon at that time, and has continued to promptly supplement its list of known prior art references. Moreover, the art about which BW complains was cited within its own documents.

Response to Interrogatory No. 13: Hitachi asked BW to identify all known prior art to the '738 patent, including prior art cited by third parties. Hitachi also asked BW to describe the circumstances under which BW became aware of this art. BW merely responded that it had produced all prior art in its file, and gave an isolated couple of examples of prior art. BW also referred to prior art identified by Hitachi. BW, however, has never identified which prior art was cited by third parties or any of the circumstances under which it became aware of the prior art.

5. Federal Rule of Evidence 408/Ongoing Negotiations

BW refuses to produce documents and provide deposition testimony relating to ongoing negotiations with other companies relating to the '738 patent. BW takes the position that such information is protected from discovery by Fed. R. Evid. 408 (which governs admissibility at trial) and that it is not relevant to any issues in the litigation. To the contrary, Hitachi believes that any discussion of prior art, non-infringement arguments, or unenforceability arguments related to the '738 patent during those negotiations are fully discoverable (even if not ultimately admissible at trial) and are highly relevant to the claims and defenses in this case.

Collins J. Seitz, Jr., Esquire
November 30, 2005
Page 5

### 6. Claim Construction

Pursuant to the Scheduling Order, BW initially only identified a limited set of claim terms to be construed by the Court. BW then provided a preliminary claim construction for essentially every word and phrase in the '738 patent. BW's strategy in this regard is in contravention of the Scheduling Order, which contemplates that the parties will ultimately agree on only a limited set of claim terms that require construction by the Court. By not limiting its preliminary claim constructions to only those claim terms that BW truly believes are in dispute, BW is jeopardizing the parties' ability to narrow the claim terms that will ultimately require construction by the Court.

We appreciate your consideration of these issues, and we look forward to speaking with you further about them at your earliest convenience.

Respectfully,

Steven J. Balick

SJB/dmf
164133.1

c   Richard K. Herrmann, Esquire (via electronic mail)
    Hugh A. Abrams, Esquire (via electronic mail)
    Kenneth E. Krosin, Esquire (via electronic mail)

# EXHIBIT 10

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

HITACHI, LTD., and UNISIA )
NORTH AMERICA, INC.,     )
                         )
        Plaintiffs, )
                    ) Civil Action No.
v.                  ) 1:05-cv-00048-SLR
                    )
BORGWARNER, INC., et al., )
                    )
        Defendants. )


        Special Master Teleconference taken
pursuant to notice at the law offices of Connolly, Bove,
Lodge & Hutz, 1007 North Orange Street, 9th Floor,
Wilmington, Delaware, beginning at 10:00 a.m. on Monday,
December 5, 2005, before Kathleen White Palmer,
Registered Merit Reporter and Notary Public.


BEFORE: SPECIAL MASTER C.J. SEITZ, ESQUIRE


APPEARANCES:

        STEVEN J. BALICK, ESQUIRE
        ASHBY & GEDDES
         222 Delaware Avenue
         Wilmington, Delaware  19899
              -and-
        KENNETH E. KROSIN, ESQUIRE
        PAVAN K. AGARWAL, ESQUIRE
        LIANE M. PETERSON, ESQUIRE
        FOLEY & LARDNER
         3000 K Street, N.W.
         Washington, D.C.   20007
         for the Plaintiff Hitachi Ltd.


--------------------------------------------------
        WILCOX & FETZER
1330 King Street - Wilmington, Delaware 19801
         (302) 655-0477

52

1          Hugh, if you wouldn't mind citing me that

2  interrogatory response, I would appreciate it.

3          MR. ABRAMS:  Yes.  It's the same prior art

4  that Hitachi has raised in this case.

5          MR. AGARWAL:  I want to know --

6          MR. ABRAMS:  Yes, we can tell them

7  specifically what the prior art is if they would like.

8          SPECIAL MASTER SEITZ:  Okay.  Why don't you

9  do that along with your submission.  Okay?  That will not

10  be included in your five pages, but please do that along

11  with the submission.

12          Okay.  Category E.

13          MR. KROSIN:  Category E is --

14          SPECIAL MASTER SEITZ:  Is that the same

15  thing?

16          MR. KROSIN:  That's really the same thing.

17          SPECIAL MASTER SEITZ:  What Mr. Agarwal

18  just asked for.  Okay.  So let's go to F.

19          MR. KROSIN:  F is documents related to

20  BorgWarner's current device.

21          Their response was that they produced

22  documents relating to damages, but they did not say

23  whether it produced documents relating to their current

24  CVT device.

53

1        SPECIAL MASTER SEITZ: I'm trying to

2   understand what the problem is here.

3         In other words, you're thinking that they

4   haven't given you all documents related to the accused

5   device? I'm sorry. I'm sorry. I got it backwards. I

6   apologize. The device that they're marketing?

7        MR. KROSIN: Correct.

8        SPECIAL MASTER SEITZ: Mr. Abrams?

9        MR. ABRAMS: We have. The device that

10  BorgWarner is marketing has only been on the market since

11  2003. There are very limited documents relating to it

12  and we've been gathering and producing those documents.

13  I believe we produced everything.

14        SPECIAL MASTER SEITZ: When you say

15  "gathering and producing," are you still gathering or

16  have you produced?

17        MR. ABRAMS: I believe we have produced. I

18  believe we have completed production of that.

19        SPECIAL MASTER SEITZ: Okay. This is what

20  we are going to do with these categories, A through F, in

21  his letter: Mr. Krosin, prepare a supplemental document

22  request. Okay? Which has this specific language in it

23  for A through F, and we are going to have the defendants

24  file an official response to it. Okay?

