## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HITACHI, LTD., and UNISIA NORTH AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BORGWARNER INC., and BORGWARNER MORSE TEC INC., <br><br> Defendants. <br> ———————————————— <br> BORGWARNER INC., <br><br> Counterclaimant, <br><br> v. <br><br> HITACHI, LTD., and UNISIA NORTH AMERICA, INC., <br><br> Counterdefendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )    Civil Action No. 05-048-SLR <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## UNOPPOSED MOTION OF PLAINTIFFS HITACHI, LTD. AND UNISIA NORTH AMERICA, INC. TO SUBSTITUTE HITACHI AUTOMOTIVE PRODUCTS (USA), INC. IN PLACE OF PLAINTIFF UNISIA NORTH AMERICA, INC.

Pursuant to Fed. R. Civ. P. 25, Plaintiffs Hitachi, Limited and Unisia North America, Incorporated (UNAI) hereby respectfully move to substitute Hitachi Automotive Products (USA), Inc. (HAP) in place of UNAI. On April 1, 2006, UNAI was merged into Hitachi America , Limited (HAL). *See* Exhibits 1-3. On this same date, HAL transferred the assets and liabilities of UNAI to HAP. *Id.* Accordingly, HAP should be substituted as a party to this action in place of UNAI.

On April 26, 2006, counsel for the Plaintiffs wrote to counsel for BorgWarner

concerning this corporate change and requesting that BorgWarner stipulate to the

substitution. *See* Exhibit 4. On May 2, 2006, counsel for BorgWarner informed counsel

for the Plaintiffs that it is agreeable to the substitution. *See* Exhibit 5. Thus, this motion

is unopposed and respectfully should be granted.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Plaintiff Hitachi, Ltd. and*
*Unisia North America, Inc.*

*Of Counsel*:

William J. Robinson
Kenneth E. Krosin
Michael D. Kaminski
Pavan K. Agarwal
C. Edward Polk, Jr.
Liane M. Peterson
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5109
(202) 672-5300

Dated: May 4, 2006
169185.1

# EXHIBIT 1

# Delaware

PAGE 1

## The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"UNISIA NORTH AMERICA, INC.", A DELAWARE CORPORATION,

WITH AND INTO "HITACHI AMERICA, LTD." UNDER THE NAME OF "HITACHI AMERICA, LTD.", A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF NEW YORK, AS RECEIVED AND FILED IN THIS OFFICE THE TWENTY-EIGHTH DAY OF MARCH, A.D. 2006, AT 12:56 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF MERGER IS THE FIRST DAY OF APRIL, A.D. 2006.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.



*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

4133027  8100M

060292281

AUTHENTICATION: 4627523

DATE: 03-28-06

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 01:46 PM 03/28/2006*
*FILED 12:56 PM 03/28/2006*
*SRV 060292281 - 2229630 FILE*

## STATE OF DELAWARE
## CERTIFICATE OF MERGER OF
## UNISIA NORTH AMERICA, INC. INTO
## HITACHI AMERICA, LTD.

Pursuant to Title 8, Section 252 of the Delaware General Corporation Law, the undersigned corporation executed the following Certificate of Merger:

**FIRST:** The name of each constituent corporation is UNISIA NORTH AMERICA, INC., a Delaware corporation ("Unisia"), and HITACHI AMERICA, LTD., a New York corporation ("HAL"), which shall be the corporation surviving the merger (the "Surviving Corporation").

**SECOND:** The Agreement and Plan of Merger has been approved, adopted, certified, executed and acknowledged by each of the constituent corporations pursuant to Title 8, Section 252.

**THIRD:** The name of the Surviving Corporation is HITACHI AMERICA, LTD.

**FOURTH:** The Certificate of Incorporation of HAL immediately prior to the merger shall be the Certificate of Incorporation of the Surviving Corporation.

**FIFTH:** The merger is to become effective as of April 1, 2006.

**SIXTH:** The Agreement and Plan of Merger is on file at 50 Prospect Avenue, Tarrytown, NY 10591-4698, the place of business of the Surviving Corporation.

**SEVENTH:** A copy of the Agreement and Plan of Merger will be furnished by the Surviving Corporation on request, without cost, to any shareholder of the constituent corporations.

**EIGHTH:** The Surviving Corporation agrees that it may be served with process in the State of Delaware in any proceeding for enforcement of any obligation of the surviving corporation arising form this merger, including any suit or other proceeding to enforce the rights of any stockholders as determined in appraisal proceedings pursuant to the provisions of Section 262 of the Delaware General Corporation Law, and irrevocably appoints the Secretary of State of Delaware as its agent to accept services of process in any such suit or proceeding. The Secretary of State shall mail any such process to the surviving corporation at 50 Prospect Avenue, Tarrytown, Tarrytown, NY 10591-4698; Attention: General Counsel.

**IN WITNESS WHEREOF**, said Surviving Corporation has caused this certificate to be signed by an authorized officer, the 28th day of March, 2006.

**HITACHI AMERICA, LTD.**

By: _____

Masahide Tanigaki,
President

NYC354157v.4

# EXHIBIT 2

## TRANSFER AGREEMENT

**THIS TRANSFER AGREEMENT** (this "Agreement"), is made and entered into as of April 1, 2006, by and between HITACHI AMERICA, LTD., a New York corporation ("HAL"), and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., a Delaware corporation ("HAP").

