## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HITACHI, LTD. and<br>UNISIA NORTH AMERICA, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>BORGWARNER INC. and<br>BORGWARNER MORSE TEC INC.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>   C.A. No. 05-048-SLR<br><br>  **PUBLIC VERSION** |
| BORGWARNER INC.,<br><br>    Counterclaimant,<br><br>    v.<br><br>HITACHI, LTD. and<br>UNISIA NORTH AMERICA, INC.,<br><br>    Counterdefendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO SEVER OR BIFURCATE CLAIMS

OF COUNSEL:

SIDLEY AUSTIN BROWN & WOOD, LLP
Hugh A. Abrams
Thomas D. Rein
Lisa Schneider
Marc A. Cavan
Lara V. Hirshfeld
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
MORRIS JAMES, HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
(302) 888-6800
mmatterer@morrisjames.com

Attorneys for BorgWarner Inc. and
BorgWarner Morse TEC Inc.

Originally filed: April 21, 2006
Public version filed: May 4, 2006

Pursuant to Rules 21 and 42(b) of the Federal Rules of Civil Procedure, defendants BorgWarner Inc. and BorgWarner Morse TEC., Inc. (collectively "BorgWarner" ) move this Court for an order severing or bifurcating the claims of indirect and contributory infringement relating to sales of electronic control units ("ECUs") from manufacturers **REDACTED** (the "ECU claims"), so that they are preserved for a later day. Alternatively, BorgWarner moves to compel Plaintiffs Hitachi, Ltd. and Unisia North America, Inc. (collectively, "Hitachi") to provide the necessary discovery expeditiously on such claims so that BorgWarner is not forced to go to trial on claims for which no discovery has been permitted.

## I.    NATURE AND STAGE OF THE PROCEEDING

This is a patent infringement action. Fact discovery according to the proposed schedule submitted on April 3, 2006 is scheduled to end on April 21, 2006. The trial date in this case is currently under reconsideration, but the parties have jointly requested the Court to set a trial date as soon after mid-October 2005 as the Court can schedule trial.

As explained herein, the SDM did not permit BorgWarner to engage in discovery on its claims of induced and contributory infringement relating to Hitachi ECU sales to manufacturers other than Nissan. In denying BorgWarner's attempt to take this discovery, however, the SDM specifically stated that he did not intend his discovery ruling to be a ruling on the merits of the ECU claims or to preclude a future claim relating to such sales. BorgWarner therefore files this motion to preserve its right to assert these claims against Hitachi in the future, if such becomes necessary.

## II.    SUMMARY OF ARGUMENTS

BorgWarner's claims of indirect and contributory infringement relating to Hitachi sales of electronic control units ("ECUs") to manufacturers **REDACTED** should be severed or bifurcated because BorgWarner has been precluded from discovery on those claims despite its timely discovery demands. BorgWarner would be prejudiced if trial were further delayed by Hitachi's discovery abuses (as explained below), and the trial on the remaining claims may well obviate any need for a trial on the severed or bifurcated claims. Alternatively, if the Court is not inclined to sever or bifurcate these claims, BorgWarner objects to the SDM's refusal to permit reasonable discovery relating to them and asks this Court to require Hitachi to provide this discovery expeditiously.

## III.    STATEMENT OF FACTS

### A.    The VCT Technology

This is a patent infringement action wherein BorgWarner accuses Hitachi of infringing U.S. Patent No. 5,497,738 ("the '738 Patent")(Ex. 1). The '738 Patent relates to an internal combustion engine in which the timing of the camshaft can be varied relative to the crankshaft in order to improve the operating conditions of the engine. The camshaft of the engine operates the opening and closing of intake and exhaust valves that permit the flow of the gasoline fuel/air mixture into and out of the cylinders of the engine. The performance of the engine, and its exhaust emission characteristics, can by changed by altering the flow of the air/fuel mixture through changes in the amount of time that the intake or exhaust valves are open or closed.

Absent a variable camshaft timing ("VCT") system, the opening and closing of the valves is fixed because the rotation of the camshaft is controlled by the rotation of the engine crankshaft through a sprocket and chain drive. The purpose or function of a VCT system is to allow the

adjustment of the rotation (or phase angle) of the camshaft relative to the crankshaft while the engine is operating. The VCT system feeds fluid into or out of a vane housing to move the relative position of the vane, which in turn adjusts the relative position of the camshaft (or phase angle).

