IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HITACHI, LTD. and <br> UNISIA NORTH AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> BORGWARNER INC. <br> and BORGWARNER MORSE TEC INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> )    Civil Action No. 05-048-SLR <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| BORGWARNER INC., <br><br> Counterclaimant, <br><br> v. <br><br> HITACHI, LTD. and <br> UNISIA NORTH AMERICA, INC., <br><br> Counterdefendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANTS' FIRST NOTICE OF SUBPOENA FOR DEPOSITION
AND PRODUCTION OF DOCUMENTS TO
<u>HITACHI AUTOMOTIVE PRODUCTS (USA), INC.</u>**

PLEASE TAKE NOTICE that, pursuant to Rules 45 and 30(b)(6) of the Federal Rules of Civil Procedure, the Local Rules of this Court, and the attached subpoena, commencing on May 18, 2006 at 9:00 a.m. in Detroit, Michigan at a place to be mutually agreed upon by counsel, Defendants BorgWarner Inc. and BorgWarner Morse TEC Inc. ("BorgWarner"), by and through its counsel, will take the deposition upon oral examination, of Hitachi Automotive Products (USA), Inc. ("HAP"), through one or more officers, directors, managing agents or other persons who consent to testify on HAP's behalf with regard to the deposition topics set forth in Schedule A (attached hereto).

The depositions will take place under oath and before a duly authorized notary public, or other person authorized by law to administer oaths. The depositions will be recorded by stenographic means by a court reporter and by audio and visual means by a videographer.

Additionally, HAP is to produce the documents set forth in Schedule B on or before May 11, 2006 at the offices of Sidley Austin LLP, One South Dearborn Street, Chicago, Illinois.

Dated: May 5, 2006

/s/ Mary Matterer
Richard K. Herrmann (I.D. #405)
Lewis H. Lazarus (I.D. #2374)
Mary B. Matterer (I.D. #2696)
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19899
(302) 888-6800
mmatterer@morrisjames.com

Hugh A. Abrams *(pro hac vice)*
Thomas D. Rein *(pro hac vice)*
Lisa A. Schneider *(pro hac vice)*
Marc A. Cavan *(pro hac vice)*
Lara V. Hirshfeld *(pro hac vice)*
Sidley Austin LLP
1 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for BorgWarner Inc. and BorgWarner Morse TEC Inc.*

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# United States District Court

### Eastern District of Michigan

## SUBPOENA IN A CIVIL CASE

Hitachi, Ltd. and
Unisia North America, Inc.
    Plaintiffs

v.

CASE NUMBER:   05-048 (SLR)
(District of Delaware)

BorgWarner Inc. and
BorgWarner Morse TEC, Inc.
    Defendants

TO:   Hitachi Automotive Products (USA), Inc.
c/o Michael D. Kaminski
Foley & Lardner LLP
3000 K. Street, N.W., Suite 500
Washington, D.C. 20007-5109

YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

X   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| Location to be determined in Detroit, Michigan<br><br>See attached Schedule A for topics. | May 18, 2006 at 9 a.m. |

X   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
| --- | --- |
| Sidley Austin LLP, One South Dearborn Street, Chicago, Illinois<br><br>See attached Schedule B for document request. | May 11, 2006 |

YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant) | Date |
| --- | --- |
| *[signature]*<br>Mary B. Matterer (Attorney for Defendants) | May 5, 2006 |

Issuing Officer's Name, Address, and Phone Number
Mary B. Matterer, Morris James Hitchens & Williams LLP, 222 Delaware Ave, 10th Floor, Wilmington, DE 19801    (302) 888-6800

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

### Rule 45, Federal Rules of Civil Procedure, Parts C & D

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it (i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, of commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS

A.      "Hitachi" as used herein shall mean plaintiff Hitachi, Ltd., any corporate affiliates, , and any parent or parents, subsidiaries, domestic or foreign, partners, officers, directors, successors, predecessors, assigns, and the employees, attorneys and agents of any and all of them.

