IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HITACHI, LTD., and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., | ) ) ) | **REDACTED PUBLIC VERSION** |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 05-048-SLR |
| BORGWARNER INC., and BORGWARNER MORSE TEC INC., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |
| BORGWARNER INC., | ) ) | |
| Counterclaimant, | ) ) | |
| v. | ) ) | |
| HITACHI, LTD., and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., | ) ) ) | |
| Counterdefendants. | ) ) | |

**PLAINTIFFS' REPLY TO BORGWARNER'S OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

*Of Counsel:*

William J. Robinson
Kenneth E. Krosin
Michael D. Kaminski
Pavan K. Agarwal
C. Edward Polk, Jr.
FOLEY & LARDNER LLP
3000 K St., N.W., Suite 500
Washington, DC 20007-5109
(202) 672-5300

Dated: July 31, 2006

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

I.  HITACHI'S MOTION FOR LEAVE TO AMEND SHOULD BE GRANTED ............... 1

    A.  Hitachi's Delay, If Any, Was Not Undue Under the Circumstances, and
        BorgWarner Had Notice of Hitachi's Evolving Defense ......................................... 3

        1.  Hitachi's Proposed Amendment Is Not Untimely Because It Is
            Based Upon Facts Learned and Developed During Discovery ................... 4

        2.  Hitachi Needed to Review and Analyze Over 25,000 BorgWarner
            Documents Just From June 2005 In Order to Develop Its
            Inequitable Conduct Defense ...................................................................... 5

        3.  Hitachi Also Needed to Conduct Depositions To Develop Its
            Inequitable Conduct Defense ...................................................................... 6

        4.  BorgWarner Had Advance Notice of Hitachi's Inequitable Conduct
            Defense In Hitachi's Supplemental Interrogatory Responses and
            Motion to Compel the Production of Withheld Prosecution
            Documents ................................................................................................. 10

        5.  In View of the Circumstances Described Above, The Cases Upon
            Which BorgWarner Relies Do Not Support Its Argument ....................... 13

        6.  Delay Alone, Without Prejudice or Bad Faith, Is An Insufficient
            Ground for Denial of Leave to Amend ...................................................... 14

    B.  BorgWarner Will Not Be Prejudiced By Hitachi's Amendment .......................... 15

        1.  Hitachi's Proposed Amendment Will Not Prejudice BorgWarner
            Because No Further Discovery Will Be Needed ........................................ 15

        2.  BorgWarner Was Not Prejudiced by Hitachi's Interrogatory
            Responses, Which, Along With Hitachi's Motion to Compel, Gave
            BorgWarner Notice of Hitachi's Inequitable Conduct Allegations .......... 17

    C.  Hitachi Has Not Acted In Bad Faith .................................................................... 18

II.  CONCLUSION .................................................................................................................. 20

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Adams v. Gould Inc.,*
    739 F.2d 858 (3d Cir. 1984), *cert. denied*, 469 U.S. 1122 (1985) ...................................... 19

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc,*
    989 F. Supp. 1237 (N.D. Cal. 1997) ...................................................................... 10

*Agere Sys. Guardian Corp. v. Proxim, Inc.,*
    190 F. Supp. 2d 726 (D. Del. 2002) ...................................................................... 9, 18

*Aloe Vera of Am., Inc. v. United States,*
    233 F.R.D. 532 (D. Ariz. 2005) ...................................................................... 4, 13, 14, 18

*Cornell & Co. v. Occupational Safety & Health Review Comm'n,*
    573 F.2d 820 (3d Cir. 1978).................................................................................... 14

*Cureton v. Nat'l Collegiate Athletic Ass'n,*
    252 F.3d 267 (3d Cir. 2001)................................................................................... 14

*EMC Corp. v. Storage Tech. Corp.,*
    921 F. Supp. 1261 (D. Del. 1996) ......................................................................... 18

*Enzo Life Sciences, Inc. v. Digene Corp.,*
    270 F. Supp. 2d 484 (D. Del. 2003) ...................................................................... 9, 10

*Floyd v. Ohio Gen. Ins. Co.,*
    701 F. Supp. 1177 (D.S.C. 1988) ......................................................................... 12

*Foman v. Davis,*
    371 U.S. 178 (1962)........................................................................................... 9, 19

*Go Med. Indus. PTY Ltd. v. C.R. Bard, Inc.,*
    Civ. A. No. 1:93cv-1538-HTW, 1995 WL 605802 (N.D. Ga. July 6, 1995)................ 5, 10

*Lorenz v. CSX Corp.,*
    1 F.3d 1406 (3d Cir. 1993)................................................................................... 14

*MercExchange, L.L.C. v. eBay, Inc.,*
    271 F. Supp. 2d 784 (E.D. Va. 2002) .................................................................. 5, 9

*ResQNet.Com, Inc. v. Lansa, Inc.,*
    382 F. Supp. 2d 424 (S.D.N.Y. 2005)................................................................... 4, 5

*Rhone-Poulenc Agro S.A. v. Monsanto Co.,*
    73 F. Supp. 2d 537 (M.D.N.C. 1999) ................................................................... 9, 10

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,*
    742 F.2d 786 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985) .................................... 18

*Symbol Techs., Inc. v. Proxim Inc.,* No. 01-801-SLR, 2003 WL 1905637 (D. Del. April
    17, 2003) ...................................................................................................... 7, 8, 9

*Trueposition, Inc. v. Allen Telecom, Inc.*,
  No. Civ. A. 01-823 GMS, 2002 WL 1558531 (D. Del. July 16, 2002) .......................... 19

*United States  ex rel B & R, Inc. v. Donald Lane Constr.*,
  19 F. Supp. 2d 217 (D. Del. 1998) .................................................................................. 19

## OTHER AUTHORITIES

BorgWarner's Opposition to Hitachi's Motion to Compel the Production of Withheld
  Prosecution Documents (Apr. 3, 2006) ........................................................... 10, 15

BorgWarner's Opposition to Hitachi's Motion For Leave to File a Third Amended
  Complaint (July 10, 2006) ................................................................... 3, 12, 14, 16

Defendants' Response to Plaintiff's First Set of Interrogatories (Nos. 1-12), Interrogatory
  No. 11 (June 8, 2005) (attached as Ex. B) ............................................................ 6

Deposition of   **REDACTED**   (Dec.  21, 2005) (attached as Ex. I) ............................. 15

E-mail from C. Edward Polk to H. Abrams (May 26, 2006) (attached as Ex. H) ............ 12

E-mail from L. Hirshfeld to C. Edward Polk (Feb. 22, 2006) (attached as Ex. E) ............. 9

Hearing Tr. (May 22, 2006) (attached as Ex. C) ............................................................... 6

Hitachi's Motion to Compel the Production of Withheld Prosecution Documents (March
  13, 2006) ................................................................................................................ 9

Plaintiff Hitachi, Ltd.'s First Set of Interrogatories to Defendants, Definition No. 8 (April
  25, 2005) (attached as Ex. D) ................................................................................ 7

## RULES

Fed. R. Civ. P. 9(b) .................................................................................................... passim

## I.    HITACHI'S MOTION FOR LEAVE TO AMEND SHOULD BE GRANTED

BorgWarner opposes Hitachi's Motion For Leave to File a Third Amended Complaint based on its allegations of undue delay, prejudice, and bad faith. BorgWarner's arguments should be rejected for at least the following five reasons.

