## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HITACHI, LTD., and UNISIA NORTH AMERICA, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. NO. 05-048-SLR |
| v. | ) ) ) | |
| BORGWARNER, INC., and BORGWARNER MORSE TECH, INC., | ) ) ) ) | |
| Defendants. | ) | |

## <u>DECISION ON PLAINTIFFS' SECOND MOTION TO COMPEL</u>

Steven J. Balick, Esquire, and John G. Day, Esquire, of ASHBY & GEDDES, Attorneys for Plaintiffs Hitachi, Ltd. and Unisia North America, Inc.

Richard K. Herrmann, Esquire, and Mary Matterer, Esquire, of MORRIS JAMES HITCHENS & WILLIAMS, Attorneys for Defendants BorgWarner, Inc. and BorgWarner Morse Tech, Inc.

Collins J. Seitz, Jr., Special Master

## **TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I. | PROCEDURAL HISTORY | 1 |
| II. | LEGAL STANDARD | 1 |
| | A. | The Attorney-Client Privilege | 1 |
| | B. | Work Product Immunity | 4 |
| III. | ANALYSIS | 4 |
| | A. | Category 1 | 5 |
| | B. | Category 2 | 5 |
| | C. | Category 3 | 25 |
| | D. | Category 4 | 31 |
| IV. | CONCLUSION | 34 |

## I.    PROCEDURAL HISTORY

On April 19, 2006, Plaintiffs Hitachi, Ltd. and Unisia North America, Inc. (collectively "Hitachi") filed a motion to compel the production of documents withheld on the basis of the attorney-client privilege or work product immunity (the "Motion"). Hitachi supplemented its Motion by letter dated May 8, 2006. On May 15, 2006, BorgWarner, Inc. and BorgWarner Morse Tech, Inc. (collectively "BorgWarner") filed an opposition to the Motion ("Opposition"), to which Hitachi responded on May 19, 2006 ("Reply"). On May 22, 2006, I heard arguments on the Motion.

After argument, and as agreed to by the parties, BorgWarner submitted the documents at issue for *in camera* review along with a slip sheet for each document providing additional information to assess BorgWarner's privilege claims. After consideration of the parties' submissions, oral argument, and *in camera* review of the contested documents, Hitachi's Motion is granted in part and denied in part.

## II.    LEGAL STANDARD

### A.    The Attorney-Client Privilege

The attorney-client privilege is the oldest confidential communication privilege known to the common law. *United States v. Zolin,* 491 U.S. 554, 562 (1989). The attorney-client privilege protects the confidentiality of communications between attorney and client when the communications are made for the purpose of

1

obtaining legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981); *In re Echostar Commc'ns Corp.*, 448 F.3d 1294, 1300 (Fed. Cir. 2006); *Genentech, Inc. v. Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997).

Even though the privilege serves the important goal of protecting client confidences disclosed to obtain legal advice, because the privilege interferes with the search for truth it must be "strictly confined within the narrowest possible limits consistent with the logic of its principle." *RCA Corp. v. Data General Corp.*, Civ. A. No. 84-270-JJF, 1986 WL 15693, at *2 (D. Del. July 2, 1986) (citations omitted). The party invoking the attorney-client privilege has the burden to demonstrate that (1) the holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing some crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *Pfizer Inc. v. Ranbaxy Laboratories Limited*, No. 03-209-JJF, 2004 WL 2323135, at *1 (D. Del. Oct. 7, 2004) (citing *Hercules, Inc. v. Exxon Corp.*, 434 F.

2

Supp. 136, 144 (D. Del. 1977)) *accord, Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.*, 707 F. Supp. 1429 (D. Del. 1989).

To sustain the privilege, the party asserting the privilege must make a proper showing that the foregoing criteria have been met. *Willemijn*, 707 F. Supp. at 1443; *International Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 93 (D. Del. 1974). These elements can be established by affidavit, live testimony or *in camera* review. *Message Phone, Inc. v. SVI Systems, Inc.*, No. 3-97-CV-1813-H, 1998 WL 874945, at *1 (N.D. Tex. Dec. 8, 1998) (citations omitted).

The attorney-client privilege applies to patent prosecution activities and "protect[s] not only the giving of professional advice . . . but also the giving of information to the lawyer to enable him to give sound and informed advice." *In re Spaulding Sports Worldwide, Inc.*, 203 F.3d 800, 805-06 (Fed. Cir. 2000). The privilege does not, however, automatically attach merely because a lawyer is involved, and the communication was uttered by or to an attorney. *Pfizer*, 2004 WL 2323135, at *2. Nor does the privilege protect a communication merely because the document relates to the subject matter being considered by the attorney. *Polyvision Corp. v. Sport Tech., Inc.*, No. 1:03-CV-476, 2006 WL 581037, at *4 (W.D. Mich. March 7, 2006) ("Merely because a lawyer or patent agent is working on a patent application does not mean that all communications between non-attorney client personnel regarding that patent are protected. It is communication to and

3

from the attorney . . . that may be protected."). The contested communication must meet all of the elements of the attorney-client privilege for the protections to apply.

