**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HITACHI, LTD., and HITACHI AUTOMOTIVE PRODUCTS (USA), INCORPORATED )<br>         Plaintiffs, )<br> )<br>  v. )<br> )<br>BORGWARNER INC., and )<br>BORGWARNER MORSE TEC INC., )<br> )<br>         Defendants. )<br>_____)<br> )<br>BORGWARNER INC., )<br> )<br>         Counterclaimant, )<br> )<br>  v. )<br> )<br>HITACHI, LTD., and HITACHI AUTOMOTIVE )<br>PRODUCTS (USA), INCORPORATED )<br> )<br>         Counterdefendants. ) | C.A. No. 05-048-SLR |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT OF INVALIDITY
UNDER 35 U.S.C. § 112, ¶ 1 BASED ON THE "REGULATING"
RECITATION OF CLAIM 10 UNDER PLAINTIFFS' CLAIM CONSTRUCTION**

*Of Counsel:*

Kenneth E. Krosin
Michael D. Kaminski
Pavan K. Agarwal
C. Edward Polk
Liane M. Peterson
Foley & Lardner LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007–5109

William J. Robinson
Foley & Lardner LLP
2029 Century Park East, Suite 3500
Los Angeles, CA 90067
(310) 277-2223

Dated: October 4, 2006

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654–1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiffs Hitachi, Ltd. and
Hitachi Automotive Products (USA), Inc.*

**TABLE OF CONTENTS**

**Page**

I. NATURE AND STAGE OF PROCEEDING .......................................................... 1

II. SUMMARY OF ARGUMENT ............................................................................... 1

III. SUMMARY OF FACTS ......................................................................................... 2

    A. The '738 Patent Specification Describes A Variable Camshaft Timing System Using Camshaft Torque Pulsations, In Which Fluid is Regulated to Flow From One Vane Recess Or Piston-Cylinder To Another ..................................................................................................... 2

    B. Asserted Claim 10 Requires A Method Of Controlling The Flow Of Oil From A Source to A Chain/Belt and Sprocket ................................ 5

IV. SUMMARY JUDGMENT IS APPROPRIATE ...................................................... 6

    A. The Summary Judgment Standard ............................................................. 6

    B. Claim 10 Fails to Meet The Requirements Of 35 U.S.C. § 112 ¶ 1 Because It Is Not Enabled By The Specification Of The '738 Patent ........................................................................................................... 7

    C. Claim 10 Fails To Meet The Written Description Requirement of 35 U.S.C. § 112 ¶ 1 Because the "Regulating" Recitation Finds No Support in the Specification ......................................................................... 9

    D. Claim 10 Cannot Be Rewritten To Save It Under Section 112 ................ 11

    E. Dependent Claim 11 Is Invalid Because It Incorporates the Regulating Recitation of Claim 10 ............................................................ 13

V. CONCLUSION ..................................................................................................... 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................ 6

*Autogiro Co. of America v. United States*,
    384 F.2d 391 (Ct. C. 1967) ................................................................................... 12

*Avia Group Int'l v. L.A. Gear Cal., Inc.*,
    853 F.2d 1557 (Fed. Cir. 1988) .............................................................................. 6

*Becton Dickinson & Co. v. C.R. Bard Inc.*,
    922 F.2d 792 (Fed. Cir. 1990) .............................................................................. 12

*Chef America, Inc. v. Lamb-Weston, Inc.*,
    358 F.3d 1371 (Fed. Cir. 2004) ............................................................................ 12

*Crown Operations Intern., Ltd. v. Solutia Inc.*,
    289 F.3d 1367 (Fed. Cir. 2002) .............................................................................. 9

*E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Co.*,
    849 F.2d 1430 (Fed. Cir. 1988) ............................................................................ 12

*Enzo Biochem, Inc. v. Gen-Probe, Inc.*,
    424 F.3d 1276 (Fed. Cir. 2005) .............................................................................. 6

