# EXHIBIT 6

US005218935A

# United States Patent [19]

## Quinn, Jr. et al.

[11] Patent Number: 5,218,935

[45] Date of Patent: Jun. 15, 1993

[54] **VCT SYSTEM HAVING CLOSED LOOP CONTROL EMPLOYING SPOOL VALVE ACTUATED BY A STEPPER MOTOR**

[75] Inventors: Stanley B. Quinn, Jr.; Edward C. Siemon, both of Ithaca, N.Y.

[73] Assignee: Borg-Warner Automotive Transmission & Engine Components Corporation, Sterling Heights, Mich.

[21] Appl. No.: 940,273

[22] Filed: Sep. 3, 1992

[51] Int. Cl.⁵ ............................................ F01L 1/34
[52] U.S. Cl. .............................. 123/90.17; 123/90.31; 464/2
[58] Field of Search ............... 123/90.15, 90.17, 90.31; 464/1, 2, 160

[56]                    **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,858,572 | 8/1989 | Shirai et al. | 123/90.31 |
| 4,895,113 | 1/1990 | Speier et al. | 123/90.31 |
| 4,903,650 | 2/1990 | Ohlendorf et al. | 123/90.31 |
| 5,002,023 | 3/1991 | Butterfield et al. | 123/90.17 |
| 5,046,460 | 9/1991 | Butterfield et al. | 123/90.17 |
| 5,056,477 | 10/1991 | Linder et al. | 123/90.31 |
| 5,107,804 | 4/1992 | Becker et al. | 123/90.17 |
| 5,172,659 | 12/1992 | Butterfield et al. | 123/90.17 |

### FOREIGN PATENT DOCUMENTS

3922962 .1/1991 Fed. Rep. of Germany ... 123/90.31

*Primary Examiner*—E. Rollins Cross

*Assistant Examiner*—Weilun Lo
*Attorney, Agent, or Firm*—William Brinks Olds

[57]                    **ABSTRACT**

A camshaft (26) has a vane (60) secured to an end thereof for non-oscillating rotation therewith. The camshaft also carries a sprocket (32) which can rotate with the camshaft but which is oscillatable with respect to the camshaft. The vane has opposed lobes 60a, 60b) which are received in opposed recesses (32a, 32b), respectively, of the sprocket. The recesses have greater circumferential extent than the lobes to permit the vane and sprocket to oscillate with respect to one another, and thereby permit the camshaft to change in phase relative to a crankshaft whose phase relative to the sprocket is fixed by virtue of a chain drive extending therebetween. The camshaft experiences pulses during its normal operation, and these pulses are used to change its phase with respect to the crankshaft. The camshaft is permitted to change only in a given direction, either to advance or retard, by selectively blocking or permitting the flow of hydraulic fluid, preferably engine oil, through the return lines (94, 96) from the recesses by using a stepper motor (134). The stepper motor serves to control the position of a spool (100) within a valve body (98) of a control valve in response to a signal indicative of an engine operating condition determined from a closed loop feedback system (108) which utilizes a predetermined set point, r (35), to dictate the desired camshaft phase angle to effectuate certain engine performance criteria.

**29 Claims, 15 Drawing Sheets**



BW 001720



FIG. 1a

FIG. 1b



FIG. Ic





FIG. 1e



FIG. 1f

BW 001726



FIG. 19



FIG. 1h

BW 001728



FIG. 2



FIG. 3

Case 1:05-cv-00048-SLR    Document 281-4    Filed 10/06/2006    Page 13 of 28



FIG. 4

BW 001731



FIG. 5

BW 001732



FIG. 7                    FIG. 8



FIG. 6

Case 1:05-cv-00048-SLR    Document 281-4    Filed 10/06/2006    Page 16 of 28



FIG. 9



FIG. 10

BW 001734



FIG. 11

BW 001735

5,218,935

| 1 | 2 |

## VCT SYSTEM HAVING CLOSED LOOP CONTROL EMPLOYING SPOOL VALVE ACTUATED BY A STEPPER MOTOR

### FIELD OF THE INVENTION

This invention relates to an internal combustion engine in which the timing of the camshaft of a single camshaft engine, or the timing of one or both of the camshafts of a dual camshaft engine, relative to the crankshaft, is varied to improve one or more of the operating characteristics of the engine.

### BACKGROUND OF THE INVENTION

It is known that the performance of an internal combustion engine can be improved by the use of dual camshafts, one to operate the intake valves of the various cylinders of the engine and the other to operate the exhaust valves. Typically, one of such camshafts is driven by the crankshaft of the engine, through a sprocket and chain drive or a belt drive, and the other of such camshafts is driven by the first, through a second sprocket and chain drive or a second belt drive. Alternatively, both of the camshafts can be driven by a single crankshaft powered chain drive or belt drive. It is also known that engine performance in an engine with dual camshafts can be further improved, in terms of idle quality, fuel economy, reduced emissions or increased torque, by changing the positional relationship of one of the camshafts, usually the camshaft which operates the intake valves of the engine, relative to the other camshaft and relative to the crankshaft, to thereby vary the timing of the engine in terms of the operation of intake valves relative to its exhaust valves or in terms of the operation of its valves relative to the position of the crankshaft. Heretofore, such changes in engine valve timing have been accomplished by a separate hydraulic motor operated by engine lubricating oil. However, this actuating arrangement consumes significant additional energy and it increases the required size of the engine lubricating pump because of the required rapid response time for proper operation of the camshaft phasing actuator. Further, these arrangements are typically limited to a total of 20° of phase adjustment between crankshaft position and camshaft position, and typically such arrangements are two-position arrangements, that is, on, or fully phase adjusted as one position, and off, or no phase adjustment, as a second position.

