# EXHIBIT 8

08 056635

IB 517747769 US

-1-

## VCT CONTROL WITH A DIRECT ELECTROMECHANICAL ACTUATOR

### FIELD OF THE INVENTION

5      This invention relates to an hydraulic control system
for controlling the operation of a variable camshaft timing
(VCT) system of the type in which the position of the
camshaft is circumferentially varied relative to the
10     position of a crankshaft in reaction to torque reversals
experienced by the camshaft during its normal operation.
In such a VCT system, an electromechanical/hydraulic system
is provided to effect the repositioning of the camshaft in
reaction to such torque reversals, and a control system is
15     provided to selectively permit or prevent the hydraulic
system from effecting such repositioning.

More specifically, the present invention relates to a
control system which utilizes a variable force solenoid to
directly control the position of a fully vented spool valve
20     which is an useful part of the hydraulic system.

### BACKGROUND OF THE INVENTION

Consideration of information disclosed by the
following U.S. Patents, which are all hereby incorporated
25     by reference, is useful when exploring the background of
the present invention.

U.S. Patent 5,002,023 describes a VCT system within
the field of the invention in which the system hydraulics
includes a pair of oppositely acting hydraulic cylinders
30     with appropriate hydraulic flow elements to selectively
transfer hydraulic fluid from one of the cylinders to the
other, or vice versa, to thereby advance or retard the
circumferential position of a camshaft relative to a
crankshaft. The control system utilizes a control valve in
35     which the exhaustion of hydraulic fluid from one or another
of the oppositely acting cylinders is permitted by moving a

BW 002083

92007                          -2-

spool within the valve one way or another from its centered
or null position. The movement of the spool occurs in
response to an increase or decrease in control hydraulic
pressure, $P_c$, on one end of the spool and the relationship
5   between the hydraulic force on such end and an oppositely
direct mechanical force on the other end which results from
a compression spring that acts thereon.

U.S. Patent 5,107,804 describes an alternate type of
VCT system within the field of the invention in which the
10   system hydraulics include a vane having lobes within an
enclosed housing which replace the oppositely acting
cylinders disclosed by the aforementioned U.S. Patent
5,002,023. The vane is oscillatable with respect to the
housing, with appropriate hydraulic flow elements to
15   transfer hydraulic fluid within the housing from one side
of a lobe to the other, or vice versa, to thereby oscillate
the vane with respect to the housing in one direction or
the other, an action which is effective to advance or
retard the position of the camshaft relative to the
20   crankshaft. The control system of this VCT system is
identical to that divulged in U.S. Patent 5,002,023, using
the same type of spool valve responding to the same type of
forces acting thereon.

U.S Patents 5,172,659 and 5,184,578 both address the
25   problems of the aforementioned types of VCT systems created
by the attempt to balance the hydraulic force exerted
against one end of the spool and the mechanical force
exerted against the other end. The improved control system
disclosed in both U.S Patents 5,172,659 and 5,184,578
30   utilizes hydraulic force on both ends of the spool. The
hydraulic force on one end results from the directly
applied hydraulic fluid from the engine oil gallery at full
hydraulic pressure, $P_s$. The hydraulic force on the other
end of the spool results from an hydraulic cylinder or
35   other force multiplier which acts thereon in response to

BW 002084

92007                          -3-

system hydraulic fluid at reduced pressure, $P_c$, from a PWM
solenoid. Because the force at each of the opposed ends of
the spool is hydraulic in origin, based on the same
hydraulic fluid, changes in pressure or viscosity of the
5    hydraulic fluid will be self-negating, and will not affect
the centered or null position of the spool. There are,
however, several disadvantages inherent in the inventions
disclosed in the '659 and '578 patents.

    One disadvantage is the inability of this differential
10    pressure control system ("DPCS") to properly control the
position of the spool during the initial start-up phase of
the engine. When the engine first starts, it takes several
seconds for oil pressure to develop. During that time, the
position of the spool valve is unknown. Because the system
15    logic has no known quantity with which to perform the
necessary calculations, the DPCS is prevented from
effectively controlling the spool valve position until the
engine reaches normal operating speed.

    Another problem with existing VCT systems is sluggish
20    dynamic response. Even after the engine stabilizes at
normal operating speed, individual characteristics vary
substantially from engine to engine. A new engine at high
speed and low temperature can have a drastically different
oil pressure than a worn engine at hot idle. Current
25    methods employed to allow operation over such a wide
spectrum of engine characteristics (such as increased
cross-sectional area of the hydraulic piston and the
undersizing of springs) result in a slow response time,
requiring relatively low closed-loop controller gains to
30    maintain stability.

    The low closed-loop controller gains render the system
more sensitive to component tolerances and operating
environment. The net effects (such as a change in the PWM
duty cycle required to achieve a null position of the

4

92007                          -4-

spool) cause degradation of overall closed-loop system
performance.

    Finally, the moving parts of the PWM solenoid
typically used in a conventional DPCS create unwanted noise
5    in the system.  During operation, the solenoid cycles
through its full stroke with every PWM pulse.  The rapid
cycling results in armature and poppet "chatter", i.e.,
high frequency collisions, thus introducing the unwanted
noise.

10

SUMMARY OF THE INVENTION

    The present invention provides an improved method and
apparatus for controlling the position of a vented spool in
a hydraulic control valve.  Specifically, the present
15    invention provides an improved method and apparatus for
controlling the position of a vented spool in a hydraulic
control valve in a VCT system, for example, a hydraulic
control valve similar to the one used in an oppositely-
acting hydraulic cylinder VCT timing system of the type
20    disclosed in U.S. Patent 5,002,023, or a hydraulic control
valve similar to the one used in a vane-type VCT timing
system of the type disclosed in U.S. Patent 5,107,804.

    The control system of the present invention eliminates
the hydraulic force on one end of the spool resulting from
25    directly applied hydraulic fluid from the engine oil
gallery at full hydraulic pressure, $P_s$, utilized by previous
embodiments of the VCT system.  The force on the other end
of the vented spool results from an electromechanical
actuator, preferably of the variable force solenoid type,
30    which acts directly upon the vented spool in response to an
electronic signal issued from an engine control unit
("ECU") which monitors various engine parameters.  The ECU
receives signals from sensors corresponding to camshaft and
crankshaft positions and utilizes this information to
35    calculate a relative phase angle.  The preferred embodiment

BW 002086

92007                    -5-

employs a closed-loop feedback system, such as the one
disclosed in U.S. Patent 5,184,578, which corrects for any
phase angle error.  The present invention offers an
efficient and economical solution to the problems recited
5   above, as well as additional advantages over the
conventional DPCS.

When the relationship between spool position and
control signal (solenoid current) is independent of engine
oil pressure, any problems associated with oil pressure or
10   its fluctuation are eliminated.  For example, the lack of
normal operating oil pressure during initial engine start-
up does not result in start-up error because the signal
from the ECU is fed immediately to the solenoid which
directly positions the spool.

15   The use of a variable force solenoid also solves the
problem of sluggish dynamic response.  Such a device can be
designed to be as fast as the mechanical response of the
spool valve, and certainly much faster than the
conventional (fully hydraulic) DPCS.  The faster response
20   allows the use of increased closed-loop gain, making the
system less sensitive to component tolerances and operating
environment.

Also, a variable force solenoid armature only travels
a short distance, as controlled by the current from the
25   ECU, as opposed to the complete cycles which result from
the use of a PWM solenoid.  Because the travel required
rarely results in extremes, the chattering is eliminated,
rendering the system virtually noise-free.

Possibly the most important advantage over the
30   conventional DPCS is the improved control of the basic
system.  The present invention provides a greatly enhanced
ability to quickly and accurately follow a command input of
VCT phase.

Furthermore, because the preferred embodiment of the
35   present invention is not dependent upon oil pressure, the

BW 002087

92007                                    -6-

present invention can be used for applications where an
oil-free actuator is desirable, such as with timing belt
engines.

In an alternate embodiment, a lever arrangement or
5      equivalent is functionally positioned between the
electromechanical actuator and the spool.  The lever
arrangement effectively acts as a stroke amplifier/force
attenuator, allowing either a reduction in the required
solenoid current or reduction in the air gap distance
10     without sacrificing valve travel.

Accordingly, it is an object of the present invention
to provide an improved method and apparatus for controlling
the operation of a hydraulic control valve of the vented
spool type.  It is a further object of the present
15     invention to provide an improved method and apparatus for
controlling the operation of a hydraulic control valve of
the vented spool type in an automotive variable camshaft
timing system.

For a further understanding of the present invention
20     and the objects thereof, attention is directed to the
drawings and the following brief description thereof, to
the detailed description of the preferred embodiment, and
to the appended claims.

25     BRIEF DESCRIPTION OF THE DRAWING

Figure 1 is a fragmentary view of a dual camshaft
internal combustion engine incorporating an embodiment of a
variable camshaft timing arrangement according to the
present invention, the view being taken on a plane
30     extending transversely through the crankshaft and the
camshafts and showing the intake camshaft in a retarded
position relative to the crankshaft and the exhaust
camshaft;

BW 002088

92007                    -7-

Figure 2 is a fragmentary view similar to a portion of
Figure 1 showing the intake camshaft in an advanced
position relative to the exhaust camshaft;

5      Figure 3 is a fragmentary view taken on line 3-3 of
Figure 6 with some of the structure being removed for the
sake of clarity and being shown in the retarded position of
the device;

Figure 4 is a fragmentary view similar to Figure 3
showing the intake camshaft in an advanced position

10     relative to the exhaust camshaft;

Figure 5 is a fragmentary view showing the reverse
side of some of the structure illustrated in Figure 1;

Figure 6 is a fragmentary view taken on line 6-6 of
Figure 4;

15     Figure 7 is a fragmentary view taken on line 7-7 of
Figure 1;

Figure 8 is a sectional view taken on line 8-8 of
Figure 1;

Figure 9 is a sectional view taken on line 9-9 of

20     Figure 1;

Figure 10 is an end elevational view of a camshaft
with an alternative embodiment of a variable camshaft
timing system applied thereto;

Figure 11 is a view similar to Figure 10 with a

25     portion of the structure thereof removed to more clearly
illustrate other portions thereof;

Figure 12 is a sectional view taken on line 12-12 of
Figure 10;

Figure 13 is a sectional view taken on line 13-13 of

30     Figure 10;

Figure 14 is a sectional view taken on line 14-14 of
Figure 11;

Figure 15 is an end elevational view of an element of
the variable camshaft timing system of Figures 10-14;

BW 002089

92007                    -8-

Figure 16 is an elevational view of the element of
Figure 15 from the opposite end thereof;

Figure 17 is a side elevational view of the element of
Figures 15 and 16;

5        Figure 18 is an elevational view of the element of
Figure 17 from the opposite side thereof; and

Figure 19 is a simplified schematic view of the
variable camshaft timing arrangement of Figures 10-18; and

Figure 20 is a simplified schematic view similar to
10   Figure 19 of an alternative embodiment of the present
invention.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

In the embodiment of Figures 1-9, a crankshaft 22 has
15   a sprocket 24 keyed thereto, and rotation of the crankshaft
22 during the operation of the engine in which it is
incorporated, otherwise not shown, is transmitted to an
exhaust camshaft 26, that is, a camshaft which is used to
operate the exhaust valves of the engine, by a chain 28
20   which is trained around the sprocket 24 and a sprocket 30
which is keyed to the camshaft 26. Although not shown, it
is to be understood that suitable chain tighteners will be
provided to ensure that the chain 28 is kept tight and
relatively free of slack. As shown, the sprocket 30 is
25   twice as large as the sprocket 24. This relationship
results in a rotation of the camshaft 26 at a rate of one-
half that of the crankshaft 22, which is proper for a 4-
cycle engine. It is to be understood that the use of a
belt in place of the chain 28 is also contemplated.

