# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| HITACHI, LTD., and HITACHI AUTOMOTIVE PRODUCTS (USA), INCORPORATED<br><br>      Plaintiffs,<br><br>    v.<br><br>BORGWARNER INC., and<br>BORGWARNER MORSE TEC INC.,<br><br>      Defendants.<br>_____<br><br>BORGWARNER INC.,<br><br>      Counterclaimant,<br><br>    v.<br><br>HITACHI, LTD., and HITACHI AUTOMOTIVE PRODUCTS (USA), INCORPORATED<br><br>      Counterdefendants. | **REDACTED PUBLIC VERSION**<br><br>C.A. No. 05-048-SLR |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '738 PATENT

*Of Counsel:*

Kenneth E. Krosin
Michael D. Kaminski
Pavan K. Agarwal
C. Edward Polk
Liane M. Peterson
Foley & Lardner LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007–5109

William J. Robinson
Foley & Lardner LLP
2029 Century Park East, Suite 3500
Los Angeles, CA 90067
(310) 277-2223

Dated: October 12, 2006

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654–1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiffs Hitachi, Ltd. and
Hitachi Automotive Products (USA), Inc.*

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF PROCEEDING ........................................................1

II.   SUMMARY OF ARGUMENT ...................................................................3

III.  FACTUAL BACKGROUND ....................................................................3

    A.    Variable Camshaft Timing Systems ................................................3

        1.    The CTA Design:  BorgWarner ........................................4

        2.    OPA Systems Rely on External Oil Pressure and Flow ...............9

            a)    The Strauber Prior Art Patent ............................. 9

            b)    Engines With Hitachi's OPA VCT Components.............. 11

                (1)    Hitachi's Actuator Housing and Vane .................. 13
                (2)    The Solenoid Valve :  The Spool......................... 15
                (3)    The Solenoid Valve:  The Solenoid...................... 17
                (4)    The Electronics ...................................... 18

IV.   SUMMARY JUDGMENT OF NON-INFRINGEMENT IS
    APPROPRIATE....................................................................20

    A.    The Legal Standard On Summary Judgment .............................20

    B.    The Standards For Patent Infringement ...................................21

        1.    Direct Infringement.......................................................21

        2.    Indirect Infringement ...................................................23

    C.    Hitach Has Not Infringed Claims 10 and 11 of the '738 Patent ...............24

        1.    No Direct Infringement Under 35 U.S.C. § 271(a)........................24

            a)    No Literal Infringement ................................... 24

            b)    No Infringement Under the Doctrine of Equivalents........ 29

        2.    No Indirect Infringement Under 35 U.S.C. § 271(b) or 35
            U.S.C. § 271(c) ...............................................37

V.    CONCLUSION....................................................................37

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Biagro Western Sales, Inc. v. Grow More, Inc.,
  423 F.3d 1296 (Fed. Cir. 2005)..................................................................... 22, 30

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986)..................................................................................... 20

Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,
  145 F.3d 1303 (Fed. Cir. 1998)..................................................................... 35

Day Int'l, Inc. v. Reeves Bros., Inc.,
  260 F.3d 1343 (Fed. Cir. 2001).............................................................21-22, 34

EMI Group North Am., Inc. v. Intel Corp.,
  157 F.3d 887 (Fed. Cir. 1998)....................................................................... 20

Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,
  149 F.3d 1309 (Fed. Cir. 1998)..................................................................... 20

Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,
  535 U.S. 722 (2002)............................................................................ 22, 30, 35

Honeywell Int'l, Inc. v. ITT Indus., Inc.,
  452 F.3d 1312 (Fed. Cir. 2006)..................................................................... 36

J & M Corp. v. Harley-Davidson, Inc.,
  269 F.3d 1360 (Fed. Cir. 2001) .................................................................... 30

Kustom Signals, Inc. v. Applied Concepts, Inc.,
  264 F.3d 1326 (Fed. Cir. 2001) .................................................................... 22

Moore U.S.A., Inc. v. Standard Register Co.,
  229 F.3d 1091 (Fed. Cir. 2000) .................................................................... 36

Novartis Corp. v. Ben Venue Labs., Inc.,
  271 F.3d 1043 (Fed. Cir. 2001)..................................................................... 23

NTP, Inc. v. Research in Motion, Ltd.,
  418 F.3d 1282 (Fed. Cir. 2005) .................................................................... 21

O.I. Corp. v. Tekmar Co., Inc.,
  115 F.3d 1576 (Fed. Cir. 1997) .................................................................... 35

Odetics, Inc. v. Storage Tech. Corp.,
  185 F.3d 1259 (Fed. Cir. 1999)..................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

*Sage Prods., Inc. v. Devon Indus., Inc.*,
    126 F.3d 1420 (Fed. Cir. 1997)................................................................. 36

*Serrano v. Telular Corp.*,
    111 F.3d 1578 (Fed. Cir. 1997) ........................................................... 23, 37

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
    247 F.3d 1316 (Fed. Cir. 2001) ............................................................... 23

*Tronzo v. Biomet, Inc.*,
    156 F.3d 1154 (Fed. Cir. 1998) ............................................................... 22

*Warner-Jenkinson Co. Inc. v. Hilton-Davis Chemical Co.*,
    520 U.S. 17 (1997)..................................................................... 21-22, 35

*Wilson Sporting Goods Co. v. David Geoffrey & Associates*,
    904 F.2d 677 (Fed. Cir. 1990).................................................................. 22

*Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*,
    19 F.3d 1418 (Fed. Cir. 1994) ........................................................... 23, 37

### FEDERAL STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

35 U.S.C. § 112....................................................................... 24-26, 35

35 U.S.C. § 271(a) ................................................................... 21, 24

35 U.S.C. § 271(b) ................................................................... 23, 37

35 U.S.C. § 271(c) ................................................................... 23, 37

FED. R. CIV. P. 56 ....................................................................... 20

FED. R. CIV. P. 56(c)..................................................................... 20

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

## I.    NATURE AND STAGE OF PROCEEDING

Hitachi, Ltd. and Hitachi Automotive Products (USA), Inc. (collectively "Hitachi") submit this memorandum in support of their motion for summary judgment of non-infringement of method claims 10 and 11 of U.S. Patent 5,497,738 ("the '738 patent") (Ex. 1)[1] asserted by BorgWarner Inc., and BorgWarner Morse TEC Inc. (collectively, "BorgWarner") in their counterclaims. (D.I. 83). Although BorgWarner bears the burden of proof on this issue, Hitachi affirmatively demonstrates herein the absence of infringement.

At the outset, it must be emphasized that method claims 10 and 11 are directed to a method for operating an automobile engine and include engine parts *not* made by Hitachi (e.g., camshafts, crankshafts, and timing chains). As such, any assertion by BorgWarner of *direct* infringement is against third party automobile drivers/users in the United States who are not parties to the suit and use the allegedly infringing methods when driving their cars. Thus, while BorgWarner's counterclaim of infringement broadly asserts infringement against Hitachi, the only possible claim is for *indirect* infringement by virtue of Hitachi supplying some of the parts used in the allegedly infringing methods. Hitachi demonstrates herein the absence of direct infringement, which eliminates any claims of indirect infringement.

As discussed in Hitachi's opening *Markman* brief (D.I. 264), the '738 patent concerns automotive engine technology and, in particular, an improvement to BorgWarner's "Cam Torque Activated" ("CTA") variable camshaft timing ("VCT") system. Claims 10 and 11 are directed to a slight modification of the control system used

---

[1] All exhibits are included in the Combined Appendix in Support of Hitachi, Ltd's and Hitachi Automotive Products (USA), Inc.'s Opening Summary Judgment Motions.

