# Exhibit 6

# United States Patent [19]

## Strauber et al.

[11] Patent Number: 5,012,774

[45] Date of Patent: May 7, 1991

[54] **DEVICE FOR THE RELATIVE ANGULAR ADJUSTMENT OF A CAMSHAFT**

[75] Inventors: Hans-Jürgen Strauber, Stuttgart; Robert Niklas; Rolf Ohlendorf, both of Weinstadt; Wolfgang Speier, Tübingen, all of Fed. Rep. of Germany

[73] Assignee: Daimler-Benz AG, Fed. Rep. of Germany

[21] Appl. No.: 486,933

[22] Filed: Mar. 1, 1990

[30]     **Foreign Application Priority Data**

Mar. 4, 1989 [DE]  Fed. Rep. of Germany ....... 3907077

[51] Int. Cl.5 ............................. F01L 1/34; F01L 1/46
[52] U.S. Cl. ............................. 123/90.17; 123/90.31
[58] Field of Search ............... 123/90.11, 90.12, 90.15, 123/90.17, 90.31

[56]         **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,978,829 | 9/1976 | Takahashi et al. | 123/90.15 |
| 4,231,330 | 11/1980 | Garcea | 123/90.15 |
| 4,494,496 | 1/1985 | Nakamura et al. | 123/90.15 |
| 4,811,698 | 3/1989 | Akasaka et al. | 123/90.17 |
| 4,841,924 | 6/1989 | Hampton et al. | 123/90.15 |
| 4,889,086 | 12/1989 | Scapecchi et al. | 123/90.31 |
| 4,895,113 | 1/1990 | Speier et al. | 123/90.17 |
| 4,903,650 | 2/1990 | Ohlendorf et al. | 123/90.17 |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3316162 | 11/1983 | Fed. Rep. of Germany . | |
| 3247916 | 6/1984 | Fed. Rep. of Germany . | |
| 0017214 | 1/1985 | Japan | 123/90.17 |
| 0134012 | 5/1989 | Japan | 123/90.17 |

*Primary Examiner*—David A. Okonsky
*Assistant Examiner*—Weilun Lo
*Attorney, Agent, or Firm*—Evenson, Wands, Edwards, Lenahan & McKeown

[57]         **ABSTRACT**

The invention relates to a device for angularly adjusting an internal combustion engine camshaft in relation to a crankshaft and comprises an adjusting bushing connected to the camshaft, with an input sleeve surrounding said bushing, and with an actuator displaceably arranged there between. An input sleeve, the actuator, and the adjusting bushing are each provided with helical gear teeth to translate axial shifting of the actuator into relative rotation between the camshaft and crankshaft. In order to prevent rattling noises in the gear teeth that are caused by changing moments in the drive of the camshaft, the actuator is guided in stop-free fashion. A stop, which is effective between the input sleeve and camshaft, limits the angular adjustment so that the actuator is stressed between the input sleeve and camshaft to avoid backlash during rattling.

**6 Claims, 1 Drawing Sheet**





Fig. 1

Fig. 2

5,012,774

1

## DEVICE FOR THE RELATIVE ANGULAR ADJUSTMENT OF A CAMSHAFT

### BACKGROUND AND SUMMARY OF THE INVENTION

The invention relates to a device for the relative angular adjustment of an internal combustion engine camshaft in relation to its crankshaft wherein an adjusting bushing is rotationally fixed on the input end of the camshaft and has external gear teeth. An input sleeve with internal gear teeth surrounds the adjusting bushing and is connected to an input gear. An actuator is displaceably arranged between the input sleeve and adjusting bushing and has double gear teeth, one in engagement with the internal gear teeth of the input sleeve and, the other in engagement with the external gear teeth of the adjusting bushing and wherein at least one gear teeth pair is designed with helical teeth. A spring holds the actuator in an initial position and rotational movement of the camshaft is limited by a stop.

A device of this general construction is known from DE-OS 3,316,162. In this device, an actuation path of the actuator arranged between input sleeve and adjusting bushing is limited by stops. Here, the stops are effective between the actuator and adjoining components of the device. Due to this arrangement of the stops, stressing of the gear teeth between input sleeve and adjusting bush is not possible. This has the disadvantage that in the end positions of the actuator, rattling noises can occur in the gear teeth due to backlash arising from production tolerances.

An object on which the invention is based is to create a device for relative angular adjustment of a camshaft and crankshaft in which stressing is achieved in the gear teeth between an input sleeve and adjusting bushing in at least an end position of the actuator.

This object is achieved by virtue of having the stop mechanism act between the input sleeve and the adjusting bushing.

By shifting of the stop away from the actuator, the actuator can move in the gear teeth in a stop-free fashion in at least one adjustment direction. Limiting the adjusting movement in one end position is achieved by having the stop act between the input sleeve and camshaft. As a result, the actuator is pressed into the gear teeth of the input sleeve and camshaft, which are blocked with respect to one another by the stop when the actuator is moved into an end position under the pressure of a spring or some other control means, e.g. under the pressure of the lubricating oil from the lubricating oil circuit.

The backlash is bridged by virtue of the resulting stressing in the gear teeth and the occurrence of rattling noises is avoided in an advantageous manner.

It has been found that the rattling noises are strongest in the starting and idling phase of the internal combustion engine. In these operating phases, the adjusting device is in a so-called initial position, (i.e. the angular adjustment between input sleeve and camshaft is equal to zero and the camshaft is set to "retard") and the actuator is in an end position. To eliminate rattling noises in this initial position of the device, it is sufficient if the stop is effective between the input sleeve and camshaft. The actuator is stop-free in its corresponding other end position.

An embodiment of the stop which is space-saving as regards construction and favorable in terms of produc-

2

tion is obtained by having the stop formed by at least one driving tooth arranged on the input sleeve to engage in a corresponding recess on a part of the camshaft, or vice versa. A clearance is provided between flanks of the driving tooth and contact faces of the recess. The angular clearance distance substantially corresponds to the angular adjustment of the camshaft. The adjusting bushing has a disc-shaped flange which is bolted to a corresponding counter-flange on the input end of the camshaft. The input sleeve is rotatably supported on an outer cylindrical surface of the flange and rests against a collar of the flange. The collar projects radially from the outer surface and the driving tooth engages (as an axial prolongation of the input sleeve) into an open edge of the recess provided on the collar.

Other objects, advantages and novel features of the present invention will become apparent from the following detailed description of the invention when considered in conjunction with the accompanying drawings.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 shows the device for the angular adjustment of the camshaft in a longitudinal section,

FIG. 2 shows the arrangement and design of the stop between input sleeve and camshaft, in a section II—II from FIG. 1.

### DETAILED DESCRIPTION OF THE DRAWINGS

FIG. 1 shows a device for the angular adjustment of a camshaft in relation to a crankshaft driving the latter. An input gear 1 is driven via a chain (not shown) from a crankshaft (not shown) and is seated on an input sleeve 3 provided with internal gear teeth 2. An annular actuator 6 is connected internally to the input sleeve 3 via corresponding external gear teeth 4 and is arranged so as to be axially displaceable and rotatable with respect to the input sleeve 3. On its inside, the actuator 6 has gear teeth 7 which are positively engaged with external gear teeth 8 on an adjusting bushing 9 so as to be axially displaceable and rotatable with respect to the busing. This adjusting bushing 9 has a flange 12 which is attached to a counter-flange of a camshaft 11 via a screwed connection 10. The input sleeve 3 is rotatably supported on a radial outward edge 43 of the flange 12, arranged at the camshaft end of the adjusting bushing 9, and on a cover 14 facing a crankcase part 13. Together, the cover 14, input sleeve 3, adjusting bushing 9 and camshaft 11 form an annular chamber, which is divided by longitudinally displaceable annular actuator 6 into two working chambers 15 and 16.

In order to achieve an angular displacement of the camshaft 11 with respect to the crankshaft, an axial displacement of the actuator 6 is necessary and is obtained by having at least one gear teeth pair 2,4 or 7,8 being designed with helical gear teeth. In the present example, both gear teeth pairs are provided with opposing helical gear teeth.

The division of the one necessary helical gear teeth set into the two helical gear teeth sets 2,4 and 7,8 shown, permits a reduction in the helix angle of each of the individual helical gear teeth sets necessary to obtain an identical longitudinal adjustment path. In this way it is possible to achieve a large range for the angular adjustment with a simultaneously short axial adjustment

5,012,774

3

path. This allows for a short space-saving embodiment of the adjustment device.

