# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HITACHI, LTD. and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) Civil Action No. 05-048-SLR |
| BORGWARNER INC. and BORGWARNER MORSE TEC INC., | ) ) ) **PUBLIC VERSION** |
| Defendants. | ) ) |
| ─────────────────────────────── | ) ) |
| BORGWARNER INC., | ) ) |
| Counterclaimant, | ) ) |
| v. | ) ) ) |
| HITACHI, LTD. and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., | ) ) ) |
| Counterdefendants. | ) ) |

## BORGWARNER'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT THAT THE BUTTERFIELD PAPER SUBMITTED TO IMECHE DOES NOT CONSTITUTE PRIOR ART UNDER 35 U.S.C. §§ 102(a) OR 102(b)

OF COUNSEL:

SIDLEY AUSTIN BROWN & WOOD, LLP
Hugh A. Abrams
Thomas D. Rein
Lisa Schneider
Marc A. Cavan
Lara V. Hirshfeld
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
Original Date: October 4, 2006
Redacted Date:  October 12, 2006

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
MORRIS JAMES, HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE  19801
(302) 888-6800
mmatterer@morrisjames.com

*Attorneys for BorgWarner Inc. and
BorgWarner Morse TEC Inc.*

# TABLE OF CONTENTS

**Page**

I.      Statement of Nature and Stage of Proceedings. ............................................................... 1

II.     Summary of the Argument. ............................................................................................. 2

III.    Statement of Facts........................................................................................................... 3

     A.      The Relevant Dates. ............................................................................................. 3

     B.      No Evidence Establishes That the Butterfield Paper Was Indexed and Shelved in 1991-1992................................................................................ 4

     C.      No Evidence Establishes That the Butterfield Paper Was Otherwise Distributed in 1991. .................................................................................. 6

     D.      The Screen Shot Is Inadmissible and, at Best, Shows a Catalog Date of September 17, 1992. ......................................................................... 8

IV.     Analysis. ......................................................................................................................... 10

     A.      The Standards for Summary Judgment. ............................................................. 10

     B.      To Constitute a "Printed Publication," the Butterfield Paper Must Have Been Publicly Accessible.................................................................... 11

     C.      The Testimony of Ms. Rogers and Mr. Claxton Is Inadmissible to Prove General Practice. .................................................................................. 13

     D.      The Screen Shot Is Inadmissible Hearsay. ....................................................... 14

     E.      The Screen Shot Is Inadmissible Under Fed. R. Evid. 1002. ........................... 16

     F.      Even Assuming The Screen Shot Is Admissible, at Best, It Establishes a Cataloging Date of September 17, 1992. .............................................. 17

V.      CONCLUSION................................................................................................................ 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144 (1970) .................................................................................. 10

*Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*,
  No. 95-218-SLR, 1998 WL. 151411 (D. Del. Mar. 13, 1998),
  *aff'd*, 228 F.3d 1338 (Fed. Cir. 2000) ................................................... 12, 14

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................. 10

*Application of Bayer*,
  568 F.2d 1357 .......................................................................................... 12

*Brooks v. American Centennial Insurance Co.*,
  327 F.3d 260 (3d Cir. 2003) ..................................................................... 13

*Carella v. Starlight Archery & Pro Line Co.*,
  804 F.2d 135 (Fed. Cir. 1986) .................................................................. 11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................. 10

*Conroy v. Reebok International, Ltd.*,
  14 F.3d 1570 (Fed. Cir. 1994) .................................................................. 10

*In re Cronyn*,
  890 F.2d 1158 (Fed. Cir. 1989) ................................................................ 12

*DePuy, Inc. v. Zimmer Holdings, Inc.*,
  343 F. Supp. 2d 675 (N.D. Ill. 2004) ............................................... 12, 13, 14

*Eli Lilly & Co. v. Barr Laboratories, Inc.*,
  251 F.3d 955 (Fed. Cir. 2001) .................................................................. 11

*Enzo Biochem, Inc. v. General-Probe, Inc.*,
  424 F.3d 1276 (Fed. Cir. 2005) ................................................................ 10

*See In re Gulph Woods Corp.*, 82 B.R. 373, 377 (Bankr. E.D. Pa. 1988) ................ 16

*In re Hall*,
  781 F.2d 897 (Fed. Cir. 1986) .................................................................. 13

*Hilgraeve, Inc. v. Symantec Corp.*,
    271 F. Supp. 2d 964 (E.D. Mich. 2003) ........................................................................ 14

*In re Klopfenstein*,
    380 F.3d 1345 (Fed. Cir. 2004) ................................................................................. 12

*L'Oreal S.A. v. Revlon Consumer Products Corp.*,
    No. 99-424-SLR, 2000 WL. 291531 (D. Del. Feb. 24, 2000) ...................................... 11

