IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HITACHI, LTD. and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., ) ) ) Plaintiffs, ) ) v. ) BORGWARNER INC. and BORGWARNER ) MORSE TEC INC., ) ) Defendants. ) ) BORGWARNER INC., ) ) Counterclaimant, ) ) v. ) HITACHI, LTD. and HITACHI AUTOMOTIVE ) PRODUCTS (USA), INC., ) ) Counterdefendants. ) | Civil Action No. 05–048–SLR |

## PLAINTIFFS' RESPONSIVE CLAIM CONSTRUCTION BRIEF

*Of Counsel:*

Kenneth E. Krosin
Michael D. Kaminski
Pavan K. Agarwal
C. Edward Polk
Liane M. Peterson
Foley & Lardner LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007–5109
(202) 672–5300

William J. Robinson
Foley & Lardner LLP
2029 Century Park East, Suite 3500
Los Angeles, CA 90067
(310) 277–2223

Dated: October 23, 2006

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654–1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiffs Hitachi, Ltd. and Hitachi Automotive Products (USA), Inc.*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................1

II. BW'S CLAIM CONSTRUCTION SHOULD BE REJECTED ......................................2

    A. BW's Attempt To Define "Source" [Preamble] As Including MOG Oil Is Completely Erroneous ..................................................................................2

        1. A MOG "Source" Ignores The Central Aspect Of Claims 10 and 11: "*Regulating* The Flow Of Fluid" [Preamble And Supplying Step 4a] To Carry Out A Camshaft Phase Change ................2

        2. A MOG "Source" Ignores The Prosecution History Relative To Controlling Fluid Flow "Internal To The VCT Mechanism Only" ......................................................................................................7

            a. The Relevant Prosecution Regarding Internal Oil Flow.............8

            b. BW's Efforts To Avoid The Prosecution History Fail ............ 11

            c. BW's Efforts To Distort "VCT Mechanism" Also Fail .......... 13

        3. BW's Incorrect Construction Of "Variable Camshaft Timing System" [Preamble] Underscores Its Improper MOG "Source" Construction ................................................................................ 17

        4. BW's Incorrect Construction Of "Inlet Line" [Step 4b] Underscores Its Improper MOG "Source" Construction ...................... 20

        5. BW's Incorrect Rewriting Of "Allowing" and "Blocking" [Step 4c] Underscores Its Improper MOG "Source" Construction ..................................................................................... 21

    B. BW's Constructions Of The "Means" Terms Are Incorrect ............................... 23

        1. BW's Attempt To Exclude The Check Valves And Other Elements From The "Means For Transmitting Rotary Movement To Said Camshaft" [Step 4b] Is Improper .......................... 23

        2. BW's Attempt To Include "Housing" In The "Means For Transmitting Rotary Movement From Said Crankshaft To Said Housing" [Preamble] Is Improper .............................................. 26

    C. BW Improperly Excludes The Piston-Cylinder Embodiment From Its Construction Of "Housing" [Preamble] ............................................................ 27

    D. BW's Attempt to Rewrite The Single "Calculating" Step [Step 2a] Into Two Separate Calculations Should Be Rejected ................................................ 27

# TABLE OF CONTENTS

|   |   |   |   | **Page** |
|---|---|---|---|---|
| | E. | BW's "Vented Spool" Construction [Step 3a] Is Completely Improper .......... 29 | | |
| | F. | BW's Construction Of The Solenoid Terms Is Erroneous ................................ 32 | | |
| | | 1. | BW's Construction Of "Variable Force Solenoid" [Step 3c] Is Completely Inconsistent With The Intrinsic Evidence .......................... 32 | |
| | | | a. The PWM Issue ............................................................................... 32 | |
| | | | b. The Proportionality Issue ............................................................... 36 | |
| | | 2. | BW's Construction of "Connected" [Claim 11] Is Disconnected From The Intrinsic And Extrinsic Evidence .................. 36 | |
| | | 3. | BW's Construction of "Air Gap" [Claim 11] Is Erroneous .................. 37 | |
| III. | CONCLUSION ............................................................................................................... 38 | | | |

