## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HITACHI, LTD. and HITACHI AUTOMOTIVE<br>PRODUCTS (USA), INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>BORGWARNER INC.<br>and BORGWARNER MORSE TEC INC.,<br><br>    Defendants.<br><hr>BORGWARNER INC.,<br><br>    Counterclaimant,<br><br>v.<br><br>HITACHI, LTD. and HITACHI AUTOMOTIVE<br>PRODUCTS (USA), INC.,<br><br>    Counterdefendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 05-048-SLR<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
UNDER THE WRITTEN DESCRIPTION REQUIREMENT OF 35 U.S.C. § 112, ¶ 1
BASED ON DEFENDANTS' CLAIM CONSTRUCTION OF CLAIM 10**

*OF COUNSEL:*

SIDLEY AUSTIN BROWN & WOOD, LLP
Hugh A. Abrams
Thomas D. Rein
Lisa Schneider
Marc A. Cavan
Lara V. Hirshfeld
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Dated: November 13, 2006

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
MORRIS JAMES, HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
(302) 888-6800
mmatterer@morrisjames.com
*Attorneys for BorgWarner Inc. and
BorgWarner Morse TEC Inc.*

## TABLE OF CONTENTS

I.      STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ...............................1

II.     SUMMARY OF ARGUMENT ................................................................................1

III.    STATEMENT OF THE FACTS.............................................................................4

IV.     APPLICABLE LAW ..............................................................................................5

V.      ARGUMENT ...........................................................................................................9

        A.    At a Minimum, Genuine Issues of Material Fact Exist Concerning
              Whether the Written Description Conveys the Full Scope of the Claimed
              Invention to One of Skill in the Art Under BorgWarner's Claim
              Interpretation. ..............................................................................................9

              1.    Hitachi's Motion Does Not Accept BorgWarner's Claim
                    Construction, as It Contends.................................................................9

              2.    Because BorgWarner's Constructions Do Not Limit the Control
                    System Based on the Actuation Methodology (OPA or CTA),
                    Hitachi's Written Description Attack Is Misdirected. ..............................10

              3.    Even if BorgWarner's Constructions Implicated How or Where Oil
                    Is Pressurized to Cause Vane Actuation for a Phase Change,
                    Hitachi's Motion Would Fail. .................................................................12

              4.    Because OPA Was Well Known in the Art at the Time of Filing,
                    There Was No Need to Describe It in the Specification. .........................14

              5.    The Amendment to Claim 10 During Prosecution Does Not Help
                    Hitachi. ...............................................................................................15

        B.    At a Minimum, Genuine Issues of Material Fact Exist Concerning
              Whether the Written Description Provides Support for "Source" and
              "Supplying Step" Under BorgWarner's Claim Interpretation. .............................17

              1.    The Specification Provides Written Description Support for the
                    "Source" Under BorgWarner's Claim Construction.................................17

              2.    The Specification Provides Written Description Support for the
                    "Supplying Step" Under BorgWarner's Claim Construction....................19

              3.    The Cases Cited by Hitachi Hardly Compel Summary Judgment............22

VI.     CONCLUSION........................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Advanced Display System, Inc, v. Kent State Univ.,*
    212 F.3d 1272 (Fed. Cir. 2000)..................................................................................12

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ....................................................................................................6

*Atmel Corp. v. Info. Storage Devices, Inc.,*
    198 F.3d 1374 (Fed. Cir. 1999)..................................................................................14

*In re Berg,*
    140 F.3d 1428 (Fed. Cir. 1998)..................................................................................16

*Boston Scientific Scimed, Inc. v. Cordis Corp.,*
    392 F. Supp. 2d 676 (D. Del. 2005) .........................................................................6, 7

*Cornell Univ. v. Hewlett-Packard Co.,*
    313 F. Supp. 2d 114 (N.D.N.Y. 2004) .............................................................2, 3, 8, 10

*Cook Biotech Inc. v. ACell, Inc.,*
    460 F.3d 1365 (Fed. Cir. 2006)..................................................................................12

*Enzo Biochem Inc. v. General-Probe, Inc.,*
    323 F.3d 956 (Fed. Cir. 2002)..................................................................................6, 19

*Falko-Gunter Falkner v. Inglis,*
    448 F.3d 1357 (Fed. Cir. 2006)....................................................................................7

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
    234 F.3d 558 (Fed. Cir. 2000)....................................................................................12

*Fonar Corp. v. Gen. Elec. Co.,*
    107 F.3d 1543 (Fed. Cir. 1997)..................................................................................14

*In re Gardner,*
    475 F.2d 1389 (Cust. & Pat. App. 1973).....................................................................17

*In re Gay,*
    309 F.2d 769 (Cust. & Pat. App. 1962).......................................................................14

*Gentry Gallery, Inc. v Berkline Corp.,*
    134 F.3d 1473 (Fed. Cir. 1998)..................................................................................24

*In re Howarth,*
    654 F.2d 103 (Cust. & Pat. App. 1981).......................................................................14

*Laitram Corp. v. Cambridge Wire Cloth Co.*,
    863 F.2d 855 (Fed. Cir. 1988)...........................................................11

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
    433 F.3d 1373 (Fed. Cir. 2006)........................................................17

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005)..................................................4, 7, 24

*Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*,
    75 F.3d 1545 (Fed. Cir. 1996).....................................................12, 13

*Netword, LLC v. Centraal Corp.*,
    242 F.3d 1347 (Fed. Cir. 2001)..........................................................8

*Pa. Coal Ass'n v. Babbitt*,
    63 F.3d 231 (3d Cir. 1995) ................................................................6

*Penda Corp. v. United States*,
    29 Fed. Cl. 533 (1993).............................................................2, 8, 10

*Perkin-Elmer Corp. v. Computervision Corp.*,
    732 F.2d 888 (Fed. Cir. 1984)............................................................7

*Pharmacia & Upjohn Co. v. Sicor & Sicor Pharms., Inc.*,
    447 F. Supp. 2d 363 (D. Del. 2006) ...................................................5

*PIN/NIP, Inc. v. Platte Chem. Co.*,
    304 F.3d 1235 (Fed. Cir. 2002).......................................................23

*Reiffin v. Microsoft Corp.*,
    214 F.3d 1342 (Fed. Cir. 2000)..................................................2, 8, 10

*S3, Inc. v. nVIDIA Corp.*,
    259 F.3d 1364 (Fed. Cir. 2001).......................................................14

*SanDisk Corp. v. Memorex Prods., Inc.*,
    415 F.3d 1278 (Fed. Cir. 2005).......................................................11

*Schwarz Pharma, Inc. v. Warner-Lambert Co.*,
    95 Fed. Appx. 994 (Fed. Cir. 2004) ..............................................12, 13

