**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HITACHI, LTD. and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Civil Action No. 05-048-SLR |
| BORGWARNER INC. and BORGWARNER MORSE TEC INC., | ) ) ) |
| Defendants. | ) ) |
| BORGWARNER INC., | ) ) |
| Counterclaimant, | ) ) |
| v. | ) **PUBLIC VERSION** ) |
| HITACHI, LTD. and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., | ) ) ) |
| Counterdefendants. | ) ) |

**BORGWARNER'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION**
**FOR SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT**

*OF COUNSEL:*

SIDLEY AUSTIN BROWN & WOOD, LLP
Hugh A. Abrams
Thomas D. Rein
Lisa Schneider
Marc A. Cavan
Lara V. Hirshfeld
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
MORRIS JAMES, HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
(302) 888-6800
mmatterer@morrisjames.com
*Attorneys for BorgWarner Inc. and*
*BorgWarner Morse TEC Inc.*

Original Date: November 13, 2006
Redacted Date: November 20, 2006

# TABLE OF CONTENTS

**Page**

I.    Statement of Nature and Stage of Proceedings. .....................................................1

II.   Summary of Argument. .........................................................................................1

III.  Statement of Facts. ................................................................................................2

    A.    Hitachi Has Been Aware of the '738 Patent for at Least Eight Years......................2

    B.    Hitachi Had Access to and Copied BorgWarner's Technology. ...............................3

    C.    Hitachi's Opinion of Counsel Was Not Relied upon and Does Not Even
        Address the Accused Product. ............................................................................5

    D.    Hitachi Has Repeatedly Engaged in Litigation Misconduct.....................................7

IV.   Argument. ...........................................................................................................12

    A.    Willfulness Is a Factual Determination Based on the Totality of the
        Circumstances. ...................................................................................................12

    B.    Hitachi Was Aware of the '738 Patent and Had an Affirmative Duty to
        Avoid Infringement.............................................................................................13

    C.    BorgWarner Has Alleged Sufficient Facts to Require That the Question of
        Willful Infringement Be Decided by the Jury........................................................14

        1.    Hitachi copied from BorgWarner. .............................................................14

        2.    Hitachi engaged in litigation misconduct. ................................................15

        3.    Hitachi's opinion of counsel is incompetent. ...........................................16

V.    Conclusion. ........................................................................................................19

## TABLE OF AUTHORITIES

### CASES

*ADC Telecomms., Inc. v. Siecor Corp.,*
    954 F. Supp. 820 (D. Del. 1997).................................................................13

*Advanced Med. Optics, Inc. v. Alcon Labs., Inc.,*
    No. Civ.A. 03-1095-KAJ, 2005 WL 3454283 (D. Del. Dec. 16, 2005) .........15

*Applera Corp. v. MJ Research Inc.,*
    372 F. Supp. 2d 233 (D. Conn. 2005)..........................................................18

*Century Wrecker Corp. v. E.R. Buske Mfg. Co., Inc.,*
    913 F. Supp. 1256 (N.D. Iowa 1996).............................................................15

*Chiron Corp. v. Genentech, Inc.,*
    268 F. Supp. 2d 1117 (E.D. Cal. 2002).........................................................16

*Comark Commc'ns, Inc. v. Harris Corp.,*
    156 F.3d 1182 (Fed. Cir. 1998)........................................................13, 17, 18

*Deutschman v. Beneficial Corp.,*
    Civil Action No. 86-595 MMS (Feb. 10, 1990) .............................................11

*Golden Blount, Inc. v. Robert H. Peterson Co.,*
    438 F.3d 1354 (Fed. Cir. 2006)....................................................................17

*Harris Corp. v. Ericsson Inc.,*
    417 F.3d 1241 (Fed. Cir. 2005).....................................................................16

*IMX, Inc. v. Lendingtree, LLC,*
    No. Civ. 03-1067-SLR, 2006 WL 38918 (D. Del. Jan. 6, 2006) .....................17

*Johns Hopkins Univ. v. CellPro,*
    978 F. Supp. 184 (D. Del. 1997), *aff'd,* 152 F.3d 1342 (Fed. Cir. 1998)......................16, 18

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,*
    383 F.3d 1337 (Fed. Cir. 2004).....................................................................13

*Liquid Dynamics Corp. v. Vaughan Co., Inc.,*
    449 F.3d 1209 (Fed. Cir. 2006), *petition for cert. filed,* 75 U.S.L.W. 3219 (Oct.
    10, 2006) (No. 06-508)........................................................12, 13, 16

