# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HITACHI, LTD. and HITACHI AUTOMOTIVE PRODUCTS (USA), INC.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>BORGWARNER INC.<br>and BORGWARNER MORSE TEC INC.,<br><br>　　　　　Defendants.<br><hr>BORGWARNER INC.,<br><br>　　　　　Counterclaimant,<br><br>　v.<br><br>HITACHI, LTD. and HITACHI AUTOMOTIVE PRODUCTS (USA), INC.,<br><br>　　　　　Counterdefendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　Civil Action No. 05-048-SLR<br><br>**PUBLIC VERSION** |

## MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 112, ¶ 1 BASED ON THE "REGULATING" RECITATION OF CLAIM 10 UNDER PLAINTIFFS' CLAIM CONSTRUCTION

*OF COUNSEL:*

SIDLEY AUSTIN BROWN & WOOD, LLP
Hugh A. Abrams
Thomas D. Rein
Lisa Schneider
Marc A. Cavan
Lara V. Hirshfeld
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Original Date: November 13, 2006
Redacted Date:  November 20, 2006

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
MORRIS JAMES, HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE  19801
(302) 888-6800
mmatterer@morrisjames.com
*Attorneys for BorgWarner Inc. and*
*BorgWarner Morse TEC Inc.*

## TABLE OF CONTENTS

I.    STATEMENT OF NATURE AND STAGE OF PROCEEDINGS. ...................................1

II.   SUMMARY OF ARGUMENT. .......................................................................................1

III.  STATEMENT OF FACTS. ...........................................................................................2

IV.   STATEMENT OF APPLICABLE LAW.. ......................................................................3

    A.    Standard for Summary Judgment.........................................................................3

    B.    Claims 10 and 11 Are Presumed Valid Under Section 282, and Hitachi
        Must Provide Clear and Convincing Evidence to Invalidate the Claims................4

    C.    Assessing Invalidity Under § 112 Involves a Complicated Factual
        Analysis.................................................................................................................5

    D.    The Existence of Genuine Issues of Material Fact Precludes Summary
        Judgment.. ............................................................................................................6

V.    ARGUMENT. ...............................................................................................................7

    A.    Hitachi's Motion Assumes the Preamble Is a Limitation, But It Is Not..................8

    B.    Even If the Preamble Is a Limitation, the Court Must Accept Hitachi's
        Nonsensical Construction of the "Regulating" Recitation For Hitachi's
        Motion to Be Relevant. ......................................................................................10

        1.    Hitachi Proposes an Incorrect Interpretation of the "Regulating"
            Recitation.. ............................................................................................10

        2.    The Language of the Asserted '738 Patent Claims Does Not Need
            to Be "Reworded" to Preserve The Claims' Validity; Rather, It
            Simply Requires Proper Construction. ...................................................13

        3.    Hitachi's Construction Should Be Rejected, and this Motion Is
            Thus Rendered Moot...............................................................................15

    C.    Under Hitachi's Construction for the "Regulating" Recitation, the '738
        Patent Nonetheless Satisfies § 112, ¶ 1.............................................................15

        1.    The '738 Patent Need Not Repeat What Was Known in the Art. ............16

        2.    Genuine Issues of Material Fact Preclude Summary Judgment. .............17

VI.   CONCLUSION............................................................................................................20

## TABLE OF AUTHORITIES

*ACTV, Inc. v. Walt Disney Co.,*
    346 F.3d 1082 (Fed. Cir. 2003)..............................................................................................10

*ADE Corp. v. KLA-Tencor Corp.,*
    288 F. Supp. 2d 590 (D. Del. 2003)..........................................................................................9

*Am. Cyanamid Co. v. United States Surgical Corp.,*
    833 F. Supp. 92 (D. Conn. 1992)............................................................................................14

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)..................................................................................................................3

*Arthrocare Corp. v. Smith & Nephew, Inc.,*
    2003 WL 1856436 (D. Del. Apr. 9, 2003).................................................................................5

*Autogiro Co. of Am. v. United States,*
    384 F.2d 391 (Ct. Cl. 1967)....................................................................................................13

*Beckson Marine, Inc. v. NFM, Inc.,*
    144 Fed. Appx. 862 (Fed. Cir. 2005) ......................................................................................11

*Becton Dickinson & Co. v. C.R. Bard, Inc.,*
    922 F.2d 792 (Fed. Cir. 1990)................................................................................................14

*Boston Scientific Scimed, Inc. v. Cordis Corp.,*
    392 F. Supp. 2d 676 (D. Del. 2005)...........................................................................4, 6, 7, 18, 19

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.,*
    246 F.3d 1368 (Fed. Cir. 2001)................................................................................................9

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..................................................................................................................3

*Chef Am., Inc. v. Lamb-Weston, Inc.,*
    358 F.3d 1371 (Fed. Cir. 2004) ..............................................................................................14

*Chemcast Corp. v. Arco Indus. Corp.,*
    913 F.2d 923 (Fed. Cir. 1990).................................................................................................17

*Chiron Corp.  v. Genentech, Inc.,*
    363 F.3d 1247 (Fed. Cir. 2004)...............................................................................................18

*Crown Operations Int'l, Ltd. v. Solutia Inc.,*
    289 F.3d 1367 (Fed. Cir. 2002).............................................................................................5, 6

*Cryovac Inc. v. Pechiney Plastic Packaging, Inc.,*
    430 F. Supp. 2d 346 (D. Del. 2006)....................................................................4, 7

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,*
    849 F.2d 1430 (Fed. Cir. 1988).......................................................................14

*eSpeed, Inc. v. Brokertec USA, L.L.C.,*
    342 F. Supp. 2d 244 (D. Del. 2004)...................................................................4

