## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HITACHI, LTD. and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) Civil Action No. 05-048-SLR |
| BORGWARNER INC., and BORGWARNER MORSE TEC INC., | ) ) **PUBLIC VERSION** ) |
| Defendants. | ) ) |
| BORGWARNER INC., | ) ) |
| Counterclaimant, | ) ) |
| v. | ) ) ) |
| HITACHI, LTD., and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., | ) ) ) |
| Counterdefendants. | ) ) |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT

*OF COUNSEL:*

SIDLEY AUSTIN BROWN & WOOD, LLP
Hugh A. Abrams
Thomas D. Rein
Lisa Schneider
Marc A. Cavan
Lara V. Hirshfeld
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
MORRIS JAMES, HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
(302) 888-6800
mmatterer@morrisjames.com
*Attorneys for BorgWarner Inc. and
BorgWarner Morse TEC Inc.*

Original Date:  November 13, 2006
Redacted Date:  November 20, 2006

# TABLE OF CONTENTS

I.   STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ................................ 1

II.  SUMMARY OF ARGUMENT ......................................................... 1

III. STATEMENT OF FACTS .......................................................... 2

    A.   Background of the '738 Patent ........................................... 2

    B.   The Accused Hitachi Products .......................................... 4

    C.   Hitachi's Contributory and/or Induced Infringement ................... 5

IV.  STATEMENT OF APPLICABLE LAW ................................................ 6

    A.   Standard for Summary Judgment ......................................... 6

    B.   Direct Infringement, Whether Literal or under the Doctrine of Equivalents, Is a Question of Fact. ......................................................... 7

    C.   The Existence of Genuine Issues of Material Fact Precludes Summary Judgment. ............................................................... 8

    D.   The Standard for Active Inducement and/or Contributory Infringement ............... 9

V.   ARGUMENT ................................................................... 10

    A.   Hitachi's Direct Infringement of the Asserted Claims Is Not At Issue. ................ 10

    B.   At a Minimum, Genuine Issues of Material Fact Regarding Steps in the Body of the Asserted Claims Mandate Denial of Hitachi's Motion. .................. 11

        1.   Hitachi's VCT System Includes A Chain And Sprocket That Receive A Supply Of Oil. ................................................... 13

        2.   Hitachi's Accused Products Meet the Calculating Step. ........................ 14

            a.   Hitachi's Documents and Testimony from a Nissan Witness Indicate that Determining the Target Angle Involves Use of the Sensed Camshaft Information. ............................... 14

            b.   The Calculating Step Is Also Met Under the Doctrine of Equivalents. ....................................................... 18

        3.   Hitachi's Accused Products Utilize a PWM Voltage Signal Which Meets Claim Limitations Reciting an "Electrical Signal." ...................... 19

a.    Hitachi's "PWM Voltage Signal" Necessarily Involves Current Control ............................................................... 19

b.    At a Minimum, Hitachi's "PWM Voltage Signal" Is the Equivalent of the Claimed Electrical Signal ................................. 21

4.    Even Under Hitachi's Claim Construction, Hitachi's Accused Products Have the Equivalent of a Vented Spool ............................... 22

a.    "Vented Spool" ................................................................. 22

b.    Influence on Spool Movement Due to Oil Pressure .................... 25

5.    Hitachi's Accused Products Have Conduit Lines That Are Equivalent to the Claimed "Inlet and Return Lines" Under Hitachi's Proposed Construction ............................................................ 25

6.    Hitachi's Accused Products Meet the "Connection" Requirement of Claim 11, Even Under Hitachi's Construction ............................... 27

7.    The Solenoid in Hitachi's Accused Products Includes An "Air Gap," Even Under Hitachi's Construction of that Term ...................... 29

VI.    CONCLUSION ................................................................................ 30

# TABLE OF AUTHORITIES

## CASES

*AFG Industrial, Inc. v. Cardinal IG Co.,*
375 F.3d 1367 (Fed. Cir. 2004).................................................................8

*Am. Permahedge, Inc. v. Barcana, Inc.,*
105 F.3d 1441 (Fed. Cir. 1997)..............................................................7

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ...............................................................................7

*Aro Mfg. Co. v. Convertible Top Replacement Co.,*
377 U.S. 476 (1964) .............................................................................10

*Bai v. L & L Wings, Inc.,*
160 F.3d 1350 (Fed. Cir. 1998)..............................................................7

*Boston Scientific Scimed, Inc. v. Cordis Corp.,*
392 F. Supp. 2d 676 (D. Del. 2005) ......................................................9

*C.R. Bard, Inc. v. Advanced Cardiovascular Sys.,*
911 F.2d 670 (Fed. Cir. 1990)..............................................................10

*Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.,*
15 F.3d 1573 (Fed. Cir. 1993)................................................................7

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ...............................................................................6

*Christiana Indus. v. Empire Elecs., Inc.,*
443 F. Supp. 2d 870, 883-84 (E.D. Mich. 2006), *vacated in part on other
grounds,* No. 06-12568, 2006 WL 2375956 (E.D. Mich. Aug. 16, 2006) .................8, 26

*Cordis Corp. v. Medtronic AVE, Inc.,*
194 F. Supp. 2d 323 (D. Del. 2002) ....................................................10

*Crockett v. Abraham,*
284 F.3d 131 (D.C. Cir. 2002) .............................................................17

*Cybor Corp. v. FAS Techs., Inc.,*
138 F.3d 1448 (Fed. Cir. 1998)..............................................................7

*Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.,*
347 F.3d 1314 (Fed. Cir. 2003) .........................................................8, 26

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki*,
344 F.3d 1359 (Fed. Cir. 2003) (en banc) ............................................................ 8, 26

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,
909 F.2d 1464 (Fed. Cir. 1990) ............................................................................. 10

*Izumi Prods. Co. v. Koninklijke Philips Elec. N.V.*,
315 F. Supp. 2d 589 (D. Del. 2004) ..................................................................... 8, 9

*Joy Techs., Inc. v. Flakt, Inc.*,
6 F.3d 770 (Fed. Cir. 1993) ................................................................................... 11

*Leggett & Platt, Inc. v. Hickory Springs Mfg Co.*,
285 F.3d 1353 (Fed. Cir. 2002) .............................................................................. 9

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*,
449 F.3d 1209 (Fed. Cir. 2006) ............................................................................. 10

*Markman v. Westview Instruments. Inc.*,
52 F.3d 967 (Fed. Cir. 1995) .................................................................................. 7

*Metropolitan-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
125 S. Ct. 2764 (2005) ........................................................................................... 17

*Panduit Corp. v. Dennison Mfg., Co.*,
836 F.2d 1329 (Fed. Cir. 1987) ............................................................................... 7

*Praxair, Inc. v. ATMI, Inc.*,
231 F.R.D. 457 (D. Del. 2005) ................................................................................ 8

*RF Delaware, Inc. v. Pacific Keystone Techs., Inc.*,
326 F.3d 1255 (Fed. Cir. 2003) ............................................................................. 11

*SanDisk Corp. v. Memorex Prods., Inc.*,
415 F.3d 1278 (Fed. Cir. 2005) ............................................................................. 12

