IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HITACHI, LTD. and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., <br><br> Plaintiffs, <br><br> v. <br><br> BORGWARNER INC., and BORGWARNER MORSE TEC INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) Civil Action No. 05-048-SLR ) ) ) ) ) ) |
| BORGWARNER INC., <br><br> Counterclaimant, <br><br> v. <br><br> HITACHI, LTD., and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., <br><br> Counterdefendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

**DEFENDANT BORGWARNER'S REPLY IN SUPPORT OF ITS
MOTION FOR LEAVE TO FILE SUR-REPLY CLAIM CONSTRUCTION BRIEF**

*OF COUNSEL:*

SIDLEY AUSTIN BROWN & WOOD, LLP
Hugh A. Abrams
Thomas D. Rein
Lisa Schneider
Paul E. Veith
Marc A. Cavan
Stephanie P. Koh
Lara V. Hirshfeld
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
MORRIS JAMES LLP
500 Delaware Avenue
Suite 1500
Wilmington, DE 19801-1494
(302) 888-6800
mmatterer@morrisjames.com
*Attorneys for BorgWarner Inc. and
BorgWarner Morse TEC Inc.*

November 28, 2006

# **TABLE OF CONTENTS**

I. SUMMARY OF THE ARGUMENT ..........................................................................................1

II. BORGWARNER'S SUR-REPLY ADDRESSES ARGUMENTS NEWLY RAISED BY HITACHI IN ITS RESPONSIVE CLAIM CONSTRUCTION BRIEF. ..................................................................................................................................2

    A. Hitachi's Initial "Regulating The Flow" Construction Shifted To "Directly Regulating The Flow As It Leaves The Source" In Hitachi's Responsive Brief. ..........................................................................................................................2

    B. Hitachi's Responsive Brief Contended For The First Time That Because BorgWarner Amended The Claims To Cover A "Unified Invention," The Claims Are Necessarily Limited To CTA. ......................................................................4

    C. Hitachi's Responsive Brief Jettisoned Its Argument On "Internal Energy Source" And Shifted To An Argument Relating To Flow From One Vane Recess To The Other Vane Recess In Order To Cause A Phase Change. ................5

    D. Hitachi Waited To Address BorgWarner's Construction Of "Selectively Allowing And Blocking Flow" That Was Set Out In The Joint Claim Construction Statement. ..........................................................................................8

    E. Hitachi's Responsive Brief Includes A Newly Filed Expert Declaration Relating To The PWM Input Signal To The Variable Force Solenoid. ...................9

    F. Hitachi's Responsive Brief Raises A New Argument Concerning The "Attachment" Of The Armature To The Spool Shown In The Specification Of The '738 Patent. ..............................................................................................10

    G. Hitachi's Responsive Brief Modifies Hitachi's Construction Of "Air Gap" To Require It To Extend The Full Length Of The Armature ...............................11

III. BORGWARNER'S SUR-REPLY BRIEF IS PROPERLY LIMITED TO NEWLY RAISED ARGUMENTS AND SHOULD BE CONSIDERED BY THE COURT IN RESOLVING THE CLAIM CONSTRUCTION ISSUES. ........................................11

    A. BorgWarner's Sur-reply Addresses Specific Arguments That Were Newly Raised By Hitachi In Hitachi's Responsive Brief. ................................................11

    B. Sur-reply Briefs Are Permitted To Address Newly-Raised Arguments In Response Briefs, Such As Those Injected By Hitachi. .........................................14

    C. Hitachi Will Suffer No Prejudice By Having BorgWarner's Sur-reply Arguments Considered In Sequence. ....................................................................16

IV. CONCLUSION .........................................................................................................................17

## TABLE OF AUTHORITIES

### CASES

*Applied Med. Res. Corp. v. Johnson & Johnson*, SAVC 03-1322-JVS (MLGx) (C.D. Cal. Dec. 9, 2004) (Ex. 1) .................................................................. 15

*Hartford Fire Insurance Co. v. Pettianaro Constr. Co., Inc.*, No. Civ. A. 91-702-SLR, 1993 WL 152076 (D. Del. Feb. 10, 1993) .......................... 14

*Hess Fence & Supply Co., Inc. v. United States Fid. & Gua. Co.*, No. Civ. A. 4:04CV2648, 2006 WL 3325445 (M.D. Pa. Oct. 12, 2006) ............. 14, 15

*United States v. Martin*, -- F. Supp. 2d --, No. Crim. A. 00-7105, 2006 WL 2827859 (E.D. Pa. Oct. 5, 2006) .................................................................................. 14

*United States v. Medeiros*, -- F. Supp. 2d --, 2006 WL 2827859 (E.D. Pa. Oct. 5, 2006) ....................................... 14

*Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651 (3d Cir. 2003) ............................................................................................ 14

*Zoran Corp. v. Mediatek, Inc.*, Nos. C-04-02619, 04609 RMW, 2005 WL 2206725 (N.D. Cal. Sept. 9, 2005) ......... 15

I.   **SUMMARY OF THE ARGUMENT**

Defendant BorgWarner Morse TEC Inc. and Defendant/Counterclaimant BorgWarner Inc. (collectively, "BorgWarner") sought leave to file a sur-reply brief in order to address only those arguments that Hitachi raised for the first time in its Responsive Claim Construction Brief regarding asserted claims 10 and 11 of U.S. Patent No. 5,497,738 ("the '738 patent"). In its Opposition to BorgWarner's motion for leave to file a sur-reply, Hitachi contends as to each argument that Hitachi "either made them in its opening brief or in direct response to arguments made in BorgWarner's opening brief." (D.I. 320, Hitachi Opp., at p. 1). Hitachi also provides a table in which it supposedly identifies where each issue was raised in Hitachi's opening brief (Hitachi Opp. at pp. 4-6). But Hitachi's characterizations are misleading and incorrect. As explained below, Hitachi's arguments were indeed "new" and could have been made earlier.

Before claim construction briefing commenced, Hitachi was aware of all of BorgWarner's claim construction positions, as well as a detailed expert report supporting those positions. Nevertheless, Hitachi waited until its responsive brief to inject two lengthy expert declarations along with extensive new arguments that could have been made earlier. It would be wasteful, unfair and highly prejudicial to deny BorgWarner an opportunity to rebut Hitachi's belated arguments.

Moreover, BorgWarner's same sur-reply is properly before the Court in connection with Hitachi's co-pending motion for summary judgment of non-infringement. Because the first step in any infringement analysis is claim construction, BorgWarner had every right to put all of its claim construction arguments before the Court in opposing Hitachi's motion for summary judgment. Because Hitachi's summary judgment motion repeated many of the same claim construction arguments it made in its responsive claim construction brief,

BorgWarner incorporated its claim construction briefs, including its sur-reply, by reference in responding to Hitachi's summary judgment motion, rather than repeat the arguments verbatim in yet another brief. Hitachi is therefore raising form over substance in opposing this motion. BorgWarner simply wants to ensure that the Court has available all the claim construction arguments, including responses to Hitachi's new arguments, before moving on to apply the construed claims to the accused systems.[1]

## II. BORGWARNER'S SUR-REPLY ADDRESSES ARGUMENTS NEWLY RAISED BY HITACHI IN ITS RESPONSIVE CLAIM CONSTRUCTION BRIEF.

### A. Hitachi's Initial "Regulating The Flow" Construction Shifted To "Directly Regulating The Flow As It Leaves The Source" In Hitachi's Responsive Brief.

In its Opening Claim Construction Brief, Hitachi argued that "the phrase 'regulating the flow of hydraulic fluid' refers to controlling the flow of fluid." (D.I. 264, Hitachi Opening CC Br., at p. 22). Hitachi further argued that the "starting point of the oil flow is the supply volume of oil in one of the recesses between vane lobes and the housing, or within the piston-cylinder." (Hitachi Opening CC Br. at p. 24). With regard to the "source," Hitachi contended that BorgWarner's proffered construction of the main oil gallery ("MOG") is "wrong for the simple reason that oil is not flowed from the 'MOG' to effect a phase change in the patent." (Hitachi Opening CC Br. at p. 25). Specifically, Hitachi argued that "*the MOG oil is not regulated by the spool valve.*" (Hitachi Opening CC Br. at p. 23 (emphasis in original)).

---

[1] Hitachi's complaint about the lack of a "meaningful" pre-filing effort to discuss BorgWarner's motion rings hollow. Despite repeated calls and email messages to the *ten* Hitachi attorneys listed on Hitachi's briefs as having filed appearances in this case, not a single one of the ten Hitachi attorneys was willing to engage in a short telephone call to confirm that Hitachi was not willing to withdraw at least portions of its Responsive Brief, including the two new expert declarations. The fact that Hitachi has not withdrawn the contested declarations and arguments serves to confirm the futility of any further attempts to reach agreement with Hitachi on this subject.

In its Responsive Claim Construction Brief, Hitachi no longer argued that the MOG oil is not regulated. Instead, Hitachi argued that the MOG cannot be the source because MOG oil that fills the vane chambers is not *initially* regulated, but rather "*eventually* gets regulated." (D.I. 288, Hitachi Resp. CC Br., at p. 3 (emphasis in original)). Hitachi complained that BorgWarner "never explains how its claim interpretations apply to the claimed method of regulating oil flow to effect the phase change." (Hitachi Resp. CC Br. at p. 3).

