## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HITACHI, LTD. and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| BORGWARNER INC. and BORGWARNER MORSE TEC INC., | ) ) ) |
| Defendants. | ) ) ) ) |
| BORGWARNER INC., | ) ) |
| Counterclaimant, | ) ) |
| v. | ) ) ) |
| HITACHI, LTD. and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., | ) ) ) |
| Counterdefendants. | ) ) |

Civil Action No. 05–048–SLR

**REDACTED PUBLIC
VERSION**

## PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS'
## MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654–1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiffs Hitachi, Ltd. and
Hitachi Automotive Products (USA), Inc.*

*Of Counsel:*

Kenneth E. Krosin
Michael D. Kaminski
Pavan K. Agarwal
C. Edward Polk
Mary M. Calkins
Liane M. Peterson
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
(202) 672-5300

William J. Robinson
Foley & Lardner LLP
2029 Century Park East, Suite 3500
Los Angeles, CA 90067
(310) 277-2223

Dated: December 19, 2006

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     HITACHI'S SUMMARY JUDGMENT MOTION SHOULD BE
        GRANTED ........................................................................................................ 2

        A.      BW Concedes Noninfringement of Various Claim Limitations ................ 2

                1.      For the "Variable Camshaft Timing System" and Supplying
                        Step, BW Continues to Ignore the Clear Intrinsic Record in
                        Arguing Infringement by the Accused Hitachi OPA
                        Systems ......................................................................................... 2

                2.      BW Concedes That The Accused Devices Lack The
                        "Means For Transmitting Rotary Movement To Said
                        Camshaft," Limitation Found In The "Supplying" Step ................. 6

        B.      The Accused Devices Do Not Meet Numerous Other Limitations. ........... 7

                1.      The Accused Devices Do Not Meet the Regulation
                        Recitation ...................................................................................... 7

                2.      The Accused Devices Do Not Perform The "Calculating"
                        Step ............................................................................................... 8

                3.      The Accused Devices Lack A "Variable Force Solenoid" ........... 10

                4.      The Accused Devices Do Not Meet the "Vented Spool"
                        Limitation .................................................................................... 12

                        a.      Specification Disclaimer Precludes Equivalents .............. 12

                        b.      The Accused Devices Lack The Vented Spool
                                Functionality ................................................................... 14

                        c.      The Vented Spool Limitation is a Clear, Narrow
                                Structural Limitation and Variations Were Entirely
                                Foreseeable ..................................................................... 14

                5.      The Accused Devices Lack An "Inlet Line" And "Return
                        Lines" .......................................................................................... 15

                6.      The Accused Devices Do Not Meet the "Connected"
                        Limitation .................................................................................... 18

                7.      The Accused Devices Lack The Claimed "Air Gap" ................... 19

III.    CONCLUSION ................................................................................................ 20

## TABLE OF AUTHORITIES

<u>Page(s)</u>

<u>FEDERAL CASES</u>

*Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188 (Fed. Cir. 2005) ........................... 19, 20

*Bicon, Inc. v. The Straumann Co.*, 441 F.3d 945 (Fed. Cir. 2006) .................................. 19

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.*, 145 F.3d 1303
    (Fed. Cir. 1998)........................................................................................6-7, 9

*Dawn Equip. Co. v. Ky. Farms Inc.*, 140 F.3d 1009 (Fed. Cir. 1998) ............................. 13

*DSU Medical Corp. v. JMS Co., Ltd.*, 2006 WL 3615056
    (Fed. Cir. Dec. 13, 2006) ........................................................................1, 3-5

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359
    (Fed. Cir. 2003) (*en banc*) ...............................................................12, 16-17

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002) ................ 18

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*,
    389 F.3d 1370 (Fed. Cir. 2004)...................................................................... 6

*Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350 (Fed. Cir. 2005)............... 14-15

*J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563 (Fed. Cir. 1997) ............. 10-11

*Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091 (Fed. Cir. 2000).......... 19, 20

*O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576 (Fed. Cir. 1997) ............................................ 12

*Sage Prods., Inc. v. Devon Indus, Inc.*, 126 F.3d 1420 (Fed. Cir. 1997)..................... 14-15

*Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337
    (Fed. Cir. 2001)............................................................................................ 13

*Spectra Corp. v. Lutz*, 839 F.2d 1579 (Fed. Cir. 1988) .................................................. 12

*Tronzo v. Biomet, Inc.*, 156 F.3d 1154 (Fed. Cir. 1998)................................................. 18

