## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| HITACHI, LTD. and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 05–048–SLR |
| BORGWARNER INC. and BORGWARNER MORSE TEC INC., | ) ) ) | **REDACTED PUBLIC VERSION** |
| Defendants. | ) ) ) | |
| BORGWARNER INC., | ) ) | |
| Counterclaimant, | ) ) ) | |
| v. | ) ) ) | |
| HITACHI, LTD. and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., | ) ) ) | |
| Counterdefendants. | ) ) | |

### PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY FOR FAILURE TO MEET THE WRITTEN DESCRIPTION REQUIREMENT OF 35 U.S.C. § 112 UNDER BORGWARNER'S PROPOSED CLAIM INTERPRETATION

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654–1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiffs Hitachi, Ltd. and*
*Hitachi Automotive Products (USA), Inc.*

*Of Counsel:*

Kenneth E. Krosin
Michael D. Kaminski
Pavan K. Agarwal
C. Edward Polk
Mary M. Calkins
Liane M. Peterson
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
(202) 672-5300

William J. Robinson
Foley & Lardner LLP
2029 Century Park East, Suite 3500
Los Angeles, CA 90067
(310) 277-2223

Dated: December 19, 2006

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................1

II.   HITACHI'S SUMMARY JUDGMENT MOTION SHOULD BE
      GRANTED..................................................................................................2

      A.    BW's Attempts To Combine The Written Description And
            Enablement Standards To Save Claims 10 And 11 Under BW's
            Claim Construction Must Be Rejected........................................................2

      B.    There Is No Written Description For OPA-Type VCT.................................4

            1.    BW's Narrow View Of Claim 10 Is Wrong...................................4

            2.    BW And Its Expert Concede That The '738 Patent
                  Specification Does Not Disclose Or Suggest An OPA
                  Embodiment ...................................................................................5

            3.    BW's Attempt To Dismiss The Patents Incorporated By
                  Reference In The '738 Patent Fails.............................................10

            4.    BW's Attempts To Alter Its Claim Construction To Bolster
                  Its Written Description Arguments Should Be Rejected .................13

                  a.    BW's New Claim Construction Arguments
                        Contradict Its Earlier Position................................................13

                  b.    Even Under BW's Claim Construction *Du Jour*, The
                        Specification Does Not Teach Using The Spool
                        Valve To *Regulate* Oil Flowing From The MOG, As
                        Is Required In OPA Systems .................................................15

III.  CONCLUSION ..................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*ADCO Prods., Inc. v. Carlisle Syntec Inc.*, 110 F. Supp. 2d 276
(D. Del. 2000) ........................................................................................ 12

*AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234 (Fed. Cir. 2003) ................................. 19

*Am. Seating Co. v. USSC Group, Inc.*, No. 1:01-CV-578,
2005 WL 1224603 (W.D. Mich. May 23, 2005) ........................................ 19

*Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374 (Fed. Cir. 1999) ..................... 3

*Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132 (Fed. Cir. 2003) ................................. 6

*Boston Scientific Scimed, Inc. v. Cordis Corp.*, 392 F. Supp. 2d 676
(D. Del. 2005) ........................................................................................ 2

*Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247 (Fed. Cir. 2004) .................................. 6

*Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365 (Fed. Cir. 2006) .................................. 10

*Cornell University v. Hewlett Packard Co.*, 313 F. Supp. 2d 114
(N.D.N.Y. 2004) ........................................................................ 13, 15

*Crown Ops. Int'l, Ltd. v. Solutia, Inc.*, 289 F.3d 1367 (Fed. Cir. 2002) ........................... 2

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558
(Fed. Cir. 2000) ........................................................................................ 12

*Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543 (Fed. Cir. 1997) ....................................... 3

*Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998) ...................... 7, 9

*Gould v. Quigg*, 822 F.2d 1074 (Fed. Cir. 1987) ........................................................ 6

*In re Gay*, 309 F.2d 769 (C.C.P.A. 1962) ................................................................. 3

*In re Howarth*, 654 F.2d 103 (C.C.P.A. 1981) .......................................................... 3

*In re Lund*, 376 F.2d 982 (C.C.P.A. 1967) ............................................................. 10

*LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336
(Fed. Cir. 2005) ................................................................................ Passim

*Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565 (Fed. Cir. 1997) ...................... 3, 5-6, 12

# TABLE OF AUTHORITIES

**Page(s)**

*Modine Manufacturing Co. v. U.S. International Trade Commission,*
75 F.3d 1545 (Fed. Cir. 1996) ............................................................ 12

*Novo Nordisk A/S v. Eli Lilly & Co.,* No. 98-643 MMS, 1999 WL 1094213
(D. Del. Nov. 18, 1999) ......................................................... 16, 19

*PIN/NIP, Inc. v. Platte Chem. Co.,* 304 F.3d 1235 (Fed. Cir. 2005) ................... 9

*Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298
(Fed. Cir. 1999) ..................................................................... 16, 19

*S3 Inc. v. nVidia Corp.,* 259 F.3d 1364 (Fed. Cir. 2001) .............................. 3

*Schwarz Pharma, Inc. v. Warner-Lambert Co.,* 95 Fed. Appx. 994
(Fed. Cir. 2004) ..................................................................... 12-13