54

1        MR. KROSIN: Okay.

2        SPECIAL MASTER SEITZ: Then you'll have the

3    comfort you need that they have produced all the

4    documents, and we'll also have teed up any privileged

5    issues in case you want to act on them. Okay.

6        MR. KROSIN: Are they going to have the

7    standard 30 days under the federal rules, Special Master

8    Seitz, or will you limit that?

9        SPECIAL MASTER SEITZ: We don't have the

10    luxury of 30 days on this schedule. Mr. Abrams has

11    responded orally to most of these.

12        So, Mr. Abrams, how about the middle of

13    next week for someone to file an official response if

14    they get theirs, if they give this to you by Wednesday of

15    this week?

16        MR. ABRAMS: That's fine.

17        SPECIAL MASTER SEITZ: Okay. Thank you.

18    All right.

19        Let's go to interrogatory responses for 3,

20    7, and 9.

21        MR. KROSIN: Special Master Seitz, the

22    issue here or one of the principal issues here is trying

23    to get BorgWarner to respond to interrogatories

24    identifying information relating to conception and

# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HITACHI, LTD., and UNISIA          )
NORTH AMERICA, INC.,               )
                                   )
        Plaintiffs,                )
                                   )
    v.                             )
                                   )    C.A. No. 05-048-SLR
BORGWARNER, INC., and              )
BORGWARNER MORSE TECH, INC.,       )
                                   )
        Defendants.                )

## FIRST TELECONFERENCE DISCOVERY ORDER

The Special Master, having conducted a teleconference on December 5, 2005

following submissions by the parties setting forth outstanding discovery disputes, IT IS

HEREBY ORDERED as follows:

1.    At or before 5:00 p.m. EST on December 7, 2005, defendants shall file a new
      deposition notice pursuant to Fed. R. Civ. P. 30(b)(6) stating with specificity
      the matters on which examination is requested which were not completed at
      previous depositions.

2.    At or before 10:00 a.m. EST on December 9, 2005, plaintiffs shall submit to
      the Special Master and counsel a letter designating the individuals with
      knowledge who will testify in response to the categories listed in defendants'
      Rule 30(b)(6) deposition notice. The Rule 30(b)(6) deposition(s) will occur in
      Osaka, Japan.

3.    At or before 5:00 p.m. EST on December 7, 2005, defendants shall submit to
      the Special Master and counsel a letter identifying all individuals to be

1

deposed in Osaka, Japan, including the amount of time required for each individual.    Counsel are encouraged to schedule all depositions for the time period between December 12-16, 2005, and January 3-6, 2006.

4.    At or before 5:00 p.m. EST on December 7, 2005, plaintiffs shall submit to the Special Master and counsel a letter of no more than two pages addressing the relevance of Mr. Beels' testimony, and justifying the expense of taking his deposition in Europe. At or before 10:00 a.m. EST on December 9, 2005, defendants shall submit to the Special Master and counsel a letter of no more than two pages in response thereto.

5.    At or before 10:00 a.m. EST on December 9, 2005, the parties shall submit to the Special Master and counsel an agreed upon date for the deposition of Mr. Mott. Failing this, the Special Master will fix a date for the deposition.

6.    At or before 5:00 p.m. EST on December 9, 2005, defendants shall complete their investigation into the existence of relevant Board minutes and either produce those documents, confirm in writing their non-existence, or schedule them on a privilege log.

7.    At or before 5:00 p.m. EST on December 9, 2005, defendants shall submit to the Special Master and counsel a letter of no more than five pages addressing the discoverability of documents relating to ongoing negotiations with other companies concerning the '738 patent. At or before 5:00 p.m. EST on December 15, 2005, plaintiffs shall submit to the Special Master and counsel a letter of no more than five pages responding thereto.

8.  At or before 5:00 p.m. EST on December 7, 2005, plaintiffs shall serve supplemental document requests. At or before 5:00 p.m. EST on December 14, 2005, defendants shall file responses thereto.

9.  At or before 5:00 p.m. EST on December 16, 2005, the parties shall supplement their responses to all interrogatories answered with a Rule 33(d) designation. The supplementation shall include a reference to the document numbers or ranges relied upon to respond to each interrogatory.

10. Plaintiffs shall submit to the Special Master for review all discovery requests and responses relevant to invalidity contentions.

11. At or before 5:00 p.m. EST on December 16, 2005, defendants shall file a supplemental response to Interrogatory 13 identifying all prior art from third parties, with an identification of each third party from whom the prior art was obtained.

12. At or before 5:00 p.m. EST on December 7, 2005, plaintiffs shall notify the Special Master and Defendants whether Nissan's service manuals will be produced and which witnesses will testify as to the technical issues presented in the manuals.

13. At or before 5:00 p.m. EST on December 9, 2005, the parties shall produce all documents reflecting, referring or relating to the Collaboration Agreement.

Special Master

Dated: December 6, 2005

3

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of March, 2006, the attached **REDACTED PUBLIC VERSION OF PLAINTIFFS' PARTIAL OPPOSITION TO DEFENDANTS' MOTION TO AMEND SCHEDULING ORDER** was served upon the following counsel of record in the manner indicated:

Richard K. Herrmann, Esquire                                        HAND DELIVERY
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19801


Hugh A. Abrams, Esquire                                        VIA FEDERAL EXPRESS
Sidley Austin LLP
One South Dearborn Street
Chicago, IL  60603




                                        */s/ Tiffany G. Lydon*
                                        _____
                                        Tiffany G. Lydon