## W I T N E S S E T H:

**WHEREAS**, HAL, a directly held, wholly-owned subsidiary of Hitachi Ltd., a corporation organized under the laws of Japan ("Hitachi"), markets and sells a variety of products;

**WHEREAS**, Unisia North America, Inc., a Delaware corporation and directly-held, wholly-owned subsidiary of Hitachi ("Unisia"), markets automotive components (the "Unisia Business");

**WHEREAS**, prior to the consummation of the transactions contemplated by this Agreement, Unisia will have merged with and into HAL, which shall be the surviving corporation;

**WHEREAS**, by virtue of such merger, HAL, as the surviving corporation, will hold all of the assets and liabilities held by Unisia immediately prior to such merger;

**WHEREAS**, HAP, a wholly-owned subsidiary of HAL, is engaged in the business of manufacturing and selling automotive parts and providing certain engineering services to the automotive industry; and

**WHEREAS**, HAL desires to transfer, convey and assign to HAP, and HAP desires to accept from HAL, the assets of the Unisia Business as a going concern and to assume the liabilities relating thereto;

**NOW, THEREFORE**, in consideration of the premises and the mutual agreements and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Transferred and Excluded Assets; Assumed and Excluded Liabilities; Etc.

1.1 Transferred Assets. In reliance upon the representations and warranties contained herein, and subject to the terms and conditions of this Agreement, HAL agrees to transfer, convey, assign and deliver to HAP, and HAP agrees to acquire and accept from HAL, at the Closing (as defined below), the Unisia Business as a going concern, and, except as may be expressly provided below, all of HAL's right, title and interest in and to the assets, properties and rights constituting the Unisia Business as previously operated by Unisia of every type and description, real, personal and mixed, tangible and intangible, owned by HAL as of the Closing, whether or not specifically referred to in this Agreement (such assets, properties and rights

hereinafter collectively referred to as the "Transferred Assets"), including, but not limited to, each of the following, if any:

(a)    All cash on hand and in banks, certificates of deposits, stocks, bonds and other securities relating solely to the Unisia Business;

(b)    All machinery, equipment, vehicles, furniture, fixtures, tools, spare parts and other personal property used solely in the Unisia Business;

(c)    All notes, receivables and trade accounts receivable relating solely to the Unisia Business, whether or not recorded on the books and records of HAL;

(d)    All technical information and documentation, trade secrets, inventions, processes, know-how and other intellectual property rights, including but not limited to patents, copyrights, and any pending applications therefore relating solely to the Unisia Business;

(e)    All inventories of raw materials, work in process, finished goods and supplies relating solely to the Unisia Business (the "Inventory");

(f)    All rights under the contracts, agreements, purchase orders and leases relating solely to the Unisia Business (the "Transferred Contracts");

(g)    All books and records (other than minute books and stock records of HAL or Unisia), business forecasts, customer lists and marketing literature and information relating solely to the Unisia Business (the "Books and Records"); provided, that, HAL may deliver to HAP copies of the Books and Records as to which HAL must, under applicable law, retain originals, provided that HAL provides HAP with such access to and use of the originals as HAP may, from time to time, reasonably request; and

(h)    All goodwill of the Unisia Business.

1.2    Excluded Assets.  Notwithstanding anything to the contrary in Section 1.1 above, the Transferred Assets shall not include, and HAL shall not transfer, convey, assign or deliver to HAP, any of the assets or properties owned or used by HAL other than the assets used in the Unisia Business as previously operated by Unisia (collectively, the "Excluded Assets").

1.3    Assumption of Liabilities.  At the Closing, HAP shall assume and agree to discharge any and all liabilities of every kind and nature whatsoever that were assumed by HAL in connection with and as a result of the merger of HAL and Unisia.  (collectively, "Assumed Liabilities").

1.4    Liabilities Expressly Not Assumed.  Notwithstanding the foregoing, HAP shall not assume or discharge liabilities other than the Assumed Liabilities (collectively, "Excluded Liabilities").

2

2.    THE CLOSING.

    2.1    The Closing.  Subject to the terms and conditions hereof, the consummation of the transactions provided for in this Agreement (the "Closing") will take place on the date hereof. All transactions at the Closing shall be deemed to take place simultaneously, and no transaction shall be deemed to have been completed and no documents or certificates shall be deemed to have been delivered until all other transactions are completed and all other documents and certificates are delivered.  The Closing shall be held at HAL's offices at 50 Prospect Avenue, Tarrytown, NY 10591 or remotely via the exchange of executed documents and other closing deliverables.  The date on which the Closing actually occurs is referred to herein as the "Closing Date."  The Closing shall be deemed effective as of the close of business on the Closing Date.

    2.2    Transfer of Assets and Assumption of Liabilities.

        (a)    At the Closing, the transfer, conveyance, assignment and delivery of the Transferred Assets shall be effected pursuant to a bill of sale substantially in the form of Exhibit A attached hereto (the "Bill of Sale").

        (b)    At the Closing, the assignment and assumption of the Assumed Liabilities shall be effected pursuant to an assignment and assumption agreement substantially in the form of Exhibit B attached hereto (the "Assumption Agreement") and such other documents and instruments as may be necessary in order to effect HAL's assignment to HAP, and HAP's assumption, of the Assumed Liabilities.