The invention described in the '738 Patent is a "closed loop" system, which means that the VCT system is continuously adjusted in response to changes in parameters of the engine. The system includes a cam angle sensor and a crankshaft angle sensor that send signals to an engine control unit ("ECU").[1] The ECU determines the position of the camshaft relative to the crankshaft and then determines the desired position based on factors such as engine speed and load. The ECU then sends a signal to one of the VCT components (a variable force solenoid valve) to adjust the position of the valve in order to change the fluid flow to the VCT vane system and, accordingly, adjust the position of the camshaft to the desired position.

The claimed invention of the '738 patent relates to a method of controlling the valve timing of an internal combustion engine by regulating the flow of fluid in a VCT system. The asserted claims (claims 10 and 11) are *method* claims that recite the method of controlling the fluid flow in order to change the timing in the engine. The asserted claims each recite, among other things, sensing the camshaft and crankshaft positions and calculating the relative phase angle between the camshaft and crankshaft *using an engine control unit* or ECU. The "engine control unit" or ECU is *expressly recited* in the body of the asserted claims, and is a required limitation for direct infringement of the claims. Asserted claim 10 reads, in pertinent part:

> . . . . calculating a relative phase angle between said
> camshaft and said crankshaft, said calculating step using **an engine**

---

[1] The term "engine control unit" is used interchangeably with the term "electronic control unit." Both terms describe the electronic controller that controls a number of functions in the engine, including the VCT system.

> **control unit** for processing information obtained from said sensing
> step, said **engine control unit** further issuing a[n] electrical signal
> corresponding to said phase angle;
>
> .... controlling the position of a vented spool slidably
> positioned within a spool valve body, said controlling step being in
> response to said signal received from **said engine control unit**....

Ex. 1, col.12 lines 8-17 (emphasis added).

Hitachi has contended that the patent claims are limited to VCT assemblies and solenoid valves, but that contention is incorrect. Although VCT assemblies and solenoid valves are *limitations* in the asserted claims, the claims themselves more specifically recite a method of controlling a *system*, and include recitation of various method steps, including sensing certain parameters and calculating output parameters using an ECU. The ECU, and the recited steps that the ECU must perform, are express elements of the claim.

**B.    BorgWarner Has Zealously Pursued ECU Discovery**

**1.    BorgWarner timely requested ECU discovery in April, 2005**

On April 25, 2005, BorgWarner sought discovery relating to the full scope of the products sold by Hitachi that were potentially at issue in this case. Interrogatory No. 1 sought identification of all variable camshaft timing components made, used, sold, prototyped, offered for sale and/or imported into the United States, by Hitachi or on behalf of Hitachi, including an identification of engine and vehicle systems using those components (Ex.2, BorgWarner's First Set of Interrogatories). BorgWarner expressly defined "variable camshaft timing components" to include, without limitation, variable timing control systems, solenoid valves and *"electronic control units, and software and hardware contained therein."*(emphasis added) *Id.* at 3.

2.          **REDACTED**

Hitachi delayed identifying *any* components at all sold by Hitachi until October 4, 2005, only two days prior to Hitachi's Rule 30(b)(6) deposition on the topic of the structure and operation of all variable camshaft timing components made, used, sold or imported by or on behalf of Hitachi.

**REDACTED**

While that chart has since been updated, it has never been updated to identify ECUs.

3.

**REDACTED**

BorgWarner persisted in inquiring into Hitachi's understanding of the operation of these units, and the manner in which they interact with the remainder of the system, but

**REDACTED**

5

4.

## REDACTED

(*Id.* at 151-52.)  Hitachi thus seriously misled BorgWarner about the design and sale of this key component of the claimed system, and failed to correct the testimony of its Rule 30(b)(6) witnesses and its inaccurate and misleading interrogatory responses,

### 5.    The SDM has precluded BorgWarner from taking discovery relating to ECUs for Hitachi customers other than Nissan

Since Hitachi was not forthcoming with ECU discovery, BorgWarner requested relief from the SDM.  On February 27, 2006, the SDM ruled that "some technical and financial information relating to Hitachi's ECUs should be provided.  The ECU is a claim element, and the software module integrated with Hitachi's VCT system is arguably relevant to damages, either based on an entire market value rule or as a defined element of the patent claim."  Third Discovery Order dated 1/27/06, Exhibit 7 at 5-6.  Despite such finding of relevance, the SDM limited much of the discovery sought on burdensomeness grounds.  No deposition relating to the information Hitachi was required to produce was permitted, and the order made no mention of Hitachi customers other than Nissan.