B.      "HAP" shall mean Hitachi Automotive Products (USA), Inc., any corporate affiliates, and any parent or parents, subsidiaries, domestic or foreign, partners, officers, directors, successors, predecessors, assigns, and the employees, attorneys and agents of any and all of them.

C.      "UNAI" as used herein shall mean plaintiff Unisia North America, Inc., any corporate affiliates, and any parent or parents, subsidiaries, domestic or foreign, partners, officers, directors, successors, predecessors, assigns, and the employees, attorneys and agents of any and all of them.

D.      "Nissan" as used herein shall mean Nissan Motor Co., Ltd., any corporate affiliates, including Nissan North America Inc., and any parent or parents, subsidiaries, domestic or foreign, partners, officers, directors, successors, predecessors, assigns, and the employees, attorneys and agents of any and all of them.

E.      "Defendants" or "BorgWarner" as used herein shall mean BorgWarner Inc., and BorgWarner Morse TEC Inc.

F.    The term "patent-in-suit" or "the '738 patent" shall mean U.S. Patent No. 5,497,738.

G.    "Variable camshaft component system" or "VCT component system" as used herein means any components (both in combination and on a component-by-component basis) used to vary the camshaft timing in an engine that (1) are purchased by customers (either directly or indirectly) in the United States or (2) are purchased by customers (either directly or indirectly) outside of the United States and then imported into the United States, such components shall include, but not be limited to solenoids, actuators, sensors, oil pumps and engine control units (ECUs).

H.    "ECU" as used herein means an "engine control unit" or "electronic control unit," used to control a number of functions in an engine, and includes ECU components such as the VCT modules themselves, control data or CD ROMs containing control data.

I.    "VCT Module" as used herein is the module(s) in an ECU that controls and operates the components of a VCT Component System, as defined in (G).

J.    "Sensors" as used herein includes air flow sensors, water temperature sensors, throttle position sensors used in a VCT Component System, as defined in (G).

K.    The term "concerning" means comprising, relating to, referring to, reflecting, describing, evidencing or constituting.

L.    "Documents" as used herein is employed in the broadest possible sense and means without limitation any written, printed, typed, stored, photographed, recorded or otherwise reproduced communication, compilation or reproduction including computer or

electronically generated or stored information or data whether assertedly privileged or not and including all copies of drafts of any document which differs in any respect from the original.

M.    "And" means "and/or." "Or" means "and/or."  The plural of any word used herein includes the singular and the singular includes the plural.  The masculine gender of any word used herein includes the feminine and the neuter.  The past tense of a verb used herein includes the present tense and the present tense includes the past tense.

N.    "Any," "all," "each" or "every" means any and all, each and every.

O.    The terms "make," "use," "sell," "offer to sell," and "import" each assume the broadest possible meaning given those terms under U.S.C. § 154 and 35 U.S.C. §271(a).

P.    The term "marketing" shall be used in the broadest sense and shall include documents, discussions and communications within HAP relating to efforts to sell, offers to sell, or the provision of information not necessarily related to an offer to sell, and shall include engineering and technical information.

**DEPOSITION TOPICS**

1. The sale by HAP of ECUs with VCT modules, and the customers, engines and vehicles that have employed such ECUs.

2. The sale by HAP of sensors for engines that employ VCT components and the engines and vehicles that have employed such sensors.

3. The annual revenues, costs, and profits from the sale of ECUs with VCT modules.

4. The annual revenues, costs and profits from the sale of sensors for engines that take VCT components.

5. The sale of ECU software, control data or CD ROMs with control data for engines with VCT and the revenues, costs and profits from such sales.

6. Future plans for HAP to sell VCT component systems (as individual components or in an engine or in a vehicle) to customers within or outside the U.S.

7. HAP's marketing efforts for ECUs with VCT modules (including the VCT modules themselves or control data), including those that occurred within the United States, were directed to customers in the United States, or occurred at events attended by customers located in the United States.