*First*, despite BorgWarner's arguments to the contrary, Hitachi has not unduly delayed in moving for leave to amend. Rather, Hitachi needed time to diligently gather the facts supporting its new inequitable conduct defense. BorgWarner produced over 140,000 pages of documents in this litigation, including 25,000 to 30,000 pages during the June-July 2005 time frame referenced by BorgWarner in its answering brief. Hitachi had to review this large production and also conduct depositions through February 2006, just three months before Hitachi formally notified BorgWarner of its intent to seek leave to amend.

*Second*, throughout the course of this litigation, Hitachi has fully and timely informed BorgWarner about its evolving inequitable conduct defense as facts were learned through consideration of the documents and depositions. In particular, Hitachi supplemented its interrogatory responses in November 2005, February 2006 and April 2006, thus making BorgWarner aware of potentially new bases for Hitachi's inequitable conduct defense.

*Third*, the parties have already engaged in substantial debate regarding the new bases for Hitachi's inequitable conduct defense. For example, in February 2006, Hitachi informed BorgWarner that it intended to file a motion under the crime-fraud exception to the attorney-client privilege to obtain discovery of BorgWarner's prosecution documents relating to the '738 patent. The new bases for Hitachi's inequitable conduct defense

served as the foundation for that motion. After the parties agreed to a briefing schedule, Hitachi filed the aforementioned motion to compel in March 2006, laying out in detail the new bases for its inequitable conduct defense in a 40-page motion. Briefing on this motion continued through the beginning of May 2006.

During this same month, Hitachi informed BorgWarner of its intent to amend the complaint to include the new bases for Hitachi's inequitable conduct defense. Even assuming *arguendo* that there was some delay by Hitachi in filing its present motion to amend, which certainly is not the case, delay alone is generally insufficient to support a denial of leave to amend. Instead, BorgWarner must also show prejudice or bad faith, but can show neither.

*Fourth*, BorgWarner will not suffer any prejudice should the Court grant Hitachi's motion to amend. Hitachi's inequitable conduct theories are based on the acts of BorgWarner and its representatives. BorgWarner knows of and has control of those facts. BorgWarner now says, however, that it might need further discovery. Notably, when Hitachi served interrogatory responses stating the bases for its new inequitable conduct claims and then filed its motion to compel, BorgWarner never sought the additional discovery that it now claims is necessary. As to **REDACTED**

, BorgWarner itself coordinated with and prepared **REDACTED**, and performed cross-examination relating to the inequitable conduct issues. BorgWarner surely knows the details of **REDACTED** involvement in its own patent prosecution. As to **REDACTED**

, BorgWarner now argues that it will need discovery from **REDACTED** on inventorship issues. But Hitachi's inequitable conduct defense regarding inventorship is based upon BorgWarner's own documents and evidence, not testimony from **REDACTED**

2

*Fifth*, BorgWarner incorrectly accuses Hitachi of conducting this litigation in bad faith. BorgWarner's allegations, which bear no relationship to Hitachi's new inequitable conduct defenses, are nothing more than an attempt to poison the well. While discovery in this case admittedly has been extensive and hard fought, BorgWarner's self-serving accusations are both inaccurate and unfair. And, while it is tempting to respond in kind, Hitachi will not waste the Court's time by engaging in the "blame game."

In sum, Rule 15 amendments should be liberally granted. Because BorgWarner has failed to demonstrate that Hitachi unduly delayed, that BorgWarner would be prejudiced by allowance of the amendment, or that Hitachi acted in bad faith in moving for leave to amend, Hitachi should be permitted to have its very significant inequitable conduct case heard on the merits.

**A.    Hitachi's Delay, If Any, Was Not Undue Under the Circumstances, and BorgWarner Had Notice of Hitachi's Evolving Defense**

BorgWarner wrongly claims that Hitachi unduly delayed in submitting its Motion for Leave to Amend, and that Hitachi had "long been aware of the facts it relies on[.]" BorgWarner's Opposition to Hitachi's Motion For Leave to File a Third Amended Complaint (July 10, 2006) ("Opposition"), D.I. 234 at 5. BorgWarner even implies that Hitachi could have amended a year ago. That is simply not the case. In order to develop the facts necessary to plead its inequitable conduct defense with particularity under Rule 9(b), Hitachi had to engage in hard fought and protracted discovery. Furthermore, Hitachi informed BorgWarner of its inequitable conduct charges as it developed the details, through its interrogatory responses and through its motion to compel under the crime-fraud exception. BorgWarner thus had notice of the new bases for Hitachi's

inequitable conduct defense well in advance of Hitachi's formal motion for leave to amend.

     1.    Hitachi's Proposed Amendment Is Not Untimely Because It Is Based Upon Facts Learned and Developed During Discovery

BorgWarner's insistence that Hitachi should have amended its pleading much earlier ignores the fact that Hitachi had to take the time to conduct discovery in order to develop its inequitable conduct case to the point where it could be properly pled. "Learning of a factual basis for a defense after the pleading stage and during discovery provides a perfectly permissible reason for failing to assert the defense at the pleading stage." *ResQNet.Com, Inc. v. Lansa, Inc.*, 382 F. Supp. 2d 424, 450 (S.D.N.Y. 2005) (internal quotation marks omitted) (granting motion for leave to amend to add inequitable conduct defense nearly three years after pleading stage based on newly discovered evidence).

In the very case repeatedly cited by BorgWarner, *Aloe Vera of America, Inc. v. United States*, 233 F.R.D. 532 (D. Ariz. 2005), the district court permitted a third amendment to a complaint in a case that had been pending for nearly five years, "because the discovery that has lead [sic] to the need to seek this amendment occurred after the second amended complaint was filed" and because the amendment was "more in the nature of amending the pleadings to conform to the evidence thus far elicited in discovery." *Id.* at 535. Likewise, Hitachi only seeks to amend its complaint to conform to evidence it has painstakingly discovered and developed over the past few months.

Because inequitable conduct is a form of fraud and thus is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), and because

BorgWarner moved to strike Hitachi's original inequitable conduct defense on the ground that it was not pled with sufficient specificity, Hitachi sought to fully develop the relevant details before seeking leave to amend. *See ResQNet*, 382 F. Supp. 2d at 450; *Go Med. Indus. PTY Ltd. v. C.R. Bard, Inc.*, Civ. A. No. 1:93cv-1538-HTW, 1995 WL 605802, at *4 (N.D. Ga. July 6, 1995) (granting motion for leave to amend answer to add allegations of inequitable conduct, where moving party took four months to obtain "additional, confirming information").

2.   Hitachi Needed to Review and Analyze Over 25,000 BorgWarner Documents Just From June 2005 In Order to Develop Its Inequitable Conduct Defense

BorgWarner contends that because it produced a few supporting documents in June of 2005, such as the '735 patent application and the **REDACTED** Article, Hitachi could have brought this Motion earlier. This argument conveniently ignores the fact that these two documents were included among approximately 25,000 to 30,000 pages of documents that were produced during June and July 2005, necessitating considerable review and analysis on Hitachi's part. BorgWarner produced an estimated 100,000 additional pages since then. Hitachi did not even locate and recognize the significance of the **REDACTED** Article among this vast production until the fall of 2005. *See, e.g., MercExchange, L.L.C. v. eBay, Inc.*, 271 F. Supp. 2d 784, 786 (E.D. Va. 2002) (granting motion for leave to amend to add inequitable conduct defense after close of discovery, where moving party had received necessary documents six months earlier in a batch of over 20,000 produced pages and, after receiving documents, required additional analysis time). Additionally, documents pertaining to prior sales to **REDACTED** – which also were relevant to Hitachi's inequitable conduct allegations – were still being produced by

BorgWarner into February 2006, only three and a half months before Hitachi informed BorgWarner of its intention to file the present motion. Thus, BorgWarner's argument that Hitachi had all the information it needed a year ago to amend its inequitable conduct defense is without merit.