## B.   Work Product Immunity

Work product immunity protects documents prepared in anticipation of litigation or for trial, by or for a party or its representative. *Hercules*, 434 F. Supp. at 150. Fed. R. Civ. P. 26(b)(3) states, in relevant part: "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." The doctrine protects memoranda, recorded mental impressions, synopses of witness statements, and drafts of documents, prepared by an attorney with an eye to litigation. *Hercules*, 434 F. Supp. at 150.

To sustain work product protection, a party must identify the withheld documents with sufficient particularity to enable opposing counsel to evaluate whether the protection ought to apply. *Willemijn Houdstermaatschaapij BV*, 707 F. Supp. at 1439 (citing *Petz v. Ethan Allen, Inc.*, 113 F.R.D. 494, 497 (D. Conn. 1985)).

## III.   ANALYSIS

With these principles in mind, I address Hitachi's claims. Hitachi has sorted the contested documents into four categories. For each category the documents will be reviewed followed by a determination of the privilege issue.

4

## A.    Category 1

Category 1 is comprised of documents for which BorgWarner failed to make a privilege claim on its log. BorgWarner states that it has produced all documents in this category.[1]   Therefore the privilege dispute for Category 1 documents has been resolved.

## B.    Category 2

Hitachi describes Category 2 documents as technical or factual communications between or among BorgWarner's engineers that do not involve communications with an attorney. According to Hitachi, these documents must be produced because they do not involve communications with an attorney for the purpose of rendering legal advice. BorgWarner responds that the documents reflect the activities of the client in gathering information to be submitted to counsel for purposes of seeking legal advice, and are therefore privileged.

The following Category 2 documents remain the subject of the Motion:[2]

532, 607, 618, 624, 628, 809, 841-42, 847, 849, 851, 854, 875, 907, 948, 958, 977, 997-98, 1018, 1042, 1064-69, 1072-73, 1079, 1084, 1089, 1096, 1127, 1140, 1149, 1227, 1253, 1263, 1331, 1358-60, 1571-74, 1576, 1589, 1596, 1617, 1620, and 1632.

---

[1]  Opposition at 2 (BorgWarner privilege log document numbers 1567, 1568, 1570, and 1587).

[2]  After the Motion was filed, BorgWarner agreed to produce the following documents from its privilege log: 59, 60, 62, 63, 67, 320, 626, 674, 1122, 1565, and 1569. With regard to Category 2 documents, BorgWarner states that it had already produced the following documents from its privilege log: 690, 771, 836, 843, 1141, and 1257; and agreed to produce the following additional documents from its privilege log: 192-93, 240-41, 246, 307, 615, 653, 920, 1073, 1290, and 1305.

Document 532

*Individuals involved*: BorgWarner engineers Frank Smith and Roger Butterfield.

*Log description*: Information for inclusion in invention disclosure to be provided to counsel to obtain legal advice.

*Slip sheet description*: Communication that discusses information provided by the client to counsel to prepare a patent application.

*Ruling*: There is no proof that the document was ever sent to counsel and maintained in confidence. The attorney-client privilege only protects communications to counsel for the purpose of seeking legal advice as opposed to the underlying facts. *Polyvision Corp.*, 2006 WL 581037, at *4; *Message Phone, Inc.*, 1998 WL 874945, at **1-3 (documents regarding a potential patent claim prepared by the president of the company "to seek and facilitate advice regarding litigation" were not subject to the attorney-client privilege since there was no evidence that the documents were forwarded to an attorney). Unless BorgWarner supplements the record to demonstrate that this document was actually sent to counsel as a confidential communication for the purpose of obtaining legal advice, the document must be produced.

Document 607 (Redacted)

*Individuals involved*: Smith and Butterfield.

6

*Log description*: Reflects counsel's need for information to prepare a patent application.

*Slip sheet description*: Inquiry by patent counsel about information needed from client to prepare patent application.

*Ruling*: The redacted portion of the document contains counsel's questions to facilitate patent prosecution legal services, and is therefore privileged.

Document 618

*Individuals involved*: Smith and Butterfield.

*Log description*: Notes reflecting proposed patent application claims and information for transmittal to counsel.

*Slip sheet description*: Reflects information that was provided to outside counsel for use in drafting a patent application.