*Gentry Gallery, Inc. v. Berkline Corp.*,
    134 F.3d 1473 (Fed. Cir. 1998) .............................................................................. 9

*Hoganas AB v. Dresser Indus., Inc.*,
    9 F.3d 948 (Fed. Cir. 1993) ................................................................................. 13

*Lizardtech, Inc. v. Earth Resource Mapping, Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005) .......................................................................  9, 14

*Lockwood v. American Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997) ............................................................................ 10

*National Recovery Tech., Inc. v. Magnetic Separation Sys., Inc.*,
    166 F.3d 1190 (Fed. Cir. 1999) .............................................................................. 6

*Paragon Podiatry Lab., Inc. v. KLM Lab., Inc.*,
    984 F.2d 1182 (Fed. Cir. 1993) .............................................................................. 6

# TABLE OF AUTHORITIES

**Page(s)**

*Process Control Corp. v. HydReclaim Corp.*,
   190 F.3d 1350 (Fed. Cir. 1999) .................................................................................. 7, 9

*Quantum Corp. v. Rodime, Plc.*,
   65 F.3d 1577 (Fed. Cir. 1995) ........................................................................................ 12

*Simmons, Inc. v. Bombardier Inc.*,
   328 F. Supp. 2d 1188 (D. Utah, 2004) ........................................................................... 13

*The Dow Chemical Co. v. Mee Industries, Inc.*,
   341 F.3d 1370 (Fed. Cir. 2003) ...................................................................................... 14

*TurboCare Div. of Demag Delaval Turbomach. Corp. v. Gen. Elec. Co.*,
   264 F.3d 1111 (Fed. Cir. 2001) ............................................................................... 6, 9-10

*Univ. of Rochester v. G.D. Searle & Co.*,
   358 F.3d 916 (Fed. Cir. 2004) .......................................................................................... 9

*Vas-Cath Inc. v. Mahurkar*,
   935 F.2d 1555 (Fed. Cir. 1991) ................................................................................. 9-10

**FEDERAL STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

35 U.S.C. § 101 ..................................................................................................................... 8-9

35 U.S.C. § 112 ................................................................................................................. Passim

FED. R. CIV. P. 56(C) ................................................................................................................. 6

I.      NATURE AND STAGE OF PROCEEDING

Plaintiffs Hitachi, Ltd. and Hitachi Automotive Products (USA), Inc. (collectively "Hitachi") move for summary judgment of invalidity of asserted claims 10 and 11 of U.S. Patent No. 5,497,738 ("the '738 patent") because the "regulating" recitation in claim 10 has no written description support and is not enabled under 35 U.S.C. § 112, first paragraph.

II.     SUMMARY OF ARGUMENT

Method claim 10 is directed to changing the phase angle of the camshaft relative to the crankshaft. Claim 10 recites in part "regulating the flow of fluid from a source to a means for transmitting rotary movement from said crankshaft to a housing." This recitation is a positive limitation of claim 10. As established in Hitachi's *Markman* brief (D.I. 264), the only reasonable interpretation for the phrase "means for transmitting rotary movement from said crankshaft to a housing" is "a sprocket attached to the housing and a chain or belt attaching the sprocket to a crankshaft, or the equivalents under § 112 ¶ 6." The corresponding structure disclosed in the specification of the '738 patent for carrying out the transmitting function does *not* include the housing itself. Therefore, the overall phrase requires regulating the flow of fluid from a source to a chain/belt and sprocket that is attached to the housing.

The specification, however, does not disclose regulating fluid flow to the sprocket and chain/belt, much less as part of the overall method of changing the relative phase angle. Indeed, the person of ordinary skill in the art would not know how or even why to carry out such regulation after reading the '738 patent specification. Instead, the '738 specification teaches something very different, *i.e.*, regulating the flow of fluid from one

1

piston-cylinder or vane recess to another to change the relative phase angle between a camshaft and crankshaft. As such, claim 10 fails to meet both the enablement and written description requirements of 35 U.S.C. § 112 ¶ 1. On either ground, claim 10 is invalid.