The present invention is designed to overcome the aforesaid problems associated with prior art variable camshaft timing arrangements by providing a self-actuating, variable camshaft timing arrangement which does not require external energy for the operation thereof, which does not add to the required size of the engine lubricating pump to meet transient hydraulic operation requirements of such variable camshaft timing arrangement, which provides for continuously variable camshaft to crankshaft phase relationship within its operating limits, and which provides substantially more than 20° of phase adjustment between the crankshaft position and the camshaft position. Prior U.S. Pat. Nos. which describe various systems of the foregoing type are 5,046,460 and 5,002,023, the disclosures of each of which are incorporated by reference. Those disclosures provide a pulse-width modulated (PWM) solenoid for varying the position of a control valve which actuates the VCT phase adjustment mechanism. Closed-loop control of those VCT systems was disclosed in U.S.

patent application Ser. No. 07/847,577, the disclosure of which is incorporated herein by reference. This technology is acceptable for chain driven engines, but it is less than desirable in belt-driven engines where the PWM equipment may leak oil on the belt thus causing slippage and a decrease in engine efficiency.

### SUMMARY OF THE INVENTION

The present invention provides a method for phase adjustment of an internal combustion engine in which the position of the camshaft, or the positions of one or both of the camshafts in a dual camshaft system, is phase adjusted relative to the crankshaft by an actuating arrangement which is controlled by a closed loop system which commands a stepper motor. A predetermined set point dictates the desired camshaft phase angle for certain engine performance criteria. This variable camshaft timing (VCT) system can be used to improve important engine operating characteristics such as idle quality, fuel economy, emissions or torque. A preferred embodiment of a camshaft mounted hydraulic VCT mechanism uses one or more radially extending vanes which are circumferentially fixed relative to the camshaft and which are receivable in cavities of a sprocket housing that is oscillatable on the camshaft. Hydraulic fluid is selectively pumped through a proportional (spool) valve to one side or another of each vane to advance or retard the position of the camshaft relative to the sprocket. A pumping action occurs in reaction to a signal generated by a closed loop feedback system. Closed loop feedback control is imperative for any but the "two-position" case, i.e., fully advanced or fully retarded. This is because camshaft phase is controlled by the integral of the spool valve position. That is, spool position corresponds not to camshaft phase, but to its rate of change. Thus, any steady state spool position other than null (centered) will cause the VCT to eventually go to one of its physical limits in phase. Closed loop control allows the spool to be returned to null as the camshaft phase reaches its commanded position or set point. An additional result of using feedback control is that the system performance is desensitized to mechanical and environmental variations. This results in a reduction of the effects of short term changes, such as changes in oil pressure or temperature, or long term variations due to tolerances or wear. In addition, set point tracking error in the presence of unanticipated disturbances (e.g. torque shifts) is reduced. The use of VCT state variable feedback opens up the possibility of using "optimal" control to best achieve a wide variety of performance objectives. In addition, integral control can be incorporated into this technique to ensure zero steady-state tracking error.

Accordingly, it is an object of the present invention to provide an improved VCT method and apparatus which utilizes an electronic driver and stepper motor for spool position control and an advanced control algorithm that yields a prescribed set point tracking behavior. Specifically, it is an object of the present invention to provide a VCT system which utilizes a predetermined set point to dictate the desired camshaft phase angle to effectuate certain engine performance criteria. A further object of the present invention is to provide an improved VCT method and apparatus which does not rely upon oil pressure for spool valve control thus allowing the system to be accurately positioned at engine start-up when system oil pressure is

5,218,935

3

usually low. Another object of the current invention is to provide a VCT system for belt-driven engines which utilizes a stepper motor for spool valve control thus avoiding leakage of hydraulic fluid onto the belt from a hydraulically controlled spool valve, such as a pulse-width-modulated solenoid.

For a further understanding of the present invention and the objects thereof, attention is directed to the drawings and to the following brief descriptions thereof, to the detailed description of the preferred embodiment, and to the appended claims.

BRIEF DESCRIPTION OF THE DRAWING

FIG. 1a is a block diagram of a basic closed loop feedback system for a VCT system utilizing a stepper motor for phase shift actuation;

FIG. 1b is a block diagram of a closed loop feedback system for a VCT system similar to FIG. 1a with additional detail of control elements;

FIG. 1c is a block diagram of the VCT control law used in a closed loop feedback system of a preferred embodiment of the present invention;

FIG. 1d is a block diagram of a control system for the stepper motor and spool valve of a VCT system of the present invention;

FIG. 1e is a block diagram showing closed loop control of a VCT system using a stepper motor;

FIG. 1f is a block diagram of the control law with integral control and state feedback for a stepper motor in a VCT system of the present invention;

FIG. 1g is a block diagram of an alternate closed-loop feedback system similar to FIG. 1a but also having a synchronous filter in the controller;

FIG. 1h is a block diagram illustrating the component stages of a synchronous feedback filter;

FIG. 2 is an end elevational view of a camshaft with an embodiment of a variable camshaft timing system applied thereto;

FIG. 3 is a view similar to FIG. 2 with a portion of the structure thereof removed to more clearly illustrate other portions thereof;

FIG. 4 is a sectional view taken on line 4—4 of FIG. 3;

FIG. 5 is a sectional view taken on line 5—5 of FIG. 3;

FIG. 6 is a sectional view taken on line 6—6 of FIG. 3;

FIG. 7 is a end elevational view of an element of the variable camshaft timing system of FIGS. 2—6;

FIG. 8 is an elevational view of the element of FIG. 7 from the opposite end thereof;

FIG. 9 is a side elevational view of the element of FIGS. 7 and 8;

FIG. 10 is an elevational view of the element of FIG. 9 from the opposite side thereof; and

FIG. 11 is a simplified schematic view of the VCT arrangement of FIGS. 2–10.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

A simplified diagram of a closed-loop control system for a VCT mechanism using a stepper motor is shown in FIG. 1a. The phase feedback is compared to a desired phase set point and the difference is input to a phase loop controller. The controller calculates a stepper motor position which is compared to present stepper motor position. A stepper motor control unit issues a signal to the stepper motor to move it an appropriate

4

distance. The VCT mechanism is then actuated by the stepper motor movement which changes its position relative to a crankshaft.