30   The camshaft 26 carries another sprocket, namely
sprocket 32, Figure 3, 4 and 6, journalled thereon to be
oscillatable through a limited arc with respect thereto and
to be otherwise rotatable with the camshaft 26. Rotation
of the camshaft 26 is transmitted to an intake camshaft 34
35   by a chain 36 which is trained around the sprocket 32 and a

BW 002090

92007                                    -9-

sprocket 38 that is keyed to the intake camshaft 34. As
shown, the sprockets 32 and 38 are equal in diameter to
provide for equivalent rates of rotation between the
camshaft 26 and the camshaft 34. The use of a belt in
5     place of the chain 36 is also contemplated.
        As is illustrated in Figure 6, an end of each of the
camshafts 26 and 34 is journalled for rotation in bearings
42 and 44, respectively, of the head 50, which is shown
fragmentarily and which is bolted to an engine block,
10    otherwise not shown, by bolts 48. The opposite ends of the
camshafts 26 and 34, not shown, are similarly journalled
for rotation in an opposite end, also not shown, of the
head 50. The sprocket 38 is keyed to the camshaft 34 at a
location of the camshaft 34 which is outwardly of the head
15    50. Similarly, the sprockets 32 and 30 are positioned, in
series, on the camshaft 26 at locations outwardly of the
head 50, the sprocket 32 being transversely aligned with
the sprocket 38 and the sprocket 30 being positioned
slightly outwardly of the sprocket 32, to be transversely
20    aligned with the sprocket 24.
        The sprocket 32 has an arcuate retainer 52 (Figures 7
and 8) as an integral part thereof, and the retainer 52
extends outwardly from the sprocket 32 through an arcuate
opening 30a in the sprocket 30. The sprocket 30 has an
25    arcuate hydraulic body 46 bolted thereto and the hydraulic
body 46, which houses certain of the hydraulic components
of the associated hydraulic control system, receives and
pivotally supports the body end of each of a pair of
oppositely acting, single acting hydraulic cylinders 54 and
30    56 which are positioned on opposite sides of the
longitudinal axis of the camshaft 26. The piston ends of
the cylinders 54 and 56 are pivotally attached to an
arcuate bracket 58, and the bracket 58 is secured to the
sprocket 32 by a plurality of threaded fasteners 60. Thus,
35    by extending one of the cylinders 54 and 56 and by

BW 002091

92007                              -10-

simultaneously retracting the other of the cylinders 54 and
56, the arcuate position of the sprocket 32 will be changed
relative to the sprocket 30, either to advance the sprocket
32 if the cylinder 54 is extended and the cylinder 56 is
5   retracted, which is the operating condition illustrated in
Figures 2 and 4, or to retard the sprocket 32 relative to
the sprocket 30 if the cylinder 56 is extended and the
cylinder 54 is retracted, which is the operating condition
illustrated in Figures 1, 3, 7 and 8.  In either case, the
10  retarding or advancing of the position of the sprocket 32
relative to the position of the sprocket 30, which is
selectively permitted or prevented in reaction to the
direction of torque in the camshaft 26, as explained in the
aforesaid U.S. Patent 5,002,023,  will advance or retard
15  the position of the camshaft 34 relative to the position of
the camshaft 26 by virtue of the chain drive connection
provided by the chain 36 between the sprocket 32, which is
journalled for limited relative arcuate movement on the
camshaft 26, and the sprocket 38, which is keyed to the
20  camshaft 34.  This relationship can be seen in the drawing
by comparing the relative position of a timing mark 30b on
the sprocket 30 and a timing mark 38a on the sprocket 38 in
the retard position of the camshaft 34, as is shown in
Figures 1 and 3, to their relative positions in the
25  advanced position of the camshaft 34, as is shown in
Figures 2 and 4.
        Figures 10-20 illustrate two embodiments of the
present invention in which a housing in the form of a
sprocket 132 is oscillatingly journalled on a camshaft 126.
30  The camshaft 126 may be considered to be the only camshaft
of a single camshaft engine, either of the overhead
camshaft type or the in block camshaft type.
Alternatively, the camshaft 126 may be considered to be
either the intake valve operating camshaft or the exhaust
35  valve operating camshaft of a dual camshaft engine.  In any

BW 002092

92007                    -11-

case, the sprocket 132 and the camshaft 126 are rotatable
together, and are caused to rotate by the application of
torque to the sprocket 132 by an endless roller chain 138,
shown fragmentarily, which is trained around the sprocket
5    132 and also around a crankshaft, not shown.  As will be
hereinafter described in greater detail, the sprocket 132
is oscillatingly journalled on the camshaft 126 so that it
is oscillatable at least through a limited arc with respect
to the camshaft 126 during the rotation of the camshaft, an
10   action which will adjust the phase of the camshaft 126
relative to the crankshaft.

An annular pumping vane 160 is fixedly positioned on
the camshaft 126, the vane 160 having a diametrically
opposed pair of radially outwardly projecting lobes 160a,
15   160b and being attached to an enlarged end portion 126a of
the camshaft 126 by bolts 162 which pass through the vane
160 into the end portion 126a.  In that regard, the
camshaft 126 is also provided with a thrust shoulder 126b
to permit the camshaft to be accurately positioned relative
20   to an associated engine block, not shown.  The pumping vane
160 is also precisely positioned relative to the end
portion 126a by a dowel pin 164 which extends therebetween.
The lobes 160a, 160b are received in radially outwardly
projecting recesses 132a, 132b, respectively, of the
25   sprocket 132, the circumferential extent of each of the
recesses 132a, 132b being somewhat greater than the
circumferential extent of the vane lobe 160a, 160b which is
received in such recess to permit limited oscillating
movement of the sprocket 132 relative to the vane 160.  The
30   recesses 132a, 132b are closed around the lobes 160a, 160b,
respectively, by spaced apart, transversely extending
annular plates 166, 168 which are fixed relative to the
vane 160, and, thus, relative to the camshaft 126, by bolts
170 which extend from one to the other through the same
35   lobe, 160a, 160b.  Further, the inside diameter 132c of the

92007                          -12-

sprocket 132 is sealed with respect to the outside diameter
of the portion 160d of the vane 160 which is between the
lobes 160a, 160b, and the tips of the lobes 160a, 160b of
the vane 160 are provided with seal receiving slots 160e,
5       160f, respectively.  Thus each of the recesses 132a, 132b
of the sprocket 132 is capable of sustaining hydraulic
pressure, and within each recess 132a, 132b, the portion on
each side of the lobe 160a, 160b, respectively, is capable
of sustaining hydraulic pressure.

10          The functioning of the structure of the embodiment of
Figures 10-18, as thus far described, may be understood by
reference to schematic Figures 19 and 20.  It also is to be
understood, however, that the hydraulic control system of
Figures 19 and 20 is also applicable to an opposed
15      hydraulic cylinder VCT system corresponding to the
embodiment of Figures 1-9, as well as to a vane type VCT
system corresponding to the embodiment of Figures 10-18.

In any case, hydraulic fluid, illustratively in the
form of engine lubricating oil, flows into the recesses
20      132a, 132b by way of common inlet line 182.  Inlet line 182
terminates at a juncture between opposed check valves 184
and 186 which are connected to recesses 132a, 132b,
respectively, by branch lines 188, 190, respectively.
Check valves 184, 186 have annular seats 184a, 186a,
25      respectively, to permit the flow of hydraulic fluid through
check valves 184, 186 into recesses 132a, 132b,
respectively.  The flow of hydraulic fluid through check
valves 184, 186 is blocked by floating balls 184b, 186b,
respectively, which are resiliently urged against seats
30      184a, 186a, respectively, by springs 184c, 186c,
respectively.  Check valves 184, 186, thus, permit the
initial filling of recesses 132a, 132b and provide for a
continuous supply of make-up hydraulic fluid to compensate
for leakage therefrom.  Hydraulic fluid enters inlet line
35      182 by way of spool valve 192, which is incorporated within

BW 002094

92007                           -13-

camshaft 126, and hydraulic fluid is returned to spool
valve 192 from recesses 132a, 132b by return lines 194,
196, respectively.

    Spool valve 192 is made up of cylindrical member 198
5    and vented spool 200 which is slidable to and fro within
cavity 198a. Vented spool 200 has cylindrical lands 200a
and 200b on opposed ends thereof, and lands 200a and 200b,
which fit snugly within member 198, are positioned so that
land 200b will block the exit of hydraulic fluid from
10    return line 196, or land 200a will block the exit of
hydraulic fluid from return line 194, or lands 200a and
200b will block the exit of hydraulic fluid from both
return lines 194 and 196, as is schematically shown in
Figures 19 and 20, where camshaft 126 is being maintained
15    in a selected intermediate position relative to the
crankshaft of the associated engine, referred to as the
"null" position of spool 200.

    In the present invention, the position of vented spool
200 within member 198 is influenced by spring 202 which
20    acts on the end of land 200a. Thus, spring 202 resiliently
urges spool 200 to the left, as oriented in Figures 19 and
20. Inlet line 182 receives its pressurized fluid (engine
oil) directly from main oil gallery ("MOG") 230 of the
engine by way of conduit 230a, bypassing vented spool 200.
25    This oil is also used to lubricate bearing 232 in which
camshaft 126 of the engine rotates.