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

in BorgWarner's prior art CTA VCT systems.  In a CTA system, the energy needed to move the camshaft relative to the crankshaft, which is done "hydraulically" (*i.e.*, via oil), is produced *internally* by the torque built up in the camshaft.  Camshaft torque pulsations pressurize the oil to move the camshaft relative to the crankshaft and thus effect the phase change.  In a CTA system, the oil flows *internal* to the VCT mechanism *only* to change the phase.  The engine oil pump is *not* used to pressurize the oil and the VCT does *not* rely on oil flow from the main engine oil circuit to the VCT mechanism during the phase change.

By contrast, Hitachi's VCT system is an "Oil Pressure Activated" ("OPA") system. In an OPA system, *external* energy is used to produce a phase change, namely, pressurized oil from the engine oil pump.  Thus, in Hitachi's OPA system, the oil flows both *internal* and *external* to the VCT mechanism because oil pressurized by the oil pump flows from the main engine oil circuit to the VCT mechanism to effect the phase change.

During prosecution, BorgWarner repeatedly differentiated its "invention" over a prior art reference to Strauber on the basis that the BW invention controls the flow of oil internal to the VCT mechanism only to create phase changes while Strauber controls the flow of oil both internal and external to the VCT mechanism for this purpose.  BorgWarner cannot now read claims 10 and 11 to cover a system it expressly disavowed during prosecution.  On this basis alone, summary judgment should be granted.

There are, however, several additional claim limitations missing from the accused engines that incorporate Hitachi's VCT components including:  (a) the recited "source," (b) calculating the "relative phase angle" between the camshaft and crankshaft, (c) an electrical signal corresponding to the "relative phase angle" generated by the electronic control unit, (d) a "vented" spool, (e) a "variable force solenoid," (f) the "supplying" step, and (g) a "means for transmitting rotary movement" to the camshaft, all of which are

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

discussed below.  While absence of just one limitation in engines using Hitachi's accused OPA VCT precludes infringement, absence of virtually all limitations in engines using Hitachi's system underscores the fundamentally different nature between the invention recited in claims 10 and 11 of the '738 patent and Hitachi's VCT system, and the lack of merit of BorgWarner's infringement charge.

## II.    SUMMARY OF ARGUMENT

1.   There is no direct infringement of claims 10 and 11 of the '738 patent as a matter of law, either literally or under the Doctrine of Equivalents.  No automobile with Hitachi's OPA VCT system practices the methods of  those claims or any insubstantially different methods.

2.  Hitachi has not committed any acts of direct infringement because it does not, and has not, performed the methods recited in claims 10 and 11 in the United States. Hitachi does not even sell any products having all the elements capable of practicing the methods in these claims.

3.   Hitachi has not committed any acts of indirect (inducing or contributory) infringement because there is no direct infringement.

## III.    FACTUAL BACKGROUND

### A.    Variable Camshaft Timing Systems

As discussed in Hitachi's *Markman* brief, VCT systems adjust the rotational phase angle of the camshaft relative to the crankshaft.  A VCT system makes this adjustment by either advancing or retarding the angular position of the camshaft relative to the crankshaft.  VCT systems existed for decades before BorgWarner entered the field in the early 1990s.

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

There are basically two types of VCT systems.  Both share the common aspect of effecting a phase change by forcing oil between vane lobes or pistons in a housing at the end of a camshaft.  Where the systems radically differ, however, is in the energy source used to pressurize the oil and thus in the oil flow path used to generate the phase change.  OPA systems use an "external" energy source such as the engine oil pump to pressurize the oil to make the phase change. CTA systems, in contrast, use an "internal" energy source such as internal camshaft torque pulsations (sometimes referred to as camshaft torque reversals) to pressurize the oil to make the phase change.  Because the energy source is different in each approach, they use very different oil flow principles to effect the phase change, as explained in more detail below.[2]  BorgWarner's technology, as reflected in the '738 patent specification and prosecution history, uses the CTA internal energy and oil flow approach.

### 1.    The CTA Design:  BorgWarner

CTA systems expressly avoid using engine oil pump pressure to create the phase change, instead using camshaft torque pulsations as the energy source.  Periodic camshaft torque pulsations naturally occur during rotation of the camshaft.  This periodic torque

---

[2]  BorgWarner's own patent publications recognize this dichotomy.  As recently stated in U.S. Patent publication US 2006/0086332 (Ex. 2): "Two types of phasers are Cam Torque Actuated (CTA) and Oil Pressure Activated (OPA).  In OPA … the engine oil pressure is applied to one side of the vane or the other … to move the vane.  … In a CTA phaser, the variable cam timing system uses torque reversals in the camshaft … to move the vane.  … The CTA phaser has oil input to make up for losses due to leakage, *but does not use engine oil pressure to move the phaser*." (¶¶ 0006-0007; emphasis added.).  *See also* BorgWarner U.S. Patent No. 5,289,805 (Ex. 3), which shows in Fig. 11 the same basic vane-based CTA system as shown in the '738 patent: "The present invention is designed to overcome these problems associated with prior art variable camshaft timing arrangements by providing a self-actuating, variable camshaft timing arrangement *which does not  require external energy for the operation thereof*…" (*Id.*, at 1:58-62).  "The vane 60 is alternating[ly] urged in clockwise and counter clockwise directions by the torque pulsations in the camshaft 26 and these torque pulsations tend to oscillate the vane 60 and, thus, the camshaft 26 relative to the sprocket 32." (*Id.*, at 10:3-7).

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

pressurizes oil inside the chambers and a spool valve directs movement of the pressurized oil from one chamber to another.

The '738 patent discloses two alternative mechanical arrangements for its CTA: (a) opposing hydraulic cylinders, and (b) vane lobes in chambers. Both structures are adopted from earlier BorgWarner patents. In fact, the '738 patent uses the same basic drawings from these earlier patents, which illustrate the same vane lobe/check valve mechanism to move the camshaft.[2] Rather, the allegedly new aspects of the invention were the details of the spool valve and the solenoid.[3]

Fig. 19 of the '738 patent, shown below, illustrates the vane version of the CTA system disclosed in the '738 patent. This system includes a housing 132 mounted on the end of a camshaft. Attached to the end of the camshaft is a vane 160, having lobe 160a extending into recess 132a in housing 132 and lobe 160b extending into recess 132b in housing 132. The crankshaft is connected to housing 132 by a chain or belt. Through these connections, rotation of vane 160 varies the angular position of the camshaft relative to the crankshaft.

---

[2] *See* U.S. Patent No. 5,002,023 (the "'023 patent") (Ex. 4) (disclosing CTA VCT using piston-cylinder approach); U.S. Patent No. 5,107,804 (the "'804 patent") (Ex. 5) (disclosing CTA VCT vane approach). Both of these patents expressly distinguish CTA systems from OPA systems. *See* '023 patent at 1:35-60 and 2:20-35; '804 patent at 1:45-2:2 and 2:40-56.

[3] What was described as novel in the '738 patent was not the vane lobe/check valve mechanism used in the claimed method, but instead the control system: "More specifically, the present invention relates to a *control system which utilizes a variable force solenoid to directly control the position of a fully vented spool valve* which is an useful part of the hydraulic system." '738 patent at 1:24-27 (emphasis added). Nothing was new about the "variable force solenoid" ("VFS") either, as it also was well-known in the automotive art.