A control piston 17 is inserted into the hollow adjusting bushing 9 and is rotatable and displaceable in the direction of its longitudinal axis. The piston has a circumferential oil groove 18 and is spring biased into an initial position toward the camshaft 11 by a spring 20 supported on one end 19 of the adjusting bushing 9 to bear against the piston 17. An armature 21 of an electromagnet 22 (fixed to the engine) is connected via a screwed connection 23 to the side of the control piston which faces away from the camshaft 11. The electromagnet 22 is designed as an annular magnet into which the armature 21 is inserted with freedom to rotate. The electromagnet is connected electrically to a control device (not shown) via a terminal 24. Upon application of an electric voltage to the electromagnet 22 by the control device, the rotating armature 21 is caused to move toward the electromagnet 22 and to carry the control piston 17, connected firmly to it and counter to the force of the spring 20, out of its initial position into a working position, in which the control piston 17 rests against a face 25 of the adjusting bushing 9. Face 25 of the adjusting bushing 9 is situated opposite its camshaft 11 end. The position of this face 25 is chosen so that the axial adjustment path of the control piston 17 is limited, so that in its working position, the armature 21 will not come into contact with a housing part of the electromagnet 22. In this way no friction occurs between the rotating armature 21 and the stationary housing 13 of the crankcase. The control piston 17 remains in this working position for as long as voltage is applied to the electromagnetic 22 and only returns to its initial position towards the camshaft 11 through force of the spring 20 once this voltage has been switched off.

In the de-energized condition of the electromagnet 22, the control piston 17 is held by the force of the spring 20 in its initial position. Lubricating oil passes under pressure from the engine oil circuit into the circumferential oil groove 18 of the control piston 17 via a longitudinal oil bore 26 in the camshaft 11, a connecting bore 27 and an oil bore 28, having a circumferential annular groove 29 in the flanged shaft. The adjusting bushing 9 has a radial oil feed bore 30 which leads to the first working chamber 16 and when the piston 17 is in its right-most position, the bore 30 is connected to the oil groove 18. The oil discharge bore 31 of the working chamber 16 is simultaneously closed by virtue of the position of the control piston 17. This results in the actuator 6 being brought by the oil pressure into its initial position, located away from the camshaft 11. Oil in the second working chamber 15 is unpressurized in this position, since the second oil feed bore 32 is closed by the control piston 17. The oil in chamber 15 can pass out of the working chamber 15, via the gear teeth set 2,4, the oil bore 5 in the actuator 6, the second gear teeth set 7,8 and a second, radial oil discharge bore 33 in the adjusting bushing 9 and into a longitudinal bore 36 of the control 17 via radial bores 35 and then through a channel 37, arranged in the camshaft 11, from whence it flows back to the engine oil circuit.

The adjustment of the device into the working position is initiated by the control device that actuates the electromagnet 22 to attract the armature 21 and the control piston 17 (counter to the force of the spring 20) until said control piston comes to rest with its shoulder against a face 25 of the adjusting bushing 9. Pressurized oil from the engine oil circuit passes out of the longitu-

4

dinal oil bore 26 of the camshaft 11 and into the circumferential oil groove 18 of the control piston 17. Due to the changed position of the control piston 17, the oil feed bore 30 leading to the working chamber 16 is closed but oil discharge bore 31 is open. During the adjustment movement of the actuator 6, oil in working chamber 16 can be forced out via this bore 31 and a control piston chamber 36 on the camshaft side into the channel 37 and be passed back to the engine oil circuit. Also the drain of oil from the second working chamber 15 via the longitudinal bore 36, the radial bores 35 and the control piston 17 is rendered impossible by the position of the control piston 17. The pressurized oil passes out of the circumferential oil groove 18, via the open second oil feed bore 32 leading to the oil bore 5 of the actuator 6 and into working chamber 15. During this procedure, the actuator 6 is displaced axially towards the camshaft 11 and, as described above, forces oil out of working chamber 16. Due to the helical gear teeth sets 2,4 and 7,8 the bushing 19 and camshaft 11, connected thereto, undergo a relative rotation in relation to the driven input gear 1 during the longitudinal displacement of the actuator 6. However, this working position of the actuator 6 is only retained for as long as the electromagnet 22 is supplied with voltage via the control device. When the electromagnet 22 is switched off, the control piston 17 is pushed into its initial position according to FIG. 1 by the spring 20 and the rotation of the camshaft 11 is reversed so as to be moved into its initial position by the renewed longitudinal displacement of the actuator 6 and the consequent rotation of the bushing 9.

The cover 14 has a recess 38 on its side facing the actuator 6. This provides a gap 39 between the end of the gear teeth sets 2,4 or 7,8 and the cover 14, by virtue of which the actuator 6 can be moved in stop-free fashion when moved out of the working position (illustrated) into the initial position drawn in chain-dotted lines. In the initial position, the angular adjustment between input gear 1 and camshaft 11 is equal to zero. This position between input gear 1 and camshaft 11 is blocked by a stop 40, which is effective between the adjusting bushing 9 and the input sleeve 3. The stop 40 simultaneously prevents a further movement of the actuator 6 in the direction of the cover 14 and the rotation of the gear teeth. However by virtue of the gap 39, the actuator 6 can (in the initial position) be pressed into the gear teeth by the control medium in working chamber 16 until any backlash present is bridged and stressing between the tooth flanks is achieve. Thus occurrence of rattling noises is thereby excluded.

In the starting and idling phase, the device is in the initial position shown in FIG. 1. In the starting phase, the control pressure in working chamber 16 is still not sufficiently high to be able to force the actuator 6 into the gear teeth.

To compensate for this lack of control pressure, a compression spring 41 is arranged in working chamber 16 to bias the rotor 6 to the left. Spring 41 is supported on the adjusting bushing 9 and on the actuator 6 to press the actuator 6 into the gear teeth. Thus it is ensured that rattling of the device is avoided even in the starting phase. Since according to the embodiment in FIG. 1, the actuator 6 is displaced into the initial and working position by means of the control medium, the spring 41 is designed in such a way that its thrust is just sufficient to hold the actuator 6 in the initial position.

5,012,774

5

The input sleeve 3, rotatably supported on a cylindrical outer surface 42 of the flange 12 of the adjusting bushing 9, is guided in the axial direction between the cover 14 and a collar 43 projecting radially from the outer surface 42 of the flange 12.

According to FIG. 2, the stop 40 comprises a recess 44 in the collar 43 of the flange 12. The recess 44 is open at a radial edge and a driving tooth 45 on the input sleeve 3 engages thereinto. The driving tooth 45 is designed in simple manner as an axial extension of the input sleeve and has two end stop flanks 46 and 47. Stop flank 46 rests against a contact face 48 of the recess 44 in the initial position of the device. The width of the recess is of such a length that there is still a space corresponding to the angle of adjustment of the camshaft 11 between stop flank 47 and an opposite contact face 49 of the recess 44. As a result, the actuator 6 is fixed by the stop 40 even in the working position and can thus be held in stop-free fashion even in this position. By means of this stop 40, it is possible to prevent rattling noises which occur in the initial and working position.

To prevent the noises, it is sufficient, within the context of the invention, if the actuator 6 is only held in stop-free fashion in the initial position and if the stop 40 in the arrangement according to the invention is then designed in such a way that the input sleeve 3 and the camshaft are only blocked in the initial position.

Although the present invention has been described and illustrated in detail, it is to be clearly understood that the same is by way of illustration and example only, and is not to be taken by way of limitation. The spirit and scope of the present invention are to be limited only by the terms of the appended claims.

What is claimed:

1. A device for adjusting an angular position of an internal combustion engine camshaft in relation to the engine crankshaft comprising:

an adjusting bushing which is rotationally fixed on an input end of the camshaft and has external gear teeth;

an input sleeve connected to an input gear;

said input sleeve surrounding the adjusting bushing and having internal gear teeth;

an actuator displaceably arranged between the input sleeve and the adjusting bushing to be displaced from an initial position to a working position;

said actuator having two sets of gear teeth, one set in engagement with the internal gear teeth of the input sleeve and the other set in engagement with the external gear teeth of the adjusting bushing;

wherein at least one of said engaging gear teeth is designed as helical teeth;

a spring means for holding the actuator in its initial position;

wherein the rotational adjustment of the camshaft is limited by a stop means; and

wherein the stop means acts between the input sleeve and the adjusting bushing.

2. Device according to claim 1 wherein the stop is formed by at least one driving tooth arranged on the input sleeve to engage in a corresponding recess on a part of the adjusting bushing;

6

wherein the driving tooth has two flanks;

wherein there is a clearance provided between the flanks and contact faces of the recess;

and wherein said clearance is of an angular distance substantially corresponding to the angular adjustment of the camshaft.

3. Device according to claim 1 wherein the stop is formed by at least one driving tooth arranged on the adjusting bushing to engage in a corresponding recess on a part of the input sleeve;

wherein the driving tooth has two flanks;

wherein there is a clearance provided between the flanks and contact faces of the recess; and

wherein said clearance is of an angular distance substantially corresponding to the angular adjustment of the camshaft.

4. Device according to claim 1, wherein the rotational fixing of the adjusting bushing to the camshaft is provided by a disc-shaped flange formed by the adjustable bushing which is bolted to a corresponding counter-flange on the input end of the camshaft;

wherein the input sleeve is rotatably supported on an outer cylindrical surface of the flange and rests against a collar of the flange;

wherein said collar projects radially from the outer surface;

wherein the stop means is a driving tooth formed by an axial prolongation of the input sleeve to engage into the recess provided on the collar; and

wherein said recess is open at an edge to allow for engagement of the driving tooth.