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .................................................................................................... 10

*Nevada Power Co. v. Monsanto Co.*,
    891 F. Supp. 1406 (D. Nev. 1995) ............................................................................... 13

*Padcom, Inc. v. Netmotion Wireless, Inc.*,
    Civ. No. 03-983-SLR, 2006 U.S. Dist. LEXIS 6551 (D. Del. Feb. 22, 2006) ................ 10

*Pennsylvania Coal Association v. Babbitt*,
    63 F.3d 231 (3d Cir. 1995) ......................................................................................... 10

*United States v. Furst*,
    886 F.2d 558 (3d Cir. 1989) ....................................................................................... 15

*Washburn & Moen Manufacturing Co. v. Beat 'Em Barbed-Wire Co.*,
    143 U.S. 275 (1892) ................................................................................................... 13

*Waters v. Genesis Health Ventures, Inc.*,
    400 F. Supp. 2d 814 (E.D. Pa. 2005) .......................................................................... 13

## FEDERAL STATUTES

35 U.S.C. § 102 ..................................................................................................... 1, 2, 12

35 U.S.C. §§ 102(a) ....................................................................................... 1, 2, 3, 8, 17, 18

35 U.S.C. § 102(b) ....................................................................................... 1, 2, 3 , 11, 17, 18

Fed. R. Civ. P. 56(c) ..................................................................................................... 10

Fed. R. Evid. 801(c) ...................................................................................................... 14

Fed. R. Evid. 803 .......................................................................................................... 15

Fed. R. Evid. 1001 ................................................................................................. 16

Fed. R. Evid. 1002 ................................................................................................. 16

Fed. R. Evid. 1004 ................................................................................................. 16

BorgWarner Inc. and BorgWarner Morse Tec Inc. (collectively, "BorgWarner") hereby move for summary judgment that a seminar paper authored by Roger Butterfield titled "A Unique Approach to Design of a VCT Mechanism" ("Butterfield paper"), attached as Exhibit 1 to the Schneider Decl.[1], that is currently housed in the library of the Institute of Mechanical Engineers ("IMechE"), does not constitute prior art to U.S. Patent No. 5,497,738 ("the '738 patent") under 35 U.S.C. §§ 102(a) or 102(b). BorgWarner bases its motion on the failure of Hitachi, Ltd. and Hitachi Automotive Products (USA), Inc. (collectively, "Hitachi") to identify or produce any admissible evidence or testimony tending to prove that the Butterfield paper was a "printed publication," as that term is used in section 102, at a point in time early enough to constitute prior art. In the alternative, BorgWarner moves for partial summary judgment that the earliest printed publication date Hitachi can establish for the Butterfield paper is September 17, 1992, and that, as such, the Butterfield paper does not qualify as prior art under 35 U.S.C. § 102(b).[2]

## I.       STATEMENT OF NATURE AND STAGE OF PROCEEDINGS.

The present case is a declaratory judgment patent case involving a patent, attached as Exhibit 2 to the Schneider Decl., on variable camshaft timing systems. BorgWarner asserts that claims 10 and 11 of the patent-in-suit are valid and infringed. Fact discovery is closed. Opening Markman briefs and expert reports have been served. The present motion relates to an evidentiary question concerning what Hitachi contends is a key piece of prior art. An understanding of the patented technology is not necessary to resolve the present motion.

---

[1]  References to the "Schneider Decl." are to the Declaration of Lisa A. Schneider In Support of BorgWarner's Motion for Summary Judgment That The Butterfield Paper Submitted to IMECHE Does Not Constitute Prior Art Under 35 U.S.C. §§ 102(a) or 102(b).

[2]  Whether the Butterfield paper constitutes prior art under section 102(a), section 102(b) or not at all will have major significance at trial.

## II.    SUMMARY OF THE ARGUMENT.

It is black-letter law that, to qualify as prior art under 35 U.S.C. § 102, the Butterfield paper must constitute a "printed publication" either before the date of invention of the '738 patent (*see* 35 U.S.C. § 102(a)) or more than one year before the application resulting in the '738 patent was filed (*see* 35 U.S.C. § 102(b)).    Public accessibility has been called the touchstone in determining whether a reference constitutes a printed publication under 35 U.S.C. § 102.    In other words, whether a reference constitutes a "printed publication" depends on whether the reference was accessible to the relevant public at the relevant time, which for a paper such as the Butterfield paper, which was not distributed or published in a journal, typically entails an investigation into how and when a paper was indexed or cataloged by a library.