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363 (Fed. Cir. 2003) ..................................20

*Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042 (Fed. Cir. 2000) ............................................................................................................................18

*Atofina v. Great Lakes Chemical Corp.*, 441 F.3d 991 (Fed. Cir. 2006) ................... 35-36

*Bell Atlantic Network Services, Inc. v. Covad Comm. Group, Inc.*, 262 F.3d 1258 (Fed. Cir. 2001) ..........................................................................................38

*Cook Biotech Inc. v. Acell Inc.*, 460 F.3d 1365 (Fed. Cir. 2006) ....................................18

*Cross Medical Prods, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293 (Fed. Cir. 2005) ..........................................................................................................25

*Curtiss Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374 (Fed. Cir. 2006) ....................................................................................................... 7, 20, 22

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 234 F.3d 558 (Fed. Cir. 2000) .......................................................................................................19

*Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367 (Fed. Cir. 2005) ......................32

*Intirtool, Ltd. v. Texar Corp.*, 369 F.3d 1289 (Fed. Cir. 2004) ................................. 19-20

*Inverness Med. Switz. GmbH v. Warner Lambert Co.*, 309 F.3d 1373 (Fed. Cir. 2002) ..........................................................................................................................13

*J&M Corp. v. Harley Davidson, Inc.*, 269 F.3d 1360 (Fed. Cir. 2001) ....................24, 26

*Kumar v. Ovonic Battery Co.*, 351 F.3d 1364 (Fed. Cir. 2003) .....................................17

*Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533 (Fed. Cir. 1991) .....................................7

*Medical Instr. and Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205 (Fed. Cir. 2003) ..........................................................................................................................24

*Modine Mfg. v. ITC*, 75 F.3d 1545 (Fed. Cir. 1996) ......................................................19

*Mycogen Plant Science, Inc. v. Monsanto Corp.*, 243 F.3d 1316 (Fed. Cir. 2001) ..........................................................................................................................20

*N. Telecom Ltd. v. Samsung Elecs. Corp.*, 215 F.3d 1281 (Fed. Cir. 2000) ..................13

*O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576 (Fed. Cir. 1997) ............................................27

**TABLE OF AUTHORITIES**

Page(s)

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) ..................13

*On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331 (Fed. Cir. 2006) .................................................................7, 22, 33

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ................7, 18

*Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350 (Fed. Cir. 1999) .................................................................27, 29

*SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278 (Fed. Cir. 2005) ..................13

*Schumer v. Laboratory Computer Systems, Inc.*, 308 F.3d 1304 (Fed. Cir. 2002) .................................................................19

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337 (Fed. Cir. 2001) ................. 32-33

*Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361 (Fed. Cir. 2005) ..................13, 21

*Signtech USA v. Vutek, Inc.*, 174 F.3d 1352 (Fed. Cir. 1999) ..................26

*SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870 (Fed. Cir. 2004) ..................23

*Tandon Corp. v. ITC*, 831 F.2d 1017 (Fed. Cir. 1987) ..................20-21

*Terlep v. Brinkmann Corp.*, 418 F.3d 1379 (Fed. Cir. 2005) ..................13

*V-Formation, Inc. v. Benetton Group SPA*, 401 F.3d 1307 (Fed. Cir. 2005) ..................17

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

35 U.S.C. § 112, ¶ 1 ..................27

35 U.S.C. § 112, ¶ 2 ..................29

35 U.S.C. § 112, ¶ 6 ..................26

**OTHER AUTHORITIES**

Manual of Patent Examining Procedures § 608.01(c)(1) ..................18

Webster's Encyclopedic Unabridged Dictionary of the English Language 1301 (1989) ..................39