*Space Sys./Loral, Inc. v. Lockheed Martin Corp.*,
    405 F.3d 985 (Fed. Cir. 2005)........................................................20

*Spectra-Physics, Inc. v. Coherent, Inc.*,
    827 F.2d 1524 (Fed. Cir. 1987)..........................................................7

*TurboCare Div. of Demag Delaval Turbomach. Corp. v. Gen. Elec. Co.*,
    264 F.3d 1111 (Fed. Cir. 2001)..................................................................22, 23

*Union Oil Co. of Cal. v. Atl. Richfield Co.*,
    208 F.3d 989 (Fed. Cir. 2000)...........................................................................7

*Univ. of Cal. v. Eli Lilly*,
    119 F.3d 1559 (Fed. Cir. 1997)........................................................................23

*Univ. of Rochester v. G.D. Searle & Co., Inc.*,
    375 F.3d 1303 (Fed. Cir. 2004)........................................................................23

*U.S. Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997).........................................................................6

*Vas-Cath Inc. v. Mahurkar*,
    935 F.2d 1555 (Fed. Cir. 1991).......................................................2, 6, 7, 8, 9, 10

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.*,
    418 F.3d 1326 (Fed. Cir. 2005).........................................................................6

*In re Zletz*,
    893 F.2d 319 (Fed. Cir. 1989)...........................................................................6

*Zygo Corp. v. Wyko Corp.*,
    79 F.3d 1563 (Fed. Cir. 1996)...................................................................2, 8, 10

## FEDERAL STATUTES

35 U.S.C. § 112 ....................................................... 1, 4, 6, 7, 12, 18, 22, 23, 25

35 U.S.C. § 282 ...............................................................................................6

## OTHER REFERENCES

Fed. R. Civ. P. 56(c) .......................................................................................5

Manual of Patent Examining Procedure ("MPEP") § 2163.07(b)..............................12

BorgWarner, Inc. and BorgWarner MorseTec, Inc. (collectively "BorgWarner") hereby oppose Hitachi's motion for summary judgment for invalidity under 35 U.S.C. § 112, ¶ 1, assuming BorgWarner's claim construction is adopted. Hitachi's motion is built on several incorrect assertions, and should be denied.

## I.    STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

The present case is a declaratory judgment patent case involving U.S. Patent No. 5,497,738 ("the '738 patent"), which relates to variable camshaft timing systems. BorgWarner asserts that claims 10 and 11 of the '738 patent are valid and infringed. Fact discovery is closed and the parties have submitted their proposed claim constructions for asserted claims 10 and 11 of the '738 patent. *Markman* briefs and expert reports have been served.

## II.    SUMMARY OF ARGUMENT

Hitachi spends the first half of its brief re-hashing its own claim construction arguments premised on irrelevant extrinsic evidence. This underscores that Hitachi's motion is little more than an attempt to influence the Court's claim construction rulings with yet another claim construction brief. Rather than re-hashing why Hitachi's claim construction arguments are wrong in yet another brief, BorgWarner will direct the Court to its claim construction briefs, including its sur-reply which was prompted by new arguments made and extrinsic evidence offered for the first time by Hitachi in its responsive claim construction brief.

The gravamen of this motion is Hitachi's contention that because BorgWarner is asserting its claims against an "OPA VCT," there must be written description support for the "OPA VCT" itself. That, however, is fallacious. Under Hitachi's view, if BorgWarner were asserting the claims against a VCT system in a Ford Mustang, it would have to fully describe how that system actuates the oil to change the valve timing in the environment of that specific

Mustang engine, or indeed every single vehicle accused of infringement. Not surprisingly, the written description requirement calls for no such thing.

The written description requirement pertains only to the invention "as claimed." *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1346 (Fed. Cir. 2000) ("[T]he written description requirement requires that the specifications of these patents describe the inventions claimed in these patents."); *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991) ("The invention is, for purposes of the 'written description' inquiry, *whatever is now claimed*." (emphasis added)); *Penda Corp. v. United States*, 29 Fed. Cl. 533, 553 (1993) ("When assessing compliance with section 112, analysis should begin with the second paragraph of that section, because where the first paragraph of that section uses the term 'invention' it could only be referring to the *claimed invention* as set forth by the applicant." (emphasis added)); *cf. Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1567 (Fed. Cir. 1996) ("[I]n keeping with the statutory mandate, our precedent is clear that the parameters of a section 112 inquiry are set by the claims."). Thus, a patent need not describe all the different environments in which a claimed invention can be used or found. *See, e.g., Cornell Univ. v. Hewlett-Packard Co.*, 313 F. Supp. 2d 114, 138 (N.D.N.Y. 2004) (rejecting "defendant's contention that plaintiff is improperly attempting to broaden the scope of the claims to include an undisclosed method" that was well known in the art because the "patent teaches an invention which can be used in a variety of different environments").[1]

---

[1] In *Cornell*, the court rejected the defendant's argument that the patent was limited to a dispatch stack that contained a false dependency field, as the preferred embodiment did. 313 F. Supp. 2d at 137. The court found that a process called "register renaming" was known in the art at the time of the patent and that this process would eliminate false dependencies before they entered the dispatch stack. *Id.* The term "register renaming" did not appear in the patent at issue or in articles that were cited in the patent, but the defendant did not dispute that register renaming was known as of the time of the patent. *Id.* at 137 & n.12. The present case is analogous to

2

Further, because Hitachi's motion is based on BorgWarner's claim constructions, the critical question is whether there is support in the specification for the claim constructions that BorgWarner has advanced. Despite paying lip service to this, Hitachi repeatedly ignores BorgWarner's constructions and focuses almost exclusively on whether there is support in the specification for an "OPA VCT." But this is beside the point because OPA (oil pressure actuation) is neither part of BorgWarner's claim constructions nor part of the invention "as claimed." Contrary to Hitachi's suggestion, the claimed invention is a "closed loop" control system that is able to continuously and precisely vary the timing of a camshaft relative to a crankshaft through closed loop control, a variable force solenoid, and a vented spool. This novel control system can be used in many environments, not just one that uses cam torque to actuate the vanes. *How* or *where* the oil is actuated – whether it is through cam torque reversals only, through oil pressure actuation, or from some combination of the two – is simply not relevant under BorgWarner's claim constructions. *How* or *where* the oil is actuated, under BorgWarner's constructions, is unrestricted.

Even if the mechanism for pressurizing the oil to cause a phase change were relevant to the claimed invention, Hitachi admits that "[u]sing engine oil pump pressure and external flow to change the phase and without internal check valves in the VCT [*i.e.*, an OPA system] was well known in the art at the time of filing the '738 patent application." (Pls.' Mem. Supp. Summ. J. Noninfringement, D.I. 275 at p. 35). As a result, there was no need to spell out the details of OPA systems in the background of the '738 patent. Because OPA systems were well known, Hitachi knows that an enablement challenge would be futile. Hitachi is therefore

---

*Cornell* because OPA is well known in the art, and the patented VCT control system can function in an OPA environment. Accordingly, the '738 "patent teaches an invention which can be used in a variety of different environments." *See id.* at 138.

trying to thread the § 112, ¶ 1 needle by only advancing a written description challenge, even though Hitachi relies on case law acknowledging that enablement and written description "usually rise and fall together." *See, e.g., LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005).