*In re ML-Lee Acquisition Fund II, L.P.,*
    848 F. Supp. 527 (D. Del. 1994)....................................................................11

*Medtronic Xomed, Inc. v. Gyrus ENT LLC,*
    440 F. Supp. 2d 1300 (M.D. Fla. 2006)..............................................................13

*Monster Cable Prods., Inc. v. Discovery Commc'ns, Inc.,*
    No. C 03-03250, 2004 WL 2445348 (N.D. Cal. Nov. 1, 2004)........................14

*nCube Corp. v. Seachange Int'l, Inc.*
    436 F.3d 1317 (Fed. Cir. 2006)........................................................................13

*Norian Corp. v. Stryker Corp.,*
    363 F.3d 1321 (Fed. Cir. 2004)........................................................................14

*Read Corp. v. Portec, Inc.,*
    970 F.2d 816 (Fed. Cir. 1992), *abrogated on other grounds by*
    *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995),
    *aff'd,* 517 U.S. 370 (1996).................................................1, 12, 16, 17, 18

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.,*
    127 F.3d 1462 (Fed. Cir. 1997)...........................................................12, 13, 19

*Stratoflex, Inc. v. Aeroquip Corp.,*
    713 F.2d 1530 (Fed. Cir. 1983)........................................................................18

*Stryker Corp. v. Intermedics Orthopedics, Inc.,*
    96 F.3d 1409 (Fed. Cir. 1996)..........................................................................14

*Tenneco Auto. Operating Co. Inc. v. Visteon Corp.,*
    375 F. Supp. 2d 360 (D. Del. 2005)...............................................................2, 13

*Webloyalty.Com, Inc. v. Consumer Innovations, LLC,*
    No. Civ.A. 04-90-KAJ, 2005 WL 121796 (D. Del. Jan. 13, 2005) ...................15

## LOCAL RULES

D. Del. Local Rule 7.1.3(c)(2) ................................................................................15

BorgWarner Inc. and BorgWarner Morse Tec Inc. ("BorgWarner") hereby oppose the motion for summary judgment of no willful infringement filed by Hitachi, Ltd. and Hitachi Automotive Products (USA), Inc. ("Hitachi") (D.I. 276). BorgWarner has submitted more than enough evidence to raise genuine issues of material fact regarding whether Hitachi willfully infringed United States Patent Number 5,497,738 ("the '738 patent"). Hitachi's motion should, accordingly, be denied.

## I.  STATEMENT OF NATURE AND STAGE OF PROCEEDINGS.

The present case is a declaratory judgment patent case involving a patent on variable camshaft timing systems. BorgWarner asserts that claims 10 and 11 of the patent-in-suit are valid and infringed, and that Hitachi's infringement of those claims has been willful. The present motion assumes that Hitachi has been found liable for infringement and addresses only the question of whether any such infringement was willful. Fact discovery has closed. Opening Markman briefs and expert reports have been served. An understanding of the patented technology is not necessary to resolve the present motion.

## II.  SUMMARY OF ARGUMENT.

The question of willful infringement is fact intensive and requires the finder of fact to weigh multiple factors, including: (1) whether Hitachi deliberately copied BorgWarner's design; (2) whether Hitachi, once it learned of the patent-in-suit, investigated that patent and formed a good faith belief that it was either not infringed or not valid; (3) how Hitachi has behaved in this litigation; (4) Hitachi's size and financial condition; (5) how close the case is; (6) how long Hitachi has committed misconduct; (7) any remedial action taken by Hitachi; (8) Hitachi's motivation to harm BorgWarner; and (9) whether Hitachi has attempted to conceal its misconduct. *See Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992), *abrogated on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 (Fed. Cir. 1995),

*aff'd*, 517 U.S. 370 (1996); *see also Tenneco Auto. Operating Co. Inc. v. Visteon Corp.*, 375 F. Supp. 2d 360, 365 (D. Del. 2005) (Robinson, J.) (listing factors and denying motion for summary judgment of no willful infringement). BorgWarner has elicited more than enough evidence in discovery suggesting that Hitachi willfully infringed the patent-in-suit to create a genuine question of material fact sufficient to defeat summary judgment.

## III.  STATEMENT OF FACTS.

The factual basis for BorgWarner's claim of willful infringement is set forth in BorgWarner's interrogatory responses. (*See, e.g.*, Hitachi Exhibit 20 at 7-10; Hitachi Exhibit 24 at 3-7).[1] In short, the evidence demonstrates that Hitachi was aware of the '738 patent, copied the teachings of that patent, and obtained only a self-serving, incompetent opinion of counsel that it did not rely upon and that cannot support a good faith defense. Additionally, Hitachi has engaged in gross litigation misconduct, no doubt in an attempt to conceal the true facts surrounding its infringement.