*Enzo Biochem, Inc. v. Calgene, Inc.,*
    188 F.3d 1362 (Fed. Cir. 1999).........................................................................5

*Enzo Life Scis., Inc. v. Digene Corp.,*
    305 F. Supp. 2d 400 (D. Del. 2004)...................................................................6

*Freeman v. Gerber Prods. Co.,*
    357 F. Supp. 2d 1290 (D. Kan. 2005)..............................................................12

*Hockerson-Halberstadt, Inc. v. Converse Inc.,*
    183 F.3d 1369 (Fed. Cir. 1999).......................................................................10

*Hoganas AB v. Dresser Indus., Inc.,*
    9 F.3d 948 (Fed. Cir. 1993) ...........................................................................14

*Hybritech, Inc. v. Monoclonal Antibodies, Inc.,*
    802 F.2d 1367 (Fed. Cir. 1986).......................................................................16

*Ingenio, Filiale Dde Loto-Quebec, Inc. v. Gamelogic, Inc.,*
    445 F. Supp. 2d 443 (D. Del. 2006).................................................................15

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,*
    381 F.3d 1111 (Fed. Cir. 2004).........................................................................8

*Johns Hopkins Univ. v. CellPro, Inc.,*
    152 F.3d 1342 (Fed. Cir. 1998).........................................................................5

*Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC,*
    381 F.3d 1142 (Fed. Cir. 2004).................................................................16, 18

*Liquid Dynamics Corp. v. Vaughan Co., Inc.,*
    449 F.3d 1209 (Fed. Cir. 2006).........................................................................7

*Medtronic Vascular, Inc. v. Boston Scientific Corp.,*
    2005 WL 89960 (D. Del. Jan. 5, 2005)............................................................15

*Metabolite Labs., Inc. v. Lab. Corp. of America Holdings,*

370 F.3d 1354 (Fed. Cir. 2004)..................................................................16

*Modine Mfg. Co. v. U.S. Int'l Trade Comm'n,*
    75 F.3d 1545 (Fed. Cir. 1996)................................................................4

*Monsanto Co. v. Scruggs,*
    459 F.3d 1328 (Fed. Cir. 2006)............................................................17

*Nazomi Commc'ns, Inc. v. Arm Holdings, PLC,*
    403 F.3d 1364 (Fed. Cir. 2005).............................................................4

*N. Telecom, Inc. v. Datapoint Corp .,*
    908 F.2d 931 (Fed. Cir. 1990)..........................................................4, 16

*Pause Tech., LLC v. TiVo, Inc.,*
    419 F.3d 1326 (Fed. Cir. 2005)............................................................10

*Pharmacia & Upjohn Co. v. Sicor & Sicor Pharms., Inc.,*
    2006 WL 2458627 (D. Del. Aug. 25, 2006) ...........................................7

*Quantum Corp. v. Rodime, Plc,*
    65 F.3d 1577 (Fed. Cir. 1995) .............................................................14

*Simmons, Inc. v. Bombardier Inc.,*
    328 F. Supp. 2d 1188 (D. Utah 2004)....................................................14

*Spectra-Physics, Inc. v. Coherent, Inc.,*
    827 F.2d 1524 (Fed. Cir. 1987).........................................................6, 18

*Tehrani v. Hamilton Med., Inc.,*
    331 F.3d 1355 (Fed. Cir. 2003).............................................................9

*See Union Oil Co. v. Atlantic Richfield Co.,*
    208 F.3d 989 (Fed. Cir. 2000) ..............................................................6

*United States Surgical Corp. v. Ethicon, Inc.,*
    103 F.3d 1554 (Fed. Cir. 1997).............................................................4

*In re Wands,*
    858 F.2d 731 (Fed. Cir. 1988)...............................................................5

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.,*
    418 F.3d 1326 (Fed. Cir. 2005).............................................................3

iv

## FEDERAL STATUTES

35 U.S.C. § 112 ¶ 1 ..............................................................................................1, 5

35 U.S.C. § 282 ...................................................................................................4

BorgWarner Inc. and BorgWarner Morse Tec Inc. ("BorgWarner") hereby oppose Hitachi's motion for summary judgment of invalidity under 35 U.S.C. § 112, ¶ 1 based on the "regulating" recitation of claim 10 under plaintiffs' claim construction. Hitachi's motion should be denied because the preamble is not a limitation of claim 10 and because, even if it is, Hitachi's motion is premised on a nonsensical construction of the relevant preamble phrase. In addition, Hitachi's motion should be denied because BorgWarner presents sufficient evidence to raise genuine issues of material fact regarding whether the '738 patent satisfies § 112, ¶ 1.

## I.    STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

The present case is a declaratory judgment patent case involving a U.S. Patent No. 5,497,738 ("The '738 patent"), which relates to variable camshaft timing systems. BorgWarner asserts that claims 10 and 11 of the '738 patent-in-suit are valid and infringed. Fact discovery is closed. Opening and Responsive *Markman* briefs and expert reports have been served.

## II.    SUMMARY OF ARGUMENT

As Hitachi well knows, BorgWarner asserts that the preamble is not a limitation. If the Court agrees with BorgWarner's position, then Hitachi's motion is moot, as it is focused solely on a recitation in the preamble. Further, even assuming that the preamble is found to be a limitation, Hitachi's motion assumes that the Court will adopt Hitachi's claim construction – a construction which Hitachi itself acknowledges is "nonsensical" (*see* Pls.' Mem. Supp. J. Invalidity "Regulating" Recitation, D.I. 279 ("Hitachi SJ Br.") at p. 8 n.5), and which Hitachi contends renders the claim invalid. If, however, the Court rejects Hitachi's nonsensical claim construction – which it should do consistent with Federal Circuit guidance dictating that claims should, where possible, be construed in a manner to uphold validity – then Hitachi's motion is again moot. The Court thus only reaches the issue presented by Hitachi's motion if:  (1) the preamble is found to be a limitation; (2) BorgWarner's construction, which harmonizes the

preamble language with the body of the claim and the teachings of the specification, is rejected[1]; and (3) Hitachi's nonsensical construction, which ignores and flatly contradicts the intrinsic evidence, is adopted. Even then, if it is assumed, for the sake of argument, that the Court were to find the preamble language to be limiting and were to adopt Hitachi's nonsensical construction, Hitachi's motion should still be denied because BorgWarner has raised a genuine issue of material fact concerning compliance with § 112, ¶ 1 under Hitachi's construction of the "regulating" recitation in the preamble.