*Seal-Flex, Inc. v. Athletic Track and Ct. Constr.*,
172 F.3d 836 (Fed. Cir. 1999) ............................................................................. 2, 7

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
520 U.S. 17 (1997) .................................................................................................. 7

*Warner-Lambert Co. v. Teva Pharm. USA, Inc.*,
418 F.3d 1326 (Fed. Cir. 2005) ............................................................................... 6

v

*Water Techs. Corp. v. Calco, Ltd.,*
    850 F.2d 660 (Fed. Cir. 1988)...........................................................................10

*Wood v. County of Alameda,*
    1995 WL 705139 (N.D. Cal. 1995)..................................................................17


**FEDERAL STATUTES**

35 U.S.C. § 271(b).............................................................................................10, 11

35 U.S.C. § 271(c).............................................................................................10, 11

BorgWarner Inc. and BorgWarner Morse Tec Inc. ("BorgWarner") hereby oppose the Motion for Summary Judgment of Noninfringement ("Hitachi's SJ Motion") filed by Hitachi, Ltd. and Hitachi Automotive Products (USA), Inc. ("Hitachi"). (D.I. 275). BorgWarner has submitted more than enough evidence to raise genuine issues of material fact regarding whether Hitachi has infringed United States Patent Number 5,497,738 ("the '738 patent"). Hitachi's motion should, accordingly, be denied.

## I.    STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

The present action is a declaratory judgment patent case involving the '738 patent, which relates to variable camshaft timing systems. BorgWarner asserts that independent claim 10 and dependent claim 11 of the '738 patent are valid and infringed. Fact discovery has closed. Opening *Markman* briefs and expert reports have been served, but no *Markman* ruling has been issued.

## II.    SUMMARY OF ARGUMENT

Many reasons warrant denial of Hitachi's SJ Motion. First and foremost, Hitachi's motion is premised entirely on *Hitachi's proposed claim constructions*, and Hitachi does not assert non-infringement under BorgWarner's proposed constructions. The chart provided at pages 24-28 of Hitachi's SJ Motion compares each element of the claims with Hitachi's proposed claim constructions. Hitachi never addresses the issue of infringement under *any* of *BorgWarner's competing* claim constructions or, for that matter, any constructions other than the ones urged verbatim by Hitachi.

Mindful that the Court has already received extensive briefing on the issue of claim construction, BorgWarner declines to respond in kind to the extensive re-hashing of claim construction included in Hitachi's summary judgment brief. Needless to say, BorgWarner

1

strongly disagrees with Hitachi's proposed constructions, which are at odds with the plain language of the claims and the intrinsic evidence, and BorgWarner respectfully directs the Court's attention to BorgWarner's *Markman* briefs for a detailed explanation of why Hitachi's constructions are incorrect. (*See* BW Opening CC Br. (D.I. 267), BW Resp. CC Br. (D.I. 291) and BW Surreply Br. (D.I. 298, attachment A[1])). This would include BorgWarner's surreply, which BorgWarner has moved for admission based on the new and untimely arguments and extrinsic evidence injected by Hitachi through its claim construction response brief. Because many of those same arguments have been repeated by Hitachi here, BorgWarner would request that the Court review BorgWarner's surreply if the Court wishes to consider claim construction in connection with this motion. (*See* BW CC Surreply (Matterer SJ Decl Ex. 2)).

Even if the Court were to adopt Hitachi's proposed claim constructions (and it should not), Hitachi ignores that infringement is a question of fact that requires proof by only a preponderance of the evidence. *Seal-Flex, Inc. v. Athletic Track and Ct. Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999). BorgWarner has raised more than sufficient factual questions to preclude summary judgment under Hitachi's erroneous claim constructions, except as noted herein.

## III.    STATEMENT OF FACTS

### A.    Background of the '738 Patent

The '738 patent is directed to a novel closed loop control system that utilizes a variable force solenoid and a vented spool to continuously and precisely vary the timing of the camshaft relative to the crankshaft in an internal combustion engine. The application which gave rise to the '738 patent was filed in 1993 and was the first patent to use a variable force solenoid

---

[1]    BorgWarner's Surreply (D.I. 298, Attachment A) is also attached as Ex. 2 to the Summary Judgment Declaration of Mary Matterer ("Matterer SJ Decl.").

and vented spool in a closed loop control system to achieve continuous control over the position of a spool valve in a variable camshaft timing ("VCT") environment.

# REDACTED

(*See*

Matterer SJ Decl. Ex. 5 at HIT 48). Despite knowing of the '738 patent and appreciating its significance (even to the point of obtaining an opinion on a different product), Unisia Jecs proceeded to develop the very VCT system that BorgWarner has accused of infringement in this case. After acquiring Unisia JECS, Hitachi then went on to make and sell continuous VCT systems specially designed for Nissan, Ford and Honda vehicles – all which have been accused of infringement here. At this point, continuous vane type VCT systems, of the type described and claimed in the '738 patent, have gained wide commercial acceptance throughout the automotive industry.

# REDACTED

(Matterer SJ Decl. Ex. 6 at BW

136921-35). Torsional assist combines aspects of oil pressure actuated ("OPA") and cam torque actuated ("CTA") vane actuation, and thus employs a hybrid approach. BorgWarner's

---

[2] *See* 1999 Opinion of Counsel, Ex. 25 of Pls.' Combined Appendix in Support of its Opening Summ. J. Motions, D.I. 280 ("Hitachi SJ Ex. 25") at HIT441325.
[3] At the time, Hitachi had an ownership interest in Unisia Jecs, and Hitachi subsequently merged with Unisia Jecs.

3

commercial product is marked with the '738 patent and uses the claimed inventive control system with a variable force solenoid and vented spool.

**B.    The Accused Hitachi Products**

Hitachi currently sells VCT components to Nissan, Honda, and Ford, which utilize the closed loop control system, variable force solenoid, and vented spool described and claimed in the '738 patent.  Because of the initial relationship with Unisia JECs, Hitachi's predecessor in interest, Nissan became the first and most established customer of Hitachi to use the accused VCT components.  The accused Nissan engines are

REDACTED

Hitachi sells the VCT vane actuator as well as the solenoid valve to Nissan for use in the accused VCT systems.  Both components are specifically designed for the accused VCT systems and have no other purpose.  Hitachi also sells various sensors (*e.g.*, camshaft angle sensors, crankshaft angle sensors) and the electronic control unit ("ECU") that controls most of the electronics in the vehicles, including the VCT functionality.

Hitachi also sells accused VCT actuators and solenoid valves to Ford for the REDACTED  These engines are used in vehicles such as the REDACTED  Accused VCT actuators and solenoid valves are also sold to Honda for importation into the United States in certain vehicles, such as certain versions of the REDACTED

Although Hitachi's deposition witnesses (and attorneys) claimed that Hitachi "lacked knowledge" of the accused Hitachi products and how those products are used in the accused engines and vehicles, Hitachi has now reversed course and filed declarations of those

4

same witnesses setting out in detail the supposed structure and operation of the accused components in the accused engines. Notwithstanding Hitachi's attempts to draw distinctions between its products and the commercial products of BorgWarner in an effort to craft a noninfringement defense, the Hitachi products sold to Nissan, Ford and Honda, like the BorgWarner products, all employ the process claimed in the '738 patent.