Hitachi's comparison table (Hitachi Opp. at pp. 4-6) indicates that Hitachi's Opening Claim Construction Brief argued that "MOG oil flow is not regulated by the spool valve." While that is true, Hitachi *changed* its argument in its Responsive Brief to contend that MOG flow is *eventually* regulated, but not *initially* regulated. BorgWarner's Sur-reply Brief addresses this specific Hitachi argument. (D.I. 298, Attachment A, BorgWarner Sur-reply Br., at pp. 2-3). In particular, BorgWarner's sur-reply points out that Hitachi's interpretation is attempting to change the preamble phrase from "regulating the flow of hydraulic fluid from a source to a means for transmitting rotary movement from said crankshaft to a housing" into the phrase "regulating the flow of hydraulic fluid *directly* from a source to a means for transmitting rotary movement from said crankshaft to a housing *in order to cause a phase change of the camshaft relative to the crankshaft*." (*Id.* at p. 3 (emphasis original)). BorgWarner's sur-reply simply addresses the issue raised by Hitachi in its Responsive Brief that the construction of the claim does not specify *when* the oil is regulated from the source, or that the regulation must be in order to cause a phase angle change. In other words, the claim does not require that the oil is regulated *directly* as it leaves the source, but only that it be "eventually" regulated, as Hitachi concedes in its Responsive Brief.

B.  **Hitachi's Responsive Brief Contended For The First Time That Because BorgWarner Amended The Claims To Cover A "Unified Invention," The Claims Are Necessarily Limited To CTA.**

In its Responsive Brief, Hitachi contended for the first time that claim 1 and claim 10 of the '738 patent have to both be limited to CTA VCT systems -- even though claim 1 specifies CTA and claim 10 does not -- because the claims were amended during prosecution to cover a "unified invention." (Hitachi Resp. CC Br. at pp. 7, 20). Although Hitachi was certainly aware of the details of the prosecution history when it filed its Opening Brief, Hitachi chose to hold back this specific argument until its Responsive Brief. (*See* Hitachi Opening CC Br. at pp. 13-15 for discussion of prosecution history).

Hitachi's comparison table indicates that Hitachi's Opening Claim Construction Brief discussed that claim 10 was "amended when [the] PTO examiner required the claims to be directed to a unified invention." (Hitachi Opp. at p. 5). While that is technically correct, the discussion in Hitachi's Opening Brief related to the "supplying step" and the inlet and return lines in claim 10. In contrast, the discussion in Hitachi's Responsive Brief involved a completely different portion of the claim, specifically, the preamble and a supposed limitation of both claims 1 and 10 to cam torque actuated systems based on the amendment to a "unified invention."

BorgWarner's Sur-reply Brief addresses this specific argument of Hitachi (BorgWarner Sur-reply Br. at pp. 3-5). BorgWarner's sur-reply brief explains the context of the "unified invention" statements in the prosecution history where the applicants cancelled broad claims (original claims 16-22) that were directed to hydraulic control systems in general in order to avoid a restriction requirement. The "unified invention" amendment, namely, deleting original claims 16-22, which were not even limited to internal combustion engines, therefore does not mean that original claim 11 (issued claim 10) was somehow limited to CTA in the process. To the contrary, the statements in the prosecution history demonstrate that BorgWarner considered

4

(and still considers) the claims to encompass subject matter in addition to cam torque actuation systems, and the invention to have application beyond only CTA-VCT systems in internal combustion engines.

BorgWarner's sur-reply was prompted by, and addresses, Hitachi's specific argument contending that amendments to a "unified invention" limited all of the claims to cam torque actuation. That specific argument was not made in Hitachi's Opening Brief.

C. **Hitachi's Responsive Brief Jettisoned Its Argument On "Internal Energy Source" And Shifted To An Argument Relating To Flow From One Vane Recess To The Other Vane Recess In Order To Cause A Phase Change.**

Hitachi's Opening Brief spent substantial space arguing that "control[ling] the flow internal to the VCT mechanism" relates to an "internal *energy source*" of camshaft torque actuation. (Hitachi Opening CC Br. at pp. 1, 3, 7). BorgWarner addressed that argument in its Responsive Brief by pointing out the lack of any statements involving a so-called "energy source" in the '738 patent specification or prosecution history.

In its Responsive Brief, Hitachi abandoned its initial argument and advanced a different interpretation, which is addressed in BorgWarner's sur-reply. Hitachi jettisoned its reliance on references to an internal or external "energy source," and instead argued that "controlling the flow internally" refers to flow from one vane recess to the other vane recess in order to cause a phase change. (*See* Hitachi Resp. CC Br. at p. 7 nn. 4, 8). Hitachi relied on this distinction in an effort to somehow tie the statements in the prosecution history about the Strauber patent to an alleged disclaimer of all oil pressure vane actuation systems.