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997) .......... 9, 10, 12, 19

<u>FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS</u>

35 U.S.C. § 112....................................................................................................6-7

## I.    INTRODUCTION

BW does not raise any genuine issues of material fact regarding noninfringement under Hitachi's claim interpretation for numerous reasons. *First*, under Hitachi's claim interpretation, BW *concedes* noninfringement for: (a) "a variable camshaft timing system for varying the phase angle of a camshaft relative to a crankshaft," as recited in the preamble; (b) supplying hydraulic fluid from a source through a spool valve to a "means for transmitting," with the spool valve selectively allowing and blocking the flow, as provided in the supplying step; and (c) "means for transmitting rotary movement to said camshaft," also in the supplying step.

*Second*, BW's literal infringement arguments for other claim limitations do not raise any genuine issues of material fact. At best, BW misstates the factual record and misinterprets Hitachi's proposed claim constructions.

*Third*, BW argues that "the doctrine of equivalents is not easily amenable to summary judgment because of the difficult factual inquires typically involved." Nonetheless, Hitachi's motion relies on numerous legal grounds *precluding* infringement under the doctrine of equivalents, including prosecution history estoppel and the all elements rule. These legal grounds are fully resolvable on summary judgment.[1]

---

[1]  BW argues induced and contributory infringement, VCT competition, and historical development issues (Opp. at 3-6 and 9-10), yet admits that these issues "are not before the Court on this motion." Opp. at 11. As such, Hitachi does not respond to them in any detail here. Nonetheless, in the past week, the Federal Circuit issued an *en banc* ruling, in *DSU Medical Corp. v. JMS Co., Ltd.*, 2006 WL 3615056 (Fed. Cir. Dec. 13, 2006), holding that the accused inducer must have an affirmative intent to cause direct infringement, not just intent to cause the underlying acts that allegedly produce direct infringement. *Id.* at *9. BW's Opposition points to no facts demonstrating that Hitachi had any such intent.

**REDACTED**
BW further *concedes* that Hitachi cannot be liable for direct infringement (Opp at 10-11), and agrees with Hitachi (Opening Memo. at 37) that, in the absence of direct infringement, BW's inducing and contributory claims fail as a matter of law.

*Fourth*, in his December 7, 2006 deposition, BW's expert conceded

**REDACTED**

There is simply no good reason to delay entry of judgment in Hitachi's favor.

## II.    HITACHI'S SUMMARY JUDGMENT MOTION SHOULD BE GRANTED

### A.    BW Concedes Noninfringement of Various Claim Limitations

BW states that, if the Court finds the preamble to be a limitation and adopts all of Hitachi's claim constructions based on the OPA disclaimer, then "BW would concede the absence of direct infringement of claims 10 and 11 for Hitachi-supplied VCT components in the identified systems." Opp. at 12-13. Despite BW's carefully worded concession that the Court must adopt "all" of Hitachi's claim constructions based on the OPA disclaimer to find noninfringement, that is not true. BW does not argue infringement regarding the following limitations under Hitachi's claim interpretation:

> ▶ In the preamble: "a variable camshaft timing system for varying the phase angle of a camshaft relative to a crankshaft,"

> ▶ In the supplying step: supplying hydraulic fluid from a source through a spool valve to a "means for transmitting," with the spool valve selectively allowing and blocking flow

> ▶ In the supplying step: a "means for transmitting rotary movement to said camshaft"

If the Court adopts Hitachi's construction for *any* of these limitations, then summary judgment of noninfringement should be entered.

### 1.    For the "Variable Camshaft Timing System" and Supplying Step, BW Continues to Ignore the Clear Intrinsic Record in Arguing Infringement by the Accused Hitachi OPA Systems

Trying to sidestep the intrinsic record and find infringement, BW argues that Hitachi has a "fundamental misinterpretation of the '738 specification and prosecution history." Opp.

2

at 12. BW is wrong. The intrinsic record clearly shows that OPA systems are excluded from the claimed "variable camshaft timing system" and regulating recitation in the preamble, and from the supplying step.

The '738 patent is just another patent in BW's CTA patent family. The '738 patent is specifically tailored to BW's prior CTA system and expressly differentiates over systems that rely on engine oil pressure, *i.e.*, OPA systems. In fact, according to BW's own expert Dr. William Ribbens,

**REDACTED**

Indeed, as just another patent in BW's CTA patent family, the '738 patent stresses problems with VCTs that rely on engine oil pressure. Ex. 1, '738 patent at 2:33-37. And, unlike conventional OPA systems, the '738 patent limits the MOG to providing make-up and initial fill oil. *Id.* at 7:11-14, 33-38; and 9:42-50. BW cannot argue that Hitachi has misread the intrinsic evidence.