*Tronzo v. Biomet, Inc.,* 156 F.3d 1154 (Fed. Cir. 1998) ...................... 2, 7-8, 11

*TurboCare Div. of Demag Delaval Turbomach. Corp. v. Gen. Elec. Co.,*
264 F.3d 1111 (Fed. Cir. 2001) ........................................................ 3

*Univ. of Rochester v. G.D. Searle & Co.,* 358 F.3d 916 (Fed. Cir. 2004) ............ 2, 6

*Univ. of Rochester v. G. D. Searle & Co.,* 375 F.3d 1303 (Fed. Cir. 2004) ............ 7

*Vas-Cath, Inc. v. Mahurkar,* 935 F.2d 1555 (Fed. Cir. 1991) ........................... 3

## FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

35 U.S.C. § 112 ............................................................... 2, 8, 11, 13

35 U.S.C. § 112, ¶ 1 ............................................................... 1, 7

35 U.S.C. § 112, ¶ 4 ................................................................... 18

## OTHER AUTHORITIES

MANUAL OF PATENT EXAMINING PROCEDURES § 2163.07(b) ............................ 10

## I.    INTRODUCTION

BW's Opposition (D.I. 310) glosses over the written description issue and twists the undisputed facts to try and create written description support for its overly-broad claim construction.   Yet, BW has still not raised any genuine issues of material fact to prevent resolution of this issue.

BW's Opposition either fails to refute or concedes that the '738 patent specification: (a) discloses only cam-torque-actuated (CTA) VCT embodiments; (b) incorporates and adopts BW's prior patents that teach CTA VCTs as the inventive systems and reject oil-pressure-actuated (OPA) systems as being inferior; (c) stresses problems with engine oil pressure and (d) expressly does not use engine oil flow from the main oil gallery (MOG) to create the phase change or regulate oil flow from the MOG (both necessary for OPA operation).  BW's own expert                    **REDACTED**                    Thus, the '738 patent does not just disclose one embodiment and stand silent as to others, as it specifically *rejects* OPA VCTs as being inferior.

Based on these undisputed facts, BW's attempt to construe the claims to broadly cover OPA systems runs afoul of the written description requirement of 35 U.S.C. § 112, ¶ 1. As the Federal Circuit held in *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005) "[the written description must establish] that the patentee invented what is claimed." It is thus directly contrary to case precedent for the inventors only to disclose CTA to the public, disclaim systems that rely on engine oil pressure (*e.g.*, OPA), and then try to capture the disclaimed subject matter through an overly broad claim interpretation.  Accordingly, Claims 10 and 11 are invalid as a matter of law under BW's claim construction.

Because the facts are so strongly against it, BW seeks to muddy and intermingle the law on written description and enablement.  Such an approach is clearly contrary to established

1

Federal Circuit precedent. Further, BW's claim construction continues to shift like sand in the desert to save Claims 10 and 11, as BW reargues and changes that construction. The clear intrinsic record and BW's own previous arguments, however, demonstrate the lack of merit of its new arguments.

This case is factually analogous to Federal Circuit decisions, such as *LizardTech* and *Tronzo v. Biomet, Inc.*, 156 F.3d 1154 (Fed. Cir. 1998), which invalidated overly-broad claims unsupported by a narrow written disclosure. Under BW's overly-broad claim construction, Hitachi's motion for summary judgment for failure to meet the written description requirement of § 112 should be granted.

## II.    HITACHI'S SUMMARY JUDGMENT MOTION SHOULD BE GRANTED

### A.    BW's Attempts To Combine The Written Description And Enablement Standards To Save Claims 10 And 11 Under BW's Claim Construction Must Be Rejected

Hitachi's present motion is based upon BW's failure to provide adequate *written description* for generic claims covering both CTA and OPA VCTs. As such, BW's arguments concerning enablement are completely misplaced.[1]   It is well established that "[t]he written description requirement is separate and distinct from the enablement requirement."[2]   Distinct

---

[1]   Hitachi does *not* concede that the '738 patent specification enables a skilled artisan to practice the full scope of the claimed method under BW's interpretation, including covering an OPA VCT method. *No disclosure* in the '738 patent specification teaches or suggests the extensive modifications (*see, e.g.,* U.S. Patent No. 5,657,725) required to convert the method disclosed in the '738 patent to OPA operation. Ex. 14, Kuhn Declaration at ¶¶ 25-27. **REDACTED**   Nonetheless, enablement is *not* the subject of the present summary judgment motion.

[2]   *Boston Scientific Scimed, Inc. v. Cordis Corp.*, 392 F. Supp. 2d 676, 683 (D. Del. 2005); *see also Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 921 (Fed. Cir. 2004); *Crown Ops.*

from enablement, the written description requirement mandates that the specification convey with reasonable clarity, at the time of filing, that the named inventors *invented the full scope of what is claimed*. *See Vas-Cath*, 935 F.2d at 1563-64; *LizardTech*, 424 F.3d at 1345-46.

As shown in Hitachi's Opening Memorandum and discussed in more detail below, '738 patent specification does not even remotely suggest that the claimed invention covers anything more than CTA VCTs. Instead, the '738 patent specification and patents it incorporates teach away from reliance on engine oil pressure, which is required in OPA systems.