        (c)    At the Closing, HAL shall execute such other deeds, bills of sale, assignments, certificates of title, documents and other instruments of transfer and conveyance as may be reasonably requested by HAP in connection with the transfer of the Transferred Assets to, and the assumption of the Assumed Liabilities by, HAP.

    2.3    HAL's Deliverables.  At the Closing, HAL shall deliver to HAP the following:

        (a)    the Bill of Sale duly executed by HAL;

        (b)    the Assumption Agreement duly executed by HAL;

        (c)    all tangible property included in the Transferred Assets; and

        (d)    such other duly executed documents, instruments, and certificates as may be necessary or appropriate to be delivered by HAL pursuant to the terms of this Agreement.

    2.4    HAP's Deliverables.  At the Closing, HAP shall deliver to HAL the following:

        (a)    the Assumption Agreement duly executed by HAP; and

        (b)    such other duly executed documents, instruments and certificates as may be necessary or appropriate to be delivered by HAP pursuant to this Agreement.

3

3.    REPRESENTATIONS AND WARRANTIES OF HAL.

HAL hereby represents and warrants to HAP as follows:

3.1    Organization and Authority.  HAL is validly existing and in good standing under the laws of the State of New York, and has all requisite corporate power and authority to enter into this Agreement and to consummate the transactions contemplated hereby.  HAL is duly qualified or licensed to do business in each jurisdiction in which the nature of its business or properties makes such qualification or licensing necessary except to the extent that the consequences of any failures to qualify or obtain a license will not result in a HAL Material Adverse Effect.  For purposes of this Agreement, a "HAL Material Adverse Effect" shall mean a material adverse effect on the financial condition, properties, assets (including intangible assets), business, liabilities, results of operations or prospects of the Unisia Business, or on HAL's ability to consummate the transactions contemplated hereby.

3.2    Due Execution and Authority.  This Agreement and all other agreements executed and delivered by HAL in connection herewith and the instruments of transfer to be executed by HAL in connection with the transactions contemplated hereby (collectively, the "HAL Agreements") have been (or, upon execution and delivery, will be) duly executed and delivered by HAL, effectively authorized by all necessary action, corporate or otherwise.  This Agreement and the other HAL Agreements constitute (or upon execution and delivery, will constitute) legal, valid and binding agreements of HAL enforceable against HAL in accordance with their respective terms, except as such enforceability may be limited by applicable bankruptcy, reorganization, insolvency, moratorium or other similar laws from time to time in effect affecting creditors' rights generally or by principles governing the availability of equitable remedies.

3.3    No Conflict or Breach.  The execution and delivery of this Agreement and the other HAL Agreements by HAL does not, and the consummation by HAL of the transactions contemplated hereby and thereby and the fulfillment of the terms and conditions hereof and thereof, will not, violate or conflict with or constitute a breach of or default under (with or without the giving of notice or passage of time, or both), or result in the creation or imposition of any lien upon any of the property of HAL (including the Transferred Assets) pursuant to, any agreement, indenture, other instrument, license, permit, authorization or approval, to which HAL is a party or by which HAL or any of its properties or assets (including the Transferred Assets) is bound or affected, or which is material to the business of HAL, or the Certificate of Incorporation or By-Laws of HAL, or any judgment, decree, order or award (each, an "Order") of any federal, state, local or other governmental authority or instrumentality, domestic or foreign, including any authority having governmental or quasi-governmental powers, including any administrative agency or commission (each, a "Regulatory Authority") binding upon or affecting HAL or any of its properties or assets (including the Transferred Assets), or any law, rule or regulation (collectively, "Laws") applicable to HAL, its businesses or any of its properties or assets.

3.4    Approvals.  No consents, approvals, licenses, permits or authorizations of, or filings, recordings or registrations with or notices to, any Regulatory Authority or any other person are required by any applicable law or by any agreement, indenture or other instrument to which HAL is a party, or by which HAL or any of its property or assets (including the

4

Transferred Assets) is bound or affected, in connection with the execution, delivery and performance by HAL of this Agreement and the other HAL Agreements.

3.5    Title and Condition of Transferred Assets.  HAL is the lawful owner of, has good title to, and has the full power, authority and right to transfer, convey, assign and deliver the Transferred Assets to HAP, free and clear of any lien (other than Permitted Liens and those which may arise as a result of HAP's failure to satisfy and discharge the Assumed Liabilities).  Upon consummation of the transfer by HAL of the Transferred Assets to HAP, HAP will be the lawful owner of, and have marketable title to, the Transferred Assets, free and clear of all Liens (other than Permitted Liens and those which may arise as a result of HAP's failure to satisfy and discharge the Assumed Liabilities).  As used herein, "Permitted Liens" means (i) statutory or common law Liens to secure sums not yet due to landlords, sublandlords, licensors or sublicensors under leases or rental agreements, and (ii) Liens securing equipment leases or licenses which are included in the Transferred Contracts (which Liens are limited to the equipment that is the subject to the lease or license).

3.6    Books and Records; Financial Statements.  The Books and Records are in all material respects complete and correct and have been maintained in accordance with good business practice.