BorgWarner timely requested the SDM to clarify his ruling on March 1, 2006

## REDACTED

3/1/06 Letter to SDM,

Ex. 8. On March 13, 2006, The SDM ruled:    **REDACTED**

> Except as set forth in paragraph 2(e), BorgWarner is not entitled to
> ECU discovery for customers other than Nissan.
> BorgWarner claims that such discovery is relevant to demonstrate
> Hitachi's liability for induced and contributory infringement. I
> determined, however, that the nature of the ECU, the multitude of
> functions it performs unrelated to VCT control, and the burden to
> Hitachi of providing voluminous discovery outweighed the
> possible benefit to BorgWarner.
>
> This case has been focused on discovery relating to VCT
> components sold by Hitachi. To the extent that Hitachi sells ECUs
> with its VCT components, I allowed limited discovery to proceed.
> To permit discovery of Hitachi's ECU's unrelated to Hitachi's
> sales of VCT components would delay this proceeding and expand
> discovery beyond what is reasonable.

Letter Decision from SDM dated 3/13/06, Ex. 9.

The effect of that March 13, 2006 decision was to prevent BorgWarner from any

discovery whatsoever on its claims of indirect and contributory infringement relating to sales to

customers other than Nissan. BorgWarner subsequently requested the SDM to reconsider,

pointing out that while BorgWarner did not object to preserving those properly plead claims for a

later day, Hitachi was unwilling to so stipulate. In response, Hitachi acknowledged that it was

effectively asking the SDM to forever bar Hitachi from pursuing those claims. The SDM refused

to do so and clarified his March 13, 2006 Decision as follows:

> I find that Hitachi's opposition comes with ill grace. Hitachi
> persuaded me to preclude additional ECU discovery based
> principally on the burden to Hitachi of allowing this discovery.
> Now it essentially asks for a merits determination of BorgWarner's
> infringement claims relating to Hitachi's sales of ECUs (something
> I have no authority to do), and even though discovery has been
> precluded at Hitachi's request. Hitachi asks that I forever bar
> BorgWarner from pursuing possible claims in the future. That was
> not my intention, and not the intention of a discovery ruling.
>
> Therefore, to clarify my March 13, 2006 Decision (and the
> following should be considered an integral part of that Decision),
> the March 13, 2006 Decision shall not preclude BorgWarner from
> filing a separate lawsuit against Hitachi in the future, for which

> discovery was precluded by the March 13, 2006 Decision. If
> Hitachi wants to address in the pending litigation the infringement
> issue for ECU sales to customers **REDACTED**    , then the
> Special Master will revisit his ECU discovery ruling at Hitachi's
> request.

Fourth Discovery Order dated April 3, 2006 at 5-6 (Ex. 10). The SDM further stated that if

Hitachi wanted this case to resolve the dispute over these ECUs, then the SDM's limitation on

discovery would be revisited.

After this ruling, BorgWarner asked Hitachi if it would agree to a stipulation severing

these claims and reserving them for another day. Hitachi refused, forcing BorgWarner to seek

relief from this Court. What BorgWarner requests through this motion is simply to effectuate the

SDM's intent that these claims be reserved for another day.

## IV.    ARGUMENT

### A.    The Court Has Broad Discretion to Grant Severance or Bifurcate

Rule 21 provides that "[a]ny claim against a party may be severed and proceeded with

separately." Fed. R. Civ. P. 21. *Triangle Conduit & Cable Co. v. Nat'l Elec. Prods. Corp.,* 125

F.2d 1008, 1009 (3d Cir. 1942); *Sony Electronics, Inc. v. Orion IP, LLC*, 2006 WL 680657

(D.Del. Mar. 14, 2006)(severing and dismissing claims of one plaintiff accused of patent

infringement where first-filed litigation was pending elsewhere).

While Rule 21 may sever claims into separate actions, Rule 42(b) provides for a separate

trial or trials within the same action. *See* 8 James Wm. Moore et al., Moore's Federal Practice §

42.20(2) (3d ed. 1999). To determine whether severance under Rule 21 or bifurcation under

Rule 42(b) is appropriate, the Court must consider the same concerns – convenience of the

parties, avoiding prejudice, and promoting expedition and economy. *Bancmortgage Financial v.*

*The Guarantee Title and Trust Company,* 2000 WL 1521600 (E.D. Pa. Oct. 6, 2000) at *2. The

courts specifically address (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting the severance will be prejudiced if it is not granted. *Id.*(quoting *Official Comm of Unsecured Creditors v. Shapiro,* 190 F.R.D. 352, 355 (E.D.Pa. 2000)). Rule 42(b) permits separate trials "in furtherance of convenience *or* to avoid prejudice, *or* when separate trials will be conducive to expedition and economy...." Fed. R. Civ. P. 42(b)(emphasis added).