8. HAPs initial development of VCT modules for ECUs (and the control data for this functionality), including but not limited to how and when this was done, the people involved and the events that led to this development.

9. Communications between HAP on the one hand and Nissan, Honda or Ford on the other regarding BorgWarner's VCT technology.

10. Communications between HAP on the one hand and Nissan, Honda or Ford on the other regarding switching from an on-off VCT system to a continuous VCT system.

11. Financial statements prepared by HAP related to VCT Component Systems (as individual components or in an engine or in a vehicle), including but not limited to profit and loss statements.

12. The structure and operation for the electronic controls, including ECUs, of VCT systems sold by HAP and the interrelation between the electronic controls and other components of the engine and the VCT system.

## SCHEDULE B

## DEFINITIONS

A.   "Hitachi" as used herein shall mean plaintiff Hitachi, Ltd., any corporate affiliates, , and any parent or parents, subsidiaries, domestic or foreign, partners, officers, directors, successors, predecessors, assigns, and the employees, attorneys and agents of any and all of them.

B.   "HAP" shall mean Hitachi Automotive Products (USA), Inc., any corporate affiliates, and any parent or parents, subsidiaries, domestic or foreign, partners, officers, directors, successors, predecessors, assigns, and the employees, attorneys and agents of any and all of them.

C.   "UNAI" as used herein shall mean plaintiff Unisia North America, Inc., any corporate affiliates, and any parent or parents, subsidiaries, domestic or foreign, partners, officers, directors, successors, predecessors, assigns, and the employees, attorneys and agents of any and all of them.

D.   "Nissan" as used herein shall mean Nissan Motor Co., Ltd., any corporate affiliates, including Nissan North America Inc., and any parent or parents, subsidiaries, domestic or foreign, partners, officers, directors, successors, predecessors, assigns, and the employees, attorneys and agents of any and all of them.

E.   "Defendants" or "BorgWarner" as used herein shall mean BorgWarner Inc., and BorgWarner Morse TEC Inc.

F.  The term "patent-in-suit" or "the '738 patent" shall mean U.S. Patent No. 5,497,738.

G.  "Variable camshaft component system" or "VCT component system" as used herein means any components (both in combination and on a component-by-component basis) used to vary the camshaft timing in an engine that (1) are purchased by customers (either directly or indirectly) in the United States or (2) are purchased by customers (either directly or indirectly) outside of the United States and then imported into the United States, such components shall include, but not be limited to solenoids, actuators, sensors, oil pumps and engine control units (ECUs).

H.  "ECU" as used herein means an "engine control unit" or "electronic control unit," used to control a number of functions in an engine, and includes ECU components such as the VCT modules themselves, control data or CD ROMs containing control data.

I.  "VCT Module" as used herein is the module(s) in an ECU that controls and operates the components of a VCT Component System, as defined in (G).

J.  "Sensors" as used herein includes air flow sensors, water temperature sensors, throttle position sensors used in a VCT Component System, as defined in (G).

K.  The term "concerning" means comprising, relating to, referring to, reflecting, describing, evidencing or constituting.

L.  "Documents" as used herein is employed in the broadest possible sense and means without limitation any written, printed, typed, stored, photographed, recorded or otherwise reproduced communication, compilation or reproduction including computer or

electronically generated or stored information or data whether assertedly privileged or not and including all copies of drafts of any document which differs in any respect from the original.

M.  "And" means "and/or." "Or" means "and/or." The plural of any word used herein includes the singular and the singular includes the plural. The masculine gender of any word used herein includes the feminine and the neuter. The past tense of a verb used herein includes the present tense and the present tense includes the past tense.

N.  "Any," "all," "each" or "every" means any and all, each and every.

O.  The terms "make," "use," "sell," "offer to sell," and "import" each assume the broadest possible meaning given those terms under U.S.C. § 154 and 35 U.S.C. §271(a).