### 3. Hitachi Also Needed to Conduct Depositions To Develop Its Inequitable Conduct Defense

The new bases for Hitachi's inequitable conduct defense also required deposition testimony from BorgWarner witnesses. In May 2005, Hitachi proffered interrogatories requesting that BorgWarner "[i]dentify each Person who was involved in the preparation and/or prosecution of the '738 patent or Related Patents or Patent Applications, and summarize the respective role played by each such Person." In response, BorgWarner identified only (i) Mr. Siemon and Mr. Quinn as the two inventors of the '738 patent, (ii) **REDACTED** as prosecuting attorney, and (iii)   **REDACTED** Defendants' Response to Plaintiff's First Set of Interrogatories (Nos. 1-12), Interrogatory No. 11 (June 8, 2005) (attached as Ex. A). The deposition testimony, however, demonstrated that 

**REDACTED**

also was closely involved in the preparation and prosecution of BorgWarner's VCT applications.

**REDACTED**

. And, although BorgWarner did not identify **REDACTED** in its interrogatory response, the record evidence (including documents on BorgWarner's own privilege log) shows that he was indeed involved. Even BorgWarner

admitted that **REDACTED** was involved in its VCT patent applications. (*See* Hearing

Tr. (May 22, 2006) at 80:3-5 (BorgWarner's counsel stating that "     **REDACTED**

obtained information, he certainly was involved in the various patent applications that

were going on.") (attached as Ex. B)), and documents produced in the past few months

show that     **REDACTED**          decided whether and when to file the '738 patent

application with the USPTO.[1]

    Thus, Hitachi was not in a position to properly plead its inequitable conduct

defense in its complaint until it had received BorgWarner's belated document production,

and conducted depositions to sort out the respective involvement of

     **REDACTED**          in the prosecution, as well as         **REDACTED**

                  These depositions continued through February 2006.

    Leave to amend to add a defense of inequitable conduct has frequently been

granted under similar circumstances. For example, in *Symbol Technologies*, this Court

granted a motion to amend to add new inequitable conduct bases after fact discovery had

already closed. *See Symbol Techs., Inc. v. Proxim Inc.*, No. 01-801-SLR, 2003 WL

1905637 (D. Del. April 17, 2003). In that case, although the relevant documents had

been produced several months earlier, the alleged infringer needed to time review a large

number of documents and also needed time to take the relevant depositions to "confirm"

---

[1]    As to the '735 patent, BorgWarner did not explain who was involved in its
prosecution, even though requested in Hitachi's interrogatories. *See* Plaintiff Hitachi,
Ltd.'s First Set of Interrogatories to Defendants, Definition No. 8 (April 25, 2005)
(defining "Related Patents or Patent Applications") (attached as Ex. C). This required
Hitachi to take depositions to understand the involvement of Mr. Spenard for example.

its new grounds for inequitable conduct. 2003 WL 1905637, at *2. As such, the motion to amend was not filed until after fact discovery had already closed.

Like BorgWarner, the patentee in *Symbol Technologies* argued that the alleged infringer had unduly delayed in bringing its motion to amend since, as noted above, the relevant documents had been produced months before the alleged infringer filed its motion to amend. The patentee also argued that it would be prejudiced because it would need to take additional discovery "which would increase costs and potentially delay the case." 2003 WL 1905637, at *2. This Court found these arguments unpersuasive for several reasons.

*First*, this Court found that the "proposed amendment is narrow and largely based on facts defendant has known throughout the case." 2003 WL 1905637, at *3. Similarly, Hitachi's new inequitable conduct bases are narrowly focused on the non-disclosure of the **REDACTED** Article, the '735 patent, prior sales to **REDACTED** and inventorship problems. The facts underlying these issues are BorgWarner's own facts. Hitachi uncovered these facts and brought them to BorgWarner's attention throughout discovery via updated interrogatory responses and via its motion to compel under the crime-fraud exception.

*Second*, this Court found no evidence that the motion was unduly delayed or that it was filed in bad faith or with dilatory motive. 2003 WL 1905637, at *3. Hitachi has not unduly delayed and plainly has not acted in bad faith. Hitachi's sole reason for filing its present motion to amend is so that Hitachi can present a substantial defense, learned during discovery, to BorgWarner's infringement allegations: "[i]f the underlying facts of circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be

afforded an opportunity to test his claim on the merits." *Symbol Technologies*, 2003 WL 1905637, at *1 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

*Third*, this Court granted the defendant the right to take additional discovery "related to the narrow issue of inequitable conduct." Here, Hitachi submits that no further discovery is needed. Depositions of the relevant people -- the inventors, prosecuting attorneys and other **REDACTED** -- have already been taken. The parties have extensively briefed the involvement of these persons in the prosecution of the '738 patent. During this briefing, BorgWarner never argued that it needed additional discovery to defend itself.

In sum, this Court had already heard and rejected arguments similar to those presented in BorgWarner's Opposition. Similar arguments opposing a motion to amend have also been rejected in at least two other cases from this Court cited in Hitachi's opening brief. *See Enzo Life Sciences, Inc. v. Digene Corp*, 270 F. Supp.2d 484 (D. Del. 2003); *Agere Sys. Guardian Corp. v. Proxim, Inc.*, 190 F. Supp.2d 726 (D. Del. 2002).

Cases in other Circuits follow the reasoning set forth in *Symbol Technologies*. For example, in *MercExchange*, the district court granted such leave to amend even though discovery had closed, where the moving party had had to review 20,000 pages of produced documents, "decipher[] the relationship" between several patent applications, and depose a key witness in order to build its inequitable conduct case. *MercExchange*, 271 F. Supp. 2d at 786-87.

In *Rhone-Poulenc Agro S.A. v. Monsanto Co.*, 73 F. Supp. 2d 537 (M.D.N.C. 1999), the court granted such leave to amend one month after discovery closed, where the moving party waited six months after the necessary documents were produced in hopes of

obtaining additional "clarifying information" at depositions held late in discovery. *Id.* at 538-39.  In *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc*, 989 F. Supp. 1237 (N.D. Cal. 1997) (which was found "particularly persuasive" by this Court in *Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 488 (D. Del. 2003)), leave to amend was granted over a year after the previous amended pleading was filed, even though the supporting facts were available in USPTO file histories, the moving party was alleged to know those facts "long before" its motion, and more recent depositions confirmed those facts. 989 F. Supp. at 1247-48.  The court ruled that, in light of the Rule 9(b) heightened pleading requirements for inequitable conduct, the party was "entitled to confirm factual allegations" through depositions before moving to amend.  *Id.* at 1247.

And, in *Go Medical*, leave to amend was granted although facts in support of the motion were discovered five to ten months earlier, on the grounds that the court "[would] not penalize defendant for obtaining additional, confirming information" in light of the Rule 9(b) requirements. *Go Med.*, 1995 WL 605802, at *4.  Hitachi, likewise, did not unduly delay, but instead "appropriately fulfilled its obligation to investigate its claim thoroughly prior to making it." *Rhone-Poulenc*, 73 F. Supp. 2d at 539.