*Ruling*: There is no proof that the document was ever sent to counsel and maintained in confidence. The attorney-client privilege only protects communications to counsel for the purpose of seeking legal advice as opposed to the underlying facts. *Polyvision Corp.*, 2006 WL 581037, at *4; *Message Phone, Inc.*, 1998 WL 874945, at **1-3 (documents regarding a potential patent claim prepared by the president of the company "to seek and facilitate advice regarding litigation" were not subject to the attorney-client privilege since there was no evidence that the documents were forwarded to an attorney). Unless BorgWarner supplements the

7

record to demonstrate that this document was actually sent to counsel as a confidential communication for the purpose of obtaining legal advice, the document must be produced.

### Document 624

*Individuals involved*: Smith and Butterfield as authors.

*Log description*: Draft invention disclosure with Frank Smith's handwritten notes to be submitted to counsel regarding the preparation of patent application.

*Slip sheet description*: Reflects information that was provided to outside counsel for use in drafting a patent application.

*Ruling*: There is no proof that the document was ever sent to counsel and maintained in confidence. The attorney-client privilege only protects communications to counsel for the purpose of seeking legal advice as opposed to the underlying facts. *Polyvision Corp.*, 2006 WL 581037, at *4; *Message Phone, Inc.*, 1998 WL 874945, at **1-3 (documents regarding a potential patent claim prepared by the president of the company "to seek and facilitate advice regarding litigation" were not subject to the attorney-client privilege since there was no evidence that the documents were forwarded to an attorney). Unless BorgWarner supplements the record to demonstrate that this document was actually sent to counsel as a confidential communication for the purpose of obtaining legal advice, the document must be produced.

8

Document 628

*Individuals involved*:  Butterfield is listed as the author.

*Log description*:  Draft invention disclosure to be submitted to counsel regarding potential patent application.

*Slip sheet description*:  Reflects information that was provided to outside counsel for use in drafting a patent application.

*Ruling*:  There is no proof that the document was ever sent to counsel and maintained in confidence.  The attorney-client privilege only protects communications to counsel for the purpose of seeking legal advice as opposed to the underlying facts.  *Polyvision Corp.*, 2006 WL 581037, at *4; *Message Phone, Inc.*, 1998 WL 874945, at **1-3 (documents regarding a potential patent claim prepared by the president of the company "to seek and facilitate advice regarding litigation" were not subject to the attorney-client privilege since there was no evidence that the documents were forwarded to an attorney).  Unless BorgWarner supplements the record to demonstrate that this document was actually sent to counsel as a confidential communication for the purpose of obtaining legal advice, the document must be produced.

Document 809

*Individuals involved*:  Smith is the author and Butterfield the recipient.

9

*Log description*: Memorandum with technical information for discussion with counsel regarding Butterfield patent application.

*Slip sheet description*: Contains information to be provided to counsel for use in prosecuting a patent application.

*Ruling*: There is no proof that the document was ever sent to counsel and maintained in confidence. The attorney-client privilege only protects communications to counsel for the purpose of seeking legal advice as opposed to the underlying facts. *Polyvision Corp.*, 2006 WL 581037, at *4; *Message Phone, Inc.*, 1998 WL 874945, at **1-3 (documents regarding a potential patent claim prepared by the president of the company "to seek and facilitate advice regarding litigation" were not subject to the attorney-client privilege since there was no evidence that the documents were forwarded to an attorney). Unless BorgWarner supplements the record to demonstrate that this document was actually sent to counsel as a confidential communication for the purpose of obtaining legal advice, the document must be produced.

Document 841

*Individuals involved*: Butterfield as the author and Stan Quinn, a BorgWarner engineer, as the recipient.

*Log description*: Reflects advice regarding proposed invention disclosures and information for discussion with counsel.

10

*Slip sheet description*: Reflects a discussion of technical information provided by the client to counsel to utilize in preparing a patent application.

*Ruling*: There is no proof that the document was ever sent to counsel for purposes of obtaining legal advice or maintained in confidence. The attorney-client privilege only protects communications to counsel for the purpose of seeking legal advice as opposed to the underlying facts. *Polyvision Corp.*, 2006 WL 581037, at *4; *Message Phone, Inc.*, 1998 WL 874945, at **1-3 (documents regarding a potential patent claim prepared by the president of the company "to seek and facilitate advice regarding litigation" were not subject to the attorney-client privilege since there was no evidence that the documents were forwarded to an attorney). Unless BorgWarner supplements the record to demonstrate that this document was actually sent to counsel as a confidential communication for the purpose of obtaining legal advice, the document must be produced.

Document 842

*Individuals involved*: Butterfield as the author.

*Log description*: Report regarding questions of ownership issues of concepts and invention for discussion with counsel.

*Slip sheet description*: Comments relating to intellectual property ownership and patent rights developed from discussion with counsel.

11

*Ruling*: From a review of the document, one cannot discern how any specific legal advice is contained in or was used as the basis for any statements in the document. The document generally concerns a discussion by a layperson of a third party's claim to certain intellectual property rights. As Butterfield is not an attorney, and there is no record that he is conveying or memorializing advice received from counsel, the document must be produced.