Claim 10 cannot be saved under Section 112 by rewording it. Based on the notice function of claims, courts cannot rewrite a claim to change its substantive scope or meaning to maintain the validity of the claim.

## III.    SUMMARY OF FACTS

### A.    The '738 Patent Specification Describes A Variable Camshaft Timing System Using Camshaft Torque Pulsations, In Which Fluid is Regulated to Flow From One Vane Recess Or Piston-Cylinder To Another

The '738 patent relates to a particular method for controlling a VCT system of the type that varies the position of the camshaft relative to the crankshaft in reaction to camshaft torque reversals. Ex. 1[1], '738 patent at 1:13-18. The entire specification discusses directing the flow of oil (pressurized by camshaft torque pulsations) from one piston-cylinder or vane recess to another to effect the phase change. *See, e.g.*, Ex. 1, '738 patent at 1:36-42 and 58-64; 5:57-61; and 9:22-26. The following figure, combining parts of Fig. 1 and parts of Fig. 11 of the '738 patent, illustrates the relationship of the relevant components (using the vane embodiment):

---

[1] All exhibits are included in the Combined Appendix in Support of Hitachi, Ltd's and Hitachi Automotive Products (USA), Inc.'s Opening Summary Judgment Motions.



The VCT changes the angular position of camshaft 126 relative to crankshaft 22 via a housing 132 that has an outer sprocket attached to it (shown as integrally formed with the housing in the embodiment). Vane 160 has lobes 160a,160b that can move within recesses 132a,132b, respectively, in housing 132. Ex. 1, '738 patent at 6:36-43. Vane 160 is attached to camshaft 126. Vane 160 can rotate clockwise or counterclockwise with respect to housing 132. Crankshaft rotation is transmitted to the housing 132 by the chain (or belt) 238 and the outer sprocket on the housing.

The "regulating" disclosed in the '738 patent for changing the phase is shown below in Figure 19, and the colorized versions of this figure showing the oil flow path used to create a phase shift.



FIG. 19

Rotating vane 160 is contained within recesses 132a and 132b of housing 132. Oil is transferred from one recess 132a, 132b to the other. The figure in the middle shows oil flowing (yellow with red arrows) from recess 132a to recess 132b.[2] The figure on the right shows oil flowing in the opposite direction. In either case, oil flow is controlled within this internal circuit by the interaction of camshaft torque pulsations, check valves 184,186, and the annular recess in spool 200. These elements cause camshaft 126, which is attached to vane 160, to rotate relative to housing 132, which in turn is coupled to the crankshaft, creating the phase shift between the camshaft and crankshaft.

---

[2] The blue oil flow is the transfer of oil on the non-active side of the vane.

There is absolutely no regulation of the flow of fluid from a source to a "means for transmitting rotary movement from said crankshaft to a housing," given that the only reasonable interpretation for this phrase is "a sprocket attached to the housing and a chain or belt attaching the sprocket to a crankshaft, or the equivalents under § 112 ¶ 6." No oil whatsoever is involved with respect to that "means." Instead, the structure and method disclosed in the '738 patent directs oil flow from one vane recess (or piston-cylinder) to the other to change the phase of the camshaft relative to the crankshaft. While the camshaft and crankshaft are chained together by a sprocket/chain assembly, the directed oil to change the phase does not flow to the chain or outer sprocket, so that there is no "regulating" oil flow to these components.

### B. Asserted Claim 10 Requires A Method Of Controlling The Flow Of Oil From A Source to A Chain/Belt and Sprocket

The preamble of claim 10 recites: "In an internal combustion engine having a variable camshaft timing system for varying the phase angle of a camshaft relative to a crankshaft, *a method of regulating the flow of hydraulic fluid from a source to a means for transmitting rotary movement from said crankshaft to a housing*, comprising the steps of . . . ."[3] The specification discloses that the corresponding structure for the transmitting means is a sprocket attached to the housing and a chain or belt attaching the sprocket to a crankshaft. Ex. 1, '738 patent at 4:62-5:20 & 6:14-24. The housing itself is *not* part of the corresponding structure. Therefore, "regulating" requires regulating the flow of fluid *from* a fluid source *to* a chain/belt and sprocket (or equivalents).