As is schematically shown in FIGS. 1b and 11, the control objective of the present invention is to have the VCT mechanism at the phase angle given by the set point 35 with the spool 100 stationary in its null position. That is, the VCT mechanism is at the correct phase and the phase rate of change is zero. A sophisticated control algorithm which utilizes the dynamic state of the VCT mechanism is used to accomplish this result. Closed-loop control of the VCT mechanism is achieved by measuring the camshaft phase shift $\Theta_c20$, comparing it to the desired set point r 35, and adjusting the VCT mechanism so the phase follows the set point r 35. The control law 108 compares the set point r 35 to the phase shift $\Theta_c20$ and issues commands to stepper motor 134 in order to position the spool 100 when the phase error (set point r 35 minus phase shift 20) is not zero. The spool 100 is stepped to the right if the phase error is positive (retard) and to the left if the phase error is negative (advance). When the phase error is zero, the VCT phase equals the set point r 35 so the spool 100 is held in the null position (as shown in FIG. 11).

Camshaft and crankshaft measurement pulses in the VCT system are generated by camshaft and crankshaft pulse wheels 27 and 28, respectively, as the crankshaft (not shown) and camshaft 26 are rotated, and these can be used to actuate the operation of one or more hydraulic elements of a hydraulically operated VCT system. According to the present invention, in a VCT system, for example, a system as described in the aforesaid U.S. Pat. Nos. 5,046,460 and 5,002,023, and U.S. patent application Ser. No. 07/847,577, or according to the embodiment of FIGS. 2–10 as hereinafter described, the measurement pulses are detected by camshaft and crankshaft measurement pulse sensors 27a and 28a, respectively, and issued to a phase measurement device 107. The time from successive crank-to-cam pulses, divided by the time for an entire revolution and multiplied by 360°, gives the measured phase difference, $\Theta_c20$. This phase difference is then supplied to the control law 108 for processing.

A closed-loop block diagram of the control law 108 is described in detail in FIG. 1c. The stepper motor 134 acceleration command is uniquely determined from a control algorithm which is a function of the following three VCT system state variables: VCT phase difference $\Theta_c20$, spool 100 position (rate of VCT phase change), and spool 100 velocity. The set point r 35 and the phase difference 20 are each multiplied by proportional gain $K_{73}$. The difference between those computed values, less the computed velocity and position feedback values, yields a raw acceleration.

The acceleration is then limited and integrated to yield a raw velocity. The control algorithm maintains spool 100 velocity as an internal variable. The spool 100 velocity is limited by three factors. First, it cannot exceed its maximum velocity. Second, its derivative must be less than its maximum acceleration. Finally, as the spool 100 approaches its physical limits, its velocity must ramp to zero so that it does not introduce an error in the step count. The equations which correspond to these limits are as follows:

$$A_{max} = -A_{min} \text{ (set by manufacturer for maximum load)}$$

BW 001737

5,218,935

5

$V_{set} = -V_{pin}$ (set by manufacturer specifications)

$V_{10} = \max\{-V_{max}, -(2*A_{mAh}*[X-X_{10}])\}$

$V_{hi} = \min\{V_{max}, (2*A_{mAh}*[X_{hi}-X])\}$

$X_{hi}, X_{lo} =$ set by mechanical stops in spool valve 92.

The feedback gains, $K_p$, $K_v$, and $K_a$, are selected to give a one (1) Hertz sinusoidal response of $-3$dB (decibels) at $-45$ degree phase lag, but other gains can be selected to obtain a different response. In addition, spool 100 position is tracked by counting the step commands as described above. In essence, although the control algorithm is not based on commanding the spool to a specific position, the ability to keep track of the spool 100 position and velocity allows better closed-loop control. A model for stepper motor 134 position based on the control algorithm discussed above is shown in FIG 1d. As long as the stepper motor 134 step rate does not exceed the prescribed velocity, the stepper motor 134 position corresponds exactly to spool 100 position. FIG 1e is a block diagram of an alternative stepper motor step computation and tracking method.

Integral control of the VCT system can be introduced in order to ensure zero steady-state tracking error. That is, a constant set point r 35 will be reached exactly. The integral of the phase error, set point minus phase feedback, becomes a fourth state variable. It is multiplied by an additional feedback gain, $K_i$, and added into the acceleration command as shown in FIG. 1f. Optimal control laws can also be developed for this system.

An alternate embodiment of the present invention consists of an expanded closed loop feedback system including variation compensation and disturbance feed forward. The gain of this hydromechanical system depends on a number of variables such as hydraulic supply pressure, engine speed, oil temperature and natural crankshaft/camshaft orientation. In order to counteract the phenomena in the controller, the net effect of all the variables is estimated and a proportional gain is increased as response decreases.