    The control of the position of spool 200 within member
198 is in direct response to electromechanical actuator
201, preferably a variable force solenoid, as shown in
30    Figure 19. An electrical current is introduced via cable
238 through solenoid housing 201d into solenoid coil 201a
which repels, or "pushes", armature 201b. Armature 201b
bears against extension 200c of vented spool 200, thus
moving vented spool 200 to the right, as oriented in Fig.
35    19. If the force of spring 202 is in balance with the

92007                          -14-

force exerted by armature 201b in the opposite direction,
spool 200 will remain in its null or centered position.
Thus, vented spool 200 can be moved in either direction by
increasing or decreasing the current to solenoid coil 201a,
5    as the case may be.  Of course, the configuration of
solenoid 201 may be reversed, converting the force on spool
extension 200c from a "push" to a "pull."  This would
require the function of spring 202 to be redesigned to
counteract the force in the new direction of armature 201b
10   movement.  However, there are instances when it is
desirable for spool 200 to be forced to the far left, or
biased, position.  The location of spring 202 in cavity
198c, as shown in Figure 19, or in cavity 198a, as shown in
Figure 20, ensures the return of spool 200 to its biased
15   position when there is no current applied to solenoid coil
201a, such as periods of power failure or engine shutdown.
      The movement of armature 201b is controlled by an
electrical current applied to solenoid coil 201a in
response to a control signal from electronic engine control
20   unit (ECU) 208, shown schematically in Fig. 19, which may
be of conventional construction.  In previous versions of
the VCT system, the force exerted against spool extension
200c must balance with the force of spring 202 plus any
system oil pressure in cavity 198a acting on the end of
25   land 200a if a null position of spool 200 was desired.  A
problem arose when attempting to achieve this balance
because the system included a component which could vary
significantly, namely oil pressure.  The optimum solution
is a control system completely independent of variable
30   parameters, i.e., one independent of engine oil pressure.
      In the present invention, oil pressure in cavity 198a
is relieved, leaving only the force of armature 201b to be
balanced against the force of spring 202 to achieve a null
position of spool 200.  Relieving the pressure in cavity
35   198a may be accomplished, for example, by providing an

BW 002096

92007                              -15-

engine oil flow path to the vane system which bypasses
spool 200, that is, does not utilize a passage internal to
spool 200 to supply oil to inlet line 182, as in previous
systems.  The bypass of spool 200 may be achieved by
5    connecting bypass line 220a directly to inlet line 182 and
substituting inlet oil check valve 222a for the check valve
previously contained in the passage internal to the spool.
In conjunction with providing an alternate flow path,
venting spool valve 198 to atmosphere via vent 198d would
10   complete the objective of relieving the pressure in cavity
198a which acted on the end of land 200a in previous VCT
systems.

With the oil pressure variable eliminated, the only
forces left to consider in controlling the position of
15   vented spool 200 are ones with predictable rates of change.
The force of armature 201b corresponds to the electrical
current applied to solenoid coil 201a, and the force of
spring 202 is also predictable (with respect to spring
position).  The result is the position of spool 200 being
20   readily ascertainable based on solenoid current alone.

The type of solenoid normally used in the preferred
embodiment is the cylindrical armature, or variable area,
solenoid shown in Figure 19.  Main air gap 201c extends
radially around armature 201b and may contain nonmagnetic
25   bearing material.  As armature 201c moves axially, the
cylindrical area of main gap 201c increases but the force
and distance to the coil remain constant.  Because the
force is relatively insensitive to axial armature position,
an extremely precise distance from solenoid housing 201d to
30   vented spool 200 is not required.

An alternate embodiment of the present invention is
shown in Fig. 20.  A variable force solenoid of the flat-
faced armature, or variable gap, type is used.  Force is
inversely proportional to the square of air gap 201c.  It
35   is thus advantageous to limit air gap 201c to a relatively

BW 002097

92007                    -16-

small value. By using a stroke amplifier in conjunction
with a variable gap solenoid, a net gain in force can be
achieved. Lever arrangement 201e connects armature 201b
with spool extension 200c and provides just such a gain in
5    force. This net gain can be exploited by reducing the
physical size of electromechanical actuator 201, thus
decreasing the current requirements of solenoid coil 201a
without sacrificing valve travel.

By using only imbalances between an electrically-
10   generated force on one end 200a of spool 200 and a spring
force on other end 200b for movement in one direction or
another (as opposed to using imbalances between hydraulic
loads from a common source on both ends), the control
systems of Figures 19 and 20 are completely independent of
15   hydraulic system pressure. Thus, it is not necessary to
design a compromised system to operate within a potentially
wide spectrum of oil pressures, such that may be attributed
to individual characteristics of particular engines. In
that regard, by designing a system which operates within a
20   narrower range of parameters, it is possible to rapidly and
accurately position the spool 200 in its null position for
enhanced operation of a VCT system.

The vane 160 is alternatingly urged in clockwise and
counterclockwise directions by the torque pulsations in the
25   camshaft 126 and these torque pulsations tend to oscillate
vane 160, and, thus, camshaft 126, relative to sprocket
132. However, in the spool position shown in Figures 19
and 20, such oscillation is prevented by the hydraulic
fluid within recesses 132a, 132b of sprocket 132 on
30   opposite sides of lobes 160a, 160b, respectively, of vane
160, because no hydraulic fluid can leave either recesses
132a or 132b. Both return lines 194, 196 are blocked by
the position of vented spool 200. If, for example, it is
desired to permit camshaft 126 and vane 160 to move in a
35   counterclockwise direction with respect to sprocket 132, it

92007                          -17-

is only necessary to increase the amount of current to
solenoid coil 201a. This will "push" armature 201b to the
right, urge spool 200 to the right, and thereby unblock
return line 194. In this condition of the apparatus,
5    counterclockwise torque pulsations in camshaft 126 will
pump fluid out of the portion of recess 132a and allow lobe
160a of vane 160 to move into the other portion of recess
132a which has been emptied of hydraulic fluid. However,
reverse movement of vane 160 will not occur as the torque
10   pulsations in camshaft 126 become oppositely directed
unless and until vented spool 200 moves to the left,
because of the blockage of fluid flow through return line
196 by land 200b of spool 200. While illustrated as a
separate closed passage in Figures 19 and 20, the periphery
15   of vane 160 has open oil passage slot 160c shown in Figures
10, 11, 15, 16 and 17, which permits the transfer of oil
between the portion of recess 132a on the right side of
lobe 160a and the portion of recess 132b on the right side
of lobe 160b, which are the non-active sides of lobes 160a
20   and 160b; thus, counterclockwise movement of vane 160
relative to sprocket 132 will occur when flow is permitted
through return line 194 and clockwise movement will occur
when flow is permitted through return line 196.
        Further, inlet line 182 is provided with extension
25   182a to the non-active side of one of lobes 160a or 160b,
shown as lobe 160b, to permit a continuous supply of make-
up oil to the non-active sides of lobes 160a, 160b for
better rotational balance, improved damping of vane motion,
and improved lubrication of the bearing surfaces of vane
30   160. The flow of make-up oil does not affect, and is not
affected by, the operation of electromechanical actuator
201. Make-up oil will continue to be provided to lobes
160a and 160b.
        Although the best mode contemplated by the inventors
35   for carrying out the present invention as of the filing

BW 002099

92007                                   -18-

date hereof has been shown and described herein, it will be
apparent to those skilled in the art that suitable
modifications, variations, and equivalents may be made
without departing from the scope of the invention, such
5      scope being limited solely by the terms of the following
claims.

BW 002100

92007                    -19-

<u>WHAT IS CLAIMED IS</u>:

1.    An internal combustion engine, comprising:
    a crankshaft, said crankshaft being rotatable
about an axis;
    a <u>camshaft</u> (126), said camshaft being rotatable
about a second axis, said camshaft being subject to torque
5    reversals during rotation thereof;
    a vane (160), said vane having first and second
circumferentially spaced apart lobes (160a, 160b), said
vane being attached to said camshaft, said vane being
10    rotatable with said camshaft and being non-oscillatable
with respect to said camshaft;
    a housing (132), said housing being rotatable
with said camshaft and being oscillatable with respect to
said camshaft, said housing having first and second
15    circumferentially spaced apart recesses (132a, 132b), each
of said first and second recesses receiving one of said
first and second lobes and permitting oscillating movement
of said one of said first and second lobes therein;
    means for transmitting rotary movement from said
20    crankshaft to said housing; and
    means for controlling the oscillation of said
housing, said control means being reactive to torque
reversals in said camshaft for varying the position of said
housing relative to said camshaft, said control means
25    comprising:
    a spool valve body (198);
    a spool (200), said spool being reciprocable
within said body and having first and second spaced apart
lands (200a, 200b), said spool further having a vent to
30    atmosphere (198d);
    a first return line means (194) extending from
one of said first recess and said second recess to said
spool valve body, one of said first and second lands

92007                        -20-

blocking flow through said first return line means in a
first range of positions of said spool within said valve
body and permitting flow through said first return line
means in a second range of positions of said spool within
5      said valve body;

a second return line means (196) extending from
the other of said first recess and said second recess to
said valve body, the other of said first and second lands
blocking flow through said second return line means in said
10     second range of positions of said spool within said valve
body, permitting flow through said second return line means
in a first portion of said first range of positions of said
spool within said valve body, and blocking flow through
said second return line means in a second portion of said
15     first range of positions of said spool within said valve
body;

an inlet line means (182) extending from said
valve body to each of said first recess and said second
recess, said inlet line means permitting hydraulic fluid to
20     flow from said valve body to said each of said first recess
and said second recess regardless of the position of said
spool, said inlet line means having check valve means (184,
186) for preventing the flow of hydraulic fluid from each
of said first recess and said second recess to said valve
25     body;

means for sensing (207a, 207b) the positions of
said crankshaft and said camshaft;

an engine control unit (208), said engine control
unit for receiving information from said sensing means and
30     for calculating a relative phase angle between said
crankshaft and said camshaft using said information;

an electromechanical actuator (201), said
electromechanical actuator for controlling the position of
said spool in response to a signal issued from said engine
35     control unit; and,

92007                    -21-

    means for biasing (202) said spool valve, said biasing
means for urging said spool valve to a full advance
position during periods when said electromechanical
actuator is deenergized.

5

    2.  An engine according to Claim 1 wherein each of
said first and second lobes respectively divides each of
said first and second recesses into a first portion and a
10    second portion, each of said one of said first portion and
said second portion of said each of said first and second
recesses being capable of sustaining hydraulic pressure.

    3.  An engine according to Claim 2 wherein said
15    control means is capable of being reversed to transfer
hydraulic fluid out of said one of said first portion and
said second portion of said each of said first and second
recesses and to transfer hydraulic fluid into said other of
said first portion and said second portion of said each of
20    said first and second recesses.

    4.  An engine according to Claim 3 wherein said
hydraulic fluid comprises engine lubricating oil, said
engine further comprising at least one conduit means (230a)
25    for transferring engine lubricating oil from a presaurized
lubricating oil source (230) to said control means and back
again in response to said torque reversals of said
camshaft.

30    5.  An engine according to Claim 4 further comprising
means for hydraulically connecting (182a) one of said first
portion and said second portion of one of said first recess
and said second recess with one of said first portion and
said second portion of the other of said second recess to
35    permit hydraulic fluid to flow between said one of said

92007                    -22-

first portion and said second portion of said one of said
first recess and said second recess and said one of said
first portion and said second portion of said other of said
first recess and said second recess.

6.    An engine according to Claim 5 further comprising
at least one other conduit means (220a), said other conduit
means providing communication for the flow of hydraulic
fluid through said valve body to said inlet line means,
said other conduit means having second check valve means
(222a) for preventing the flow of hydraulic fluid from said
inlet line means through said valve body.

7.    An engine according to Claim 6 wherein said
electromechanical actuator comprises a variable force
solenoid.

8.    An engine according to Claim 7 wherein said
variable force solenoid comprises:
        a coil (201a), said solenoid coil for receiving
an electrical current from said engine control unit;
        an armature (201b), said armature being
substantially surrounded by said coil, said armature being
connected to said spool, said coil, when energized, for
creating a magnetic field sufficient to cause said armature
to exert a force upon said spool and induce movement in
said spool, said movement corresponding to said signal from
said engine control unit;
        an air gap, said air gap for separating said coil
from said armature; and
        a housing, said housing for providing an
enclosure for said coil, said armature, and said air gap.