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION



FIG. 19

Recesses 132a/b are filled with oil pressurized by camshaft torque pulsations. Each of lobes 160 a/b has an active side with check valves 184a, 186a in the flow path that cooperate with spool valve 192 that releases oil pressure on one side of one lobe 160a/b to allow the cam torque pulsations to move the vane via the shifting of the oil. Each lobe 160a/b also has a passive side with no check valves that merely shifts the oil back and forth to follow the movement of the active side of the lobe. The basic "mechanism" to shift the camshaft is the vane lobe/check valve assembly and the flow path through the spool valve.

Notably, the VCT does not rely on oil flow from the main engine oil circuit (including the engine oil pump) to the VCT mechanism to change the phase. Spool valve

6

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

192 (which includes spool 200 moving in spool valve body 198) either allows the pressurized oil from recess 132b to flow into recess 132a through check valve 184a (thereby applying pressure on lobe 160a and rotating it clockwise) or allows the pressurized oil from recess 132a to flow into recess 132b through check valve 186a (thereby applying pressure on lobe 160b and rotating it counterclockwise).

The two drawings below illustrate operation of the CTA system disclosed in the '738 patent.



To rotate the camshaft counter-clockwise (left picture), the solenoid moves the spool to the right within spool valve body. This releases the oil pressure in the top yellow chamber, allowing cam torque pulsations to push oil from that chamber to the lower yellow chamber via the spool valve and the left check valve which is pushed open. (The right check valve has balanced pressure across it and remains closed.) Oil is thus "supplied" from the top yellow chamber to the bottom yellow chamber until the desired

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

counterclockwise rotation of the vane (and hence the camshaft) is achieved, whereupon the spool moves again to the middle position, stopping the flow.

Similarly, to rotate the camshaft clockwise (right picture), the solenoid moves the spool to the left.  This releases the oil pressure on the lower yellow chamber, allowing the cam torque to push oil from that chamber to the top yellow chamber via the spool valve and the right check valve which is pushed open.  (The left check valve has balanced pressure across it and remains closed.)  Oil is thus "supplied" from the bottom yellow chamber to the top yellow chamber until the desired clockwise rotation of the vane (and hence the camshaft) is achieved, whereupon the spool moves again to the middle position, stopping the flow.

Importantly, the energy source for the phase change is internal[4] to the VCT and is the cam torque pulsations, as confirmed by BorgWarner itself.  *See also* n.2.  Oil pressurization is thus done internal to the CTA actuator via the cam torque.  In carrying out the phase change in a CTA system, pressurized oil only flows internal to the VCT mechanism, it does *not* have to flow to or from the main engine oil circuit.  Any oil provided by the main oil gallery to the vane lobe/check valve mechanism is limited to make-up oil, *i.e.*, making up oil that has leaked from that mechanism.[5]  The CTA system,

---

[4]    *See* '738 Patent at 9:7-15: "The vane 160 is alternatingly urged in clockwise and counterclockwise *directions by the torque pulsations* in the camshaft 126 and these torque pulsations tend to oscillate vane 160, and, thus, camshaft 126, relative to sprocket 132. However, in the spool position shown in FIGS. 19 and 20, such oscillation is prevented by the hydraulic fluid within recesses 132a, 132b of sprocket 132 on opposite sides of lobes 160a, 160b, respectively, of vane 160, because no hydraulic fluid can leave either recesses 132a or 132b."

[5]    *See* '738 Patent at 7:10-13: "Check valves 184, 186, thus, permit the initial filling of recesses 132a, 132b and provide for a continuous supply of make-up hydraulic fluid to compensate for leakage therefrom."; 9:42-50: "Further, inlet line 182 is provided with extension 182a to the non-active side of one of lobes 160a or 160b, shown as lobe 160b, to permit a continuous supply of make-up oil to the non-active sides of lobes 160a, 160b for better rotational balance, improved damping of vane motion, and improved lubrication of the bearing surfaces of vane 160. The flow

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

by its camshaft torque source of energy and internal oil flow, directly contrasts with an OPA system.

### 2.    OPA Systems Rely on External Oil Pressure and Flow

In contrast to CTA systems, OPA VCT systems use "external" pressurized oil directly from the engine oil pump to rotate the camshaft relative to the crankshaft. A phase shift between the camshaft and crankshaft requires that pressurized oil from an external engine oil pump be sent to the VCT mechanism. A valve directs this external flow to the vane lobes or pistons to create a phase change. BorgWarner has rejected OPA type VCT systems since the 1980s and instead adopted the CTA approach. By contrast, Hitachi has embraced the OPA approach, which existed in the prior art before the '738 patent.

### a)    The Strauber Prior Art Patent

U.S. Patent No. 5,012,774 to Strauber (Ex. 6) illustrates the basic OPA design and operation. During prosecution of the '738 patent, BorgWarner repeatedly distinguished its claimed CTA system from Strauber's OPA system, arguing to the U.S. Patent and Trademark Office ("PTO") that "the Strauber et. al. system controls the ***flow of oil both internal and external to the VCT mechanism***. The present invention, however, controls the ***flow of oil internal to the VCT mechanism only***." Responses of 6/30/94 and 11/7/94 and Appeal Brief of 5/24/95 (Ex. 7 at BW 2191, emphasis added). Below is Fig. 1 from Strauber and a colorized diagram (including depiction of the main engine oil circuit) showing the oil flow for changing the phase in the Strauber VCT system:

---

of make-up oil does not affect, and is not affected by, the operation of electromechanical actuator 201. Make-up oil will continue to be provided to lobes 160a and 160b."

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION



In the Strauber VCT system, pressurized engine oil (shown in red) flows from the main engine oil circuit (including engine oil pump labeled "MOG") to oil line 26 (called a "longitudinal oil bore") in camshaft 11. This pressurized oil flows to spool 17 (called a "control piston") via oil lines 27-29. *See* Ex. 6, Strauber at 3:38-43. Spool 17 is movable to control pressurized oil flow from the main engine oil circuit/engine oil pump to either working chamber 15 or to working chamber 16, depending on whether the camshaft angle should be advanced or retarded.

In its initial position, spool 17 allows pressurized oil from the engine oil circuit/engine oil pump to flow directly to first working chamber 16. *Id.*, at 3:38-49. The oil path from the engine oil circuit/engine oil pump to first working chamber 16 includes annular groove 29, circumferential oil groove 18 and oil feed bore 30 which leads to first working chamber 16. *Id.* The pressurized oil flowing into first working chamber 16 "results in the actuator 6 being brought **by the oil pressure** into its initial position." *Id.* at 3:49-51 (emphasis added). In other words, pressurized oil flowing from the engine oil

10

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

circuit/engine oil pump flows to and provides the energy to bring the VCT mechanism into its initial position. *See* Ex. 6, Strauber at 1:58-62. As pressurized engine oil flows into first working chamber 16, oil is simultaneously drained from second working chamber 15 and returned to the engine oil circuit/oil sump. *Id.* at 3:54-61. Thus, oil flows into first working chamber 16, and at the same time, oil is drained from the second working chamber 15 to move actuator 6 to change the angle of the camshaft relative to the crankshaft.[6]

To change the angle of the camshaft relative to the crankshaft in the opposite direction, spool 17 is moved to the right, to allow pressurized oil from the engine oil circuit/engine oil pump to flow into second working chamber 15, and oil in first working chamber 16 is drained to the engine oil sump. *Id.* at 3:62-4:23.

As shown above, the Strauber prior art VCT uses pressurized engine oil from the engine oil pump to create the phase change. Strauber controls the flow of oil both internal and external to the VCT mechanism, *i.e.*, internal flow that occurs in the VCT mechanism and external flow from the engine oil circuit/oil pump.