5. Device according to claim 2, wherein the rotational fixing of the adjusting bushing to the camshaft is provided by a disc-shaped flange formed by the adjustable bushing which is bolted to a corresponding counter-flange on the input end of the camshaft;

wherein the input sleeve is rotatably supported on an outer cylindrical surface of the flange and rests against a collar of the flange;

wherein said collar projects radially from the outer surface;

wherein the driving tooth is formed by an axial prolongation of the input sleeve to engage into the recess provided on the collar; and

wherein said recess is open at an edge to allow for engagement of the driving tooth.

6. Device according to claim 3, wherein the rotational fixing of the adjustment bushing to the camshaft is provided by a disc-shaped flange portion of the adjustable bushing which is bolted to a corresponding counter-flange on the input end of the camshaft;

wherein the input sleeve is rotatably supported on an outer cylindrical surface of the flange and rests against a collar of the flange;

wherein said collar projects radially from the outer surface;

wherein the driving tooth is formed by an axial prolongation of the adjusting bushing to engage into the recess provided on the input sleeve; and

wherein said recess is open at an edge to allow for engagement of the driving tooth.

* * * * *

# Exhibit 7



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of:            :    Group Art Unit: 3402
                                 :
EDWARD C. SIEMON, ET AL.         :
                                 :
Serial No. 08/056,635            :    Examiner: W. Lo
                                 :
Filed: May 3, 1993               :
                                 :
For: VCT CONTROL WITH A          :    Attorney Dkt. No. 91016A
     DIRECT ELECTRO-             :
     MECHANICAL ACTUATOR         :

Commissioner of Patents and Trademarks
Washington, D.C. 20231

ATTENTION:  Board of Patent Appeals and Interferences

## APPEAL BRIEF

Dear Sir:

   This brief, which is transmitted in triplicate, is in
furtherance of the Notice of Appeal filed March 15, 1995,
for the above-mentioned application.  Accompanying this
brief is a Transmittal of Appeal Brief which indicates that
the fees required under 37 C.F.R. §1.17(f) and for any
extension of time petitioned for in the Transmittal should
be charged to Deposit Account No. 02-3182.

   This brief contains the following items under the
headings and in the order set forth below pursuant to 37
C.F.R. §1.192(c):

        1.   Status of Claims
        2.   Status of Amendments
        3.   Summary of Invention
        4.   Issues
        5.   Grouping of Claims

27162  06/12/95  08056635      02-3182  270  119      280.00CH

BW 002184

6.    Arguments & Conclusion
7.    Appendix A & B

The final page of this brief contains the attorney's signature.

## STATUS OF CLAIMS

The total number of claims at issue in the application is 14. Claims 1-11 and 13-15 are pending in this application and are on appeal. Originally filed Claims 12 and 16-22 were cancelled.

## STATUS OF AMENDMENTS

After numerous telephones conversations with the Examiner, a preliminary amendment was filed on November 23, 1993. The purpose of the preliminary amendment was to avoid a double patenting obviousness rejection which the Examiner stated he would mail if the application remained unchanged.

Over the course of the telephone conversations, the Examiner stated that: (1) Claims 1-10 were allowable, provided that the application be converted into a continuation-in-part and a terminal disclaimer and supplemental declaration were filed; (2) Claims 11-15 needed more detail; (3) Claims 16-22 should be cancelled, since their scope exceeded that of internal combustion engine art.

Accordingly, Applicant: (1) amended the application to convert it to a continuation-in-part (of co-pending application Serial No. 940,273, filed on September 3, 1992, now U.S. Patent No. 5,218,935, granted on June 15, 1993), filed a terminal disclaimer, and filed a supplemental declaration; (2) cancelled Claim 12 and included its limitations into amended Claim 11 to provide a narrower method claim; and, (3) cancelled Claims 16-22.

Ultimately, the Examiner and counsel for Applicant could not agree on the telephone to claims language which would put the application in a condition for allowance.

2

BW 002185

A second amendment was filed June 30, 1994 in response to an Office Action (Paper No. 12) mailed January 4, 1994. In that amendment, Applicant: (1) clarified certain ownership issues raised by the Examiner; (2) amended Claims 1, 5, 10, 11, 14, and 15 to correct typographical and administrative errors; and, (3) made arguments in favor of allowability in response to the Examiner's rejection under 35 U.S.C. §103 as obvious over Linder, et al., Butterfield, et al., and Strauber, et al.

On November 1, 1994, a third amendment was filed in response to an Office Action (Paper No. 14) mailed August 1, 1994. In that amendment, Applicant: (1) made arguments in favor of allowability in response to the Examiner's rejection under 35 U.S.C. §103 as obvious over Linder, et al., Butterfield, et al., Strauber, et al., and an additional reference, Hendrixon, et al.

On March 15, 1995, a Notice of Appeal was filed in response to a Final Office Action (Paper No. 16) mailed December 5, 1994.

## SUMMARY OF THE INVENTION

The present invention is one of a family of devices relating to a variable camshaft timing (VCT) system. The VCT system relies on hydraulic forces to vary the phase angle of the camshaft(s) of an automotive engine relative to the crankshaft.

The present invention provides an improved method and apparatus for controlling the position of a vented spool in a hydraulic control valve in a VCT system, for example, a hydraulic control valve similar to the one used in an oppositely-acting hydraulic cylinder VCT timing system of the type disclosed in U.S. Patent 5,002,023, or a hydraulic control valve similar to the one used in a vane-type VCT timing system of the type disclosed in U.S. Patent 5,107,804.

The control system of the present invention, i.e., use of an electromechanical actuator, eliminates the hydraulic

3

BW 002186



force on one end of the spool resulting from directly applied hydraulic fluid from the engine oil gallery at full hydraulic pressure, $P_1$, utilized by previous embodiments of the VCT system. The force on the other end of the vented spool results from the electromechanical actuator, preferably of the variable force solenoid type, which acts directly upon the vented spool in response to an electronic signal issued from an engine control unit ("ECU") which monitors various engine parameters. The ECU receives signals from sensors corresponding to camshaft and crankshaft positions and utilizes this information to calculate a relative phase angle. The preferred embodiment employs a closed-loop feedback system, such as the one disclosed in U.S. Patent 5,184,578, which corrects for any phase angle error. The present invention offers an efficient and economical solution to the problems recited above, as well as additional advantages over a conventional differential pressure control system ("DPCS").

For the present invention, the VCT system used may be one previously mentioned, or any one which uses a proportional spool valve to regulate flow of engine oil to control the phase angle adjustment. The control of the position of spool 200 within member 198 is in direct response to electromechanical actuator 201, preferably a variable force solenoid, as shown in Figure 19. An electrical current is introduced via cable 238 through solenoid housing 201d into solenoid coil 201a which repels, or "pushes", armature 201b. Armature 201b bears against extension 200c of vented spool 200, thus moving vented spool 200 to the right, as oriented in Fig. 19. If the force of spring 202 is in balance with the force exerted by armature 201b in the opposite direction, spool 200 will remain in its null or centered position. Thus, vented spool 200 can be moved in either direction by increasing or decreasing the current to solenoid coil 201a, as the case may be. Of course, the configuration of solenoid 201 may be reversed, converting the force on spool extension 200c from a "push" to a "pull." This would require the function of spring 202 to be redesigned to counteract the force in the new direction of armature 201b movement. However, there are

4

instances when it is desirable for spool 200 to be forced to
the far left, or biased, position. The location of spring
202 in cavity 198c, as shown in Figure 19, or in cavity
198a, as shown in Figure 20, ensures the return of spool 200
to its biased position when there is no current applied to
solenoid coil 201a, such as periods of power failure or
engine shutdown.

The movement of armature 201b is controlled by an
electrical current applied to solenoid coil 201a in response
to a control signal from electronic engine control unit
(ECU) 208, shown schematically in Fig. 19, which may be of
conventional construction. In previous versions of the VCT
system, the force exerted against spool extension 200c must
balance with the force of spring 202 plus any system oil
pressure in cavity 198a acting on the end of land 200a if a
null position of spool 200 was desired. Problems arose when
attempting to achieve this balance because the system
included a component which could vary significantly, namely
oil pressure. The optimum solution is a control system
completely independent of variable parameters, i.e., one
independent of engine oil pressure.

In the present invention, oil pressure in cavity 198a
is relieved, leaving only the force of armature 201b to be
balanced against the force of spring 202 to achieve a null
position of spool 200. Relieving the pressure in cavity
198a may be accomplished, for example, by providing an
engine oil flow path to the vane system which bypasses spool
200, that is, does not utilize a passage internal to spool
200 to supply oil to inlet line 182, as in previous systems.
The bypass of spool 200 may be achieved by connecting bypass
line 220a directly to inlet line 182 and substituting inlet
oil check valve 222a for the check valve previously
contained in the passage internal to the spool. In
conjunction with providing an alternate flow path, venting
spool valve 198 to atmosphere via vent 198d would complete
the objective of relieving the pressure in cavity 198a which
acted on the end of land 200a in previous VCT systems.

5

BW 002188

In an alternate embodiment, lever arrangement 201e or equivalent is functionally positioned between electromechanical actuator 201 and spool 200, as shown in Figure 20. Lever arrangement 201e effectively acts as a stroke amplifier/force attenuator, allowing either a reduction in the required solenoid current or reduction in the air gap distance without sacrificing valve travel.