Hitachi's experts have been "advised by Hitachi's counsel" that the Butterfield paper "was publicly available in September 1991."  (Exhibit 3 to the Schneider Decl. at ¶ 56). Clearly, Hitachi expects to advise the jury that this paper, which is referenced in numerous paragraphs of both of Hitachi's expert reports, constitutes prior art under 35 U.S.C. § 102. However, the evidence adduced in this case fails to establish the requisite public accessibility.

The Butterfield paper was submitted to IMechE sometime after a seminar that occurred in September 1991.  Although Hitachi sent an attorney to the IMechE facilities in London to investigate the IMechE library, sought and obtained documents from IMechE, and deposed two current IMechE employees, its efforts have not resulted in any admissible evidence that the Butterfield paper was publicly accessible at any relevant point in time.  The only competent testimony in the case confirms that the paper was *not* distributed at the seminar, and *no* testimony establishes when the paper was cataloged so that it became publicly accessible. Indeed, not a single witness was deposed who had personal knowledge about the alleged public accessibility of the Butterfield paper at the relevant point in time.   No evidence has been

presented of records showing the cataloging of the Butterfield paper in the relevant timeframe. The only evidence of cataloging is a screen-shot of a computer display taken in 2005 from a computer system that did not even exist until 2000.

Discovery has long since concluded. The evidence collected by Hitachi falls far short of the clear and convincing evidence Hitachi needs to establish that the Butterfield paper is prior art that impacts the validity of the claims of the patent-in-suit. All Hitachi has established is that the Butterfield paper is publicly accessible today, a fact that is not in dispute and, in any event, has no relevance to the validity of the '738 patent. BorgWarner seeks a resolution of the evidentiary status of what Hitachi, and its experts, contend is a significant piece of prior art before the evidence is presented to the jury.

## III. STATEMENT OF FACTS.

### A. The Relevant Dates.

BorgWarner does not contest that, as of today, the Butterfield paper is a printed publication. The key issue in dispute is whether the Butterfield paper became a printed publication at an early enough date to qualify as prior art to the '738 patent. To qualify as a printed publication under 35 U.S.C. § 102(b), the Butterfield paper must have been publicly accessible no later than May 3, 1992 (one year prior to the filing date of the application that directly resulted in the '738 patent). (*See* Schneider Decl. Exhibit 2 at cover page). Unless Hitachi proves that the Butterfield paper was publicly accessible prior to May 3, 1993 (the latest possible date of invention based on the filing date), the Butterfield paper also cannot qualify as *prima facie* prior art under 35 U.S.C. § 102(a).[3] Based on its expert reports, Hitachi is expected

---

[3] BorgWarner has asserted in interrogatory responses that the date of invention is no later than April 9, 1992 and reserves the right to make that argument at trial.

3

to argue that the Butterfield paper was publicly accessible in 1991, but the evidence fails to establish that the paper was cataloged or available to the public at that time.

**B.    No Evidence Establishes That the Butterfield Paper Was Indexed and Shelved in 1991-1992.**

In an effort to determine when the Butterfield paper was publicly available, Hitachi took the depositions of two current IMechE employees:  Sarah Rogers and Mike Claxton.  Neither witness was competent to address the question of whether the Butterfield paper was shelved and/or catalogued and therefore publicly available in the 1991-1992 time period.

Ms. Rogers was not even employed by IMechE in the 1991-1992 timeframe; she was still a student at that time.  (*See* Schneider Decl. Exhibit 4 at 84).  Indeed, she testified that she could only "imagine" that the procedures used in 1991 were "similar" to those used in 2000. (*See id.* at 12 ("I didn't work here in 1991 but I can kind of, in 2000 I imagine that they were similar procedures as to what they were in 1991, because they used a similar system."); *see also id.* at 13).  Although she testified that she spoke to Mr. Claxton regarding the procedures in 1991 to prepare for her deposition, *see id.* at 12-13, he too had no personal knowledge regarding the cataloging of seminar papers in the 1991-1992 timeframe, as discussed in more detail below. Thus, Ms. Rogers had no knowledge -- personal or otherwise -- of events occurring in 1991-1992, and her testimony cannot establish public availability of the Butterfield paper in 1991-1992.

While Mr. Claxton was employed by IMechE in the 1991-1992 timeframe, his duties then did not include cataloging seminar papers.  (*See* Schneider Decl. Exhibit 5 at 10). Rather, at that time, his duties focused on the book side of the library.  (*See id.*).  Like Ms. Rogers, Mr. Claxton's testimony cannot establish public availability of the Butterfield paper in 1991-1992.