I.  **INTRODUCTION**

BW's Opening Claim Construction Brief ("BW's Brief"; D.I. 267) has a single-minded purpose: to twist the claims covering the CTA VCT system that BW ostensibly invented to cover OPA VCT systems of Hitachi and in the prior art that BW certainly did not invent. To implement that improper goal, BW proffers inconsistent claim constructions to fit its differing infringement and validity positions. At times, BW interprets claim terms in a vacuum, ignoring clear intrinsic evidence (*e.g.*, prosecution remarks regarding the prior art Strauber reference, "variable force solenoid," and the "supplying" step). Other times, BW ignores the actual claim terms and focuses just on what the specification discloses (*e.g.*, the "calculating" step, "means for transmitting rotary movement from said crankshaft to a housing," and "vented spool"). To avoid prior art, BW assigns specialized meanings to claim terms, even though the intrinsic evidence does not compel any such meaning (*e.g.*, "housing," and requiring closed loop control), to the point of excluding embodiments in the '738 patent. Quite often, BW relies on nothing but mere attorney argument to assert that a claim construction is "clear."

BW is not even consistent with what it supposedly invented. In the '738 patent, BW stated that "the present invention relates to a *control system* which utilizes a variable force solenoid to directly control the position of a fully vented spool valve which is a useful part of the hydraulic system," (1:24-27); yet in its Brief at 2, BW proclaims that "the invention of the '738 patent relates to *variable camshaft timing (VCT) systems* for adjusting valve timing while the engine is running." A clearer example of a patentee's attempt to broaden a patent for litigation purposes would be hard to find.

BW's repeated failures to support its own proffered claim constructions are only exceeded by its relentless, but meritless, attacks on Hitachi's proffered claim constructions.

Indeed, BW's Brief reads more like a Reply than a Opening brief. In its attempts to rebut Hitachi's claim constructions, BW takes isolated statements from the '738 specification out of context (*e.g.*, as to the "supplying" step and "source"), using them in a way that contradicts the disclosed process for carrying out a phase change between the camshaft and crankshaft. BW also repeatedly relies on selective statements from the incorporated background BW patents, but ignores the statements in these patents expressly rejecting OPA-type VCTs in favor of CTA-type VCTs.

BW's contortion of the terms of the '738 patent to cover both OPA-type and CTA-type VCTs is the result of betting on the wrong technology when it filed the '738 patent. In the early 1990s, BW chose to adopt CTA technology when the rest of the industry was (and still is) using the conventional OPA approach. BW's effort to rewrite its patent to recoup by litigation what it failed to achieve in the marketplace should be rejected. And, Hitachi's claim construction, which stays true to the intrinsic record, should be adopted.

## II.   BW'S CLAIM CONSTRUCTION SHOULD BE REJECTED

Hitachi sets forth below the various reasons why BW's claim construction should be rejected, beginning with the most serious of BW's attempts to turn each of Claims 10 and 11 into the proverbial "nose of wax" to ensnare what BW never invented. The locations of the various claim terms discussed below are identified in the brackets in the headings.

### A.   BW's Attempt To Define "Source" [Preamble] As Including MOG Oil Is Completely Erroneous

#### 1.   A MOG "Source" Ignores The Central Aspect Of Claims 10 and 11: "*Regulating* The Flow Of Fluid" [Preamble And Supplying Step 4a] To Carry Out A Camshaft Phase Change

Central to BW's efforts to twist CTA VCT claims to cover OPA VCT systems is its assertion on p. 15 that the term "source" encompasses "an oil gallery or oil crankcase." BW

2

asserts, typically turning a blind eye to the intrinsic evidence, that this is the "straightforward, plain meaning[]." Claim 10 of the '738 patent, however, recites "a method of *regulating* the flow of hydraulic fluid from a *source*" (emphasis added) in order to change the phase of the camshaft relative to the crankshaft during engine operation. Rather than addressing the recited steps in this method, BW's Brief focuses on oil flow only at engine start-up. The intrinsic record makes clear, however, that start-up oil flow is completely *unregulated* and, thus, is *not* the oil flow being referenced in the claim language.[1]

During start-up, oil from the MOG simply fills the vane chambers or replaces oil lost via leakage. Other than providing oil that *eventually* gets regulated, this very initial *unregulated* flow of oil from the *MOG* is separate from the *regulated* flow of oil passing between the vane recesses for changing the phase of the camshaft relative to the crankshaft, and thus is wholly irrelevant to the method recited in Claim 10.