In any event, because Hitachi has not shown and cannot show – much less by clear and convincing evidence – that the claimed invention, as construed by BorgWarner, lacks support in the specification, Hitachi's motion must fail. And, on this motion, Hitachi must do more: it must show an absence of genuine issues of material fact. That, however, it cannot do, because both the opinions of BorgWarner's technical expert, William Ribbens, *and* the opinions of Hitachi's own experts rebut Hitachi's misguided assertions. Indeed, as Hitachi's own experts have confirmed, the patents incorporated by reference into the '738 patent fully describe the disputed claim elements *under BorgWarner's claim interpretation*. (*See* Ex. 26 Claim Chart to Kuhn Invalidly Report (Ex. 4 to Summary Judgment Declaration of Mary Matterer ("Matterer SJ Decl.")), at pp. 44, 49). Nothing more is required to satisfy the written description requirement under BorgWarner's constructions; accordingly, Hitachi's motion must be denied.

## III.    STATEMENT OF THE FACTS

Hitachi's motion asks the Court to find claims 10 and 11 invalid as a matter of law for failing to meet the written description requirement of § 112, ¶ 1, based on *BorgWarner's* construction of select claim terms. More specifically, Hitachi contends that two terms from the preamble of claim 10 and one step from the body of claim 10 lack written description support under BorgWarner's construction (Pls.' Mem. Supp. J. Invalidity Written Description, D.I. 273 ("Hitachi SJ Br.") at p. 4) – this despite the fact that under BorgWarner's claim constructions, the preamble does not limit the claims. (*See* BorgWarner Opening Claim Construction Brief, D.I.

4

267 ("BW CC Br.") at p. 13; BorgWarner Responsive Claim Construction Brief, D.I. 291 ("BW Resp. CC Br.") at p. 11).

Hitachi's principle contention in its motion is that the specification does not show or describe an OPA embodiment of the claimed invention. However, as Hitachi has acknowledged, OPA systems were well known in the art prior to the time the application for the '738 patent was filed. (Kuhn Invalidity Rep. (Matterer SJ Decl. Ex. 1) at ¶ 31 (citing, *e.g.*, Strauber U.S. Patent No. 5,012,774); Pls.' Mem. Supp. Summ. J. Noninfringement at p. 35 ("Using engine oil pump pressure and external flow to change the phase and without internal check valves in the VCT was well known in the art at the time of filing of the '738 patent application.")). One would therefore understand how to use the '738 patented control system in an OPA environment. (Ribbens Validity Rep. (Ex. 2 of William B. Ribbens Declaration ("Ribbens SJ Decl.")) at ¶¶ 115, 116, 122). Indeed, in this motion, Hitachi does not even dispute that the '738 patent specification enables one of skill in the art to use BorgWarner's claimed control system invention in an OPA environment or otherwise. Hitachi's motion is brought on written description grounds only, not enablement grounds.

In any event, the issue in this motion is whether there is support in the specification for the "claimed invention" as construed by BorgWarner. And here, the specification provides ample support for the challenged BorgWarner claim constructions, as confirmed by the expert testimony of Dr. Ribbens and by the testimony of Hitachi's expert as well. (*See* Ribbens Validity Rep. (Ribbens SJ Decl. Ex. 2) at ¶ 128).

## IV.     APPLICABLE LAW

Summary judgment must be denied if any genuine issue as to any material fact exists. Fed. R. Civ. P. 56(c); *see, e.g., Pharmacia & Upjohn Co. v. Sicor & Sicor Pharms., Inc.,*

447 F. Supp. 2d 363, 376 (D. Del. 2006) (denying motion for summary judgment because genuine issues of material fact existed on whether the written description of the patent was sufficient to support the claims); *Boston Scientific Scimed, Inc. v. Cordis Corp.*, 392 F. Supp. 2d 676, 684 (D. Del. 2005) (denying motion for summary judgment because "there exist genuine issues of material fact regarding whether the . . . patent is invalid for failure to comply with the written description requirement").  In considering Hitachi's motion, the Court must review the evidence and construe all inferences in the light most favorable to BorgWarner, the non-moving party.  *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1335 (Fed. Cir. 2005) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995) (requiring the court to "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion").

Compliance with the requirements of § 112, ¶ 1 is a question of fact based on the specification's disclosure to one of skill in the art.  *See Enzo Biochem Inc. v. Gen-Probe, Inc.*, 323 F.3d 956, 962-63 (Fed. Cir. 2002); *Vas-Cath*, 935 F.2d at 1563.  In addition, a patent enjoys a presumption of validity, which can be overcome only through facts supported by clear and convincing evidence.  *See* 35 U.S.C. § 282; *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1564 (Fed. Cir. 1997).  The presumption of validity applies, in part, because issued patents have already been evaluated for § 112, ¶ 1 issues by the examiner during the examination process. *See In re Zletz*, 893 F.2d 319, 322 (Fed. Cir. 1989) ("[I]f the claims do not 'particularly point[ ] out and distinctly claim[ ],' in the words of section 112, that which examination shows the applicant is entitled to claim as his invention, the appropriate PTO action is to reject the claims

for that reason."). Therefore, at summary judgment, a moving party seeking to invalidate a patent must submit clear and convincing evidence of facts of invalidity such that no reasonable jury could find otherwise. *See Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984).

The proper test for compliance with the written description requirement of § 112, ¶ 1 involves the examination of the patent specification in conjunction with the knowledge of those skilled in the art at the time of the invention. *See Vas-Cath*, 935 F.2d at 1563. A claim will not be invalidated on § 112, ¶ 1 grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language. *See Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 989, 997 (Fed. Cir. 2000). Because specifications are written to one of skill in the art, it is unnecessary to spell out every detail of the invention in the specification. *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1366 (Fed. Cir. 2006) ("'[O]nly enough [detail] must be included to convince a person of skill in the art that the inventor possessed the invention and to enable such a person to make and use the invention without undue experimentation.'" (quoting *LizardTech*, 424 F.3d at 1345)). In fact, it is an error not to consider the understandings of persons skilled in the art in analyzing the written description requirement. *See, e.g., Union Oil*, 208 F.3d at 997 (stating that "the Patent Act and this court's case law require *only sufficient description to show one of skill in the refining art* that the inventor possessed the claimed invention at the time of filing" (emphasis added)). The specification preferably omits from disclosure any routine technology that is well known at the time of the application. *See Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1534 (Fed. Cir. 1987) ("A patent need not teach, and preferably omits, what is well known in the art."); *Boston Scientific*, 392 F. Supp. 2d at 681.