### A.  Hitachi Has Been Aware of the '738 Patent for at Least Eight Years.

Hitachi was aware of the patent-in-suit long before the initiation of this lawsuit and before it began selling the accused product in 2001. Hitachi's 30(b)(6) witness on the topic of Hitachi's first awareness of the patent-in-suit, Mr. Inuzuka, : REDACTED

REDACTED (*See* Schneider Decl., Exhibit 1 at 15, 20-21).[2] However, Mr. Inuzuka testified REDACTED (*See id.* at 20). In fact, the testimony of another Hitachi witness,

---

[1] References to "Hitachi Exhibit ____" refer to the Combined Appendix in Support of Hitachi, Ltd.'s and Hitachi Automotive Products (USA), Inc.'s Opening Summary Judgment Motions (D.I. 280).

[2] References to "Schneider Decl., Exhibit ____" refer to the Declaration of Lisa A. Schneider in Opposition to Plaintiffs' Motion for Summary Judgment of No Willful Infringement.

Mr. Suga, REDACTED Mr. Suga

testified that REDACTED

REDACTED (Schneider Decl., Exhibit 2 at 46-47).

Mr. Suga further testified REDACTED (*Id*. at 48). Thus, construing

all facts in favor of BorgWarner, the evidence suggests that Hitachi became aware of the '738

patent shortly after it issued in 1996 and, in any event, years before the infringement began.

**B.     Hitachi Had Access to and Copied BorgWarner's Technology.**

Over the course of the past six years, Hitachi and BorgWarner have explored

cooperation and collaboration on VCT technology.

REDACTED

(*See* Schneider Decl., Exhibit 3).

REDACTED

(*See* Schneider Decl., Exhibit 4).  In that agreement,

REDACTED

(*Id*. at 1 (upper

case changed to lower case)). REDACTED

REDACTED (Schneider Decl., Exhibit 5 at 1).  This

agreement stated that

REDACTED (*Id*.).  These contracts leave little doubt that

3

Hitachi received confidential information related to variable cam timing systems from BorgWarner.

This conclusion has been borne out in discovery. At the time Hitachi was allegedly designing and developing accused VCT products, Hitachi possessed confidential BorgWarner diagrams and specifications relating to VCT. For example, Hitachi had in its possession an ECU specification developed by BorgWarner. (*See* Schneider Decl., Exhibit 6). This specification expressly states that REDACTED (*Id.* at 1). This document evidences 1 REDACTED (*See, e.g.,* Schneider Decl., Exhibit 7 at 19 REDACTED REDACTED Hitachi has admitted REDACTED (*See* Schneider Decl., Exhibit 8 at 14). Hitachi REDACTED (*See* Schneider Decl., Exhibit 9).

The specification was not the only confidential information received by Hitachi pertaining to VCTs. Hitachi admits REDACTED (*See* Schneider Decl., Exhibit 8 at 31). Hitachi also admits it REDACTED (*See id.* at 61). Additionally, BorgWarner found within the Hitachi production confidential BorgWarner documents concerning the VCT. REDACTED

(*See* Schneider Decl., Exhibit 10).

4

Even more fundamentally, the '738 patent – which was admittedly in Hitachi's possession – provided a virtual blueprint of the claimed invention.   The evidence shows that Hitachi

REDACTED                 (*See* Schneider Decl., Exhibit 39 at 7-12;

Exhibit 11).

REDACTED

**C.    Hitachi's Opinion of Counsel Was Not Relied upon and Does Not Even Address the Accused Product.**

To defend against willfulness, Hitachi has indicated that it intends to rely on an April 1999 opinion of counsel from the law firm of Sughrue, Mion, Zinn, Macpeak & Seas to Unisia JECS (hereafter "the Sughrue Opinion").   (*See* Hitachi Exhibit 25).   Hitachi's reliance on the Sughrue Opinion is unavailing, however, for a number of reasons.