## III.    STATEMENT OF FACTS

The language in dispute is found in the preamble of claim 10: "a method of regulating the flow of hydraulic fluid from a source to a *means for transmitting rotary movement* from said crankshaft *to a housing.*" Hitachi has asserted that this language limits the claim and requires that the structure which performs the recited function be only a "chain/belt and sprocket." (Hitachi SJ Br. at p. 1). BorgWarner's position is that the preamble is not a limitation, and if it is, that the corresponding structure for transmitting rotary movement to the housing includes the vane housing. (BorgWarner Opening Claim Construction Brief, D.I. 267 ("BW CC Br.") at pp. 14, 21; BW Resp. CC Br. at pp. 11, 26-27).

BorgWarner has explained that one skilled in the art has "at least a B.S. in mechanical engineering, electrical engineering, physics or a related discipline, with one or more years of design, test and analysis experience in the field of automotive electronic engine/drive train control." (Ribbens Infringement Rpt. (Ex. 1 of William B. Ribbens Declaration ("Ribbens

---

[1]    To be sure, Hitachi criticizes BorgWarner's identification of corresponding structure, but Hitachi does not argue that the '738 patent lacks § 112, ¶ 1 support under *BorgWarner's construction* of the "means for transmitting rotary movement" phrase within the preamble. And that is because the '738 patent fully supports BorgWarner's construction. (*See* BorgWarner Responsive Claim Construction Brief, D.I. 291 ("BW Resp. CC Br.") at pp. 25-26).

Decl.")) at pp. 5-6). Hitachi describes the level of skill similarly. (*See* Kuhn Invalidity Rpt. ((Ex. 1 to Summary Judgment Declaration Mary Matterer ("Matterer SJ Decl.") at ¶ 22).

The specification of the '738 patent identifies the "source" of lubricating oil as the main oil gallery ("MOG") (230). ('738 patent (Ex. 1 of Pls.' Combined Appendix in Support of Opening Summ. J. Motions, D.I. 280 ("Hitachi SJ Ex. [1]")), col. 11, lines 14-16 (claim 4); Fig. 19 (main oil gallery ("MOG") is '230')). The '738 patent also discloses the presence of a chain and associated sprocket or belt. (*See* '738 patent, Figs. 1-5; *see also* col. 5, line 4).

One of skill in the art knows that chains require lubrication. (*See* Ribbens Validity Rpt. (Ribbens Decl. Ex. 2) at ¶ 118; Kuhn Decl. (Hitachi SJ Ex. 18) at ¶ 16). "One of skill in the automotive art would understand that a chain that is used with a camshaft and crankshaft must be lubricated, and that such lubrication typically occurs by the splashing of oil from the crankcase onto the chain." (*See* Ribbens Decl. Ex. 2 at ¶ 118). Thus, one of skill in the art knows that lubricating oil is delivered or regulated in an amount sufficient to facilitate the movement of the chain, without impairing normal chain movement. (*See id.*).

## IV. STATEMENT OF APPLICABLE LAW

### A. Standard for Summary Judgment

Summary judgment is only appropriate if Hitachi demonstrates that "there is no genuine issue as to any material fact and that [Hitachi] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In considering Hitachi's motion, all facts and reasonable inferences are to be construed in BorgWarner's favor. *See, e.g., Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1335 (Fed. Cir. 2005) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor.") (alterations in original), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

3

**B.     Claims 10 and 11 Are Presumed Valid Under Section 282, and Hitachi Must Provide Clear and Convincing Evidence to Invalidate the Claims.**

A validity analysis always starts from the premise that a patent is presumed valid. *See* 35 U.S.C. § 282; *Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346, 352 (D. Del. 2006) ("When a party challenges a patent's validity, the starting point for analyzing that challenge is the statutory presumption of validity."); *Boston Scientific Scimed, Inc. v. Cordis Corp.*, 392 F. Supp. 2d 676, 680-83 (D. Del. 2005) (Robinson, J.) ("A patent is presumed valid and the burden of proving invalidity, whether under § 112 or otherwise, rests with the challenger."). The presumption of validity "includ[es] compliance with § 112." *N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 941 (Fed. Cir. 1990); *eSpeed, Inc. v. Brokertec USA, L.L.C.*, 342 F. Supp. 2d 244, 255 (D. Del. 2004) ("With respect to [the] factual determination [of whether the written description requirement is satisfied], it is particularly difficult to grant summary judgment, because, in addition to viewing all of the facts in a light most favorable to the non-moving party, '[a] patent is presumed valid, 35 U.S.C. § 282, and this presumption is based in part on the expertise of patent examiners presumed to have done their job.'" (internal citation omitted) (alteration in original)). The presumption of validity can be overcome only by clear and convincing evidence. *See United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1563 (Fed. Cir. 1997).