C.    **Hitachi's Contributory and/or Induced Infringement**

Hitachi's motion does not address the issue of whether Hitachi is liable for contributory and/or induced infringement in the event there is a determination of direct infringement under Hitachi's claim constructions. This was no oversight. The record is replete with evidence demonstrating that Hitachi (1) knew of the '738 patent, and (2) knew its VCT components were sold to Honda, Nissan and Ford to be used in a manner that would infringe claims 10 and 11 of the '738 patent. A brief sampling of that evidence follows.

A Hitachi engineer, Mr. Ichinosawa, testified

REDACTED

(*See* Ichinosawa 1/11/06 Dep. (Matterer SJ Decl. Ex. 7) at p. 135.) Another Hitachi witness, Mr. Uchida, testified

REDACTED

Uchida 1/17/06 Dep. (Matterer SJ Decl Ex. 8) at pp. 128-130). Another Hitachi witness, Mr. Hosaka, testified

REDACTED

(*See* Hosaka 1/12/06 Dep. (Matterer SJ Decl. Ex. 9) at pp. 40-41). Indeed, at least the VCT

REDACTED

5

REDACTED REDACTED (Ichinosawa 1/11/06 Dep. (Matterer SJ Decl. Ex. 7) at p. 25).

REDACTED

(Hosaka 1/12/06 Dep. (Matterer SJ Decl. Ex. 9) at pp. 40-41).

REDACTED ((Ichinosawa 1/11/06

Dep. (Matterer SJ Decl. Ex. 7) at pp. 25-26).

Hitachi also knew, or reasonably should have known, about the infringing acts of

the direct infringers – Nissan, Ford and Honda – and that Hitachi's sales of accused VCT

products induced such infringement. For instance, Ed Abernethy of Unisia North America

testified on behalf of Hitachi REDACTED  (*See* Abernethy 1/11/06

Dep. (Matterer SJ Decl. Ex. 10) at pp. 81-82). Mr. Hosaka of Hitachi testified

REDACTED

(*See* Hosaka 1/12/06 Dep. (Matterer SJ Decl. Ex. 9) at pp. 40-41). In

addition, as noted above, REDACTED

(*See, e.g.*, Ichinosawa

10/6/05 Dep. (Matterer SJ Decl. Ex. 11) at pp. 90-92 REDACTED

## IV.   STATEMENT OF APPLICABLE LAW

### A.   Standard for Summary Judgment

Summary judgment is only appropriate if Hitachi demonstrates that "there is no

genuine issue as to any material fact and that [Hitachi] is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In

considering Hitachi's motion, all facts and reasonable inferences must be drawn in BorgWarner's

favor. *See, e.g., Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1335 (Fed. Cir. 2005) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor."), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**B.     Direct Infringement, Whether Literal or under the Doctrine of Equivalents, Is a Question of Fact.**

As the Court knows, determining infringement involves a two-step analysis. *Markman v. Westview Instruments. Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993). While claim construction is a matter of law, infringement, whether literal or under the doctrine of equivalents, is a question of fact. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (*en banc*); *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

In order to establish infringement, BorgWarner need only show, by a preponderance of the evidence, that the accused Hitachi VCT products meet claims 10 and 11, either literally or under the doctrine of equivalents. *See Seal-Flex, Inc.*, 172 F.3d at 842; *Am. Permahedge, Inc. v. Barcana, Inc.*, 105 F.3d 1441, 1443 (Fed. Cir. 1997). Literal infringement occurs for a method patent when each step of at least one claim of the patent at issue is practiced in the United States. *See Panduit Corp. v. Dennison Mfg., Co.*, 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987). Infringement under the doctrine of equivalents occurs when each limitation of a claim is practiced, either literally or by an equivalent. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39-41 (1997). An element is "equivalent" if the differences between the element and the claim limitation are "insubstantial." *Id.* "One test used to determine

7

'insubstantiality' is whether the element performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation." *Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.*, 315 F. Supp. 2d 589, 589-600 (D. Del. 2004) (J. Robinson) (citation omitted).

In order for the *Festo* presumption of no equivalents to apply, an amendment made during the prosecution of the patent must have "narrowed the literal scope of the claim" and the reason for the amendment must have been "a substantial one relating to patentability." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki*, 344 F.3d 1359, 1366 (Fed. Cir. 2003) (en banc); *see also, e.g., Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1325 (Fed. Cir. 2003) (explaining that "the correct focus is on whether [an] amendment surrendered subject matter that was originally claimed for reasons related to patentability"). If a limitation was not amended during prosecution, the *Festo* presumption is inapplicable. In addition, if an amendment was merely "for the sake of clarity" and "was not made to make the claim patentable," prosecution history estoppel will not apply. *Christiana Indus. v. Empire Elecs., Inc.*, 443 F. Supp. 2d 870, 883-84 (E.D. Mich. 2006), *vacated in part on other grounds*, No. 06-12568, 2006 WL 2375956, at *1 (E.D. Mich. Aug. 16, 2006).

## C.    The Existence of Genuine Issues of Material Fact Precludes Summary Judgment.

Summary judgment must be denied if BorgWarner raises a genuine issue of material fact regarding whether the Hitachi VCT products infringe claims 10 and 11 of the '738 patent. *See, e.g., AFG Indus., Inc. v. Cardinal IG Co.*, 375 F.3d 1367, 1374 (Fed. Cir. 2004) (vacating grant of summary judgment because, at the very least, a genuine issue of material fact existed as to whether accused products infringed based upon analytical evidence, internal documents of the alleged infringer, and expert testimony); *Praxair, Inc. v. ATMI, Inc.*, 231

F.R.D. 457, 462-463 (D. Del. 2005) (J. Robinson) (denying motion for summary judgment of non-infringement because genuine issue of fact existed regarding whether the accused product has a claim element, which is a question of fact for the jury); *Boston Scientific Scimed, Inc. v. Cordis Corp.*, 392 F. Supp. 2d 676, 684-86 (D. Del. 2005) (J. Robinson) (denying summary judgment because "there exist genuine issues of material fact regarding whether the Cypher stent infringes [the asserted] claims").

The determination of infringement under the doctrine of equivalents is not easily amenable to summary judgment because of the difficult factual inquiries typically involved. *See Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1359 (Fed. Cir. 2002) ("Because infringement under the doctrine of equivalents often presents factual determinations, a summary conclusion that a reasonable jury could not find infringement is often illusive.") Thus, summary judgment must be denied if BorgWarner shows the existence of any material fact with respect to infringement under the doctrine of equivalents. *See Leggett*, 285 F.3d at 1359-60 ("Drawing all reasonable inferences in favor of [non-movant patentee], the [evidence] show[s] a genuine issue of material fact. This lingering issue of fact precludes summary judgment of non-infringement under the doctrine of equivalents."); *Izumi Prods.*, 315 F. Supp. 2d at 589-600 (denying motion for summary judgment of non-infringement under the doctrine of equivalents because "genuine issue of material fact exist[ed] as to whether the [ ] accused [ ] razors perform substantially the same function in substantially the same way as the electric rotary motor claimed in the [ ] patent").