While Hitachi briefly discussed the Strauber patent in its Opening Brief, Hitachi's Responsive Brief presents a detailed, ten-page discussion of Strauber in conjunction with the term "VCT mechanism." (Hitachi Resp. CC Br. at pp. 7-17). Hitachi's Responsive Brief is also accompanied by two expert declarations, one of which includes the detailed discussion of

5

Strauber that appears in Hitachi's Responsive Brief. Such detailed expert declarations belie Hitachi's claim that Hitachi's Responsive Brief was simply "responding" to BorgWarner's arguments, and not raising new arguments.

BorgWarner's sur-reply addresses the specific, new arguments made by Hitachi concerning the Strauber patent. (BorgWarner Sur-reply Br. at pp. 5-11). BorgWarner points out the inconsistency in Hitachi's argument, namely that Strauber does *not* allow the flow of oil internally from working chamber to working chamber to cause a phase change. (Hitachi Resp. CC Br. at pp. 9-10). Thus, under Hitachi's own construction and interpretation, Strauber does not have any "internal" flow control, but, at best, "external" flow control *only*. Because the applicants said that Strauber "controls the flow of oil internal[ly] and external[ly]," Hitachi's interpretation of "internal and external" simply cannot be correct. Without allowing BorgWarner the opportunity to file a sur-reply, Hitachi's new, different gloss on the prosecution history statement regarding Strauber's "internal and external flow" would go unrebutted.

BorgWarner's sur-reply sets forth the real distinction being made about "internal only" ('738 patent) as opposed to "internal and external" (Strauber). (BorgWarner Sur-reply Br. at pp. 9-10). Oil flows along the internal and external *lands* of the Strauber spool valve, but only along the internal *lands* of the spool in the preferred embodiment of the '738 patent. BorgWarner's sur-reply addresses the detailed discussion of Strauber set forth at pages 8-17 of Hitachi's Responsive Brief, which relies extensively on the newly-filed declaration of Hitachi's expert Kuhn. (*See* Hitachi Resp. CC Br. at pp. 9, 11, 12, 13, 15 and 16, citing Kuhn Decl., at ¶¶10-18, ¶¶10-33, ¶¶21-23, ¶¶10-33, ¶¶24-33 and ¶¶29-31).

In its Responsive Brief, Hitachi also modified its definition of the "VCT mechanism," as it relates to the prosecution history statements concerning Strauber. In its

Opening Brief and proposed claim construction statement, Hitachi asserted that the "VCT mechanism" is the "VCT actuator," which it defined as consisting only of the "vane lobe/check valve mechanism." (Hitachi Opening CC Br. at pp. 22, 23). In its Responsive Brief, however, Hitachi attempted to modify its definition and contended that the "VCT mechanism" is the "camshaft-mounted vane (or piston-cylinder) structure *with a flow path through the spool valve.*" (Hitachi Resp. CC Br. at pp. 14-15 (emphasis added and omitted)). Also for the first time in its responsive claim construction brief, Hitachi cited to a number of BorgWarner patents and a newly-filed expert declaration, as defining what is meant by a "VCT mechanism." (Hitachi Resp. CC Br. at pp. 15-16). In its sur-reply, BorgWarner explains that the distinctions made over Strauber in the prosecution history related to the use of the variable force solenoid in the '738 patent, in contrast to a two-position, on-off solenoid in Strauber. (BorgWarner Sur-reply Br. at p. 8). BorgWarner's sur-reply also illustrates the internal and external flow along the internal and external *lands* of the Strauber spool valve, in contrast to flow only along the internal *lands* of the spool valve in the preferred embodiment of the '738 patent. (BorgWarner Sur-reply Br. at p. 9).

BorgWarner's sur-reply directly responds to Hitachi's newly-raised arguments concerning the Strauber patent. As BorgWarner pointed out in its sur-reply, if the prosecution history were so clear, Hitachi would have included its ten-page explanation regarding Strauber in its Opening Brief, which also addressed Strauber and the prosecution history statements. (*See, e.g.,* Hitachi Opening CC Br. at pp. 14-15, 20-23, 31). Hitachi even had to file two new expert declarations to explain its shifting positions, despite the fact that these experts took *no* position on claim construction in connection with Hitachi's opening brief or in their previously-filed expert reports. BorgWarner's sur-reply properly addresses these new arguments from Hitachi.