**REDACTED**

Ribbens confirmed the following .

**REDACTED**

---

[2] Exs. 1-26 are found in Plaintiffs' Combined Appendix in Support of its Opening Summary Judgment Motions (D.I. 280). Exs. 27-48 are found in Plaintiffs' Combined Appendix in Support of Its Summary Judgment Replies.

[3]

**REDACTED**

**REDACTED**

Hitachi's VCT is an OPA VCT. *Id.* at 125:2-4.

These facts are precisely consistent with the previous BW's CTA patents that are incorporated into the '738 patent specification, including U.S. Patent Nos. 5,002,023 (Ex. 4); 5,107,804 (Ex. 5); 5,184,578 (Ex. 15) and 5,172,659 (Ex. 16). These patents provide detail for the CTA structure claimed in the '738 patent and concededly reject OPA systems as being inferior to CTA.[4]

**REDACTED**

Although BW wants this Court to ignore these incorporated patents, their disclosures cannot be overlooked. The '738 patent adopts its base VCT architecture from these patents, detailing the internal flow from one piston cylinder/vane chamber to the other. Ex. 1, '738 patent at 5:57-67 & 6:58-7:17. The '738 patent is clear that the "invention" is directed to VCT systems "of the type" that rely on camshaft torque reversals to effect the phase change. *Id.* at 1:13-18. BW cannot refute these clear statements in its specification, and does not even try. Therefore, asserted claims 10 and 11 do not cover OPA systems by virtue of the "variable camshaft timing system" limitation, the regulating limitation of the preamble, and supplying step limitation (including the CTA structure incorporated through the "means for transmitting" limitation), all of which are directed to the CTA system disclosed in the specification.

---

**REDACTED**          There can be no doubt as to the accuracy of Hitachi's analysis of the '738 patent, the prior art, and its own VCT.

[4]    These patents teach that OPA VCTs are inferior because they require external oil pump energy to create a phase shift, thereby consuming extra energy and increasing the size of the oil pump. Ex. 4, '023 patent at 1:35:47; Ex. 5, '804 patent at 1:45-57; Ex. 6, '578 patent at 1:39-51. To solve these problems, each patent teaches controlled internal only oil flow (*i.e.*, from one piston/vane chamber to the other) using camshaft torque reversals as the energy source. With this arrangement, oil does not have to flow through the MOG during a phase adjustment, as with OPA VCTs. Ex. 4, '023 patent at 2:20-30; Ex. 5, '804 patent at 2:40-51; Ex. 6, '578 patent at 1:50-65.

The prosecution history also shows that OPA is not part of the claimed method, despite BW's different spins on its prosecution disclaimer. Hitachi already explained BW's repeated disclaimer over the prior art Strauber patent (an OPA system) in its claim construction briefs. *See* Hitachi's Open. Claim Construction Br. ("Open. CC Br.") at 14-15; Hitachi's Resp. Claim Construction Brief ("Resp. CC Br.") at 8-17. BW's prosecution disclaimer precisely matches the internal only controlled flow described in the '738 patent embodiments and earlier patents in BW's CTA patent family. *See* Hitachi's Open. Mem. at 29-34. BW attempts to define "external to the VCT mechanism" in its Strauber disclaimer to mean "external" ends of the *spool* (and "internal" to mean certain lands of the *spool valve*), arguing that it was really just disclaiming its prior DPCS system. BW's argument is nonsensical.

**REDACTED**

[5] Thus, that the Hitachi VCTs control both the internal and external flow only underscores the significance of BW's disclaimer and its applicability to this case and dovetails with the "only CTA" disclosure in the patent to lead to an easy conclusion that there is no infringement as a matter of law.

---

[5]

**REDACTED**

In sum, the intrinsic record shows that claims 10 and 11 do not cover Hitachi's accused OPA systems, either literally or under the doctrine of equivalents, based upon several claim limitations in the preamble and supplying step.