BW argues that it need not have disclosed OPA systems in the '738 patent because they were well known and a skilled artisan could design an OPA system.[3] Opp. at 14-15 and 22. These are *enablement* arguments. As described, written description and enablement are two *separate* requirements. Furthermore, what might have been obvious to the skilled artisan cannot be used to fill in gaps in the specification to satisfy written description.[4]

---

*Int'l, Ltd. v. Solutia, Inc.*, 289 F.3d 1367, 1379 (Fed. Cir. 2002); *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991).

[3] None of the cases that BW cites at page 14 of its Opposition addresses the written description issue presented herein, namely whether a disclosure expressly limited to CTA systems satisfies the written description requirement for claims broadly covering other rejected systems, such as OPA. *S3 Inc. v. nVidia Corp.*, 259 F.3d 1364 (Fed. Cir. 2001) and *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374 (Fed. Cir. 1999) (for which BW actually cites the *dissenting* opinion without so stating, *see id.* at 1386 (Mayer, C.J., dissenting)), pertain to whether the specification sufficiently disclosed the structure understood by the skilled artisan for a means-plus-function element. *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543 (Fed. Cir. 1997) pertains to a best mode inquiry. The cited portion of *In re Gay*, 309 F.2d 769, 774 (C.C.P.A. 1962), concerns whether any "specific embodiment" at all was disclosed in the specification. Here, the '738 patent undisputedly discloses CTA embodiments. *In re Howarth*, 654 F.2d 103 (C.C.P.A. 1981), pertained to enablement.

[4] *See TurboCare Div. of Demag Delaval Turbomach. Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1119 (Fed. Cir. 2001); *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).

**B.    There Is No Written Description For OPA-Type VCT**

    **1.    BW's Narrow View Of Claim 10 Is Wrong**

       BW attempts to avoid the OPA/CTA discussion by arguing that the claimed invention is not directed to the *mechanical* VCT structure, but instead only covers "a 'closed loop' *control system* that is able to continuously and precisely vary the timing of a camshaft relative to a crankshaft through closed loop control, a variable force solenoid and a vented spool." Opp. at 3.

       BW is wrong.    Claims 10 and 11 expressly include limitations directed to the *mechanical* aspects of the VCT         **REDACTED** and its associated oil flow control.    Much of this was added by BW during prosecution for patentability.  These limitations are shown below:

> 10. In an internal combustion engine having a variable camshaft timing system for varying the phase angle of a camshaft relative to a crankshaft, a method of regulating the flow of hydraulic fluid from a source to a means for transmitting rotary movement from said crankshaft to a housing
>
> ...
>
> supplying hydraulic fluid from said source through said spool valve to a means for transmitting rotary movement to said camshaft, said spool valve selectively allowing and blocking flow of hydraulic fluid through an inlet line and through return lines; and,
>
> transmitting rotary movement to said camshaft in such a manner as to vary the phase angle of said camshaft with respect to said crankshaft said rotary movement being transmitted through a housing said housing being mounted on said camshaft, said housing further being rotatable with said camshaft and being oscillatable with respect to said camshaft.

---

[5]      **REDACTED**        1-26 are found in Plaintiffs' Combined Appendix in Support of its Opening Summary Judgment Motions (D.I. 280). Exs. 27-48 are found in Plaintiffs' Combined Appendix in Support of Its Summary Judgment Replies.

Claim 10 plainly includes limitations expressly directed to the mechanical VCT architecture. For example, in the joint claim construction statement (D.I. 265), BW defines the "means for transmitting rotary movement to said camshaft" limitation as the "structure that performs the function of transmission of rotary movement to the camshaft, *e.g., the structure shown in the specification that includes the housing, recesses and vanes ....*" (emphasis added). Similarly, BW defines the term "housing" as a "vane housing having recesses for receiving fluid." BW's claim construction obviously covers the mechanical VCT structure.[6]

**2. BW And Its Expert Concede That The '738 Patent Specification Does Not Disclose Or Suggest An OPA Embodiment**

It is absolutely undisputable that the only disclosure in the '738 patent for the claimed mechanical actuating structure of Claims 10 and 11 is a CTA system that controls internal oil flow from one piston cylinder/vane chamber to the other using camshaft torque pulsations. BW even concedes that the '738 patent specification only discloses CTA embodiments. Opp. at 10-11. BW likewise cannot deny that the '738 patent is built upon the incorporated CTA patents that expressly reject OPA systems in favor of CTA, as explained below.


**REDACTED**


---

[6] Hitachi does not agree with BW's generic claim construction. Claim 10 includes limitations directed to the disclosed CTA architecture and associated oil flow paths as fully explained in Hitachi's claim construction briefs.

**REDACTED**

Since an OPA system necessarily uses pressurized oil flow from the MOG to effect a phase change, Ribbens's testimony shows not only that that OPA operation is inconsistent with the '738 specification, but also that the '738 patent specification is expressly tailored to controlling the VCT architecture shown in BW's earlier CTA patents, and takes steps to further isolate the MOG from the phase change process.