3.7    Employee Matters.  HAL has previously delivered to HAP such information regarding those employees, consultants and independent contractors employed or retained by HAL in connection with the Unisia Business as requested by HAP.  Each employee of HAL employed in connection with the Unisia Business is an employee "at will" and each independent contractor may be terminated at any time for any reason (or for no reason).  HAL has furnished or made available to HAP a list and description of all policies and guidelines of HAL concerning employment practices, working conditions, hours and other employment matters.

4.    REPRESENTATIONS AND WARRANTIES OF HAP.

HAP hereby represents and warrants to HAL as follows:

4.1    Organization and Authority.  HAP is validly existing and in good standing under the laws of the State of Delaware, and has all requisite corporate power and authority to enter into this Agreement and to consummate the transactions contemplated hereby.  HAP is duly qualified or licensed to do business in each jurisdiction in which the nature of its business or properties makes such qualification or licensing necessary except to the extent that the consequences of any failures to qualify or obtain a license will not result in a HAP Material Adverse Effect.  For purposes of this Agreement, the term "HAP Material Adverse Effect" shall mean a material adverse effect on the financial condition, properties, assets (including intangible assets), business, liabilities, results of operations or prospects of HAP or on HAP's ability to consummate the transactions contemplated hereby.

4.2    Due Execution and Authority.  This Agreement and all other agreements executed and delivered by HAP in connection herewith and the instruments of transfer to be executed by HAP in connection with the transactions contemplated hereby (the "HAP

5

Agreements") have been (or, upon execution and delivery, will be) duly executed and delivered by HAP, effectively authorized by all necessary action, corporate or otherwise. This Agreement and the other HAP Agreements constitute (or upon execution and delivery, will constitute) legal, valid and binding agreements of HAP enforceable against HAP in accordance with their respective terms, except as such enforceability may be limited by applicable bankruptcy, reorganization, insolvency, moratorium or other similar laws from time to time in effect affecting creditors' rights generally or by principles governing the availability of equitable remedies.

4.3    No Conflict or Breach. The execution and delivery of this Agreement and the other HAP Agreements by HAP does not, and the consummation by HAP of the transactions contemplated hereby and thereby and the fulfillment of the terms and conditions hereof and thereof, will not, violate or conflict with or constitute a breach of or default under (with or without the giving of notice or passage of time, or both), or result in the creation or imposition of any lien upon any of the property of HAP pursuant to, any agreement, indenture, other instrument, license, permit, authorization or approval (including any Governmental Approval), to which HAP is a party or by which HAP or any of its property or assets is bound or affected, or which is material to the business of HAP, or the Certificate of Incorporation or By-Laws of HAP, or any Order binding upon or affecting HAP, its business or any of its property or assets, or any law applicable HAP, its business or any of its property or assets.

4.4    Approvals. No consents, approvals, licenses, permits or authorizations of, or filings, recordings or registrations with or notices to, any Regulatory Authority or any other person are required by any applicable law or by any agreement, indenture or other instrument to which HAP is a party, or by which HAP or any of its property or assets is bound or affected, in connection with the execution, delivery and performance by HAP of this Agreement and the other HAP Agreements.

5.    COVENANTS.

5.1    Employee Matters. HAL and HAP agree to cooperate reasonably concerning all matters relating to the employees, independent contractors and consultants relating to the Unisia Business. Effective as of the Closing, HAL shall terminate the employment of each of its employees involved in the Unisia Business (the "Transferred Employees"). Effective as of the Closing, HAP intends to offer employment to each of the Transferred Employees. Such offers of employment shall be contingent on and subject to HAP's terms and conditions of employment. Notwithstanding the foregoing, Transferred Employees who hold "L" or "E" visas shall not be terminated by HAL, and shall not commence employment with HAP, until receipt of approval by the United States Immigration and Naturalization Service ("INS"). Until such time as INS approval is received, such Transferred Employees may provide services to HAP on behalf of HAL, and HAP shall bear the cost of such services either by way of reimbursement to HAL, or for administrative convenience, if permitted by applicable law, by direct payment by HAP to such employees.

5.2    Access to Books and Records. HAP agrees to retain all Books and Records pertaining to the Unisia Business which shall be delivered to HAP at the Closing, until HAL's

6

corporate tax director shall notify HAP in writing. HAP further agrees to make such Books and Records, including any originals delivered to HAP, promptly available to HAL upon request.

5.3    Further Assurances. The parties shall cooperate reasonably with each other and with their respective officers, directors, employees, independent contractors, stockholders, principals, partners, agents or representatives, or any affiliate thereof, in connection with any steps required to be taken as part of their respective obligations under this Agreement, and shall (a) furnish upon request to each other such further information, (b) execute and deliver to each other such other documentation, and (c) do such other acts and things, all as the other party may reasonably request for the purpose of carrying out the intent of this Agreement.

5.4    Bulk Transfer Laws. The parties hereby waive compliance with the provisions of any applicable bulk transfer statute.

6.    INDEMNIFICATION.

6.1    Survival of Representations and Warranties. The representations and warranties of the parties hereunder shall survive the Closing for a period of one year.

6.2    By HAL. From and after the Closing, HAL agrees to indemnify and hold harmless HAP from and against any loss, liability, cost, expense or damage, including reasonable attorneys' fees (collectively, "Damages"), incurred or sustained by HAP as a result of (a) the non-fulfillment of any agreement, covenant or obligation of HAL to be performed in connection with this Agreement; and (b) any breach of any representation or warranty of HAL contained herein or in any certificate delivered pursuant hereto.