In patent cases in particular, judges use bifurcation and trifurcation to maintain manageability of the volume and complexity of evidence presented to a jury. *Enzo Life Sciences, Inc. v. Digene Corporation,* 2003 WL 21402512 (D.Del. June 10, 2003) at *5 (trifurcating patent trial into infringement, validity, and business tort counterclaim phases despite some evidentiary overlap to accomplish efficient and fair disposition of claims). Patent cases often present circumstances uniquely favoring bifurcation of liability and damages. *Willemijn Houdstermaatschaapij BV v. Appollo ComputerInc.,* 707 F. Supp. 1429, 1433 (D.Del. 1989). A court must take into account the "overall equities" of the case in ruling on a motion to bifurcate. *Id.* at 1433-34. If even one of the three factors supporting bifurcation listed in Rule 42(b) is present, a court may enter separate trials. *Id.* at 1433-34 (trial not bifurcated where there was no prejudice shown in case of non-jury trial). The most important factor is perhaps whether separate trials would prejudice the non-moving party. *Id.* at 1435.

**B.      Severance or Bifurcation Is Warranted To Avoid Severe Prejudice to BorgWarner**

**1.      The claims are materially different from those ripe for trial**

The claims BorgWarner proposes to sever or bifurcate are indeed easily separable from the remainder of the infringement claims in that they involve indirect and contributory infringement relating to Hitachi sales of ECUs to customers **REDACTED** . Indeed, the SDM has already drawn the line and separated these claims for discovery purposes. Without this discovery, it is impossible to describe the differences precisely, but the ECU technology differs from customer to customer, depending on the system it is intended to operate. This can and likely will lead to separate infringement claims and separate damages claims for each customer.

**2.      Documentary evidence on these claims is distinct from the documents already produced in anticipation of trial**

No documentary evidence on this issue has yet been provided with respect to ECU sales **REDACTED** , and no Hitachi witness has yet testified as to these sales. BorgWarner was also unable to seek third party discovery from such customers because Hitachi concealed the existence of these sales as well as the names of its ECU customers. Although, in proving these claims, there would likely be some overlap in proof with respect to the patent-in-suit, the facts relating to these different devices are unique to these customers. Likewise, the financial information relating to these ECU claims is distinct from the other damages claims already discovered in this lawsuit.

**3.      Severance or bifurcation will not prejudice Hitachi**

There is no prejudice to Hitachi in severing or bifurcating these claims. Hitachi itself has chosen to withhold the evidence, which would have permitted BorgWarner to try these claims along with the other claims in this lawsuit. Severance will give Hitachi additional time to

respond, to locate responsive information and documents and thus alleviate any burden claimed. Even if Hitachi should claim prejudice, Hitachi has no one to blame but itself for delaying production of the relevant documents and information.  In fact, even in its last ruling, the SDM gave Hitachi an option to avoid severance or bifurcation of these claims:

> If Hitachi wants to address in the pending litigation the infringement issue for ECU sales to customers other than Nissan, then the Special Master will revisit his ECU discovery ruling at Hitachi's request.

*Id.*  Hitachi, however, has chosen not to avail itself of this option.  Apparently, Hitachi is hoping to force BorgWarner to go to trial on the ECU claims without the benefit of any discovery. Allowing an opportunity for BorgWarner to conduct the discovery required by Rule 26(b) is a matter of fundamental fairness, not prejudice to Hitachi.  *See* Fed. R. Civ. P. 26(b)(1)("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party….)  The SDM has already ruled that discovery relating to ECUs is relevant.

### 4.     The prejudice to BorgWarner if the claims are not severed or bifurcated would be severe

It is quite obvious that BorgWarner would be severely prejudiced if it is forced to try these claims without having had the opportunity to take *any*, let alone reasonable, discovery relating to them.  As the SDM pointed out, "Hitachi asks that I forever bar BorgWarner from pursuing possible [ECU] claims in the future.  That was not my intention, and not the intention of a discovery ruling." Fourth Discovery Order, Ex. 10 at 6.  The SDM agreed that these claims should be preserved:

> Therefore to clarify my March 13, 2006 Decision (and the following should be an integral part of that Decision), the March 13, 2006 Decision shall not preclude BorgWarner from filing a separate lawsuit against Hitachi in the future, for which discovery was precluded by the March 13, 2006 Decision.

*Id.* Severance or bifurcation is the appropriate means or mechanism to accomplish this result. BorgWarner therefore respectfully requests that the Court specifically adopt this clarification pursuant to Fed. R. Civ. P. 53(g).