P.  The term "marketing" shall be used in the broadest sense and shall include documents, discussions and communications within HAP relating to efforts to sell, offers to sell, or the provision of information not necessarily related to an offer to sell, and shall include engineering and technical information.

## INSTRUCTIONS

Please comply with the following instructions:

A.  All documents that respond, in whole or in part, to any portion of the requests below are to be produced in their entirety, including all attachments and enclosures.

B.	All documents shall be produced either in the order and in the manner that they are kept in the usual course of business or shall be organized and labeled to correspond with the categories of this Request.  The documents shall be produced in their original file folder, binder or other cover or container unless that is not possible.  Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label or other means of identification of such cover or other container shall be attached to the document.

C.	Any document called for herein that you claim to be privileged against discovery on any ground shall be identified on a privilege log.

D.	Notwithstanding any claim that a document is protected from disclosure, any document so withheld must be produced with the portion claimed to be protected excised.

E.	To the extent no responsive documents exist in response to a Request, and therefore no responsive documents will be produced in response to that Request, please so indicate in the response.

F.	Documents containing confidential information shall be marked "confidential" or "confidential attorneys eyes only" and their disclosure shall be limited in accordance with the Protective Order entered in Civil Action No. 05-048-SLR.

## DOCUMENT REQUESTS

1.	Documents sufficient to show sales by HAP of ECUs with VCT modules, and the customers, engines and vehicles that have employed such ECUs.

2.	Documents sufficient to show sales by HAP of sensors for engines that employ VCT components and the engines and vehicles that have employed such sensors.

3.	Documents sufficient to show the annual revenues, costs, and profits from the sale of ECUs with VCT modules.

4.	Documents sufficient to show the annual revenues, costs and profits from the sale of sensors for engines that take VCT components.

5.	Documents relating to the sale of ECU software, control data or CD ROMs with control data for engines with VCT and the revenues, costs and profits from such sales.

6.	Documents relating to future plans for HAP to sell VCT component systems (as individual components or in an engine or in a vehicle) to customers within or outside the U.S.

7.	Documents relating to HAP's marketing efforts for ECUs with VCT modules (including the VCT modules themselves or control data), including those that occurred within the United States, were directed to customers in the United States, or occurred at events attended by customers located in the United States.

8.	Documents relating to HAPs initial development of VCT modules for ECUs (and the control data for this functionality), including but not limited to how and when this was done, the people involved and the events that led to this development.

9.	Communications between HAP on the one hand and Nissan, Honda or Ford on the other regarding BorgWarner's VCT technology.

10.     Communications between HAP on the one hand and Nissan, Honda or Ford on the other regarding switching from an on-off VCT system to a continuous VCT system.

11.     Financial statements prepared by HAP related to VCT Component Systems (as individual components or in an engine or in a vehicle), including but not limited to profit and loss statements.

12.     Documents sufficient to show the structure and operation for the electronic controls, including ECUs, of VCT systems sold by HAP and the interrelation between the electronic controls and other components of the engine and the VCT system.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of May, 2006, I electronically filed the foregoing document, **DEFENDANTS' FIRST NOTICE OF DEPOSITION OF HITACHI AUTOMOTIVE PRODUCTS (USA), INC.**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Steven J. Balick, Esq.
John G. Day, Esq.
ASHBY & GEDDES
222 Delaware Avenue, 17th Floor
Wilmington, DE  19801

Additionally, I hereby certify that on the 5th day of May, 2006, the foregoing document was served via email and overnight mail on the following non-registered participants:

Michael D. Kaminski, Esq.
Liane Peterson, Esq.
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C.  20007-5109
mkaminski@foley.com
lpeterson@foley.com

/s/ Mary Matterer
Richard K. Herrmann (#405)
Mary B. Matterer (I.D. #2696)
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
mmatterer@morrisjames.com

Attorneys for Defendants and Counterclaimant,
BORGWARNER INC., and
BORGWARNER MORSE TEC INC.