4.    <u>BorgWarner Had Advance Notice of Hitachi's Inequitable Conduct Defense In Hitachi's Supplemental Interrogatory Responses and Motion to Compel the Production of Withheld Prosecution Documents</u>

As previously discussed in Hitachi's opening brief in support of its Motion for Leave to Amend, Hitachi supplemented its interrogatory responses throughout discovery, placing BorgWarner on notice of Hitachi's evolving inequitable conduct defense.  Thus, BorgWarner had a full opportunity to conduct its own discovery on those issues, but

chose not to. Furthermore, as soon as the depositions were completed in February 2006, Hitachi told BorgWarner that it intended to file a motion to compel prosecution documents under the crime-fraud exception based on BorgWarner's inequitable conduct. BorgWarner denied Hitachi's assertions as baseless. *See* E-mail from L. Hirshfeld to C. Edward Polk (Feb. 22, 2006) responding to Hitachi's e-mail about planned motion to compel (attached as Ex. D). In response, BorgWarner never claimed it did not know or understand the grounds for the allegations. Rather, BorgWarner knew exactly what was being alleged, based upon Hitachi's previously supplemental interrogatory responses.

After agreeing to a briefing schedule with BorgWarner, Hitachi filed its Motion to Compel the Production of Withheld Prosecution Documents, based upon the crime-fraud exception, on March 13, 2006 -- about two months before Hitachi notified BorgWarner of its intention to also amend the complaint.[2] As already explained, this motion set forth in detail BorgWarner's nondisclosure of the **REDACTED** Article and the '735 patent application to the USPTO, two of the bases for Hitachi's new inequitable conduct defense. *See generally* Hitachi's Motion to Compel the Production of Withheld Prosecution Documents (March 13, 2006) ("Motion to Compel") (attached as Ex. E).

BorgWarner fully understood that the new bases for Hitachi's inequitable conduct defense had become issues in the case, and knew all the relevant details, even before Hitachi formally moved to amend its complaint to conform to the evidence. In fact, BorgWarner stated in its Opposition to Hitachi's Motion to Compel that Hitachi was

---

[2]    In light of BorgWarner's accusations of repeated delays on Hitachi's part, it is interesting to note that BorgWarner took a month to respond to Hitachi's inquiry (pursuant to Local Rule 7.1.1) into whether BorgWarner was going to oppose Hitachi's proposed amendment.

"attempt[ing] to equate inequitable conduct with fraud," and had "fall[en] far short of establishing inequitable conduct[.]" BorgWarner's Opposition to Hitachi's Motion to Compel the Production of Withheld Prosecution Documents (Apr. 3, 2006) ("Opposition to Motion to Compel"), Ex. F at 2. BorgWarner went on to analyze at length factors clearly relevant to inequitable conduct and fraud, including whether **REDACTED** and Mr. **REDACTED** owed a duty of candor to the USPTO and whether the **REDACTED** l Article and '735 patent were material prior art. At no point did BorgWarner state that it did not understand the allegations or needed more discovery to flesh them out.

At this point, Hitachi is simply attempting to formally amend its complaint to conform to the evidence of the new bases for inequitable conduct that it has learned about in discovery, and that BorgWarner already knows about and has argued against. Interrogatories and motions have been recognized by courts as ways of providing notice of an intended defense to the party opponent. *See, e.g., Floyd v. Ohio Gen. Ins. Co.,* 701 F. Supp. 1177, 1187 (D.S.C. 1988) (permitting amendment of pleadings to add affirmative defenses where interrogatories, motions and argument had already put party opponent on notice of the defenses).[3]

In short, BorgWarner had advance notice of the new bases for Hitachi's inequitable conduct defense on the grounds stated in its proposed amendment, so

---

[3]    BorgWarner's contentions that Hitachi's interrogatory responses did not meet the heightened pleading requirements of Rule 9(b) is a red herring. BorgWarner fully understood the allegations being made; Hitachi identified the precise material that was withheld from the Patent Office during prosecution of the '738 patent. BorgWarner also ignores the extensive briefing related to Hitachi's Motion to Compel where detailed facts were provided and argued over by both sides.

BorgWarner can hardly argue now that Hitachi unduly delayed in formally moving for leave to amend.[4]

### 5.    In View of the Circumstances Described Above, The Cases Upon Which BorgWarner Relies Do Not Support Its Argument

In an attempt to support its argument regarding undue delay, BorgWarner relies upon several cases that are distinguishable from, or even support, Hitachi's position. In the *Aloe Vera* case, which BorgWarner cites repeatedly, the district court granted leave to amend with respect to one allegation that was based upon evidence that had recently come out in discovery, reasoning that the amendment allowed the pleadings "to conform to the evidence thus far elicited in discovery[.]" *Aloe Vera*, 223 F.R.D at 534-35. The court only denied leave to amend with respect to a second cause of action, where the original complaint and other correspondence showed that the moving parties "were aware of the facts supporting this theory of liability from the beginning" but failed to plead it for several years. *Id.* at 535. Furthermore, the court recognized that the proposed new cause of action might be barred by sovereign immunity, thus making amendment futile. *Id.* at 536-37. Those facts do not fit this case. There is no delay of several years, and, during the parties meet and confer, BorgWarner indicated that it would not oppose the present motion on "futility" grounds.

---

[4]    While BorgWarner alleges that Hitachi's proposed amended complaint is "bare-bones," Opposition, D.I. 234 at 7, the fact is that Hitachi has attempted to state the pleadings with particularity, without disclosing BorgWarner confidential information. That is exactly what Hitachi's counsel told BorgWarner's counsel when the amendment at issue was proposed: "We have tried to make our factual contentions without including confidential information." E-mail from C. Edward Polk to H. Abrams (May 26, 2006) (attached as Ex. G).

BorgWarner also cites *Lorenz v. CSX Corp.* and *Cureton v. National Collegiate Athletic Association*, which are distinguishable from Hitachi's situation on similar grounds to *Aloe Vera. See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1410, 1414 (3d Cir. 1993) (holding leave to amend properly denied where moving party had had all facts available two years earlier at time of last amendment, and in addition, proposed amendment was futile); *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272-75 (3d Cir. 2001) (holding leave to amend properly denied where summary judgment had already been entered, all facts supporting proposed amendment were known almost two and a half years earlier, and issue had not been raised at earlier point in the litigation).   In stark contrast, as described above, Hitachi did not have all the necessary facts at its disposal until at least February 2006, and did inform BorgWarner of its evolving inequitable conduct defense as discovery proceeded.   Furthermore, no judgment has yet been entered (trial is not even scheduled) and futility is not an issue.   BorgWarner's reliance on these extreme cases in opposing Hitachi's motion is therefore misplaced.

6.   <u>Delay Alone, Without Prejudice or Bad Faith, Is An Insufficient Ground for Denial of Leave to Amend</u>

Hitachi was forced to delay its amendment primarily to develop its inequitable conduct case through discovery, and in some instances to wait for a response or other action by BorgWarner.   Where, as here, delay is not undue, delay alone is not sufficient to deny leave to amend; some additional factor, such as prejudice or bad faith, also must be shown. *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978); *Deakyne v. Comm'rs of Lewes*, 416 F.2d 290, 300 (3d Cir. 1969).   As

discussed below, BorgWarner has not shown that it will suffer prejudice as a result of this amendment, or that Hitachi acted in bad faith by seeking leave to amend.

**B.    BorgWarner Will Not Be Prejudiced By Hitachi's Amendment**

BorgWarner contends that if Hitachi's motion is granted, it will be prejudiced by having to seek additional discovery, and that the notice provided by Hitachi's interrogatory responses was insufficient to cure such prejudice. In reality, no further discovery is needed and BorgWarner has not been prejudiced.