Document 847

*Individuals involved*: Butterfield.

*Log description*: Butterfield's notes regarding advice received from attorney Tom Meehan.

*Ruling*: A review of the document confirms this description. The document is subject to the attorney-client privilege. *See United States v. DeFonte*, 441 F.3d 92, 95 (2nd Cir. 2006) (memorialization of private conversations with counsel are subject to the attorney-client privilege).

Document 849

*Individuals involved*: Butterfield as the author.

*Log description*: Draft summary of BorgWarner VCT technology prepared for discussion with counsel.

*Slip sheet description*: Document includes a summary of information for general use to obtain legal advice involving submission of patent applications.

12

*Ruling*:  Although the document contains a description of VCT technology, it is primarily directed to the business aspects of the VCT program rather than a document for use by attorneys in preparing patent applications.  Because it does not contain attorney advice, does not contain the type of technical information typically found in communications with attorneys for the purpose of receiving legal advice, and there is nothing to show it was communicated to any attorney, the document must be produced.

Document 851

*Individuals involved*:  Smith as the author.

*Log description*:  Notes regarding invention disclosure and information for disclosure to counsel.

*Slip sheet description*:  Communication discussing technical information provided by the client to counsel for use in preparing an application.

*Ruling*:  There is no proof that the document was ever sent to counsel and maintained in confidence.  The attorney-client privilege only protects communications to counsel for the purpose of seeking legal advice as opposed to the underlying facts. *Polyvision Corp.*, 2006 WL 581037, at \*4; *Message Phone, Inc.*, 1998 WL 874945, at \*\*1-3 (documents regarding a potential patent claim prepared by the president of the company "to seek and facilitate advice regarding litigation" were not subject to the attorney-client privilege since there was no evidence that the

13

documents were forwarded to an attorney). Unless BorgWarner supplements the record to demonstrate that this document was actually sent to counsel as a confidential communication for the purpose of obtaining legal advice, the document must be produced.

Document 854

*Individuals involved*: Butterfield as the author.

*Log description*: Summary of BorgWarner VCT chronology prepared for counsel for use in a patent interference.

*Slip sheet description*: Discussions of legal strategy and a chronology of events relating to a patent interference.

*Ruling*: After reviewing the document, it appears to be a chronology of VCT events and does not contain any request for legal advice and does not reveal any legal strategy. There is also nothing of record to demonstrate it was shared with counsel. Therefore the document must be produced.

Document 875

*Individuals involved*: Butterfield as the author.

*Log description*: Undated document described as "technical information prepared at request of counsel to provide information to render legal advice regarding patent issues."

14

*Slip sheet description*: Reflects necessary information provided by the client to counsel in order to obtain advice involving submission of patent applications.

*Ruling*: BorgWarner has claimed both attorney-client privilege and work product protection for this document. With respect to the work product claim, BorgWarner has not met its burden. Like all other documents, patent prosecution documents are only protected as work product if they are prepared "in anticipation of litigation." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947); Fed. R. Civ. P. 26(b)(3). If the primary concern of the attorney is with imminent future litigation rather than the ongoing patent application prosecution, the work product protection can attach. Work product immunity does not apply, however, if the primary concern is with claims raised in the *ex parte* patent application prosecution, and the threat of litigation is unspecific. *Conner Peripherals, Inc. v. W. Digital Corp.*, No. C93-20117, 1993 U.S. Dist. LEXIS 20149, at *13 (E.D. N.C. 1992); *Detection Sys., Inc. v. Pittway Corp.*, 96 F.R.D. 152, 155 (W.D.N.Y. 1982). Although the spectre of patent litigation looms with every patent application, BorgWarner has not presented any evidence that this document was prepared with an eye toward imminent anticipated litigation. Accordingly, the document is not subject to work product immunity. *Pfizer Inc.*, 2004 WL 2323135, at *2 (rejecting work product claim where no dates given on the log or dates too early to have been prepared in anticipation of any specific litigation).

15

With respect to the attorney-client privilege, after reviewing the document, it appears to be the contents of a file labeled "PWM Background" and contains a collection of documents from independent sources explaining the operation of different kinds of solenoids. The information contains factual information about solenoid valves, and does not appear to have been assembled for any specific request for legal advice. There is also nothing to substantiate that it was prepared for an attorney. Therefore the document must be produced.

Document 907

*Individuals involved*:  Michael Brown (attorney).

*Log description*:  Notes of attorney Michael Brown made in connection with preparing a response to correspondence by Hitachi that preceded this litigation.

*Slip sheet description*:  Outside counsel's notes prepared in anticipation of litigation.

*Ruling*:  As there was an identifiable threat of litigation at the time the document was drafted, and the notes were prepared with an eye towards litigation, this document is subject to work product immunity and need not be produced.