---

[3] The preamble to claim 10 is a substantive claim limitation. *See* Plaintiffs' *Markman* Brief at 31. Most of the quoted language at issue was added during prosecution in response to obviousness concerns from the PTO Examiner. *See id.*

The '738 patent specification does not provide any written description of regulating fluid flow from an oil source to a chain/belt and sprocket or to any equivalents of that structure. Nor does this specification enable a person of ordinary skill in the art to make and use such a system. Accordingly, the '738 patent completely fails to meet the written description and enablement requirements of Section 112, ¶ 1.

## IV.    SUMMARY JUDGMENT IS APPROPRIATE

### A.    The Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Avia Group Int'l v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988). The Federal Circuit has repeatedly stated that summary judgment is as appropriate in a patent case as in any other type of case. *E.g., Paragon Podiatry Lab., Inc. v. KLM Lab., Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993). A party can invalidate a patent on summary judgment by showing clear and convincing evidence to overcome the patent's presumption of validity. *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1281 (Fed. Cir. 2005). Patent claims may be held invalid on summary judgment for failure to satisfy the written description or enablement requirements. *See, e.g.*, *TurboCare Div. of Demag Delaval Turbomach. Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1117-19 (Fed. Cir. 2001); *National Recovery Tech., Inc. v. Magnetic Separation Sys.*, Inc., 166 F.3d 1190, 1197-98 (Fed. Cir. 1999).

### B. Claim 10 Fails to Meet The Requirements Of 35 U.S.C. § 112 ¶ 1 Because It Is Not Enabled By The Specification Of The '738 Patent

Section 112, first paragraph, requires that "[t]he specification shall contain . . . the manner and process of making and using [the invention], in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same." Thus, "enablement" "requires that the specification adequately discloses to one skilled in the relevant art how to make, or in the case of a process, how to carry out, the claimed invention without undue experimentation." *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1358 (Fed. Cir. 1999). Whether a disclosure is enabling under Section 112 is a legal conclusion, based upon underlying factual inquiries. *Id.* at 1359.

Claim 10 recites "regulating the flow of fluid from a source to a means for transmitting rotary movement from said crankshaft to a housing." This language, which was added during prosecution, has no basis in the specification. The "regulating" recitation in claim 10 has only one reasonable interpretation, *i.e.* that oil flowing from an oil source to a chain or belt and a sprocket attached to the housing is regulated. Nowhere in the '738 specification is such regulation described or even suggested. Instead, the specification describes something quite different.

The '738 patent specification describes a method of controlling oil flow from one piston-cylinder or vane recess to another that, with camshaft torque pulsations, rotates a housing relative to a camshaft, thereby changing the phase angle between the camshaft and crankshaft. Ex. 18, Kuhn II Decl. at ¶ 12. Thus, the only "regulating" of oil flow to change the phase is between the opposed pistons or vane chambers within the internal oil circuit of the VCT mechanism. *Id.* at ¶ 14.

7

The '738 patent does *not* teach regulating oil flow from a "source" to the chain/belt shown above.[4] While the '738 patent describes a crankshaft connected to a camshaft by a chain or belt, it does not suggest or teach that the hydraulic circuit includes any regulated oil flow to these components. Ex. 18, Kuhn II Decl. at ¶ 15.