FIG. 1g illustrates an embodiment of the present invention with a synchronous filter 25 in the controller 208 for filtering the measured phase shift $\Theta_s$ 20. As the camshaft rotates, the torque pulses 10 superimpose a high frequency disturbance on the measured phase shift, $\Theta_s$ 20. Thus, there is an exact synchronization between the torque pulses 10 and the high frequency disturbance. Likewise, the camshaft measurement pulses 27a are also synchronized with the disturbance. It is possible to take advantage of this synchronization to efficiently filter the phase measurement, $\Theta_s$ 20, so that the high frequency disturbance is isolated from the control action. As the camshaft speed varies, the filter frequency automatically tracks the disturbance frequency. The filter itself is a discrete-time notch filter with a sampling frequency equal to that of the camshaft measurement pulse frequency 27a. The filtered phase measurement, $\Theta_f$ 30, is supplied to control law 108 and processed as discussed above. Since the high frequency disturbance is isolated, the control law 108 does not attempt to compensate for it. This further makes it possible to save actuation power, reduce wear and enhance signal linearity by such a filtering step.

FIG. 1h is a block diagram of the synchronous filter with variables as follows:

6

$z^{-1} =$ delay by one camshaft measurement pulse

$B = -2\cos(2\pi m/n)$

$A = 1/(2+B)$

FIGS. 2–10 illustrate an embodiment of a hydraulic vane system in which a housing in the form of a sprocket 32 is oscillatingly journalled on a camshaft 26. The camshaft 26 may be considered to be the only shaft of a single camshaft engine, either of the overhead camshaft type or the inblock camshaft type. Alternatively, the camshaft 26 may be considered to be either the intake valve operating camshaft or the exhaust valve operating camshaft of the dual camshaft engine. In any case, the sprocket 32 and the camshaft 26 are rotatable together, and are caused to rotate by the application of torque to the sprocket 32 by an endless roller chain 38, shown fragmentarily, which is trained around the sprocket 32 and also around a crankshaft not shown. As will be here after described in greater detail, the sprocket 32 is oscillatingly journalled on the camshaft 26 so that it is oscillatable at least through a limited arc with respect to the camshaft 26 during the rotation of the camshaft, an action which will adjust the phase of the camshaft 26 relative to the crankshaft.

An annular pumping vane 60 is fixedly positioned on the camshaft 26, the vane 60 having a diametrically opposed pair of radially outwardly projecting lobes 60a, 60b and being attached to an enlarged end portion 26a of the camshaft 26 by bolts 62 which pass through the vane 60 into the end portion 26a. In that regard, the camshaft 26 is also provided with a thrust shoulder 26b to permit the camshaft to be accurately positioned relative to an associated engine block, not shown. The pumping vane 60 is also precisely positioned relative to the end portion 26a by a dowel pin 64 which extends therebetween. The lobes 60a, 60b are received in radially outwardly projecting recesses 32a, 32b, respectively, of the sprocket 32, the circumferential extent of each of the recesses 32a, 32b being somewhat greater than the circumferential extent of the vane lobes 60a, 60b which are received in such recesses to permit limited oscillating movement of the sprocket 32 relative to the vane 60. The recesses 32a, 32b are closed around the lobes 60a, 60b, respectively, by spaced apart, transversely extending annular plates 66, 68 which are fixed relative to the vane 60, and, thus, relative to the camshaft 60, by bolts 70 which extend from one to the other through the same lobe, 60a or 60b. Further, the inside diameter 32c of the sprocket 32 is sealed with respect to the outside diameter of the portion 60d of the vane 60 which is between the lobe 60a, 60b, and the tips of the lobes 60a, 60b of the vane 60 are provided with sealed receiving slots 60e, 60f, respectively. Thus, each of the recesses 32a, 32b of the sprocket 32 is capable of sustaining hydraulic pressure, and within each recess 32a, 32b, the portion on each side of the lobe 60a, 60b, respectively, is capable of sustaining hydraulic pressure.

The functioning of the structure of the embodiment of FIGS. 2–10, as thus far described, may be understood by reference to FIG. 11. Hydraulic fluid, illustratively in the form of engine lubricating oil, flows into the recesses 32a, 32b by way of a common inlet line 82. The inlet line 82 terminates at a juncture between opposed check valves 84 and 86 which are connected to the recesses 32a, 32b, respectively, by branch lines 88, 90,

BW 001738

5,218,935

7

respectively. The check valves 84, 86 have annular seats 84a, 86a, respectively, to permit the flow of hydraulic fluid through the check valves 84, 86 into the recesses 32a, 32b, respectively. The flow of hydraulic fluids through the check valves 84, 86, is blocked by floating balls 84b, 86b, respectively, which are resiliently urged against the seats 84a, 86a, respectively, by springs 84c, 86c, respectively. The check valves 84, 86, thus, permit the initial filling of the recesses 32a, 32b and provide for a continuous supply of makeup hydraulic fluid to compensate for leakage therefrom. Hydraulic fluid enters the line 82 by way of a spool valve 92, which is incorporated within the camshaft 26, and hydraulic fluid is returned to the spool valve 92 from the recesses 32a, 32b by return lines 94, 96, respectively. Because of the location of the check valves 84 and 86 which block the backflow of hydraulic fluid, the need for the spool 100 to return to the null (centered) position to prevent such backflow is eliminated.