9.    An engine according to Claim 8 wherein said
electromechanical actuator further comprises a stroke

92007                              -23-

amplifier, said stroke amplifier providing a net gain in
force as applied to said vented spool.

5    10. An engine according to Claim 8 wherein said
stroke amplifier comprises a lever arrangement (201e).

11. In an internal combustion engine having a
variable camshaft timing system, a method of regulating the
10    flow of hydraulic fluid, comprising the steps of:
      sensing the positions of a crankshaft and a
camshaft;
      calculating a relative phase angle between said
crankshaft and said camshaft, said calculating step using
an engine control unit to process information obtained from
15    said sensing step; said engine control unit for issuing a
electrical signal corresponding to said phase angle; and,
      controlling the position of a vented spool
slidably situated within a spool valve body, said control
being in response to said signal received from said engine
20    control unit, said controlling step utilizing an
electromechanical actuator to vary the position of said
vented spool whereby allowing or preventing flow of
hydraulic fluid through said valve body.

25    12. The method of Claim 11 wherein said
electromechanical actuator comprises a variable force
solenoid.

13. The method of Claim 12 wherein said variable
30    force solenoid comprises:
      a coil, said coil for receiving said electrical
signal from said engine control unit;
      an armature, said armature being substantially
surrounded by said coil, said armature being connected to
35    said spool, said coil, when energized, creating a magnetic

BW 002105

92007                    -24-

field sufficient to cause said armature to exert a force
upon said spool and induce movement in said spool, said
movement corresponding to said signal from said engine
control unit;

5            an air gap, said air gap for separating said coil
from said armature; and,
            a housing, said housing for providing an
enclosure for said coil, said armature, and said air gap.

10    14. . The method of Claim 13 wherein said
electromechanical actuator further comprises a stroke
amplifier, said stroke amplifier for providing a net gain
in force as applied to said spool.

15    15.  The method of Claim 16 wherein said stroke
amplifier comprises a lever arrangement.

    16.  In a hydraulic system comprising a source of
hydraulic fluid under pressure (230), a first hydraulic
20    operator (160a), first conduit means (188) for delivering
hydraulic fluid from said source to said first hydraulic
operator, second conduit means (194) for exhausting
hydraulic fluid from said first hydraulic operator, a
second hydraulic operator (160b), third conduit means (190)
25    for delivering hydraulic fluid from said source to said
second hydraulic operator, fourth conduit means (196) for
exhausting hydraulic fluid from said second hydraulic
operator, and means for controlling the exhausting of
hydraulic fluid from said first hydraulic operator and said
30    second hydraulic operator, said control means comprising:
    a spool valve (192), said spool valve being in
communication with said second conduit means and said
fourth conduit means, said spool valve comprising a valve
body (198) and a vented spool (200), said spool being
35    reciprocable within said valve body and comprising first

92007                    -25-

and second opposed ends and first and second spaced apart
lands (200a, 200b) between said opposed ends, said first
land being capable of blocking flow through said second
conduit means in first and third positions of said spool
5    and permitting flow through said second conduit means in a
second position of said spool, said second land being
capable of blocking flow through said fourth conduit means
in said first and second positions of said spool and
permitting flow through said second conduit means in said
10    third position of said spool;

          fifth conduit means (230a), said fifth conduit
means for transmitting hydraulic fluid from said source to
said valve body;

          sixth conduit means (182), said sixth conduit
15    means for transmitting hydraulic fluid from said valve body
to said first and said third conduit means; and,

          means for positioning said spool within said
valve body whereby controlling the flow of hydraulic fluid
to said first and said second hydraulic operators, said
20    positioning means comprising an electromechanical actuator.

    17.  A hydraulic system according to Claim 16 wherein
said control means further comprises a seventh conduit
means in communication with said sixth conduit means in
25    each of said first, second and third positions of said
spool and with said first conduit means and said third
conduit means, said seventh conduit means permitting the
flow of hydraulic fluid from said valve body to said first
hydraulic operator and said second hydraulic operator,
30    whereby hydraulic fluid being exhausted from one of said
first hydraulic operator and said second hydraulic operator
will be returned to the other of said first hydraulic
operator and said second hydraulic operator without
returning to the source of hydraulic fluid.
35

BW 002107

92007                    -26-

    18.  A hydraulic system according to Claim 17 further
comprising check valve means for preventing flow of
hydraulic fluid from said first hydraulic operator and said
second hydraulic operator through said first conduit means
5    and said third conduit means into said seventh conduit
means.

    19.  A hydraulic system according to Claim 18 wherein
said positioning means further comprises:
10        means for sensing (207a, 207b) the positions of
said crankshaft and said camshaft;
        an engine control unit (208), said engine control
unit for receiving information from said sensing means and
for calculating a relative phase angle between said
15    crankshaft and said camshaft using said information, said
engine control unit further for issuing an electrical
signal to said electromechanical actuator, said signal
corresponding to said relative phase angle; and,
        means for biasing said vented spool, said biasing
20    means for urging said vented spool within said valve body
in a direction opposite to the direction of the force
applied to said vented spool by said electromechanical
actuator.

25    20.  A hydraulic system according to Claim 19 wherein
said electromechanical actuator comprises a variable force
solenoid.

    21.  A hydraulic system according to Claim 20 further
30    comprising a stroke amplifier functionally positioned
between said electromechanical actuator and said vented
spool, said stroke amplifier for providing a net gain in
force as applied to said vented spool.

BW 002108

92007                           -27-

22.    A hydraulic system of Claim 21 wherein said
stroke amplifier comprises a lever arrangement.

BW 002109



PRINT OF DRAWINGS
AS ORIGINALLY FILED

FIG. 1



OB 056635



FIG. 2



FIG. 6

BW 002111

PRINT OF DRAWINGS
AS ORIGINALLY FILED

08 056635



FIG. 3

FIG. 5

BW 002112

PRINT OF DRAWINGS
AS ORIGINALLY FILED

08 056635



FIG. 4

FIG. 9

PRINT OF DRAWINGS
AS ORIGINALLY FILED

08 056635



FIG. 7



FIG. 8

BW 002114

PRINT OF DRAWINGS
AS ORIGINALLY FILED

08 056635



FIG. 10

BW 002115

PRINT OF DRAWINGS
AS ORIGINALLY FILED

08  056635



FIG. 11

PRINT OF DRAWINGS
AS ORIGINALLY FILED

08 056635



FIG. 12



PRINT OF DRAWINGS
AS ORIGINALLY FILED

08 056635



FIG. 13

PRINT OF DRAWINGS
AS ORIGINALLY FILED

08 056635



FIG. 15            FIG. 16



FIG. 14

PRINT OF DRAWINGS
AS ORIGINALLY FILED

08 056635



260a

260

260c

FIG. 17

260b



260a

288

260

290

FIG. 18

260b

BW 002120

PRINT OF DRAWINGS
AS ORIGINALLY FILED

00 056635



FIG. 19

BW 002121

PRINT OF DRAWINGS
AS ORIGINALLY FILED

08 056635



FIG. 20

# EXHIBIT 9

84000 117 68 348

I HEREBY CERTIFY THAT THIS CORRESPONDENCE IS BEING DEPOSITED
WITH THE UNITED STATES POSTAL SERVICE AS FIRST CLASS MAIL IN
AN ENVELOPE ADDRESSED TO: COMMISSIONER OF PATENTS AND
TRADEMARKS, WASHINGTON, D.C. 20231 ON:

June 30, 1994
(DATE OF DEPOSIT)

_Dianne M. Rempel_

June 30, 1994
(DATE OF SIGNATURE)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re application of: | : | Group Art Unit: 3402 |
| EDWARD C. SIEMON ET AL. | : | |
| Serial No. 08/056,635 | : | Examiner: W. Lo |
| Filed: May 3, 1992 | : | |
| For: VCT CONTROL WITH A | : | Atty. Dkt. No.: 91016A |
| DIRECT ELECTRO- | : | |
| MECHANICAL ACTUATOR | : | |

---

### REPLY TO OFFICE ACTION AND AMENDMENT

### AND

### THREE MONTH EXTENSION OF TIME

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

This paper is in response to the Office Action (Paper
No. 12) mailed on January 4, 1994. That Office Action was
not made final.

Applicant also respectfully petitions for a three-month
extension of time under 37 C.F.R. §1.136(a) for the above-
named application. A timely response may now be filed up to
and including July 4, 1994.

A check in the amount of $840.00 is enclosed herewith
for the fee for said extension under 37 C.F.R. §1.17(c).
Deposit account 23-1925 may be charged for any additional
fee required or may be credited for any excess fee paid.

090 PA 07/15/94 08056635                    1 117    840.00 CK

BW 002155

IN THE DRAWINGS

Please accept the attached substitute drawings for Figures 14-18 to remedy incorrect reference characters.

IN THE CLAIMS

Claim 1, line 11: change "." to --;--.

Claim 5, line 5: change "the other of said second recess" to --the other of said first recess and said second recess--.

Claim 10, line 9: change "8" to --9--.

Claim 11, line 26: change "or" to --and--.

Claim 14, line 1: change "12" to --11--.

Claim 15, line 1: change "13" to --14--.

REMARKS

This amendment and accompanying remarks are submitted in response to the Office Action (Paper No. 12) regarding the above-named application. In that Office Action, the Examiner:

1) Expressed concern regarding the common ownership of any inventions made at a later time;

2) Quoted relevant sections of 35 U.S.C. §103;

3) Rejected Claims 1-11 and 13-15 under 35 U.S.C. §103 as being unpatentable over Linder et al., Butterfield et al., and Strauber et al.; specifically because:

a) Linder et al. teaches a VCT system which utilizes "torque reversals and a solenoid 24 to control the flow of working fluid" and a "close-loop feed back system to control" the VCT system;

b) Butterfield et al. teaches a VCT system which utilizes "a lever arrangement to actuate the spool valve;"

2

BW 002156

c) Strauber et al. teaches a spool valve which "utilizes a solenoid to control the flow of the working fluid," and,

d) "in light of the fact that Linder et al. and Butterfield et al. are functionally equivalent and a close-loop system would control the system of Butterfield et al. more accurately."

4) Rejected Claims 1, 10, 11, 14, 15, and claims dependent thereon under 35 U.S.C. §112, second paragraph; and,

5) Acknowledged that the Terminal Disclaimer received by the USPTO on December 20, 1993 was acceptable.

Applicants respectfully respond as follows:

1) All inventions as claimed were commonly owned by Assignee at the time of invention. Assignee stands ready to provide an affidavit to that effect if Examiner believes such an affidavit is necessary.

2) No response required.

3) First, Applicant respectfully submits that use of a closed-loop feedback system to control a VCT system is not at issue. The present invention relates to the use of a variable force solenoid in a VCT system to position a spool valve and the use of a lever arrangement to amplify the force applied to the spool valve. Comments related to those subjects alone are as follows.

a) Applicant respectfully contends that Linder et al. does not teach subject matter specifically related to the present application. It is true, as Examiner states, that Linder et al. teaches a VCT system which uses torque reversals and a common ("on-off") solenoid 24 to directly control the flow of the working fluid. But the present application uses a proportional spool valve 200 to directly control the flow of the working fluid and a variable force solenoid 201 to control the positioning of the spool valve.