### b)    Engines With Hitachi's OPA VCT Components

Representative depictions of Hitachi's VCT components (actuator and solenoid valve) in a car are shown below along with a cross-sectional view of the components and their attachment to the engine.[7] Unless otherwise indicated, the accused engines having Hitachi's VCTs share the following common features relevant to the present motion: A

---

[6]    The movement of actuator 6 causes certain teeth to move relative to one another to thereby rotate camshaft 11 relative to the crankshaft. *Id.* at 4:20-23.

[7]    The structure and operation of Hitachi's devices is confirmed in the Declarations of Yoshinori Ichinosawa (Ex. 8) and Toshiro Ichikawa (Ex. 9). As noted *supra*, Hitachi does not supply such parts as the crankshaft, camshaft or timing chain, which are made by or obtained by the automobile manufacturers.

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

VCT actuator is mounted on one end of an intake camshaft. (Ex. 8, Ichinosawa Dec. ¶ 6.)

The actuator has a housing with a sprocket and a vane that is integral with the camshaft

and rotatable relative to the housing. *Id.* at ¶ 7.  The housing sprocket is chained to the

crankshaft sprocket, so that rotation of the crankshaft causes the housing, and therefore the

camshaft, to rotate.  *Id.*  The relative rotation between the housing and vane rotor allows

the system to alter the angular relationship or phase between the camshaft and crankshaft.

(Ex. 8, Ichinosawa Dec. ¶ 8.)



   The drawing below illustrates the oil flow path in the Hitachi OPA type VCT.

Pressurized oil flows from the engine oil pump (labeled "MOG/Pump") to the VCT

actuator to vary the angular position of a camshaft relative to a crankshaft.  *Id.* at ¶ 9.

Depending on the position of a spool in a solenoid valve, pressurized oil (yellow with red

arrows) from the oil pump pushes against one side of each vane lobe.  In addition, oil

(shown in blue with black arrows) on the other side of the vane lobes drains back to the oil

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

sump (see label "Drain to Sump"). The device does not rely on cam torque pressure to change the phase, and shifting dedicated and isolated supplies of oil back and forth from the sides of one set of lobes to push against the sides of another set of lobes. Instead, oil is pumped from the oil sump when the solenoid valve opens to one side of the vane lobes with oil from the other side of the lobes simply draining into the oil sump to be later pumped throughout the engine. *Id* at. ¶ 11.



### (1)    Hitachi's Actuator Housing and Vane

Hitachi's actuator housing body has certain hydraulic chambers. (Ex. 8, Ichinosawa Dec. ¶ 12.) The vane rotor is secured to one end of the intake camshaft by a bolt. Each vane lobe divides a corresponding one of the hydraulic chambers in the housing into an advance chamber and a retard chamber. *Id.* Each sliding portion between the housing and vane rotor is provided with a seal. *Id.* Relative to the crankshaft, the camshaft is "advanced" when pressurized engine oil flowing from the engine oil pump flows to the advance chamber through an advance oil passage, with oil being simultaneously drained to the oil sump from the retard chamber. *Id.* at ¶ 13. Conversely, the camshaft is "retarded" relative to the crankshaft when pressurized engine oil flowing from the engine oil pump

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

flows to the retard chamber through a retard oil passage, with oil being simultaneously drained to the oil sump from the advance chamber. (Ex. 8, Ichinosawa Dec. ¶ 14.)



Consistent with being an OPA system, Hitachi's VCT system is inoperative at start-up because the engine oil pressure is too low to rotate the vane. *Id.* at ¶ 16. As such, the Hitachi VCT system uses a stopper pin (also called a "lock pin") to hold the system in a retard position until oil pressure in the engine builds to the level required to rotate the vane. *Id.* at ¶ 17. The Hitachi lock pin is shown below.



The lock pin is forced downward towards an opening in the rear cover (a stopper hole) by a return spring. *Id.* at ¶ 18. When the return spring holds the lock pin in the lock pin hole, the vane is locked to the rear cover so that the vane and housing cannot rotate relative to one another, thus preventing any adjustment of the phase angle between the camshaft and crankshaft. *Id.* at ¶ 19. To unseat the lock pin, a forward end receives

14

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

pressurized oil from the advance chamber (see "oil from advance chamber" notation) or from the retard chamber (see "oil from the retard chamber" notation).  For example, if following engine start-up, and only after sufficient oil pressure has built up in the engine, it is desired to advance the camshaft, pressurized engine oil from the engine oil pump is forced into the advance chamber.  This oil flow unseats the lock pin and allows the relative phase angle between the camshaft and crankshaft to be adjusted.  *Id*. at ¶ 20.

### (2)     The Solenoid Valve :  The Spool

The solenoid valves used in the Hitachi VCT system also are consistent with an OPA design.  A representative solenoid valve used in a Hitachi VCT system is shown below.  It includes a solenoid portion, and a spool in a valve body.  The valve body (*i.e.*, the housing formed around the spool) is formed with radially extending holes defining passageways extending through the valve body. (Ex. 9, Ichikawa Dec. ¶ 6.)  The interior passages allow pressurized oil to flow from the engine oil pump to either the advance or retard chambers to provide an energy source to rotate the vane and, thereby, either advance or retard the camshaft relative to the crankshaft. *Id*. at ¶ 7.  As such, the valve body includes passages that lead directly to the advance and retard chambers with no check valves.

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION



The valve body also includes drain ports, so that oil draining from the advance and retard chambers drains back to the engine oil sump. *Id*. at ¶ 8. A solenoid (discussed *infra*), in response to pulse width modulation ("PWM") voltage signals from an engine control module ("ECU"), directs movement of the spool. The spool is a solid structure and does not have an internal passage. *Id*. at ¶ 9.

If the solenoid is not energized, a coil spring forces the spool into the "retard" position (to the right in the drawing). Pressurized engine oil flows from the engine oil pump to the retard chamber and oil in the advance chamber drains back to the oil sump via one of the drain passages. *Id*. at ¶ 10. In addition, axial grooves or an opening exists in the valve body near the right end of the spool, which permits oil to flow into the solenoid portion. (Ex. 9, Ichikawa Dec. ¶ 13.) By energizing the solenoid, the spool is moved (to the left in the drawing). Pressurized engine oil from the engine oil pump is switched to flow to the advance chamber and oil in the retard chamber drains back to the oil sump via one of the drain passages. *Id*. at ¶ 11. Spool position is not determined just by armature force and spring force because flow forces can also affect spool position. *Id*. at ¶ 12.

**REDACTED**

**REDACTED**

REDACTED

REDACTED

**REDACTED**

**REDACTED**

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

## IV.    SUMMARY JUDGMENT OF NON-INFRINGEMENT IS APPROPRIATE

### A.    The Legal Standard On Summary Judgment

Summary judgment is appropriate when the evidence of record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998).  Where warranted, summary judgment promotes judicial economy and prevents unnecessary trials.  *See EMI Group North Am., Inc. v. Intel Corp.*, 157 F.3d 887, 891 (Fed. Cir. 1998).  Even where summary judgment does not eliminate all issues, it serves the valuable purpose of narrowing the issues for trial.

Summary judgment is mandated by Rule 56(c) when a party fails to establish support for an essential element of that party's case:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex*, 477 U.S. at 322.  "The burden on the moving party may be discharged by 'showing'-- that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case."  *Id*. at 325.  As noted *supra*, BorgWarner bears the burden of proof on this issue; and, while Hitachi will demonstrate the complete absence of infringement, it is not Hitachi's burden to do so.