### ISSUES

Whether Claims 1-11 and 13-15 are unpatentable under 35 U.S.C. §103 as obvious over Linder, et al., Butterfield, et al., Strauber, et al., and Hendrixon, et al.

No claims currently stand allowed. Claims on appeal are attached for the Board's convenience (Appendix A). Copies of the Linder, et al., Butterfield, et al., Strauber, et al., and Hendrixon, et al. references are also attached (Appendix B).

### GROUPING OF CLAIMS

Appellants consider the claims to each be independently patentable in its own right. However, the following claims are all rejected for the same reasons and may be grouped together:

Claims 1-10, 11, and 13-15.

### ARGUMENTS

#### CLAIMS 1-10, 11, AND 13-15 ARE NOT OBVIOUS

Appellant respectfully appeals from Examiner's conclusion that the present application is unpatentable under 35 U.S.C. §103 as being obvious over Butterfield et al., Linder et al., Hendrixon, et al., Strauber et al., and a basic engineering principle.

#### The Cited References Do Not Precisely Teach the Functions as Stated by the Examiner

The Examiner, in his latest Office Action, first explains what each reference teaches and then applies it to the present application. Appellant respectfully submits that three of the four cited references do not precisely

6

BW 002189

teach the functions stated by the Examiner as applied to the present appication.

The Examiner states that the first reference, Butterfield et al., teaches "an internal combustion engine with a camshaft phase varying system as claimed including a vane, a housing, a spool valve, and various return lines" as well as "a lever arrangement to actuate the spool valve."

Appellants concede that the first portion of the statement made by Examiner regarding the subject matter of the invention is true. Furthermore, the second portion of the statement (regarding the lever in Butterfield et al. '659) is true, but only in general. Appellants respectfully assert the argument that, upon closer inspection, it can be seen in Figure 20 that Butterfield et al. '659 merely teaches a simple lever arm 440 for use in a situation where piston 434a is physically unable to align with free end 400c of spool 400. According to the corresponding specification, "this is an advantage when adapting the variable camshaft timing system of the present invention [Butterfield et al. '659] to some vehicle/engine configurations." In other words, lever arm 440 is used only for packaging convenience. Contrastingly, Figure 20 of the present application illustrates a complex lever arrangement 201e which is used solely to provide amplification of the force applied to spool 200. Accordingly, Appellant respectfully disagrees with Examiner's contention that Butterfield et al. '659 teaches the same lever arrangement as that described in the application now on appeal.

Furthermore, lever arrangment 201e is included only as dependent Claims 9 and 15. In the event that Claims 9 and 15 are not allowed on their own merit, Appellant respectfully requests that they be allowed in light of the allowability of independent Claims 1 and 11.

The Examiner next relies upon the Linder et al. reference, stating that it teaches a VCT system which utilizes "torque reversals and a solenoid 24 to control the flow of working fluid between two chambers 7 and 8."

7

BW 002190

Appellant respectfully asserts the position that, like Butterfield et al., Linder et al. does not teach subject matter specifically related to the present application.  In the present Office Action, Examiner states that Linder et al. is "relied upon solely to teach a solenoid control valve 24 to control the flow of the working fluid between chambers 7 and 8.".  The present application uses a proportional spool valve 200 to directly control the flow of the working fluid and a variable force solenoid 201 to control the positioning of the spool valve.  The Examiner states that "[a]ll solenoid valves are of the variable force type by nature, which depend on the voltage or current change delivered to the solenoids."  Again, Appellant disagrees. "Solenoid valves are suitable for on-off service and utilize a solenoid to move the valve disc to either the fully open or fully closed position."[1]  Accordingly, Linder et al. does not teach a variable force solenoid valve to position a proportional spool valve as in the application on appeal.

The Examiner also contends that Strauber et al. teaches "a solenoid operated spool valve to control the flow of the working fluid."  Appellant again asserts the position that the relied upon reference does not teach what Examiner proposes.  The Strauber et al. disclosure, like Linder et al., teaches a common ("on-off" only) solenoid to control a spool of a two-position only system.  Unlike Strauber et al., the present invention utilizes a variable force solenoid to control the position of a spool of a continuously variable system.  Further, the Strauber et al. system controls the flow of oil both internal and external to the VCT mechanism.  The present invention, however, controls the flow of oil internal to the VCT mechanism only.

In short, Appellant submits that three of the four references cited by Examiner do not teach what the Examiner states, as applied to the present application, and therefore should not be allowed to substantiate the Examiner's obviousness rejection.

---

[1]Sanford I. Heisler, The Wiley Engineer's Desk Reference 378 (John Wiley & Sons 1984).

8

Hindsight Rejections Are Not Allowed

Assuming for the sake of argument that all cited references (Butterfield et al., Linder et al., Hendrixon et al., and Strauber et al.) combined with the general engineering principle cited (i.e., that a lever may be used to increase force) do indeed teach the concepts suggested by the Examiner, Appellant respectfully asserts the argument that the obviousness rejection is still not valid. The Federal Circuit has ruled that:

> It is impermissible to use the claimed invention as an instruction manual or "template" to piece together the teachings of the prior art so that the claimed invention is obvious. This court has previously stated that "[o]ne cannot use hindsight reconstruction to pick and choose among isolated disclosures in the prior art to deprecate the claimed invention."

In Re Fritch, 23 U.S.P.Q.2d 1780, 1784 (Fed. Cir. 1992) (citations omitted); see also, Orthopedic Equipment Co., Inc. et al. v. U.S., 217 U.S.P.Q. 193, 199 (Fed. Cir. 1983). In the present application on appeal, the Examiner has inappropriately taken specific elements from four references (and a basic engineering principle) and used them to reconstruct the present invention and find that it is obvious.

The Hendrixon et al. Reference

The Examiner concedes that references cannot be arbitrarily combined and that there must be some motivation for one skilled in the art to combine teachings from several patents. In Re Nomiya, et al., 184 U.S.P.Q. 607, 613 (C.C>P.A. 1975) citing, Graham v. John Deere Co., 383 U.S. 1, 36, 148 U.S.P.Q. 459, 474 (1966). But Nomiya also stands for the proposition that if an invention solves a problem which was not contemplated in a prior art reference, it may be patentable. Nomiya, 184 U.S.P.Q. at 612-13. The reasoning behind this principle is that if the problem was known, a person skilled in the art would be motivated to solve it. Lacking knowledge of the problem, one skilled in the art would not be so motivated.

Appellant submits that problems caused by the VCT system dependency on engine oil pressure were not known at

9

the time of the Hendrixon et al. patent. The Hendrixon et al. invention was directed at a variable force solenoid having reduced frictional force between the moving elements resulting in the virtual elimination of hysteresis in a ball-armature position versus current. U.S. Patent No. 5,000,420, col. 2, lines 41-46. Furthermore, close inspection of the Hendrixon et al. patent reveals that there is engine oil pressure acting on the land of the spool not directly affected by the solenoid. As shown in Figure 1 of Hendrixon et al., "[m]anifold passage 86, which is interconnected to manifold passage 84, provides control pressure feedback to the face of the spool land 62." Id. at col. 4, lines 65-68. Clearly, there is engine oil present in cavity 84 at control pressure which acts on spool land 62 and counteracts the force of the solenoid on spool land 60. Given the presence of engine oil in cavity 84 acting on land 62, the Hendrixon et al. inventon could not have expected the problems caused by a VCT system dependent upon engine oil pressure.[2]

By utilizing a direct electromechanical actuator on one land of the spool in combination with relieving the oil pressure on the other land, the present invention provides a solution to problems not expected by Hendrixon et al.-- problems which are well documented and resolved in the application for the present invention. For example, the lack of normal operating oil pressure during initial engine start-up does not result in start-up error because the signal from the ECU is fed immediately to the solenoid which directly positions the spool. Other solutions to problems include: a response time faster than a purely hydraulic actuation (allowing the use of increased closed-loop gain and making the system less sensitive to component tolerances and operating environment); the elimination of chatter (resulting in a virtually noise-free system); and, use for

---

[2]See also, Ex Parte Hiyamizu, 10 U.S.P.Q. 2d 1393, 1394-95, (Bd. of Patent Appeals 1988) ("[W]here the claimed invention solves a problem, the discovery of the source of the problem and its solution are considered to be part of the 'invention as a whole' under §103.") (citations omitted).

10

BW 002193

applications where an oil-free actuator is desirable (such
as with an engine which utilizes a timing belt).

In short, Appellants respectfully submit, to combine
four references and a general engineering principle without
some suggestion of doing so is improper. Butterfield et al.
discloses a VCT system, but nothing suggests using a lever
arrangement in combination with a variable-force solenoid to
amplify the force applied to the spool valve. Nothing in
Linder et al., which discloses a device having a completely
different control system, suggests using a variable force
solenoid to position the spool and/or a lever arrangement to
amplify the force applied to the spool. Hendrixon does
teach a variable force solenoid to control fluid flow, but
in no way expected the problems of an engine oil pressure
dependent system. And nothing in Strauber et al., a two-
position only device which uses a "common" (i.e., two-
position only) solenoid, suggests using a variable force
solenoid to actuate the spool valve of a continuously
variable VCT system like the present invention.