Nevertheless, Hitachi attempted to use these witnesses to establish the date on which the Butterfield paper was publicly available by (1) discussing general shelving practices at IMechE and (2) discussing general cataloging practices at IMechE. With respect to shelving, neither witness testified, even speculatively, as to the date that the book of proceedings containing the Butterfield paper was actually placed on the shelves. Neither witness could have adequately testified to this fact, because neither witness had any personal knowledge regarding the shelving of papers in 1991-1992. In fact, neither witness had any recollection of ever seeing the Butterfield paper prior to being contacted for this litigation. (*See* Schneider Decl. Exhibit 4 at 89; Exhibit 5 at 28)

Similarly, neither witness provided adequate testimony regarding when the Butterfield paper was allegedly cataloged. Hitachi will apparently contend that the Butterfield paper would have been indexed on a card catalog system and that the paper "could have been located by the interested public through a routine search of the IMECHE card catalogue system and the library shelves." (Schneider Decl. Exhibit 6 at 12).[4] However, no evidence was ever presented establishing the alleged cataloging of the Butterfield paper in the card system. There was no testimony regarding who had access to this so-called "card" system. There was no testimony that this "card" system was searchable. And, there was no testimony regarding when or if the Butterfield paper was placed on such a "card." (*See* Schneider Decl. Exhibit 5 at 31-32 for the complete testimony on this issue). Critically, no evidence of the card system, either showing the Butterfield paper or any other papers, exists in the record.

---

[4]   *See* Reply to BorgWarner's Opposition to Hitachi's Motion to Compel the Production of Withheld Prosecution Documents ("Motion to Compel Reply Brief"). This brief was submitted to the Special Discovery Master on April 12, 2006 and relevant portions are attached as Exhibit 6 to the Schneider Decl.

The testimony of Ms. Rogers provides no help on this issue and conflicts with Mr. Claxton's testimony on this point. Ms. Rogers made no mention of a "card" system. Instead, according to Ms. Rogers, between 1984 and 2002, IMechE used a cataloging software system referred to as CAIRS. (*See* Schneider Decl. Exhibit 4 at 29). Ms. Rogers provided virtually no information regarding how this database operated, whether the computer database was reliable, or whether safeguards were in place to ensure accuracy and identify errors. Instead, Ms. Rogers simply produced instructions dated June 1999 for inputting seminar papers into the CAIRS database. (*See* Schneider Decl. Exhibits 7 and 8). These instructions, however, only explained how one went about entering data into the CAIRS system. Critically, and fatal to Hitachi's position, they do not establish that the Butterfield paper was catalogued in 1991-1992. Hitachi has not identified a single document emanating from the CAIRS database that provides any information on when, or even if, the Butterfield paper was cataloged.

In short, the testimony relied upon by Hitachi does not establish that the Butterfield paper was indexed or cataloged and placed on the shelves at the IMechE library in 1991-1992.

### C.    No Evidence Establishes That the Butterfield Paper Was Otherwise Distributed in 1991.

Hitachi may attempt to argue that the Butterfield paper was distributed at the 1991 camshaft seminar conference. No evidence supports Hitachi's argument. Hitachi does not present any testimony from an attendee at the seminar who actually received the Butterfield paper, nor does Hitachi present any testimony from anyone employed by IMechE who had any role whatsoever in the 1991 seminar. Instead, Hitachi bases this argument on the following testimony from Ms. Rogers:

> Q.    OK. What, if any, materials are typically made available to the seminar attendees?

> A.    They normally get a copy of the seminar – of the papers
> that are being read at the seminar.

(Schneider Decl. Exhibit 4 at 49; *see also* Schneider Decl. Exhibit 6 at 13).  Crucially, Hitachi ignores the fact that an objection as to timeframe was raised in response to a question as to when attendees received seminar materials and that the questioner for Hitachi responded "I am just talking generally right now.  I haven't gotten into a timeframe yet."  (Schneider Decl. Exhibit 4 at 49-50).  In other words, Ms. Rogers provided no specific testimony regarding the 1991-1992 timeframe or any testimony regarding when the Butterfield paper would have been provided to attendees, if ever.[5]

Furthermore, Mr. Mott, a BorgWarner employee who gave a presentation at the IMechE camshaft seminar related to the Butterfield paper,[6] testified that the paper was not handed out at the seminar:

> Q.    Mr. Mott, do you know whether there were any handouts
> given at the IMECHE conference on your presentation?
>
> A.    I'm quite sure there wouldn't be.
>
> .      .      .
>
> Q.    And you're saying that you have absolutely no recollection
> of handouts of the article at the presentation.

---

[5]   Hitachi asserted in its Motion to Compel Reply Brief that Ms. Rogers's knowledge of this allegedly "routine" practice of distributing seminar papers came from discussions with IMechE staff responsible for organizing the 1991 seminar.  (*See* Schneider Decl. Exhibit 6 at 13 n.6). However, the deposition testimony does not support this.  Ms. Rogers testified only that she spoke to the Events Department about the number of people that are required to have a seminar go forward.  (*See* Schneider Decl. Exhibit 4 at 52).  There is no evidence she discussed the 1991 seminar with anyone, nor is there any evidence that the individuals in the Events Department had personal knowledge about seminars that occurred in 1991.