Notably, BW never explains how its claim interpretations apply to the claimed method of regulating oil flow to effect the phase change. Ironically, BW cites at p. 19 the statement in the '738 specification that "[t]he optimum solution is a control system completely independent of variable parameters, *i.e.*, one independent of engine oil pressure." Engine oil pressure simply has nothing to do with the camshaft phase change, which is at the heart of Claim 10 (and thus 11) and therefore cannot be the "source." The specification plainly states that MOG oil flow is *not* regulated. '738 patent at 7:35-38; 8:20-23; 9:47-50. Because the spool valve does not affect oil flowing from MOG 230, there is no structure disclosed in the '738 patent for

---

[1] Hitachi's Claim Construction Brief has, based upon the intrinsic evidence, demonstrated how the "source" is the volume of oil present on the sides of vanes in the housing (or piston-cylinder).

regulating the flow of MOG oil to implement phase changes.[2] The regulation process and its independence from engine oil pressure also is evident from the wording of Claim 10.

Regulation of oil flow that causes the phase change is done in two parts in Claim 10. The first part requires three initial steps to position the spool as part of the phase change method. Fig. 19 of the '738 patent, reproduced below, illustrates the components in the VCT system that carry out these three steps (with example of moving spool to the right to allow counterclockwise camshaft rotation).

The first three steps are: (1) "sensing the positions of said camshaft and said crankshaft"; (2) "calculating a relative phase angle between said camshaft and said crankshaft, said calculating step using an engine control unit for processing information obtained from said sensing step, said engine control unit further issuing a electrical signal corresponding to said phase angle"; and (3) "controlling the position of a vented spool slidably positioned within a spool valve body, said controlling step being in response to said signal received from said engine control unit, said controlling step utilizing an



FIG. 19

---

[2] Even if the Court determines that the "source" is the MOG, this does not change the fact that other claim phrases still require regulating or controlling the flow of oil internal to the VCT mechanism only, as discussed in Section 2. In addition, if the MOG were determined the "source," there must be a corresponding requirement that the flow from that "source" "through the spool valve" be unregulated.

4

electromechanical actuator to vary the position of said vented spool, said electromechanical actuator comprising a variable force solenoid."

The second part of the regulation requires two additional steps by which, as a consequence of spool movement, oil is supplied from one vane recess (or piston cylinder) 132a/b into the other vane recess 132b/a and the vane rotates the camshaft to the desired relative phase angle: (4) "supplying hydraulic fluid from said source through said spool valve to a means for



transmitting rotary movement to said camshaft, said spool valve selectively allowing and blocking flow of hydraulic fluid through an inlet line and through return lines"; and (5) "transmitting rotary movement to said camshaft in such a manner as to vary the phase angle of said camshaft with respect to said crankshaft said rotary movement being transmitted through a housing said housing being mounted on said camshaft, said housing further being rotatable with said camshaft and being oscillatable with respect to said camshaft."

The "source" in this process is oil already in a recess that gets shifted from one vane recess to another vane recess. This is the oil whose flow is "regulated," and not any "MOG" oil. As shown for example, fluid (in yellow) is *supplied* from the upper vane recess, and then flows through the right-side return line, spool valve, and left-side check valve, into the lower

5

vane recess. Reverse flow cannot occur because the spool valve blocks the other return line. Thus, as part of the "supplying" step, the spool valve allows and blocks oil flow through the inlet and return lines, *i.e.*, *regulates* the supply flow. The camshaft torque pulsations pressurize this oil so that it travels in this closed, internal circuit and rotates the vane (and hence the camshaft) to cause a phase change. In sum, the VCT does *not* use pressurized oil flow from the MOG to change phase; instead, it uses oil flow totally *internal* to the VCT to change phase.