7

Further, the written description requirement only applies to the invention "as claimed." *Reiffin*, 214 F.3d at 1346 ("[T]he written description requirement requires that the specifications of these patents describe the inventions claimed in these patents."); *Vas-Cath*, 935 F.2d at 1563-64 ("The invention is, for purposes of the 'written description' inquiry, *whatever is now claimed*." (emphasis added)); *Penda*, 29 Fed. Cl. at 553 ("When assessing compliance with section 112, analysis should begin with the second paragraph of that section, because where the first paragraph of section 112 uses the term 'invention' it could only be referring to the *claimed invention* as set forth by the applicant." (emphasis added)); *cf. Zygo*, 79 F.3d at 1567 ("[I]n keeping with the statutory mandate, our precedent is clear that the parameters of a section 112 inquiry are set by the claims."). Thus, a patent need not describe all the different environments in which a claimed invention can be used or found. *See, e.g.*, *Cornell*, 313 F. Supp. 2d at 138 (rejecting "defendant's contention that plaintiff is improperly attempting to broaden the scope of the claims to include an undisclosed method" that was well known in the art because the "patent teaches an invention which can be used in a variety of different environments"). It is therefore unnecessary to describe or show the invention in all the various embodiments in which it can be found. *See Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001) ("[T]he specification need not present every embodiment or permutation of the invention . . . .").

## V.    ARGUMENT

### A.    At a Minimum, Genuine Issues of Material Fact Exist Concerning Whether the Written Description Conveys the Full Scope of the Claimed Invention to One of Skill in the Art Under BorgWarner's Claim Interpretation.

#### 1.    Hitachi's Motion Does Not Accept BorgWarner's Claim Construction, as It Contends.

Despite professing to accept BorgWarner's claim construction, Hitachi devotes much of its brief to its own gloss of the claim terms and the ancillary issue of whether the vane actuator is OPA or CTA. For example, Hitachi's brief rehashes alleged differences regarding whether oil used to cause a phase change has been pressurized via an oil pump or via camshaft torque.[2] All these arguments are irrelevant to this motion. By its terms, Hitachi's motion is directed at the claims as construed by BorgWarner, and under BorgWarner's constructions, the claims are not limited to CTA or OPA actuation. Rather, under BorgWarner's constructions, the claimed control system is independent of *how* or *where* the oil is pressurized in order to cause the vanes to actuate a phase change.

Nor do BorgWarner's constructions of the "source" and the "method of regulating" include Hitachi's limitation that the flow of oil must be regulated *directly* from the source to the means for transmitting rotary movement *in order to cause a phase change of the camshaft relative to the crankshaft.* Under BorgWarner's construction, the oil that originates in

---

[2] Even if the claim construction issue raised by Hitachi were relevant to this motion, Hitachi's reliance on later-filed patents and patent applications (*see* Hitachi SJ Br. at pp. 12, 17 n.8, 20), is entitled to no weight. *See Vas-Cath*, 935 F.2d at 1563 (stating that a proper written description analysis requires consideration of the skill in the art at *the time of filing*). In its brief, Hitachi discusses BorgWarner's U.S. Patent No. 5,657,725 ("the '725 patent") and U.S. Patent Publication No. 2006/0086332 ("2006 application"), both of which were filed after the application that resulted in the '738 patent was filed. (Hitachi SJ Br. at pp. 12, 17 n.8, 20). Moreover, while Hitachi implies that the later BorgWarner '725 patent references the '738 patent, the '725 patent in fact makes no reference whatsoever to the '738 patent. (*Id.* at pp. 12, 20).

the source merely needs to be regulated somewhere in the VCT system. That construction is not even addressed in Hitachi's motion.

Also under BorgWarner's constructions, the preamble does not limit the claims. Accepting BorgWarner's constructions thus means that Hitachi's motion should be denied, with the possible exception of Hitachi's contentions regarding the "supplying step" which is not part of the preamble. However, under BorgWarner's construction of the supplying step, the spool valve must simply be capable of selectively allowing and blocking the flow of fluid through an inlet and through return lines. BorgWarner's construction does not include Hitachi's limitation that the spool valve must selectively allow and block the flow of oil from the main oil gallery to the vane actuator "for creating the phase shift" (Hitachi SJ Br. at pp. 23-24) or selectively allow and block *both* the inlet and return lines themselves. Accordingly, Hitachi's motion, which is based on a misinterpretation of BorgWarner's constructions, should be denied.

> **2.    Because BorgWarner's Constructions Do Not Limit the Control System Based on the Actuation Methodology (OPA or CTA), Hitachi's Written Description Attack Is Misdirected.**

Hitachi contends that the claimed control system must be described or shown in an OPA environment if BorgWarner wants to accuse such a system of infringement. That, however, is incorrect. As stated above, the written description requirement is directed at the invention "as claimed." *Reiffin*, 214 F.3d at 1346; *Vas-Cath*, 935 F.2d at 1563-64; *Penda*, 29 Fed. Cl. at 553; *cf. Zygo*, 79 F.3d at 1567. It is therefore unnecessary to show the claimed invention in all the various environments in which it can be found. *See Cornell*, 313 F. Supp. 2d at 138.

Although the vane actuation method in the *preferred embodiment* of the patent and the incorporated patents is a CTA method, the invention set forth in asserted claims 10 and

10

11 is not limited to a specific vane actuation method.  *See SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1286 (Fed. Cir. 2005) ("[I]t is axiomatic that without more the court will not limit claim terms to a preferred embodiment described in the specification."); *Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 865 (Fed. Cir. 1988) ("References to a preferred embodiment, such as those often present in a specification, are not claim limitations.").  The '738 specification itself reinforces this, explaining that the patent is "limited solely by the terms" of the claims themselves.  ('738 patent, col. 9 lines 57-58).  This is because, as the specification further indicates, "it will be apparent to those skilled in the art that suitable modifications, variations, and equivalents may be made without departing from the scope of the invention."  (*Id.* at col. 9 lines 54-57).

The prosecution history provides further confirmation that the control system of the '738 patent is not limited to a specific vane actuation system.  During prosecution, the applicants specifically stated that "[f]or the present invention, the VCT system used may be . . . any one which uses a proportional spool valve to regulate flow of engine oil to control the phase angle adjustment."  (Appeal Br. from '738 patent Prosecution History (Matterer SJ Decl. Ex. 3) at BW 2187 (emphasis added)).  Thus, far from limiting the scope of the invention as Hitachi suggests, the applicants made it clear to the Patent and Trademark Office ("PTO"), and thus to the public at large, that their invention is directed to any control system using the claimed elements to regulate the flow of oil to adjust camshaft phase angle, whether the vane actuation system is OPA, CTA, or one combining aspects of both.  Indeed, the initial claims filed by the applicant (which are part of the specification) included claims to a hydraulic system that were not even limited to an internal combustion engine, let alone a cam torque actuated VCT system.