---

[3] Hitachi may argue in its reply brief that it independently developed the accused products.  Independent development was a hotly contested issue in discovery, and Hitachi has failed to live up to its discovery obligations in connection with this issue.  After initially denying BorgWarner discovery, and upon thereafter learning that Hitachi intended to present an independent development defense, the Special Discovery Master ordered Hitachi to supplement its discovery responses so that BorgWarner could "lock Hitachi down to what their position is" on this issue. (Schneider Decl., Exhibit 12 at 24-25).  Hitachi failed to comply with this order, and BorgWarner filed a motion asking the Special Discovery Master to recommend to the Court that Hitachi not be able to make sweeping statements regarding independent development that were not supported by its interrogatory response. (*See* Schneider Decl., Exhibit 13; Exhibit 14).  Noting that "typically, parties are limited to the positions they take in discovery responses" and that he was not in a position to advise the Court on how to conduct proceedings, the Special Discovery Master nevertheless ordered Hitachi "to list separately in the pretrial order the documents relating to its independent development defense." (Schneider Decl., Exhibit 15 at 3).  Hitachi now asks for summary judgment before it has even complied with the Special Discovery Master's order.  This is highly improper.

Perhaps most importantly, there is no evidence that Hitachi – as opposed to some predecessor company – actually relied on the opinion.  The Sughrue Opinion was issued to Unisia JECS, not Hitachi.

REDACTED

(*See* Schneider Decl., Exhibit 1 at 93).  In spite of that, Hitachi is manufacturing accused products at several Hitachi facilities – not just former Unisia JECS facilities – and is making sales to additional customers in the U.S.

REDACTED

And, it would have been unreasonable for a Hitachi business person to rely upon the Sughrue Opinion.

REDACTED

REDACTED

Q.

A.

Q.

A.

(Schneider Decl., Exhibit 1 at 72).  The VCT product addressed in the opinion

REDACTED

(*Id*. at 78-79).

The Sughrue Opinion is also unreliable for other reasons.  The invalidity opinion set forth in the

REDACTED

(*See* Hitachi Exhibit 25 at 19-22).  The combination of references set forth in the Sughrue Opinion is so weak that Hitachi has opted not to rely on it in challenging the '738 patent's validity in this lawsuit, as reflected in the tables of contents in

6

their expert reports.  (*See* Schneider Decl., Exhibit 16; Exhibit 17).

REDACTED

REDACTED                                             One of Hitachi's 30(b)(6)

witnesses on the topic of the opinion letter was Mr. Kashima.

REDACTED                                                           (*See*

Schneider Decl., Exhibit 18 at 17).

REDACTED                      (*See id.* at

17-18).

REDACTED

           (*See id.* at 18-19).                                        (*See* Schneider

Decl., Exhibit 19 at 7; Exhibit 20).

**D.    Hitachi Has Repeatedly Engaged in Litigation Misconduct.**

           Hitachi has repeatedly engaged in misconduct during this litigation, no doubt in

an attempt to conceal facts regarding the nature and scope of its infringement.  The summary

judgment motions are the most recent example in a long string of Hitachi's misconduct, only a

sample of which will be recounted here.

           Incredibly, statements in Hitachi's summary judgment motions – statements that it

expects the Court to rely upon in deciding those motions – contradict sworn testimony provided

earlier in the litigation.  For example, on June 26, Hitachi served a declaration of Mr. Suga, a

Director in the Variable Valve System Design Department, Engine Component Division, Engine

Management System Division, Automotive Systems of Hitachi Ltd.  (*See* Schneider Decl.,

Exhibit 21).



           (*Id.* at ¶ 3).  Mr. Suga stated in no uncertain terms

REDACTED

7

REDACTED

(*Id.* at ¶ 8).  Yet, in Plaintiffs' Motion for Summary Judgment of Non-Infringement of the '738

Patent ("Hitachi's Non-Infringement Motion") (D.I. 274), 

For example, Hitachi represents REDACTED

(Hitachi's Non-Infringement Motion at 11).  Hitachi then explains



(*Id.* at 15-19).

REDACTED

(*Id.* at 19 n.9).  REDACTED    The time to obtain that knowledge

was during discovery, not when preparing summary judgment motions.

Hitachi also submitted declarations from two individuals who had been deposed

multiple times during the litigation and who had previously professed a lack of knowledge on the

very same issues included in their declarations.  The most glaring example of this is found in a

comparison of paragraph 21 of Mr. Ichinosawa's declaration and his past deposition testimony.

In paragraph 21, Mr. Ichinosawa states:

REDACTED

(Hitachi Exhibit 8 at ¶ 21).

(*See* Schneider Decl., Exhibit 22).    At

REDACTED

8

Mr. Ichinosawa's deposition,

REDACTED

(listed in deposition exhibit number 15). (*See* Schneider Decl., Exhibit 23 at 166; Exhibit 24). Mr. Ichinosawa testified

REDACTED

[objection omitted]

REDACTED

(Schneider Decl., Exhibit 23 at 166).