The Federal Circuit has further instructed that patents "are to receive a liberal construction, and . . . [are] to be so interpreted as to uphold and not to destroy the right of the inventor." *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1368-69 (Fed. Cir. 2005) (internal citation and quotation marks omitted); *see also Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1557 (Fed. Cir. 1996), *abrogated on other grounds by, Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558 (Fed. Cir. 2000) ("When claims

4

are amenable to more than one construction, they should when reasonably possible be interpreted so as to preserve their validity.")

**C.    Assessing Invalidity Under § 112 Involves a Complicated Factual Analysis.**

Section 112, ¶ 1, specifies, among other things, that a patent contain "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains ... to make and use the same ...." 35 U.S.C. § 112, ¶ 1. This portion of § 112 sets forth the "enablement" and "written description" requirements. Assessing whether the § 112, ¶ 1 requirements have been satisfied must be done on a case-by-case basis, because a complicated factual analysis underlies a determination of enablement and the factual question of written description. *See, e.g., Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1369 (Fed. Cir. 1999); *Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1376 (Fed. Cir. 2002).

Enablement is a conclusion reached after weighing many factual considerations, including what are known as the *Wands* factors: "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988). Courts have found that an alleged infringer's failure to present evidence regarding a number of the *Wands* factors is relevant in determining whether an infringer has established lack of enablement by clear and convincing evidence. *See Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1360 (Fed. Cir. 1998). Indeed, this Court has stressed that a party arguing non-enablement must consider the *Wands* factors and provide evidence of undue experimentation. *See, e.g., Arthrocare Corp. v. Smith & Nephew, Inc.*, No. Civ. A. 01-504-SLR, 2003 WL 1856436, at * 5 n.2 (D. Del. Apr. 9, 2003)

(Robinson, J.) (denying motion for summary judgment of non-enablement where defendant failed to provide any evidence of undue experimentation, and noting that "[a]s the party with the burden of proof at trial, it is incumbent upon defendant to come forward with evidence in order to obtain summary judgment."); *Boston Scientific,* 392 F. Supp. 2d at 681-83 (alleged infringer "has not specifically discussed any of the *'Wands* factors' and, while asserting that experimentation would be needed to practice the claimed invention, has failed to show that any such experimentation would be undue.").

Relatedly, whether the written description requirement is satisfied turns on a complicated factual inquiry, to be assessed on a case-by-case basis. *Crown,* 289 F.3d at 1376. As such, this inquiry is not easily amenable to summary judgment. *See, e.g., Enzo Life Scis., Inc. v. Digene Corp.,* 305 F. Supp. 2d 400, 404 (D. Del. 2004) (denying motion for summary judgment because genuine issue of fact existed regarding whether § 112, ¶ 1 was satisfied, in view of the understanding of one of ordinary skill in the art). The Court must consider the knowledge of persons skilled in the relevant art for the written description inquiry. *See Union Oil Co. v. Atlantic Richfield Co.,* 208 F.3d 989, 997 (Fed. Cir. 2000) (stating that "the Patent Act and this court's case law require only sufficient description to show one of skill in the refining art that the inventor possessed the claimed invention at the time of filing"). Further, it is axiomatic that "[a] patent need not teach, and preferably omits, what is well known in the art." *Spectra-Physics, Inc. v. Coherent, Inc.,* 827 F.2d 1524, 1534 (Fed. Cir. 1987).

### D.  The Existence of Genuine Issues of Material Fact Precludes Summary Judgment.

Summary judgment must be denied if BorgWarner raises a genuine issue of material fact regarding Hitachi's § 112, ¶ 1 enablement challenge to the validity of claims 10 and 11. *See, e.g., Crown,* 289 F.3d at 1379-81 (vacating grant of summary judgment for non-

6

enablement because non-movant proffered evidence that a "genuine issue of material fact [existed] as to whether a person of ordinary skill in the pertinent art could make or use the [claimed] invention ... without undue experimentation."); *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1224-25 (Fed. Cir. 2006) (denying summary judgment of non-enablement because non-movant presented substantial evidence of enablement, including expert testimony that while "the patent [did] not discuss a specific combination of elements ... [that combination] could be produced by a person of ordinary skill in the art without undue experimentation."), *petition for cert. filed*, 75 U.S.L.W. 3219 (Oct. 10, 2006) (No. 06-508); *Cryovac*, 430 F. Supp. 2d at 352, 357 (denying motion for summary judgment because defendant failed to meet its burden of showing by clear and convincing evidence that there was no genuine issue of material fact regarding enablement).

Likewise, summary judgment must be denied if BorgWarner raises a genuine issue of material fact regarding Hitachi's § 112, ¶ 1 written description challenge to the validity of claims 10 and 11. *See, e.g., Pharmacia & Upjohn Co. v. Sicor & Sicor Pharms., Inc.*, No. Civ A 04-833 KAJ, 2006 WL 2458627, at *10 (D. Del. Aug. 25, 2006) (denying motion for summary judgment because genuine issues of material fact existed on whether the written description of the patent was sufficient to support the claims); *Boston Scientific*, 392 F. Supp. 2d at 681-83 (denying motion for summary judgment because there were genuine issues of material fact regarding whether the patent at issue was invalid for failure to comply with the written description requirement).

V.    **ARGUMENT**

More than anything else, Hitachi's motion demonstrates that Hitachi's proposed claim construction for the "regulating" recitation is overly restrictive and fundamentally flawed. Notably, whereas Hitachi contends that *its own* construction of the specific "means for

transmitting rotary movement" phrase within the preamble lacks § 112, ¶1 support, Hitachi does *not* allege that *BorgWarner's* proposed construction of this particular phrase lacks § 112, ¶1 support. The reason is simple – Hitachi's construction ignores the relevant intrinsic evidence, while BorgWarner's construction harmonizes the preamble language with the body of the claim and the teachings of the specification. Hitachi's attempt to bootstrap an invalidity argument by urging a "nonsensical" claim construction should be rejected. But, even if, *arguendo*, Hitachi's construction were adopted, genuine issues of fact would preclude summary judgment.