**D.    The Standard for Active Inducement and/or Contributory Infringement**

BorgWarner has alleged that Hitachi is liable for active inducement and/or contributory infringement of claims 10 and 11. Hitachi's motion asserts non-infringement only

9

on the basis of the alleged lack of direct infringement. Hitachi's summary judgment does not raise the issue of whether Hitachi is liable for contributory and/or induced infringement if direct infringement is found.

Proving active inducement and contributory infringement requires a predicate act of direct infringement by some party – in this case, Nissan, Ford and/or Honda. *See, e.g., Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 483 (1964) (regarding contributory infringement); *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1223 (Fed. Cir. 2006) (regarding active inducement). For active inducement under 35 U.S.C. § 271(b), after establishing direct infringement, the inquiry focuses on whether Hitachi "actively and knowingly aided and abetted another's direct infringement." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys.*, 911 F.2d 670, 675 (Fed. Cir. 1990) (quoting *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660 (Fed. Cir. 1988)). Contributory infringement under 35 U.S.C. § 271(c) requires proof of Hitachi's "knowledge, not intent, that [its] activity caused infringement" as well as proof that that the accused VCT components are not staple articles and are not capable of substantial non-infringing uses. *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990) *cited in Cordis Corp. v. Medtronic AVE, Inc.*, 194 F. Supp. 2d 323 (D. Del. 2002) (J. Robinson). With respect to contributory infringement, the inquiry generally focuses on whether the contributory infringer knew that the components it sold were "especially made or especially adapted for use" in the infringement of a patented method. 35 U.S.C. § 271(c).

**V.    ARGUMENT**

**A.    Hitachi's Direct Infringement of the Asserted Claims Is Not At Issue.**

Hitachi's SJ Motion focuses on the alleged absence of its direct infringement. This is a red herring. BorgWarner makes no allegation or claim for direct infringement against

10

Hitachi. Rather, as the supplier of components for systems sold in the United States, Hitachi is liable for induced infringement under 35 U.S.C. § 271(b) and contributory infringement under 35 U.S.C. § 271(c). *See RF Delaware, Inc. v. Pacific Keystone Techs., Inc.*, 326 F.3d 1255, 1267 (Fed. Cir. 2003); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993); *see also* 35 U.S.C. § 271(b) (2000) (active inducement); 35 U.S.C. § 271(c) (2000) (contributory infringement).[4]

Hitachi's SJ Motion is silent on whether its accused products were "especially made or especially adapted for use" in the claimed method and whether Hitachi "actively and knowingly aid[ed] and abet[ted] another's direct infringement." These issues are not before the Court on this motion and thus remain for the jury to decide. In any event, as discussed *supra*, at pages 5-6, there is ample evidence in the record to support a finding that Hitachi is liable for contributory and/or induced infringement of asserted claims 10 and 11 of the '738 patent. In the instant motion, Hitachi argues only that there has been no direct infringement by Nissan, Ford and/or Honda. But, as explained below, Hitachi is wrong.

**B.    At a Minimum, Genuine Issues of Material Fact Regarding Steps in the Body of the Asserted Claims Mandate Denial of Hitachi's Motion.**

Many of Hitachi's claim constructions are infected by its erroneous argument that BorgWarner "disclaimed OPA systems." For example, Hitachi attempts to inject a limitation to "non-OPA systems" into all of the recitations in the preamble, as well as into the supplying step in the body of the claim. As explained in BorgWarner's *Markman* briefs, the applicants for the '738 patent did not "disclaim OPA systems," and Hitachi's contrived claim constructions

---

[4] Included as a counter-defendant in this action is Hitachi Automotive Products (USA), Inc., which is the United States subsidiary of Hitachi, Ltd., that is also involved in the manufacture, use, sale, offer for sale and importation of the accused Hitachi components to OEMs and other users in the United States.

11

represent a thinly-veiled attempt to manufacture a non-infringement argument. (*See* BW Opening CC Br. (D.I. 267), BW Resp. CC Br. (D.I. 291), and BW Surreply Br. (D.I. 298; also attached as Ex. 2 to Matterer SJ Decl.).

As BorgWarner has explained, Hitachi's assertion regarding an alleged disclaimer of OPA systems is premised on a fundamental misinterpretation of the '738 specification and prosecution history. Hitachi seizes on statements in the specification and prosecution history regarding the relief of pressure in a particular location – namely, the external ends of the spool valve – and tries to morph them into disclaimers of OPA vane actuation systems generally. There was no such disclaimer. To the contrary, as explained in detail in BorgWarner's claim construction briefs, the allegedly disclaiming statements were merely restating the idea that the use of the claimed variable force solenoid with a vented spool advantageously eliminated the need to control the flow of oil on the external ends of the spool (which would otherwise affect the functioning and calibration of the system).[5] Even if the applicants' statements are open to other, competing interpretations, BorgWarner's position is, at a minimum, reasonable. Therefore, there can be no disclaimer of claim scope as urged by Hitachi. *See SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1288 (Fed. Cir. 2005) (where patentee's reading of the prosecution argument is "at least reasonable," there is no "clear and unmistakable surrender" of claim meaning).

If, *arguendo*, the Court were to find the preamble of claim 10 to be a limitation and were to adopt all of Hitachi's erroneous claim constructions based on the alleged "OPA

---

[5] The statements in the prosecution history relied on by Hitachi contrast the control or passage of flow along the external ends *and* the internal lands of the spool valve in the prior art (such as Strauber) with the control of flow through the internal lands of the spool valve only in the '738 patent. (*See* Matterer SJ Decl. Ex. 12 for a depiction of the distinction the applicants were making over Strauber in the prosecution history).

disclaimer," then BorgWarner would concede the absence of direct infringement of claims 10 and 11 for Hitachi-supplied VCT components in the identified systems. This is not surprising because most of Hitachi's restrictive constructions were crafted specifically to bootstrap a non-infringement argument. Anything short of the Court accepting Hitachi's arguments in full, however, requires denial of Hitachi's motion. After all, Hitachi's SJ Motion assumes that the Court will adopt wholesale, without modification, each and every one of Hitachi's claim constructions.[6]

With respect to the other aspects of the disputed claim language, BorgWarner has raised genuine issues of material fact, even under Hitachi's constructions, mandating the denial of summary judgment. After addressing a recitation in the preamble of claim 10, BorgWarner takes up the steps set forth in the body of claims 10 and 11, in order, using Hitachi's claim constructions as set forth at pages 24-28 of Hitachi's summary judgment brief.