7

D.  **Hitachi Waited To Address BorgWarner's Construction Of "Selectively Allowing And Blocking Flow" That Was Set Out In The Joint Claim Construction Statement.**

In its Opening Claim Construction Brief and in its Responsive Brief, BorgWarner maintained that it intended to propose a construction for the "supplying step" that was consistent with the plain language of the claim. (BorgWarner Resp. CC Br. at p. 35). Despite having BorgWarner's proposed construction in the Joint Claim Construction Statement, Hitachi waited until its Responsive Brief to accuse BorgWarner of proposing a construction that "attempt[s] to force together jigsaw puzzle pieces" and changing the claim to "allowing **OR** blocking" (Hitachi Resp. CC Br. at p. 21 (emphasis in original)). Hitachi then devoted several pages in its Responsive Brief explaining why this difference is not "subtle." (*Id.*).

BorgWarner's sur-reply addresses this specific argument of Hitachi that was not presented until Hitachi's Responsive Brief. As BorgWarner points out in its sur-reply, BorgWarner intended to follow the plain language of the claim, and BorgWarner is willing to adopt Hitachi's use of the word "and" instead of "or" in its proposed construction. Had Hitachi raised this argument in its Opening Brief, BorgWarner could have responded in its Responsive Brief. Instead, Hitachi decided to follow what it believed to be the "Court's procedure for claim construction briefs *to the letter*" and hold back this argument until BorgWarner had no further opportunity to respond. (*See* Hitachi Opp. at p. 1 (emphasis added)).

BorgWarner addresses this specific argument in its sur-reply by pointing out that the spool valve need only be capable of "selectively allowing and blocking the flow of fluid through an inlet line and through return lines." (BorgWarner Sur-reply Br. at pp. 12-13). The claim does *not* require the allowing and blocking of flow through *inlet* lines *and* the allowing and blocking of flow through *return* lines. The claim is satisfied if the spool valve allows the flow of fluid through inlet lines and allows and blocks the flow of fluid through return lines alone, which

8

is the system shown in the specification. As pointed out in BorgWarner's sur-reply, Hitachi's position is not consistent with the specification because the flow from the MOG source is never directly blocked through the spool valve and through inlet line 182.

Had Hitachi's Opening Brief addressed BorgWarner's construction of the supplying step, which was clearly presented in the Joint Claim Construction Statement, rather than holding back its arguments, BorgWarner would not have needed to address the "supplying step" limitation in a sur-reply brief. Hitachi having raised those arguments for the first time in its Responsive Brief, BorgWarner submits that it is entitled to address those arguments in the sur-reply.

E.   **Hitachi's Responsive Brief Includes A Newly Filed Expert Declaration Relating To The PWM Input Signal To The Variable Force Solenoid.**

In its Responsive Brief, Hitachi devotes substantial attention to an argument that the variable force solenoid of the '738 patent cannot be driven by a pulse-width modulated ("PWM") non-current input signal. (Hitachi's Resp. CC Br. at pp. 32-36). In support of these newly detailed arguments, Hitachi relies repeatedly upon the newly-filed declaration of one of its technical expert witnesses, Livernois. (*See* Hitachi Resp. CC Br. at p. 33, 34, 35, 36, citing Livernois Decl., at ¶¶12-27).

BorgWarner's Sur-reply Brief responds to this specific argument by reference to the preferred embodiment of the '738 patent, which utilizes a PWM input signal to the solenoid. (BorgWarner Sur-reply Br. at p. 14-15). BorgWarner also addresses this specific argument by explaining that the reference to "PWM solenoid" in the '738 patent specification was used to define "the PWM solenoid *typically used in a conventional DPCS* [differential pressure control system]" of the prior art to control hydraulic pressure, and not all solenoids having PWM input signals, as evidenced by the use of a PWM signal in the preferred embodiment. (BorgWarner

9

Sur-reply Br. at p. 16, citing '738 patent, col. 2, lines 48-50 (emphasis added)). Had Hitachi presented its expert declaration with its Opening Claim Construction Brief, BorgWarner would have responded in its Responsive Brief, and would not have needed to address this new argument in a sur-reply.

      F.      **Hitachi's Responsive Brief Raises A New Argument Concerning The "Attachment" Of The Armature To The Spool Shown In The Specification Of The '738 Patent.**

In its Responsive Claim Construction Brief, Hitachi raised the new argument that the lever embodiment in Figure 20 of the '738 patent is the only embodiment that supposedly shows a physical attachment and that embodiment is described in the specification with the term "connected." (Hitachi's Resp. CC Br. at p. 37). This argument in Hitachi's Responsive Brief contrasts with Hitachi's contention in its Opening Brief that *both* Figures 19 and 20 show a "physical connection." (Hitachi Opening CC Br. at p. 38-39). Hitachi apparently concedes that it never raised this new argument concerning Figure 20 in its Opening Brief, as Hitachi's comparison "table" in its Opposition Brief fails to identify any reference to the Opening Brief with regard to this new argument.