2.    **BW Concedes That The Accused Devices Lack The "Means For Transmitting Rotary Movement To Said Camshaft," Limitation Found In The "Supplying" Step**

Through a complete absence of any responsive argument, BW concedes that the accused engines with Hitachi VCTs are missing the "means for transmitting rotary movement to said camshaft" limitation under Hitachi's claim interpretation. Hitachi's noninfringement argument is based primarily on a direct application of § 112, ¶ 6. *See* Hitachi's Open. CC Br. at 35-36; Hitachi's Resp. CC Br. at 23-26. Under Hitachi's claim construction, the required structure includes check valves and camshaft torque pulsations as described.

BW does not dispute that the described check valves and camshaft torque pulsations are missing from the accused OPA VCTs.

**REDACTED**

.  In fact, BW's prior CTA patents all demonstrate that OPA and CTA represent two very distinct structural approaches for rotating the camshaft relative to the crankshaft, thereby creating a phase shift.[6] In addition, BW does not argue that Hitachi's OPA is a § 112, ¶ 6 equivalent, and it concedes that OPA systems are not "later-developed technologies," *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.*, 145 F.3d 1303, 1310-11 (Fed. Cir. 1998); *see also* Ex. 27, Ribbens at 221:12-20. As such, the accused engines having Hitachi's OPA VCTs do not meet the "means for transmitting rotary movement to said

---

[6] *See, e.g., Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378-79 (Fed. Cir. 2004) ("[T]he two mechanisms 'represent two distinct structural approaches to performing essentially the same function.' … this court agrees with the district court that summary judgment of noninfringement under § 112, ¶ 6 is appropriate.").

6

camshaft" limitation either literally or under the doctrine of equivalents. *See Chiuminatta*, 145 F.3d at 1307-11. There is no infringement as a matter of law.

## B.    The Accused Devices Do Not Meet Numerous Other Limitations.

### 1.    The Accused Devices Do Not Meet the Regulation Recitation

Following the plain claim words and stricture of § 112, ¶ 6, Hitachi's interpretation of the regulating recitation in the preamble requires regulating oil flow from a source to a chain (or belt) and sprocket. No genuine issue of material fact exists that the accused engines with Hitachi's OPA VCTs do not regulate oil flow from a source (under either parties claim interpretation of "source") to a chain (or belt) and sprocket.[7]

While both sides' experts agree that oil is typically applied to a chain, BW cites to no record evidence that this oil supply is ever *regulated*. Instead, the only factual evidence in this case is that any supply to a chain would be *unregulated* (*see* Ex. 18, Kuhn II Dec. ¶ 16). BW's own expert agrees that "such lubrication typically occurs by the *splashing of oil* from the crankcase onto the chain." Ex. 28, Ribbens Validity Report at ¶ 118 (emphasis added). In sum, there is no evidence that oil is ever *regulated* from any source to a chain or belt. At most, the record shows that an unregulated splashing of oil on a chain occurs in some engines.[8] In addition, BW does not argue equivalency.

For at least these reasons, the accused Hitachi VCT components do not meet the "regulating" limitation either literally or under the doctrine of equivalents. Summary judgment of noninfringement should be granted based on this limitation.

---

[7]  This section addresses only one aspect of the regulating recitation under Hitachi's construction. Other aspects (*e.g.*, controlling internal only flow) are addressed in Section II above regarding the "variable camshaft timing system" and supplying step limitations.

[8]  BW's citation to select Nissan and Mazda service manuals do not raise genuine issues of material fact. Neither manual, nor BW's attorney-only description of these manuals (which is not evidence), says anything about regulating this oil flow. *See* 11/13/06 Matterer SJ Decl., Ex. 13 at LU-16; Ex. 14 at D3-D6.

**2.      The Accused Devices Do Not Perform The "Calculating" Step**

BW has not raised any facts showing that the accused engines with Hitachi's OPA VCTs meet the calculating step under Hitachi's claim interpretation. There is no evidence that the accused engines use the sensed position of the camshaft to calculate the desired relative angle between the camshaft and crankshaft, as required under Hitachi's claim construction. In an attempt to try and manufacture a factual dispute, BW simply twists and mischaracterizes the evidence. Opp. at 14-19. BW's faulty arguments are addressed below.

**REDACTED**

**REDACTED**

In addition, no reasonable jury could find infringement under the doctrine of equivalents. The requirement of using the sensed camshaft position for calculating the desired relative phase angle is entirely missing from the accused engines, precluding infringement under the all elements rule. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ("It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its

**REDACTED**

entirety."). BW's comparison of an asserted MAP in the '738 patent[10] and the accused devices is the wrong comparison. BW provides no evidence that using a target angle map is equivalent to using sensed camshaft position (which is what is claimed) to calculate the desired relative phase angle.