BW's later U.S. Patent No. 5,657,725 shows the extensive modifications required to convert the CTA architecture shown in the '738 patent to OPA operation and is very relevant.[8]

**REDACTED**

BW tries to sidestep the actual specification disclosure, however, by misconstruing a statement in an appeal brief submitted to the PTO near the end of the '738 prosecution. Opp. at 11. But, BW's dancing fails. Statements in the prosecution history, made years after the application is filed, do not demonstrate written description in the original application as filed.[9]

---

[7]

--

**REDACTED**

[8] *Accord Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1260 (Fed. Cir. 2004); *Gould v. Quigg*, 822 F.2d 1074, 1078-79 (Fed. Cir. 1987).

[9] *See Univ. of Rochester*, 358 F.3d at 927 ("After all, it is in the patent specification where the written description requirement must be met."); *accord Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132, 1140 (Fed. Cir. 2003) (stating that "[r]epresentations during prosecution cannot

Simply put, the specification (and incorporated patents) are clearly and unambiguously directed to CTA systems, with OPA systems being deemed inferior.

BW alleges that the *scope* of Claims 10 and 11 under its interpretation generically covers CTA, OPA, and hybrid VCTs. (Opp. at 9-11) Section 112, first paragraph requires the specification to provide written description support for the *full scope* of the claimed method. As such, and just like *Tronzo, Lizardtech, Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998),[10] and others, the '738 patent fails to support the claimed method under BW's proposed claim interpretation.

A review of these cases is appropriate to show the specious nature of BW's contention that claims 10 and 11 cover any generic (OPA, CTA, hybrid) VCT system, despite what is provided (and not provided) in the specification, as discussed above. In *Tronzo*, the patentee argued that certain claims directed to an artificial hip socket cup were "generic claims as to the shape of the cup." *Tronzo*, 156 F.3d at 1158. However, the patent specification disclosed only *conically* shaped cups and identified problems with other shapes. *Id.* at 1159. The Federal Circuit observed that not only was there "nothing in the … specification to suggest that shapes other than conical are necessarily a part of the disclosure[,]" but also that "the specification clearly suggest[ed] the contrary by asserting advantages of the conical shape over prior art

enlarge the content of the specification").    Moreover, the referenced prosecution history statement does not suggest using the '738 control scheme with an OPA system. In that same response, BW distinguished Strauber's OPA system as being outside the scope of the "present invention." At most, this prosecution statement refers to alternatives for the vane and piston-cylinder structures.

[10]   *Tronzo, Lizardtech*, and *Gentry Gallery* are just a few examples of mechanical/electrical cases finding lack of written description support. Contrary to BW's suggestion on page 23, written description is not unique to biotechnology cases. *See, e.g., Univ. of Rochester v. G. D. Searle & Co.*, 375 F.3d 1303, 1306 (Fed. Cir. 2004) (Lourie, J., concurring) (listing a number of cases where Federal Circuit applied written description requirement to inventions outside the fields of biotechnology or chemistry).

shapes." *Id.* As such, the asserted claims were invalid for a lack of written description support. Just as in *Tronzo*, the '738 patent, including its incorporated CTA patents, nowhere suggests that anything but CTA is part of the claimed invention. Moreover, as in *Tronzo*, the '738 patent specification "clearly suggests to the contrary," *i.e.*, that the inferior OPA VCTs are *not* part of the claimed invention. *See* Hitachi's Opening Memo. at 15-19.

*LizardTech* further shows that, to support broad generic claims, the specification must convey to skilled artisans that the named inventors of the '738 patent invented the full scope of the claimed invention. In *LizardTech*, the Federal Circuit held that "a patentee cannot always satisfy the requirements of section 112, in supporting expansive claim language, merely by clearly describing one embodiment of the thing claimed. For that reason, we hold that the description of one method for creating a seamless DWT does not entitle the inventor ... to claim any and all means for achieving that objective." *LizardTech*, 424 F.3d at 1346. Similarly, the '738 patent specification discloses but one method (and associated architecture) for creating a phase change, a CTA system. Importantly, the '738 specification also expressly disclaimed reliance on engine oil pressure, which is a hallmark of OPA operation.[11]

*LizardTech* also demonstrates the flaw in BW's argument that there is written description support for OPA systems in the original claims. *See* Opp. at 16-17. In *LizardTech*,

---

[11]  For example, OPA VCTs create a phase change by relying on the spool valve to control oil flowing in and out of advance and retard chambers from the MOG. Ex. 14, Kuhn Declaration ¶ 11-16. In direct contrast, the '738 patent teaches that oil flowing from the MOG is *not* regulated by the spool valve: "The flow of make-up oil does not affect, and is not affected by, the operation of electromechanical actuator 201." Ex. 1, '738 patent at 9:47-50; *see also id.* at 2:33-37, 3:45-50 and 8:66-9:2 (describing problem of engine oil pressure and desire to avoid the same). Instead, following its focus on CTA, the '738 specification only describes controlling the flow of oil already in one vane recess or piston cylinder to the other via camshaft torque pulsations. And, building on the incorporated CTA patents, the '738 patent takes steps to further isolate the MOG oil flow from the phase changing process.

the Court noted that "[w]hile it is true that an originally filed claim can provide the requisite written description support ... nothing in claim 21 or the specification constitutes an adequate and enabling description of all seamless DWTs." *LizardTech*, 424 F.3d at 1346. Even aside from the fact that patent claim 10 is not an original claim, nothing in the original '738 patent claims provides written description support for operation outside the CTA environment. While CTA operation is mentioned in the original claims, OPA operation is not.