6.3    By HAP. From and after the Closing, HAP agrees to indemnify and hold harmless HAL from and against any Damages incurred or sustained by HAL as a result of (a) the non-fulfillment of any agreement, covenant or obligation of HAP to be performed in connection with this Agreement; (b) any breach of any representation or warranty of HAP contained herein or in any certificate delivered pursuant hereto; and (c) the failure of HAP to pay or otherwise discharge the Assumed Liabilities.

6.4    Indemnification Procedures. In case any action or any claim is brought by a third party, the party against whom the claim is brought (the "indemnitee") shall provide prompt written notice thereof to the party who may be obligated to indemnify against such claim (the "indemnitor"). The indemnitor shall then be entitled to, but shall not be obligated to, assume the defense thereof (at its own expense) within 30 days or at least 10 days prior to the time a response is due in such case, whichever occurs first. If a party elects to assume the defense of any such claim pursuant to the foregoing sentence, then, the indemnitee shall be entitled to participate in said defense (at its own expense). All parties shall cooperate reasonably with each other in the defense of any claim brought by a third party, including making available all records reasonably necessary to the defense of such claims. The indemnitor shall be entitled to reasonable approval of the settlement of any claim with respect to which such party may be liable hereunder.

7

7.    GENERAL PROVISIONS.

7.1    Entire Understanding.  This Agreement, together with the other HAL Agreements and HAP Agreements, contains the entire understanding of the parties hereto and supersedes all prior discussions, representations, understandings or memoranda relative to the subject matter hereof.

7.2    Successors and Assigns.  All terms and provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective transferees, successors and assigns.  No party hereto may assign or transfer any of its rights or delegate any of its obligations hereunder without the prior written consent of the other party.  Any attempted assignment, transfer or delegation in contravention of the foregoing shall be null and void.

7.3    Notices.  All notices, demands and other communications hereunder shall be in writing and shall be deemed given if delivered personally (including delivery by any nationally recognized overnight delivery service) or three days after deposited in the United States mail, certified, return receipt requested, postage prepaid, to the parties at the following addresses, or at such other address as a party shall specify by like notice to the other party:

If to HAL:

       Hitachi America, Ltd.
       50 Prospect Avenue
       Tarrytown, New York  10591-4698
       Attn:  Legal Group

If to HAP:

       Hitachi Automotive Products (USA), Inc.
       955 Warwick Road
       Harrodsburg, KY 40330
       Attn: Treasurer

7.4    Severability.  The invalidity or illegality of any provision of this Agreement shall not affect the validity or legality of any other provision hereof.  Any invalid or illegal provisions of this Agreement shall be construed by a court of competent jurisdiction to have the broadest scope permissible under the law of said jurisdiction, and if no validating construction is possible, shall be severable, and all other provisions hereof shall remain in full force and effect.

7.5    Headings.  Headings are for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

7.6    Counterparts.  This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.  Signature pages delivered by facsimile shall be deemed originals for all purposes hereunder.

7.7    <u>Governing Law</u>.  This interpretation and performance of this Agreement shall be governed by the laws of the State of New York, without giving effect to the choice of law provisions thereof, to the extent such provisions would require or permit the application of the law of any other jurisdiction.

7.8    <u>No Third Parties Benefited</u>.  This Agreement is made and entered into for the protection and benefit of the parties hereto and their permitted successors and assigns.  No other person shall be a direct or indirect beneficiary of or have any direct or indirect cause of action or claim in connection with this Agreement or any of the documents executed in connection herewith.

*{Remainder of page left intentionally blank.  Signature page(s) to follow.}*

**IN WITNESS WHEREOF**, the parties hereto, intending to be legally bound, have executed or caused their duly authorized representatives to execute this Agreement as of the date first above written.


HITACHI AMERICA, LTD.

By: _____
    Masahide Tanigaki, President



HITACHI AUTOMOTIVE PRODUCTS (USA), INC.

By: _____
    Masaaki Fujisawa, President

## Exhibit A

Form of Bill of Sale

GENERAL CONVEYANCE, BILL OF SALE AND ASSIGNMENT

This GENERAL CONVEYANCE, BILL OF SALE AND ASSIGNMENT (this "Bill of Sale"), is made as of April 1, 2006, by HITACHI AMERICA, LTD., a New York corporation ("HAL"), in favor of HITACHI AUTOMOTIVE PRODUCTS (USA), INC., a Delaware corporation ("HAP"). All capitalized terms used herein and not defined herein shall have the respective meanings ascribed to such terms in that certain Transfer Agreement, dated as of April 1, 2006, by and between HAL and HAP (the "Transfer Agreement").

WHEREAS, pursuant to the Transfer Agreement, HAL has agreed to transfer, convey, assign and deliver to HAP the Transferred Assets, all in accordance with the terms set forth in the Transfer Agreement; and

WHEREAS, pursuant to the Transfer Agreement, HAL is required to execute and deliver to HAP this Bill of Sale in connection with the consummation of the transactions contemplated by the Transfer Agreement;

NOW, THEREFORE, in consideration of the mutual covenants contained herein and in the Transfer Agreement and for other good a valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and pursuant to the terms of the Transfer Agreement, HAL covenants and agrees as follows:

1.      HAL hereby transfers, conveys, assigns and delivers to HAP, its successors and assigns, to have and to hold forever, and HAP hereby accepts from HAL, all of HAL's rights, title and interest in, to and under the Transferred Assets.