### C.     If the Claims Are Bifurcated, Discovery on Them Should Be Stayed

If the Court elects to bifurcate these claims, BorgWarner requests the Court to stay discovery on these claims until after trial. The SDM denied discovery on these claims because he was concerned that the amount of discovery required would disrupt the trial schedule. Now that fact discovery is nearly completed and the focus of the parties is on preparing the case for trial through expert discovery, Markman briefing and summary judgment briefing, beginning a new round of fact discovery would be a serious disruption, which can be avoided if the claims are simply preserved.

BorgWarner has already lost its August trial date due to Hitachi's discovery abuses. It has a very strong interest in trying this matter as soon as possible, preferably in late October or November. Continuing fact discovery while the case is otherwise being prepared for trial would seriously interfere with that preparation. Trial on the other claims may well obviate the need for trial on these claims, which BorgWarner seeks to sever and hold in abeyance. The fact that Hitachi was not forthcoming in discovery hardly justifies penalizing BorgWarner either by postponing the trial or by requiring BorgWarner to try the claims without the benefit of taking discovery first.

### D.     Alternatively, BorgWarner Asks the Court to Reverse the SDM's Discovery Bar and Seeks Expeditious Discovery Relevant to these Claims Before Trial

In the event the Court does not sever or bifurcate these claims, BorgWarner objects to the SDM's March 13, 2006 letter decision, as clarified on April 3, 2006, to the extent that it prohibits BorgWarner from taking discovery on these claims before trial. In particular, the SDM

determined that "the nature of the ECU, the multitude of functions it performs unrelated to VCT control, and the burden to Hitachi of providing voluminous discovery outweighed the possible benefit to BorgWarner." March 13, 2006 letter (as amended April 3, 2006), Ex. 9 at 2. The discovery sought here elicits material that is both relevant and material to the issues of induced and contributory infringement as well as damages. Hitachi cannot avoid responding to relevant and material discovery requests merely because there is some burden involved. After all, Hitachi brought this lawsuit, and is required to provide discovery that will lead to admissible evidence.

BorgWarner would prefer to sever these claims, or bifurcate them, but if the Court requires that they be included in the first trial, then BorgWarner respectfully requests that Hitachi be ordered to provide the necessary discovery expeditiously. The SDM's findings of fact and conclusions of law are subject to *de novo* review. Fed. R. Civ. P. 53(g). Unless these claims are severed and held in abeyance (or bifurcated), BorgWarner asks this Court to reverse the SDM's decision to preclude discovery relating to these claims.

## V.    CONCLUSION

BorgWarner agrees with the SDM that these ECU claims should be preserved and asks the Court to sever or bifurcate them from the other claims to be litigated in this lawsuit so that they can be resolved, if necessary, in the future. Alternatively, if the Court requires that they be tried with all other claims in this action, it asks that the Court reverse the SDM's decision to the extent it precludes discovery on these claims and order that the discovery take place without further delay.

13

Dated: April 21, 2006

Richard K. Herrmann (I.D. #405)
Lewis H. Lazarus (I.D. #2374)
Mary B. Matterer (I.D. #2696)
MORRIS JAMES, HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE  19801
(302) 888-6800
mmatterer@morrisjames.com

Attorneys for BorgWarner Inc. and
BorgWarner Morse TEC Inc.

OF COUNSEL:

SIDLEY AUSTIN BROWN & WOOD, LLP

Hugh A. Abrams
Thomas D. Rein
Lisa Schneider
Marc A. Cavan
Lara V. Hirshfeld
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

14

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of May, 2006, I electronically filed the foregoing document, **PUBLIC VERSION OF MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO SEVER OR BIFURCATE CLAIMS**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Steven J. Balick, Esq.
John G. Day, Esq.
ASHBY & GEDDES
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801


Additionally, I hereby certify that on the 4th day of May, 2006, the foregoing document was served via email on the following non-registered participants:

Michael D. Kaminski, Esq.
Kenneth Krosin, Esq.
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5109
202.672.5300
mkaminski@foley.com
kkrosin@foley.com


                              /s/ Mary B. Matterer
                         Richard K. Herrmann (#405)
                         Mary B. Matterer (I.D. #2696)
                         MORRIS, JAMES, HITCHENS & WILLIAMS LLP
                         222 Delaware Avenue, 10th Floor
                         Wilmington, Delaware 19801
                         302.888.680mmatterer@morrisjames.com

                         Attorneys for Defendants and Counterclaimant,
                         BORGWARNER INC. and
                         BORGWARNER MORSE TEC INC.