**1.    Hitachi's Proposed Amendment Will Not Prejudice BorgWarner Because No Further Discovery Will Be Needed**

BorgWarner contends that Hitachi's delay in seeking leave to amend will prejudice BorgWarner by requiring BorgWarner to now seek additional discovery, which BorgWarner claims it "is unlikely to be able to obtain in a timely manner." Opposition, D.I. 234 at 8. But, as the inequitable conduct claims being added are based on the actions of BorgWarner and its representatives, BorgWarner knows the facts and has control over its own people and representatives.

Even the very limited arguments BorgWarner raises for just two of the inequitable conduct bases have no merit.[5] First, as to **REDACTED** who was a prosecuting attorney for the patent in suit, BorgWarner suggests that it now might need further information from **REDACTED** who may not fully cooperate based on an alleged possible conflict. This is inaccurate.

BorgWarner does not need further discovery from **REDACTED** and it has the power to ask its own prosecution counsel for assistance should it so desire. If

---

[5]    BorgWarner makes no argument that two of Hitachi's bases for inequitable conduct, the **REDACTED** Article and the prior sales to ] **REDACTED** need *any* additional discovery.

BorgWarner actually needed more discovery from **REDACTED**BorgWarner would have pursued it after Hitachi notified BorgWarner of its allegations regarding the '735 patent, and most certainly after Hitachi filed its Motion to Compel on this point in March 2006. BorgWarner did not seek more discovery at that time, and instead was content relying upon numerous aspects of **REDACTED** testimony in its opposition to Hitachi's Motion to Compel. *See* Opposition to Motion to Compel Ex. F at 7, 10, 18, 27-28 (citing and/or quoting testimony of **REDACTED**. In any event, BorgWarner knows all the details of **REDACTED** participation in BorgWarner's own patent applications.

Moreover, BorgWarner's eleventh hour claim that**REDACTED**will not cooperate with BorgWarner does not withstand scrutiny. Indeed,**REDACTED** has fully cooperated and supported BorgWarner's efforts in this case. BorgWarner's counsel coordinated the scheduling of **REDACTED** deposition, met with **REDACTED** to prepare him for the deposition, and asked several pages of cross-examination questions, including questions that relate to inequitable conduct. *See* Deposition of **REDACTED** (Dec. 21, 2005), at [11:9 – 12:6], [176:7 – 191:17] (attached as Ex. H).

BorgWarner also now contends that it, and Hitachi, may need additional evidence **REDACTED** from  regarding the inventorship issue for the '738 patent. BorgWarner's argument applies to just one of the bases, regarding inventorship. Hitachi's assertions of inequitable conduct grounds regarding inventorship are based upon BorgWarner's own documents and evidence. Neither BorgWarner nor Hitachi needs a deposition from **REDACTED** on this topic.[6]

---

[6]    If BorgWarner truly needs more discovery from **REDACTED**, which Hitachi doubts, we respectfully suggest that the case schedule can accommodate one additional third party

In short, no further discovery outside of issues raised in front of the Special Master would be needed, and there is no need for any change that will create any further delay towards trial.

2.    <u>BorgWarner Was Not Prejudiced by Hitachi's Interrogatory Responses, Which, Along With Hitachi's Motion to Compel, Gave BorgWarner Notice of Hitachi's Inequitable Conduct Allegations</u>

BorgWarner also argues that Hitachi's interrogatory responses, which were made while Hitachi was still developing its inequitable conduct case, did not conform to the standards of Rule 9(b), and in particular did not disclose the identities of persons who allegedly failed to disclose the **REDACTED** Article and the '735 patent application to the USPTO. BorgWarner claims that the responses thus provided insufficient notice under the Rule 9(b) pleading requirements. Exactly how BorgWarner was prejudiced in this regard is unclear. *First*, as previously discussed, BorgWarner gave no indication at any time that it did not understand Hitachi's interrogatory responses or needed more clarification of the underlying issues. *Second*, BorgWarner does not state what it would have done differently, or what additional discovery it would have pursued, had Hitachi's responses included additional details. Indeed, BorgWarner says that Hitachi's response regarding the nondisclosure of the **REDACTED** Article was deficient because it did not specifically identify **REDACTED** Opposition, D.I. 234 at 12. Yet, BorgWarner has not stated anywhere in its Opposition that it needs (and cannot get) further discovery from **REDACTED**

Furthermore, were there any question, the

_____

subpoena on this specific narrow topic. Pre-trial for this case is scheduled for end of February 2007, seven months from now, and trial is not yet scheduled. Therefore, any

roles of both :      **REDACTED**           relating to the^REDACTED^Article and '735

patent were briefed in detail by both parties when Hitachi filed its Motion to Compel.

In any event, contrary to BorgWarner's arguments, Rule 9(b) does <u>not</u> require

identification of specific actors, or other details such as time and place of the inequitable

conduct,  as long as the allegation provides "notice of the precise misconduct alleged."

*EMC Corp. v. Storage Tech. Corp.*, 921 F. Supp. 1261, 1263 (D. Del. 1996) (citing

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3d Cir. 1984), *cert.*

*denied*, 469 U.S. 1211 (1985)); *Agere Sys. Guardian Corp. v. Proxim, Inc.*, 190 F. Supp.

2d 726, 734 (D. Del. 2002).   For inequitable conduct, this Court has stated that

"disclos[ing] the name of the relevant prior art and the acts of the alleged fraud fulfill[s]

the requirements of Rule 9(b)." *EMC*, 921 F. Supp. at 1263.

Hitachi's interrogatory responses provided BorgWarner with the required

information about the inequitable conduct defenses that Hitachi was developing, and

Hitachi set forth many more details in its March 2006 Motion to Compel, to which

BorgWarner responded.   BorgWarner cannot now claim, based on "technicalities of

pleading rules," *see Agere*, 190 F. Supp. 2d at 734,  that it lacked sufficient understanding

to be on notice.

## C.     Hitachi Has Not Acted In Bad Faith

Contrary to BorgWarner's contentions, Hitachi has not acted in bad faith by

moving for leave to amend.  A party does not act in bad faith when it seeks to amend a

complaint because of new evidence that has only recently come to light in discovery. *See*

*Aloe Vera*, 233 F.R.D. at 534-35 (finding no bad faith).

---

modicum of prejudice that BorgWarner raises concerning      can be fully relieved.

**REDACTED**

As both the Third Circuit and this Court have observed, the question of bad faith "requires that we focus on the [party's] motives for not amending their complaint to assert this claim earlier." *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984), *cert. denied*, 469 U.S. 1122 (1985) (limiting scope of inquiry and finding no bad faith where parties had a "colorable excuse" for not amending earlier); *United States ex rel B & R, Inc. v. Donald Lane Constr.*, 19 F. Supp. 2d 217, 221-22 (D. Del. 1998) (limiting bad faith to situations where "the motion is being made in bad faith" based upon *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Trueposition, Inc. v. Allen Telecom, Inc.*, No. Civ. A. 01-823 GMS, 2002 WL 1558531, at *1-2 (D. Del. July 16, 2002). The scope of inquiry is thus limited to whether the motion to amend was made in bad faith, and does not encompass actions alleged to have taken place during other phases of litigation.

Ignoring these precedents, BorgWarner accuses Hitachi of bad faith litigation tactics that have no relation to the motions for leave to amend. But BorgWarner has not reasonably alleged, and cannot allege, any bad faith by Hitachi in connection with this motion. That alone means that BorgWarner's argument fails.