Document 948

*Individuals involved*:  Butterfield as the author and Smith as the recipient.

*Log description*:  Information involving invention disclosure for use by counsel.

16

*Slip sheet description*:  Information provided by the client to counsel to facilitate legal services in connection with a patent application.

*Ruling*:  There is no proof that the document was ever sent to counsel and maintained in confidence.  The attorney-client privilege only protects communications to counsel for the purpose of seeking legal advice as opposed to the underlying facts.  *Polyvision Corp.*, 2006 WL 581037, at \*4; *Message Phone, Inc.*, 1998 WL 874945, at \*\*1-3 (documents regarding a potential patent claim prepared by the president of the company "to seek and facilitate advice regarding litigation" were not subject to the attorney-client privilege since there was no evidence that the documents were forwarded to an attorney).  Unless BorgWarner supplements the record to demonstrate that this document was actually sent to counsel as a confidential communication for the purpose of obtaining legal advice, the document must be produced.

Document 958

*Individuals involved*:  Notes of Phil Mott, a BorgWarner engineer.

*Log description*:  Notes regarding invention disclosure with information for counsel.

*Slip sheet description*:  Notes reflect information for counsel to utilize to render legal advice regarding preparation of a patent application.

17

*Ruling*: There is no proof that the document was ever sent to counsel and maintained in confidence. Attorney-client privilege only protects communications to counsel for the purpose of seeking legal advice as opposed to the underlying facts. *Polyvision Corp.*, 2006 WL 581037, at \*4; *Message Phone, Inc.*, 1998 WL 874945, at \*\*1-3 (documents regarding a potential patent claim prepared by the president of the company "to seek and facilitate advice regarding litigation" were not subject to the attorney-client privilege since there was no evidence that the documents were forwarded to an attorney). Unless BorgWarner supplements the record to demonstrate that this document was actually sent to counsel as a confidential communication for the purpose of obtaining legal advice, the document must be produced.

### Document 977

*Individuals involved*: Butterfield as the author and Quinn and Smith as recipients.

*Log description*: An email reflecting advice from counsel on protecting intellectual property.

*Slip sheet description*: Butterfield's comments reflect information received from counsel on ownership of intellectual property.

*Ruling*: The document does not reflect the advice of counsel or information assembled to share with counsel to receive legal advice. Instead, it appears to be

18

notes to prepare for an upcoming meeting which was not legal in nature. As such, the document is not privileged and must be produced.

Document 997

The document was properly removed from the privilege log as unrelated to the present litigation.

Document 998

The document was properly removed from the privilege log as unrelated to the present litigation.

Document 1018

*Individuals involved*: Butterfield as author sent to Quinn.

*Log description*: Email reflects advice regarding proposed invention disclosures and information for discussion with counsel.

*Slip sheet description*: Communication discussing technical information provided by the client to counsel to facilitate preparation of a patent application.

*Ruling*: There is no proof that the document was ever sent to counsel and maintained in confidence. The attorney-client privilege only protects communications to counsel for the purpose of seeking legal advice as opposed to the underlying facts. *Polyvision Corp.*, 2006 WL 581037, at *4; *Message Phone, Inc.*, 1998 WL 874945, at **1-3 (documents regarding a potential patent claim prepared by the president of the company "to seek and facilitate advice regarding litigation" were

19

not subject to the attorney-client privilege since there was no evidence that the documents were forwarded to an attorney). Unless BorgWarner supplements the record to demonstrate that this document was actually sent to counsel as a confidential communication for the purpose of obtaining legal advice, the document must be produced.

Documents 1042, 1064-68

*Individuals involved*: Butterfield as author.

*Log description*: Reflects discussions with BorgWarner's in-house counsel, Greg Dziegielewski.

*Slip sheet description*: Notes reflecting advice regarding a patent interference.

*Ruling*: A review of these documents demonstrates that they memorialize advice received from counsel and are therefore subject to the attorney-client privilege.

Documents 1069, 1072, 1079, 1084, 1089, 1096, 1127, 1140 and 1149

*Individuals involved*: Butterfield as author.

*Log description*: Reflects advice from counsel in connection with an interference proceeding.

*Slip sheet description*: Notes reflecting advice regarding interference strategy and discussions with counsel.

*Ruling*: A review of the documents confirms that they reflect advice received from counsel about an interference proceeding and are subject to the attorney-client privilege.

Document 1073

*Individuals involved*: Butterfield as author.

*Log description*: Butterfield report regarding patent interference proceedings and discussions with counsel.

*Slip sheet description*: Reflects legal advice received during discussions with counsel.

*Ruling*: The notes reflect the receipt of legal advice as does the underlying document. The document is therefore privileged.

Document 1227

*Individuals involved*: Butterfield as the author reflecting conversation with Edward Seimon.

*Log description*: Notes reflecting comments of Mr. Siemon, a BorgWarner engineer, for communication with counsel.