In typical engines, a crankshaft sprocket is chained to a camshaft sprocket using a chain, which is lubricated by an unregulated flow of oil that is either sprayed or splashed onto the chain in the engine crankcase. Ex. 18, Kuhn II Decl. at ¶ 16. The oil used for this "spraying" or "splashing" operation typically comes from an unregulated supply galley in the engine. *Id.* Stated another way, spraying or splashing of oil on this chain is not a regulated flow that creates a phase change. *Id.* Splashing or spraying oil onto the chain does not make the camshaft rotate relative to the crankshaft. *Id.* In any event, there is nothing in the '738 patent that discloses such flow. For engines using a belt, the belt would not even receive any oil. *Id*. at ¶ 17; Ex. 19, U.S. Patent No. 5,361,735 at 1:21-32.

No factual questions exist about the disclosure or teachings in the specification. The claim construction aspect raises no questions of fact. In sum, no genuine issues of material fact exist that must be resolved. Nothing in the specification teaches the person of ordinary skill in the art how to make and use the claimed step of regulating the flow of fluid from a source to a chain/belt and outer sprocket. Claim 10 is therefore invalid for lack of enablement because of the regulating recitation.[5]

---

[4] The parties have proposed different claim constructions for the term "source." For purposes of this motion, it does not matter which proposed construction of "source" is adopted. The "regulating" recitation lacks enablement and written description support either way.

[5] The regulating recitation of claim 10 is practically nonsensical. Claims that make no sense raise issues of utility (and operability) under 35 U.S.C. § 101 and enablement under 35 U.S.C. § 112, ¶ 1. *Process Control*, 190 F.3d at 1358. ("Lack of enablement and absence of utility are closely related grounds of unpatentability. … If a patent claim fails to meet the utility requirement

### C. Claim 10 Fails To Meet The Written Description Requirement of 35 U.S.C. § 112 ¶ 1 Because the "Regulating" Recitation Finds No Support in the Specification

The first paragraph of Section 112 also requires that "[t]he specification shall contain a written description of the invention." The written description requirement is distinct and different from the enablement requirement. *Lizardtech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005), *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 921 (Fed. Cir. 2004). Compliance with the written description requirement is a question of fact. *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991). Nonetheless, where, as here, there are no genuine issues of material fact, it is amenable to summary judgment.[6]

To comply with the Section 112 written description requirement, the patent specification must disclose to the person of ordinary skill in the art that the inventors were in possession of the full claimed invention, with all its claim limitations. *Crown Operations Intern., Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1376 (Fed. Cir. 2002); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998). The claimed invention must be described in such a way that one skilled in the art can recognize what is being claimed. *Univ. of Rochester*, 358 F.3d at 923. The purpose of the written description requirement is to ensure that the applicant convey to those skilled in the art

---

because it is not useful or operative, then it also fails to meet the how-to-use aspect of the enablement requirement.") Even though Hitachi is not formally moving for invalidity under Section 101 in this motion, the essential lack of utility of the regulating recitation further underscores the conclusion that the claim is not enabled.

[6] *See, e.g., Univ. of Rochester*, 358 F.3d at 927 (affirming district court's grant of summary judgment for failing to adequately describe the claimed invention), *TurboCare Div. of Demag*, 264 F.3d at 1117 (affirming district court's grant of summary judgment of invalidity for inadequate written description).

9

that he or she was in possession of the invention at the time of filing the patent application. *Vas-Cath Inc.*, 935 F.2d at 1563-64.

When a claim is amended during prosecution to add a limitation not disclosed in the specification, the claim is invalid for lack of written description. *TurboCare Div. of Demag*, 264 F.3d at 1118-19 (claim added during prosecution recited a limitation concerning the location of particular springs that was not disclosed in the specification). Claims directed to a distinct invention from that disclosed in the written description do not satisfy the written description requirement. *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) ("[The patent] claimed a distinct invention from that disclosed in the specification. It is not sufficient for purposes of the written description requirement of § 112 that the disclosure, when combined with the knowledge in the art, would lead one to speculate as to modifications that the inventor might have envisioned, but failed to disclose. Each application in the chain must describe the claimed features.")