The spool valve 92 is made up of a cylindrical member 98 and a spool 100 which is slidable to and fro within the member 98. The spool 100 has cylindrical lands 100a and 100b on opposed ends thereof, and the lands 100a and 100b, which fit snugly within the member 98, are positioned so that the land 100b will block the exit of hydraulic fluid from the return line 96, or the land 100a will block the exit of hydraulic fluid from the return line 94, or the lands 100a and 100b will block the exit of hydraulic fluid from both return lines 94 and 96, as is shown in FIG. 11, where the camshaft 26 is being maintained in a selective intermediate position relative to the crankshaft of the associated engine.

Control of the spool 100 within the member 98 is in response to a force from lead screw 142 of stepper motor 134 which bears against the land 100b of the spool 100. The stepper motor 134 is an electromechanical device in which lead screw 142 can achieve a number of discrete positions. These positions are available sequentially as a result of a series of step commands. That is, a sequence of "n" step pulses moves the motor, and thus lead screw 142, "n" steps. These steps can be in either a forward or reverse direction. In the present VCT system, spool 100 position corresponds directly with the stepper motor 134 step position through lead screw 142 and is controlled by controller 208 as described above. As is shown in FIGS. 4 and 5, the stepper motor 134 assembly may be mounted at an exposed end of the camshaft 26 so that the lead screw 142 can bear against an end of the spool 100b.

The position of the spool 100 within the member 98 is influenced by spring 102 which acts on the end of land 100a to resiliently urge the spool 100 to the left, in the orientation illustrated in FIG. 11. The position of the spool 100 within the member 98 is further influenced by pressurized hydraulic fluid within a portion 98a of the member 98, on the outside of the land 100a, which urges the spool 100 to the left. The portion 98a of the member 98 receives its pressurized fluid (engine oil) directly from the main oil gallery ("MOG") 130 of the engine, and this oil is also used to lubricate a bearing 132 in which the camshaft 26 of the engine rotates.

The vane 60 is alternating urged in clockwise and counter clockwise directions by the torque pulsation in the camshaft 26. These torque pulsations tend to oscillate the vane 60, and, thus, the camshaft 26, relative to the sprocket 32. However, in the FIG. 11 position of the spool 100 within the cylindrical member 98, such oscillation is prevented by the hydraulic fluid within the

8

recesses 32a, 32b of the sprocket 32 on opposite sides of the lobes 60a, 60b, respectively, of the vane 60, because no hydraulic fluid can leave either of the recesses 32a, 32b, since both return lines 94, 98 are blocked by the position of the spool 100. If, for example, it is desired to permit the camshaft 26 and vane 60 to move in a counter clockwise with respect to the sprocket 32, it is only necessary to step the motor 134 such that lead screw 142 moves to the right. This will urge the spool 100 to right and thereby unblock the return line 94. In this condition of the apparatus, counter clockwise torque pulsations in the camshaft 26 will put fluid out of the portion of the recess 32a and allow the lobe 60a of vane 60 to move into the portion of the recess which has been emptied of hydraulic fluid. However, reverse movement of the vane will not occur as the pulsations in the camshaft become oppositely directed unless and until the spool 100 moves to the left, because of the blockage of the fluid flow through the return line 96 by the land 100b of the spool 100. Thus, large pressure variations induced by camshaft torque pulses will not affect the condition of the system, eliminating the need to synchronize the opening and closing of the spool valve 92 with individual torque pulses. While illustrated as a separate closed passage in FIG. 11, the periphery of the vane 60 actually has an open oil passage slot, element 60c in FIGS. 2-10, which permits the transfer of oil between the portion of the recess 32a on the right side of the lobe 60a and the portion of the recess 32b on the right side of the lobe 60b, which are the nonactive sides of the lobes 60a and 60b; thus, counter clockwise movement of the vane 60 relative to the sprocket 32 will occur when flow is permitted through return line 94 and clockwise movement will occur when flow is permitted through return line 96.

Further, the passage 82 is provided with an extension 82a to the nonactive side of one of the lobes 60a or 60b, shown as the lobe 60b, to permit a continuous supply of makeup oil to the nonactive sides of the lobes 62a and 62b for better rotational balance, improved damping of vane motion, and improved lubrication of the bearing surfaces of the vane 60.

Makeup oil for the recesses 32a, 32b of the sprocket 32 to compensate for leakage therefrom is provided by way of a small, internal passage 120 within the spool 100, from the passage 98a to annular space 98b of the cylindrical member 98, from which it can flow into the inlet line 82. A check valve 122 is positioned within the passage 120 to block the flow of oil from the annular space 98b to the portion 98a of the cylindrical member 98.

The elements of the structure of FIGS. 2-10 which correspond to the elements of FIG. 11, as described above, are identified in FIGS. 2-10 by the referenced numerals which were used in FIG. 11, it being noted that the check valves 84 and 86 are disc type check valves in FIGS. 2-10 as opposed to the ball type check valves of FIG. 11. While this type check valves are preferred for the embodiment of FIGS. 2-10, it is to be understood that other types of check valves can also be used.

Although the best mode contemplated by the inventors for carrying out the present invention as of the filing date hereof has been shown and described herein, it will be apparent to those skilled in the art that suitable modifications, variations, and equivalents may be made without departing from the scope of the invention, such

5,218,935

9

scope being limited solely by the terms of the following claims.

What is claimed is:

1. In an internal combustion engine having a rotatable crankshaft and a rotatable camshaft, the camshaft being position variable relative to the crankshaft, being subject to torque reversals during the rotation thereof, having a vane with at least one lobe secured to the camshaft for rotation therewith, and having a housing mounted on the camshaft for rotation with the camshaft and for oscillation with respect to the camshaft, the housing having at least one recess receiving the at least one lobe of the vane and permitting oscillation of the at least one lobe within the at least one recess as the housing oscillates with respect to the camshaft, a method comprising:

providing means for transmitting rotational movement from the crankshaft to the housing;

providing actuating means for varying the position of the housing relative to the camshaft in reaction to torque reversals in the camshaft, said actuating means comprising a stepper motor, a lead screw and a proportional spool valve, the position of said lead screw driven by said stepper motor, said actuating means also delivering hydraulic fluid to said vane; and

providing processing means for controlling the position of said actuating means.