3

BW 002157

b) Again, the statement made by Examiner (regarding the lever in Butterfield et al. '659) is true in general. However, upon closer inspection, it can be seen in Figure 20 that Butterfield et al. '659 merely teaches a simple lever arm 440 for use in a situation where piston 434a is physically unable to align with free end 400c of spool 400. According to the corresponding specification, "this is an advantage when adapting the variable camshaft timing system of the present invention [Butterfield et al.] to some vehicle/engine configurations." Lever arm 440 is used only for packaging convenience. Contrastingly, Figure 20 of the present application illustrates a complex lever arrangement 201e which is used solely to provide amplification of the force applied to spool 200. Accordingly, Applicant respectfully disagrees with Examiner's contention that Butterfield et al. '659 teaches the same lever arrangement as that described in the instant application.

c) The Strauber et al. disclosure teaches a common ("on-off" only) solenoid to control a spool of a two-position only system. Unlike Strauber et al., the present invention utilizes a variable force solenoid to control the position of a spool of a continuously variable system. Further, the Strauber et al. system controls the flow of oil both internal and external to the VCT mechanism. The present invention, however, controls the flow of oil internal to the VCT mechanism only.

d) Examiner places some significance on his assertion that Linder et al. and Butterfield et al. are functionally equivalent. It is not clear to Applicant why, if true, this assertion is relevant to Examiner's rejection based on obviousness. Regardless, Applicant respectfully submits that the two are far from functionally equivalent.

The Linder et al. VCT uses camshaft torque energy to alternately pressurize two opposing chambers in the VCT mechanism. Solenoid valve 24 is turned on or off to selectively allow fluid to flow from chamber to chamber. It is strictly an "on-off" system that allows either oil to flow in either direction or blocks the flow in either direction. The key element required to make the Linder et

4

al. system work is to first synchronize the opening of the solenoid valve with camshaft torque pulses so that the oil flows in the desired direction and then synchronize the closing of the valve to prevent flow when it is not desired. For example, for oil to flow from chamber 7 to chamber 8, the solenoid valve must be opened precisely when a camshaft pulse pressurizes chamber 7 and closed before the reversing camshaft torque pulse pressurizes chamber 8 (otherwise the oil would flow back out of chamber 8 into chamber 7, thus causing oscillation). Thus, this system requires that solenoid 24 turn on and off with each camshaft torque pulse if the mechanism is to actuate and vary the phase of the camshaft.

Even though Butterfield et al. also uses camshaft torque energy to alternately pressurize two opposing chambers, Butterfield et al. utilizes a completely different control method. The control valve, in this case a spool valve, has a mid position that blocks the flow in either direction, much like Linder et al. Additionally, the spool valve also has an infinite number of positions on either side of that mid position that not only controls the flow of oil form chamber to chamber but, depending on the position of the spool valve, also controls the rate of flow of the oil and hence the rate of phase change. Butterfield et al. also includes check valves between the working chambers. When the system is instructed to advance, for example, all the negative torque pulses cause the transfer of oil to flow from the retard chamber to the advance chamber. When the camshaft torque reverses and pressurizes the advance chamber, the oil is blocked from exhausting by the check valve. Therefore, the spool valve can remain in any selected position and the VCT will move in the selected direction without having to cycle the valve or reposition it with every torque pulse.

Assuming for the sake of argument that Linder et al., Butterfield et al., and Strauber et al. do indeed teach the concepts suggested by Examiner, and that the other statements made by Examiner are true, Applicant still respectfully submits that the obviousness rejection is not valid. The Federal Circuit has ruled that:

5

BW 002159

It is impermissible to use the claimed invention as an instruction manual or "template" to piece together the teachings of the prior art so that the claimed invention is obvious.  This court has previously stated that "[o]ne cannot use hindsight reconstruction to pick and choose among isolated disclosures in the prior art to deprecate the claimed invention."

In Re Fritch, 23 USPQ 2d 1780, 1784 (Fed. Cir. 1992) (citations omitted).

Therefore, Applicant respectfully submits, to combine the three references without some suggestion of doing so in the references themselves is improper.  Nothing in Linder et al., a device having a completely different control system, suggests using a variable force solenoid to position the spool and/or a lever arrangement to amplify the force applied to the spool.  Nothing in Butterfield et al. suggests using a lever arrangement in combination with a variable-force solenoid to amplify the force applied to the spool valve.  And nothing in Strauber et al., a two-position only device which uses a "common" (i.e., two-position only) solenoid, suggests using a variable force solenoid to actuate the spool valve of a continuously variable VCT system like the present invention.

In light of the above, Applicant respectfully submits that the obviousness rejection is improper and Applicant, therefore, respectfully traverses such rejection.

4) All of the changes suggested by Examiner for Claims 1, 10, 11, 14, and 15 are incorporated to address the grounds for rejection under 35 U.S.C. § 112, second paragraph.

5)  No response required.

In addition to the above changes, Applicant submits the following to further place the present application in better condition for allowance.

The language in Claim 5, line 5 is amended as specified above to correctly reflect the present invention.

6

BW 002160

Substitute informal drawings are respectfully submitted for Figures 14-18. The drawings originally submitted contained incorrect reference characters. Amended reference characters in Figures 14-18 contained in the substitute drawings now correctly correspond to the reference characters contained in the specification. All reference characters which incorrectly used the prefix "2" have been amended so that the prefix is now --1--. For example, previous reference character "260" is changed to --160--. No new matter is added. Formal drawings will be submitted at a later date if requested by Examiner or the Drafting Branch.

CONCLUSION

In summary, it is respectfully submitted that Applicants have properly responded to all matters which are at issue in this application and that this application is now in condition for allowance. Reconsideration of this application and allowance of all pending claims is earnestly solicited. Should Examiner require additional information or wish to discuss matters further, the undersigned attorney for Applicants is willing to do so.

Respectfully submitted,

David A. Spenard
Registration No. 37,449

William Brinks Hofer Gilson & Lione
1130 Edison Plaza
Toledo, Ohio 43604-1537
(419) 244-6578

7

BW 002161

| | | Attorney's Docket No. 91016A |
|---|---|---|
| | TRANSMITTAL LETTER | |
| Serial No. | Filing Date | Examiner | Group Art Unit |
| 07/880,635 | May 3, 1992 | W. Lo | 3402 |

Inventor(s) EDWARD C. SIEMON ET AL.

Title of Invention  VCT CONTROL WITH A DIRECT ELECTROMECHANICAL ACTUATOR

### TO THE COMMISSIONER OF PATENTS AND TRADEMARKS

Transmitted herewith is  REPLY TO OFFICE ACTION AND AMENDMENT

[ ] Small entity status of this application under 37 CFR § 1.27 has been established by verified statement previously submitted.

[ ] A verified statement to establish small entity status under 37 CFR §§ 1.9 and 1.27 is enclosed.

[X] Petition for a  3  month(s) extension of time.

[X] No additional fee is required.

[ ] The fee has been calculated as shown below:

| | Claims Remaining After Amendment | | Highest No. Previously Paid For | | Present Extra | Small Entity | | | or | Other Than Small Entity | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Rate | Add'l Fee | | | Rate | Add'l Fee |
| Total | | Minus | | | | | x $11 = | $ | | | x $22 = | $ |
| Indep. | | Minus | | | 0 | | x $37 = | $ | | | x $74 = | $ |
| First Presentation of Multiple Dep. Claim | | | | | | | +$115 = | $ | | | + $230 = | $ |
| | | | | | | | total add'l fee | $ | | | total add'l fee | $ |

[ ] Please charge Deposit Account No. 23-1925 (WILLIAM BRINKS HOFER GILSON & LIONE) in the amount of $_____.  A duplicate copy of this sheet is enclosed.

[X] A check in the amount of $840.00  to cover the filing fee is enclosed.

[X] The Commissioner is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this communication or credit any overpayment to Deposit Account No. 23-1925.  A duplicate copy of this sheet is enclosed.

[X] I hereby petition under 37 CFR § 1.136(a) for any extension of time required to ensure that this paper is timely filed.  Please charge any associated fees which have not otherwise been paid to Deposit Account No. 23-1925.  A duplicate copy of this sheet is enclosed.

Respectfully submitted,

David A. Spenard
Registration No. 37,449
Attorney for Applicant

WILLIAM BRINKS HOFER
GILSON & LIONE
1130 EDISON PLAZA
TOLEDO, OHIO  43604-1537
(419) 247-6578

rev. 04/1993

# EXHIBIT 10

MAIL ROOM
NOV
7
1994
PAT. & TRADE MARK OFF.

I ..... BY CERTIFY THAT THIS CORRESPONDENCE IS BEING ... POSITED WITH THE
UNITED STATES POSTAL SERVICE AS FIRST CLASS MAIL IN AN ENVELOPE
ADDRESSED TO: COMMISSIONER OF PATENTS AND TRADEMARKS, WASHINGTON,
D.C. 20231 ON:

November 1, 1994
(DATE OF DEPOSIT)

_Wanda J. Lawrence_

November 1, 1994
(DATE OF SIGNATURE)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of:              :    Group Art Unit: 3402
                                   :
EDWARD C. SIEMON ET AL.            :
                                   :
Serial No. 08/056,635              :    Examiner:  W. Lo
                                   :
Filed:  May 3, 1992                :
                                   :
For: VCT CONTROL WITH A            :    Atty. Dkt. No.:  91016A
     DIRECT ELECTRO-               :
     MECHANICAL ACTUATOR           :

---

### REPLY TO OFFICE ACTION

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

   This paper is in response to the Office Action (Paper
No. 14) mailed on August 1, 1994.  That Office Action was
not made final.

### REMARKS

   The accompanying remarks are submitted in reply to the
Office Action (Paper No. 14) regarding the above-named
application.  In that Office Action, the Examiner:

   1) Rejected Claims 1-11 and 13-15 under 35 U.S.C. §103
as being unpatentable over Butterfield et al., Linder et
al., Hendrixon, et al., Strauber et al., and a general
engineering principle; specifically because:

      a) Butterfield et al. teaches "an internal
combustion engine with a camshaft phase varying system as
claimed including a vane, a housing, a spool valve, and

various return lines" as well as "a lever arrangement to actuate the spool valve;"

b) Linder et al. teaches a VCT system which utilizes "torque reversals and a solenoid 24 to control the flow of working fluid between two chambers 7 and 8;"

c) Hendrixon et al. "provide[s] for a variable force solenoid valve to obtain linear control and variable fluid rate of flow;"

d) Strauber et al. teaches "a solenoid operated spool valve to control the flow of the working fluid;" and,

e) "[T]o additionally amplify the stroke or provide a net gain in force by varying the lever ratio . . . is a basic engineering principle . . . ."