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

**B.    The Standards For Patent Infringement**

**1.    Direct Infringement**

Because Claims 10 and 11 are method claims, the only possible direct infringement in this case is either by: (a) "use" of those methods by drivers in the United States of automobiles made by Ford, Honda, and Nissan that incorporate the components of Hitachi Ltd.'s accused OPA VCT system; or, (b) "use" by Ford, Nissan North America, and/or Honda of the foregoing automobiles. However, there *is no basis whatsoever* for any direct infringement claim against Hitachi Ltd. or HAP as they do not make, use, or sell automobiles practicing the method of Claims 10 and 11 in the United States (or anywhere else) and do not even make all of the parts required to practice the methods, *e.g.*, camshafts and crankshafts that are made by the automobile companies or other suppliers. As such, summary judgment is compelled, in favor of Hitachi, that it has not directly infringed asserted claims 10 or 11.

Regarding BorgWarner's claims against third-parties for direct infringement, literal infringement under 35 U.S.C. § 271(a) requires that each and every step of the recited method must be practiced in the United States. *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005) (stating that "[w]e therefore hold that a process cannot be used 'within' the United States as required by section 271(a) unless each of the steps is performed within this country"); *see also Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1268 (Fed. Cir. 1999).

In the absence of literal infringement, infringement under the "doctrine of equivalents" occurs only in limited circumstances where there are "insubstantial differences" between the patent claims and the accused product or method. *See Warner-Jenkinson Co. Inc. v. Hilton-Davis Chemical Co.*, 520 U.S. 17, 39-40 (1997); *see also Day*

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

*Int'l, Inc. v. Reeves Bros., Inc.*, 260 F.3d 1343 (Fed. Cir. 2001). There are, however, several restrictions that may make the doctrine of equivalents unavailable as matter of law.

First, the "All Elements" Rule specifically precludes the doctrine of equivalents where it would "entirely vitiate a particular claim element." *See Warner-Jenkinson*, 520 U.S. at 39 n.8 ( "Where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment"). If an element is completely missing, for example, the doctrine of equivalents does not apply. *See Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998) ("If a theory of equivalence would vitiate a claim limitation . . . there can be no infringement under the doctrine of equivalents as a matter of law."); *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1333 (Fed. Cir. 2001) (noting that "All Elements" Rule is a legal issue ripe for adjudication on summary judgment).

Second, under the doctrine of prosecution history estoppel, when a claim is narrowed by amendment for any reason related to patentability, a presumption of no equivalents exists for that claim, which may be overcome only on certain limited bases. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 740-41 (2002). Also, prosecution history estoppel applies to prevent application of the doctrine of equivalents where the patentee has disavowed coverage during prosecution. *Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1302, 1305-07 (Fed. Cir. 2005) ("Prosecution history estoppel is a legal limitation on the doctrine of equivalents").

Third, the doctrine of equivalents cannot be applied in a manner that causes the scope of the claim to encompass the prior art. *Wilson Sporting Goods Co. v. David Geoffrey & Associates*, 904 F.2d 677, 684 (Fed. Cir. 1990).

**CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION**

If the uncontroverted record demonstrates that the Ford, Honda, and Nissan automobiles that use Hitachi's VCT components (actuators and solenoid valves), ECUs, or sensors do not practice even one element of any step, or do not use the required apparatus elements, then there is no direct infringement as a matter of law and the Court should grant summary judgment. *See Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001) ("Summary judgment of non-infringement is appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, since such failure will render all other facts immaterial*."); see also Novartis Corp. v. Ben Venue Labs.*, Inc., 271 F.3d 1043, 1046 (Fed. Cir. 2001) ("Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of non-infringement may meet its initial responsibility . . . by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case.").

## 2.    Indirect Infringement

An essential element of indirect infringement (*i.e.*, contributory or inducement of infringement under 35 U.S.C. §§ 271(b) and (c)) is an act of direct infringement by a third party. *See Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 n.5 (Fed. Cir. 1994) ("Of course, a finding that a claim has been infringed is a necessary prerequisite to finding that there has been an act constituting an inducement to infringe under § 271(b)."); *see also Serrano v. Telular Corp.*, 111 F.3d 1578, 1583 (Fed. Cir. 1997) ("There can be no contributory infringement without direct infringement."). Thus, absent direct infringement of method claims 10 and 11 by Nissan, Ford and/or Honda automobiles driven in the United States containing the accused VCTs, there can be no indirect infringement by Hitachi.

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

**C.    Hitach Has Not Infringed Claims 10 and 11 of the '738 Patent**

**1.    No Direct Infringement Under 35 U.S.C. § 271(a)**

**a)    No Literal Infringement**

Based on the facts recited above, an engine having the Hitachi OPA VCT (actuator/solenoid), ECU and sensors, does not practice the methods of Claims 10 and 11. Hitachi sets forth in tabular form below those claims, along with Hitachi's proposed construction of each element. In the third column of the table is a summary of the reasons, based upon the evidence discussed *supra*, why that particular claim element is not found in engines using Hitach's OPA VCT.

| CLAIM 10 | HITACHI'S PROPOSED CONSTRUCTION | REASON MISSING FROM ENGINE WITH HITACHI'S OPA VCT (ACTUATOR/SOLENOID) |
|---|---|---|
| In an internal combustion engine having a **variable camshaft timing system for varying the phase angle of a camshaft relative to a crankshaft,** | **A system in which the angular position of a camshaft relative to a crankshaft is varied in reaction to camshaft torque reversals.** | An engine with Hitachi's OPA VCT **does not** vary the position of the camshaft relative to the crankshaft by camshaft torque reversals, but instead by engine oil pressure. |
| a method of **regulating the flow of hydraulic fluid** | A method of **directing the flow of oil "internal to the VCT mechanism only" i.e., internal to the VCT actuator, in order to change the phase angle of a camshaft relative to a crankshaft.** | An engine with Hitachi's OPA VCT **does not** direct the flow of oil "internal to the VCT mechanism only," but instead directs the flow of oil "internal and external" to the VCT mechanism, *i.e.*, from the main oil gallery ("MOG") to the VCT actuator together along with oil being drained to the oil sump, in order to change the phase angle of a camshaft relative to a crankshaft. |
| from a **source** | A **supply volume of oil located in a recess on one side of certain of the lobes of a vane in a housing (or piston-cylinder) and pressurized primarily by camshaft torque**. | An engine with Hitachi's OPA VCT **does not** use oil on one side of certain vane lobes pressurized by camshaft torque, but instead pressured oil supplied by the MOG is provided to all of the vane lobes to change the phase. |
| to a **means for transmitting rotary movement from said crankshaft to a housing**, comprising the steps of: | § 112 ¶ 6 function is transmitting rotary movement from said crankshaft to a housing. § 112 ¶ 6 "means" structure is, according to the specification: **A sprocket attached to the housing and a chain or belt** | * For overall "regulating" phrase, an engine with Hitachi's OPA VCT **does not** regulate the flow of oil from a source to a chain/belt and sprocket or Section 112, ¶ 6 equivalents thereof as part of a phase change, but instead directs the flow of oil "internal and |

**CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION**

| CLAIM 10 | HITACHI'S PROPOSED CONSTRUCTION | REASON MISSING FROM ENGINE WITH HITACHI'S OPA VCT (ACTUATOR/SOLENOID) |
|---|---|---|
| | **attaching the sprocket to a crankshaft, or the equivalents under § 112 ¶ 6.** | external" to the VCT mechanism *i.e.*, from the MOG to the VCT actuator together with oil being drained to the oil sump, in order to change the phase angle of a camshaft relative to a crankshaft. |
| sensing the relative positions of said camshaft and said crankshaft; | | |
| **calculating a relative phase angle between said camshaft and said crankshaft,** said calculating step using an engine control unit for processing information obtained from said sensing step, | **Calculating, using an ECU, the desired relative phase angle between the camshaft and crankshaft** using the sensed positions of the camshaft and crankshaft. | An engine with Hitachi's OPA VCT **does not** calculate the desired relative phase angle using the sensed camshaft position,                   **REDACTED** |
| said engine control unit further issuing a **electrical signal corresponding to said phase angle;** | **A current control signal issued by the ECU corresponding to the desired relative phase angle between the camshaft and crankshaft.** | An engine with Hitachi's OPA VCT **does not** use a current control signal for the ECU, but instead uses a **PWM voltage signal** of varying duty cycle. |
| controlling the position of a **vented spool** slidably positioned within | **A spool having: (a) an internal passage passing through each end of the spool and leading to atmosphere to eliminate any influence on spool movement due to oil pressure, and (b) an annular recess allowing the flow of oil.** | An engine with Hitachi's OPA VCT **does not** have an internal passage passing through each end of the spool and leading to atmosphere. **REDACTED** engines do not have an internal spool passage that leads to atmosphere to eliminate any influence on spool movement due to oil pressure. Instead, disturbances such as oil pressure may influence spool movement. |
| a spool **valve body** | **A housing in which the vented spool axially moves.** | |
| said controlling step being in response to said signal received from said engine control unit, said controlling step **utilizing an electromechanical actuator to vary the position of said vented spool,"** | **Using an electromechanical device to change the position of the vented spool, in response to the current control signal from the ECU.** | An engine with Hitachi's OPA VCT **does not** use a current control signal for the ECU, to change the position of its (unvented) spool, but instead uses a **PWM voltage** control signal to change the position of that spool. |
| said electromechanical actuator comprising a **variable force** | The electromechanical device includes a **solenoid driven by a non-PWM, current control** | An engine with Hitachi's OPA VCT **does not** use a solenoid driven by a non-PWM current control signal from the |

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

| CLAIM 10 | HITACHI'S PROPOSED CONSTRUCTION | REASON MISSING FROM ENGINE WITH HITACHI'S OPA VCT (ACTUATOR/SOLENOID) |
|---|---|---|
| solenoid; | signal from the ECU with the force applied by the solenoid proportionally varying with the magnitude of the current control signal. | ECU, but instead use a solenoid driven by a **PWM voltage** control signal. |
| supplying hydraulic fluid from said source through said spool valve to a | Directing the flow of oil "internal to the VCT mechanism only" from the "source" to the "means for transmitting" to allow cam torque pulsations to rotate the vanes (or shift the piston-cylinder), | An engine with Hitachi's OPA VCT **does not** direct the flow of oil "internal to the VCT mechanism only" to vary the position of the camshaft relative to the crankshaft by camshaft torque reversals, but instead directs the flow of oil "internal and external" to the VCT mechanism, *i.e.*, from the MOG to the VCT actuator together with oil being drained to the oil sump, in order to change the phase angle of the camshaft relative to the crankshaft by engine oil pressure. |
| means for transmitting rotary movement to said camshaft | [§ 112 ¶ 6 function is transmitting rotary movement to the camshaft. § 112 ¶ 6 "means" structure is:]<br><br>(a) **the sides of the lobes in the vane (or piston-cylinder) and the corresponding adjacent areas of the housing opposite to the supply volume sides of other lobes in the vane (or piston-cylinder); and**<br>(b) **check valves that upon the axial movement of the annular recess, permit oil from the supply volumes to flow unidirectionally into (a) such that cam torque pulsations may rotate the vanes to change the phase angle of the camshaft relative to the crankshaft, or the equivalents under § 112 ¶ 6.** | An engine with Hitachi's OPA VCT **does not** have the same or Section 112, ¶ 6 equivalent.<br><br>An engine with Hitachi's OPA VCT **does not** utilize check valves (or any equivalents) permitting unidirectional oil flow into certain sides of the non-supply volume vane lobes so that cam torque pulsations may rotate the vanes to change the phase angle of the camshaft relative to the crankshaft. Instead, an engine with Hitachi's OPA VCT flows pressured oil from the MOG to either the advance or retard chambers and does not use check valves as claimed. |
| said spool valve selectively allowing and blocking flow of | The oil is supplied as defined in Term 4a, with: (a) **the oil from the "source" to the "means for** | An engine with Hitachi's OPA VCT **does not** have oil flow from the "source" to the "means for transmitting" via inlet |

**CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION**

| CLAIM 10 | HITACHI'S PROPOSED CONSTRUCTION | REASON MISSING FROM ENGINE WITH HITACHI'S OPA VCT (ACTUATOR/SOLENOID) |
|---|---|---|
| **hydraulic fluid through an inlet line and through return lines**; and | **transmitting" flowing via an inlet line and one of two return lines opened and closed responsively to selective axial movement of the annular recess in the spool,  and (b) the inlet and return lines being  attached between the spool valve body and the "means for transmitting."** | and return lines that are opened and closed responsively to axial movement of the annular recess in the spool. Further, an engine with Hitachi's OPA VCT **does not** have inlet and return lines attached between a spool valve body and "means for transmitting." Instead, in an engine with Hitachi's OPA VCT, oil flows from an engine oil pump, which is external to the VCT mechanism.  Further, other oil drains from advance/retard chambers to an oil sump external to the VCT mechanism. The engine oil pump cannot be the recited "source."  In a phase change, oil flow from the advance/retard chamber is drained to an oil sump; it is **not** *supplied* to any asserted "means for transmitting." An engine with Hitachi's OPA VCT **does not** have return lines in the supply path from any asserted "source" to any asserted "means for transmitting." Further, the drain lines (which are not return lines) are not between any asserted spool valve body and the asserted "means for transmitting." |
| **transmitting rotary movement to said camshaft in such a manner as to vary the phase angle of said camshaft with respect to said crankshaft, said rotary movement being transmitted through a housing, said housing being mounted on said camshaft, said housing further being rotatable with said camshaft and being oscillatable with respect to said camshaft**. | **Transmitting rotary movement to the camshaft to vary the phase angle of the camshaft relative to the crankshaft.  The rotary movement is transmitted through a housing mounted on the camshaft.  The housing can rotate with and oscillate relative to the camshaft.** | |