In light of the above, Appellant respectfully submits
that the obviousness rejection is an improper "hindsight"
rejection and that Appellant, therefore, respectfully
traverses such rejection with the above arguments.

## CONCLUSION
Appellant respectfully submits that it has been shown
that: (1) three of the four references cited do not teach
the functions stated by the Examiner as applied to the
present application; (2) the present invention identifies
the source of problems not contemplated by a prior art
reference and then solves them; and (3) Appellant believes
that the rejection stated by the Examiner is an
inappropriate "hindsight" rejection. Accordingly, the Board
of Patent Appeals and Interferences is respectfully
requested to reverse Examiner's rejections of Claims 1-11

11

BW 002194

and 13-15 and allow the claims at an early date.

Respectfully submitted,

David A. Spenard
Registration No. 37,449
Attorney for Appellant

Willian Brinks Hofer Gilson & Lione
1130 Edison Plaza
Toledo, Ohio 43604-1537
(419) 244-6578
(419) 244-8862 (fax)

12

BW 002195

A

BW 002196

APPENDIX A

CLAIMS ON APPEAL

1.    An internal combustion engine, comprising:

a crankshaft, said crankshaft being rotatable about an axis;

a camshaft (126), said camshaft being rotatable about a second axis, said camshaft being subject to torque reversals during rotation thereof;

a vane (160), said vane having first and second circumferentially spaced apart lobes (160a, 160b), said vane being attached to said camshaft, said vane being rotatable with said camshaft and being non-oscillatable with respect to said camshaft;

a housing (132), said housing being rotatable with said camshaft and being oscillatable with respect to said camshaft, said housing having first and second circumferentially spaced apart recesses (132a, 132b), each of said first and second recesses receiving one of said first and second lobes and permitting oscillating movement of said one of said first and second lobes therein;

means for transmitting rotary movement from said crankshaft to said housing; and,

means for controlling the oscillation of said housing, said control means being reactive to torque reversals in said camshaft for varying the position of said housing relative to said camshaft, said control means comprising:

a spool valve body (198);

a spool (200), said spool being reciprocable within said body and having first and second spaced apart lands (200a, 200b), said spool further having a vent to atmosphere (198d);

BW 002197



a first return line means (194) extending from one of said first recess and said second recess to said spool valve body, one of said first and second lands blocking flow through said first return line means in a first range of positions of said spool within said valve body and permitting flow through said first return line means in a second range of positions of said spool within said valve body;

a second return line means (196) extending from the other of said first recess and said second recess to said valve body, the other of said first and second lands blocking flow through said second return line means in said second range of positions of said spool within said valve body, permitting flow through said second return line means in a first portion of said first range of positions of said spool within said valve body, and blocking flow through said second return line means in a second portion of said first range of positions of said spool within said valve body;

an inlet line means (182) extending from said valve body to each of said first recess and said second recess, said inlet line means permitting hydraulic fluid to flow from said valve body to said each of said first recess and said second recess regardless of the position of said spool, said inlet line means having check valve means (184, 186) for preventing the flow of hydraulic fluid from each of said first recess and said second recess to said valve body;

means for sensing (207a, 207b) the positions of said crankshaft and said camshaft;

an engine control unit (208), said engine control unit for receiving information from said sensing means and for calculating a relative phase angle between said crankshaft and said camshaft using said information;

an electromechanical actuator (201), said electromechanical actuator for controlling the position of said spool in response to a signal issued from said engine control unit; and,

2

BW 002198

means for biasing (202) said spool valve, said
biasing means for urging said spool valve to a full
advance position during periods when said electromechani-
cal actuator is deenergized.

2.   An engine according to Claim 1 wherein each of
said first and second lobes respectively divides each of
said first and second recesses into a first portion and a
second portion, each of said one of said first portion
and said second portion of said each of said first and
second recesses being capable of sustaining hydraulic
pressure.

3.   An engine according to Claim 2 wherein said
control means is capable of being reversed to transfer
hydraulic fluid out of said one of said first portion and
said second portion of said each of said first and second
recesses and to transfer hydraulic fluid into said other
of said first portion and said second portion of said
each of said first and second recesses.

4.   An engine according to Claim 3 wherein said
hydraulic fluid comprises engine lubricating oil, said
engine further comprising at least one conduit means
(230a) for transferring engine lubricating oil from a
pressurized lubricating oil source (230) to said control
means and back again in response to said torque reversals
of said camshaft.

5.   An engine according to Claim 4 further compris-
ing means for hydraulically connecting (182a) one of said
first portion and said second portion of one of said
first recess and said second recess with one of said
first portion and said second portion of the other of
said first recess and said second recess to permit
hydraulic fluid to flow between said one of said first
portion and said second portion of said one of said first
recess and said second recess and said one of said first
portion and said second portion of said other of said
first recess and said second recess.

6.   An engine according to Claim 5 further compris-

3

BW 002199



ing at least one other conduit means (220a), said other conduit means providing communication for the flow of hydraulic fluid through said valve body to said inlet line means, said other conduit means having second check valve means (222a) for preventing the flow of hydraulic fluid from said inlet line means through said valve body.

7.    An engine according to Claim 6 wherein said electromechanical actuator comprises a variable force solenoid.

8.    An engine according to Claim 7 wherein said variable force solenoid comprises:

a coil (201a), said solenoid coil for receiving an electrical current from said engine control unit;

an armature (201b), said armature being substantially surrounded by said coil, said armature being connected to said spool, said coil, when energized, for creating a magnetic field sufficient to cause said armature to exert a force upon said spool and induce movement in said spool, said movement corresponding to said signal from said engine control unit;

an air gap, said air gap for separating said coil from said armature; and,

a housing, said housing for providing an enclosure for said coil, said armature, and said air gap.

9.    An engine according to Claim 7 wherein said electromechanical actuator further comprises a stroke amplifier, said stroke amplifier providing a net gain in force as applied to said vented spool.

10.    An engine according to Claim 9 wherein said stroke amplifier comprises a lever arrangement (201e).

11.    In an internal combustion engine having a variable camshaft timing system for varying the phase angle of a camshaft relative to a crankshaft, a method of regulating the flow of hydraulic fluid from a source to a

4

BW 002200

means for transmitting rotary movement from said crank-
shaft to a housing, comprising the steps of:

sensing the positions of said crankshaft and
said camshaft;

calculating a relative phase angle between said
crankshaft and said camshaft, said calculating step using
an engine control unit for processing information ob-
tained from said sensing step, said engine control unit
further for issuing a electrical signal corresponding to
said phase angle;

controlling the position of a vented spool
slidably situated within a spool valve body, said control
being in response to said signal received from said
engine control unit, said controlling step utilizing an
electromechanical actuator to vary the position of said
vented spool, said electromechanical actuator comprising
a variable force solenoid;

supplying hydraulic fluid from said source through
said spool valve to a means for transmitting rotary
movement to said camshaft, said spool valve selectively
allowing and blocking flow of hydraulic through an inlet
line and through return lines; and,

transmitting rotary movement to said camshaft in
such a manner as to vary the phase angle of said camshaft
with respect to said crankshaft, said rotary movement
being transmitted through a housing, said housing being
mounted on said camshaft, said housing further being
rotatable with said camshaft and being oscillatable with
repsect to sand camshaft.


13.  The method of Claim 11 wherein said variable
force solenoid comprises:

a coil, said coil being adapted to receive said
electrical signal from said engine control unit;

an armature, said armature being substantially

5



surrounded by said coil, said armature being connected to said spool, said coil, when energized, creating a magnetic field sufficient to cause said armature to exert a force upon said spool and induce movement in said spool, said movement corresponding to said signal from said engine control unit;

an air gap, said air gap separating said coil from said armature; and,

a housing, said housing providing an enclosure for said coil, said armature, and said air gap.

14. The method of Claim 11 wherein said electromechanical actuator further comprises a stroke amplifier, said stroke amplifier for providing a net gain in force as applied to said spool.