[6]   Mr. Mott's oral presentation is not alleged to constitute prior art.

> A.    I don't recall us ever giving handouts at a presentation so it – it would be unusual if we did.
>
> Q.    Do you recall IMECHE or someone from IMECHE giving handouts of either the presentation or the article or some form of the article at the presentation?
>
> A.    No, I don't.

(Schneider Decl. Exhibit 9 at 249-50).

In short, there is no evidence establishing that the Butterfield paper was distributed to conference attendees or otherwise distributed in the relevant timeframe.

**D.    The Screen Shot Is Inadmissible and, at Best, Shows a Catalog Date of September 17, 1992.**

Nothing establishes that the Butterfield paper was cataloged in 1991-1992. In the face of a lack of contemporaneous evidence, Hitachi is expected to rely on a computer display "screen shot" to argue that the Butterfield paper is prior art under 35 U.S.C. § 102(a). (*See* Schneider Decl. Exhibit 10; Exhibit 4 at 68-69, 94-95). This screen shot is not from the CAIRS database in use at IMechE in 1991-1992, but from a later database known as Olib which was put in place in 2001-2002. (*See* Schneider Decl. Exhibit 4 at 76).

Furthermore, this 2005 computer display screen shot is subject to multiple evidentiary objections as to its admissibility. No testimony links the information shown on the computer in 2005 with actual cataloging in 1991-1992. No testimony establishes that the information shown on the screen shot was accurately inputted at some earlier date. Moreover, the information on the screen shot appears to be incomplete and/or inaccurate. For instance, the instructions produced by Ms. Rogers for entering seminar papers into the CAIRS database refers to fields captioned "[a]uthor," "[t]itle," and the like. (*See* Schneider Decl. Exhibits 7 and 8). The field names on the screen shot do not always correspond to the field names on the instructions. Other fields appear to be entirely missing from the screen shot. For example, the CAIRS

instructions refer to a field called "Confplace" that is supposed to identify the location where the conference took place, *e.g.*, Coventry, but this information does not appear to be on the screen shot. (*Compare* Exhibits 7 and 8 *with* Exhibit 10 of Schneider Decl.). Some fields on the screen shot, *e.g.*, "AF" and "AI," are not explained in the instructions. Other information appears to be incorrect. For example, although the Butterfield paper bears a date of September 24, 1991, which has been presumed by Hitachi to be the date of the camshaft seminar, that date does not appear anywhere on the screenshot, even though the conference date was to be included in the catalog per the instructions. (*Compare* Exhibits 7 and 8 *with* Exhibit 10 of Schneider Decl.). Furthermore, there is a "PD" date listed as January 1, 1991. (*See* Exhibit 10 of Schneider Decl.). Ms. Rogers did not testify regarding the designation "PD" and it appears to have no relevance to the date of the conference, the date of publication of the paper, or the date of cataloging of the paper.

Even assuming that the screen shot is admissible and accurate -- points that BorgWarner disputes -- the earliest possible cataloging date it can possibly establish is a date of September 17, 1992, the date indicated to be the "Cat Date." (*See* Exhibit 10; Exhibit 4 at 70, 95 of Schneider Decl.) (testifying that "Cat. Date" referred to the "date that it would have been entered on the system, or on the catalogue, or it will be the date that it was last modified on the system" and that it was "likely" to be the catalog date.).

In short, the evidence surrounding the screen shot is incomplete and contradictory. As such, the screen shot should be inadmissible on the critical point of establishing the Butterfield paper as prior art.

## IV.    ANALYSIS.

### A.    The Standards for Summary Judgment.

The standard for summary judgment is the same in a patent case as in any other case. *See Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575 (Fed. Cir. 1994). Summary judgment is appropriate when, as here, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that there is no genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153-60 (1970). If the moving party meets this burden, the party opposing a summary judgment motion must offer specific evidence to demonstrate the existence of a genuine issue for trial and may not rely solely on its pleadings or on conclusory factual allegations to support its claim that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see Matsushita*, 475 U.S. at 587. The mere existence of some evidence in support of the nonmoving party, with all facts and inferences in its favor, will not be sufficient for denial of a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005); *see also Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). There must be enough evidence to allow a jury to find reasonably for the nonmoving party on that issue. *Anderson*, 477 U.S. at 248-49; *see also Padcom, Inc. v. Netmotion Wireless, Inc.*, Civ. No. 03-983-SLR, 2006 U.S. Dist. LEXIS 6551, at *10 (D. Del. Feb. 22, 2006) (Robinson, C.J.) (concluding that the "mere existence of some evidence in support of the nonmoving party" did not constitute clear and convincing evidence upon which a reasonable jury could invalidate a patent based on the asserted prior art).