BW's argument that the term "source" in Claim 10 must be interpreted consistently with Claim 4 also should be rejected. Claim 4 recites in part "at least one conduit means (230a) for transferring engine lubricating oil from a pressurized lubricating oil source (230) to said control means." By its terms, Claim 4 refers to the oil for initially filling and make-up oil, not the flow of oil used to cause a phase change. This is plainly seen in Figure 19, where conduit 230a provides initial-fill oil, make-up oil, and lubricating oil. '738 patent at 7:35-40. And, the specification is quite clear that this oil flow is not regulated and hence is *not* used to cause a phase change. *See id.*; 9:47-50.[3] Claim 10 is directed to regulating oil flow and changing phase, and "source" must be understood in this context. Moreover, the Federal Circuit has recognized that "[d]ifferences among claims can also be a useful guide in understanding the meaning of particular claim terms." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*) (citing *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991)).

In view of the foregoing, BW's selective citations to statements about make-up oil flow and initial filling of the vane recesses from the MOG are improper. Because neither type of oil flow causes a phase change, BW's construction is thus well outside, and contradicts, the

---

[3] Claim 4 has other problems, including the fact that camshaft torque reversals do not transfer oil between the MOG and a "control means." For this additional reason, Claim 4 has no relevance to Claim 10.

6

intrinsic evidence. Such an approach is improper, because "[c]laims cannot be of a broader scope than the invention set forth in the specification." *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1340 (Fed. Cir. 2006). Put differently, claims must be adequately grounded in the specification and the meaning of claim terms must be discerned in the context of the disclosed invention and field of art. *Curtiss Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006). BW's proffered construction fails that test.

### 2. A MOG "Source" Ignores The Prosecution History Relative To Controlling Fluid Flow "Internal To The VCT Mechanism Only"

BW's position on the MOG being the "source" is directly refuted by the lengthy prosecution history of the '738 patent. During prosecution, BW heavily amended the claims to cover a "unified invention" and repeatedly argued to the PTO that the prior art Strauber OPA system controlled oil flow that was both internal and external to the VCT mechanism (*i.e.*, *including* MOG oil flow), while the "claimed invention" controlled oil flow internal to the VCT mechanism only (*i.e.*, *excluding* MOG flow). Given BW's litigation-driven attempt to expand the claims beyond its invention, BW naturally wants to free itself of the prosecution shackle relative to the flow of oil "internal to the VCT mechanism only," as well as what constitutes the "VCT mechanism" itself. BW, however, must be held to its amendments and arguments made to the PTO to obtain allowance of the '738 patent.[4]

---

[4] In view of those amendments, it borders on the outrageous for BW to assert that "Hitachi incorrectly ignores what happens at engine start-up," and that "Hitachi's construction cannot be squared with ... startup" (BW's Brief at 34). What happens at engine start-up – the mere replenishing of oil to the vane recesses or piston housings is *completely unrelated* to the *claimed regulation* of oil back and forth between the recesses as the camshaft timing adjustments are made, as well as to any infringement or validity issue in this case. While the MOG provides initial-fill and make-up oil to the claimed VCT, that oil flow is separate from the oil flow used to create the phase change. Claim 10, however, is directed to a method for creating a phase change.

Even setting the prosecution history aside, the language in Claim 10 itself shows that the oil flow is totally *internal* to the VCT mechanism because the oil flows from one vane recess, through the spool valve, to the other vane recess. The preamble to Claim 10 recites, in part, "regulating the flow of hydraulic fluid from a source," and the body of Claim 10 recites "supplying hydraulic fluid from said source through said spool valve to a means for transmitting rotary movement to said camshaft, said spool valve *selectively allowing and blocking flow* of hydraulic fluid through an inlet line and through return lines" (emphasis added). Both of these claim limitations are directed to how the claimed method *controls fluid flow* during the phase change, a point BW does not dispute. Based on the intrinsic record, these phrases require (among other things) directing the flow of oil "internal to the VCT mechanism only" to create a phase change. Put differently, and as discussed *supra*, the MOG simply provides an unregulated supply of initial-fill and make-up oil, and the VCT does not rely on pressurized oil flow from the MOG to cause a phase change. The MOG therefore is not the recited "source" of Claim 10.