### 3.   Even if BorgWarner's Constructions Implicated How or Where Oil Is Pressurized to Cause Vane Actuation for a Phase Change, Hitachi's Motion Would Fail.

Several of the patents incorporated by reference into the specification of the '738 patent include a description of OPA systems (*see, e.g.*, '804 patent, col. 1 line 53-67), as Hitachi's own expert acknowledges (*see* Kuhn Invalidity Rep. (Matterer SJ Decl. Ex. 1) at ¶ 213). The descriptions of the structures utilized in these OPA systems are incorporated into the '738 patent specification and provide § 112, ¶ 1 support if that were needed. *See Cook Biotech Inc. v. ACell, Inc.*, 460 F.3d 1365, 1376 (Fed. Cir. 2006); *Advanced Display Sys., Inc, v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000); Manual of Patent Examining Procedure ("MPEP") § 2163.07(b).

Contrary to Hitachi's suggestion, the fact that the incorporated *prior* patents also mention shortcomings of prior OPA systems does not restrict the disclosure of the '738 patent. This makes sense because the other BorgWarner patents necessarily invoke *different claimed inventions*. Whether or not prior claimed inventions would or would not have benefits when used with OPA is immaterial to whether the '738 patent would be compatible with OPA. For similar reasons, the Federal Circuit has limited the extent to which the parameters of prior patents may be incorporated by reference. *See, e.g., Schwarz Pharma, Inc. v. Warner-Lambert Co.*, 95 Fed. Appx. 994, 997-98 (Fed. Cir. 2004) (unpublished); *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1553 (Fed. Cir. 1996) ("[I]ncorporation by reference does not convert the invention of the incorporated patent into the invention of the host patent."), *abrogated on other grounds by, Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558 (Fed. Cir. 2000). For example, the court in *Schwarz Pharma* refused to construe the claim term of a patent to be limited to a single compound, although the patentee had explicitly

differentiated between the two possible compounds in prior patents incorporated by reference. *See* 95 Fed. Appx. at 997-98.  Similarly, the court in *Modine* concluded that the replacement of a large parameter set forth in a grandparent application with a smaller parameter used in the parent and child applications did not reinstate into the parent and the child applications the range that had been deleted from the grandparent. *See* 75 F.3d at 1553.  In both of these cases, the Federal Circuit implicitly reasoned that the prior patent or application that was incorporated by reference did not restrict the claims of the host patent. *See Schwarz Pharma*, 75 F.3d at 1553; *Modine*, 95 Fed. Appx. at 997-98.

In its attempt to suggest that the actuation method (OPA or CTA) is part of the claimed invention (even though it is not under BorgWarner's construction), Hitachi also tries to convey the impression that CTA and OPA actuation systems are vastly different and incompatible.  But that too is untrue.  Hitachi is simply wrong when it asserts that CTA does not rely on flow from the main engine oil circuit it, or main oil gallery ("MOG"), to the piston-cylinders or vane actuator to provide energy to create the phase shift.  (Hitachi SJ Br. at p. 7). Both CTA and OPA vane actuation systems use oil pressure to actuate or move the vanes. (Ribbens SJ Decl. Ex. 2 at ¶ 122).  Both systems use oil flow from the main engine oil circuit, or MOG, to fill the vane housing, and a MOG is clearly shown and described in the '738 patent. (*See, e.g.*, '738 patent, Fig. 19 ("'M.O.G." 230), col. 11 lines 14-15).  Both OPA and CTA systems also use pressurized oil that is initially supplied by the MOG; otherwise the oil would not fill the housing and cause the vanes to move in normal operation not involving a phase change.  (Ribbens SJ Decl. Ex. 2 at ¶ 122).  The only distinction is *how* the oil is pressurized to cause the *phase change* (*id.*) – a distinction that is not relevant to the asserted claims.

13

Oil can be pressurized by the oil pump as in an OPA system, by cam torque pulses as in a CTA system, or by a combination of both. (Ribbens SJ Decl. Ex. 2 at ¶¶ 116, 122). The control system of the claimed invention, however, can work in any of those environments (*id.* at ¶¶ 116, 121), as is apparent from Hitachi's decision not to raise an enablement defense in this motion. Regardless, because this motion is based solely on written description grounds, and the actuation methodology is not part of the claimed invention under BorgWarner's construction, Hitachi's challenge must fail.

**4.    Because OPA Was Well Known in the Art at the Time of Filing, There Was No Need to Describe It in the Specification.**

Hitachi also overlooks the fact that it is not necessary to spell out every detail in a patent specification, particularly when what is omitted is well known to skilled artisans. *S3, Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1371 (Fed. Cir. 2001) (stating that patent documents "need not include subject matter that is known in the field of the invention and is in the prior art, for patents are written for persons experienced in the field of the invention."); *In re Howarth*, 654 F.2d 103, 105 (Cust. & Pat. App. 1981) ("An inventor need not, however, explain every detail since he is speaking to those skilled in the art."); *In re Gay*, 309 F.2d 769, 774 (Cust. & Pat. App. 1962) ("Not every last detail is to be described, else patent specifications would turn into production specifications, which they were never intended to be."); *see also Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1386 (Fed. Cir. 1999) ("[W]e have admonished against including in the specification material that is known in the art. . . . Use of incorporation by reference makes the written description more concise."); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1549 (Fed. Cir. 1997) (holding that "flow charts or source code listings are not a requirement for adequately disclosing the functions of software" because "writing code . . . is within the skill in the art").

14

And here, there is no dispute that OPA Systems were well known in the art at the time the application for the '738 patent was filed. For example, Hitachi acknowledged that "[u]sing engine oil pump pressure and external flow to change the phase and without internal check valves in the VCT [*i.e.*, an OPA system] was well known in the art at the time of filing the '738 patent application." (Pls.' Mem. Supp. Summ. J. Noninfringement at p. 35). Indeed, Hitachi's own expert, Mr. Kuhn, has admitted as much. He further confirmed that both OPA-type and CTA-type variable camshaft timing actuators existed in the prior art before BorgWarner filed the '738 application. (Kuhn Invalidity Rep. (Matterer SJ Decl. Ex. 1) at ¶ 31 (citing, *e.g.*, Strauber U.S. Patent No. 5,012,774)). Because OPA was so well known, there was no reason or need to describe it further in the '738 patent.