Hitachi also repeatedly engaged in obfuscation and misconduct during discovery. One such example pertains to Hitachi's refusal to produce information concerning its ECU sales. Hitachi's misconduct in this regard is set forth in detail in Defendants' Fifth Supplemental Response to Plaintiff Hitachi, Ltd.'s Interrogatory No. 6. (*See* Schneider Decl., Exhibit 25 at 5-10). In short, BorgWarner's initial discovery requests, served April 25, 2005, sought information concerning Hitachi's VCT components, which expressly included "electronic control units and software and hardware contained therein." (Schneider Decl., Exhibit 26 at 2). Nearly six months later, Hitachi provided a chart allegedly identifying its VCT components, but neglecting to mention ECU's. (*See, e.g.*, Schneider Decl., Exhibit 27 at Ex. A). Hitachi's Rule 30(b)(6) deponents also failed to identify any ECU's made or sold by Hitachi.

REDACTED

REDACTED

(*See* Schneider Decl., Exhibit 28 at 63).

Months later, another Hitachi witness, Mr. Uchida, 

(*See* Schneider Decl., Exhibit 29 at 132). Nevertheless,

Hitachi continued to refuse to provide information concerning its sales of ECU's until after

BorgWarner had filed a series of motions to compel. REDACTED

BorgWarner was also seriously

prejudiced in the case as a result of Hitachi's failure to promptly identify ECU's and provide

discovery relating thereto. The Special Discovery Master limited BorgWarner's discovery of

ECU's in this case based on concerns relating to completing discovery within the schedule set

forth in the case -- discovery that would have been timely completed but for Hitachi's failure to

adequately respond to BorgWarner's inquiries. (*See* Schneider Decl., Exhibit 30 at 4-6). Had

BorgWarner had the opportunity to take discovery, it could have had the chance to establish how

Hitachi used BorgWarner's '738 patent and confidential information in designing Hitachi's

ECU's. Having blocked BorgWarner's attempt to establish that connection by providing false

and misleading testimony, Hitachi should not be heard to contend that it did not use the

information that was in its possession.

Another example of Hitachi's misconduct is Hitachi's failure to produce financial

information concerning the details involving costs of production of the accused products.

BorgWarner propounded discovery requests and sought deposition testimony concerning costs of

the Hitachi products. (*See, e.g.*, Schneider Decl., Exhibit 26 at 8; Exhibit 40 at 5). When no

discovery was forthcoming, BorgWarner filed a motion with the Special Discovery Master on

January 18, 2006, to compel Hitachi to produce additional cost and profit information. (*See*

Schneider Decl., Exhibit 31). Hitachi responded on January 20, 2006, stating in no uncertain

terms: "Hitachi does not have such cost information." (Schneider Decl., Exhibit 32 at 2).

During the course of the hearing on BorgWarner's motion, Hitachi's counsel stated time and again: "Hitachi has provided everything that it has in its files relating to costs." (*See, e.g.,* Schneider Decl., Exhibit 33 at 10).

Notwithstanding the representations of Hitachi's counsel, the Special Discovery Master ordered Hitachi to file a declaration from someone with knowledge at Hitachi that explained in detail what cost data does and does not exist for VCT components. (*See, e.g.,* Schneider Decl., Exhibit 33 at 20). On January 31, 2006, Hitachi provided such a declaration – a declaration in which Hitachi's Mr. Matsushita

REDACTED

(Schneider

Decl., Exhibit 34 at ¶ 7). As a result of the Matsushita declaration, BorgWarner brought a motion to compel and for sanctions on February 1, 2006. (*See* Schneider Decl., Exhibit 35). In response, the Special Discovery Master ordered Hitachi to produce the requested information and reserved ruling on whether to impose sanctions on Hitachi. (*See* Schneider Decl., Exhibit 36 at 9-11).[4]

---

[4] The list of Hitachi's misconduct goes on and on. Yet another example is the fact that Hitachi's counsel repeatedly consulted with Hitachi witnesses during depositions, as demonstrated by the fact that they repeatedly corrected or supplemented their testimony after a break. (*See, e.g.,* Schneider Decl., Exhibit 37 at 36-37

REDACTED

Exhibit 38 at 39, 120). Hitachi's conduct violates Delaware standards. *See, e.g., In re ML-Lee Acquisition Fund II, L.P.,* 848 F. Supp. 527, 567 (D. Del. 1994) ("Moreover, in future depositions, all parties are instructed that counsel are not to consult with their clients regarding the subject of their testimony while questions are pending and while deponents remain under oath."); *Deutschman v. Beneficial Corp.,* Civil Action No. 86-595 MMS, slip op. at 3-4 (Feb. 10, 1990).