A.    **Hitachi's Motion Assumes the Preamble Is a Limitation, But It Is Not.**

Hitachi assumes that the preamble of claim 10 is a positive limitation. However, as BorgWarner explained in its claim construction briefs, the preamble of claim 10 is not a limitation on the claim. (*See* BW CC Br. at p. 13; BW Resp. CC Br. at pp. 11-14). Independent claim 10 is a method claim which recites five steps. The body of the claim fully sets forth the claimed method. The preamble of claim 10 does not set forth any additional steps; nor does it recite any structure not mentioned in the body of the claim. Rather, the preamble simply introduces the steps recited thereafter and the intended use and function of the claimed steps. (*Id.*).

Hitachi does not dispute that the preamble of claim 10 sets forth the intended use and function of the claimed steps. (*See* BW Resp. CC Br. at p. 13). Accordingly, the preamble is properly regarded not as a claim limitation, but as prefatory language which simply introduces the method steps recited thereafter. *See, e.g., Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1118 (Fed. Cir. 2004) ("Language in a preamble limits a claim where it breathes life and meaning into the claim, but not where it merely recites a purpose or intended use of the invention. In this case, we need not decide whether the preamble adds a limitation to the claim because we hold that it recites a purpose or intended use of the claimed filter assembly

8

. . . ." (internal citation omitted)); *ADE Corp. v. KLA-Tencor Corp.*, 288 F. Supp. 2d 590, 595 (D. Del. 2003) ("A preamble does not limit a patent claim where it 'simply states the intended use or purpose of the invention . . . .' Instead, the preambles merely convey to the reader the intended use and purpose of the invention." (internal citation omitted) (ellipses in original)).

Contrary to Hitachi's assertions, the fact that the preamble of claim 10 was amended does not *per se* render it a limitation on the claim. *See, e.g., Tehrani v. Hamilton Med., Inc.*, 331 F.3d 1355, 1363 (Fed. Cir. 2003) (Although the patentee changed the claim's preamble from "[a] method of controlling a respirator" to "[i]n a respirator for varying tidal volume and frequency of breaths of a patient, a method of automatically controlling the respirator," the Court concluded that the "prosecution history [was] simply not sufficiently specific to persuade [them] that the language of the claim must be read restrictively"); *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1374-75 (Fed. Cir. 2001) (finding preamble was not a limitation because patentee voluntarily amended the preamble to add a phrase after the examiner indicated that the claims were allowable and not to distinguish prior art).

Here, the amendments to the preamble were made to address the Examiner's concerns about "unity of invention" and to avoid a restriction requirement, not to overcome prior art. (*See* BW Resp. CC Br. at p. 13; BorgWarner Sur-Reply Claim Construction Brief, D.I. 298, attachment A ("BW Sur-reply CC Br.") (Matterer SJ. Decl. Ex. 2) at pp. 3-5).[2] As such, there is no basis for concluding that the amendments render the preamble a limitation.

---

[2] As originally filed, the application had claims (*i.e.*, claims 16-22) that were not directed to an internal combustion engine. After the Examiner's summary, in a preliminary amendment, the applicants amended claim 11 to add elements that fit a claim related to an internal combustion engine (*e.g.*, that fluid is being supplied from a source to a vane housing), and the applicants cancelled claims 16-22, which were not drawn to an internal combustion engine. (*See* 11/23/93 Preliminary Amendment from the '738 prosecution history (Matterer SJ Decl. Ex. 3) at BW 002136).

**B.   Even If the Preamble Is a Limitation, the Court Must Accept Hitachi's Nonsensical Construction of the "Regulating" Recitation for Hitachi's Motion to Be Relevant.**

Notwithstanding the foregoing, even if the Court concludes that the preamble language limits claim 10, Hitachi's motion still faces an insurmountable hurdle – namely, the Court must accept Hitachi's nonsensical construction.

**1.   Hitachi Proposes an Incorrect Interpretation of the "Regulating" Recitation.**

As explained more fully in BorgWarner's claim construction briefs (*e.g.*, BW CC Br. at pp. 15, 21; BW Resp. CC Br. at pp. 15, 25; BW Sur-reply CC Br. (Matterer SJ Decl. Ex. 2) at p. 2), Hitachi proposes a construction of the "regulating" recitation that improperly ignores the context of the language in claim 10, and the '738 specification and prosecution history. *See, e.g., Pause Tech., LLC v. TiVo, Inc.*, 419 F.3d 1326, 1331 (Fed. Cir. 2005) (proper patent claim construction requires interpretation of the entire claim in context, not single element in isolation); *Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1374 (Fed. Cir. 1999) (same); *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088-90 (Fed. Cir. 2003) ("While certain terms may be at the center of the claim construction debate, the context of the surrounding words of the claim also must be considered . . . .").

The "regulating" recitation refers to a portion of the preamble of claim 10 – *i.e.*, "a method of regulating the flow of hydraulic fluid *from a source to a means for transmitting rotary movement* from said crankshaft *to a housing*." ('738 patent, col. 12, lines 3-6 (emphasis added)). Hitachi interprets the recitation to mean that oil is splashed from the source onto a chain or belt and associated sprocket and not for control of camshaft phase angle or actuation of a vane in a VCT system.[3]

---

[3]   Under Hitachi's interpretation, the "source" would have to be the crankcase or main

10

Hitachi's identification of the corresponding structure for performing the function of transmitting rotary movement specifically excludes a structure – the vane housing – that the '738 patent repeatedly describes as playing a role in transmitting rotary movement to the camshaft. (*See, e.g.,* '738 patent, col. 6, lines 7-9, 21-25; col. 10, lines 3-5). One skilled in the art reading the "housing" term in its context would immediately conclude that the "housing" is part of the structure necessary for performing the function of transmitting rotary movement to the housing. Indeed, Hitachi cannot be correct that the corresponding structure for transmitting rotary movement is limited only to the sprocket and a chain or belt attaching the sprocket to the crankshaft; if Hitachi were correct, and the housing were not part of the structure, then the housing would not be rotated. (BW Resp. CC Br. at p. 27). Accordingly, the corresponding structure for performing the function of transmitting rotary movement from the crankshaft to the housing must include the vane housing.