     **1.**     **Hitachi's VCT System Includes A Chain And Sprocket That Receive A Supply Of Oil.**

Genuine issues of material fact exist regarding whether Hitachi's accused products meet the preamble recitation of "a method of regulating the flow of hydraulic fluid from a source to a means for transmitting rotary movement from [the] crankshaft to a housing," under Hitachi's nonsensical interpretation. As noted in the Supplemental Report of Dr. William Ribbens, *all* chain driven camshafts typically have oil supplied to the chain from the oil crankcase. (Ribbens Invalidity Expert Rpt. (Ribbens SJ Decl. Ex. 2) at ¶ 118). Hitachi's own expert, Mr. Kuhn, agrees. (Kuhn Invalidity Rpt. (Matterer SJ Decl. Ex. 1) at ¶ 239).

---

[6] BorgWarner reserves the right to assert non-infringement should the Court decide to adopt something other than Hitachi's extreme claim construction positions.

Examination of the accused engines sold to Nissan, Ford and Honda confirms that the chain driven camshafts that operate the VCT systems with the accused Hitachi components have oil supplied to the chain from the oil crankcase. A lubrication system diagram for the Nissan Altima VQ35E engine, which is typical of the accused Nissan engines, confirms that oil is supplied from the "oil pan" to the "chain case," and then to the "timing chain" by a "timing chain oil jet."[7] A lubrication system diagram for the Mazda6 vehicle, which uses the accused Ford D30 engine, shows a similar system.[8] The Mazda6 manual expressly states that "engine oil inside the engine front cover lubricates the timing chain and each sprocket." (Mazda6 Service Manual (Matterer SJ Decl. Ex. 14) at p. B24). These documents confirm that oil is supplied to the chain from the crankcase in each of the accused systems, thereby satisfying Hitachi's proposed claim construction.

Thus, even under Hitachi's nonsensical construction, issues of fact exist as to whether the oil supplied to the chain from the crankcase, as in all such chain driven camshaft systems, constitutes a "regulating" or "supplying" of oil to a chain. As a result, summary judgment must be denied.

    2.    **Hitachi's Accused Products Meet the Calculating Step.**

        a.    **Hitachi's Documents and Testimony from a Nissan Witness Indicate that Determining the Target Angle Involves Use of the Sensed Camshaft Information.**

Hitachi contends that it does not infringe the "calculating step" of asserted claim 10 because it does not calculate the desired or target angle using *both* the sensed camshaft position *and* the sensed crankshaft position. Instead,

REDACTED

_____

[7] *See, e.g.,* Portion of Nissan VQ35E lubrication system manual (Matterer SJ Decl. Ex. 13) at pp. LU15-16.

[8] Mazda6 Service Manual, Lubrication System Diagram (Matterer SJ Decl. Ex. 14) at pp. D-3 to D-6.

14

REDACTED (Hitachi Br. at p. 25).   But Hitachi's assertion is contradicted by Hitachi's customer, Nissan, which uses the infringing Hitachi VCT components in the claimed combination.  Nissan's corporate representative, Mr. Raymond Hughes, indicated

REDACTED

(Hughes 1/31/06 Dep. (Matterer SJ Decl. Ex. 15) at p. 40).   REDACTED REDACTED

according to Mr. Hughes,

REDACTED

(*Id* at p. 42).  Given Hughes' testimony t

REDACTED

[9]

In addition, the declaration of Mr. Ichinosawa, included by Hitachi with its motion, raises genuine issues of material fact that preclude summary judgment.   In his declaration, Mr. Ichinosawa p

(Ichinosawa Decl. (Hitachi SJ. Ex. 8) at ¶¶ 21-25).  Mr. Ichinosawa, a Hitachi engineer, further professes knowledge   REDACTED

Mr. Ichinosawa's statements are rather remarkable because Mr.

REDACTED

_____

[9]   Hitachi's witness,

(Ichinosawa 11/17/05 Dep. (Matterer SJ Decl. Ex. 16) at pp. 183-88).  Thus, the issues of fact presented with regard to the Nissan systems raise the same genuine issues of fact with regard to the Ford systems.   Moreover,

REDACTED

(6/30/06 Jt. Stip., D.I. 231(Matterer SJ Decl. Ex. 17); 7/18/06 Jt. Stip., D.I. 239 (Matterer SJ Decl. Ex. 18).)  Thus, the same genuine issues of material fact exist with regard to the accused Honda systems.

15

Ichinosawa previously REDACTED

On October 6, 2005, Mr. Ichinosawa

REDACTED

(Ichinosawa 10/06/05 Dep. (Matterer SJ Decl. Ex. 11) at p. 61). Mr. Ichinosawa also

testified REDACTED

*(Id.* at

pp. 62-63). Then, in response to questions, Hitachi's own lawyers intervened and objected

stating REDACTED

*(Id.* at

p. 63).

REDACTED

Further, Mr. Ichinosawa

REDACTED

(Ichinosawa 11/17/05 Dep. (Matterer SJ Decl.

Ex. 16) at pp. 166-67). But now, in a declaration submitted in support of Hitachi's motion for

summary judgment, the very same Mr. Ichinosawa states (at ¶ 21)

REDACTED

(Ichinosawa Decl. (Hitachi SJ Ex. 8) at ¶ 21). In addition, Mr. Ichinosawa states affirmatively in

his declaration that REDACTED

*(Id.* at ¶ 22). In contrast, at his deposition, Mr. Ichinosawa

REDACTED

(Ichinosawa 11/17/05 Dep.

(Matterer SJ Decl. Ex. 16) at p. 186).

16

Based on Mr. Ichinosawa's deposition testimony, there is a serious question as to whether he has knowledge sufficient to provide a declaration concerning the various aspects of the accused systems.[10]   Whether this is evidence of sandbagging or dissembling, it should be disregarded.   Because this is the only evidence offered by Hitachi on this claim element, this Court would be warranted, in the face of evidence to the contrary, in granting summary judgment *sua sponte* in BorgWarner's favor on this issue.[11]

Significantly, Mr. Ichinosawa's declaration is also contradicted by the very documents upon which he relies.   Hitachi's entire noninfringement argument on the "calculating" claim term is based on Mr. Ichinosawa's statement in his declaration

REDACTED

(Ichinosawa Decl. (Hitachi SJ Ex. 8) at ¶ 24).

REDACTED

---

[10]   That does not mean, however, that the statements in the Ichinosawa and Ichikawa declarations, and the statements in Hitachi's motion, do not constitute *admissions* against interest by Hitachi in this case.

[11]   *See, e.g., Crockett v. Abraham,* 284 F.3d 131, 133 (D.C. Cir. 2002) ("Self-contradiction by the moving party's witnesses may of course create a genuine issue of material fact precluding summary judgment. ... second-hand gap-filling, if extreme enough, clearly can rise to the level of contradiction."); *Wood v. County of Alameda,* 1995 WL 705139 fn.14 (N.D. Cal. Nov. 17, 1995) ("If a party opposing summary judgment may not create a genuine issue of material fact by an affidavit contradicting his prior [  ] testimony, then surely the moving party may not eliminate a genuine [issue] of fact through such a contradictory affidavit." (citation omitted)); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 125 S.Ct. 2764, 2784-85 (2005) (J. Ginsburg, concurring) (declarations did not support summary judgment in face of evidence offered by the non-movant, including depositions that conflicted with previous deposition testimony where declarant had proclaimed lack of knowledge).