In its sur-reply brief, BorgWarner addresses this specific argument by identifying numerous other locations in the specification of the '738 patent that use variations of the word "connected" and "connection" without any physical, fixed attachment. (*See* BorgWarner Sur-reply Br. at p. 18, citing "connection" in terms of "chain drive connection" where sprockets are not physically attached to one another, and "connected" used to describe hydraulic connection where valves and recesses are not physically attached). Thus, BorgWarner's sur-reply properly addresses only the new argument raised by Hitachi for the first time in Hitachi's Responsive Brief.

G.     **Hitachi's Responsive Brief Modifies Hitachi's Construction Of "Air Gap" To Require It To Extend The Full Length Of The Armature**

In its Responsive Brief, Hitachi contends that the air gap must extend the full length of the coil because it separates the coil from the armature. (Hitachi Resp. CC Br. at p. 38). Hitachi points to Figure 19 of the '738 patent in support. (*Id.* at p. 38).

In its Sur-reply, BorgWarner responds that the claim does not include any specific length of the gap, and that the gap in Figure 19 extends along only a portion of the armature. (BorgWarner Sur-reply Br. at p. 19). BorgWarner's sur-reply is directed only to this specific issue involving Figure 19, which was raised in Hitachi's Responsive Brief.

III.     **BORGWARNER'S SUR-REPLY BRIEF IS PROPERLY LIMITED TO NEWLY RAISED ARGUMENTS AND SHOULD BE CONSIDERED BY THE COURT IN RESOLVING THE CLAIM CONSTRUCTION ISSUES.**

A.     **BorgWarner's Sur-reply Addresses Specific Arguments That Were Newly Raised By Hitachi In Hitachi's Responsive Brief.**

As described above, BorgWarner's sur-reply brief does not address all of the arguments raised in Hitachi's 40-page Responsive Claim Construction Brief, nor all of the points presented in the 19-page declaration of Hitachi's expert Kuhn or the 10-page declaration of Hitachi's expert Livernois filed in connection with Hitachi's brief. Instead, BorgWarner's Sur-reply Brief is directed to very specific arguments of Hitachi that were raised for the first time in Hitachi's Responsive Brief.

In its opposition to BorgWarner's Motion for Leave to File a Sur-Reply, Hitachi presents a table that allegedly shows the "frivolous nature of BW's list of alleged 'new arguments.'" (Hitachi Opp. at pp. 5-6). The following table reproduces the table set forth in Hitachi's Opposition Brief and includes an additional column to explain the exact new argument to which BorgWarner's sur-reply responds:

| The Alleged New Argument in Hitachi's Responsive Brief | Place in Hitachi's Opening Brief Where Argument was Addressed and/or Place in BW's Opening Brief that Argument Responds to | Specific New Argument of Hitachi Addressed In BorgWarner's Sur-reply |
|---|---|---|
| Hitachi now contends that BorgWarner's construction of the claim term "source" in claim 10 of U.S. Patent No. 5,497,738 ("the '738 patent") is inconsistent with the preamble "regulating" phrase in the preferred cam-torque actuated ("CTA") embodiment | • Hitachi's Opening Brief at 23 (discussing that MOG oil flow not regulated by spool valve); and 24-25 and 34 (discussing that MOG cannot be "source" of claim 10).<br>• Response to BW's Opening Brief at 15-16 (arguing that "source" in preamble should be the MOG) | Hitachi's initial position that MOG oil is *not* regulated at all is changed in Hitachi's Responsive Brief to an argument that MOG oil is "eventually" regulated, but not "initially" regulated. |
| Hitachi now contends that claim 10 must be limited to CTA like claim 1 because of an amendment during the prosecution history to a "unified invention" | • Hitachi's Opening Brief at 34 (discussing that claim 10 amended when PTO examiner required claims to be directed to a unified invention)<br>• Response to BW's Opening Brief at 14-15 (arguing claim differentiation between claims 1 and 10) | Hitachi's initial position that "unified invention" amendment applies to "supplying step" is changed in Hitachi's Responsive Brief to new argument that "unified invention" also applies to preamble and requires claim to be limited to cam torque actuation. |
| Hitachi has included newly-filed expert declarations, which opine on claim construction for the first time, and raised new arguments regarding the prosecution history of the '738 patent, including new arguments about the Strauber reference and statements made about it during prosecution, new arguments about the Linder reference and stations made about it during prosecution, and revised arguments about what is included in the "VCT mechanism" referenced in the prosecution history | • Hitachi's Opening Brief at 14-15 and 23 (discussing meaning of prosecution history disclaimer)<br>• Response to BW's Opening Brief at 17-20 (arguing that specification and prosecution do not refer to "VCT mechanism")<br>• Response to Ribbens Report at 30-31 and 36, which was filed with and relied upon in BW's Opening Brief at 18 as to VCT mechanism. Technical declarations respond to other statements in Ribbens Report relied upon throughout BW's Opening Brief. | Hitachi forsakes its "internal energy source" argument, which it featured extensively in its Opening Brief. For the first time in connection with the Response Brief, expert declaration of Kuhn is provided with new detailed argument relating to how Strauber controls oil flow and with new detailed argument regarding what "VCT mechanism" means. |