In sum, BW has not demonstrated any genuine issues of material fact regarding Hitachi's noninfringement of the calculating step, either literally or under the doctrine of equivalents. Summary judgment of noninfringement, thus, should be granted.

### 3.  The Accused Devices Lack A "Variable Force Solenoid"

BW tries to shift the argument regarding the variable force solenoid limitation, which was amended during prosecution, towards the "electrical signal" limitation. BW's failure to directly address the variable force solenoid limitation is a clear concession of noninfringement.

**REDACTED**

                                                                                the specification plays a major role in its interpretation. *See J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1568 (Fed. Cir. 1997) (stating that, when a term does not have an ordinary meaning, its meaning "must be found somewhere in the patent").[11]

*First*, even if BW's arguments are read to address the variable force solenoid limitation, BW entirely fails to address Hitachi's actual construction. Hitachi defines "variable force

---

[10] BW's argument about the ECU "described" in the '738 patent is incorrect. The '738 patent does not include or incorporate any reference to a MAP or look-up table stored in a control module to calculate the desired relative phase angle.

**REDACTED**

[11]

**REDACTED**

10

solenoid" as "a solenoid driven by a non-PWM, current control signal from the ECU with the force applied by the solenoid proportionally varying with the magnitude of the current control signal." BW says *nothing* in its Opposition about the "non-PWM" and "force applied by the solenoid proportionally varying with the magnitude of the current control signal" aspects of this interpretation. BW's silence is not an oversight. As BW must admit, the accused devices simply do not meet these aspects of Hitachi's claim construction.

*Second*, BW's attempt to create a factual dispute regarding current and voltage is both misguided and technically flawed

### REDACTED

 

The distinct issue of what happens inside the solenoid coils (which is what BW points to at page 20 in its Opposition) is simply not part of Hitachi's interpretation of a "variable force solenoid."

*Third*, there is no question that BW has no resort to equivalency for the "variable force solenoid" limitation. The variable force solenoid limitation was added for reasons related to patentability and repeatedly argued to avoid prior art. The *Festo* presumption thus applies,[13] and BW does not contend otherwise. And, as pointed out in Hitachi's Opening Memorandum, the '738 patent specification distinguishes prior art PWM solenoids as being inferior, so no

---

12

### REDACTED

[13] BW added the variable force solenoid limitation (and several others) due to the Examiners "concern that the present invention was *obvious over prior art* ...." Ex. 11, 11/23/93 Prelim. Amdt. (emphasis added). Indeed, the "variable force solenoid" limitation formed the basis for allowance. *See* Ex. 31, 8/23/95 Interview Summary ("Agreement was reached that 'variable force solenoid' is allowable.").

equivalents exists on this basis as well.[14]   Yet further, BW's argument of equivalency essentially reads out the non-PWM current control signal aspect of the interpretation, which is not permissible. *See Warner-Jenkinson*, 520 U.S. at 29.   As such, summary judgment of noninfringement (literal and equivalents) should be granted in Hitachi's favor.

### 4.    The Accused Devices Do Not Meet the "Vented Spool" Limitation

BW does not argue literal infringement of the "vented spool" limitation under Hitachi's proposed construction.   Rather, BW only argues that an issue of fact exists for infringement under the doctrine of equivalents.  Opp. at 22-25.  This argument is wrong.   Several legal limitations preclude any equivalents for the vented spool limitation.

### a.    Specification Disclaimer Precludes Equivalents

BW cannot claim equivalents for the "vented spool" limitation based upon specification disclaimer. *See Spectra Corp. v. Lutz*, 839 F.2d 1579, 1581-82 (Fed. Cir. 1988). The '783 specification repeatedly emphasizes that the movement of the spool is entirely independent of oil pressure.  Ex. 1, '738 patent at 8:9-11, 8:29 and 8:60-66.  Indeed, BW relies on these same statements in describing the '738 patent invention in its own claim construction briefs. *See, e.g.*, BW's Open. CC Br. at 19.  BW repeatedly states that key features of the claimed method are (1) avoiding any oil flow at the ends of the spool and (2) preventing any pressure buildup that could affect spool movement. *Id.* at 6.  These features of the claimed spool valve are shown in the drawing below.

---

[14] *See O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1581, 1584 (Fed. Cir. 1997) (holding no infringement under the doctrine of equivalents because a difference between claimed invention and accused device is what patentee indicated in the specification as distinguishing prior art).