BW's attempt (Opp. at 23) to distinguish the welter of case law against it, particularly *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235 (Fed. Cir. 2005) and *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998), fails. BW argues that in *PIN/NIP*, the patentee tried to interpret certain claim language beyond what was known by the person of ordinary skill in the art. Opp. at 23. However, the opinion identifies testimony about prior art as meeting sequential application of two chemicals, which is how the patentee tried to interpret certain claim language of claim 33. *See PIN/NIP*, 304 F.3d at 1245-46, 1247. BW mis-describes *Gentry Gallery*. In *Gentry Gallery*, just like BW's argued interpretation of the '738 patent, claim language was added during prosecution that was generic to the placement of a control means while the specification specified only one location. *See Gentry Gallery*, 134 F.3d at 1479 ("Accordingly, his original disclosure serves to limit the permissible breadth of his later-drafted claims."). The '738 patent presents even stronger grounds to failure to meet the written description requirement than in *Gentry Gallery*, because the '738 patent with its incorporation affirmatively rejects OPA VCTs, rather than merely stressing advantages of CTA VCTs.

The facts and law compel the conclusion that claims 10 and 11 are invalid under BW's claim construction.

### 3.  BW's Attempt To Dismiss The Patents Incorporated By Reference In The '738 Patent Fails

BW admits that the BW patents incorporated into the '738 patent (U.S. Patents No. 5,002,023, No. 5,107,804, No. 5,172,659, and No. 5,184,578) describe "shortcomings" with OPA systems. Opp. at 12.[12] Undaunted, BW argues that the *disfavored* OPA material is incorporated and, thus, provides written description support for the asserted claims. *Id.* Such an assertion is baseless, as the incorporated patents specifically *reject*[13] OPA systems due to various problems with their reliance on engine oil pressure to justify the need for the new "CTA" invention found in those patents, as well as in the '738 patent itself. Indeed, the '738 patent expresses problems with engine oil pressure and seeks to avoid it (Ex. 1, '738 patent at 2:33-37; 3:45-50; 8:66-9:2) and limits MOG oil to initial fill for the chambers (or cylinders) and make-up oil (*id.* at 7:11-14 & 35-38). The specification also teaches that the spool valve does not regulate oil flow from the MOG (*id.* at 9:47-50), as is required with OPA operation. The '738 patent stresses that the claimed system operates immediately at start-up without having to wait for engine oil pressure to develop (Ex. 27, Ribbens at 256:2-13; *see also id.* at 250:8-18). OPA VCTs, conversely, must wait until sufficient oil pressure builds before a phase change can occur. *Id.* at 250:19-22; Ex. 14, Kuhn Declaration ¶ 22.

---

[12] BW agrees (Opp. at 12) that, as stated in the Patent Office MPEP, information incorporated by reference becomes "as much a part of the application as filed as if the text was repeated in the application[.]"MPEP § 2163.07(b); *see also Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1375-76, *reh'g and reh'g en banc denied* (Fed. Cir. 2006) (relying on incorporation to help define scope of the invention of the patent in suit); *In re Lund*, 376 F.2d 982, 989 (C.C.P.A. 1967). Hence, BW must concede that the '738 patent incorporation of the earlier BW patents adopts the CTA VCTs and rejects OPA VCTs.

[13] The incorporated '023 patent stresses that an OPA VCT "consumes significant additional energy and it increases the required size of the engine lubricating pump because of the required rapid response time for proper operation of the camshaft phasing actuator." Ex. 4, '023 patent at 1:35-42; *see* Hitachi's Opening Memo. at 10 and 16-17 (discussing incorporated patents).

10

Thus, like the incorporated patents, the '738 patent continues the rejection of engine oil pressure dependency -- conveying to skilled artisans that OPA is not part of the claimed "invention."

**REDACTED**

rejection of OPA VCTs in the '738 patent, including the incorporated patents, cannot provide written description support for OPA as part of the "claimed invention." *See Tronzo*, 156 F.3d at 1159; *LizardTech*, 424 F.3d at 1343-44.

BW also tries to dismiss the incorporated patents as supposedly concerning *different* inventions than the '738 patent. Opp. at 12-13. BW's argument has no merit because the '738 patent specification adopts its basic mechanical CTA VCT structure

**REDACTED**       from the incorporated patents (taking most of its figures from the '023 and '804 patents[14]), and stresses the same internal flow from one piston cylinder/vane chamber to the other to create a phase change. Ex. 1, '738 patent at 1:36-42 & 53-63; 5:57-61; 9:7-31; abstract.