2.      HAL hereby covenants with, and represents and warrants to, HAP that HAL is the lawful owner of the Transferred Assets, and the Transferred Assets are free from and clear of all Liens, other than Permitted Liens.

3.      This Bill of Sale is intended to evidence the consummation of the transfer and assignment by HAL to HAP of the Transferred Assets as contemplated by the Transfer Agreement and shall be construed consistently therewith. In the event of any inconsistencies or ambiguities between this Bill of Sale and the Transfer Agreement, the terms of the Transfer Agreement shall govern.

4.      HAL does hereby irrevocably constitute and appoint HAP, its successors and assigns, its true and lawful attorney, with full power of substitution, in its name or otherwise, and on behalf of HAL, or for its own use, to claim, demand, collect and receive at any time and from time to time any and all Transferred Assets, properties, claims, accounts and other rights, tangible or intangible, hereby sold, conveyed, assigned, transferred and delivered, or intended so to be, and to prosecute the same at law or in equity and, upon discharge thereof, to complete, execute and deliver any and all necessary instruments of satisfaction and release.

5.      HAL hereby covenants and agrees that it will, at the request of HAP, execute and deliver such other instruments of conveyance, assignment and transfer and take such other action,

as HAP may reasonably request to vest in HAP the entire right, title and interest in and to the Transferred Assets being transferred hereby and as may be necessary or appropriate to fully carry out the intent of this Bill of Sale.

      6.      This Bill of Sale shall inure to the benefit of HAP and its successors and assigns, and shall be binding upon and enforceable against HAL and its successors and assigns.  This Bill of Sale shall be governed by the laws of the State of New York without giving effect to the conflict of law principles thereof.  A facsimile signature shall be deemed an original for all purposes hereunder.

IN WITNESS WHEREOF, the undersigned has executed this Bill of Sale as of date and year first above written.

HITACHI AMERICA, LTD.

By: _____

Masahide Tanigaki, President

<u>Exhibit B</u>

Form of Assignment and Assumption Agreement

ASSIGNMENT AND ASSUMPTION AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Assumption Agreement"), is made as of April 1, 2006, by and HITACHI AMERICA, LTD., a New York corporation ("HAL"), and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., a Delaware corporation ("HAP"). All capitalized terms used herein and not defined herein shall have the respective meanings ascribed to such terms in that certain Transfer Agreement, dated as of April 1, 2006, by and between HAL and HAP (the "Transfer Agreement").

WHEREAS, HAP and HAL have concurrently herewith consummated the purchase by HAP of the Transferred Assets pursuant to the terms and conditions of the Transfer Agreement; and

WHEREAS, pursuant to the Transfer Agreement, HAP is acquiring from HAL the Transferred Assets and assuming and becoming responsible for the Assumed Liabilities;

NOW, THEREFORE, in consideration of the sale of the Transferred Assets and in accordance with the terms of the Transfer Agreement, HAP and HAL agree as follows:

1.      HAL hereby assigns to HAP all of HAL's right, title and interest in and to the Transferred Contracts, and HAP hereby accepts all of HAL's right, title and interest in and to the Transferred Contracts and assumes the Assumed Liabilities, which include the obligations for HAL's performance after the Closing Date under the Transferred Contracts.

2.      This Assumption Agreement is, in all respects, subject to the provisions of the Transfer Agreement and is not intended in any way to supersede, limit or qualify any provision of the Transfer Agreement. In the event of any inconsistencies or ambiguities between this Assumption Agreement and the Transfer Agreement, the terms of the Transfer Agreement shall govern.

3.      HAL does hereby irrevocably constitute and appoint HAP, its successors and assigns, its true and lawful attorney, with full power of substitution, in its name or otherwise, and on behalf of HAL, or for its own use, to claim, demand, collect and receive at any time and from time to time any and all Transferred Contracts, properties, claims, accounts and other rights under the Transferred Contracts and to prosecute the same at law or in equity.

4.      HAL and HAP hereby covenant and agree that it will, at the request of other party, execute and deliver such other instruments of conveyance, assignment, transfer and assumption and take such other action, as such first party may reasonably request to vest in HAP the entire right, title and interest in and to the Transferred Contracts and to evidence the assumption by HAP of the Assumed Liabilities, in each case, as may be necessary or appropriate to fully carry out the intent of this Assumption Agreement.

5.      This Assumption Agreement shall be governed by, construed and enforced in accordance with the laws of the State of New York applicable to contracts entered into, and to be performed wholly within, such state. This Assumption Agreement shall be binding upon and inure to the benefit of HAL, HAP and their respective successors and assigns. This Assumption

Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.  Facsimile signatures shall be deemed originals for all purposes hereunder.

*{Remainder of page left intentionally blank.  Signature page(s) to follow.}*

IN WITNESS WHEREOF, the parties hereto have caused this Assumption Agreement to be duly executed as of the day and year first above written.


HITACHI AMERICA, LTD.


By: _____
Masahide Tanigaki, President



HITACHI AUTOMOTIVE PRODUCTS (USA), INC.