And, rather than waste the Court's time by responding in kind, or defending its actions in matters that are not relevant to the instant motion, Hitachi simply will point out that the Special Discovery Master has been intimately involved in the discovery process of this litigation over the last six months, has heard BorgWarner's unrelenting arguments of bad faith, and has attempted to stay above the "blame game" and focus the parties on working cooperatively to complete discovery. For its part, Hitachi has attempted to follow the Special Master's lead. *See, e.g.*, Correspondence from E. Polk to H. Abrams dated 7/5/2006 (reminding counsel that "the Special Master (and the [C]ourt) made it clear

19

during the omnibus hearing that the parties should work together to amicably resolve their disputes."). (Ex. I)

In sum, BorgWarner's allegations of "bad faith" are, thus, both unrelated to the present motion to amend and factually inaccurate.

## II.    CONCLUSION

Hitachi has diligently pursued discovery and developed new evidence of BorgWarner's inequitable conduct. Hitachi regularly updated BorgWarner on its progress throughout discovery, and timely sought leave to amend. BorgWarner's erroneous contentions of undue delay and other points do not warrant an exception to the liberal pleading rules. Hitachi should have the opportunity to have its inequitable conduct defense heard on the merits. For these reasons, Hitachi respectfully requests that its Motion for Leave to File a Third Amended Complaint be granted.

ASHBY & GEDDES

/s/ *John G. Day*

_____

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. # 3950)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiffs Hitachi, Ltd. and
Hitachi Automotive Products (USA), Inc.*

*Of Counsel:*

William J. Robinson
Kenneth E. Krosin
Michael D. Kaminski
Pavan K. Agarwal
C. Edward Polk, Jr.
FOLEY & LARDNER LLP
3000 K St., N.W., Suite 500
Washington, DC 20007-5109
(202) 672-5300

Dated: July 17, 2006
171329.1

# EXHIBIT A

**REDACTED**

# EXHIBIT B

RECEIVED BY HAND

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MAY 23 2006

A&G

COPY

HITACHI, LTD and UNISIA )
NORTH AMERICA, INC.,     )
                         )
          Plaintiff,     )
                         )  C.A. No. 05-048-SLR
v.                       )
                         )
BORGWARNER, INC. and     )
BORGWARNER MORSE TEC, INC.)
                         )
          Defendants.    )
- - - - - - - - - - - - -
BORGWARNER, INC.,        )
                         )
          Counterclaimant, )
                         )
v.                       )
                         )
HITACHI, LTD, and UNISIA )
NORTH AMERICA, INC.,     )
                         )
          Counterdefendants. )

                    Monday, May 22, 2006
                    9:50 a.m.
                    Courtroom 2A


                    844 King Street
                    Wilmington, Delaware




BEFORE: SPECIAL MASTER COLLINS J. SEITZ, JR.

1   the basis for this motion, one needs to look

2   basically and say, first of all, they have to hit

3   a much higher level than inequitable conduct, it

4   has to be centered, it has to have intent,

5   knowing and willful intent.

6            First of all, you need to have

7   someone who is either an inventor, an attorney or

8   substantively involved in the prosecution, that's

9   the baseline requirement for Rule 56.

10           The two inventors on the patents are

11  Quinn and Seaman,          **REDACTED**

12           The attorney on the patent is

13     **REDACTED**      is not involved, he is not an

14  attorney involved in the prosecution.

15           Then you have people who are

16  substantively involved in the prosecution,

17  substantively, there is no evidence in the

18  record, none that    **REDACTED**    had any

19  substantive involvement in this application.  He

20  did not meet with the examiners as Mr. Robinson

21  said.  He was not the kingpin as Mr. Robinson

22  said.          **REDACTED**

23           he was the head of the group, however, Mr.

24  Quinn and Mr. Seaman worked in a separate group,

1    they were involved in controls. And this patent

2    deals with controls.

3

4                    **REDACTED**

5

6                    He was certainly involved in

7    understanding what sort of patents Borgwarner was

8    filing. But did he have substantive involvement

9    in this application? No.

10                   He was never involved in filing any

11   of the office actions, responding to the office

12   action. He was never involved in talking to the

13   office.

14                   So as a baseline, they don't even

15   get to first base. They don't even have a person

16   who's substantively involved in the prosecution.

17                   So, but let's grant them that.

18   Let's grant Mr. Robinson as he says that there's

19   no reasonable argument that he is not. So let's

20   say  **REDACTED**  was involved.

21                   Then you need to have evidence that

22   he knew this was material and he acted contrary

23   to that. It's not as Mr. Robinson says gross

24   negligence. That's not enough.

1          We're talking about common law fraud

2    here.  There has to be evidence that shows that

3    **REDACTED**  recognized that somehow this prior

4    art reference was material, that it was important

5    to this particular patent, and he acted contrary

6    to that.  He intentionally decided not to

7    disclose it.

8          Well, what is the evidence?  One,

9    there's no evidence that **REDACTED**  had any

10   knowledge of the claims that were involved in

11   this application, any knowledge of the substance

12   of it.  So whatever was put in front of him, how

13   could he know whether it was material or not?

14          But it goes beyond that.  They asked

15   **REDACTED**   at his deposition.  They put the

16   article in front of him and they said, what's

17   linear proportional solenoids?  He said, well,

18   that's solenoids to me.

19          He said that's redundant with

20   solenoid, proportional solenoid.  It means one

21   that's linear.

22          Is that a variable for solenoid

23   which is what is at issue in the '738 patent?  He

24   says, No, that's completely different.  A

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| HITACHI, LTD., and UNISIA NORTH AMERICA, INC., | ) ) |
| Plaintiffs, | ) ) |
|  | ) |
| v. | )  C.A. No. 05-048-SLR |
|  | ) |
| BORGWARNER INC., and BORGWARNER MORSE TEC INC., | ) ) |
| Defendants. | ) ) ) |
| BORGWARNER INC., | ) ) |
| Counterclaimant, | ) ) |
|  | ) |
| v. | ) |
|  | ) |
| HITACHI, LTD., and UNISIA NORTH AMERICA, INC., | ) ) |
| Counterdefendants. | ) ) |

## PLAINTIFF HITACHI, LTD.'S FIRST SET OF INTERROGATORIES TO DEFENDANTS BORGWARNER INC. AND BORGWARNER MORSE TEC INC.

Pursuant to FED. R. CIV. P. 33, Plaintiff Hitachi, Ltd. ("Hitachi") directs the following

interrogatories to Defendants BorgWarner Inc. and BorgWarner Morse Tec Inc. (collectively

"BorgWarner") to be answered fully under oath within thirty (30) days of service.

## INSTRUCTIONS

1.      The following interrogatories are continuing and, in accordance with FED. R. CIV.

P. 26(e), if after answering the interrogatories BorgWarner acquires knowledge or information

regarding additional information responsive to any of these interrogatories, BorgWarner shall

provide Hitachi with a statement of such additional information in a supplemental interrogatory response.

2.     Each interrogatory should be answered in full. If BorgWarner cannot do so after conducting a reasonable investigation, answer to the fullest extent possible, explaining why BorgWarner cannot answer completely, stating any knowledge, information, or belief BorgWarner has concerning the unanswered portion of the interrogatory, what information or documents cannot be provided, why the information or documents are not available, and what efforts were made to obtain the unavailable documents or information. If BorgWarner perceives a question to be inapplicable, then indicate as much rather than leaving the question unanswered.

3.     The following interrogatories call for information (including any information contained in any Documents) that is known or available to, or in the possession, custody, or control of, BorgWarner or BorgWarner's attorneys, agents, representatives, investigators, or any other person acting on BorgWarner's behalf.