*Slip sheet description*: Contains facts and strategy for submission to counsel.

*Ruling*: The document contains notes of a discussion with a non-attorney. There is no proof that it was intended to be shared with an attorney or actually shared with

an attorney. The document is therefore not subject to the attorney-client privilege and must be produced.

Document 1253

*Individuals involved*:  Butterfield as the author.

*Log description*:  Notes reflecting a request for legal advice for discussion with counsel.

*Slip sheet description*:  Butterfield's notes reflecting advice received from counsel.

*Ruling*:  A review of the document demonstrates that it memorializes advice received from counsel and is subject to the attorney-client privilege.

Document 1263

*Individuals involved*:  Quinn and Smith and Butterfield.

*Log description*:  Notes from Quinn to Smith and Smith to Butterfield which attach a letter from outside counsel David Spenard.

*Slip sheet description*:  Notes relate to pending patent applications and communications from counsel.

*Ruling*:  The letter from counsel is privileged because it seeks information from the client to facilitate the rendition of legal advice. The accompanying notes relate to the legal advice received from the attorneys and is therefore privileged as well.

Document 1331

*Individuals involved*:  Attorney M. Tucker as the author.

22

*Log description*: Annotated agenda relating to an infringement investigation pertaining to the '738 patent.

*Ruling*: BorgWarner has claimed both attorney-client privilege and work product immunity for the document and the handwritten notes. The agenda and the notes were prepared in anticipation of litigation. The document is therefore protected by work product immunity and need not be produced.

Documents 1358 and 1359

*Individuals involved*: Roger Simpson as author.

*Log description*: Undated notes attached to a patent, for transmittal to counsel to facilitate the rendition of legal services.

*Slip sheet description*: Information was gathered and provided to counsel in anticipation of litigation.

*Ruling*: The work of non-attorneys working at the direction of counsel is covered by work product protection. The documents appear to be collected at the request of counsel as part of either a validity or infringement investigation. Therefore the documents need not be produced.

Document 1360

*Individuals involved*: Email from Simpson to Dziegielewski with copies to Mott and Dembosky, and from Mott to Wood.

23

*Log description*:  An email providing information regarding an infringement inves-

tigation of the '738 patent and seeking advice relating thereto.

*Slip sheet description*:  Information regarding investigation of infringement of '738

patent and concerning request for advice from counsel.

*Ruling*:  A review of the document shows that it is protected by work product im-

munity because the client is providing information to counsel in anticipation of

litigation.  The document need not be produced.

Documents 1571-74, 1576, 1589, 1596, 1617, and 1620

BorgWarner did not submit these documents for review.  They should be submitted

for review as soon as possible.

Document 1632

*Individuals involved*:  Butterfield as the author.

*Log description*:  Notes reflecting advice from counsel regarding ongoing patent

prosecution.

*Slip sheet description*:  Relates to pending patent applications and communications

from counsel concerning those applications.

*Ruling*:  A review of the document confirms this description - Butterfield is memo-

rializing advice received from counsel.  The document is subject to the attorney-

client privilege.

## C.    Category 3

Hitachi claims that Category 3 documents were exchanged between counsel and client, but are only transmittal letters, docket reports, file covers, status reports and file memos which are not privileged as a matter of law. Motion at 8. *See Minnesota Mining and Manufacturing Corp. v. Coopervision, Inc.*, Civ. A. Nos. 84-577-CMW, 85-49-CMW, 1986 WL 9480, at \*\*1-2 (D. Del. Aug. 15, 1986) ("transmittal" or "acknowledgement" letters are not protected by the attorney-client privilege). BorgWarner responds that Hitachi's characterization of the documents is incorrect, and that the documents reflect comments on strategy and legal advice. Opposition at 6. BorgWarner has produced a number of documents in this category that were initially withheld on privilege grounds.[3] Still at issue in this Motion are the following documents:

2, 18, 21, 26, 151, 161-62, 166, 196, 198-99, 201, 208, 277, 279, 317, 410-11, 521, 632, 692, 770, 772, 1009, and 1026.

Documents 2, 277, 1009

*Individuals involved*: Brinks Hofer attorney Meehan as the author, BorgWarner in-house attorney Dziegielewski as the addressee, and Butterfield as a copy recipient (entries 2, 277, 1009 and BH 150 are the same document).

---

[3] Before the Motion – 34-35, 38-40, 1002, 1024, and 1233. After the Motion – 14, 16, 22, 25, 72-73, 97, 131, 160, 271, 272, 789 and 1198.

25

*Log description*:  Letter regarding the status of BorgWarner patent applications regarding Ford issues.

*Slip sheet description*:  Reflects legal advice regarding prosecution matters and comments on strategy regarding Ford.

*Ruling*:  The document is a letter from counsel identifying issues relating to a dispute with Ford Motor Company, and is therefore privileged.