As noted above, the '738 patent discloses a particular method for changing the phase of the camshaft relative to the crankshaft, which includes regulating the flow of fluid between piston-cylinders or vane recesses in the VCT. The '738 patent discloses a chain or belt to transmit rotary movement from a crankshaft to a housing. But the '738 specification nowhere discloses, expressly or inherently, regulating fluid flow from the source to a chain/belt and outer sprocket that is attached to the housing. Stated another way, nothing in the specification teaches a hydraulic control circuit that includes or extends to the chain/belt. Nothing about the operation of the disclosed structure demonstrates that oil flow is regulated from a source to the chain/belt. Moreover, there is

nothing inherent in the structure or method as described that includes regulating the flow of fluid from a source to the chain/belt or outer sprocket.

As noted above, the "regulating" limitation was not original claim language. BorgWarner amended claim 10 (application claim 11 in prosecution), in part, as follows:

> 10. In an internal combustion engine having a variable camshaft timing system <u>for varying the phase angle of a camshaft relative to a crankshaft</u>, a method of regulating the flow of hydraulic fluid <u>from a source to a means for transmitting rotary movement from said crankshaft to a housing</u>, comprising the steps of:

This amendment resulted in a claim limitation that is not taught or disclosed anywhere in the '738 patent specification. No factual questions exist on this point. The claim recites one thing, while the specification discloses another. Since claim 10 is not supported by the specification, it is invalid for failing to meet the written description requirement of Section 112, first paragraph.

### D. Claim 10 Cannot Be Rewritten To Save It Under Section 112

BorgWarner has tried to save claim 10 by ignoring the actual words and phrases in the claim in its proposed claim interpretation. The result is an interpretation that contradicts the plain words of the claim. Specifically, BorgWarner defines "means for transmitting rotary movement from said crankshaft to housing" as "a crankshaft sprocket, a camshaft sprocket, and a timing chain or timing belt wrapped around the crankshaft sprocket and camshaft sprocket, with a housing connected to the camshaft sprocket, and equivalents thereof." BorgWarner's interpretation includes "housing" as part of the corresponding structure, which is incorrect because it includes in the corresponding structure the object being acted upon. The "means" are for transmitting "from" the

11

crankshaft "to" the housing. Obviously, the housing is not part of the means. See Plaintiffs' *Markman* brief at 25-26.

In essence, BorgWarner is rewriting the claim to try to save it from invalidity under Section 112, first paragraph. However, courts construe claims as they are written, not as the patentee wished they were written:

> The claims of the patent provide the concise and formal definition of the invention. They are the numbered paragraphs which 'particularly [point] out and distinctly [claim] the subject matter which the applicant regards as his invention.' 35 U.S.C. § 112. It is to these wordings that one must look to determine whether there has been infringement. … ***Courts can neither broaden nor narrow the claims to give the patentee something different than what he has set forth. No matter how great the temptations of fairness or policy making, courts do not rework claims. They only interpret them.***

*Autogiro Co. of America v. United States*, 384 F.2d 391, 396 (Ct. C. 1967) (emphasis added).

The Federal Circuit "has consistently adhered to the proposition that courts cannot alter what the patentee has chosen to claim as his invention."[7] This principle applies even if the claim does not make technical sense.[8] Strong policy reasons underlie this rule. Claims set forth the "metes-and-bounds" of the invention. They place the public on notice of the scope of the invention sought to be protected. If courts redrafted claims,

---

[7] *E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed. Cir. 1988); *see also Becton Dickinson & Co. v. C.R. Bard Inc.*, 922 F.2d 792, 799 (Fed. Cir. 1990) ("Nothing in any precedent permits judicial redrafting of claims."); *Quantum Corp. v. Rodime, Plc.*, 65 F.3d 1577, 1584 (Fed. Cir. 1995) ("[I]t is well settled that no matter how great the temptations of fairness or policy making, courts do not redraft claims.").