2. The method of claim 1 and further providing check valve means functionally positioned between said housing and said actuating means to eliminate the need for blocking a backflow of hydraulic fluid by the operation of said actuating means.

3. The method of claim 1 and further providing sensing means for determining a phase angle between the crankshaft and the camshaft and issuing a feedback signal to said processing means.

4. The method of claim 1 wherein said processing means further comprises means for determining:
desired spool valve acceleration;
desired spool valve velocity; and
desired spool valve position.

5. The method of claim 1 wherein said processing means further comprises means for controlling:
stepper motor position gain;
stepper motor velocity gain;
stepper motor acceleration gain; and
VCT phase angle gain.

6. The method of claim 1 and further comprising means for tracking spool valve position.

7. The method of claim 1 wherein said processing means further comprises means for limiting:
spool valve acceleration;
spool valve velocity; and
spool valve position.

8. The method according to claim 1 wherein said processing means further comprises means for providing integral control with state variable feedback.

9. The method of claim 1 wherein said processing means further comprises a means for optimally controlling said actuating means.

10. The method of claim 1 wherein said processing means further comprises means to compensate for outside disturbances.

11. The method of claim 1 wherein said processing means further comprises at least one filtering means for

10

compensating for the difference between actual engine dynamics and the estimation of said dynamics.

12. The method according to claim 1 wherein the actuating means comprises means for permitting the position of the housing to move in a first direction relative to the camshaft in reaction to a torque pulse in the camshaft in a first direction, means for preventing the position of the housing from moving relative to the camshaft in a second direction in reaction to a torque pulse in the camshaft in a second direction, and means for selectively reversing the first and second directions of the movement of the housing relative to the camshaft with respect to the first and second directions of torque pulses in the camshaft.

13. The method according to claim 1 wherein the at least one recess is capable of sustaining hydraulic pressure, wherein the at least one lobe divides the at least one recess into a first portion and a second portion, and wherein the varying of the position of the housing relative to the camshaft comprises:
transferring hydraulic fluid into one of the first portion and the second portion of the recess.

14. The method according to claim 13 wherein the varying of the position of the housing relative to the camshaft further comprises:
simultaneously transferring hydraulic fluid out of the other of the first portion and the second portion of the recess.

15. The method according to claim 1 wherein the hydraulic fluid is engine lubricating oil from a main oil gallery of the engine.

16. An internal combustion engine comprising:
a crankshaft, said crankshaft being rotatable about an axis;
a camshaft, said camshaft being rotatable about a second axis, said second axis being parallel to said axis, said camshaft being subject to torque reversals during the rotation thereof;
a vane, said vane having at least one lobe, said vane being attached to said camshaft, being rotatable with said camshaft and being non-oscillatable with respect to said camshaft;
a housing, said housing being rotatable with said camshaft and being oscillatable with respect to said camshaft, said housing having at least one recess, said at least one recess receiving said at least one lobe, said at least one lobe being oscillatable within said at least one recess;
rotary movement transmitting means for transmitting rotary movement from the crankshaft to the housing;
actuating means for varying the position of the housing relative to the camshaft in reaction to torque reversals in the camshaft, said actuating means comprising a stepper motor, a lead screw and a proportional spool valve, the position of said spool valve being controlled by the position of the lead screw driven by said stepper motor, said actuating means also delivering hydraulic fluid to said vane; and
processing means for controlling the position of said actuating means.

17. The engine according to claim 16 and further comprising:
sensing means for determining a phase angle between the crankshaft and the camshaft and issuing a feedback signal to said processing means; and

5,218,935

**11**

check valve means functionally positioned upstream of said vane for eliminating the need for blocking a backflow of hydraulic fluid by the operation of said means for varying the position of said housing.

18. The engine according to claim 17 wherein said processing means further comprises means for determining:

desired spool valve acceleration;

spool valve velocity; and

desired spool valve position.

19. The engine according to claim 17 wherein said processing means further comprises means for controlling:

stepper motor position gain;

stepper motor velocity gain;

stepper motor acceleration gain; and

7 VCT phase angle gain. .

20. The engine according to claim 17 and further comprising means for tracking spool valve position.

21. The engine according to claim 17 wherein said processing means further comprises means for limiting:

spool valve acceleration;

spool valve velocity; and

spool valve position.

22. The engine according to claim 17 wherein said processing means further comprises means for providing integral control with state variable feedback.

23. The engine according to claim 17 wherein said processing means further comprises a means for optimally controlling said actuating means.

24. The engine according to claim 17 wherein said processing means comprises means to compensate for outside disturbances.

25. The engine according claim 17 wherein said processing means further comprises at least one filtering means for compensating for the difference between

**12**

actual engine dynamics and the estimation of said dynamics.

26. The engine according to claim 17 wherein said at least one lobe divides said at least one recess into a first portion and a second portion, and wherein said means reactive to torque reversals comprises means for transferring hydraulic fluid into one of said first portion and said second portion, said one of said first portion and said second portion of said at least one recess being capable of sustaining hydraulic pressure.

27. The engine according to claim 26 wherein said means reactive to torque reversals further comprises means for simultaneously transferring hydraulic fluid out of the other of said first portion and said second portion.