Applicants respectfully respond as follows:

1) Applicants respectfully submit that first, three of the four cited references do not precisely teach the functions as recited by Examiner; specifically:

a) Applicants concede that the statement made by Examiner (regarding the lever in Butterfield et al. '659) is true in general. However, Applicants respectfully reassert their argument that, upon closer inspection, it can be seen in Figure 20 that Butterfield et al. '659 merely teaches a simple lever arm 440 for use in a situation where piston 434a is physically unable to align with free end 400c of spool 400. According to the corresponding specification, "this is an advantage when adapting the variable camshaft timing system of the present invention [Butterfield et al.] to some vehicle/engine configurations." Lever arm 440 is used only for packaging convenience. Contrastingly, Figure 20 of the present application illustrates a complex lever arrangement 201e which is used solely to provide amplification of the force applied to spool 200. Accordingly, Applicants respectfully disagree with Examiner's contention that Butterfield et al. '659 teaches the same lever arrangement as that described in the instant application.

2

b) Applicants respectfully reassert their position
that Linder et al. does not teach subject matter
specifically related to the present application.  In the
present Office Action, Examiner states that Linder et al. is
"relied upon solely to teach a solenoid control valve 24 to
control the flow of the working fluid between chambers 7 and
8.".  Again, the present application uses a proportional
spool valve 200 to directly control the flow of the working
fluid and a variable force solenoid 201 to control the
positioning of the spool valve, not the common two-position
("on-off") solenoid valve taught in Linder et al.

c) Applicants concede that Hendrixon et al.
(Figures 4-7) discloses a variable force solenoid used as a
flow control device.

d) Applicants again reassert their position that
Strauber et al. does not teach what Examiner suggests.  The
Strauber et al. disclosure teaches a common ("on-off" only)
solenoid to control a spool of a two-position only system.
Unlike Strauber et al., the present invention utilizes a
variable force solenoid to control the position of a spool
of a continuously variable system.  Further, the Strauber et
al. system controls the flow of oil both internal and
external to the VCT mechanism.  The present invention,
however, controls the flow of oil internal to the VCT
mechanism only.

2) Assuming for the sake of argument that all cited
references (Butterfield et al., Linder et al., Hendrixon et
al., and Strauber et al.) combined with the general
engineering priciple cited (i.e., that a lever may be used
to increase force) do indeed teach the concepts suggested by
Examiner, Applicants respectfully reassert their argument
that the obviousness rejection is still not valid.  The
Federal Circuit has ruled that:

> It is impermissible to use the claimed invention
> as an instruction manual or "template" to piece
> together the teachings of the prior art so that
> the claimed invention is obvious.  This court has
> previously stated that "[o]ne cannot use hindsight
> reconstruction to pick and choose among isolated
> disclosures in the prior art to deprecate the
> claimed invention."

3

BW 002169

In Re Fritch, 23 USPQ 2d 1780, 1784 (Fed. Cir. 1992)
(citations omitted).

Therefore, Applicants respectfully submit, to combine
four references and a general engineering principle without
some suggestion of doing so is improper.  Butterfield et al.
discloses a VCT system, but nothing suggests using a lever
arrangement in combination with a variable-force solenoid to
amplify the force applied to the spool valve.  Nothing in
Linder et al., which discloses a device having a completely
different control system, suggests using a variable force
solenoid to position the spool and/or a lever arrangement to
amplify the force applied to the spool.  Hendrixon does
teach a variable force solenoid to control fluid flow, but
in no way suggests use with a variable camshaft timing
system.  And nothing in Strauber et al., a two-position only
device which uses a "common" (i.e., two-position only)
solenoid,  suggests using a variable force solenoid to
actuate the spool valve of a continuously variable VCT
system like the present invention.

In light of the above, Applicants respectfully reassert
their position that the obviousness rejection is an improper
"hindsight" rejection and that Applicants, therefore,
respectfully traverse such rejection with the above
arguments.

CONCLUSION
In summary, it is respectfully submitted that
Applicants have properly responded to all matters which are
at issue in this application and that this application is
now in condition for allowance.  Reconsideration of this
application and allowance of all pending claims is earnestly
solicited.  Should Examiner require additional information
or wish to discuss matters further, the undersigned attorney
for Applicants is willing to do so.

Respectfully submitted,

David A. Spenard
Registration No. 37,449

4

BW 002170

Willian Brinks Hofer Gilson & Lione
1130 Edison Plaza
Toledo, Ohio 43604-1537
(419) 244-6578

5

BW 002171

MAIL ROOM
42 NOV 7 1994
PAT. & TRADE MARK OFF.

|  | TRANSMITTAL LETTER | Attorney's Docket No. 91016A |
|---|---|---|

| Serial No. 08/056,635 | Filing Date 05-03-93 | Examiner W. Lo | Group Art Unit 3402 |
|---|---|---|---|

Inventor(s)
Edward C. Siemon et al.

Title of Invention
VCT CONTROL WITH A DIRECT ELECTROMECHANICAL ACTUATOR

## TO THE COMMISSIONER OF PATENTS AND TRADEMARKS

Transmitted herewith is ____an Amendment_____

[ ] Small entity status of this application under 37 CFR § 1.27 has been established by verified statement previously submitted.

[ ] A verified statement to establish small entity status under 37 CFR §§ 1.9 and 1.27 is enclosed.

[ ] Petition for a ___ month(s) extension of time.

[X] No additional fee is required.

[ ] The fee has been calculated as shown below:

| | Claims Remaining After Amendment | | Highest No. Previously Paid For | Present Extra | | Small Entity | | or | Other Than Small Entity | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Rate | Add'l Fee | | Rate | Add'l Fee |
| Total | | | Minus | | | x $11 = | $ | | x $22 = | $ |
| Indep. | | | Minus | | | x $37 = | $ | | x $74 = | $ |
| First Presentation of Multiple Dep. Claim | | | | | | +$115 = | $ | | + $230 = | $ |
| | | | | | | total add'l fee | $ | | total add'l fee | $ |

[ ] Please charge Deposit Account No. 23-1925 (WILLIAM BRINKS HOFER GILSON & LIONE) in the amount of $_____. A duplicate copy of this sheet is enclosed.

[ ] A check in the amount of $_____ to cover the filing fee is enclosed.

[X] The Commissioner is hereby authorized to charge payment of any additional filing fees required under 37 CFR § 1.16 and any patent application processing fees under 37 CFR § 1.17 associated with this communication or credit any overpayment to Deposit Account No. 23-1925. A duplicate copy of this sheet is enclosed.

[X] I hereby petition under 37 CFR § 1.136(a) for any extension of time required to ensure that this paper is timely filed. Please charge any associated fees which have not otherwise been paid to Deposit Account No. 23-1925. A duplicate copy of this sheet is enclosed.

Respectfully submitted,

_[signature]_

WILLIAM BRINKS HOFER
GILSON & LIONE
1130 Edison Plaza
TOLEDO, OHIO 43604-1537
(419) 244-6578

David A. Spenard
Registration No. 37,449
Attorney for Applicant

rev. 04/1993

BW 002172

# EXHIBIT 11



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of:          :    Group Art Unit: 3402
                               :
EDWARD C. SIEMON, ET AL.       :
                               :
Serial No. 08/056,635          :    Examiner: W. Lo
                               :
Filed: May 3, 1993             :
                               :
For: VCT CONTROL WITH A        :    Attorney Dkt. No. 91016A
     DIRECT ELECTRO-           :
     MECHANICAL ACTUATOR       :

Commissioner of Patents and Trademarks
Washington, D.C. 20231

ATTENTION: Board of Patent Appeals and Interferences

### APPEAL BRIEF

Dear Sir:

    This brief, which is transmitted in triplicate, is in
furtherance of the Notice of Appeal filed March 15, 1995,
for the above-mentioned application.  Accompanying this
brief is a Transmittal of Appeal Brief which indicates that
the fees required under 37 C.F.R. §1.17(f) and for any
extension of time petitioned for in the Transmittal should
be charged to Deposit Account No. 02-3182.

    This brief contains the following items under the
headings and in the order set forth below pursuant to 37
C.F.R. §1.192(c):

    1.    Status of Claims
    2.    Status of Amendments
    3.    Summary of Invention
    4.    Issues
    5.    Grouping of Claims

TL27162  06/12/95  08056635        02-3182  270  119      280.00CH

BW 002184

6.    Arguments & Conclusion
7.    Appendix A & B

The final page of this brief contains the attorney's signature.

## STATUS OF CLAIMS

The total number of claims at issue in the application is 14.  Claims 1-11 and 13-15 are pending in this application and are on appeal.  Originally filed Claims 12 and 16-22 were cancelled.

## STATUS OF AMENDMENTS

After numerous telephones conversations with the Examiner, a preliminary amendment was filed on November 23, 1993.  The purpose of the preliminary amendment was to avoid a double patenting obviousness rejection which the Examiner stated he would mail if the application remained unchanged.

Over the course of the telephone conversations, the Examiner stated that: (1) Claims 1-10 were allowable, provided that the application be converted into a continuation-in-part and a terminal disclaimer and supplemental declaration were filed; (2) Claims 11-15 needed more detail; (3) Claims 16-22 should be cancelled, since their scope exceeded that of internal combustion engine art.

Accordingly, Applicant: (1) amended the application to convert it to a continuation-in-part (of co-pending application Serial No. 940,273, filed on September 3, 1992, now U.S. Patent No. 5,218,935, granted on June 15, 1993), filed a terminal disclaimer, and filed a supplemental declaration; (2) cancelled Claim 12 and included its limitations into amended Claim 11 to provide a narrower method claim; and, (3) cancelled Claims 16-22.

Ultimately, the Examiner and counsel for Applicant could not agree on the telephone to claims language which would put the application in a condition for allowance.

2

BW 002185

A second amendment was filed June 30, 1994 in response to an Office Action (Paper No. 12) mailed January 4, 1994. In that amendment, Applicant: (1) clarified certain ownership issues raised by the Examiner; (2) amended Claims 1, 5, 10, 11, 14, and 15 to correct typographical and administrative errors; and, (3) made arguments in favor of allowability in response to the Examiner's rejection under 35 U.S.C. §103 as obvious over Linder, et al., Butterfield, et al., and Strauber, et al.

On November 1, 1994, a third amendment was filed in response to an Office Action (Paper No. 14) mailed August 1, 1994. In that amendment, Applicant: (1) made arguments in favor of allowability in response to the Examiner's rejection under 35 U.S.C. §103 as obvious over Linder, et al., Butterfield, et al., Strauber, et al., and an additional reference, Hendrixon, et al.

On March 15, 1995, a Notice of Appeal was filed in response to a Final Office Action (Paper No. 16) mailed December 5, 1994.

### SUMMARY OF THE INVENTION

The present invention is one of a family of devices relating to a variable camshaft timing (VCT) system. The VCT system relies on hydraulic forces to vary the phase angle of the camshaft(s) of an automotive engine relative to the crankshaft.

The present invention provides an improved method and apparatus for controlling the position of a vented spool in a hydraulic control valve in a VCT system, for example, a hydraulic control valve similar to the one used in an oppositely-acting hydraulic cylinder VCT timing system of the type disclosed in U.S. Patent 5,002,023, or a hydraulic control valve similar to the one used in a vane-type VCT timing system of the type disclosed in U.S. Patent 5,107,804.