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

| CLAIM 11 | HITACHI'S PROPOSED CONSTRUCTION | REASON MISSING FROM ENGINE WITH HITACHI'S OPA VCT (ACTUATOR/SOLENOID) |
|---|---|---|
| The method of claim 10, wherein said variable force solenoid comprises: | | An engine with Hitachi's OPA VCT does not use a "variable force solenoid" for the reasons outlined above. |
| a coil, said coil being **adapted to receive said electrical signal from said engine control unit**; | A coil **that receives the current control signal from the ECU.** | Solenoid valves in engines with Hitachi's OPA VCT **do not** use a non-PWM current control signal from the ECU to drive the solenoid, but instead use a **PWM voltage** signal to drive the solenoid. |
| an armature, said armature being substantially surrounded by said coil, said armature being **connected** to said spool, said coil, when energized, creating a magnetic field sufficient to cause | **Physically attached**. | Solenoid valves in engines with Hitachi's OPA VCT **do not** use an armature that is physically attached to the spool.  Instead, the spool is not physically attached at all to the armature. |
| **said armature to exert a force upon said spool and induce movement in said spool, said movement corresponding to said signal from said engine control unit;** | **The armature applies a force on the spool in an amount that is proportionally related to the magnitude of the current control signal sent by the ECU.** | Solenoid valves in engines with Hitachi's OPA VCT **do not** use an armature that applies a force on the spool in an amount that is proportionally related to the magnitude of the current control signal sent by the ECU.  Instead, the force is related to the PWM voltage signal. |
| an air gap, **said air gap separating said coil from said armature**; and, | **A fixed space or gap in the structure between the coil and the armature, extending the length of the armature, without magnetic bearing material between the coil and the armature, and with air in the gap during operation.** | Solenoid valves in engines with Hitachi's OPA VCT **do not** use a structure with a fixed space or gap in the structure between the coil and the armature, extending the length of the armature, without magnetic bearing material between the coil and the armature, and with air in the gap during operation.  Instead, the solenoid valves in such engines have magnetic material extending between the coil and armature (including the front core and the rear core) and oil flows at places between the coil and armature during operation. |
| a housing, said housing providing an enclosure for said coil, said armature, and said air gap. | | Solenoid valves in engines with Hitachi's OPA VCT **do not** use a housing that provides an enclosure for an "air gap" as recited. |

As can be seen from the above chart, there is no genuine issue of material fact that the operation of engines with Hitachi's OPA VCT (actuators and solenoids) are missing numerous elements required by the asserted claims.  An engine with Hitachi's OPA VCT

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

operates on a fundamentally different basis than the claimed CTA VCT.  There is thus no literal infringement.

### b)    No Infringement Under the Doctrine of Equivalents

There also is no infringement under the doctrine of equivalents for several reasons. *First*, Hitachi's OPA system is not "insubstantially different" from the  '738 CTA VCT. The energy sources are different, the oil flow paths are different and various features of the claimed CTA VCT (*e.g.* check valves) are simply not required, and thus have no equivalent, in Hitachi's OPA VCT.  These facts are demonstrated by a comparison of the diagrams below.



**CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION**

BorgWarner itself stressed the differences in energy source and oil flow between CTA and OPA VCTs in the background references incorporated in the '738 patent. *See* '023 patent (Ex. 4) at 1:35-60 and 2:20-35; '804 patent (Ex. 5) at 1:45-2:2 and 2:40-56. *J & M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1368 (Fed. Cir. 2001) (stating that "[s]tructure expressly disclaimed in the specification, of course, cannot be considered an equivalent under the doctrine of equivalents.").

*Second*, Claim 10 was substantially amended during prosecution, eliminating BorgWarner's ability to assert the doctrine of equivalents under *Festo*[10] for at least the preamble, the variable force solenoid, and the supplying step (which includes the "means for transmitting rotary movement to said camshaft," which requires the CTA VCT mechanism).[11] During prosecution, BorgWarner had an interview with the PTO Examiner, where it agreed to amend the claims to cover a "unified invention." Ex. 10. Based upon this agreement, on November 23, 1993, BorgWarner amended application claim 11 (later issuing as claim 10) to address the Examiner's prior art concerns. Ex. 11, p. BW 2135. BorgWarner's amendments, which incorporated the oil flow patterns and disclosed structure of the '738 patent for rotating the camshaft into the claim language, are shown below using underlining (additions) and brackets (deletions):

> 10. [Application Claim 11]  In an internal combustion engine having a variable camshaft timing system <u>for varying the phase angle of a camshaft relative to a crankshaft</u>, a method of regulating the flow of hydraulic fluid <u>from a source to a means for transmitting rotary movement from said crankshaft to a housing</u>, comprising the steps of:

_____

[10]  BorgWarner has never contended that any of the narrow *Festo* exceptions applies in this case.

[11]  *See Biagro*, 423 F.3d at 1305-07 (applying the *Festo* presumption to limit the range of equivalents).

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

sensing the positions of [a] <u>said</u> camshaft and [a] <u>said</u> crankshaft;

calculating a relative phase angle between said camshaft and said crankshaft, said calculating step using an engine control unit [to] <u>for</u> process<u>ing</u> information obtained from said sensing step, said engine control unit <u>further</u> issuing a electrical signal corresponding to said phase angle; [and,]

controlling the position of a vented spool slidably positioned within a spool valve body, said controlling step being in response to said signal received from said engine control unit, said controlling step utilizing an electromechanical actuator to vary the position of said vented spool [whereby allowing or preventing flow of hydraulic fluid through said valve body]<u>, said electromechanical actuator comprising a variable force solenoid;</u>

<u>supplying hydraulic fluid from said source through said spool valve to a means for transmitting rotary movement to said camshaft, said spool valve selectively allowing or blocking flow of hydraulic [sic] through an inlet line and through return lines; and,</u>

<u>transmitting rotary movement to said camshaft in such a manner as to vary the phase angle of said camshaft with respect to said crankshaft said rotary movement being transmitted through a housing said housing being mounted on said camshaft, said housing further being rotatable with said camshaft and being oscillatable with respect to said camshaft</u>.

These amendments significantly narrowed the scope of asserted claim 10. Despite these extensive amendments, the Examiner did not allow the claims. Ex. 12, p. BW 2149. Instead, he issued an Office Action on January 4, 1994, rejecting all of the claims over certain prior art, including U.S. Patent No. 5,012,774 to Strauber ("Strauber"). Ex. 12, p. BW 2150.

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

In a reply dated June 30, 1994, BorgWarner argued against the prior art rejections to all pending claims, specifically distinguishing the "claimed invention" of the '738 patent from Strauber as follows:

> Further, the *Strauber* et al. system controls the flow of oil both *internal and external* to the VCT mechanism. The *present invention*, however, controls the flow of oil *internal to the VCT mechanism only*. (emphasis added)

BorgWarner repeated its clear assertion of how its claimed invention differed from Strauber two more times in later arguments to the PTO.[12]   BorgWarner was clear and unambiguous about its assertion.  Moreover, BorgWarner's argument was directed to the previously amended preamble phrase "regulating the flow of oil from a source to a means for transmitting rotary movement from a crankshaft to a housing" and the amended "supplying" step which recites that the spool valve selectively allows and blocks oil flow through an inlet and through return lines.  The phrase "regulating the flow of oil" tracks precisely BorgWarner's prosecution statement "controls the flow of oil."  BorgWarner's remarks were further tied to the added claim phrase "said spool valve selectively allowing and blocking flow of hydraulic fluid through an inlet line and through return lines," which directly speaks to controlling the flow of oil.

---

[12]  An August 1, 1994 Office Action again rejected all pending claims under Section 103 as being obvious based upon a combination of prior art, including Strauber.  BorgWarner responded on November 7, 1994, in which it "reassert [its] position that Strauber et al. does not teach what the Examiner suggests" because, *inter alia*, this reference "controls the flow of oil both internal and external to the VCT mechanism," while **"[t]he present invention, however, controls the flow of oil internal to the VCT mechanism only**."  (Ex. 13, at p. BW 2169; emphasis added).  Likewise, an December 15, 1994 Office Action, the Examiner again rejected all claims under Section 103, based upon the same prior art, including Strauber.  This time, BorgWarner appealed the Examiner's decision to the PTO Board of Patent Appeals and Interferences.  In its Appeal Brief, filed May 24, 1995, BorgWarner argued for the third time that its invention "**controls the flow of oil internal to the VCT mechanism only**," as opposed to Strauber, which "controls the flow of oil both internal and external to the VCT mechanism."  (Ex. 7, at p. BW 2191; emphasis added.)

**CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION**

Consideration of Strauber demonstrates that the precise difference BorgWarner argued to the PTO to distinguish Strauber's OPA VCT applies to the Hitachi system. The Strauber system controls the oil flow both internal and external to the VCT mechanism. The "external" flow is from the MOG/Oil Pump, which is external to the VCT mechanism. In Strauber, discussed in detail above, pressurized engine oil flows from the engine oil pump to a first working chamber and provides the energy to bring the VCT mechanism into its initial position. At this same time, oil in the second working chamber drains back to the engine oil sump. To change the angle of the camshaft relative to the crankshaft, a control piston is moved to the right, to allow pressurized oil from the engine oil circuit/engine oil pump to flow into the second working chamber and oil in first working chamber is allowed to simultaneously drain back to the engine oil sump. Strauber thus controls oil flow that is both internal to the VCT mechanism (in and out of the working chambers) and external to the VCT mechanism (from and to the main engine oil circuit/engine oil pump).

Just like Strauber, the Hitachi OPA VCT also controls oil that flows both internal and external to the VCT mechanism, as shown below:

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION



The analogous oil flow patterns in both the Hitachi and Strauber VCT systems are in direct contrast to the "internal only" oil flow in the '738 claimed method. The claimed method controls the flow of oil internal to the VCT mechanism only, by directing oil flow from one chamber to the other, without the oil having to flow from the MOG to the VCT mechanism and without oil in one of the chambers having to drain back to the oil sump. The claimed flow of claim 10 for changing the phase is shown in the colored diagrams at the beginning of the section.

BorgWarner's disclaimer was direct and clear, and prosecution history estoppel therefore prevents it from gaining equivalents to a VCT system like Hitachi's that controls flow that is both internal and external to the VCT mechanism.[13]

As for the "variable force solenoid" limitation, in addition to the fact that this limitation was amended into claim 10 and repeatedly argued during prosecution (thereby

---

[13]  *See Day Int'l*, 260 F.3d at 1350 ("With respect to the magistrate judge's grant of summary judgment of noninfringement under the doctrine of equivalents, we conclude that Day's disavowal of the prior art temperatures during the prosecution of the '928 patent constitutes prosecution

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

giving rise to prosecution history estoppel), the '738 patent specifically differentiated variable force solenoids from PWM solenoids, so the doctrine of equivalents cannot be extended to cover Hitachi's PWM solenoids.[14]

There are several reasons why there can be no infringement under the doctrine of equivalents for the "means for transmitting rotary movement to said camshaft" limitation. This limitation was added during prosecution for reasons relating to patentability, and following *Festo*, BorgWarner cannot overcome the presumption barring equivalents. In addition, it is a means-plus-function limitation and Hitachi's accused VCT lacks the same or any Section 112, ¶ 6 equivalent to the corresponding structure disclosed in the '738 patent. Because Hitachi's OPA VCT does not use after-developed technology, there can be no infringement under the doctrine of equivalents. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1310 (Fed. Cir. 1998). Using engine oil pump pressure and external flow to change the phase and without internal check valves in the VCT was well known in the art at the time of filing the '738 patent application. *See* Strauber. Further, the Hitachi OPA VCT is entirely missing internal check valves, as further mentioned below.

*Third*, the doctrine of equivalents does not apply to claim elements for which there is no corresponding portion in the accused method, *i.e.*, the limitation is entirely missing. *See Warner-Jenkinson*, 520 U.S. at 39 n.8. This includes: (i) "regulating the flow of hydraulic fluid from a source to a means for transmitting rotary movement from said

---

history estoppel, and hence, it should not be allowed to recapture subject matter that it has previously surrendered.").

[14] *O.I. Corp. v. Tekmar Co., Inc.*, 115 F.3d 1576, 1584 (Fed. Cir. 1997) (holding no infringement under the doctrine of equivalents because a difference between claimed invention and accused device is what patentee indicated in specification as basis for distinguishing the prior art).

CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION

crankshaft to a housing" (which refers to regulating the flow of fluid from a source to a chain/belt and sprocket); (ii) "calculating a relative phase angle . . . using an engine control unit for processing information obtained from said sensing step" (which requires calculating the desired relative phase angle using the sensed camshaft position), and (iii) the check valves of the "means for transmitting rotary movement to said camshaft" recited in claim 10. The accused engines are entirely missing these limitations.

*Fourth*, Hitachi's solenoid armature, which is "*disconnected*" from the spool, cannot meet the requirement that the armature is "*connected*" to the spool under the doctrine of equivalents for the simple reason that an opposite cannot be an equivalent. *See Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) (finding that a "minority" cannot be equivalent to the recited "majority" under the doctrine of equivalents, because they are opposites). In addition, rather than having an "air gap" *separating* the coil from the armature, the Hitachi's solenoid has magnetic bearing material (including the front core and rear core) extending between the coil and armature.

*Fifth*, Hitachi's OPA VCT does not have a vented spool. This is an express structural limitation in claim 10 to which the public is entitled to rely upon, and having an opening in the valve body (*not* the spool) as with Hitachi's structure was entirely foreseeable. Therefore, no equivalents exist. *See Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1425 (Fed. Cir. 1997). Moreover, the specification repeatedly states movement of the spool is entirely independent of oil pressure. '738 patent at 8:9-11, 29, and 60-66. The Hitachi products have oil passages that lead oil to the ends of the spool. Oil flows to the ends of the spool, precisely what the '738 patent avoids. This means no equivalents exists. *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1319 (Fed. Cir. 2006).

**CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION**

In sum, any assertion of infringement by BorgWarner under the doctrine of equivalents necessarily fails.

> **2.     No Indirect Infringement Under 35 U.S.C. § 271(b) or 35 U.S.C. § 271(c)**

There is likewise no indirect infringement under inducing or contributory infringement theories. It is axiomatic that there can be no indirect infringement as a matter of law in the absence of direct infringement.[15] Thus, to the extent that the Court finds that there is no direct infringement, it also has to find no indirect infringement.

## V.     CONCLUSION

For each and all of the foregoing reasons, Hitachi respectfully submits that the Court grant summary judgment that Hitachi has not infringed the '738 patent.

ASHBY & GEDDES

/s/ *Tiffany Geyer Lydon*
_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiffs Hitachi, Ltd. and.*
*Hitachi Automotive Products (USA), Inc.*

---

[15]  *See Zenith Labs.*, 19 F.3d at 1423 n.5 ("Of course, a finding that a claim has been infringed is a necessary prerequisite to finding that there has been an act constituting an inducement to infringe under § 271(b)."); *see also Serrano*, 111 F.3d at 1583 ("There can be no contributory infringement without direct infringement.").

**CONTAINS HITACHI CONFIDENTIAL AEO INFORMATION**

*Of Counsel:*

Kenneth E. Krosin
Michael D. Kaminski
Pavan K. Agarwal
C. Edward Polk
Foley & Lardner LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007–5109
(202) 672–5300

William J. Robinson
Foley & Lardner LLP
2029 Century Park East Blvd., Ste. 3500
Los Angeles, CA 90067-3021
(310) 277-2223

Dated: October 4, 2006
173863.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of October, 2006, the attached **REDACTED PUBLIC**

**VERSION OF PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR**

**SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '738 PATENT** was served

upon the following counsel of record in the manner indicated:

Richard K. Herrmann, Esquire                    HAND DELIVERY
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19801


Hugh A. Abrams, Esquire                         VIA FEDERAL EXPRESS
Sidley Austin LLP
One South Dearborn Street
Chicago, IL  60603




                                   /s/ John G. Day
                                   _____
                                   John G. Day

154486.1