15. The method of Claim 14 wherein said stroke amplifier comprises a lever arrangement.

6

BW 002202

B

BW 002203



## APPENDIX B

### AUTHORITIES CITED

1.   U.S. Patent No. 5,172,659 (Butterfield et al. '659).

2.   U.S. Patent No. 5,012,774 (Strauber et al.).

3.   U.S. Patent No. 5,056,077 (Linder et al.).

4.   U.S. Patent No. 5,000,420 (Hendrixon et al.).

5.   U.S. Patent No. 5,002,023 (Butterfield et al. '023).

6.   U.S. Patent No. 5,107,804 (Becker et al.).

7.   U.S. Patent No. 5,184,578 (Quinn, Jr. et al.).

8.   In Re Fritch, 23 U.S.P.Q.2d 1780 (Fed. Cir. 1992).

9.   In Re Nomiya, et al., 184 U.S.P.Q. 607 (C.C.P.A. 1975).

10.  Ex Parte Hiyamizu, 10 U.S.P.Q.2d 1393 (Bd. of Patent Appeals 1988).

11.  Orthopedic Equipment Co., Inc. et al. v. U.S., 217 U.S.P.Q. 193 (Fed. Cir. 1983).

12.  Sanford I. Heisler, The Wiley Engineer's Desk Reference 378 (John Wiley & Sons 1984).

# Exhibit 8

**REDACTED**

# Exhibit 9

**REDACTED**

# Exhibit 10





**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/056,635 | 05/03/93 | SIEMON    F. | 92007 |

```
                              34M2/1222
  BORG-WARNER AUTOMOTIVE, INC.
  PATENT DOCKET ADMINISTRATOR
  6760 18-1/2 MILE ROAD
  P. O. BOX 8022
  STERLING HEIGHTS, MI 48311-8022
```

| | EXAMINER |
|---|---|
| ART UNIT | PAPER NUMBER |
| 2402 | 10 |

DATE MAILED:

**EXAMINER INTERVIEW SUMMARY RECORD**    12/22/93

All participants (applicant, applicant's representative, PTO personnel):

(1) _Mr. David Spenard_    [3] _____

(2) _Ex. Weilun Lo_    [4] _____

Date of interview: _9/23/93_

Type: ☒ Telephonic   ☐ Personal (copy is given to ☐ applicant   ☐ applicant's representative).

Exhibit shown or demonstration conducted: ☐ Yes   ☒ No.   If yes, brief description: _____

Agreement ☐ was reached with respect to some or all of the claims in question.   ☐ was not reached.

Claims discussed: _All_

Identification of prior art discussed: _Art of record_

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: _Agreement was reached to provide a supplemental declaration to claim continuing status (CIP), a terminal disclaimer to 5,218,935, and amend claims to a unified invention._

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

Unless the paragraphs below have been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1~7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☐ It is not necessary for applicant to provide a separate record of the substance of the interview.

☐ Since the examiner's interview summary above (including any attachment(s)) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.

_Weilun Lo_
Examiner's Signature

PTOL-413 (REV. 1-84)

**ORIGINAL FOR INSERTION IN RIGHT HAND FLAP OF FILE WRAPPER**

BW 002147

# Exhibit 11



I HEREBY CERTIFY THAT THIS CORRESPONDENCE IS NG
DEPOSITED WITH THE UNITED STATES POSTAL SERVICE, AS
FIRST CLASS MAIL IN AN ENVELOPE ADDRESSED TO
COMMISSIONER OF PATENTS AND TRADEMARKS, WASH-
INGTON, D.C. 20231 ON __11-23-93__
(DATE OF DEPOSIT)

_Wenda J. Jasper_

__11-23-93__
DATE OF SIGNATURE

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of:            :    Group Art Unit: 3402

EDWARD C. SIEMON ET AL.          :

Serial No. 08/056,635            :    Examiner:  W. Lo

Filed:  May 3, 1992              :

For: VCT CONTROL WITH A          :    Atty. Dkt. No.: . 91016A
     DIRECT ELECTRO-
     MECHANICAL ACTUATOR          :

### PRELIMINARY AMENDMENT

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

    This paper is in response to the various telephone
conversations which have taken place between Examiner and
counsel for Applicants regarding the above-named
application.  No Office Action has been issued as of the
date of filing this paper.

### IN THE SPECIFICATION

    Applicants respectfully request that the following be
added immediately after the application title, but before
the heading "FIELD OF THE INVENTION":

CROSS REFERENCE TO CO-PENDING APPLICATION

    This application is a continuation-in-part of co-
pending application Serial No. 940,273 which was filed
September 3, 1992, now U.S. Patent No. 5,218,935, granted
June 15, 1993.

## IN THE CLAIMS

Applicants respectfully request that previously submitted Claim 12 be cancelled without prejudice.

Applicants respectfully request that Claims 11 and 13-15 be amended as follows:

11. (amended)  In an internal combustion engine having a variable camshaft timing system for varying the phase angle of a camshaft relative to a crankshaft, a method of regulating the flow of hydraulic fluid from a source to a means for transmitting rotary movement from said crankshaft to a housing, comprising the steps of:

sensing the positions of [a] said camshaft and [a] said crankshaft;

calculating a relative phase angle between said camshaft and said crankshaft, said calculating step using an engine control unit [to] for processing information obtained from said sensing step, said engine control unit further issuing a electrical signal corresponding to said phase angle; [and,]

controlling the position of a vented spool slidably positioned within a spool valve body, said controlling step being in response to said signal received from said engine control unit, said controlling step utilizing an electromechanical actuator to vary the position of said vented spool [whereby allowing or preventing flow of hydraulic fluid through said valve body.], said electromechanical actuator comprising a variable force solenoid;

supplying hydraulic fluid from said source through said spool valve to a means for transmitting rotary movement to said camshaft, said spool valve selectively allowing and blocking flow of hydraulic through an inlet line and through return lines; and.



26



transmitting rotary movement to said camshaft in such a manner as to vary the phase angle of said camshaft with respect to said crankshaft, said rotary movement being transmitted through ~~said said~~, said housing being mounted on said camshaft, said housing further being rotatable with said camshaft and being oscillatable with respect to said camshaft.

13. (amended)  The method of Claim [12] 14 wherein said variable force solenoid comprises:

a coil, said coil [for receiving] being adapted to receive said electrical signal from said engine control unit;

an armature, said armature being substantially surrounded by said coil, said armature being connected to said spool, said coil, when energized, creating a magnetic field sufficient to cause said armature to exert a force upon said spool and induce movement in said spool, said movement corresponding to said signal from said engine control unit;

an air gap, said air gap [for] separating said coil from said armature; and,

a housing, said housing [for] providing an enclosure for said coil, said armature, and said air gap.

14. (amended)  The method of Claim [13] 16 wherein said electromechanical actuator further comprises a stroke amplifier, said stroke amplifier for providing a net gain in force as applied to said spool.

15. (amended)  The method of Claim [16] 14 wherein said stroke amplifier comprises a lever arrangement.

Applicants respectfully request that previously submitted Claims 16-22 be cancelled without prejudice.

**REMARKS**

This preliminary amendment and accompanying remarks are submitted in response to the various telephone conversations between counsel for Applicants and Examiner regarding the above-named application. During those conversations the Examiner expressed his concern that the present invention was obvious over prior art, but suggested that a continuation-in-part would be considered for allowance if the proper formalities were observed. The Examiner:

1) required that a supplemental declaration be submitted;

2) required that a terminal disclaimer be submitted in light of the double patenting and obviousness issues;

3) stated that Claims 1-10 were allowable as submitted, provided the above requirements were met;

4) stated that method Claims 11-15 needed more detail before they would be allowed; and,

5) requested that Claims 16-22 be cancelled because of their scope which exceeded that of combustion engine art.

Applicants respectfully respond as follows:

1) A supplemental declaration is enclosed;

2) A terminal disclaimer is enclosed;

3) Claims 1-10 are not amended, in light of Examiner's previous comments.

4) Claims 11 and 13-15 are amended to add the detail required by the Examiner; Claim 12 is cancelled.

5) Claims 16-22 are cancelled, as requested.

A.

<u>CONCLUSION</u>

In summary, it is respectfully submitted that Applicants have properly responded to all matters which are at issue in this application and that this application is now in condition for allowance. Reconsideration of this application and allowance of all pending claims is earnestly solicited. Should Examiner require additional information or wish to discuss matters further, the undersigned attorney for Applicants is willing to do so.

Respectfully submitted,

David A. Spenard
Registration No. 37,449

William Brinks Hofer Gilson & Lione
1130 Edison Plaza
Toledo, Ohio 43604-1537
(419) 244-6578



TERMINAL DISCLAIMER

In re application of:          :  Group Art Unit:  3402

EDWARD C. SIEMON ET AL.        :

Serial No. 08/056,635          :  Examiner:  W. Lo

Filed:  May 3, 1992            :

For:  VCT CONTROL WITH A       :  Atty. Dkt. No.:  91016A
      DIRECT ELECTROMECHANICAL :
      ACTUATOR                 :

---

Petitioner, Borg-Warner Automotive, Inc., is the owner of
100 percent interest in the instant application.  Petitioner
hereby disclaims, except as provided below, the terminal part of
the statutory term of any patent granted on the instant
application, which would extend beyond the expiration date of the
full statutory term defined in 35 U.S.C. 154 to 156 and 173 as
shortened by any terminal disclaimer filed prior to the grant of
any patent granted on pending second application Number
07/940,271, filed on September 3, 1992, now U.S. Patent 5,218,935
issued June 15, 1993.  Petitioner hereby agrees that any patent
so granted on the instant application shall be enforceable only
for and during such period that it and any patent granted on the
second application are commonly owned.  This agreement runs with
any patent granted on the instant application and is binding upon
the grantee, its successors or assigns.