A court should consider a motion for summary judgment "through the prism of the evidentiary standard of proof that would pertain at a trial on the merits." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001) (*citing Anderson*, 477 U.S. at 252-53). Patents enjoy a presumption of validity, which can be overcome only through clear and convincing evidence. *Id.* (*citing United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1563 (Fed. Cir. 1997)). Therefore, "a moving party seeking to have a patent held not invalid at summary judgment must show that the nonmoving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent." *Id.* It is Hitachi's burden to produce clear and convincing evidence that the Butterfield paper is prior art. *See Carella v. Starlight Archery & Pro Line Co.*, 804 F.2d 135, 139 (Fed. Cir. 1986).

Discovery in this matter is complete, and Hitachi has not established clearly and convincingly that the Butterfield paper is prior art to the patent-in-suit. Because Hitachi cannot meet its burden, the Court should grant BorgWarner's motion for summary judgment that the Butterfield paper does not qualify as prior art. *See L'Oreal S.A. v. Revlon Consumer Prods. Corp.*, No. 99-424-SLR, 2000 WL 291531, at *5 (D. Del. Feb. 24, 2000) (granting plaintiffs' summary judgment motion with respect to two drawings because defendants failed to produce evidence that the drawings had been publicly available and thus they were not invalidating prior art). At a minimum, the Court should rule that the Butterfield paper does not qualify as prior art under 35 U.S.C. § 102(b).

### B.  To Constitute a "Printed Publication," the Butterfield Paper Must Have Been Publicly Accessible.

"It is well settled that in determining whether a printed document constitutes a publication bar under 35 U.S.C. § 102(b) the touchstone is public accessibility." *Application of*

*Bayer*, 568 F.2d 1357, 1359 (C.C.P.A. 1978. Hitachi, as the party asserting invalidity, bears the burden of showing by clear and convincing evidence that the Butterfield paper was sufficiently available to the public. *See Carella*, 804 F.2d at 139 (noting that proponent of bar "should produce sufficient proof of its dissemination or that it has otherwise been available and accessible to persons concerned with the art") (internal citations omitted); *DePuy, Inc. v. Zimmer Holdings, Inc.*, 343 F. Supp. 2d 675, 682 (N.D. Ill. 2004); *Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, No. 95-218-SLR, 1998 WL 151411, at *37 (D. Del. Mar. 13, 1998), *aff'd*, 228 F.3d 1338 (Fed. Cir. 2000).[7]

Generally speaking, to qualify as a "printed publication" that invalidates a patent under 35 U.S.C. § 102, a prior art reference housed in an academic library must be "cataloged or indexed in a meaningful way." *In re Cronyn*, 890 F.2d 1158, 1161 (Fed. Cir. 1989).[8] The only evidence offered by Hitachi is the testimony of witnesses who have no personal knowledge of the cataloging of the Butterfield paper and a computer screen shot taken in 2005 of a system that was implemented in 2000-2001. No reasonable fact finder could find that Hitachi has proven by clear and convincing evidence when the Butterfield paper was publicly accessible, and there will be no further evidence on this at trial. Hitachi relies only on the uncorroborated testimony of two

---

[7] Of course, to render the claims of the patent-in-suit invalid, the Butterfield paper must actually disclose the elements of the claims. BorgWarner does not believe that the Butterfield paper discloses each and every element of the asserted claims, but that issue is not raised in this motion.

[8] Although cataloging and indexing are not always required to establish section 102(b) prior art, *see, e.g., In re Klopfenstein*, 380 F.3d 1345 (Fed. Cir. 2004) (noting that public accessibility is the criterion by which a reference is judged for purposes of section 102(b) and that, while courts have relied on distribution and indexing, it is not to the exclusion of all other measures of public accessibility), here there are no other measures of public accessibility. There is no competent evidence that the article was distributed or otherwise made available to the public. The only person with personal knowledge regarding the conference -- Mr. Mott -- testified that the paper was not distributed at the conference.

witnesses with no personal knowledge of the facts in the relevant timeframe and a document showing how the paper is cataloged today, years after the fact. This is plainly insufficient. *Cf. Washburn & Moen Mfg. Co. v. Beat 'Em Barbed-Wire Co.*, 143 U.S. 275, 284 (1892) (noting deficiencies in witness testimony, stating "[w]itnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information" and dismissing uncorroborated oral testimony).

C.    **The Testimony of Ms. Rogers and Mr. Claxton Is Inadmissible to Prove General Practice.**

Hitachi will no doubt argue that "competent evidence of the general library practice may be relied upon to establish an approximate time" when a document became available. *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986). While an accurate statement of the law, Hitachi has not produced "competent" evidence of the general practice at IMechE.