### a.   The Relevant Prosecution Regarding Internal Oil Flow

BW's prosecution amendments relative to internal flow hammer home the fact that the MOG is not the source. BW first amended Claim 10 (then Application Claim 11) to recite regulating fluid from a source and added the "supplying" step. Then, in three separate responses to the PTO, BW distinguished Claim 10 from the prior art Strauber patent on the ground that: "The Strauber *et al.* system controls the *flow of oil both internal and external to the VCT mechanism.* The present invention, however, controls the *flow of oil internal to the VCT mechanism only.*" Response of 6/30/94, Response of 11/7/94 and Appeal Brief of 5/24/95 (emphasis added). Not surprisingly, BW's Brief *completely ignores the Strauber patent because Strauber fully illuminates the disclaimer BW made during prosecution.* Figure 1 from

8

the Strauber patent and colorized schematic diagrams depicting the oil flow in Strauber are shown below:



Like traditional OPA systems, Strauber creates phase changes by controlling oil flow that is both internal to the VCT mechanism (in/out of the internal working chambers) and external to the VCT mechanism (oil flowing from the external MOG/oil pump). Kuhn Declaration at ¶¶ 10-18. In other words, Strauber controls oil flow from the external MOG/oil

9

pump into the VCT mechanism, together with draining oil out of the VCT mechanism back to the oil sump, to create a phase change.

Oil (shown in red) from the MOG/oil pump is controlled to flow into one of two working chambers 15,16 using movable spool 17. As shown in the bottom left figure, with spool 17 in its initial position (spool to the right), Strauber allows pressurized oil flowing from the MOG/oil pump to flow to first working chamber 16, together with oil simultaneously draining from second working chamber 15 back to the engine oil circuit/oil sump. *Id.*, at 3:38-61.[5] This oil flow pushes an actuator 6 (shown in blue) to the left. The movement of actuator 6 causes certain teeth to move relative to one another to thereby rotate camshaft 11 relative to the crankshaft. *Id.* at 4:20-23. Thus, Strauber controls oil flowing from the MOG/oil pump into and out of the working chambers to create the phase change.

As shown in the bottom right figure, energizing solenoid 22 makes an armature, and therefore spool 17, move to the left. This opens the path from the MOG to working chamber 15, and closes it for working chamber 16. As a result of spool 17 repositioning, external oil flowing from the MOG/oil pump flows into working chamber 15 to push actuator 6 to the right. Thus, controlling oil flow from the MOG/oil pump into chamber 15 (and draining oil from chamber 16 back to the oil sump) creates a phase change in the opposite direction. *Id.* at 3:62-4:23.

In sum, Strauber relies on pressurized engine oil flowing from the MOG/oil pump to create the phase change. Hence, a person of ordinary skill in the art reading the '738 patent prosecution history would understand readily that BW was distinguishing the controlled oil

---

[5] Being an OPA system, Strauber must address the problem of insufficient oil pressure from the MOG at engine start-up. Strauber employs a large spring 41 that holds the actuator 6 in an

10

flow of its CTA-type VCT, in which the controlled oil flow is entirely internal to the VCT mechanism to create a phase change, over the controlled oil flow of an OPA-type VCT, in which the controlled oil flow is from the external MOG/oil pump into and out of the VCT mechanism to create a phase change. Kuhn Decl. at ¶¶ 10-33. This is illustrated below relative to the diagrams depicting the operation of Fig. 19 of the '738 versus Strauber.[6]



b.  **BW's Efforts To Avoid The Prosecution History Fail**

Having made unequivocal and repeated statements to the PTO, BW now wants to rewrite the prosecution and create ambiguity where none exists. BW's attempt to side-step its clear prosecution disclaimer should be rejected out-of-hand. First, BW incredibly argues (Brief at 17) that the disclaimer is not clear and unambiguous. That argument has no merit

---

initial phase position until the MOG oil pressure builds to the required level. Strauber at 4:58-62.

[6] The attempt by BW's expert Ribbens in his rebuttal report on validity to recast BW's disclaimer as somehow relating to oil viscosity or potential pressure on the ends of the spool is simply an attempt at obfuscation. As explained *infra*, BW's prosecution remarks regarding Strauber did not relate to using oil pressure on the ends of the spool to control spool position.