### 5. The Amendment to Claim 10 During Prosecution Does Not Help Hitachi.

In an attempt to bolster its position, Hitachi points to an amendment to claim 10, in which the "supplying step" was added during prosecution of the '738 patent. (Hitachi SJ Br. at pp. 20-24). Hitachi contends that this amendment contradicts the original specification and represents new matter under BorgWarner's proposed claim construction. In fact, the amendment was made to ensure that all of the claims would be directed toward the same class of invention.[3] The amendment did not, as Hitachi alleges, add new matter; nor did it restrict the type of vane actuator to systems which utilize oil pressurized by CTA or OPA.

The examiner's statement that BorgWarner was to "amend the claims to a unified invention" appeared in an examiner's summary before any office action was issued. Hitachi

---

[3] The "obviousness concerns" expressed by the Examiner related to obviousness double patenting, which were addressed by (i) the amendment to claim priority to the previously filed BorgWarner '935 patent, and (ii) the filing of a terminal disclaimer. (Appeal Br. from the prosecution history of the '738 patent (Matterer SJ Decl. Ex. 3) at BW 002185).

assumes that the statement means that the issued claims are coterminous, but Hitachi cites no case law (and BorgWarner is aware of none) for such a remarkable result. Read in the context of the examiner's requirement that a continuation-in-part and terminal disclaimer be filed, the examiner's comment regarding a "unified invention" connotes that the applicants were to direct claims to a single class of invention so as to avoid the imposition of a restriction requirement. *See In re Berg* 140 F.3d 1428, 1435 (Fed. Cir. 1998) ("[A]s examination proceeds, if the PTO determines that more than one distinct invention was claimed in a single application, 35 U.S.C. § 121 authorizes the Commissioner to restrict the claims in the application to a single invention."). Claims cannot correspond to different classes of invention, but that does not mean that all of the claims in the '738 patent are limited to cam torque actuated vane actuation.

As originally filed, the '738 patent application had claims (*i.e.*, claims 16-22) that were broadly directed to a hydraulic system outside the context of an internal combustion engine. After the examiner's summary, the applicants amended claim 11, which became issued claim 10, to add "more detail" relating in the variable camshaft timing system (*e.g.*, that fluid is being supplied from a source to a vane housing), but nothing was added restricting the claims to CTA systems. The applicants also cancelled claims 16-22, because the examiner indicated "their scope exceeded that of . . . combustion engine art." (*See* Appeal Br. from the '738 patent prosecution history (Matterer SJ Decl. Ex. 3) at BW 002185; November 23, 1993 Preliminary Amendment from the '738 patent prosecution history (Matterer SJ Decl. Ex. 3) at BW 002136-37). The applicants were not amending the claims to overcome prior art, but were instead clarifying their invention and ensuring that all of their claims were drawn to a "unified invention" – *i.e.*, that they were all directed to a control system for variable camshaft timing systems within *the internal combustion engine art*. Hitachi's attempt to impute any other significance to the

"unified invention" statement, by trying to tie the statement to the specifics of cam torque actuation, is groundless.

**B.    At a Minimum, Genuine Issues of Material Fact Exist Concerning Whether the Written Description Provides Support for "Source" and "Supplying Step" Under BorgWarner's Claim Interpretation.**

**1.    The Specification Provides Written Description Support for the "Source" Under BorgWarner's Claim Construction.**

Hitachi's assertion that BorgWarner's interpretation of "source" has "no support in the specification" is spurious. BorgWarner's interpretation of "source" comes *directly from the specification* of the '738 patent. BorgWarner construes "source," as set forth in original claims 4 and 16, as "a point of origin in the engine that supplies oil, such as an oil gallery or oil crankcase." (BW CC Br. at p. 15). Claim 4, as issued, was part of the original disclosure and is therefore part of the specification. *See LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 433 F.3d 1373, 1378 (Fed. Cir. 2006) ("[T]he traditional written description doctrine could be satisfied by any part of the original disclosure – the claims or the rest of the specification." (citing *In re Gardner*, 475 F.2d 1389, 1391 (Cust. & Pat. App. 1973))).

Claim 4 describes a conduit for transferring oil from a pressurized lubricating oil source (main oil gallery 230) to the control means and back again. Original claim 16 also recites a hydraulic system comprising a source of hydraulic fluid under pressure (230), and first conduit means (188) for delivering hydraulic fluid from the source to the first hydraulic operator (or vane housing 160a). Therefore, part of the original disclosure describes delivering pressurized fluid from the MOG or source to the recesses in the vane housing. BorgWarner's construction of the "source" as being a point of origin for oil, such as the main oil gallery, is thus fully supported by the specification. (Ribbens SJ Decl. Ex. 1 at pp. 20, 31; Ribbens SJ Decl. Ex. 2 at ¶ 116). Contrary to Hitachi's suggestion, nothing in BorgWarner's construction requires that the

17

pressurized oil be directly supplied from the source to the vane housing in order to cause a phase change.[4]

Notably, Hitachi is in no position to contend that BorgWarner's construction lacks support in the specification. In his report, Hitachi's expert (Mr. Kuhn), compared the claims to the '578 patent and the '804 patent, both of which were incorporated by reference into the specification of the '738 patent. Applying *BorgWarner's claim construction*, Hitachi's expert then proceeded to find support in the incorporated '578 and '804 patents for "source" as the point of origin for oil. (*See* Ex. 26 to Kuhn Invalidity Rep. (Matterer SJ Decl. Ex. 4) at p. 44 (the "'578 patent teaches this limitation [containing the term "source"] *under BW's claim interpretation*" (emphasis added)); *id.* at p. 49 (the '804 patent "teaches this limitation [containing the term "source"] *under BW's claim interpretation*" (emphasis added)); *see also id.* at pp. 47, 51-52 (same statement regarding "source" in the body of claim 10)). Likewise, BorgWarner's expert, Dr. Ribbens, opines that one of skill in the art would understand from the specification that the claimed "source" comports with BorgWarner's construction that it is "a point of origin in the engine that supplies oil, such as an oil gallery or oil crankcase." (Ribbens SJ Decl. Ex. 1 at pp. 20, 31).

In the face of the expert testimony, Hitachi cannot succeed in demonstrating that the '738 patent lacks § 112, ¶ 1 support as a matter of law. If anything, summary judgment should be granted in BorgWarner's favor on this issue. At a minimum, given the inherently

---

[4] The preamble "regulating" language indicates that the claimed method is one for regulating the flow of oil that is transferred from a source to a means for transmitting rotary movement from a crankshaft to a housing. Nothing in the preamble (or remaining parts of claim 10) indicates that the flow of oil has to be regulated *directly* out of the source by the solenoid and spool valve in order to cause a phase change, as Hitachi contends. And, as Hitachi correctly concedes, in a CTA system, the MOG provides oil that "eventually gets regulated." (Hitachi Responsive Claim Construction Brief, D.I. 288 ("Hitachi Resp. CC Br.") at p. 3 (emphasis omitted)).

factual question of written description,[5] and the factual issues raised by the experts, BorgWarner has established genuine issues of material fact precluding summary judgment.