IV.    ARGUMENT.

A.    **Willfulness Is a Factual Determination Based on the Totality of the Circumstances.**

The law of willful infringement does not search for "minimally tolerable behavior," but rather requires that the accused infringer act both prudently and ethically, in both a legal and commercial sense. *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997). In other words, precedent dictates that, to avoid willful infringement, "a prudent person" in Hitachi's position "would have had sound reason to believe that the patent was not infringed or was invalid or unenforceable, and would be so held if litigated." *Id.* at 1465.

In making this determination, the Court must consider the totality of the circumstances. *See, e.g., Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006), *petition for cert. filed*, 75 U.S.L.W. 3219 (Oct. 10, 2006) (No. 06-508). As indicated above, these factors include: (1) whether Hitachi deliberately copied BorgWarner's design; (2) whether Hitachi, once it learned of the patent-in-suit, investigated that patent and formed a good faith belief that it was either not infringed or not valid; (3) how Hitachi has behaved in this litigation; (4) Hitachi's size and financial condition;[5] (5) how close the case is; (6) how long Hitachi has committed misconduct; (7) any remedial action taken by Hitachi;[6] (8) Hitachi's motivation to harm BorgWarner; and (9) whether Hitachi has attempted to conceal its misconduct. *See Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992), *abrogated on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 (Fed. Cir. 1995),

---

[5] Of course, Hitachi is a huge company with more than enough resources to investigate any possible incidents of infringement and to obtain a competent opinion of counsel.

[6] There is no evidence that Hitachi has taken any remedial action. In fact, this lawsuit was filed in the midst of informal settlement negotiations at a time when BorgWarner believed the parties were making progress towards resolving the dispute.

*aff'd*, 517 U.S. 370 (1996); *see also Tenneco Auto. Operating Co. Inc. v. Visteon Corp.*, 375 F. Supp. 2d 360, 365 (D. Del. 2005) (Robinson, J.) (listing factors and denying motion for summary judgment of no willful infringement). Willfulness is a question of fact, requiring the trier of fact to weigh and evaluate all relevant evidence. *See, e.g., Liquid Dynamics*, 449 F.3d at 1225; *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1342-43 (Fed. Cir. 2004).

A willfulness determination raises issues of reasonableness and prudence, as well as questions of intent, belief and credibility. *SRI*, 127 F.3d at 1465. As such, willfulness is not easily resolved on summary judgment. *See Tenneco*, 375 F. Supp. 2d at 374-75 (denying summary judgment where patentee alleged that the infringement occurred over 21 months, that the defendant had not taken any remedial measures in light of a cease and desist letter and that defendant had attempted to hide its infringing activity); *ADC Telecomms., Inc. v. Siecor Corp.*, 954 F. Supp. 820, 834-35 (D. Del. 1997) (denying summary judgment where patentee alleged that accused infringer was aware of patent and called its product a clone); *Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 440 F. Supp. 2d 1300, 1315-16 (M.D. Fla. 2006) (denying summary judgment due to factual questions concerning the competency of the opinion relied upon by the accused infringer).

**B.    Hitachi Was Aware of the '738 Patent and Had an Affirmative Duty to Avoid Infringement.**

Once Hitachi became aware of the '738 patent, it had an affirmative duty of due care to avoid infringement. *See, e.g., nCube Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1324 (Fed. Cir. 2006); *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1190 (Fed. Cir. 1998). Hitachi does not dispute that it was aware of the patent-in-suit and that, as such, it bore an affirmative duty of avoiding infringement. Rather, Hitachi's defenses seem to be: (1) conclusory

assertions that BorgWarner has not proven willful infringement; and (2) the alternative contention that, if BorgWarner has proven infringement, the Sughrue Opinion letter is a defense. Both defenses are without merit.

### C.   BorgWarner Has Alleged Sufficient Facts to Require That the Question of Willful Infringement Be Decided by the Jury.