Hitachi argues that BorgWarner's proposed construction cannot be correct because the "'housing' cannot properly be part of the structure given that the claim expressly requires that rotary movement be transmitted from the crankshaft *to the housing.*" (Hitachi Resp. CC Br. at p. 26 (emphasis in original)). But courts in similar situations have found acted-upon structures to be included as part of the corresponding structure. For example, with respect to one patent involving a windowpane "hingedly connected" to a mounting flange, the court construed "means hingedly connecting" as a means-plus-function limitation, and the function was defined as "hingedly connecting." *Beckson Marine, Inc. v. NFM, Inc.,* 144 Fed. Appx. 862, 865-66 (Fed. Cir. 2005) (unpublished opinion). The corresponding structure was construed to include not only

---

supply of oil, which accords with BorgWarner's construction of the term. But, instead, Hitachi contends that the "source" is something different – namely, the recesses adjacent the vanes in the vane housing. (BW Resp. CC Br. at p. 21; Hitachi Opening Claim Construction Brief, D.I. 267 ("Hitachi CC Br.") at pp. 24-25).

11

the structure doing the "connecting," but also the structure being connected – namely, the windowpane. *Id.* Similarly here, the corresponding structure for performing the function of transmitting rotary movement can include the structure being rotated – *i.e.*, the housing. *See also Freeman v. Gerber Prods. Co.*, 357 F. Supp. 2d 1290, 1301 (D. Kan. 2005) (in means-plus-function clause "selectively maintaining said closure in covering relation with said container," the container being covered was construed to be part of the corresponding structure). Indeed, Hitachi's claim construction brief contradicts its own argument. Hitachi's brief equates "sprocket" with "housing." (Hitachi CC Br. at pp. 25-26 (equating "sprocket" with "[housing]" three times in block quote)). Thus, if one were to employ Hitachi's logic that the "housing" cannot play a role in performing the function, then neither could the "sprocket," which Hitachi admits is part of the corresponding structure.



(*See, e.g.*, Ichinosawa Decl. (Hitachi SJ Ex. 8) at ¶ 12).[4]

Moreover, Hitachi completely ignores the § 282 statutory presumption of validity for patents, and that the PTO Examiner that reviewed the application for the '738 patent had no trouble construing the claims. Indeed, the Examiner understood that the preamble, to the extent that it was relevant to interpreting the claim, related to a variable camshaft timing system and *not* to supplying oil to a chain. For instance, during the prosecution of the '738 patent the Examiner applied prior art references showing VCT systems, such as the Butterfield '659 patent, the Linder patent and the Strauber patent (*See, e.g.*, (1/4/94 Office Action from Prosecution history of the '738 patent) (Matterer SJ. Decl. Ex. 3) (citing U.S. Patent Nos. 5,172,659 ("Butterfield '659

---

[4] The specification describes the housing in various embodiments as part of the sprocket or bolted to the sprocket. (*See, e.g.*, '738 patent, col. 6, lines 7-24).

patent"), 5,056,477 ("Linder patent"), and 5,012,774 ("Strauber patent") at BW 002150-51) to what eventually issued as asserted claims 10 and 11. In doing so, the Examiner did not look for disclosure in those references of applying oil to a chain, presumably because the Examiner construed the claims in a manner consistent with the specification and its teaching of a control system for a VCT system.

 2.     **The Language of the Asserted '738 Patent Claims Does Not Need to Be "Reworded" to Preserve The Claims' Validity; Rather, It Simply Requires Proper Construction.**

Because BorgWarner has offered a straightforward construction that makes sense in light of the specification and asserted claim 10 as a whole, this case is very different from the cases cited by Hitachi where the claim language is in error or would require judicial rewriting to be saved. Such cases are simply inapposite.

In its brief, Hitachi quotes an isolated statement from a Court of Claims case to support its argument that courts cannot rewrite a claim to save it. (*See* Hitachi SJ Br. at p. 12 (*quoting Autogiro Co. of Am. v. United States*, 384 F.2d 391, 396 (Ct. Cl. 1967))). BorgWarner does not take issue with this uncontroversial position. But Hitachi fails to recite the court's observation in the very next sentence of the opinion -- "Although courts are confined by the language of the claims, they are not, however, confined to the language of the claims in interpreting their meaning." *Autogiro*, 384 F.2d at 396. In other words, claim language is not interpreted in a vacuum or in isolation, but rather is to be construed consistent with the specification and prosecution history. "The necessity for a *sensible* and systematic approach to claim interpretation is axiomatic," and to do otherwise would be to countenance the type of "Alice-in-Wonderland" approach employed by Hitachi. *Id.* at 397 (emphasis added). Said another way, "[c]laims should be construed in a rational and practical manner, and their

13

interpretation should lead to neither absurd nor unjust results." *Am. Cyanamid Co. v. United States Surgical Corp.*, 833 F. Supp. 92, 109 n.27 (D. Conn. 1992).