REDACTED



Thus, all the competent evidence refutes Hitachi on this point, meaning that summary judgment cannot be granted in Hitachi's favor, but could be granted in BorgWarner's favor.

**b.    The Calculating Step Is Also Met Under the Doctrine of Equivalents.**

Even assuming, *arguendo*, that the accused engines using the Hitachi VCT components do not literally meet this claim element under Hitachi's construction, they still perform the equivalent of the calculating step of claim 10 of the '738 patent. No amendments or arguments in the prosecution history prevent the application of the doctrine of equivalents to the calculating step limitation in the claim.

The accused Hitachi VCT products are performing the calculating step in the same manner as the systems described and claimed in the '738 patent. (Ribbens Infringement Rpt. (Ribbens SJ Decl. Ex. 1) at p. 51). The ECU in the '738 patent calculates the desired (or target) phase angle from a MAP or look-up table stored in the control module based on engine

18

conditions. (*Id.*; Ribbens SJ Decl. Ex. 3 at ¶ 10). Thus, the Hitachi VCTs perform the same, or substantially the same, function (*i.e.*, determining the desired or target phase angle for specified engine conditions) in the same, or substantially the same way (*i.e.*, by using a MAP or look-up table in an ECU control module), to achieve the same, or substantially the same, result (*i.e.*, provide a target phase angle for comparison with the actual phase angle), as the calculating step of claim 10 of the '738 patent. (*Id.*) Indeed, as noted by Dr. Ribbens in his Infringement expert report, the accused systems are at least the equivalent of the system described in the '738 patent where the ECU calculates the desired relative phase angle from a look-up table stored in the control module based on engine operating conditions. (Ribbens SJ Decl. Ex. 1 at pp. 17, 18, 21, 22, 47, 51; Ribbens SJ Decl. Ex. 3 at ¶ 10).

3.    **Hitachi's Accused Products Utilize a PWM Voltage Signal Which Meets Claim Limitations Reciting an "Electrical Signal."**

a.    **Hitachi's "PWM Voltage Signal" Necessarily Involves Current Control.**

Hitachi contends that its accused products do not infringe claim 10 because they do not utilize a "current control signal" for the ECU. Instead, Hitachi supposedly uses a "PWM voltage control signal." (Hitachi Br., p. 25). However, a person of ordinary skill in the art would understand that "current" and "voltage" are both referring to the same electrical signal. (Ribbens SJ Decl. Ex. 3 at ¶¶ 13-14).[12] By the same token, one of ordinary skill in the art would

---

[12]    This fact is supported by the prosecution history where the Examiner, in an Office Action, stated that "[a]ll solenoid valves are of the variable force type by nature, which depend on the voltage or current change delivered to the solenoids." (Aug. 1, 1994 Office Action from the prosecution of the '738 patent (Matterer SJ Decl. Ex. 3) at BW02165). Thus, the Examiner considered the claimed electrical signal to be both voltage and current in applying the prior art. The prior art Linder reference identifies "current" as the signal, but the prior art Strauber reference utilizes on and off voltage control. (*See* Linder U.S. Patent No. 5,056,477 (Matterer SJ Decl. Ex. 19) at col. 5, line 56; Strauber U.S. Patent No. 5,012,774 (Hitachi SJ Ex. 6) at col. 3, lines 15-35).

19

understand that a PWM signal is still control of current supply. (*Id.*). Therefore, even if "electrical signal" is construed as requiring a "current control signal," there is still literal infringement because Hitachi's "PWM voltage control signal" is a current control signal.

Hitachi's position that it does not use a "current control signal" is also contradicted by its own documents and its own witness's testimony. Although Hitachi has submitted a declaration from Mr. Ichikawa, REDACTED

(Ichikawa Decl. (Hitachi SJ Ex. 9) at ¶ 19), Mr. Ichikawa told a much different story at his deposition. First, Mr. Ichikawa REDACTED

(Ichikawa 10/07/05 Dep. (Matterer SJ Decl. Ex. 7) at p. 37). But then, Mr. Ichikawa was able to REDACTED (*Id.*). He further confirmed that REDACTED

(*Id.* at p. 41). Thus, at his deposition, Mr. Ichikawa testified REDACTED (Ichikawa 11/18/05 Dep. (Matterer SJ. Decl. Ex. 25) at pp. 193, 214-18, 220, 230). This testimony alone creates a material issue of fact, precluding summary judgment.

Hitachi's documents, including its published patent applications and descriptions of its VCT systems, are equally telling and contradict Hitachi's assertion that "current control" is not used in the accused products. In a document entitled REDACTED HIT 480122-34 ("Hitachi VTC Description")

20

(Matterer SJ Decl. Ex. 21) at HIT 480122-23).          REDACTED

Throughout the

description,                          REDACTED

(*Id.* (emphasis added)).

Similarly, Hitachi U.S. Patent Publication No. 2005/0257762 ("the '762 application"), which was filed by its counsel in this action, Foley & Lardner, describes the axial position of the spool as being controlled by way of "pulse width modulated (PWM) control for the *exciting current* (or control pulse signal) *applied to the coil*." ('762 application (Matterer SJ Decl. Ex. 22) at p. 5, para. [0031]). That application further describes the ECU as executing a pulse signal control (PWM) for "electric current" applied to the coil. (*Id.* at p. 6, para. [0034]).

In the face of contradictory testimony from Hitachi's witnesses and contradictory information in Hitachi's documents, Hitachi cannot establish, as a matter of law, that there is no literal infringement of the "electrical signal" claim limitations even under Hitachi's proposed claim construction that requires the electrical signal to be a "current control signal."

**b.    At a Minimum, Hitachi's "PWM Voltage Signal" Is the Equivalent of the Claimed Electrical Signal.**

Even if the Court were to adopt Hitachi's strained construction of the term "electrical signal" and improperly resolve the above-referenced issues of fact in favor of Hitachi, genuine issues of material fact would still remain with regard to whether the signal used in the accused Hitachi systems is the equivalent of a "current control signal." The claim term "electrical signal" was not amended during prosecution, and thus, BorgWarner is entitled to

21

claim infringement under the doctrine of equivalents with respect to this claim term. At a minimum, the PWM voltage signal of the accused systems is the equivalent of the claimed electrical signal because it performs substantially the same function (*i.e.*, it is a signal sent by the ECU carrying information that represents the intended position of the spool to cause the actuator to move to the desired angle by advancing or retarding), in substantially the same way (*i.e.*, in the form of an electrical signal that will cause the spool to move to the desired position for advance or retard), and achieves substantially the same result (*i.e.*, the spool is caused to move to the appropriate position). (Ribbens SJ Decl. Ex. 3 at ¶ 15).[13]

4.    **Even Under Hitachi's Claim Construction, Hitachi's Accused Products Have the Equivalent of a Vented Spool.**

a.    **"Vented Spool"**

Even under the Hitachi construction, there are genuine issues of material fact with regard to infringement of this limitation under the doctrine of equivalents. The claim term "vented spool" was not amended during prosecution, and thus BorgWarner is entitled to claim infringement under the doctrine of equivalents with respect to this claim term.