| Hitachi advances new arguments regarding the "allowing and blocking" limitation in claim 10 | • Hitachi's Opening Brief at 34 (discussing that spool valve does not allow and block flow from MOG)<br>• Response to BW's Opening Brief at 34 (pointing to MOG flow in connection with claim phrase requiring allowing and blocking) | Hitachi presents new argument in its Responsive Brief concerning BW's position on "allowing and blocking," which was previously set forth in Joint Claim Construction Statement exchanged before claim construction briefing commenced. |
|---|---|---|
| Hitachi addresses the preferred embodiment for the "variable force solenoid" and closed-loop control system of claim 10 for the first time and cites numerous passages from an extrinsic expert declaration that was only filed with Hitachi's reply | • Hitachi's Opening Brief at 11 and 37-38 (discussing specification and BW prior patents confirming interpretation of variable force solenoid)<br>• Response to BW's Opening Brief at 29-31, and Ribbens Report at 13-15, 18, 23-24, and 34-36) relied upon in BW's Opening Brief (arguing that variable force solenoid includes PWM driving signal) | Hitachi submits new expert declaration of Livernois with new detailed argument regarding limitation of PWM control of solenoid. |
| Hitachi now contends that BorgWarner's construction for the term "connected" in claim 11 is inconsistent with the specification of the '738 patent | • Response to BW's Opening Brief at 37 (arguing that "connected" covers an embodiment that BW characterizes as not showing armature physically attached to spool) | Hitachi presents new argument in its Responsive Brief concerning use of term "connected" in the specification. |
| Hitachi advances new arguments regarding the term "air gap" in claim 11 and appears to have changed it claim construction regarding the length of the air gap | • Hitachi's Opening Brief at 40 (discussing meaning of air gap, including that it separates coil from armature)<br>• Response to BW's Opening Brief at 38, and Ribbens Report at 28, 37-38 (arguing that air gap can be any form of gap in ferromagnetic material) | Hitachi presents new argument in its Responsive Brief regarding whether the air gap extends the full length of the armature. |

13

B.  **Sur-reply Briefs Are Permitted To Address Newly-Raised Arguments In Response Briefs, Such As Those Injected By Hitachi.**

Under Third Circuit law and the decisions of this Court, sur-reply briefs are permitted to address arguments that are newly-raised in response briefs. (*See, e.g., Hartford Fire Ins. Co. v. Pettianaro Constr. Co., Inc.*, No. Civ. A. 91-702-SLR, 1993 WL 152076, at * 3 (D. Del. Feb. 10, 1993) (Robinson, J.) (granting leave to file a sur-reply because the opposing party "raised a number of its supporting points of law for the first time in its reply memorandum (albeit in response to counter-arguments set forth in [moving party's] answering motion papers)"); *Hess Fence & Supply Co., Inc. v. United States Fid. & Guar. Co.*, No. Civ. A. 4:04CV2648, 2006 WL 3325445, at *2 (M.D. Pa. Oct. 12, 2006) (finding it was "within the discretion of the court to grant leave to file a sur-reply" to respond to new arguments raised in the opposing party's reply brief in support of its motion in limine); *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003) (district court properly responded to objection that an issue was raised for the first time in the reply brief by allowing the party to file a sur-reply brief to respond to the new arguments).

As set forth in detail above, BorgWarner addressed limited, specific issues, which were improperly raised for the first time in the Responsive Brief of Hitachi.[2] Some issues addressed in the sur-reply, such as the Hitachi position on whether oil from the MOG source is regulated, were prompted by Hitachi's changed positions -- specifically, Hitachi no longer contending that oil from the MOG is *not* regulated, but rather that it is *not initially* regulated, and Hitachi no longer contending that the "internal to the VCT mechanism" related to an internal

---

[2] *See, e.g., United States v. Martin*, -- F. Supp. 2d --, No. Crim. A. 00-7105, 2006 WL 2827859, at *1 n. 3 (E.D. Pa. Oct. 5, 2006) ("A reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues."); *United States v. Medeiros*, 710 F. Supp. 106, 110 (M.D. Pa.) *aff'd*, 884 F.2d 75 (3d Cir. 1989) ("[I]t is improper for a party to present a new argument in his or her reply brief.").