In stark contrast to the vented spool described and claimed in the '738 patent,

**REDACTED**

BW does not refute these points. *See* Opp. at 23-24.

Thus, the accused devices *have* oil flowing at the spool ends during normal operation, which is *antithetical* to the '738 patent that entirely *avoids* any oil flow at the spool ends, as repeatedly argued by BW. The specification statements themselves demonstrate that the accused devices, which flow oil at the spool ends, cannot be an equivalent to the recited method, which entirely avoids oil flow at the spool ends.[15]

---

[15] *See Scimed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1344-45 (Fed. Cir. 2001) (no infringement under doctrine of equivalents, where specification included "coaxial lumen" catheter configuration in preferred embodiment and also criticized prior art "dual lumen" configurations); *Dawn Equip. Co. v. Ky. Farms Inc.*, 140 F.3d 1009, 1016-17 (Fed. Cir. 1998) (no infringement under doctrine of equivalence, where patent specification "strongly suggest[ed]" that devices were not equivalent by stressing problems of prior art mechanisms and teaching that invention was directed at solving those problems).

#### b.    The Accused Devices Lack The Vented Spool Functionality

The differences between the "vented spool" limitation and the accused devices are not simply a difference in degree; they represent a substantial difference in kind. *See, e.g., Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1361-62 (Fed. Cir. 2005). BW concedes that the function of the vented spool is "relief of differential pressure across the spool" and results in "elimination of any pressure differential across the spool." Opp. at 24; *see also* Opp. at 22 (stating that the "[t]he venting function of the claimed vented spool relates to relief of fluid pressure from the external ends of the spool.").

In the accused devices, however, the separate drain passages fail to achieve BW's asserted function and result.

### REDACTED

Accordingly, there is no infringement under the doctrine of equivalents.

#### c.    The Vented Spool Limitation is a Clear, Narrow Structural Limitation and Variations Were Entirely Foreseeable

The Federal Circuit's decision in *Sage Products* demonstrates why the claimed "vented spool" is not equivalent to the drain passages in the Hitachi solenoid valve body. In *Sage Products*, the Federal Circuit noted that "[t]he claim at issue defines a relatively simple structural device. A skilled patent drafter would *foresee* the limiting potential of the [claim] limitation. No subtlety of language or complexity of the technology, nor any subsequent change in the state of the art, such as later-developed technology, obfuscated the significance of this limitation at the time of its incorporation into the claim." *Sage Prods., Inc. v. Devon Indus, Inc.*, 126 F.3d 1420, 1425 (Fed. Cir. 1997) (emphasis added); *see Freedman Seating*, 420 F.3d at 1360, 1362 (summarizing *Sage Products*).

14

Similarly, in this case, the claimed "vented spool" is a very simple structure. Having an opening in the spool valve body (instead of a vented spool) was entirely foreseeable. In fact, BW has argued that this feature is shown in earlier BW patents incorporated into the '738 patent. *See* Ex. 5, U.S. Patent No. 5,107,804 (Figure 23); Ex. 16, U.S. Patent No. 5,172,659 (Figure 13); Ex. 15, U.S. Patent No. 5,184,578 (Figures 4 & 5).[16]  Under *Sage Products*, instead of trying to obtain broader claims to cover this concept, BW "left the PTO with manifestly limited claims that it now seeks to expand through the doctrine of equivalents. However, as between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure." *Sage Prods.*, 126 F.3d at 1425.

In sum, BW included a clear structural limitation, *i.e.*, the vented spool limitation, in claim 10.  The spools in the accused devices are not vented and do not allow direct communication between the ends of the spools to eliminate pressure differentials. Equivalency cannot exist as a matter of law.[17]

### 5.  The Accused Devices Lack An "Inlet Line" And "Return Lines"

BW does not argue literal infringement of the claimed inlet line and return lines under Hitachi's proposed construction. *See* Opp. at 25-27. Rather, BW only argues that a question of fact exists as to equivalency. *See id.*  Nonetheless, both prosecution history estoppel and the all elements rule preclude equivalents as a matter of law for the following reasons.

---

[16]  Significantly, none of these earlier patents showing an opening in the spool valve body state that the spool is a "vented spool."

[17]  *See Freedman*, 420 F.3d at 1362 ("Members of the public were therefore justified in relying on this specific language in assessing the bounds of the claim.  Accordingly, we think that to now say the claims include other four bar mechanisms under the doctrine of equivalents would unjustly undermine the reasonable expectations of the public.").