Not worried about consistency, BW next argues that CTA VCTs and OPA VCTs are actually quite *similar*. Opp. at 13. This argument is both irrelevant and incorrect. This Court has previously found "no authority for interpreting [Section 112] as requiring only that the applicant must provide a written description of structures 'similar to' or 'interchangeable with'

---

[14]   The description of the incorporated '023 and '804 patent VCT structures as part of the field of invention for the '738 patent is found just after the statement that the "invention" covers CTA VCTs. Ex. 1, '738 patent at 1:13-18 ("This invention relates to an hydraulic control system for controlling the operation of a variable camshaft timing (VCT) system of the type in which the position of the camshaft is circumferentially varied relative to the position of a crankshaft *in reaction to torque reversals experienced by the camshaft during its normal operation*.") (emphasis added).

11

the claimed invention." *ADCO Prods., Inc. v. Carlisle Syntec Inc.*, 110 F. Supp. 2d 276, 292 (D. Del. 2000); *see also Lockwood*, 107 F.3d at 1572 ("It is not sufficient for purposes of the written description requirement of § 112 that the disclosure, when combined with the knowledge in the art, would lead one to speculate as to modifications that the inventor might have envisioned, but failed to disclose.").

BW's "similarity" argument is also refuted by the intrinsic patent record. As described *supra*, the '738 patent specification, including the earlier CTA patents it incorporates, distances CTA VCTs from systems relying on engine oil pressure, and between OPA and CTA VCTs in particular. A very clear distinction is made between CTA VCTs and OPA. Ex. 1, '738 patent at 2:31-36. BW simply has not and cannot refute these facts.

BW's analysis of the law fares no better. BW's reliance on *Modine Manufacturing Co. v. U.S. International Trade Commission*, 75 F.3d 1545 (Fed. Cir. 1996), abrogated on other grounds, *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558 (Fed. Cir. 2000), and *Schwarz Pharma, Inc. v. Warner-Lambert Co.*, 95 Fed. Appx. 994 (Fed. Cir. 2004) (unpublished) has no merit, as both cases pertain to claim construction rather than invalidity for lack of written description support. As such, these cases are of limited relevance to the present motion. Moreover, *Modine* is clearly distinguishable on its facts. There, the specification of the patent in suit disclosed one range of hydraulic diameters, but the patentee sought a larger range based on an incorporation by reference of another patent. The Federal Circuit rejected this argument because the incorporated patent contradicted the clear intrinsic record of the patent in suit. *Modine*, 75 F.3d at 1553. By contrast, the '738 patent expressly adopts the basic CTA VCT mechanical structure from the previous patents and this incorporated material precisely matches, rather than contradicts (as in *Modine*), the '738 patent specification.

12

In *Schwarz*, the claim term at issue and patent disclosure supported a broader claim interpretation than the interpretation suggested by the incorporated patent. *Schwarz*, 95 Fed. Appx. at 997-98. In contrast, the '738 specification does not suggest anything broader than CTA,[15] and continues the rejection of engine oil pressure/OPA VCTs, as in BW's earlier CTA patents.

4.    **BW's Attempts To Alter Its Claim Construction To Bolster Its Written Description Arguments Should Be Rejected**

a.    **BW's New Claim Construction Arguments Contradict Its Earlier Position**

In an attempt to find some sort of written description defense, BW now: (a) defines the claim language "method of regulating the flow of hydraulic fluid from a source" to be *independent* from creating a phase change;[16] (b) argues that, under its construction, oil need *not* be regulated directly from the source in order to cause a phase change, but rather need only be regulated "somewhere in the VCT system"; and (c) states that the spool valve need not selectively allow and block flow to create a phase shift, and need not allow and block flow through *both* the inlet and return lines. Opp. at 9-10.

BW's Opposition contradicts its earlier positions for the following ways. *First*, BW's contention that the supplying step is *not* part of a phase change is in sharp *contrast* to its

---

[15]    *Cornell University v. Hewlett Packard Co.*, 313 F. Supp. 2d 114 (N.D.N.Y. 2004) is likewise inapposite. It involved claim construction rather than determining whether the claim had written description support under Section 112. *Cornell* does *not* state that knowledge of the skilled artisan can fill in gaps in the specification to meet the written description requirement, as BW seeks to do here. Moreover, *Cornell* presents nothing like the present facts of the '738 patent, which is narrowly focused on an improvement for a CTA VCT, and rejects reliance on engine oil pressure/OPA.

[16]    BW argues that its new construction "is not even addressed in Hitachi's motion." Opp. at 9-10. That is simply because BW has now changed its position from its proposed construction and earlier arguments.

assertion in its Opening Claim Construction Brief. Therein, BW argued that "[i]n the claimed system, the angular position of the camshaft relative to the crankshaft is varied by regulating and controlling the flow of oil." BW's Opening Claim Construction Br. (D.I. 267) at 2-3. Consistent with BW's earlier argument, claim 10 defines its context as "[i]n an internal combustion engine having a variable camshaft timing system *for varying the phase angle of a camshaft relative to a crankshaft*, a method of regulating the flow of hydraulic fluid" (emphasis added), and the remaining claim language proceeds to define the claimed method for creating a phase change. Thus, the regulation is tied directly to the phase change.