By: _____
Masaaki Fujisawa, President

# EXHIBIT 3

N. Y. S. DEPARTMENT OF STATE
DIVISION OF CORPORATIONS AND STATE RECORDS          ALBANY, NY 12231-0001

================================================
FILING RECEIPT
================================================

ENTITY NAME: HITACHI AMERICA, LTD.

DOCUMENT TYPE: MERGER (DOM. BUSINESS)                    COUNTY: NEWY

SERVICE COMPANY: ALBANY CORPORATE RESEARCH LTD.          SERVICE CODE: 41

CONSTITUENT NAME: UNISIA NORTH AMERICA, INC.

================================================================
FILED:03/30/2006 DURATION:********* CASH#:060330000072 FILM #:060330000068
================================================================

                                                        EFFECT DATE
ADDRESS FOR PROCESS                                     ------------
------------------                                      04/01/2006


REGISTERED AGENT
----------------



==============================================================
FILER                    FEES      120.00    PAYMENTS     120.00
                      ----------              -----------
                      FILING       60.00      CASH           0.00
MINTZ LEVIN COHN FERRIS GLOVSKY AND   TAX    0.00   CHECK     0.00
POPEO P.C.            CERT          0.00      CHARGE         0.00
666 THIRD AVENUE      COPIES       10.00      DRAWDOWN     120.00
NEW YORK, NY 10017    HANDLING     50.00      OPAL           0.00
                                              REFUND         0.00
                                              -----------

                                              DOS-1025 (11/89)

State of New York }
Department of State } ss:

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.

Witness my hand and seal of the Department of State on

**March 30, 2006**



Special Deputy Secretary of State



DOS-1266 (Rev. 11/05)

ʃ060330000🜹

**STATE OF NEW YORK**
**CERTIFICATE OF MERGER OF**
**UNISIA NORTH AMERICA, INC. INTO**
**HITACHI AMERICA, LTD.**

**Under Section 904 of the Business Corporation Law**

We, the undersigned Osamu Okuzumi, being the President and the Secretary of UNISIA NORTH AMERICA, INC., a Delaware corporation ("Unisia"), and Masahide Tanigaki and Diana Lurie Boersma, being, respectively, the President and the Secretary of HITACHI AMERICA, LTD., a New York corporation ("HAL"), hereby certify:

1.    The name of each constituent corporation is as follows:

    (a)    UNISIA NORTH AMERICA, INC. (which entity is not authorized to do business as a foreign corporation in New York)

    (b)    HITACHI AMERICA, LTD. (originally known as Hitachi New York, Ltd.)

    The name of the surviving corporation is HITACHI AMERICA, LTD. and following the merger its name shall be HITACHI AMERICA, LTD.

2.    As to each constituent corporation, the designation and number of outstanding shares of each class of stock is set forth below. All such shares are entitled to vote.

| Constituent Corporation | Number of Outstanding Shares | Class of Shares |
| --- | --- | --- |
| Unisia | 1,500 | Common Stock, no par value |
| HAL | 1,344 | Common Stock, no par value |

3.    The Certificate of Incorporation of HAL immediately prior to the merger shall be the Certificate of Incorporation of the corporation surviving the merger.

4.    The merger shall be effective as of April 1, 2006.

5.    The date when the certificate of incorporation of each constituent corporation was filed with the Secretary of State of its state of incorporation is as follows:

| Constituent Corporation | State of Incorporation | Date of Incorporation |
|---|---|---|
| Unisia | Delaware | May 3, 1990 |
| HAL | New York | October 30, 1959 |

6.    The merger was adopted by HAL by written consents of its board of directors and of its sole shareholder.

Unisia has complied with the applicable provisions of the laws of the State of Delaware in which it is incorporated and this merger is permitted by such laws. The manner in which the merger was authorized with respect to Unisia was by written consents of its board of directors and of its sole shareholder.

*    *    *    *    *    *

**IN WITNESS WHEREOF,** the undersigned have signed this certificate on the 28th day of March, 2006 and we affirm the statements contained therein as true under penalties of perjury. This document may be executed in any number of counterparts, and by different parties hereto on separate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument and shall be effective when executed by all the parties named herein. Facsimile signatures shall be deemed originals for all purposes.

UNISIA NORTH AMERICA, INC.

By: _____
Osamu Okuzumi, President and Secretary

HITACHI AMERICA, LTD.

By: _____
Masahide Tanigaki, its President

By: _____
Diand Lurie Boersma, its Secretary

2

CERTIFICATE OF MERGER

OF

UNISIA NORTH AMERICAN, INC.

INTO

HITACHI AMERICA, LTD.

Under Section 904 of the Business Corporation Law of the State of New York

STATE OF NEW YORK
DEPARTMENT OF STATE

MAR 3 0 2006

FILED
TAX $
BY:

DRAWDOWN
ACR-41

FILED BY:
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
666 Third Avenue
New York, NY 10017

060330000 ?