4.     If BorgWarner contends that any of the following interrogatories are objectionable in whole or in part, BorgWarner shall state with particularity each objection, the reasons for the objection and the categories of information to which the objection applies. As required by FED. R. CIV. P. 33(b)(1), BorgWarner shall then answer to the extent the interrogatory is not objectionable.

5.     If BorgWarner withholds any information or document responsive to any interrogatory, please identify (a) any basis for privilege or immunity from discovery asserted; (b) all documents that contain or refer to the information; (c) all individuals having knowledge of the information; (d) the subject matter and general nature of the information; and (e) all facts that are alleged to support the assertion of privilege or immunity.

2

6.    Where an identified document has been destroyed, or is alleged to have been destroyed, state the reasons for its destruction, the names of the persons having any knowledge of its destruction, the names of persons responsible for its destruction, and the names of each recipient of the destroyed document.

7.    If BorgWarner finds the meaning of any term in these interrogatories unclear, BorgWarner shall assume a reasonable meaning, state what the assumed meaning is, and respond to the interrogatories according to the assumed meaning.

8.    With respect to any response for which BorgWarner specifies records pursuant to FED. R. CIV. P. 33(d), specify such records by identification numbers imprinted upon them.

## DEFINITIONS

1.    "BorgWarner" refers to Defendants BorgWarner Inc. and BorgWarner Morse Tec Inc., any predecessor or successor of BorgWarner Inc. and BorgWarner Morse Tec Inc., and any past or present division, subsidiary, affiliate, joint venture, director, officer, agent, employee, consultant, attorney, accountant, or representative of BorgWarner Inc. and BorgWarner Morse Tec Inc. If BorgWarner's response to an interrogatory only applies to a particular Defendant, please indicate as such in BorgWarner's response.

2.    "Hitachi" refers to Plaintiff Hitachi, Ltd., any predecessor or successor of Hitachi, Ltd., and any past or present division, subsidiary, affiliate, joint venture, director, officer, agent, employee, consultant, attorney, accountant, or representative of Hitachi, Ltd., including Unisia North America, Inc., Unisia Jecs Corporation and Hitachi Unisia Automotive, Ltd.

3.    The "'738 patent" refers to U.S. Patent No. 5,497,738, titled "VCT Control with a Direct Electromechanical Actuator."

3

4. The "Bruss patent" refers to U.S. Patent No. 4,627,825 to Bruss et al., titled "Apparatus for the Angular Adjustment of a Shaft, Such as a Camshaft, With Respect to a Drive Wheel."

5. The "'023 patent" refers to U.S. Patent No. 5,002,023, entitled "Variable Camshaft Timing for Internal Combustion Engine."

6. The "Interference" refers to Patent Office Interference No. 102,923 that involved BorgWarner's U.S. Patent No. 5,002,023.

7. "Prior Art" includes, by way of example and without limitation, the subject matter described in 35 U.S.C. § 103 and each and every subdivision of 35 U.S.C. § 102.

8. "Related Patents or Patent Applications" means and includes:

a. all U.S. and non-U.S. patents and patent applications that claim the benefit, directly or indirectly, of the filing date of the '738 patent;

b. all U.S. and non-U.S. patents and patent applications from which the '738 patent claims the benefit, directly or indirectly, of the filing date;

c. all U.S. and non-U.S. patents and patent applications that claim the benefit, directly or indirectly, of the filing date of the same patent or patent application from which the '738 patent claims benefit; and,

d. all U.S. and non-U.S. patents and patent applications cited in the "Background of the Invention" section of the '738 patent.

9. "USPTO" means the U.S. Patent & Trademark Office.

10. "Hitachi Accused Device" means the Hitachi product(s) that BorgWarner accused of infringement in its Counterclaim and Third Party Complaint, and any other Hitachi product that BW alleges infringes the '738 patent.

4

# EXHIBIT D

## Agarwal, Pavan K.

| | |
|---|---|
| **From:** | Hirshfeld, Lara [lhirshfeld@sidley.com] |
| **Sent:** | Wednesday, February 22, 2006 5:34 PM |
| **To:** | Polk, Jr., C. Edward |
| **Cc:** | Schneider, Lisa A.; Rein, Thomas D.; Cavan, Marc A.; Abrams, Hugh; Krosin, Kenneth E.; Kaminski, Michael D.; Agarwal, Pavan K.; Peterson, Liane M. |
| **Subject:** | RE: Documents on BW's and Brinks Hofer's Privilege Log |

Ed -

Your allegations, particularly related to the fraud exception of the attorney client privilege, are blatantly unfounded and unsupported.  Nevertheless, as we are in the process of preparing our privilege log for the recently produced file histories, we will also assess the privilege log entries identified below. We will respond to you as quickly as possible, but do not anticipate being able to do so tomorrow.

Lara

---

**From:** Polk, Jr., C. Edward [mailto:EPolk@foley.com]
**Sent:** Wednesday, February 22, 2006 2:37 PM
**To:** Hirshfeld, Lara
**Cc:** Schneider, Lisa A.; Rein, Thomas D.; Cavan, Marc A.; Abrams, Hugh; Krosin, Kenneth E.; Kaminski, Michael D.; Agarwal, Pavan K.; Peterson, Liane M.
**Subject:** Documents on BW's and Brinks Hofer's Privilege Log

Lara,

In order to streamline any issues that may be brought to the Special Master, we'd like to address certain documents on BW's and Brinks Hofer's privilege log that we believe should be produced or, at least, produced in redacted form.

First, we are seeking documents on BW's and Brinks Hofer's privilege log relating to the prosecution of the '738 patent, including due to the fraud exception of the attorney client privilege. We know that you will disagree, but please let us know by tomorrow morning if there is any need to further discuss this issue.

Second, we believe that the following entries on your privilege log are either not privileged or should be produced in redacted form. These entries are:

27-29, 34, 35, 38, 40, 137, 139, 401, 440, 519, 530, 532-33, 588-90, 594-96, 634-44, 646, 601, 607, 611-12, 615, 639-46, 651, 653, 656, 690, 744, 769, 771-72, 784, 788, 799, 809, 841-843, 850, 853, 943-44, 948, 964-65, 976-77, 993-94, 1000-07, 1012-1025, 1035, 1037, 1039-40, 1042, 1051, 1053, 1055, 1064-73, 1079, 1084, 1089, 1096, 1104, 1111, 1127, 1140-42, 1149, 1157, 1162-64, 1167-68, 1185, 1187,-88, 1193-93.1, 1207, 1210-11, 1215, 1218, 1220, 1224-25, 1227, 1233, 1237, 1242-43, 1253, 1257-58, 1262-63, 1266, 1268, 1285,  1288, 1300, 1303, 1305, and 1310.

Please let us know as soon as possible if any of these documents were inadvertently put on BW's privilege log or should have been produced in redacted form. We will then consider moving to compel production of some or all of these documents.

To the extent that any of the foregoing issues need to be addressed in front of the Special Master, we suggest the following briefing schedule:

Hitachi's motion to compel would be due March 6
Borg Warner's response would be due March 13
Hitachi's reply would be due March 17th

Your prompt response is greatly appreciated.

C. Edward Polk, Jr.
Foley & Lardner LLP
Washington Harbour
3000K Street, NW, Suite 500
Washington, DC 20007
202-295-4634
epolk@foley.com

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

Sidley Austin LLP mail server made the following annotations on 02/22/06, 16:34:40:
------------------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we in that, unless expressly stated otherwise, any U.S. federal tax advice contained in th communication, including attachments, was not intended or written to be used, and ca used, by any taxpayer for the purpose of avoiding any penalties that may be imposed taxpayer by the Internal Revenue Service.  In addition, if any such tax advice is us to by other parties in promoting, marketing or recommending any partnership or other investment plan or arrangement, then (i) the advice should be construed as written i with the promotion or marketing by others of the transaction(s) or matter(s) address communication and (ii) the taxpayer should seek advice based on the taxpayer's parti circumstances from an independent tax advisor.