Document 18

*Individuals involved*:  Brinks Hofer attorney Spenard as the author, Dziegielewski as the recipient and Olive Carrick, a BorgWarner patent docket clerk, also a copied recipient.

*Log description*:  Status of pending application and approaching deadlines.

*Slip sheet description*:  Reflects advice and comments on strategy.

*Ruling*:  A review of the document confirms that it provides legal advice relating to patent prosecution and is therefore subject to the attorney-client privilege.

Document 21

*Individuals involved*:  Brinks Hofer attorney Spenard as the author, Dziegielewski as the recipient and Butterfield as a copied recipient.

*Log description*:  Document reflects the status of an office action.

*Slip sheet description*:  Document contains legal advice and strategy.

*Ruling*: A review of the document reveals that it is a status report devoid of any legal advice or strategy. As such, it is not subject to the attorney-client privilege and must be produced. *Willemijn*, 707 F. Supp. at 1443 (administrative patent information devoid of advice or information conveyed to obtain advice not privileged). The document must be produced.

Document 26

*Individuals involved*: Brinks Hofer attorney Spenard as author to Carrick.

*Log description*: Status of patent prosecution.

*Slip sheet description*: Communication to the client reflecting legal advice and comments on strategy.

*Ruling*: A review of the document confirms that it contains legal advice regarding patent prosecution and is subject to the attorney-client privilege.

Document 151

*Individuals involved*: Meehan as the author, sent to Butterfield and copied to Dziegielewski.

*Log description*: Request for information to facilitate the rendition of legal services.

*Ruling*: A review of the document confirms this description, and the document is subject to the attorney-client privilege.

27

### Documents 161, 162, 166, 279, 521, 692, 770, 772 and 1026

*Log Description*: Patent docket sheets for use in patent committee review.

*Ruling*: Patent docket sheets containing purely factual information are not subject to the attorney-client privilege. *Pfizer Inc.*, 2004 WL 2323135, at \*\*1-2 (citing *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 144 (D. Del. 1977)). All of the foregoing documents must be produced with the following exceptions. Document numbers 161, 166, 279 contain handwritten remarks about future strategy that can be redacted. Also, the cover letter to document 1026 contains legal advice and need not be produced (but the underlying docket report must be produced).

### Document 196

*Individuals involved*: Letter authored by Meehan sent to Carrick.

*Log description*: Communication regarding the '735 patent.

*Slip sheet description*: The letter provides legal advice.

*Ruling*: A review of the document shows that it reflects no legal advice – the attorney reviewed a patent for typographical errors. The document must be produced.

### Document 198

*Individuals involved*: Letter from Meehan to Butterfield with Spenard and Carrick listed as copied recipients.

*Log description*: Relates to the allowance of a patent application.

28

*Slip sheet description*: Reflects legal advice and strategy.

*Ruling*: A review of the document reveals that it contains legal advice relating to patent prosecution and is, therefore, subject to the attorney-client privilege.

Document 199

*Individuals involved*: Letter from Spenard to Dziegielewski, copied to Meehan and Carrick.

*Log description*: A letter regarding an advisory action.

*Slip sheet description*: The letter includes advice and comments on strategy.

*Ruling*: The letter reflects legal strategy advice from counsel and therefore need not be produced.

Document 201

*Individuals involved*: Authored by Spenard and sent to Carrick.

*Log description*: Facsimile regarding a patent application.

*Slip sheet description*: Reflects advice and strategy.

*Ruling*: A review of the letter shows that it merely provides a status report on a pending application, and does not contain legal advice. Consequently the document must be produced.

Document 208

*Individuals involved*: Authored by Meehan and sent to Carrick.

*Log description*: Facsimile regarding prosecution of various patent applications.

29

*Slip sheet description*: Conveys legal advice in response to a request for advice.

*Ruling*: A review of the document confirms the description on the slip sheet. Consequently, the document is subject to the attorney-client privilege.

Document 317

*Individuals involved*: Letter written by Spenard to Dziegielewski.

*Log description*: Provides a proposed course of action in connection with a prosecution matter.

*Slip sheet description*: Reflects legal advice pertaining to ongoing prosecution.

*Ruling*: A review of the document confirms that it provides legal advice with respect to the prosecution of a pending application. Consequently, the document is subject to the attorney-client privilege.

Documents 410, 411 and 632

*Individuals involved*:    Entry 410 comprises two documents.    One from Dziegielewski to BorgWarner management (410) and the other from Meehan to Dziegielewski (411).[4]

*Log description*: Summarizes issues in connection with ongoing interference proceedings which reflect legal advice and strategy.

*Slip sheet description*: Communication from counsel to client reflecting legal advice of counsel including comments on strategy.

---

[4] Document 411 is the same document as document 632.