[8] *See, e.g., Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371 (Fed. Cir. 2004) (This court, however, repeatedly and consistently has recognized that courts may not redraft claims, whether to make them operable or to sustain their validity. … Even "a nonsensical result does not require the court to redraft the claims of the patent." … Thus, in accord with our settled practice we construe the claim as written, not as the patentees wish they had written it.")

12

competitors could not rely on the claim terms of a patent to advise them of the scope of the claimed invention:

> [W]e conclude one of skill in the art, the vantage point from which the proper interpretation of the claim is ultimately determined, would not have been put on notice that the term meant other than what it says. Such a one would be perfectly justified in giving the term its ordinary meaning. If [the patentee], who was responsible for drafting and prosecuting the patent, intended something different, it could have prevented this result through clearer drafting. … It would not be appropriate for us now to interpret the claim differently just to cure a drafting error made by [the patentee]. That would unduly interfere with the function of claims in putting competitors on notice of the scope of the claimed invention."

*Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 951 (Fed. Cir. 1993).

The burden of properly drafting claims and determining that the patent is free from mistake falls squarely on the patentee. Put more directly by the court in *Simmons, Inc. v. Bombardier Inc.*, 328 F. Supp. 2d 1188, 1201 (D. Utah, 2004), "[i]t does not seem to us to be asking too much to expect a patentee to check a patent when it is issued in order to determine whether it contains any errors that require the issuance of a certificate of correction."

### E.    Dependent Claim 11 Is Invalid Because It Incorporates the Regulating Recitation of Claim 10

Claim 11 incorporates by reference the regulating recitation of claim 10. As shown above, the method of claim 10 is not supported by the specification and lacks enablement. Claim 11 only recites further limitations of the "variable force solenoid" of claim 10. It does not change the meaning or scope of the "regulating" recitation of claim 10. Hence, the same issues of invalidity are present in both claim 10 and claim 11. Because claim 10 is invalid, claim 11 also is invalid. *See, e.g., Lizardtech Inc.*, 424 F.3d

13

at 1346-47 (holding that where an independent claim failed to meet the requirements of 35 U.S.C. § 112, the dependent claims depending from the invalid independent claim also failed to meet the requirements of § 112 and were invalid); *The Dow Chemical Co. v. Mee Industries, Inc.*, 341 F.3d 1370, 1377 (Fed. Cir. 2003) (finding invalid a claim dependent from an invalid method claim where they shared the same language and were therefore invalid on the same basis).

## V.     CONCLUSION

Claims 10 and 11, when construed in the only way reasonable, are invalid because they are not enabled and lack written description support under Section 112, first paragraph. Accordingly, Hitachi requests entry of summary judgment that these claims are invalid.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiffs Hitachi, Ltd. and.
Hitachi Automotive Products (USA), Inc.*

*Of Counsel:*

Kenneth E. Krosin
Michael D. Kaminski
Pavan K. Agarwal
C. Edward Polk
Foley & Lardner LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007–5109
(202) 672–5300

William J. Robinson
Foley & Lardner LLP
2029 Century Park East Blvd., Ste. 3500
Los Angeles, CA 90067-3021
(310) 277-2223

Dated: October 4, 2006
173861.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of October, 2006, the attached **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 112, ¶ 1 BASED ON THE "REGULATING" RECITATION OF CLAIM 10 UNDER PLAINTIFFS' CLAIM CONSTRUCTION** was served upon the following counsel of record in the manner indicated:

| | |
|---|---|
| Richard K. Herrmann, Esquire<br>Morris, James, Hitchens & Williams LLP<br>222 Delaware Avenue, 10th Floor<br>P.O. Box 2306<br>Wilmington, DE  19801 | <u>HAND DELIVERY</u> |
| Hugh A. Abrams, Esquire<br>Sidley Austin LLP<br>One South Dearborn Street<br>Chicago, IL  60603 | <u>VIA FEDERAL EXPRESS</u> |

*/s/ Tiffany Geyer Lydon*
_____
Tiffany Geyer Lydon

154486.1