28. The engine according to claim 26 wherein each of said first portion and said second portion of said at least one recess is capable of sustaining hydraulic pressure, and wherein said means reactive to torque reversals is capable of being reversed to transfer hydraulic fluid out of said one of said first portion and said second portion and to transfer hydraulic fluid into said other of said first portion and said second portion, said engine further comprising:

an engine control unit responsive to at least one engine operating condition for selectively reversing the operation of said means reactive to torque reversals.

29. An engine according to claim 17 wherein said hydraulic fluid comprises engine lubricating oil, and further comprising:

conduit means for transferring engine lubricating oil from a portion of said engine to said control means; and

second conduit means for transferring engine lubricating oil from said control means to said portion of said engine.

* * * * *

BW 001741

# EXHIBIT 7

# Manual of PATENT EXAMINING PROCEDURE

Original Eighth Edition, August 2001
Latest Revision August 2006



## U.S. DEPARTMENT OF COMMERCE
### United States Patent and Trademark Office

Rev. 5, Aug. 2006

The U.S. Patent and Trademark Office does not handle the sale of the Manual, distribution of notices and revisions, or change of address of those on the subscription list. Correspondence relating to existing subscriptions should be sent to the Superintendent of Documents at the following address:

> Superintendent of Documents
> Mail List Section
> Washington, DC 20402

Telephone:    202-512-2267

Inquiries relating to purchasing the Manual should be directed to:

> Superintendent of Documents
> United States Government Printing Office
> Washington, DC 20402

Telephone:    202-512-1800

Orders for reproduced copies of individual replacement pages or of previous revisions of the Manual should be sent to the following address:

> Mail Stop Document Services
> Director of the U.S. Patent and Trademark Office
> P.O. Box 1450
> Alexandria, VA 22313-1450

Telephone:    1-800-972-6382 or 571-272-3150

Previous editions and revisions of the Manual are available on microfilm in the Patent Search Room.
The Manual is available on CD-ROM and on diskette from:

> U.S. Patent and Trademark Office
> Office of Electronic Information Products
> MDW 4C18, P.O. Box 1450
> Alexandria, VA 22313-1450

Telephone:    571-272-5600

Employees of the U.S. Patent and Trademark Office should direct their requests for the Manual, replacement pages, notices, and revisions to the Office of Patent Training.                     Telephone:    571-272-7222

Pursuant to the Patent and Trademark Office Efficiency Act (PTOEA) (Pub. L. 106-113, 113 Stat. 1501A-572), the head of the United States Patent and Trademark Office (USPTO) is the "Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office." The Director is assisted by the "Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director of the United States Patent and Trademark Office." The patent operations of the USPTO are now headed by the "Commissioner for Patents." The trademark operations of the USPTO are now headed by the "Commissioner for Trademarks." Under section 4741(b) of the PTOEA, any reference to the Commissioner of Patents and Trademarks, the Assistant Commissioner for Patents, or the Assistant Commissioner for Trademarks is deemed to refer to the Director, the Commissioner for Patents, or the Commissioner for Trademarks, respectively. See "Reestablishment of the Patent and Trademark Office as the United States Patent and Trademark Office" published in the *Federal Register* at 65 FR 17858 (Apr. 5, 2000), and in the *Official Gazette of the United States Patent and Trademark Office* at 1234 O.G. 41 (May 9, 2000).

Additions to the text of the Manual are indicated by arrows (><) inserted in the text.   Deletions are indicated by a single asterisk (*) where a single word was deleted and by two asterisks (**) where more than one word was deleted. The use of three or five asterisks in the body of the laws, rules, treaties, and administrative instructions indicates a portion of the law, rule, treaty, or administrative instruction which was not reproduced.

> First Edition, November 1949
> Second Edition, November 1953
> Third Edition, November 1961
> Fourth Edition, June 1979
> Fifth Edition, August 1983
> Sixth Edition, January 1995
> Seventh Edition, July 1998
> Eighth Edition, August 2001
>   Revision 1, February 2003
>   Revision 2, May 2004
>   Revision 3, August 2005
>   Revision 4, October 2005
>   Revision 5, August 2006

## 2163.07    Amendments to Application Which Are Supported in the Original Description [R-3]

Amendments to an application which are supported in the original description are NOT new matter.

### I.    REPHRASING

Mere rephrasing of a passage does not constitute new matter. Accordingly, a rewording of a passage where the same meaning remains intact is permissible. *In re Anderson*, 471 F.2d 1237, 176 USPQ 331 (CCPA 1973). The mere inclusion of dictionary or art recognized definitions known at the time of filing an application would not be considered new matter. If there are multiple definitions for a term and a definition is added to the application, it must be clear from the application as filed that applicant intended a particular definition, in order to avoid an issue of new matter and/or lack of written description. See, e.g., *Scarring Corp. v. Megan, Inc.*, 222 F.3d 1347, 1352-53, 55 USPQ2d 1650, 1654 (Fed. Cir. 2000). In *Scarring*, the original disclosure drawn to recombinant DNA molecules utilized the term "leukocyte interferon." Shortly after the filing date, a scientific committee abolished the term in favor of "IFN-(a)," since the latter term more specifically identified a particular polypeptide and since the committee found that leukocytes also produced other types of interferon. The court held that the subsequent amendment to the specification and claims substituting the term "IFN-(a)" for "leukocyte interferon" merely renamed the invention and did not constitute new matter. The claims were limited to cover only the interferon subtype coded for by the inventor's original deposits.