The control system of the present invention, i.e., use of an electromechanical actuator, eliminates the hydraulic

3

BW 002186

force on one end of the spool resulting from directly
applied hydraulic fluid from the engine oil gallery at full
hydraulic pressure, $P_s$, utilized by previous embodiments of
the VCT system.  The force on the other end of the vented
spool results from the electromechanical actuator,
preferably of the variable force solenoid type, which acts
directly upon the vented spool in response to an electronic
signal issued from an engine control unit ("ECU") which
monitors various engine parameters.  The ECU receives
signals from sensors corresponding to camshaft and
crankshaft positions and utilizes this information to
calculate a relative phase angle.  The preferred embodiment
employs a closed-loop feedback system, such as the one
disclosed in U.S. Patent 5,184,578, which corrects for any
phase angle error.  The present invention offers an
efficient and economical solution to the problems recited
above, as well as additional advantages over a conventional
differential pressure control system ("DPCS").

    For the present invention, the VCT system used may be
one previously mentioned, or any one which uses a
proportional spool valve to regulate flow of engine oil to
control the phase angle adjustment.  The control of the
position of spool 200 within member 198 is in direct
response to electromechanical actuator 201, preferably a
variable force solenoid, as shown in Figure 19.  An
electrical current is introduced via cable 238 through
solenoid housing 201d into solenoid coil 201a which repels,
or "pushes", armature 201b.  Armature 201b bears against
extension 200c of vented spool 200, thus moving vented spool
200 to the right, as oriented in Fig. 19.  If the force of
spring 202 is in balance with the force exerted by armature
201b in the opposite direction, spool 200 will remain in its
null or centered position.  Thus, vented spool 200 can be
moved in either direction by increasing or decreasing the
current to solenoid coil 201a, as the case may be.  Of
course, the configuration of solenoid 201 may be reversed,
converting the force on spool extension 200c from a "push"
to a "pull."  This would require the function of spring 202
to be redesigned to counteract the force in the new
direction of armature 201b movement.  However, there are

4

BW 002187

instances when it is desirable for spool 200 to be forced to
the far left, or biased, position. The location of spring
202 in cavity 198c, as shown in Figure 19, or in cavity
198a, as shown in Figure 20, ensures the return of spool 200
to its biased position when there is no current applied to
solenoid coil 201a, such as periods of power failure or
engine shutdown.

The movement of armature 201b is controlled by an
electrical current applied to solenoid coil 201a in response
to a control signal from electronic engine control unit
(ECU) 208, shown schematically in Fig. 19, which may be of
conventional construction. In previous versions of the VCT
system, the force exerted against spool extension 200c must
balance with the force of spring 202 plus any system oil
pressure in cavity 198a acting on the end of land 200a if a
null position of spool 200 was desired. Problems arose when
attempting to achieve this balance because the system
included a component which could vary significantly, namely
oil pressure. The optimum solution is a control system
completely independent of variable parameters, i.e., one
independent of engine oil pressure.

In the present invention, oil pressure in cavity 198a
is relieved, leaving only the force of armature 201b to be
balanced against the force of spring 202 to achieve a null
position of spool 200. Relieving the pressure in cavity
198a may be accomplished, for example, by providing an
engine oil flow path to the vane system which bypasses spool
200, that is, does not utilize a passage internal to spool
200 to supply oil to inlet line 182, as in previous systems.
The bypass of spool 200 may be achieved by connecting bypass
line 220a directly to inlet line 182 and substituting inlet
oil check valve 222a for the check valve previously
contained in the passage internal to the spool. In
conjunction with providing an alternate flow path, venting
spool valve 198 to atmosphere via vent 198d would complete
the objective of relieving the pressure in cavity 198a which
acted on the end of land 200a in previous VCT systems.

5

BW 002188

In an alternate embodiment, lever arrangement 201e or
equivalent is functionally positioned between
electromechanical actuator 201 and spool 200, as shown in
Figure 20.  Lever arrangement 201e effectively acts as a
stroke amplifier/force attenuator, allowing either a
reduction in the required solenoid current or reduction in
the air gap distance without sacrificing valve travel.

### ISSUES

Whether Claims 1-11 and 13-15 are unpatentable under 35
U.S.C. §103 as obvious over Linder, et al., Butterfield, et
al., Strauber, et al., and Hendrixon, et al.

No claims currently stand allowed.  Claims on appeal
are attached for the Board's convenience (Appendix A).
Copies of the Linder, et al., Butterfield, et al., Strauber,
et al., and Hendrixon, et al. references are also attached
(Appendix B).

### GROUPING OF CLAIMS

Appellants consider the claims to each be independently
patentable in its own right.  However, the following claims
are all rejected for the same reasons and may be grouped
together:

Claims 1-10, 11, and 13-15.

### ARGUMENTS

CLAIMS 1-10, 11, AND 13-15 ARE NOT OBVIOUS

Appellant respectfully appeals from Examiner's
conclusion that the present application is unpatentable
under 35 U.S.C. §103 as being obvious over Butterfield et
al., Linder et al., Hendrixon, et al., Strauber et al., and
a basic engineering principle.

### The Cited References Do Not Precisely Teach the Functions as Stated by the Examiner

The Examiner, in his latest Office Action, first
explains what each reference teaches and then applies it to
the present application.  Appellant respectfully submits
that three of the four cited references do not precisely

6

BW 002189

teach the functions stated by the Examiner as applied to the present appication.

The Examiner states that the first reference, Butterfield et al., teaches "an internal combustion engine with a camshaft phase varying system as claimed including a vane, a housing, a spool valve, and various return lines" as well as "a lever arrangement to actuate the spool valve."

Appellants concede that the first portion of the statement made by Examiner regarding the subject matter of the invention is true. Furthermore, the second portion of the statement (regarding the lever in Butterfield et al. '659) is true, but only in general. Appellants respectfully assert the argument that, upon closer inspection, it can be seen in Figure 20 that Butterfield et al. '659 merely teaches a simple lever arm 440 for use in a situation where piston 434a is physically unable to align with free end 400c of spool 400. According to the corresponding specification, "this is an advantage when adapting the variable camshaft timing system of the present invention [Butterfield et al. '659] to some vehicle/engine configurations." In other words, lever arm 440 is used only for packaging convenience. Contrastingly, Figure 20 of the present application illustrates a complex lever arrangement 201e which is used solely to provide amplification of the force applied to spool 200. Accordingly, Appellant respectfully disagrees with Examiner's contention that Butterfield et al. '659 teaches the same lever arrangement as that described in the application now on appeal.

Furthermore, lever arrangment 201e is included only as dependent Claims 9 and 15. In the event that Claims 9 and 15 are not allowed on their own merit, Appellant respectfully requests that they be allowed in light of the allowability of independent Claims 1 and 11.

The Examiner next relies upon the Linder et al. reference, stating that it teaches a VCT system which utilizes "torque reversals and a solenoid 24 to control the flow of working fluid between two chambers 7 and 8."

7

Appellant respectfully asserts the position that, like Butterfield et al., Linder et al. does not teach subject matter specifically related to the present application. In the present Office Action, Examiner states that Linder et al. is "relied upon solely to teach a solenoid control valve 24 to control the flow of the working fluid between chambers 7 and 8.". The present application uses a _proportional spool valve_ 200 to directly control the flow of the working fluid and a _variable force_ solenoid 201 to control the positioning of the spool valve. The Examiner states that "[a]ll solenoid valves are of the variable force type by nature, which depend on the voltage or current change delivered to the solenoids." Again, Appellant disagrees. "Solenoid valves are suitable for on-off service and utilize a solenoid to move the valve disc to either the fully open or fully closed position."[1] Accordingly, Linder et al. does _not_ teach a variable force solenoid valve to position a proportional spool valve as in the application on appeal.

The Examiner also contends that Strauber et al. teaches "a solenoid operated spool valve to control the flow of the working fluid." Appellant again asserts the position that the relied upon reference does not teach what Examiner proposes. The Strauber et al. disclosure, like Linder et al., teaches a common ("on-off" only) solenoid to control a spool of a two-position only system. Unlike Strauber et al., the present invention utilizes a variable force solenoid to control the position of a spool of a continuously variable system. Further, the Strauber et al. system controls the flow of oil both internal and external to the VCT mechanism. The present invention, however, controls the flow of oil internal to the VCT mechanism only.

In short, Appellant submits that three of the four references cited by Examiner do not teach what the Examiner states, as applied to the present application, and therefore should not be allowed to substantiate the Examiner's obviousness rejection.

---

[1] Sanford I. Heisler, _The Wiley Engineer's Desk Reference_ 378 (John Wiley & Sons 1984).

8

### Hindsight Rejections Are Not Allowed

Assuming for the sake of argument that all cited references (Butterfield et al., Linder et al., Hendrixon et al., and Strauber et al.) combined with the general engineering principle cited (i.e., that a lever may be used to increase force) do indeed teach the concepts suggested by the Examiner, Appellant respectfully asserts the argument that the obviousness rejection is still not valid. The Federal Circuit has ruled that:

> It is impermissible to use the claimed invention as an instruction manual or "template" to piece together the teachings of the prior art so that the claimed invention is obvious. This court has previously stated that "[o]ne cannot use hindsight reconstruction to pick and choose among isolated disclosures in the prior art to deprecate the claimed invention."

In Re Fritch, 23 U.S.P.Q.2d 1780, 1784 (Fed. Cir. 1992) (citations omitted); see also, Orthopedic Equipment Co., Inc. et al. v. U.S., 217 U.S.P.Q. 193, 199 (Fed. Cir. 1983). In the present application on appeal, the Examiner has inappropriately taken specific elements from four references (and a basic engineering principle) and used them to reconstruct the present invention and find that it is obvious.

### The Hendrixon et al. Reference

The Examiner concedes that references cannot be arbitrarily combined and that there must be some motivation for one skilled in the art to combine teachings from several patents. In Re Nomiya, et al., 184 U.S.P.Q. 607, 613 (C.C>P.A. 1975) citing, Graham v. John Deere, Co., 383 U.S. 1, 36, 148 U.S.P.Q. 459, 474 (1966). But Nomiya also stands for the proposition that if an invention solves a problem which was not contemplated in a prior art reference, it may be patentable. Nomiya, 184 U.S.P.Q. at 612-13. The reasoning behind this principle is that if the problem was known, a person skilled in the art would be motivated to solve it. Lacking knowledge of the problem, one skilled in the art would not be so motivated.