In making the above disclaimer, petitioner does not disclaim
the terminal part of any patent granted on the instant
application that would extend to the expiration date of the full
statutory term as defined in 35 U.S.C. 154 to 156 and 173 of any
patent granted on the second application, as shortened by any
terminal disclaimer filed prior to the patent grant, in the event
that any such granted patent:  expires for failure to pay a

BW 002139

maintenance fee, is held unenforceable, is found invalid by a
court of competent jurisdiction, is statutorily disclaimed in
whole or terminally disclaimed under 37 CFR 1.321, has all claims
canceled by a reexamination certificate, is reissued, or is in
any manner terminated prior to the expiration of its full
statutory term as presently shortened by any terminal disclaimer
filed prior to its grant.

For submissions on behalf of an organization (e.g.,
corporation, partnership, university, government agency, etc.),
the undersigned (whose title is supplied below) is empowered to
act on behalf of the organization.

I hereby declare that all statements made herein of my own
knowledge are true and that all statements made on information
and belief are believed to be true; and further that these
statements were made with the knowledge that willful false
statements and the like so made are punishable by fine or
imprisonment, or both, under Section 1001 of Title 18 of the
United States Code and that such willful false statements may
jeopardize the validity of the application or any patent issued
thereon.

_____4/15/93_____        _____
        Date                        Signature

                            Greg Dziegielewski
                            Assistant Secretary
                            _____
                            Typed or printed name and title if
                            applicable

Terminal disclaimer fee under 37 CFR 1.20(d) is included.

PTO suggested wording for terminal disclaimer was unchanged.

BW 002140

# Exhibit 12



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/056,635 | 05/03/93 | SIEMON | |

34M2/0104

BORG-WARNER AUTOMOTIVE, INC.
PATENT DOCKET ADMINISTRATOR
6700 18-1/2 MILE ROAD
P. O. BOX 6022
STERLING HEIGHTS, MI 48311-8022

| | |
|---|---|
| EXAMINER | E      92007 |
| | LO,W |
| ART UNIT | PAPER NUMBER |
| 3402 | *12* |
| DATE MAILED: | 01/04/94 |

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined ☐ Responsive to communication filed on _____ ☐ This action is made final.

A shortened statutory period for response to this action is set to expire **3** month(s), **0** days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I** THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☒ Notice of References Cited by Examiner, PTO-892.   2. ☒ Notice of Draftsman's Patent Drawing Review, PTO-948.
3. ☒ Notice of Art Cited by Applicant, PTO-1449.   4. ☐ Notice of Informal Patent Application, PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.   6. ☒ *Examiner Interview Summ.*

**Part II** SUMMARY OF ACTION

1. ☒ Claims *1-11, and 13-15* are pending in the application.
   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims *1-11 and 13-15* are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable; ☐ not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the
    examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 9/93)

BW 002149

Serial Number: 08/ 056,635                                                    -2-

Art Unit: 3402

    This application currently names joint inventors.  In
considering patentability of the claims under 35 U.S.C. §.103,
the examiner presumes that the subject matter of the various
claims was commonly owned at the time any inventions covered
therein were made absent any evidence to the contrary.  Applicant
is advised of the obligation under 37 C.F.R. § 1.56 to point out
the inventor and invention dates of each claim that was not
commonly owned at the time a later invention was made in order
for the examiner to consider the applicability of potential 35
U.S.C. § 102(f) or (g) prior art under 35 U.S.C. § 103.

The following is a quotation of 35 U.S.C. § 103 which forms the

basis for all obviousness rejections set forth in this Office

action:

    A patent may not be obtained though the invention is not
    identically disclosed or described as set forth in section
    102 of this title, if the differences between the subject
    matter sought to be patented and the prior art are such that
    the subject matter as a whole would have been obvious at the
    time the invention was made to a person having ordinary
    skill in the art to which said subject matter pertains.
    Patentability shall not be negatived by the manner in which
    the invention was made.

    Subject matter developed by another person, which qualifies
    as prior art only under subsection (f) or (g) of section 102
    of this title, shall not preclude patentability under this
    section where the subject matter and the claimed invention
    were, at the time the invention was made, owned by the same
    person or subject to an obligation of assignment to the same
    person.

    Claims 1-11 and 13-15 are rejected under 35 U.S.C. § 103 as

being unpatentable over Linder et al., Butterfield et al. ('659),

and Strauber et al.  Linder et al. show a camshaft phase varying

system including the utilization of camshaft torque reversals and

a solenoid valve 24 to control the flow of the working fluid

between two chambers 7 and 8.  Linder et al. also shows a close-

loop feed back system to control a camshaft phase varying

Serial Number: 08/ 056,635                                    -3-

Art Unit: 3402

mechanism (fig. 7). Butterfield et al. show an internal
combustion engine with a camshaft phase varying system
substantially as claimed including a vane, a housing, a spool
valve, and various return lines. Butterfield et al. show in fig.
20 a lever arrangement to actuate the spool valve. Strauber et
al. are relied upon to further show a camshaft phase varying
mechanism which utilizes a solenoid to operate a spool valve to
control the flow of the working fluid. Strauber et al. show a
common solenoid which includes all the elements as claimed. It
would have been obvious for one of ordinary skill in the art at
the time the invention was made to have made a system as
presently claimed by the showing and teaching of Linder et al.,
Butterfield et al., and Strauber et al. in that the mechanism of
Linder et al. and Butterfield et al. are functionally equivalent
and a close-loop system would control the system of Butterfield
et al. more accurately. It would have been obvious for said
individual to have used the lever arrangement to actuate the
spool valve and to amplify the stroke or provide a net gain in
force by varying the lever ratio which is a basic engineering
principle.

    Claims 1, 10, 11, 14, 15, and claims dependent thereon are
rejected under 35 U.S.C. § 112, second paragraph, as being
indefinite for failing to particularly point out and distinctly

BW 002151

Serial Number: 08/ 056,635                          -4-

Art Unit: 3402

claim the subject matter which applicant regards as the

invention.  In claim 1, line 11, "." should be change to -- ; --.

In claim 10, line, "8" should be changed to -- 9 --.  In claim

11, line 25, "or" should be change to -- and --; line 26, --

fluid -- should be added after "hydraulic".  In claim 14, line 1,

"12" should be changed to -- 11 --.  In claim 15, line 1, "13"

should be changed to -- 14 --.

   The terminal disclaimer received on 12/20/93 is acceptable.

   The prior art made of record and not relied upon is

considered pertinent to applicant's disclosure.

   Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Weilun Lo
whose telephone number is (703) 308-1957.

   Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 308-0861.


Weilun  Lo
Patent Examiner
Art Unit 3402
December 22, 1993


E. Rollins Cross
Supervisory Patent Examiner
Group 340

BW 002152

PTO FORM 948
(REV. 7-85)

GROUP 3402

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

ATTACHMENT TO PAPER NUMBER 12

APPLICATION NUMBER 056635

## NOTICE OF DRAFTSPERSON'S PATENT DRAWING REVIEW

THE PTO DRAFTSMEN REVIEW ALL ORIGINALLY FILED DRAWINGS REGARDLESS
OF WHETHER THEY WERE DESIGNATED AS INFORMAL OR FORMAL. ADDITIONALLY, THE PATENT
EXAMINER WILL ALSO REVIEW THE DRAWINGS FOR COMPLIANCE WITH THE REGULATIONS.

The drawings filed 5/3/93

A. ☐ are approved by the draftsperson.

B. ☒ are objected to by the draftsperson under 37 CFR 1.84 for the reason(s) checked below. The examiner will require
submission of new, corrected drawings at the appropriate time. Corrected drawings must be submitted according to the
instructions listed on the back of this Notice.

1. Paper and Ink. 37 CFR 1.84(a)
   ☐ Sheet(s)_____Poor.

2. Size of Sheet and Margins. 37 CFR 1.84(b)
   Acceptable Paper Sizes and Margins

   | Margin | 8 1/2 by 14 inches | 8 1/2 by 13 inches | DIN size A4 21 by 29.7 cm. |
   |--------|--------|--------|--------|
   | Top | 2 inches | 1 inch | 2.5 cm. |
   | Left | 1/4 inch | 1/4 inch | 2.5 cm. |
   | Right | 1/4 inch | 1/4 inch | 1.5 cm. |
   | Bottom | 1/4 inch | 1/4 inch | 1.0 cm. |

   ☐ Proper Size Paper Required.
   All Sheets Must be Same Size.
   Sheet(s)_____
   ☒ Proper Margins Required.
   Sheet(s) Fig. 1-20.
   ☒ TOP        ☐ RIGHT
   ☒ LEFT       ☐ BOTTOM

3. Character of Lines. 37 CFR 1.84(c)
   ☒ Lines Pale or Rough and Blurred.
   Fig(s) 1-20
   ☐ Solid Black Shading Not Allowed.
   Fig(s)_____

4. ☐ Photographs Not Approved.