Federal Rule of Evidence 602 provides that, with the exception of expert witnesses, a witness may not testify on a particular issue "unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." *See, e.g., Brooks v. American Centennial Ins. Co.*, 327 F.3d 260, 268 (3d Cir. 2003) (requiring *in limine* hearing on remand to determine admissibility of testimony where witness was not employed at relevant time); *Waters v. Genesis Health Ventures, Inc.*, 400 F. Supp. 2d 814, 821-22 (E.D. Pa. 2005) (excluding testimony where witness was not employed during relevant time period).

The fact that the IMechE witnesses were testifying as Rule 30(b)(6) witnesses does not materially alter this rule. *See DePuy*, 343 F. Supp. 2d at 682 (noting that Rule 30(b)(6) allows a witness to testify about his or her personal knowledge and knowledge of the company, but dismissing testimony that was not gained from examining the company's employees or records); *Nevada Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1415 (D. Nev. 1995)

("[S]peculative testimony about how another might have acted without personal knowledge is not admissible as evidence. … This rule controls whether Ryan testified individually or, as in this case, on behalf of the corporation through a Rule 30(b)(6) deposition.").

Neither Ms. Rogers nor Mr. Claxton had personal knowledge of the general procedure for indexing, cataloging, and shelving papers in the relevant time period, and neither testified that they discussed the general procedures with anyone with such personal knowledge. As such, the testimony established by Hitachi will be insufficient to meet its burden. *See Ajinomoto*, 1998 WL 151411, at *38 (holding that thesis was not prior art where witness providing testimony about procedure had no first hand knowledge of the procedures and was not present during the relevant time period resulting in testimony that was "speculative and not probative of general indexing, cataloging, and shelving procedures"); *DePuy*, 343 at 682 (granting motion for summary judgment that reference was not prior art because 30(b)(6) testimony about publication of reference was based on assumptions that were unsupported by either personal knowledge or knowledge gained from records or other employees).

**D.    The Screen Shot Is Inadmissible Hearsay.**

Rule 801(c) of the Federal Rules of Evidence defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  The screen shot -- the only written evidence Hitachi has regarding when the IMechE paper was cataloged -- is inadmissible hearsay, as Hitachi is relying upon it to prove the date of cataloging.  *See, e.g., Hilgraeve, Inc. v. Symantec Corp.*, 271 F. Supp. 2d 964, 974-75 (E.D. Mich. 2003) (date printed on document is hearsay if used to prove the date on which the document became publicly accessible).  It therefore cannot be admitted or relied upon unless it falls into any of the hearsay exceptions.

Hitachi will no doubt argue that the screen shot falls within the business records exception set forth in Federal Rule of Evidence 803. The Third Circuit has interpreted this exception to require a qualified witness to attest to the following:

> (1) the declarant in the records had knowledge to make accurate statements; (2) that the declarant recorded the statements contemporaneously with the actions which were the subject of the reports; (3) that the declarant made the record in the regular course of the business activity; and (4) that such records were regularly kept by the business.

*United States v. Furst*, 886 F.2d 558, 571 (3d Cir. 1989).

Here, neither of the deposition witnesses called by Hitachi can adequately attest that the screen shot meets these basic requirements. For example, neither witness testified as to the identity of the individual who entered the catalog date into the computer system, and Mr. Claxton testified that it was "impossible to say who exactly" entered the information into the system. (*See* Schneider Decl. Exhibit 5 at 39). This fact alone counsels against the admissibility of the screen shot. *See Furst*, 886 F.2d at 572 (concluding that proper foundation was not established where, among other things, no witness had knowledge as to the accuracy of the underlying information or the identity of the person who prepared the records). Likewise, neither witness testified whether the declarant had the knowledge to make accurate statements or made the statements as part of his or her regular business activity. Similarly, neither witness testified that the declarant recorded the statements contemporaneously with the actions that were the subject of the screen shot. To the contrary, Ms. Rogers confirmed that the screen shot was printed from the Olib database -- a database that did not even exist until approximately 10 years after the relevant time period. (*See* Schneider Decl. Exhibit 4 at 69). She also testified that the "Cat Date" on the screen shot could have multiple meanings: either the date the entry was added

15

in the system or the date the entry was modified.  (*See id.* at 70).  In light of the lack of foundational evidence, the screen shot is inadmissible.