11

because, as outlined above, BW repeatedly differentiated its "invention" from Strauber based precisely on the difference between controlling flow that is internal only versus controlling flow that is both internal and external. The scope of the claim must be construed accordingly.[7] BW's cited cases are not to the contrary.[8]

Next, BW argues that its prosecution statements were simply extensions of the disclaimer of its prior DPCS system taught in the background patents incorporated by reference into the '738 patent. BW's Brief at 18-20. This argument also fails. BW's prosecution remarks at issue were not disclaiming its previous DPCS patents, they were distinguishing the claims in the '738 patent application over Strauber. Kuhn Declaration at ¶¶ 21-23. Tellingly, BW fails to discuss the actual prosecution history or even mention the Strauber patent. In the same responses to the PTO where it disclaimed the Strauber patent, BW also addressed its prior art '659 patent, in which pressurized oil is applied to either end of the spool to cause movement

---

[7] *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1326-27 (Fed. Cir. 2003); *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1383-84 (Fed. Cir. 2005); *Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1372-73 (Fed. Cir. 2005) ("Where an applicant argues that a claim possesses a feature that the prior art does not possess in order to overcome a prior art rejection, the argument may serve to narrow the scope of otherwise broad claim language.").

[8] The cases BW cites (*Inverness, Sandisk, Northern Telecom,* and *Omega Eng'g*) do not help its position. *Omega Eng'g* directly supports Hitachi, as the court found a disclaimer based precisely on repeated arguments to the PTO. *Omega Eng'g*, 334 F.3d at 1326-27. In *Northern Telecom*, the disclaimer asserted by defendant was separate from the point of distinction that patentee made in differentiating the invention over the prior art during prosecution. *N. Telecom Ltd. v. Samsung Elecs. Corp.*, 215 F.3d 1281, 1294 (Fed. Cir. 2000). Here, Hitachi's interpretation adopts precisely the disclaimer BW argued. *Iverness* involved nothing like the present case of repeated, direct disclaimers over the prior art and the prosecution remarks did not indicate use of a term in a limited sense. *Inverness Med. Switz. GmbH v. Warner Lambert Co.*, 309 F.3d 1373, 1381-82 (Fed. Cir. 2002). Finally, in *SanDisk*, the prosecution remarks were simply speaking about the "claimed memory system" having a plurality of cells as having particular features, but did not require that every memory cell, even those not subject to the claimed method, must have the claimed features. *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1289-90 (Fed. Cir. 2005). By contrast, Hitachi's interpretation simply adopts the precise arguments that BW made to the PTO about the claimed method, and Hitachi is not seeking to apply them to unclaimed features.

12

(the so-called "DPCS" approach). If BW's remarks were meant to distinguish its claims from the "DPCS" approach, it logically would have made its argument over the '659 patent, not Strauber (which, like the '738 patent, uses a solenoid to control spool position rather than oil pressure).

Properly considering the record created *before the PTO*, and in the context of distinguishing over Strauber, BW's disclaimer is both clear and unmistakable: The claims of the '738 patent (including Claims 10 and 11) do *not* cover a system that controls oil flow both internal and external to the VCT mechanism, *i.e.*, oil flow from the MOG is not controlled in the claimed method. Kuhn Decl. at ¶¶ 10-33.

### c. BW's Efforts To Distort "VCT Mechanism" Also Fail

As part of its attack on the "internal flow" issue, BW argues that the reference to a "VCT mechanism" in the prosecution history is unclear because this phrase "is not used in the specification or claims of the '738 patent, and is not used elsewhere in the prosecution." BW's Brief at 17. BW also argues that this phrase (and thus the flow path) could be interpreted to include the MOG, fluid lines, the internal lands of the spool and the vane housing, though not the ends of the spool. BW's Brief at 17-19. BW's expert also states that the "VCT mechanism" must include the spool valve and MOG. *See* Ex. 17 to BW's Brief, at 36. Again, BW's assertions do not stand up to scrutiny. For example, BW's efforts to define what is or is not included in the "VCT mechanism" results in irreconcilable inconsistencies in its arguments, as illustrated below.