**2.    The Specification Provides Written Description Support for the "Supplying Step" Under BorgWarner's Claim Construction.**

Contrary to Hitachi's assertions, the specification of the '738 patent also provides written description support for the "supplying step" under BorgWarner's construction. According to BorgWarner's construction, the "supplying step" is "[t]he method step of supplying or allowing oil to flow from an oil source through the spool valve to a means for transmitting rotary movement to said camshaft." (BW CC Br. at p. 31). The oil source under BorgWarner's construction is the point of origin in the engine that supplies oil, such as the oil gallery or oil crank case, and the means for transmitting rotary movement to the crankshaft consists of the housing recesses and vanes or equivalents thereof. As explained in BorgWarner's claim construction briefs, the '738 patent specification fully supports these claim constructions.

Indeed, in addition to disclosing MOG (230) as the source of oil, the specification describes an inlet line extending from the source (or MOG) through the spool valve and to the vane housing chambers for actuation of the vanes. (*See* '738 patent, Fig. 19, col. 7 lines 35-38). Figure 19 of the patent discloses inlet lines 220a and 230a, which pass fluid from the source through line 182 to the vane housing. (*See* '738 patent, Fig. 19). The specification also describes return lines 194 and 196 that allow the flow of fluid from the vane housing to the spool valve. (*See* '738 patent, col. 9 lines 15-41.) This disclosure provides clear written description support for BorgWarner's construction.[6] (Ribbens Supp. Rep. (Ribbens SJ Decl. Ex. 3) at ¶ 27).

---

[5] *Enzo Biochem Inc.*, 323 F.3d at 962-63 ("Compliance with the written description requirement is a question of fact.").

[6] In addition, Figure 13 of the '023 patent, which is incorporated by reference into the '738 patent, describes a further return line 118 from the spool valve (or pressure regulator valve

Hitachi is hard pressed to disagree, in light of the positions of its own expert. Again, *using BorgWarner's construction*, Mr. Kuhn finds the "supplying step" taught in the '578 patent and the '804 patent, which were incorporated by reference into the '738 patent. (Ex. 26 to Kuhn Invalidity Rep. (Matterer SJ Decl. Ex. 4), at pp. 47, 51-52 (comparing prior art references against claim 10 under BorgWarner's interpretation)). Mr. Kuhn specifically compares the '738 patent with the '578 patent by Quinn *et al.*, noting that it teaches the "supplying step" under BorgWarner's claim interpretation. (*Id.* at p. 47). Mr. Kuhn also compares the '738 patent with the '804 patent by Becker *et al.*, noting that it too teaches the "supplying step" under BorgWarner's claim interpretation. (*Id.* at pp. 51-52).[7]   Again, in the face of Hitachi's concessions, BorgWarner would be entitled to summary judgment on this issue in its favor. At a minimum, genuine issues of material fact preclude granting summary judgment in Hitachi's favor. *See Space Sys./Loral, Inc. v. Lockheed Martin Corp.*, 405 F.3d 985, 988 (Fed. Cir. 2005) (holding that patent, calling for two-step correction method, described second step with sufficient specificity to satisfy written description requirement because "even [alleged infringer's] expert conceded that the second step was shown in the specification").

Although irrelevant to this motion, BorgWarner notes that Hitachi's criticism of BorgWarner's claim construction is based on a fundamental misreading of a statement in the '738 patent specification regarding oil "bypassing" the spool. (Hitachi SJ Br. at p. 22). Contrary to Hitachi's assertion, the specification statement that the flow of oil "bypasses [the] spool 200" (*see*

---

116) that returns oil to a oil sump or oil gallery. Therefore, a separate line to complete the flow "back again" to the MOG, as stated in claim 4 of the '738 patent, is disclosed. This provides additional written description support for BorgWarner's proposed construction. (Ribbens SJ Decl. Ex. 3 at ¶ 27).

[7]   BorgWarner's expert likewise opines that one of skill in the art would find written description support for BorgWarner's construction in the specification. (Ribbens SJ Decl. Ex. 2 at ¶ 128).

'738 patent, col. 8 line 17) does not mean that the oil never flows through the spool valve on its way from the source – as explained below, it clearly does.  Rather, this statement means that oil does not flow along a central, longitudinal passage within the spool.  This is confirmed by the remainder of the paragraph, which Hitachi crops.  (*See id.* at col. 8 lines 16-19 ("engine oil flow path to the vane system . . . bypasses spool 200, *that is, does not utilize a passage internal to spool 200* to supply oil to inlet line 182, as in previous systems" (emphasis added)).

As shown below, oil must flow along the internal lands of the spool valve in order to reach the actuator:

fluid flow from source to vane housing



<u>no</u> fluid flow, in contrast to prior systems – (*i.e.*, this part of the spool is "bypassed")

FIG. 19

As the original application claim 16 confirms, the "source of hydraulic fluid" is '230' (the MOG), and fluid flows from this source to the vane actuators (160a and 160b).  (Orig. Spec. from the '738 patent prosecution history (Matterer SJ Decl. Ex. 2) at BW 002106 (claim 16)).  The oil which comes from the main oil gallery is indisputably allowed and blocked by the

21

spool valve at various points during operation. (Ribbens SJ Decl. Ex. 2 at pp. 25-26; Ribbens SJ Decl. Ex. 3 at ¶ 21). Whether this allowing and blocking occurs as the fluid flows from the source or thereafter is immaterial to the asserted claims. Regardless, the oil that originated from the source is used in the vane actuation system as controlled by the '738 patented control system.

There also would have been little mystery to one of skill in the art to design the '738 patented control system to operate in an OPA environment instead.[8] Hitachi itself admits as much in its separately filed summary judgment brief. (Pls.' Mem. Supp. Summ. J. Noninfringement at p. 35 ("Using engine oil pump pressure and external flow to change the phase and without internal check valves in the VCT [*i.e.*, an OPA system] was well known in the art at the time of filing of the '738 patent application.")). This further confirms that BorgWarner's proposed construction is correct and has sufficient § 112, ¶ 1 support.[9]

### 3. The Cases Cited by Hitachi Hardly Compel Summary Judgment.

The cases cited by Hitachi do not support granting summary judgment of invalidity in the circumstances presented here. For example, *TurboCare Div. of Demag Delaval Turbomach. Corp. v. Gen. Elec. Co.*, 264 F.3d 1111 (Fed. Cir. 2001), is readily distinguishable

---

[8] Indeed, according to Hitachi's expert, Mr. Kuhn, persons of skill in the art were aware of a variety of phase adjustment actuators and different hydraulic control valves available to the VCT designer before BorgWarner filed the '738 patent. (Kuhn Invalidity Rep. (Matterer SJ Decl. Ex. 1) at ¶ 30). Mr. Kuhn also admits that both OPA-type and CTA-type VCTs existed in the prior art before BorgWarner filed the '738 application. (*Id.* at ¶ 31 (citing U.S. Patent No. 5,012,774 by Strauber *et al.*)).