While BorgWarner bears the burden of presenting "threshold evidence of culpable behavior," *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1332 (Fed. Cir. 2004), smoking gun evidence is not required. *Cf. Monster Cable Prods., Inc. v. Discovery Commc'ns, Inc.*, No. C 03-03250, 2004 WL 2445348, at *9 (N.D. Cal. Nov. 1, 2004) (noting in trademark context that circumstantial evidence was sufficient for a jury to find willful infringement). The case relied on by Hitachi, *Norian v. Stryker*, does not provide otherwise. There, the patentee provided *no* evidence of willfulness, but rather sat back and waited for the accused infringer to disprove willfulness. *See Norian*, 363 F.3d at 1332. The district court summarized the patentee's proof as follows:

> No evidence of copying was presented. No evidence of failure to obtain an opinion of counsel was presented. No evidence was presented as to whether or not [the accused infringer] had acted reasonably once it acquired knowledge of the patent.

*Id.* at 1332-33. As explained herein, the facts here are strikingly different.

### 1.   Hitachi copied from BorgWarner.

Slavish copying of BorgWarner's patent is not required to prove copying. *See Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996). Rather, the inquiry is whether Hitachi intentionally or deliberately copied BorgWarner's ideas or designs. *See id.* Similarity between the accused device and the patented device can, alone, be sufficient

14

for a jury to find copying. *See Century Wrecker Corp. v. E.R. Buske Mfg. Co., Inc.*, 913 F. Supp. 1256, 1272 (N.D. Iowa 1996).[7]

BorgWarner has produced evidence of copying, including access to BorgWarner's patent and confidential information concerning the VCT. *See supra* at 3-5. Hitachi has admitted

REDACTED

(*See* Schneider Decl.,

Exhibit 8 at 61; Exhibit 10). Hitachi also

REDACTED

(*See* Schneider Decl., Exhibit 39 at 7-12; Exhibit 11). This evidence of copying is sufficient to withstand summary judgment. *Cf. Advanced Med. Optics, Inc. v. Alcon Labs., Inc.*, No. Civ.A. 03-1095-KAJ, 2005 WL 3454283, at *9 (D. Del. Dec. 16, 2005) (finding jury verdict supported where, among other things, accused infringer had access to patent and studied commercial product).

### 2.  Hitachi engaged in litigation misconduct.

BorgWarner has also presented evidence that Hitachi failed to act reasonably once it acquired knowledge of the '738 patent and, instead, that it engaged in litigation misconduct designed to obscure the extent of its infringement. *See supra* at 7-11. Hitachi has repeatedly and consistently withheld crucial facts in this litigation in an attempt to shield its infringement from BorgWarner's eyes. This too would allow a jury to conclude that Hitachi had engaged in willful

---

[7]  Knowing full well that BorgWarner intended to assert that Hitachi had copied BorgWarner's design, Hitachi chose not to address its alleged independent development in its opening brief. This is improper both in light of the prior discovery disputes in this case, *see supra* at 7-11, and in light of local rules prohibiting this approach. *See* D. Del. Local Rule 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief."); *see also, e.g., Webloyalty.Com, Inc. v. Consumer Innovations, LLC*, No. Civ.A. 04-90-KAJ, 2005 WL 121796, at *6 (D. Del. Jan. 13, 2005) (denying motion and refusing to consider arguments made in reply brief). BorgWarner reserves the right to seek leave to file a sur-reply if Hitachi argues independent development in its reply brief and that material is not stricken.

infringement. *See Read*, 970 F.2d at 827 (listing both litigation misconduct and attempts to conceal as relevant to the willfulness inquiry).

### 3.  Hitachi's opinion of counsel is incompetent.

The Sughrue Opinion does not save Hitachi. *See Chiron Corp. v. Genentech, Inc.*, 268 F. Supp. 2d 1117, 1121 (E.D. Cal. 2002) (denying motion for summary judgment where patentee raised a genuine issue of material fact with respect to "the most important factor in determining willfulness" – whether the accused infringer received a competent opinion of counsel).

Critically, there is no evidence that any Hitachi business person actually reviewed and relied on the opinion. That fact alone defeats Hitachi's motion. *See Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1259 (Fed. Cir. 2005) ("At trial, Lastova could not confirm that any executive with decision-making authority in Ericsson's marketing or engineering departments had ever relied on the opinion. Also, Ericsson does not contest Harris's assertion that it is unclear whether the known recipients of the opinion, two in-house attorneys, had any product or marketing responsibility. While the responsibilities of those who received the opinion are not dispositive of whether Ericsson 'ignored' the opinion, the evidence does suggest that little, if any, attention was given to the document within Ericsson."); *Johns Hopkins Univ. v. CellPro*, 978 F. Supp. 184, 194 (D. Del. 1997) (concluding opinions did not shield against willfulness when they "were not prepared at a time when the CellPro Board was considering whether to proceed with the apparently infringing work," but rather "after those business decisions had been made."), *aff'd*, 152 F.3d 1342 (Fed. Cir. 1998).