The other cases cited by Hitachi are also unavailing. For instance, *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 799 (Fed. Cir. 1990), is distinguishable because BorgWarner is not attempting to import language into claim 10 to convert it into a dependent claim, as the district court did in *Becton*.[5] The case of *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433-34 (Fed. Cir. 1988), is similarly inapplicable. In *Phillips Petroleum*, the court added a limitation into a claim "wholly apart from any need to interpret what the patentee meant by particular words or phrases in the claim." *Id.* at 1433. No such importation is being attempted here. In addition, the case of *Simmons, Inc. v. Bombardier, Inc.*, 328 F. Supp. 2d 1188, 1201 (D. Utah 2004), relied on by Hitachi, is not relevant because it addressed a mistake in the relationship between the patent at issue and a related patent. No such mistake of relationship is at issue here.

More notable than the cases cited by Hitachi is its failure to cite a single decision finding a patent invalid under § 112 as a matter of law based on language found only in a claim's preamble.[6]

---

[5] Rather than finding claims invalid under § 103, the district court in *Becton* rewrote two independent claims by adding specific language to the claims to convert them into dependent claims.

[6] *Chef Am., Inc. v. Lamb-Weston, Inc.* addressed a step of "heating the resulting batter-coated dough to a temperature in the range of about 400° F. to 850° F" set forth in the body of claim 1, and not in its preamble. 358 F.3d 1371 (Fed. Cir. 2004). Similarly, *Hoganas AB v. Dresser Indus., Inc.* addressed the word "straw" appearing in the body of the claim. 9 F.3d 948, 951 (Fed. Cir. 1993). Likewise, *Quantum Corp. v. Rodime, PLC*, addressed amending the phrase "at least 600" to "at least approximately 600" -- appearing in the body of the claims and not the preamble -- during reexamination. 65 F.3d 1577, 1579-80 (Fed. Cir. 1995).

3.    **Hitachi's Construction Should Be Rejected, and This Motion Is Thus Rendered Moot.**

Claims 10 and 11 are presumed valid, and BorgWarner has proposed a reasonable claim construction consistent with the claim language, specification, and prosecution history. Accordingly, the Court should reject Hitachi's argument that the asserted claims are invalid based upon Hitachi's admittedly nonsensical construction. *See, e.g., Ingenio, Filiale De Loto-Quebec, Inc. v. Gamelogic, Inc.*, 445 F. Supp. 2d 443, 458-59 (D. Del. 2006) (denying motion for partial summary judgment because movant's argument for lack-of-enablement failed, as it was predicated upon movant's claim construction which was rejected by the Court); *Medtronic Vascular, Inc. v. Boston Scientific Corp.*, No. Civ. 98-478-SLR, 2005 WL 89960, at *5 (D. Del. Jan. 5, 2005) (Robinson, J.) (denying motion for partial summary judgment of non-enablement premised upon movant's incorrect claim construction), *aff'd Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 182 Fed. Appx. 994 (Fed. Cir. 2006) (unpublished opinion). In *Ingenio*, the defendant asserted that the claims were not enabled under its construction for the term "unrecognizable." *Ingenio*, 445 F. Supp. 2d at 458. More specifically, the defendant argued that under its construction the "claims of the patent require encryption, and are not enabled because they [fail] to teach an encryption technique." *Id.* The Court, however, disagreed with the defendant, and adopted a construction of "unrecognizable" where an encryption technique was not required. *Id.* The Court then rejected the defendant's non-enablement argument. Similarly, here, the Court should reject Hitachi's admittedly nonsensical construction and deny Hitachi's motion.

C.    **Under Hitachi's Construction for the "Regulating" Recitation, the '738 Patent Nonetheless Satisfies § 112, ¶ 1.**

If the Court were to adopt Hitachi's "nonsensical" construction, § 112, ¶ 1 is nonetheless satisfied, and thus Hitachi's motion should be denied for this reason as well.

1.    **The '738 Patent Need Not Repeat What Was Known in the Art.**

The disclosure for the '738 patent need not duplicate what was well known in the art in 1993 – namely, that all chain drive camshafts have oil supplied for the purpose of lubrication. *See Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1154-56 (Fed. Cir. 2004) ("This Court has repeatedly explained that a patent applicant does not need to include in the specification that which is already known to and available to one of ordinary skill in the art."); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986) ("[A] patent need not teach, and preferably omits, what is well known in the art."); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1366-67 (Fed. Cir. 2004) (finding that the patentee enabled the claimed invention because although the patent did not disclose the correlating step ... "the record show[ed] repeatedly that the correlating step [was] well within the knowledge of one of skill in this art."), *cert. granted in part*, 126 S. Ct. 601 (2005), *and cert. dismissed*, 126 S. Ct. 2921 (2006).  Hitachi's expert witness, Kuhn, confirms in his declaration that automobile engine chains are typically lubricated by oil from the oil crankcase.  (Kuhn Decl. (Hitachi SJ Ex. 18) at ¶ 16).  Thus, the prior art references cited in the specification of the '738 patent, as well as those references cited by the Examiner during the prosecution, would include such a lubrication system for the chain.

As explained below, the '738 patent provides the *requisite* teachings to satisfy the requirements of § 112, especially considering the information available to a person of skill in the art in 1993.[7]

---

[7]  Furthermore, what is required to enable a patent varies depending on the level of skill required to qualify as one of ordinary skill in the relevant art and the subject matter of the patented invention.  *See N. Telecom*, 908 F.2d at 941 ("[E]nablement is determined from the viewpoint of a skilled [artisan] using [his or her] knowledge and skill. ... The amount of disclosure that will enable ... may vary according to the nature of the invention, the role of the [technology] in carrying it out, and the complexity of the contemplated [technology], all from the

2.    **Genuine Issues of Material Fact Preclude Summary Judgment.**

Although Hitachi's construction does not make sense in the context of the '738 patent teachings and the steps of the asserted claims, Hitachi falls short of proving that the '738 patent would fail to meet § 112, ¶ 1 if Hitachi's construction were adopted.