The venting function of the claimed vented spool relates to relief of fluid pressure from the external ends of the spool. (*See* Ribbens SJ Decl. Ex. 1 at pp. 29, 32; Ribbens SJ Decl. Ex. 3 at ¶ 18; '738 patent, col. 8, line 24 (venting the spool to atmosphere completes the objective

---

[13] There was no disclaimer of "current" control during prosecution. The applicants distinguished the use of the claimed variable force solenoid as not being the common two position "on-off" solenoid, and not on the basis of the PWM, current, and/or voltage aspect of the input electrical signal. (*See* Nov. 1, 1994 Reply to Office Action from the prosecution history of the '738 patent ("Again, the present application uses . . . a variable force solenoid 201 to control the positioning of the spool valve, not the common two-position ('on-off') solenoid valve taught in Linder et al.") (Matterer SJ Decl. Ex. 3) at BW 002169; *id.* ("The Strauber et al. disclosure teaches a common ('on-off' only) solenoid to control a spool of a two-position only system. Unlike Strauber et al., the present invention utilizes a variable force solenoid to control the position of a spool of a continuously variable system."); Appeal Br. from the prosecution history of the '738 patent (Matterer SJ Decl. Ex. 3) at BW 002191-92).

of relieving pressure inside cavity 198a that acted on the end of the land in previous VCT systems)).    REDACTED

(Ichikawa Decl. (Hitachi SJ Ex. 9) at ¶ 8).  The drawing of the solenoid valve included with Mr. Ichikawa's declaration, however,  REDACTED

*(See id.)*.

REDACTED

(Hitachi VTC Description (Matterer SJ Decl. Ex. 21) at HIT 480123).  Hitachi's published patent Application No. U.S. 2005/0257762 describes the purposes of the passages in detail.  Specifically, the "spring chamber" is "opened to the atmosphere" in order to "prevent a resistance to sliding movement of spool 36 from being generated or developed during operation of directional control valve 22."  ('762 Application (Matterer SJ Decl. Ex. 22) at p. 5, para. [0030]).

    Reluctant Hitachi witnesses  REDACTED

(Ichinosawa 11/17/05 Dep.

(Matterer SJ Decl. Ex. 16) at pp. 274-75).  REDACTED

(Ichikawa 08/04/06 Dep. (Matterer Decl. Ex. 23) at p. 48).  REDACTED

(Ichikawa Decl. (Hitachi SJ Ex. 9) at ¶¶ 14-15).    REDACTED

23

REDACTED

(*Id.* at ¶ 13).

Each of these passages serve the venting function of allowing pressure relief of oil and air against the back ends of the spool.

Thus, the drain passages and grooved passages in the Hitachi valves perform the same function as the vented spool in the '738 patent (*i.e.*, relief of differential pressure across the spool); they perform that function in substantially the same way (*i.e.*, by providing passageway from each end of the spool to a region of common pressure); and, they achieve the same result (*i.e.*, elimination of any pressure differential across the spool). (Ribbens SJ Decl. Ex. 3 at ¶ 18). The spool in the accused Hitachi devices functions in substantially the same way as the spool of the '738 patent, which necessarily has oil flowing through its internal lands and therefore exhibits some pressure influence. (Ribbens SJ Decl. Ex. 1 at pp. 33, 53). The influence of oil pressure on the external lands of the spool in the accused Hitachi products is relieved, however, and it is relieved in substantially the same manner as in the systems disclosed in the '738 patent. In this way, actuator calibration is stabilized. (*Id.* at pp. 33, 53).

Thus, the accused Hitachi VCT products infringe the "vented spool" element at least under the doctrine of equivalents.[14]

---

[14]  Mr. Ichikawa

REDACTED

(Ichikawa Decl. (Hitachi Ex. 9) at ¶ 13).  Mr. Ichikawa identifies

REDACTED

SJ Decl. Ex. 3 at ¶ 19).

**b.    Influence on Spool Movement Due to Oil Pressure**

Hitachi's proposed construction includes an additional limitation that the internal passage through the spool must "eliminate any influence on spool movement due to oil pressure." Hitachi's proposed construction attempts to impose a physical impossibility (Ribbens SJ Decl. Ex. 1 at p. 33), because as long as the spool moves, the oil temperature and pressure influence at least the viscous friction forces, which in turn influence dynamic motion of the spool. (*Id.*) In any event, the drain passages in the Hitachi solenoid valve are the equivalent of the passage shown through the center of the spool in Figs. 19 and 20 of the '738 patent. Both systems allow for pressure relief from the outside ends of the spool, while the oil advance and retard passages described by Mr. Ichikawa that pass through internal lands on the spool provide the same forces on the spool provided by the oil flowing through the internal lands shown in Figs. 19 and 20 of the '738 patent. Both structures also have similar influences of oil on spool position. (Ribbens SJ Decl. Ex. 3 at ¶ 20). Thus, the drain passages in the Hitachi solenoid valve are equivalent, as they perform substantially the same function, in substantially the same way, to achieve substantially the same result.

Based on the above, there is, at a minimum, a genuine issue of material fact as to whether the Hitachi accused products meet the "vented spool" limitation of claim 10 literally or under the doctrine of equivalents, when employing Hitachi's proposed claim construction.

**5.    Hitachi's Accused Products Have Conduit Lines That Are Equivalent to the Claimed "Inlet and Return Lines" Under Hitachi's Proposed Construction.**

Hitachi contends that under its claim construction it does not infringe because it does not have "an inlet line and return lines" that are attached between a spool valve body and the "means for transmitting rotary movement to [the] camshaft." (Hitachi Br., pp. 26-27).

25

However, the accused Hitachi solenoid valves, as used in the accused Nissan vehicles, include at least the equivalent of the inlet and return lines required by claim 10 under Hitachi's construction.[15]

REDACTED

(Hughes 1/31/06 Dep. (Matterer SJ Decl. Ex. 15) at pp. 34-35; Defendants' Exhibit 229 (Matterer SJ Decl. Ex. 24) at p. EC-148).  As shown in the figure below, Mr. Hughes

 (Hughes 1/31/06 Dep. (Matterer SJ Decl. Ex. 15) at pp. 34-35).



---

[15] There is no prosecution history estoppel for this claim language under *Festo*.  BorgWarner is entitled to pursue infringement under the doctrine of equivalents because, although this claim language was added, it was not amended for reasons "relating to patentability."  The language in the supplying step was added to clarify that the claims relate to internal combustion engines and was not amended to distinguish over prior art.  (*See* BorgWarner Surreply (Matterer SJ Decl. Ex. [__]) at pp. 3-5).  As a result, there is no prosecution history estoppel.  *See Deering Precision*, 347 F.3d at 1325 (explaining that "the correct focus is on whether [an] amendment surrendered subject matter that was originally claimed for reasons related to patentability"); *Christiana Indus. v. Empire Elecs., Inc.*, 443 F. Supp. 2d 870, 883-84 (E.D. Mich. 2006) (prosecution history estoppel will not apply if an amendment was merely "for the sake of clarity" and "was not made to make the claim patentable"), vacated in part on other grounds, No. 06-12568, 2006 WL 2375956, at *1 (E.D. Mich. Aug. 16, 2006).