14

"energy source," but rather to flow through the vanes and spool valve. Other issues addressed in the sur-reply, such as the PWM input signal to the variable force solenoid, were prompted by new expert reports submitted by Hitachi with its Responsive Brief. In each case, as outlined above, BorgWarner has addressed only those specific issues raised by Hitachi's Responsive Brief. As such, BorgWarner should be permitted to address these issues raised belatedly by Hitachi. *See, e.g., Zoran Corp. v. Mediatek, Inc.*, Nos. C-04-02619 RMW, C-04-04609, 2005 WL 2206725 at *2 (N.D. Cal. Sept. 9, 2005) (granting defendant's leave to a sur-reply to plaintiff's reply claim construction brief because the sur-reply "was necessary to respond to arguments raised by plaintiffs in their reply brief.")[3].

The interests of justice and fairness require that BorgWarner be permitted to respond to Hitachi's newly presented arguments. *See, e.g., Hess Fence & Supply Co.*, 2006 WL 3325445, at *2 (granting leave to file sur-reply to respond to newly raised arguments). Hitachi contends that it followed the Court's procedure "to the letter," but nothing in the Court's procedure gave Hitachi license to hold back arguments that it could have and should have made in its opening brief. Had this been simply a matter of BorgWarner wanting the "last word" on all of the issues, as Hitachi contends, BorgWarner would have submitted a more detailed brief addressing all of the issues raised in Hitachi's brief, as well as the myriad of issues set forth in

---

[3] Courts have treated arguments in a simultaneously-filed, responsive claim construction brief as tantamount to arguments made in a sequentially filed reply brief. For example, in circumstances similar to those present here, the United States District Court for the Central District of California refused to consider arguments raised for the first time in a responsive claim construction brief. (*See* Ex. 1, Order Re Markman Hrg., *Applied Med. Res. Corp. v. Johnson & Johnson*, SAVC 03-1322-JVS(MLGx) (C.D. Cal. Dec. 9, 2004), at pp. 6 n.3, 24). As here, the parties had simultaneously exchanged both opening claim construction briefs and responsive claim construction briefs. The Court rejected claim construction arguments raised for the first time in the cross responsive briefs. *Id.* Although this Court would be warranted in striking the new arguments raised by Hitachi, granting BorgWarner's motion for leave to file a sur-reply should suffice to address the arguments belatedly injected by Hitachi.

the two detailed declarations filed by Hitachi's expert witnesses. While Hitachi complains that *BorgWarner's* Responsive Brief supposedly presented new arguments (Hitachi Opp. at pp. 6-7), those complaints are not relevant to whether BorgWarner should be permitted leave to file a sur-reply brief.

### C. Hitachi Will Suffer No Prejudice By Having BorgWarner's Sur-reply Arguments Considered In Sequence.

Hitachi elevates form over substance in objecting to BorgWarner's sur-reply. In addition to the claim construction issues now before the Court, this Court must resolve several summary judgment motions, including Hitachi's motion for summary judgment of non-infringement. In that motion, Hitachi makes virtually the same claim construction arguments advanced for the first time in Hitachi's claim construction response brief. Thus, in opposing Hitachi's summary judgment motion, BorgWarner incorporated by reference the very sur-reply on claim construction that is at issue here. Because BorgWarner's summary judgment opposition brief was timely filed and because BorgWarner indisputably had the right to respond to Hitachi's claim construction arguments when opposing Hitachi's motion for summary judgment, BorgWarner's claim construction arguments are all properly before the Court in any event. Hitachi will therefore not be prejudiced if BorgWarner's claim construction arguments (including the responses presented in its sur-reply) are considered by the Court in sequence before moving on to consider Hitachi's summary judgment motions.

IV. **CONCLUSION**

For the above reasons, and for those set forth in its motion for leave, BorgWarner respectfully requests that the Court grant BorgWarner leave to file the claim construction sur-reply brief attached to BorgWarner's motion.

Dated: November 28, 2006

/s/ Mary Matterer
Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
MORRIS JAMES LLP
500 Delaware Ave., Suite 500
Wilmington, DE 19801-1494
(302) 888-6800

Hugh A. Abrams (*pro hac vice*)
Thomas D. Rein (*pro hac vice*)
Lisa A. Schneider (*pro hac vice*)
Paul E. Veith (*pro hac vice*)
Marc A. Cavan (*pro hac vice*)
Stephanie P. Koh (*pro hac vice*)
Lara Hirshfeld (*pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

17