*First*, regarding prosecution history estoppel, BW argues that the supplying step (which includes the inlet and return lines) was added merely to "clarify that the claims relate to internal combustion engines and was not amended to distinguish over prior art." Opp. at 26 n. 15. This makes no sense. As filed with the PTO, original method claim 11 (asserted patent claim 10) already recited "[i]n an *internal combustion engine* having a variable camshaft timing system." (emphasis added). Ex. 35, '738 Application at 23. BW's extensive amendments to method claim 11, including adding new recitations to the preamble, the entire supplying step, and entire transmitting step, plainly went way beyond just specifying internal combustion engine art. Indeed, BW's interpretation of the '738 prosecution history should be rejected as being inconsistent with the actual record,[18] which plainly shows the context for BW's amendments.

## REDACTED

The record reveals that the amendments were indeed intended to address the Examiner's prior art concerns and make the apparatus and method claims of analogous scope. The Examiner initially found apparatus claims 1-10 to be patentable over the prior art. Ex. 11, Prelim. Amdt. at BW 2137. The Examiner stated, however, that method claims 11-15 "needed more detail before they would be allowed" because these claims were "obvious over prior art." *Id.* In response to the Examiner's obviousness concerns, BW amended the method claims to "add the detail required by the Examiner." *See id.* This needed detail came directly from the apparatus claims.[19] Adding language corresponding to limitations from the apparatus claims to

---

[18] Any explanation of the reasons for an amendment must be based only on the public prosecution record. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1367 (Fed. Cir. 2003) (*en banc*) ("[W]e reinstate our earlier holding that a patentee's rebuttal of the Warner-Jenkinson presumption is restricted to the evidence in the prosecution history record.").

[19] Language added to the preamble of method claim 11 came from two "means" clauses in apparatus claim 1. The supplying step came from four "means" paragraphs in claim 1 reciting a "means for controlling," "first return lines means," "second return line means" and "inlet line

method claim 11 met the Examiner's directive to "amend claims to a unified invention" (Ex. 10, 12/22/93 Interview Summary) and was consistent with his initial position that the apparatus claims were allowable over the prior art.

Taken in context and in light of the actual amendments, method claim 11 (now claim 10) was amended to be drawn to the same CTA embodiments disclosed in the specification and recited in apparatus claim 1. BW's amendments were, among other things, an attempt to gain allowance of method claims 11-15 based upon the Examiner's original position that apparatus claims 1-10 "were allowable as submitted" over prior art cited by the Examiner.[20] The file history leaves no doubt that the supplying step was added for reasons relating to patentability. And, to the extent any doubt exists, it must be resolved against BW. *See Festo*, 344 F.3d at 1366-67. BW, thus, is wrong in arguing that the amendments to claim 11 were not made to address the prior art.[21]

*Festo* "imposes the presumption that the patentee has surrendered all territory between the original claim limitation and the amended claim limitation." *Id.* at 1367. BW makes no

---

means." The final paragraph of claim 11 came from two paragraphs of claim 1 reciting the "housing" and "means for controlling."

[20] As indicated in an interview summary (Ex. 34, 1/4/94 Interview Summary), the Examiner later changed his mind and found that apparatus claims 1-10 and method claims 11-15 were obvious over the prior art of record (Ex. 12, 1/4/94 Office Action).

[21] BW argues that the Examiner's obviousness concerns only related to obviousness-type *double patenting* over the application that led to U.S. Patent No. 5,218,935. That cannot be true for at least three reasons. *First*, the terminal disclaimer completely addressed the double patenting issue, so BW's discussion of prior art with the Examiner in the interviews involved something more than just double patenting. *Second*, the '935 patent application was not "prior art" under any category of section 102. *Third*, the interview summary leading to the preliminary amendment indicates that the applicant and Examiner discussed the "art of record," which did not include the '935 patent since it was not prior art. The "art of record" was again discussed at the same time the Examiner was issuing an office action that rejected all pending claims over the Butterfield, Linder and Strauber patents. *See* Exs. 34 and 12. The Examiner's obviousness concerns related to these three patents, not just double patenting.

attempt to rebut the *Festo* presumption, which plainly applies.[22]  As such, BW cannot resort to equivalency for the claimed inlet and return lines based upon prosecution history estoppel.