*Second*, BW's assertion that the spool valve need not selectively allow and block flow through both inlet and return lines directly *contradicts* its Responsive Claim Construction brief, where it asserts:

> *The plain language of the asserted claims requires the following*: (1) supplying hydraulic fluid from the source through the spool valve to a means for transmitting rotary movement to said camshaft; *(2) the spool valve selectively allowing and blocking flow through an inlet line; and (3) the spool valve selectively allowing and blocking flow through return lines.*

BW's Responsive Claim Construction Br. (D.I. 291) at 35 (emphasis added). BW's admission about allowing and blocking flow through the inlet line follows the claim words reciting selectively allowing and blocking flow "*through* an inlet line *and through* return lines." (emphasis added).

*Third*, BW's assertion that its claim interpretation does not require regulating oil flow from the source, but instead, oil can be regulated anywhere in the system is *contradicted* by BW's own interpretation of "regulating a flow of hydraulic fluid" is a "series of steps of controlling the flow of hydraulic fluid (*e.g.*, oil)." As part of these steps, claim 10 requires "regulating the flow of hydraulic fluid *from a source*" (emphasis added), which BW defines as

the MOG. The only natural reading of these proposed interpretations is that oil flow from the MOG is *regulated*.

BW's reasons for its ever-shifting claim constructions are clear. Through its attempts to twist claim 10 to cover an OPA VCT, BW cannot demonstrate how the claim, including the supplying step that was added during prosecution, reads on the preferred embodiment under its construction.[17]

### b. Even Under BW's Claim Construction *Du Jour*, The Specification Does Not Teach Using The Spool Valve To *Regulate* Oil Flowing From The MOG, As Is Required In OPA Systems

Even with its latest claim construction assertion that oil need *not* be regulated directly from the source in order to cause a phase change, but rather need only be regulated "somewhere in the VCT system," BW cannot refute that interpreting the supplying step to cover OPA operation would *contradict* the '738 patent specification.

### REDACTED

---

[17] BW's original solution to this problem (submitted in its claim construction to this Court) was to interpret "and blocking" out of the claim language since the disclosed CTA embodiments in the '738 patent never block (or otherwise regulate) oil flowing from the MOG. It is now unclear whether BW is still advancing this position.

The specification also expressly requires that "[t]he flow of make-up oil does not affect, and is not affected by, the operation of electromechanical actuator 201. Make-up oil will continue to be provided to lobes 160a and 160b." Ex. 1, '738 patent at 9:47-50. Interpreting the supplying step to *allow* electromechanical actuator 201 to actually *regulate* oil flowing from the MOG, as follows under BW's claim interpretation, directly *contradicts* this disclosure.

**REDACTED**

As part of its newly-minted claim construction, BW mischaracterizes Hitachi's position regarding this the "source" term[18] and misconstrues its amendments during prosecution.[19] As is evident from the mere filing of this Motion, Hitachi's position is that defining "source" as the MOG results in an overall claim construction *lacking* written description support. The word "source" is not used in claim 10 in isolation, but must be considered in context.[20] Taken in proper context, BW's proposed claim construction requires regulation of oil flowing from the MOG. For example, the preamble recites "regulating the flow of hydraulic fluid *from a source* ..." (emphasis added). And, in the context of the supplying step from which "source"

---

[18]    **REDACTED**

[19]    BW's characterization of the prosecution surrounding the "supplying" step has no merit. Contrary to BW's arguments (Opp. at 15-16), the amendment was not added to bring original application claim 11 (patent claim 10) within the internal combustion engine art. This argument makes no sense because this claim already recited its scope as "[i]n an internal combustion engine." The actual purpose and effect of adding the supplying step is addressed in Hitachi's Reply to BW's Opposition to Hitachi's Summary Judgment Motion for Non-infringement. In short, the amendments were made to address the Examiner's prior art concerns and to unify the invention of the method claims with the apparatus claims.

[20]    *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1311 (Fed. Cir. 1999); *accord Novo Nordisk A/S v. Eli Lilly & Co.*, No. 98-643 MMS, 1999 WL 1094213 at *7 (D. Del. Nov. 18, 1999) (mem. op.).

originates under BW's construction, the spool valve selectively allows and blocks (*i.e.*, controls) oil flowing from the MOG (*i.e.*, BW's source) through the inlet line, defined by BW as leading from the MOG to the spool valve.

There can be no reconciliation between BW's claim construction and the clear statements in the specification that the spool valve does *not* regulate oil flow from the MOG through the spool valve. *See* Ex. 1, '738 patent at 9:47-50.[21]  BW cannot refute the clear statements in the specification limiting the role of the MOG to providing initial fill oil and make-up oil. *See id.* at 7:11-14 & 35-38; 9:42-47. This *unregulated* oil flow is different from the *regulated oil flow* in the context of creating the phase change as recited in claim 10 in the regulating recitation and supplying step. *See* Hitachi's Responsive Claim Construction Brief (D.I. 288) at 4-7.[22]

BW also asserts that that oil from the MOG is "passed" through lines 220a, 230a and 182,[23] and that oil from the MOG is selectively allowed and blocked by the spool valve "at various points during operation" (Opp. at 21-22 & 24). As BW well knows, the only point at

---

[21]  BW raises an irrelevant issue of whether oil flow from the MOG can potentially pass through the spool valve body itself on pages 20-21. BW admits that the oil flow from the MOG bypasses the spool 200. And, the specification makes clear that the spool valve does not allow and block/regulate this oil flow in any way. The MOG oil flow does not fit the plain claim words, no matter how hard BW tries.