RECEIVED
2006 MAR 28 PH 4: 2006 MAR 29 PH 4: 05

RECEIVED

FILED
2006 MAR 30 AM 8: 44

# EXHIBIT 4

## Polk, Jr., C. Edward

| | |
|---|---|
| **From:** | Krosin, Kenneth E. |
| **Sent:** | Wednesday, April 26, 2006 6:24 PM |
| **To:** | 'Thomas D. Rein (trein@sidley.com)' |
| **Cc:** | 'Hirshfeld, Lara'; 'Hugh A. Abrams (habrams@Sidley.com)'; Kaminski, Michael D.; Polk, Jr., C. Edward; Agarwal, Pavan K.; Peterson, Liane M.; 'Schneider, Lisa A.'; 'SBalick@ashby-geddes.com'; 'Mary B. Matterer (mmatterer@morrisjames.com)' |
| **Subject:** | |

From the Desk of: Kenneth E. Krosin



My Location    My V-card    My Bio                                www.foley.com

Tom:

I was quite surprised to see the allegation in BorgWarner's April 21 motion to compel that Hitachi was "unwilling" to produce financial information regarding HAP's ECU sales to Nissan. As you know, I stated at Mr. Matsushita's deposition last week that Hitachi would take this request "under advisement." This, of course, has been standard practice in this case by both sides (so that each side would have an opportunity to confer with its client following depositions regarding requests for documents made on the on the record) and cannot reasonably be interpreted as a refusal to produce documents. Perhaps you could point this out to the Special Master at the May 12 conference to set the record straight. In any event, this is to notify you that Hitachi is working diligently to collect and produce the requested HAP ECU documents.

I also was quite surprised by BorgWarner's allegation that Hitachi acted improperly by seeking to have HAP dropped from the case. As you know, when the suit was originally filed, the parties were focused on VTCs, not ECUs. Indeed, BorgWarner's Counterclaim and Third Party Complaint specifically states that Hitachi sells "variable camshaft timing components, including without limitation, *cam phasers, spool valves and/or solenoids*, which are combined with other components to utilize the patented invention." Both sides plainly recognized that Hitachi's representation that HAP was not involved in selling or manufacturing "VTC products" meant VTC products, i.e., the solenoid, spool valve and phaser. Since HAP did not make or sell VTCs, it was removed from the case by joint agreement of the parties. It was not until much later that discovery on ECUs was ordered.

Finally, I wanted to advise you about a recent development pertinent to the litigation. A few days ago, we learned that on April 1, 2006, UNAI was merged into Hitachi America, Ltd., which then transferred its interest to HAP. Consequently, UNAI no longer exists as a separate entity and all of its assets reside in HAP. The merger documents are attached for your review.

Because of this corporate change, we propose substituting HAP for UNAI as the proper party in the litigation.  We also include a proposed joint motion to replace UNAI with HAP as a party.

      Ken

INFO

# EXHIBIT 5

## Polk, Jr., C. Edward

**From:** Hirshfeld, Lara [lhirshfeld@sidley.com]

**Sent:** Tuesday, May 02, 2006 6:31 PM

**To:** Krosin, Kenneth E.

**Cc:** Peterson, Liane M.; Kaminski, Michael D.; Agarwal, Pavan K.; Polk, Jr., C. Edward; Abrams, Hugh; Rein, Thomas D.; Schneider, Lisa A.; Cavan, Marc A.

**Subject:** Hitachi v. BW

Dear Ken:

We will agree to your proposed joint motion to replace UNAI with HAP as a party if you remove the sentence on page 2, "[t]his substitution will not change any other aspect of this litigation." Having had no discovery from HAP, we are not in a position to agree to this representation and will not. We will agree to your motion, however, subject to the modification noted above, before we work out what, if any, discovery should be permitted from HAP beyond what you have agreed to thus far.

Also, we request that you make available a knowledgeable witness or witnesses to testify on behalf of HAP on the topics identified in the attached 30(b)(6) notice that we intend to serve. Please let us know by the close of business tomorrow if you will not accept service on behalf of HAP.

Regards,

Lara

<<HAP 30(b)(6) Notice.pdf>>

Sidley Austin LLP mail server made the following annotations on 05/02/06, 17:28:32:
--------------------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we in that, unless expressly stated otherwise, any U.S. federal tax advice contained in th communication, including attachments, was not intended or written to be used, and ca used, by any taxpayer for the purpose of avoiding any penalties that may be imposed taxpayer by the Internal Revenue Service. In addition, if any such tax advice is us to by other parties in promoting, marketing or recommending any partnership or other investment plan or arrangement, then (i) the advice should be construed as written i with the promotion or marketing by others of the transaction(s) or matter(s) address communication and (ii) the taxpayer should seek advice based on the taxpayer's parti circumstances from an independent tax advisor.

******************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or If you are not the intended recipient, please delete the e-mail and any attachments immediately.

******************************************************************************

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of May, 2006, the attached **UNOPPOSED MOTION OF PLAINTIFFS HITACHI, LTD. AND UNISIA NORTH AMERICA, INC. TO SUBSTITUTE HITACHI AUTOMOTIVE PRODUCTS (USA), INC. IN PLACE OF PLAINTIFF UNISIA NORTH AMERICA, INC.** was served upon the following counsel of record in the manner indicated:


Richard K. Herrmann, Esquire                     HAND DELIVERY
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19801


Hugh A. Abrams, Esquire                          VIA FEDERAL EXPRESS
Sidley Austin LLP
One South Dearborn Street
Chicago, IL  60603


*/s/ Tiffany Geyer Lydon*
_____
Tiffany Geyer Lydon