*************************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or
If you are not the intended recipient, please delete the e-mail and any attachments
immediately.


*************************************************************************************

# EXHIBIT E

**REDACTED**

# EXHIBIT F

# REDACTED

# EXHIBIT G

**Agarwal, Pavan K.**

| | |
|---|---|
| From: | Polk, Jr., C. Edward |
| Sent: | Friday, May 26, 2006 2:25 PM |
| To: | 'Abrams, Hugh' |
| Cc: | 'Rein, Thomas D.'; 'Cavan, Marc A.'; 'Schneider, Lisa A.'; 'Hirshfeld, Lara'; Robinson, William J.; Kaminski, Michael D.; Krosin, Kenneth E.; Agarwal, Pavan K.; Peterson, Liane M. |
| Subject: | Third Amended Complaint |

Hugh,

Hitachi seeks to amend its complaint to reflect the additional inequitable conduct contentions that have been previously outlined in detail during discovery, including in Hitachi's interrogatory responses and motion to compel under the crime-fraud exception. In addition, we have updated the complaint to reflect the substitution of HAP for UNAI as a party to the case.

The Third Amended Complaint is attached with this email. Please let us know by next Thursday (June 1st) if BW will oppose a motion for leave to file the amendment or oppose the amendment itself.

We have tried to make our factual contentions without including confidential information. Please let us know if the complaint needs to be filed under seal.

Regards,

Ed



1597603_3.DOC
(71 KB)

# EXHIBIT H

# REDACTED

# EXHIBIT I

## Polk, Jr., C. Edward

| | |
|---|---|
| **From:** | Polk, Jr., C. Edward |
| **Sent:** | Wednesday, July 05, 2006 11:26 AM |
| **To:** | 'Abrams, Hugh' |
| **Cc:** | 'Rein, Thomas D.'; 'Schneider, Lisa A.'; 'Cavan, Marc A.'; 'Hirshfeld, Lara'; Kaminski, Michael D.; Krosin, Kenneth E.; Agarwal, Pavan K.; Peterson, Liane M. |
| **Subject:** | RE: Meet and Confer |

Hugh,

As I mentioned during the hearing, we can only provide a complete answer once we know the scope of all privileged information that was actually sent to Melchior, which we have had a difficult time getting from BW. To date, Hitachi has confirmed that entries 42, 59, 60, 62-63, 67, 320, 606, 608-09, 626, 628.1, 674, 679, 837, 1122, 1196, 1213-14, 1561-65 and 1569 from BorgWarner's privilege log were previously disclosed to Melchior and his counsel. Hitachi has identified at least entries 34-36, 38-41 and 52 from the Brinks Hofer privilege log as also being disclosed to Melchior and his counsel. These entries include, at least, the inventions disclosures for the '023 and '804 patents. Certainly, BW is in a better position to know if there are any additional privileged documents that were sent to Melchior and/or his counsel, and we expect that BW will make a good faith review to identify and disclose all such documents to Hitachi. As BW should agree from recent filings, the waiver is a "broad" subject matter waiver. How broad should be the subject of our meet and confer.

You should already have all documents that Hitachi no longer makes a privilege claim. I thought that Lara and I had already resolved that issue. In fact, I sent her an email matching the documents that we produced with the corresponding privilege log entries. I sent a similar request to Lara asking her to match documents recently produced by BW with the corresponding privilege log entries. Will we receive a similar correlation chart as requested?

If there are issues with our production, just identify them (*i.e.*, which documents were produced in redacted form) and I'll see what I can do to resolve those issues. I'll try and get the revised privilege log to you by the end of this week.

Finally, we have been communicating with you and your colleagues in a very professional and courteous manner. In fact, the Special Master (and the court) made it clear during the omnibus hearing that the parties should work together to amicably resolve their disputes. We sincerely hope that the remainder of this case follows these admonitions (your last sentence was unnecessary)

Best regards,

Ed Polk


-----Original Message-----
**From:** Abrams, Hugh [mailto:habrams@Sidley.com]
**Sent:** Wednesday, July 05, 2006 10:31 AM
**To:** Polk, Jr., C. Edward
**Cc:** Rein, Thomas D.; Schneider, Lisa A.; Cavan, Marc A.; Hirshfeld, Lara; Kaminski, Michael D.; Krosin, Kenneth E.; Agarwal, Pavan K.; Peterson, Liane M.
**Subject:** RE: Meet and Confer

As we discussed with the Special Discovery Master, we expect to be in a position to discuss this matter with you by Friday, July 7, 2006. As I mentioned during the hearing, it would expedite our evaluation if you

would provide (1) an identification of the specific documents produced during the interference that you contend constitute a waiver of privilege and the scope of the alleged waiver based upon the production of each of those documents, and (2) an identification of the specific documents on the privilege log that are impacted by the alleged waiver. A blanket identification of "all documents relating to the '023 prosecution," for example, is not sufficient, and is not helpful to our review.

In the meantime, we still await your production of all of the documents for which you no longer claim privilege and a supplemental privilege log. In this regard, we request your prompt production of all documents from the Sughrue firm in unredacted form. There is no excuse for your continued delay in providing these documents that you agreed to produce.

---

**From:** Polk, Jr., C. Edward [mailto:EPolk@foley.com]
**Sent:** Tuesday, July 04, 2006 8:38 AM
**To:** Abrams, Hugh
**Cc:** Rein, Thomas D.; Schneider, Lisa A.; Cavan, Marc A.; Hirshfeld, Lara; Kaminski, Michael D.; Krosin, Kenneth E.; Agarwal, Pavan K.; Peterson, Liane M.
**Subject:** Meet and Confer

Hugh,

Please provide a day and time this week when you (or one of your colleagues) are available to meet and confer regarding the scope of BW's waiver due to the disclosure of privileged documents during the Melchior interference.

Best regards,

Ed

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

Sidley Austin LLP mail server made the following annotations on 07/05/06, 09:27
--------------------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, that, unless expressly stated otherwise, any U.S. federal tax advice contained communication, including attachments, was not intended or written to be used, a used, by any taxpayer for the purpose of avoiding any penalties that may be imp taxpayer by the Internal Revenue Service. In addition, if any such tax advice to by other parties in promoting, marketing or recommending any partnership or

investment plan or arrangement, then (i) the advice should be construed as writ
with the promotion or marketing by others of the transaction(s) or matter(s) ad
communication and (ii) the taxpayer should seek advice based on the taxpayer's
circumstances from an independent tax advisor.

*************************************************************************
This e-mail is sent by a law firm and may contain information that is privilege
If you are not the intended recipient, please delete the e-mail and any attachm
immediately.

*************************************************************************

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of July, 2006, the attached **REDACTED PUBLIC VERSION OF PLAINTIFFS' REPLY TO BORGWARNER'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT** was served upon the following counsel of record in the manner indicated:


Richard K. Herrmann, Esquire                                   HAND DELIVERY
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19801


Hugh A. Abrams, Esquire                                   VIA FEDERAL EXPRESS
Sidley Austin LLP
One South Dearborn Street
Chicago, IL  60603



                                        /s/ Tiffany Geyer Lydon
                                        _____
                                        Tiffany Geyer Lydon

154486.1