30

*Ruling*: A review of the documents confirms that they provide legal advice relating to ongoing interferences, and recommendations from counsel on future action. These documents are subject to the attorney-client privilege.

## D.    Category 4

Hitachi contends that BorgWarner has waived the attorney-client privilege with respect to the substance of Mr. Dziegielewski's reports to BorgWarner's management relating to the Melchior interference.[5] According to Hitachi, because Mr. Dziegielewski testified at his deposition about the substance of his reports to BorgWarner's management relating to Melchior interference "settlement options," it would be unfair to deny Hitachi access to the reports to assess Mr. Dziegielewski's testimony. This unfairness, according to Hitachi, is compounded because the testimony was given in response to questions from BorgWarner's counsel. Mr. Dziegielewski's testimony is as follows:

- Q.    Okay. And what was your interest with regard to those interferences as far as BorgWarner was concerned?

- A.    Mr. Melchior had filed in a number of other foreign countries where it's a first to file situation. He filed first. Therefore, any patents issuing would belong to him. And, in my estimation, BorgWarner is a global company, and in a global perspective the outcome of the U.S. interferences was essentially immaterial to what BorgWarner's options were. We were going to need a license from Mr. Melchior.

---

[5] BorgWarner agreed to produce document 389, which is described as a list of papers filed in the interference. Document 388 continues to be withheld, as well as other unidentified documents reflecting reports to management about the Melchior interference.

31

Q.    And when you say going to need a license, you meant regard-
      less of whether BorgWarner won or lost the U.S. interferences,
      was it your belief that BorgWarner was going to need a license
      to the international counterpart applications and patents that
      Melchior had?

A.    That is correct.

Q.    And, so, in your review of the interferences, how, if at all, did
      that affect your evaluation of the interferences or consideration
      of the interferences?

A.    I put essentially zero time into it.  It would have been a waste of
      resources for me to conduct anything in any detail with regard
      to those interferences.

Dziegielewski Dep. Tr. at 143-44.

* * *

Q.    You broached the area of what was evaluated in the Melchior
      interference.  In considering settlement options, did you evalu-
      ate the strengths and weaknesses of the U.S. case?

A.    Did I personally evaluate it?

Q.    In your patent department, you or –

A.    That's the province of outside counsel.

Q.    In determining whether to settle the case, did you review Mr.
      Melchior's position in the U.S. interference?

A.    No, because it was essentially immaterial to our global en-
      deavor.  Whether we won or lost the U.S. interference was im-
      material.

Q.    In your reports to management, did you discuss the U.S. case?

32

A.    To the extent that I advised them it was immaterial whether we won or lost. They were still likely to need a license from Mr. Melchior on the foreign patents.

Q.    Okay. Have you gone back to look at these reports to see what you did discuss or didn't discuss with regard to the U.S. case?

A.    No, I have not.

Q.    Okay.

Dziegielewski Tr. at 145-46.

In general, a party's voluntary disclosure of one or more privileged communications between the party and his attorney waives the privilege as to all communications between the party and his attorney on the same subject. *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 156 (D. Del. 1977); *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 929 (N.D. Cal. 1991); *Dunlap Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1161 (D.S.C. 1974). The underlying rationale is one of fairness: "A party cannot disclose only those facts beneficial to its case and refuse to disclose, on the grounds of privilege, related facts adverse to its position." *Hercules*, 434 F. Supp. at 156.

Here, Mr. Dziegielewski testified, while being questioned by BorgWarner's attorney, that he advised BorgWarner's management that the outcome of the U.S. Melchior interference was immaterial because BorgWarner would need a license in

light of Melchior's European patent position.[6]  Having revealed the substance of

his advice about the materiality of the interference to BorgWarner's management,

BorgWarner has waived the privilege for other communications on the same sub-

ject matter – advice given to management on the materiality of the Melchior inter-

ference.  Therefore, to the extent that any documents on the privilege log are being

withheld that were authored by Mr. Dziegielewski, and relate to advice given to

management on the materiality of the Melchior interference, they must be pro-

duced to Hitachi.[7]

## IV.    CONCLUSION

In accordance with this decision, BorgWarner shall produce documents on

its privilege log for which its privilege assertion was denied.  Where further sub-

missions are required to evaluate the privilege claims, those submissions shall be

made on or before August 15, 2006.


                                                          /s/ Collins J. Seitz, Jr.
                                                          Special Master

Dated:  August 2, 2006


---

[6]  BorgWarner has attempted to have it both ways.  When Hitachi questioned Mr. Dziegielewski about what he advised management about the strengths and weaknesses of BorgWarner's position in the interference, the witness was instructed not to answer. Dziegielewski Tr. at 113.

[7]  Document 388 is a chronology of events relating to the Melchior interference prepared by counsel, and does not involve any advice to management regarding the materiality of the Melchior interference.  Therefore the document need not be produced.