### II.    OBVIOUS ERRORS

An amendment to correct an obvious error does not constitute new matter where one skilled in the art would not only recognize the existence of error in the specification, but also the appropriate correction. *In re Odd*, 443 F.2d 1200, 170 USPQ 268 (CCPA 1971).

Where a foreign priority document under 35 U.S.C. 119 is of record in the U.S. application file, applicant may not rely on the disclosure of that document to support correction of an error in the pending U.S. application. *Ex parte Bandeau*, 132 USPQ 356 (Bd.

App. 1961). This prohibition applies regardless of the language of the foreign priority documents because a claim for priority is simply a claim for the benefit of an earlier filing date for subject matter that is common to two or more applications, and does not serve to incorporate the content of the priority document in the application in which the claim for priority is made. This prohibition does not apply where the U.S. application explicitly incorporates the foreign priority document by reference. >For applications filed on or after September 21, 2004, where all or a portion of the specification or drawing(s) is inadvertently omitted from the U.S. application, a claim under 37 CFR 1.55 for priority of a prior-filed foreign application that is present on the filing date of the application is considered an incorporation by reference of the prior-filed foreign application as to the inadvertently omitted portion of the specification or drawing(s), subject to the conditions and requirements of 37 CFR 1.57(a). See 37 CFR 1.57(a) and MPEP § 201.17.<

Where a U.S. application as originally filed was in a non-English language and an English translation thereof was subsequently submitted pursuant to 37 CFR 1.52(d), if there is an error in the English translation, applicant may rely on the disclosure of the originally filed non-English language U.S. application to support correction of an error in the English translation document.

## 2163.07(a)    Inherent Function, Theory, or Advantage

By disclosing in a patent application a device that inherently performs a function or has a property, operates according to a theory or has an advantage, a patent application necessarily discloses that function, theory or advantage, even though it says nothing explicit concerning it. The application may later be amended to recite the function, theory or advantage without introducing prohibited new matter. *In re Reynolds*, 443 F.2d 384, 170 USPQ 94 (CCPA 1971); *In re Smythe*, 480 F. 2d 1376, 178 USPQ 279 (CCPA 1973). "To establish inherency, the extrinsic evidence 'must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill. Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of

circumstances is not sufficient.'" *In re Robertson*, 169 F.3d 743, 745, 49 USPQ2d 1949, 1950-51 (Fed. Cir. 1999) (citations omitted).

## 2163.07(b) Incorporation by Reference [R-3]

Instead of repeating some information contained in another document, an application may attempt to incorporate the content of another document or part thereof by reference to the document in the text of the specification. The information incorporated is as much a part of the application as if the text was repeated in the application, and should be treated as part of the text of the application as filed. Replacing the identified material incorporated by reference with the actual text is not new matter. See >37 CFR 1.57 and< MPEP § 608.01(p) for Office policy regarding incorporation by reference. See MPEP § 2181 for the impact of incorporation by reference on the determination of whether applicant has complied with the requirements of 35 U.S.C. 112, second paragraph when 35 U.S.C. 112, sixth paragraph is invoked.

## 2164 The Enablement Requirement [R-2]

The enablement requirement refers to the requirement of 35 U.S.C. 112, first paragraph that the specification describe how to make and how to use the invention. The invention that one skilled in the art must be enabled to make and use is that defined by the claim(s) of the particular application or patent.

The purpose of the requirement that the specification describe the invention in such terms that one skilled in the art can make and use the claimed invention is to ensure that the invention is communicated to the interested public in a meaningful way. The information contained in the disclosure of an application must be sufficient to inform those skilled in the relevant art how to both make and use the claimed invention. >However, to comply with 35 U.S.C. 112, first paragraph, it is not necessary to "enable one of ordinary skill in the art to make and use a perfected, commercially viable embodiment absent a claim limitation to that effect." *CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1338, 68 USPQ2d 1940, 1944 (Fed. Cir. 2003) (an invention directed to

a general system to improve the cleaning process for semiconductor wafers was enabled by a disclosure showing improvements in the overall system).< Detailed procedures for making and using the invention may not be necessary if the description of the invention itself is sufficient to permit those skilled in the art to make and use the invention. A patent claim is invalid if it is not supported by an enabling disclosure.

The enablement requirement of 35 U.S.C. 112, first paragraph, is separate and distinct from the description requirement. *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563, 19 USPQ2d 1111, 1116-17 (Fed. Cir. 1991) ("the purpose of the 'written description' requirement is broader than to merely explain how to 'make and use'"). See also MPEP § 2161. Therefore, the fact that an additional limitation to a claim may lack descriptive support in the disclosure as originally filed does not necessarily mean that the limitation is also not enabled. In other words, the statement of a new limitation in and of itself may enable one skilled in the art to make and use the claim containing that limitation even though that limitation may not be described in the original disclosure. Consequently, such limitations must be analyzed for both enablement and description using their separate and distinct criteria.

Furthermore, when the subject matter is not in the specification portion of the application as filed but is in the claims, the limitation in and of itself may enable one skilled in the art to make and use the claim containing the limitation. When claimed subject matter is only presented in the claims and not in the specification portion of the application, the specification should be objected to for lacking the requisite support for the claimed subject matter using Form Paragraph 7.44. See MPEP § 2163.06. This is an objection to the specification only and enablement issues should be treated separately.

## 2164.01 Test of Enablement [R-5]

Any analysis of whether a particular claim is supported by the disclosure in an application requires a determination of whether that disclosure, when filed, contained sufficient information regarding the subject matter of the claims as to enable one skilled in the pertinent art to make and use the claimed invention. The standard for determining whether the