Appellant submits that problems caused by the VCT system dependency on engine oil pressure were not known at

9

the time of the Hendrixon et al. patent.  The Hendrixon et
al. invention was directed at a variable force solenoid
having reduced frictional force between the moving elements
resulting in the virtual elimination of hysteresis in a
ball-armature position versus current.  U.S. Patent No.
5,000,420, col. 2, lines 41-46.  Furthermore, close
inspection of the Hendrixon et al. patent reveals that there
is engine oil pressure acting on the land of the spool not
directly affected by the solenoid.  As shown in Figure 1 of
Hendrixon et al., "[m]anifold passage 86, which is
interconnected to manifold passage 84, provides control
pressure feedback to the face of the spool land 62."  _Id._ at
col. 4, lines 65-68.  Clearly, there is engine oil present
in cavity 84 at control pressure which acts on spool land 62
and counteracts the force of the solenoid on spool land 60.
Given the presence of engine oil in cavity 84 acting on land
62, the Hendrixon et al. inventon could not have expected
the problems caused by a VCT system dependent upon engine
oil pressure.[2]

By utilizing a direct electromechanical actuator on one
land of the spool in combination with relieving the oil
pressure on the other land, the present invention provides a
solution to problems not expected by Hendrixon et al.--
problems which are well documented and resolved in the
application for the present invention.  For example, the
lack of normal operating oil pressure during initial engine
start-up does not result in start-up error because the
signal from the ECU is fed immediately to the solenoid which
directly positions the spool.  Other solutions to problems
include: a response time faster than a purely hydraulic
actuation (allowing the use of increased closed-loop gain
and making the system less sensitive to component tolerances
and operating environment); the elimination of chatter
(resulting in a virtually noise-free system); and, use for

---

[2]See also, Ex Parte Hiyamizu, 10 U.S.P.Q. 2d 1393,
1394-95, (Bd. of Patent Appeals 1988) ("[W]here the claimed
invention solves a problem, the discovery of the source of
the problem and its solution are considered to be part of
the 'invention as a whole' under §103.") (citations
omitted).

10

BW 002193

applications where an oil-free actuator is desirable (such as with an engine which utilizes a timing belt).

In short, Appellants respectfully submit, to combine four references and a general engineering principle without some suggestion of doing so is improper. Butterfield et al. discloses a VCT system, but nothing suggests using a lever arrangement in combination with a variable-force solenoid to amplify the force applied to the spool valve. Nothing in Linder et al., which discloses a device having a completely different control system, suggests using a variable force solenoid to position the spool and/or a lever arrangement to amplify the force applied to the spool. Hendrixon does teach a variable force solenoid to control fluid flow, but in no way expected the problems of an engine oil pressure dependent system. And nothing in Strauber et al., a two-position only device which uses a "common" (i.e., two-position only) solenoid, suggests using a variable force solenoid to actuate the spool valve of a continuously variable VCT system like the present invention.

In light of the above, Appellant respectfully submits that the obviousness rejection is an improper "hindsight" rejection and that Appellant, therefore, respectfully traverses such rejection with the above arguments.

## CONCLUSION

Appellant respectfully submits that it has been shown that: (1) three of the four references cited do not teach the functions stated by the Examiner as applied to the present application; (2) the present invention identifies the source of problems not contemplated by a prior art reference and then solves them; and (3) Appellant believes that the rejection stated by the Examiner is an inappropriate "hindsight" rejection. Accordingly, the Board of Patent Appeals and Interferences is respectfully requested to reverse Examiner's rejections of Claims 1-11

11

BW 002194

and 13-15 and allow the claims at an early date.

Respectfully submitted,

David A. Spenard
Registration No. 37,449
Attorney for Appellant

Willian Brinks Hofer Gilson & Lione
1130 Edison Plaza
Toledo, Ohio 43604-1537
(419) 244-6578
(419) 244-8862 (fax)

12

BW 002195

A

BW 002196

**APPENDIX A**

<u>CLAIMS ON APPEAL</u>

1.   An internal combustion engine, comprising:

a crankshaft, said crankshaft being rotatable about an axis;

a camshaft (126), said camshaft being rotatable about a second axis, said camshaft being subject to torque reversals during rotation thereof;

a vane (160), said vane having first and second circumferentially spaced apart lobes (160a, 160b), said vane being attached to said camshaft, said vane being rotatable with said camshaft and being non-oscillatable with respect to said camshaft;

a housing (132), said housing being rotatable with said camshaft and being oscillatable with respect to said camshaft, said housing having first and second circumferentially spaced apart recesses (132a, 132b), each of said first and second recesses receiving one of said first and second lobes and permitting oscillating movement of said one of said first and second lobes therein;

means for transmitting rotary movement from said crankshaft to said housing; and,

means for controlling the oscillation of said housing, said control means being reactive to torque reversals in said camshaft for varying the position of said housing relative to said camshaft, said control means comprising:

a spool valve body (198);

a spool (200), said spool being reciprocable within said body and having first and second spaced apart lands (200a, 200b), said spool further having a vent to atmosphere (198d);

BW 002197

a first return line means (194) extending from one of said first recess and said second recess to said spool valve body, one of said first and second lands blocking flow through said first return line means in a first range of positions of said spool within said valve body and permitting flow through said first return line means in a second range of positions of said spool within said valve body;

a second return line means (196) extending from the other of said first recess and said second recess to said valve body, the other of said first and second lands blocking flow through said second return line means in said second range of positions of said spool within said valve body, permitting flow through said second return line means in a first portion of said first range of positions of said spool within said valve body, and blocking flow through said second return line means in a second portion of said first range of positions of said spool within said valve body;

an inlet line means (182) extending from said valve body to each of said first recess and said second recess, said inlet line means permitting hydraulic fluid to flow from said valve body to said each of said first recess and said second recess regardless of the position of said spool, said inlet line means having check valve means (184, 186) for preventing the flow of hydraulic fluid from each of said first recess and said second recess to said valve body;

means for sensing (207a, 207b) the positions of said crankshaft and said camshaft;

an engine control unit (208), said engine control unit for receiving information from said sensing means and for calculating a relative phase angle between said crankshaft and said camshaft using said information;

an electromechanical actuator (201), said electromechanical actuator for controlling the position of said spool in response to a signal issued from said engine control unit; and,

2

BW 002198

means for biasing (202) said spool valve, said biasing means for urging said spool valve to a full advance position during periods when said electromechanical actuator is deenergized.

2.    An engine according to Claim 1 wherein each of said first and second lobes respectively divides each of said first and second recesses into a first portion and a second portion, each of said one of said first portion and said second portion of said each of said first and second recesses being capable of sustaining hydraulic pressure.

3.    An engine according to Claim 2 wherein said control means is capable of being reversed to transfer hydraulic fluid out of said one of said first portion and said second portion of said each of said first and second recesses and to transfer hydraulic fluid into said other of said first portion and said second portion of said each of said first and second recesses.

4.    An engine according to Claim 3 wherein said hydraulic fluid comprises engine lubricating oil, said engine further comprising at least one conduit means (230a) for transferring engine lubricating oil from a pressurized lubricating oil source (230) to said control means and back again in response to said torque reversals of said camshaft.

5.    An engine according to Claim 4 further comprising means for hydraulically connecting (182a) one of said first portion and said second portion of one of said first recess and said second recess with one of said first portion and said second portion of the other of said first recess and said second recess to permit hydraulic fluid to flow between said one of said first portion and said second portion of said one of said first recess and said second recess and said one of said first portion and said second portion of said other of said first recess and said second recess.

6.    An engine according to Claim 5 further compris-

3

BW 002199

ing at least one other conduit means (220a), said other conduit means providing communication for the flow of hydraulic fluid through said valve body to said inlet line means, said other conduit means having second check valve means (222a) for preventing the flow of hydraulic fluid from said inlet line means through said valve body.

7.   An engine according to Claim 6 wherein said electromechanical actuator comprises a variable force solenoid.

8.   An engine according to Claim 7 wherein said variable force solenoid comprises:

a coil (201a), said solenoid coil for receiving an electrical current from said engine control unit;

an armature (201b), said armature being substantially surrounded by said coil, said armature being connected to said spool, said coil, when energized, for creating a magnetic field sufficient to cause said armature to exert a force upon said spool and induce movement in said spool, said movement corresponding to said signal from said engine control unit;

an air gap, said air gap for separating said coil from said armature; and,

a housing, said housing for providing an enclosure for said coil, said armature, and said air gap.

9.   An engine according to Claim 7 wherein said electromechanical actuator further comprises a stroke amplifier, said stroke amplifier providing a net gain in force as applied to said vented spool.

10.   An engine according to Claim 9 wherein said stroke amplifier comprises a lever arrangement (201e).

11.   In an internal combustion engine having a variable camshaft timing system for varying the phase angle of a camshaft relative to a crankshaft, a method of regulating the flow of hydraulic fluid from a source to a

4

BW 002200

means for transmitting rotary movement from said crank-
shaft to a housing, comprising the steps of:

sensing the positions of said crankshaft and
said camshaft;

calculating a relative phase angle between said
crankshaft and said camshaft, said calculating step using
an engine control unit for processing information ob-
tained from said sensing step, said engine control unit
further for issuing a electrical signal corresponding to
said phase angle;

controlling the position of a vented spool
slidably situated within a spool valve body, said control
being in response to said signal received from said
engine control unit, said controlling step utilizing an
electromechanical actuator to vary the position of said
vented spool, said electromechanical actuator comprising
a variable force solenoid;

supplying hydraulic fluid from said source through
said spool valve to a means for transmitting rotary
movement to said camshaft, said spool valve selectively
allowing and blocking flow of hydraulic throughan inlet
line and through return lines; and,

transmitting rotary movement to said camshaft in
such a manner as to vary the phase angle of said camshaft
with respect to said crankshaft, said rotary movement
being transmitted through a housing, said housing being
mounted on said camshaft, said housing further being
rotatable with said camshaft and being oscillatable with
repsect to sand camshaft.


13.  The method of Claim 11 wherein said variable
force solenoid comprises:

a coil, said coil being adapted to receive said
electrical signal from said engine control unit;

an armature, said armature being substantially

5

surrounded by said coil, said armature being connected to
said spool, said coil, when energized, creating a mag-
netic field sufficient to cause said armature to exert a
force upon said spool and induce movement in said spool,
said movement corresponding to said signal from said
engine control unit;

an air gap, said air gap separating said coil
from said armature; and,

a housing, said housing providing an enclosure
for said coil, said armature, and said air gap.

14.   The method of Claim 11 wherein said electro-
mechanical actuator further comprises a stroke amplifier,
said stroke amplifier for providing a net gain in force
as applied to said spool.

15.   The method of Claim 14 wherein said stroke
amplifier comprises a lever arrangement.

6

BW 002202

B

BW 002203

## APPENDIX B

### AUTHORITIES CITED

1.  U.S. Patent No. 5,172,659 (Butterfield et al. '659).

2.  U.S. Patent No. 5,012,774 (Strauber et al.).

3.  U.S. Patent No. 5,056,077 (Linder et al.).

4.  U.S. Patent No. 5,000,420 (Hendrixon et al.).

5.  U.S. Patent No. 5,002,023 (Butterfield et al. '023).

6.  U.S. Patent No. 5,107,804 (Becker et al.).

7.  U.S. Patent No. 5,184,578 (Quinn, Jr. et al.).

8.  In Re Fritch, 23 U.S.P.Q.2d 1780 (Fed. Cir. 1992).

9.  In Re Nomiya, et al., 184 U.S.P.Q. 607 (C.C.P.A. 1975).

10. Ex Parte Hiyamizu, 10 U.S.P.Q.2d 1393 (Bd. of Patent Appeals 1988).

11. Orthopedic Equipment Co., Inc. et al. v. U.S., 217 U.S.P.Q. 193 (Fed. Cir. 1983).

12. Sanford I. Heisler, The Wiley Engineer's Desk Reference 378 (John Wiley & Sons 1984).

BW 002204