5. Hatching and Shading. 37 CFR 1.84(d)
   ☐ Shade Lines are Required.
   Fig(s)_____
   ☐ Criss-Cross Hatching Not Allowed.
   Fig(s)_____
   ☐ Double Line Hatching Not Allowed.
   Fig(s)_____
   ☐ Parts in Section Must be Hatched.
   Fig(s)_____

6. Reference Characters. 37 CFR 1.84(f)
   ☒ Reference Characters Poor or Incorrectly Sized.
   Fig(s) 1-20
   ☐ Reference Characters Placed Incorrectly.
   Fig(s)_____

7. Views. 37 CFR 1.84(i) & (j)
   ☐ Figures Must be Numbered Properly.
   ☐ Figures Must Not be Connected.
   Fig(s)_____

8. ☐ Identification of Drawings. 37 CFR 1.84(1)
   Extraneous Matter or Copy Machine
   Marks Not Allowed. Fig(s)_____

9. ☐ Changes Not Completed from Prior
   PTO-948 dated_____

☐ Comments;

Telephone inquires concerning this review should be directed to the Chief Draftsperson at telephone number (703) 305-8404.

Reviewing Draftsperson

7/30/93
Date

Note: Any objection to the drawings made by the examiner will be communicated separately in an office action.

PTO Copy

BW 002153

 

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP-APART AND DISCARD CARBON

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 056,635 | GROUP ART UNIT 3402 | ATTACHMENT TO PAPER NUMBER 12 |
|---|---|---|---|---|
| | NOTICE OF REFERENCES CITED | APPLICANT(S) SIEMON et al. | | |

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| A | | 5 1 7 2 6 5 9 | 12/92 | BUTTERFIELD et al. | 123 | 90,17 | |
| B | | 5 0 1 2 7 7 4 | 5/91 | STRAUBER et al. | | | |
| C | | 5 0 5 6 4 7 7 | 10/91 | LINDER et al. | | | |
| D | | 5 2 1 8 9 3 5 | 6/93 | QUINN, JR. et al. | | | |
| E | | 5 2 0 1 2 8 9 | 4/93 | IMAI | | | |
| F | | 5 1 5 0 6 7 1 | 9/92 | SUGA | ↓ | ↓ | |
| G | | 4 8 5 6 4 6 5 | 8/89 | DENZ et al. | ↓ | ↓ | |
| H | | 4 7 6 2 1 4 1 | 8/88 | KARPIS | 137 | 312 | |
| I | | 5 0 0 0 4 2 0 | 3/91 | HENDRIXON | ↓ | 625.65 | |
| J | | | | | | | |
| K | | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| L | | | | | | | | | |
| M | | | | | | | | | |
| N | | | | | | | | | |
| O | | | | | | | | | |
| P | | | | | | | | | |
| Q | | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| R | | | | | |
| S | | | | | |
| T | | | | | |
| U | | | | | |

| EXAMINER | DATE 12/28/93 |
|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

BW 002154

# Exhibit 13

I HEREBY CERTIFY THAT THIS CORRESPONDENCE IS BEING DEPOSITED WITH THE UNITED STATES POSTAL SERVICE AS FIRST CLASS MAIL IN AN ENVELOPE ADDRESSED TO: COMMISSIONER OF PATENTS AND TRADEMARKS, WASHINGTON, D.C. 20231 ON:

November 1, 1994
(DATE OF DEPOSIT)

*Wanda J. Lawrence*

November 1, 1994
(DATE OF SIGNATURE)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re application of: | : | Group Art Unit: 3402 |
| EDWARD C. SIEMON ET AL. | : | |
| Serial No. 08/056,635 | : | Examiner: W. Lo |
| Filed: May 3, 1992 | : | |
| For: VCT CONTROL WITH A | : | Atty. Dkt. No.: 91016A |
|    DIRECT ELECTRO- | : | |
|    MECHANICAL ACTUATOR | : | |

### REPLY TO OFFICE ACTION

Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

    This paper is in response to the Office Action (Paper No. 14) mailed on August 1, 1994.  That Office Action was not made final.

### REMARKS

    The accompanying remarks are submitted in reply to the Office Action (Paper No. 14) regarding the above-named application.  In that Office Action, the Examiner:

    1) Rejected Claims 1-11 and 13-15 under 35 U.S.C. §103 as being unpatentable over Butterfield et al., Linder et al., Hendrixon, et al., Strauber et al., and a general engineering principle; specifically because:

        a) Butterfield et al. teaches "an internal combustion engine with a camshaft phase varying system as claimed including a vane, a housing, a spool valve, and

BW 002167

various return lines" as well as "a lever arrangement to actuate the spool valve;"

b) Linder et al. teaches a VCT system which utilizes "torque reversals and a solenoid 24 to control the flow of working fluid between two chambers 7 and 8;"

c) Hendrixon et al. "provide[s] for a variable force solenoid valve to obtain linear control and variable fluid rate of flow;"

d) Strauber et al. teaches "a solenoid operated spool valve to control the flow of the working fluid;" and,

e) "[T]o additionally amplify the stroke or provide a net gain in force by varying the lever ratio . . . is a basic engineering principle . . . ."

Applicants respectfully respond as follows:

1) Applicants respectfully submit that first, three of the four cited references do not precisely teach the functions as recited by Examiner; specifically:

a) Applicants concede that the statement made by Examiner (regarding the lever in Butterfield et al. '659) is true in general. However, Applicants respectfully reassert their argument that, upon closer inspection, it can be seen in Figure 20 that Butterfield et al. '659 merely teaches a simple lever arm 440 for use in a situation where piston 434a is physically unable to align with free end 400c of spool 400. According to the corresponding specification, "this is an advantage when adapting the variable camshaft timing system of the present invention [Butterfield et al.] to some vehicle/engine configurations." Lever arm 440 is used only for packaging convenience. Contrastingly, Figure 20 of the present application illustrates a complex lever arrangement 201e which is used solely to provide amplification of the force applied to spool 200. Accordingly, Applicants respectfully disagree with Examiner's contention that Butterfield et al. '659 teaches the same lever arrangement as that described in the instant application.

2

b) Applicants respectfully reassert their position
that Linder et al. does not teach subject matter
specifically related to the present application.  In the
present Office Action, Examiner states that Linder et al. is
"relied upon solely to teach a solenoid control valve 24 to
control the flow of the working fluid between chambers 7 and
8.".  Again, the present application uses a proportional
spool valve 200 to directly control the flow of the working
fluid and a variable force solenoid 201 to control the
positioning of the spool valve, not the common two-position
("on-off") solenoid valve taught in Linder et al.

c) Applicants concede that Hendrixon et al.
(Figures 4-7) discloses a variable force solenoid used as a
flow control device.

d) Applicants again reassert their position that
Strauber et al. does not teach what Examiner suggests.  The
Strauber et al. disclosure teaches a common ("on-off" only)
solenoid to control a spool of a two-position only system.
Unlike Strauber et al., the present invention utilizes a
variable force solenoid to control the position of a spool
of a continuously variable system.  Further, the Strauber et
al. system controls the flow of oil both internal and
external to the VCT mechanism.  The present invention,
however, controls the flow of oil internal to the VCT
mechanism only.

2) Assuming for the sake of argument that all cited
references (Butterfield et al., Linder et al., Hendrixon et
al., and Strauber et al.) combined with the general
engineering priciple cited (i.e., that a lever may be used
to increase force) do indeed teach the concepts suggested by
Examiner, Applicants respectfully reassert their argument
that the obviousness rejection is still not valid.  The
Federal Circuit has ruled that:

It is impermissible to use the claimed invention
as an instruction manual or "template" to piece
together the teachings of the prior art so that
the claimed invention is obvious.  This court has
previously stated that "[o]ne cannot use hindsight
reconstruction to pick and choose among isolated
disclosures in the prior art to deprecate the
claimed invention."

3

BW 002169

<u>In Re Fritch</u>, 23 USPQ 2d 1780, 1784 (Fed. Cir. 1992) (citations omitted).

Therefore, Applicants respectfully submit, to combine four references and a general engineering principle without <u>some suggestion</u> of doing so is improper. Butterfield et al. discloses a VCT system, but nothing suggests using a lever arrangement in combination with a variable-force solenoid <u>to amplify the force applied to the spool valve</u>. Nothing in Linder et al., which discloses a device having a completely different control system, suggests using a variable force solenoid to position the spool and/or a lever arrangement to amplify the force applied to the spool. Hendrixon does teach a variable force solenoid to control fluid flow, but in no way suggests use with a variable camshaft timing system. And nothing in Strauber et al., a two-position only device which uses a "common" (i.e., two-position only) solenoid, suggests using a <u>variable force</u> solenoid to actuate the spool valve of a <u>continuously variable</u> VCT system like the present invention.

In light of the above, Applicants respectfully reassert their position that the obviousness rejection is an improper "hindsight" rejection and that Applicants, therefore, respectfully traverse such rejection with the above arguments.

<u>CONCLUSION</u>

In summary, it is respectfully submitted that Applicants have properly responded to all matters which are at issue in this application and that this application is now in condition for allowance. Reconsideration of this application and allowance of all pending claims is earnestly solicited. Should Examiner require additional information or wish to discuss matters further, the undersigned attorney for Applicants is willing to do so.

Respectfully submitted,

David A. Spenard
Registration No. 37,449

4

Willian Brinks Hofer Gilson & Lione
1130 Edison Plaza
Toledo, Ohio 43604-1537
(419) 244-6578

5

BW 002171