  **E.**  **The Screen Shot Is Inadmissible Under Fed. R. Evid. 1002.**

    Federal Rule of Evidence 1002 provides that "[t]o prove the content of a writing, . . . the original writing, . . . is required, except as otherwise provided in these rules or by Act of Congress."  Fed. R. Evid. 1002.  Federal Rule of Evidence 1001(3) provides that "[i]f data are stored in a computer or similar device, any printout or other output readable by sight, *shown to reflect the data accurately*, is an 'original.'" (emphasis added).  That Rule also provides that "[a]n 'original' of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it."  *Id.*  In other words, the Court must make a determination as to the intent of the drafters (*i.e.*, did the drafters intend a screen shot of the Olib database to have the same effect as the full CAIRS database) and the accuracy of the document.  *See In re Gulph Woods Corp.*, 82 B.R. 373, 377 (Bankr. E.D. Pa. 1988).  Alternatively, the original is not required if there is evidence that the original has been lost or destroyed or is not obtainable.  Fed. R. Evid. 1004.

    These Rules preclude admissibility for multiple reasons.  First, there can be little doubt that the screen shot is not the original evidence of cataloging.  The cataloging was originally done either on cards or on the CAIRS database, depending on which witness is believed.  While a screen shot of the CAIRS database might constitute an original if it were shown to accurately reflect the database, the Court is not faced with that situation.  Rather, the evidence shows that some or all of the information in the CAIRS database was transferred to the Olib computer system in 2001-2002 and that the screen shot is from the Olib database.  The deposition testimony and exhibits pertaining to the IMechE library contain no indication of how the Olib records were prepared or whether more or less information was entered into Olib than

appeared in CAIRS or whether the screen shot accurately reflected the information in either database. Furthermore, a comparison of the instructions for entering information into CAIRS and the screen shot raises serious questions about the accuracy of the screen shot. Additionally, Hitachi elicited no evidence that the CAIRS database no longer existed in any retrievable form. As such, there is no basis for admitting the screen shot.

> **F.    Even Assuming The Screen Shot Is Admissible, at Best, It Establishes a Cataloging Date of September 17, 1992.**

Even assuming the screen shot is admissible (and it should not be), it does not assist Hitachi in its efforts to prove that the Butterfield paper is prior art under 35 U.S.C. § 102(b). In fact, it does just the opposite.

The last application in the chain of applications resulting in the '738 patent was filed on May 3, 1993. Thus, to qualify as section 102(b) prior art, the Butterfield paper must have been publicly accessible before May 3, 1992. However, the screen shot contains a field termed "Cat Date." (*See* Schneider Decl. Exhibit 10). The date in this field is September 17, 1992. (*See id.*). Ms. Rogers testified that would likely be the date on which the Butterfield paper was cataloged (or the date it was modified). (*See* Schneider Decl. Exhibit 4 at 70, 95). Thus, at best, the screen shot establishes that the Butterfield paper is not prior art under section 102(b) and only that the Butterfield paper *might* be prior art under section 102(a), assuming BorgWarner cannot establish a date of invention prior to September 17, 1992.

## V.    CONCLUSION.

For the foregoing reasons, BorgWarner respectfully requests that this Court grant summary judgment that the Butterfield paper is not a prior art reference as to BorgWarner's '738 patent under either 35 U.S.C. §§ 102(a) or 102(b).  In the event the Court rules that the screen shot is admissible, BorgWarner requests that the Court rule that the earliest possible date on which the Butterfield paper became publicly available is September 17, 1992, thus precluding the Butterfield paper from being prior art under 35 U.S.C. § 102(b).

Dated:  October 4, 2006

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
222 Delaware Ave., 10th Floor
Wilmington, Delaware 19801
(302) 888-6800

Hugh A. Abrams (*pro hac vice*)
Thomas D. Rein (*pro hac vice*)
Lisa A. Schneider (*pro hac vice*)
Marc A. Cavan (*pro hac vice*)
Lara (Fleishman) Hirshfeld (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2006, I caused the following document, **REDACTED VERSION OF BORGWARNER'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT THAT THE BUTTERFIELD PAPER SUBMITTED TO IMECHE DOES NOT CONSTITUTE PRIOR ART UNDER 35 U.S.C. §§ 102(a) OR 102(b)** to be electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Steven J. Balick, Esq.
John G. Day, Esq.
Tiffany Geyer Lydon, Esq.
ASHBY & GEDDES
222 Delaware Avenue, 17th Floor
Wilmington, DE  19801

Additionally, I hereby certify that on October 12, 2006, I caused the foregoing document to be served via email on the following non-registered participants:

Michael D. Kaminski, Esq.
Pavan K. Agarwal, Esq.
Liane M. Peterson
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C.  20007-5109
mkaminski@foley.com
pagarwal@foley.com
lpeterson@foley.com

_____ */S/ MARY B. MATTERER* _____
MARY B. MATTERER (I.D. #2696)
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com
  Attorneys for Defendants and Counterclaimant,
  BORGWARNER INC., and
  BORGWARNER MORSE TEC INC.