[9] Hitachi's brief also attempts to sow confusion with respect to statements made in the '738 patent regarding the relief of "pressure." The statements in the prosecution relating to "pressure" concerned the relief of pressure exerted against the external ends of the spool, not the relief of oil pressure everywhere. In the specification and prosecution history of the '738 patent, the applicants stressed that their invention achieves precise control over the position of the spool by use of the variable force solenoid in conjunction with relief of fluid pressure against the external ends of the spool. (*See, e.g.*, '738 patent, col. 3 lines 1-10; col. 8 lines 2-15, lines 23-35; App. Br. from '738 patent prosecution history (Matterer SJ Decl. Ex. 3) at BW 002187-88) Contrary to Hitachi's suggestions (*see* Hitachi SJ Br. at p. 11), these statements have nothing to do with how the oil pressure to cause a phase change is generated.

from the present case. There, the only support for the claimed subject matter was one original, rejected claim. *Id.* at 1117-19. Here, by contrast, several figures of the '738 patent show oil flowing from a "source," the main oil gallery, to the vane housing, and other issued claims confirm this flow path.[10] Other cases cited by Hitachi involve biotechnology, where questions of enablement and written description are unique. *See Univ. of Rochester v. G.D. Searle & Co., Inc.*, 375 F.3d 1303, 1306 (Fed. Cir. 2004) (although denying the suggestion that there is a "heightened" written description requirement for biotechnology inventions, admitting that § 112 "may be applied differently, based on the technology and what is known by one of ordinary skill in the art at the time an invention was made"); *see also Univ. of Cal. v. Eli Lilly*, 119 F.3d 1559, 1566-67 (Fed. Cir. 1997) (applying the written description requirement to biotechnology).

In each of the other § 112, ¶ 1 cases relied upon by Hitachi, the patentee interpreted the claim language in a manner that was fundamentally incompatible with the disclosed embodiment and beyond what was known to one of skill in the art. In *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1248 (Fed. Cir. 2002), the patentee had a claim to a "sequential application in multiple steps," while the specification stated that the invention was a "composition." The claim could not be reconciled with the disclosure in the specification. Here, by contrast, the relevant claim constructions proffered by BorgWarner (Hitachi SJ Br. at p. 3), comport with the CTA embodiment disclosed in Figure 19, which shows the "source," MOG

---

[10]  Hitachi has contended that this flow must be regulated immediately so as to effect an instantaneous phase change (see Hitachi Resp. CC Br. at p. 3), but the '738 patent and BorgWarner's claim constructions require no such thing. In addition, unlike in *TurboCare*, Hitachi's own experts have admitted that incorporated patents teach the elements of the claim using BorgWarner's claim construction. (*See, e.g.*, Ex. 26 to Kuhn Invalidity Rep. (Matterer SJ Decl. Ex. 4) at pp. 44, 47, 49, 51-52 (comparing incorporated references against claim 10 under BorgWarner's interpretation)).

'230," inlet lines, and return lines. The depicted spool valve will also "allow and block" fluid flow in the return lines and inlet lines at various points during operation.

In *Gentry Gallery, Inc. v Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998), the claims sought coverage on the location of controls that was not identified in the specification. Here, by contrast, the constructions proposed by BorgWarner for the terms deemed relevant by Hitachi read directly on the preferred embodiment shown in Figure 19.

*LizardTech, Inc. v. Earth Resource Mapping, Inc.*, is also unavailing for Hitachi. *See* 424 F.3d at 1346-47. In *LizardTech*, the technology involved digital image compression, and in particular a useful type of wavelet transform, called discrete wavelet transform ("DWT"). The specification described a way of creating a "seamless" DWT, by maintaining updated sums of DWT coefficients. The court found a claim which generally recited "seamless" DWT to be invalid because no other way of creating a "seamless" DWT was disclosed. There was no evidence that a person of skill in the art would have understood how to make a seamless DWT generically without the benefit of the particular disclosed method. Here, by contrast, not only does the '738 patent, as written, contain supporting disclosure of the "source" being the main oil gallery, and supplying oil from the oil gallery to the vane housing, but even if it did not, one of skill in the art reading the '738 patent *would* understand how to utilize an OPA system, based on well understood knowledge in the art. (Ribbens SJ Decl. Ex. 1 at p. 20; Ribbens SJ Decl. Ex. 2 at ¶¶ 115, 116). In fact, Hitachi is in no position to disagree because it admits that "[u]sing engine oil pump pressure and external flow to change the phase and without internal check valves in the VCT [*i.e.*, an OPA system] was well known in the art at the time of filing of the '738 patent application." (Pls.' Mem. Supp. Summ. J. Noninfringement at p. 35).

24

In short, the cases relied on by Hitachi do not support its flawed position. There is simply no basis to Hitachi's contention that there is no written description support for BorgWarner's claim constructions. At the very least, factual disputes preclude Hitachi's request for summary judgment.

## VI.    CONCLUSION

For the foregoing reasons, BorgWarner respectfully requests that this Court deny summary judgment that the '738 patent is invalid for failing to meet the written description requirement of § 112, ¶ 1, under BorgWarner's claim construction.

Dated: November 13, 2006

Richard K. Hermann (I.D. #405)
Mary B. Matterer (I.D. #2696)
MORRIS, JAMES, HITCHENS & WILLIAMS
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
(302) 888-6800

Hugh A. Abrams (*pro hac vice*)
Thomas D. Rein (*pro hac vice*)
Lisa A. Schneider (*pro hac vice*)
Marc A. Cavan (*pro hac vice*)
Lara (Fleishman) Hirshfeld (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

*Attorneys for BorgWarner Inc. and
BorgWarner Morse TEC Inc.*

25

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of November, 2006, I electronically filed the foregoing document, **MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER THE WRITTEN DESCRIPTION REQUIREMENT OF 35 U.S.C. § 112, ¶ 1 BASED ON DEFENDANT'S CLAIM CONSTRUCTION OF CLAIM 10,** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Steven J. Balick, Esq.
John G. Day, Esq.
ASHBY & GEDDES
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801


Additionally, I hereby certify that on the 13th day of November, 2006, the foregoing document was served via email on the following non-registered participants:

Michael D. Kaminski, Esq.
Liane Peterson, Esq.
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5109
mkaminski@foley.com
lpeterson@foley.com


_____/S/ MARY B. MATTERER_____
Mary B. Matterer (I.D.#2696)
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
mmatterer@morrisjames.com

Attorneys for Defendants and Counterclaimant,
BORGWARNER INC., and
BORGWARNER MORSE TEC INC.