Additionally, while an opinion of counsel may demonstrate good faith, a factfinder may discount the opinion's usefulness if the opinion is incompetent. *See, e.g., Liquid*

*Dynamics*, 449 F.3d at 1225. An incompetent legal opinion is "of little value in showing the good faith belief of the infringer." *Comark*, 156 F.3d at 1191.

The Sughrue Opinion is incompetent for multiple reasons. First,

REDACTED                                              [8]    Rather, it

addresses

REDACTED

(*See* Schneider Decl., Exhibit 1 at 72-74, 78-79). Hitachi cannot insulate itself from a claim of willful infringement by relying on a non-infringement opinion that, admittedly, does not analyze the products accused of infringement. *Comark*, 156 F.3d at 1190-93 (upholding jury verdict premised, in part, on failure to update opinion counsel when device was modified).[9]

---

[8]    REDACTED    (*See* Hitachi Willfulness Br. at 12). While Hitachi is correct that no negative inference may be drawn, Hitachi is incorrect to the extent it suggests that Hitachi's refusal to rely on this advice is irrelevant. *See Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1369 (Fed. Cir. 2006) (noting that district court is allowed to consider all the facts — including whether competent opinion was obtained — so long as it does not infer that an opinion not being relied upon would have been unfavorable); *see also IMX, Inc. v. Lendingtree, LLC*, No. Civ. 03-1067-SLR, 2006 WL 38918, at *1 (D. Del. Jan. 6, 2006) (Robinson, J.) ("The fact that no opinion of counsel on the issue of infringement was acquired by defendant may be considered by the trier of fact in its willful infringement analysis, but no inference may be drawn to suggest that such an opinion, had it been acquired, would have been unfavorable to defendant.").

[9]    REDACTED    (Hitachi Willfulness Brief at 11).

(Schneider Decl., Exhibit 1 at 78-79).    REDACTED

REDACTED

The Sughrue Opinion is also self-serving. As explained in *Read*, a "good test that the advice given is genuine and not merely self-serving is whether the asserted defenses are backed up with viable proof during trial which raises substantial questions." 970 F.2d at 829 n.9. Here, unlike in *Read*, the

REDACTED

(*See* Hitachi Exhibit 25 at 19-22). Hitachi's trial defense – which will bear little resemblance to its opinion letter defense[10] – further supports a finding that Hitachi did not have a good faith belief that the '738 patent was invalid. *See Johns Hopkins*, 978 F. Supp. at 194; *see also Applera Corp. v. MJ Research Inc.*, 372 F. Supp. 2d 233, 239 (D. Conn. 2005) (noting that good faith belief was called into question by the fact that the references cited in the opinion letter were not asserted at trial). The Sughrue Opinion also fails to address secondary considerations of non-obviousness, which must be analyzed in any obviousness challenge. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983) ("It is jurisprudentially inappropriate to disregard any relevant evidence on any issue in any case, patent cases included. Thus evidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness.") (citing cases).

REDACTED

As discussed above,

REDACTED    A jury could determine that this

intimate relationship renders the opinion incompetent. *Comark Commc'ns*, 156 F.3d at 1191

---

[10] Hitachi asserts that this allegation is incorrect.

REDACTED    REDACTED

Indeed,
(*See* Schneider Decl., Exhibit 41). Likewise,
(*See* Schneider Decl., Exhibit 42).

("[B]efore we may consider the exculpatory value of an opinion of counsel, the legal advice contained therein must be found on the totality of the circumstances to be competent such that the client was reasonable in relying upon it."); *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997) (explaining that objectivity of opinion is a factor to be considered).

## V.    CONCLUSION.

In sum, Hitachi knew of the '738 patent before the infringement began, had BorgWarner confidential information in its possession that could have been used to copy the BorgWarner design, failed to obtain a competent opinion of counsel, and repeatedly engaged in litigation misconduct. For these reasons, the Court should deny Hitachi's motion for summary judgment of no willful infringement.

Dated: November 13, 2006

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
222 Delaware Ave., 10th Floor
Wilmington, DE 19801
(302) 888-6800

Hugh A. Abrams (*pro hac vice*)
Thomas D. Rein (*pro hac vice*)
Lisa A. Schneider (*pro hac vice*)
Marc A. Cavan (*pro hac vice*)
Lara (Fleishman) Hirshfeld (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

19