Hitachi's construction has oil flowing from a "source" to the chain/belt and associated sprocket, and the '738 patent has full § 112, ¶ 1 support for these structures.  For instance, the '738 patent explains that the "source" of "lubricating oil" is the main oil gallery. (*See, e.g.*, '738 patent, col. 11, lines 14-16 (claim 4); Fig. 19 (main oil gallery ("MOG") is '230,' which is the lubricating source)).  In addition, the '738 patent clearly discloses the presence of a chain and associated sprocket or belt. (*See* '738 patent, Figs. 1-5; *see also* col. 5, line 4).

Further, one of skill in the art would know that the chains need to be lubricated. As BorgWarner's technical expert, Dr. Ribbens, explains:  "One of skill in the art would understand that all chain drive camshafts have oil supplied [for lubrication], including those systems described in the '738 patent." (Ribbens Decl. Ex. 2 at ¶ 118).

Hitachi's expert agrees that oil is supplied for lubrication. (Kuhn Decl. (Hitachi SJ Ex. 18) at ¶ 16).  Dr. Ribbens further elaborates that "[o]ne of skill in the automotive art would understand that a chain that is used with a camshaft and crankshaft must be lubricated, and that such lubrication typically occurs by the splashing of oil from the crankcase onto the

---

viewpoint" of one of skill in the art.); *Chemcast Corp. v. Arco Indus. Corp.*, 913 F.2d 923, 927-28 (Fed. Cir. 1990) ("Assessing the adequacy of the disclosure … is largely an objective inquiry that depends upon the scope of the claimed invention and the level of skill in the art.") (emphasis omitted).    The level of disclosure …required to satisfy the enablement requirement is proportional to the level of skill in the relevant art. *See id.* Here, the relevant level of skill is high. (*See supra* pp. 2-3). Accordingly, the disclosure required for the '738 patent is less than in instances where the level of skill is low. *See, e.g., Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1338 (Fed. Cir. 2006) (rejecting non-enablement argument "because of the [high] level of skill in the art and the publicly available information" about gene sequence at issue).

chain." (Ribbens Decl. Ex. 2 at ¶ 118). And one of skill in the art would recognize that this lubricating oil would need to be delivered or regulated in an amount sufficient to facilitate movement of the chain, without being so excessive as to impair normal chain movement. (*See id.*). Accordingly, it would be implicit to one skilled in the art that oil may flow from the main oil gallery to the chain. *See Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1534 (Fed. Cir. 1987) ("A patent need not teach, and preferably omits, what is well known in the art."); *Boston Scientific*, 392 F. Supp. 2d at 681. To the extent Hitachi's expert disagrees, that simply highlights a disputed issue of material fact.

Moreover, accomplishing the flow of oil from the source to the chain would be well within the knowledge and purview of one of ordinary skill in the art reading the '738 patent. The Federal Circuit's decision *Koito* is instructive here. In *Koito*, the applicant omitted certain details because they were "standard in the industry," while the defendant failed to provide evidence that the omitted details would have made one of ordinary skill in the art unable to practice the claimed invention without undue experimentation. 381 F.3d at 1156. Consequently, the Court found that the defendant failed to show non-enablement by clear and convincing evidence. *Id.* So too here. Even applying Hitachi's nonsensical construction, one skilled in the art would be able to practice the claimed method without undue experimentation. *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1253 (Fed. Cir. 2004) (a patent must "enable any person skilled in the art ... to make and use the [invention]" without undue experimentation) (internal citation and quotation marks omitted), *cert. denied*, 543 U.S. 1050 (2005).

Indeed, notably absent from Hitachi's motion is any discussion of this *Wands* factor or, for that matter, the other *Wands* factors. For example, Hitachi's motion failed to address the *Wands* factors of the relevant level of skill in the art and the available technology in

18

1993. Hitachi's motion fails to address the *Wands* factor of the quantity of experimentation necessary to enable a system for lubrication of the chain with oil from the crankcase, especially in view of factors such as the state of the prior art and the relative skill of those working in the art. And, as noted above, this Court has found a movant's failure to address the *Wands* factors fatal to succeeding at summary judgment. (*See supra* pp. 5-6). As such, Hitachi's motion should be denied. (*See id.*; *see also Boston Scientific,* 392 F. Supp. 2d at 681-83 (denying summary judgment on § 112 ground where defendant failed to discuss any of the *Wands* factors)).

Based on the foregoing, BorgWarner has, at a minimum, raised a genuine issue of material fact on Hitachi's challenge to the validity of the asserted patent claims under § 112, ¶ 1 based on Hitachi's own, erroneous construction of the "regulating" recitation in the preamble. As a result, summary judgment is inappropriate, and Hitachi's motion should be denied.

19

## VI.    CONCLUSION

For the foregoing reasons, the Court should deny Hitachi's motion for summary judgment of invalidity under § 112, ¶ 1, based on Hitachi's claim construction of the "regulating" recitation in the preamble.

Dated: November 13, 2006

Richard K. Herrmann (I.D. #405)
Lewis H. Lazarus (I.D. #2374)
Mary B. Matterer (I.D. #2696)
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19899
(302) 888-6800

Hugh A. Abrams *(pro hac vice)*
Thomas D. Rein *(pro hac vice)*
Lisa A. Schneider *(pro hac vice)*
Paul E. Veith *(pro hac vice)*
Marc A. Cavan *(pro hac vice)*
Stephanie P. Koh *(pro hac vice)*
Lara V. Hirshfeld *(pro hac vice)*
Sidley Austin LLP
1 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for BorgWarner Inc., and
BorgWarner Morse Tec Inc.*

20