Mr. Ichikawa's declaration

REDACTED (Ichikawa Decl. (Hitachi SJ Ex. 9) at ¶ 7).  As

shown in the illustration included with Mr. Ichinosawa's declaration,

REDACTED

(Ichinosawa Decl. (Hitachi

SJ Ex. 8) at ¶ 4).

Under Hitachi's proposed claim construction, the accused Hitachi VCTs certainly

have at least the equivalent of the claimed inlet and return lines.  In these systems, oil from a

source (the main oil gallery) is supplied to the vane housing by flowing through an inlet line, and

the oil returns to the sump by flowing through one of two return lines that are opened and closed

responsively to selective axial movement of the annular recess in the spool.  In addition, inlet and

return lines are attached between the spool valve body and the vane actuator.  Moreover, under

the Hitachi claim construction, these inlet and return lines perform the same function (*i.e.*, allow

the passage of oil from a source to a vane actuator), in the same way (*i.e.*, by forming a fluid

conduit between the source and the actuator that is opened and closed by movement of a spool

valve), to achieve the same result (*i.e.*, supply of fluid from a source to an actuator).  (Ribbens SJ

Decl. Ex. 3 at ¶ 24).  Under the Hitachi claim construction, the supply of oil must be as part of a

phase angle change, and this is true of the accused Hitachi VCT products.

6.    **Hitachi's Accused Products Meet the "Connection" Requirement of Claim 11, Even Under Hitachi's Construction.**

Hitachi seeks a construction of claim 11 that requires the solenoid armature to be

"physically attached" to the spool, and contends that it does not infringe claim 11 because the

solenoid armature and spool are not "physically attached" in the accused products.  (Hitachi Br.,

27

p. 28).  However, Hitachi's own witnesses and documents demonstrate genuine issues of material fact that preclude a determination, as a matter of law, that Hitachi's armature and spool are not "physically attached."  Thus, a disputed issue of fact exists as to whether the accused products literally meet the "connected" limitation, even under Hitachi's proposed claim construction.

REDACTED

(Hitachi VTC

description (Matterer SJ Decl. Ex. 21) at HIT480122).

REDACTED

REDACTED

(*Id.* at HIT480123).    Hitachi repeatedly

(*Id.* at

REDACTED

HIT480126).

In

addition, Hitachi's witness, Mr. Ichikawa, REDACTED

(Ichikawa 10/07/05 Dep.

(Matterer SJ Decl. Ex. 20) at pp. 97-98; Ichikawa 11/18/05 Dep. (Matterer SJ Decl. Ex. 25) at p. 264).

BorgWarner is also entitled to establish infringement under the doctrine of equivalents on the "connected" claim term, which was not amended during prosecution. BorgWarner's expert, Dr. Ribbens, has explained that, at a minimum, the Hitachi accused products contain the equivalent of a "physical attachment" between the armature and the spool. (Ribbens SJ Decl. Ex. 1 at pp. 57-58; Ribbens SJ Decl. Ex. 3 at ¶ 25).  The contact between Hitachi's armature and spool, which results from the spring that forces the spool against the armature, is such that the spool moves substantially with the armature as though the two were fastened or bound together.    (Ribbens SJ Decl. Ex. 1 at pp. 57-58).    The Hitachi

28

armature/spool/spring assembly thus performs substantially the same function as the claimed "connected" armature and spool (*i.e.*, attachment so that adjustment of the armature can cause adjustment of the position of the spool), in substantially the same way (*i.e.*, through physical contact), to achieve substantially the same result (*i.e.*, movement of the armature effectively resulting in corresponding movement of the spool). (*Id.*; Ribbens SJ Decl. Ex. 3 at ¶ 25). Thus, the accused products contain the equivalent of an armature that is "connected" to the spool, even if that limitation is construed to require a physical attachment and the accused products are found to lack such a physical attachment.

Hitachi contends that its armature/spool/spring assembly cannot be the equivalent of the claimed "connected" armature and spool because "an opposite cannot be an equivalent." (Hitachi Br., p. 36). This argument is without merit. Even if this claim term is construed to require a "physical attachment," the connection between Hitachi's armature and spool is not the opposite of "physical attachment." Rather, the armature and spool are forced into substantially permanent contact by the balance of the electromagnetic force acting on the armature and the opposing spring force acting directly on the spool. (Ribbens SJ Decl. Ex. 1 at pp. 57-58; Ribbens SJ Decl. Ex. 3 at ¶ 25). Thus, the armature and spool are not "disconnected" as Hitachi contends.

### 7. The Solenoid in Hitachi's Accused Products Includes An "Air Gap," Even Under Hitachi's Construction of that Term.

Hitachi's proposed construction of "air gap" includes requirements that the air gap extend the full length of the armature and that the gap only include "air."



29

REDACTED (Hitachi Br., p. 28). But even under Hitachi's proposed claim construction, the accused products infringe at least under the doctrine of equivalents.[16]

Oil is non-magnetic and thus, even if it is present at places between the solenoid coil and armature in the accused products, it would perform substantially the same function as air (*i.e.*, provide a reluctance or non-magnetic break in the magnetic flux circuit), in substantially the same way (*i.e.*, by having a segment that is non-magnetic in the magnetic flux circuit), to achieve the substantially the same result (*i.e.*, results in a variable force solenoid as characterized in the '738 patent). (Ribbens SJ Decl. Ex. 1 at p. 58; Ribbens SJ Decl. Ex. 3 at ¶ 26). Hitachi's witness, Mr. Ichikawa, confirmed REDACTED (Ichikawa 10/7/05 Dep. (Matterer SJ Decl. Ex. 20) at pp. 111-12). Likewise, even if the gap in the magnetic material does not extend the entire length of the armature in the accused products, the gap that is present performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed air gap -- the gap provides a reluctance or non-magnetic break in the magnetic flux circuit so as to change the magnetic flux circuit and achieve a variable force solenoid as characterized in the '738 patent. (Ribbens SJ Decl. Ex. 3 at ¶ 26).

## VI. CONCLUSION

Hitachi's SJ Motion presents no non-infringement arguments other than those predicated on the Court adopting all of Hitachi's proposed claim constructions verbatim. Because BorgWarner has come forward with material issues of disputed fact on the issue of infringement, either literal of under the doctrine of equivalents, Hitachi's motion for summary judgment of noninfringement should be denied.

---

[16] The claim term "air gap" was not amended during prosecution.

30

Dated:  November 13, 2006

Richard K. Hermann (I.D. #405)
Mary B. Matterer (I.D. #2696)
MORRIS JAMES HITCHENS & WILLIAMS LLP
222 Delaware Ave., 10th Floor
Wilmington, DE 19801
(302) 888-6800

Hugh A. Abrams (*pro hac vice*)
Thomas D. Rein (*pro hac vice*)
Lisa A. Schneider (*pro hac vice*)
Marc A. Cavan (*pro hac vice*)
Lara (Fleishman) Hirshfeld (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for BorgWarner Inc. and
    BorgWarner Morse TEC Inc.*

31