    *Second*, regarding the "all elements rule," BW improperly tries to equate two passages in the accused devices with the at least three lines claimed in the patent, *i.e.*, at least one inlet line and two return lines.  In doing so, BW argues that the same passage in the accused devices is both an inlet line and a return line.  *See* Opp. at 26-27.  BW wants this Court to entirely write out of the claim the requirement of three *distinct and separate* oil lines.  Nonetheless, the all elements rule prevents application of the doctrine of equivalents in a manner that entirely vitiates a claim element.  *See Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998) ("If a theory of equivalence would vitiate a claim limitation, however, then there can be no infringement under the doctrine of equivalents as a matter of law.").  As such, the all elements rule precludes infringement of the claimed inlet and return lines by the accused Hitachi devices having only two rather than three lines.

### 6.    The Accused Devices Do Not Meet the "Connected" Limitation

    BW stretches quite far based upon nothing but inference and innuendo to assert that the spool and armature in the accused Hitachi VCT components *may be* "physically attached." Opp. at 27-28.  BW's assertion has no basis considering it has physical samples of the Hitachi solenoid valve, including at least one with cross-sectional cuts from which it can readily analyze the true structure.  Simply put, there is no physical attachment between the spool and armature in the accused Hitachi VCT components.  Ex. 9, Ichikawa Dec. at ¶ 17.  As such, there is no literal infringement.   Argument of counsel simply cannot create a physical attachment between two unconnected components.

---

[22] The location of the inlet and return lines and the means for transmitting are part of the internal flow control directly tied to BW's disclaimer of OPA systems in the '738 patent and its prosecution history.  The doctrine of equivalents cannot extend to subject matter that has be distinguished to obtain allowance of the patent.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-35 (2002).

Similarly, BW cannot show infringement under the doctrine of equivalents. Under the all elements rule, components that are disconnected cannot be considered connected. BW chose to claim a structure where the armature was connected to the spool. No matter how BW tries to characterize the accused devices, no reasonable jury could find that the accused armature and spool, which are disconnected, are somehow equivalent to "connected." [23]

### 7.     The Accused Devices Lack The Claimed "Air Gap"

BW does not argue literal infringement under Hitachi's proposed construction of the "air gap" limitation. Opp. at 29-30. BW's equivalency arguments fail because they vitiate one aspect of Hitachi's proposed interpretation, and do not demonstrate equivalency for another aspect of Hitachi's proposed interpretation.

BW entirely vitiates the requirement that the gap extend the length of the armature by arguing equivalency for *any* air gap, without regard to its location or extent. *See id.* That is, BW entirely reads out the limitation of the air gap "separating said coil from said armature," which necessarily requires separation along the entire length between these structures. BW's equivalency argument is impermissible. *Warner-Jenkinson*, 520 U.S. at 29.

BW also ignores the requirement that the gap between the armature and coil be without magnetic bearing material. BW does not dispute that the accused Hitachi solenoid valves include magnetic material between the armature and coil. Ex. 9, Ichikawa Dec. at ¶ 17. BW cannot demonstrate, as a matter or law, that having magnetic bearing material is equivalent to

---

[23] *See Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) (stating that "it would defy logic to conclude that a minority--the very antithesis of a majority-- could be insubstantially different from a claim limitation requiring a majority, and no reasonable juror could find otherwise"); *Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) (stating that "[t]o hold that 'unmounted' is equivalent to 'mounted' would effectively read the 'mounted on' limitation out of the patent."); *Bicon, Inc. v. The Straumann Co.*, 441 F.3d 945, 955-56 (Fed. Cir. 2006) (finding that accused device's concave, frusto-conical shape excluded by convex, frusto-spherical shape required by claim). There simply is no legitimate basis to argue equivalency.

being without magnetic bearing material. *See Moore*, 229 F.3d at 1106; *Asyst Techs.*, 402 F.3d at 1195.

    For these reasons, no genuine issue of material fact exists that the accused devices lack the air gap limitation as a matter of law under Hitachi's claim interpretation.

## III.    CONCLUSION

    For each and all of the foregoing reasons, Hitachi respectfully submits that it motion for summary judgment of noninfringement should be granted.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Of Counsel:*

Kenneth E. Krosin
Michael D. Kaminski
Pavan K. Agarwal
C. Edward Polk
Mary M. Calkins
Liane M. Peterson
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
(202) 672-5300

*Attorneys for Plaintiffs Hitachi, Ltd. and Hitachi Automotive Products (USA), Inc.*

William J. Robinson
Foley & Lardner LLP
2029 Century Park East, Suite 3500
Los Angeles, CA 90067
(310) 277-2223

Dated: December 19, 2006
176206.1