[22]  BW's mischaracterization of certain validity claim charts created by Hitachi's expert fails as well. The claim charts compare various limitations of claims 10 and 11 to BW's earlier CTA patents, with citation to the disclosed vane recess or piston cylinders (rather than the MOG) for the claimed source and supplying step. The issue of whether the '738 patent specification has written description support for regulating oil flow from the MOG is a separate and distinct issue. Nothing in the claim charts remotely suggests that BW's prior CTA patents support regulating oil flow from the MOG. Simply put, as CTA patents, they do not teach regulating oil flow from the MOG. BW cannot refute this fact.

[23]  Contrary to BW's characterization of lines 220a and 230a as "inlet lines," the specification specifically refers to 220a and 230a as bypass lines, and line 182 is the inlet line. *See* Ex. 1, '738 patent at 7:1-4 & 35-38; 8:19-22.

which selective allowing and blocking occurs is with oil that is already in a vane recess/piston cylinder and is flowing to the other chamber/cylinder.[24]  Ex. 1, '738 patent, abstract ("The camshaft tends to change in reaction to pulses which it experiences during its normal operation, and it is permitted to change only in a given direction, either to advance or retard, by selectively blocking or permitting the flow of hydraulic fluid, preferably engine oil, through the return lines (194, 196) *from the recesses ...*") (emphasis added); 9:15-26.  ·

**REDACTED**

Thus, the '738 patent only discloses the spool valve allowing and blocking oil flow from one vane recess/piston cylinder to the other, and expressly *rejects* the spool valve allowing and blocking flow from the MOG.  Ex. 1, '738 patent at 9:42-50.  In direct contrast, an OPA system *requires* that the spool valve allow and block oil flow from the MOG.  The narrow and direct disclosure of the '738 patent does not provide written description support for BW's interpretation that seeks to cover both CTA and OPA systems.

BW's reference to "lubricating oil source" in claim 4 as supposedly providing written description support for an OPA VCT also does not save claims 10 and 11.  Claim 1, from which claim 4 depends, is *expressly* directed to CTA.  As such, claim 4 is also necessarily directed to CTA operation.  *See* 35 U.S.C. § 112, ¶ 4 (reciting that a dependent claim incorporates all the limitations of the claim to which it refers).  Moreover, BW takes the word "source" in isolation, failing to account for its differing contexts in the claim language.  In claim 10, the word "source" is used in the context of regulated oil flow to create a phase

---

[24]  If the MOG is defined as the source, the only way to support the language "supplying hydraulic fluid from a source through said spool valve" consistent with the '738 patent (col. 9, lines 47-50) is to define it to mean that oil from the MOG is not regulated by the spool valve until after it enters the vane recesses or pistons cylinders.

change.                      **REDACTED**

　　　　　　　　　　　Conversely, to the extent the claim is

understandable, the "lubricating oil source" recited in claim 4 is placed in context of providing

*fill and make-up oil*, rather than in the context of a phase change. Ex. 1, '738 patent at 7:35-40

(describing conduit 230a). Claim terms must be construed in proper context.[25]

　　　　In sum, BW has no escape from the statements in the '738 patent specification stating

that oil flow from the MOG is not regulated.　Under any of its interpretations, claims 10 and 11

are invalid.

## III.    CONCLUSION

　　　　For each and all of the foregoing reasons, Hitachi respectfully submits that, if the Court

accepts BW's proposed claim construction, Hitachi's Motion should be granted.


　　　　　　　　　　　ASHBY & GEDDES

　　　　　　　　　　　*/s/ Tiffany Geyer Lydon*
　　　　　　　　　　　_____
　　　　　　　　　　　Steven J. Balick (I.D. #2114)
　　　　　　　　　　　John G. Day (I.D. #2403)
　　　　　　　　　　　Tiffany Geyer Lydon (I.D. #3950)
　　　　　　　　　　　500 Delaware Avenue, 8th Floor
　　　　　　　　　　　P.O. Box 1150
　　　　　　　　　　　Wilmington, DE 19899
　　　　　　　　　　　(302) 654-1888

　　　　　　　　　　　*Attorneys for Plaintiffs Hitachi Ltd. and*
　　　　　　　　　　　*Hitachi Automotive Products (USA), Inc.*

_____

[25]　*See, e.g., Pitney Bowes*, 182 F.3d at 1311, *cited in Novo Nordisk*, 1999 WL 1094213 at *7, n.20 and *Am. Seating Co. v. USSC Group, Inc.*, No. 1:01-CV-578, 2005 WL 1224603 (W.D. Mich. May 23, 2005) at *9; *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1243 (Fed. Cir. 2003).

*Of Counsel:*

Kenneth E. Krosin
Michael D. Kaminski
Pavan K. Agarwal
C. Edward Polk
Mary M. Calkins
Liane M. Peterson
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007–5109
(202) 672–5300

William J. Robinson
FOLEY & LARDNER LLP
2029 Century Park East, Suite 3500
Los Angeles, CA 90067
(310) 277-2223

Dated: December 19, 2006
176203.1