IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| HITACHI, LTD., and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., <br><br> Plaintiffs, <br><br> v. <br><br> BORGWARNER INC., and BORGWARNER MORSE TEC INC., <br><br> Defendants. | Civil Action No. 05-048-SLR <br><br> **REDACTED PUBLIC VERSION** |
| BORGWARNER INC., <br><br> Counterclaimant, <br><br> v. <br><br> HITACHI, LTD., and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., <br><br> Counterdefendants. | |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER
35 U.S.C. § 112, ¶ 1 BASED ON THE "REGULATING" RECITATION
OF CLAIM 10 UNDER PLAINTIFFS' CLAIM CONSTRUCTION**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiffs Hitachi Ltd. and
Hitachi Automotive Products (USA), Inc.*

*Of Counsel:*

Kenneth E. Krosin
Michael D. Kaminski
Pavan K. Agarwal
C. Edward Polk
Mary M. Calkins
Liane M. Peterson
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007–5109
(202) 672–5300

William J. Robinson
FOLEY & LARDNER LLP
2029 Century Park East, Suite 3500
Los Angeles, CA 90067
(310) 277-2223

Dated: December 19, 2006

## TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................................. 1

II.  WRITTEN DESCRIPTION AND ENABLEMENT ARE FULLY
     AMENABLE TO SUMMARY JUDGMENT WHERE, AS HERE, NO
     GENUINE ISSUES OF MATERIAL FACT EXIST ........................................... 2

III. BW'S FURTHER CLAIM CONSTRUCTION ARGUMENTS SHOULD
     BE ENTIRELY REJECTED ................................................................................ 4

IV.  NO GENUINE ISSUE OF MATERIAL FACT EXISTS THAT THE
     REGULATING PHRASE LACKS WRITTEN DESCRIPTION
     SUPPORT IN THE '738 PATENT SPECIFICATION, AS BW'S OWN
     EXPERT ADMITS ................................................................................................ 8

V.   NO GENUINE ISSUE OF MATERIAL FACT EXISTS THAT THE
     REGULATING PHRASE IS NOT ENABLED BY THE '738 PATENT
     SPECIFICATION, BECAUSE THE REGULATING PHRASE HAS ONE
     MEANING BUT THE SPECIFICATION TEACHES SOMETHING
     QUITE DIFFERENT ........................................................................................... 12

VI.  CONCLUSION .................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Advanced Med. Optics, Inc. v. Alcon Inc.*, 361 F. Supp. 2d 370
(D. Del. Mar. 18, 2005) ............................................................................................. 5

*Beckson Marine, Inc. v. NFM, Inc.*, 144 Fed. Appx. 862 (Fed. Cir. 2005) ...................... 6

*Bristol-Myers Squibb Co. v. Ben Venue Laboratories., Inc.*, 246 F.3d 1368
(Fed. Cir. 2001) .......................................................................................................... 5

*Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371 (Fed. Cir. 2004) ............................ 8

*Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367 (Fed. Cir. 2002) ................. 9

*Enzo Life Sci., Inc. v. Digene Corp.*, 305 F. Supp. 2d 400 (D. Del. 2004) ..................... 10

*Freeman v. Gerber Products Co.*, 357 F. Supp. 2d 1290 (D. Kan. 2005) .................. 6-7

*Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948 (Fed. Cir. 1993) .................................. 8

*Lockwood v. Am. Airlines*, 107 F.3d 1565 (Fed. Cir. 1997) .......................................... 10

*Monster Cable Prods., Inc. v. Quest Group*, No. C 04-0005,
2005 WL 1875466 (N.D. Cal. Aug. 8, 2005) ............................................................. 5

*Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*,
166 F.3d 1190 (Fed. Cir. 1999) ................................................................................ 13

*New Railhead Mfg., LLC v. Vermeer Mfg. Co.*, 298 F.3d 1290
(Fed. Cir. 2002) ........................................................................................................ 10

*O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576 (Fed. Cir. 1997) ............................................. 7

*Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524 (Fed. Cir. 1987) ...................... 10

*Tehrani v. Hamilton Medical, Inc.*, 331 F.3d 1355 (Fed. Cir. 2003) ............................... 5

*TurboCare Div. of Demag Delaval Turbomach. Corp. v. Gen. Elec. Co.*,
264 F.3d 1111 (Fed. Cir. 2001) ................................................................................ 11

*Union Oil Co. v. Atlantic Richfield Co.*, 208 F.3d 989 (Fed. Cir. 2000) ........................ 10

*Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991) .......................................... 9

## TABLE OF AUTHORITIES

                                                                                                           **Page(s)**

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

35 U.S.C. § 112 ............................................................................................... 4, 8-9

35 U.S.C. § 112, ¶ 1 ..................................................................................... 1-2, 9, 14

35 U.S.C. § 112, ¶ 6 ............................................................................................... 8

I.  **INTRODUCTION**

Realizing that the "means for transmitting rotary movement from said crankshaft to a housing" limitation in claim 10 lacks written description support as interpreted by Hitachi, BW focuses its opposition instead on claim construction and enablement issues. Indeed, BW devotes nearly all of its opposition to re-hashing its own claim construction arguments, and just three pages focused on enablement.

Despite BW's attempts to reargue claim construction, Hitachi's motion should be granted. The "means for transmitting" limitation that BW added during prosecution has a clear meaning. It requires regulating the flow of hydraulic fluid from a source to a chain/belt and outer sprocket, as proposed by Hitachi.[1]

Further, BW improperly conflates the written description and enablement requirements under 35 U.S.C. § 112, ¶ 1. Written description and enablement are different, each having distinct requirements that must be met. BW's opposition essentially ignores the written description requirement (tacitly conceding invalidity on this basis), and certainly raises no genuine issue of material fact. The reason is clear: BW's own expert admits that the '738 patent has no written description support for regulating the flow of fluid from a source to a chain/belt. BW argues that the specification need not disclose that which is already known in the art. That relates to enablement, not written description. The Federal Circuit has made quite clear that, to comply with the written description requirement, the specification must disclose all the claim limitations. What would have been well known or obvious to the person of ordinary skill in the art cannot be used to fill in gaps in the specification.

---

[1] Only the aspects of Hitachi's interpretation of the regulating recitation relevant to the present motion are addressed herein.

1

BW's arguments regarding enablement fall short as well. BW again rewrites the claim language and misstates Hitachi's interpretation in arguing that the person of ordinary skill in the art would understand how to make and use the method to supply fluid from the MOG to the chain/belt. The claim recites *regulating* the oil flow, and Hitachi's interpretation follows that language. As Hitachi's Opening Memorandum makes clear, the '738 patent specification gives no guidance to the person of ordinary skill in the art how to make and use the claimed method of creating a phase change between a camshaft and crankshaft that includes *regulating* the flow of fluid from a source to a chain/belt. BW's own expert recognizes that the specification teaches something completely different.

Notably, BW's arguments that Hitachi's proposed construction is nonsensical and contradicts the intrinsic record are undercut by its own arguments that the '738 patent fully meets Section 112, first paragraph under Hitachi's "nonsensical" interpretation.

## II. WRITTEN DESCRIPTION AND ENABLEMENT ARE FULLY AMENABLE TO SUMMARY JUDGMENT WHERE, AS HERE, NO GENUINE ISSUES OF MATERIAL FACT EXIST

BW argues that the written description and enablement requirements involve complicated factual analyses and are not amenable to summary judgment. Opp. at 5-6. Hitachi does not dispute that cases may exist involving complicated factual analyses. But this case is not one of them.

As to written description, no genuine issues of material fact exist as to what the '738 patent itself teaches, and, more importantly, what it does not. BW raises arguments concerning: (a) the correct meaning of the claim phrase, and (b) what one of ordinary skill in the art might be able to carry out based on the disclosure. But neither of these raises fact issues sufficient to prevent summary judgment of no written description.

Indeed, BW's own expert concedes: "Kuhn asserts that 'there is no disclosure of or even a need to also regulate flow from a source to a sprocket and chain . . . ' *I agree*; Hitachi's proposed construction is contrary to the specification and the preferred embodiment." Ex. 28, Ribbens Validity Report at ¶ 117 (emphasis added).[2] And to be sure, Dr. Ribbens concedes that "[i]n no embodiment of the '738 patent does oil flow from a source (taking either Hitachi's or BorgWarner's construction of 'source') to a chain or belt." *Id* at ¶ 118. In light of Dr. Ribbens' own concessions, the present written description analysis plainly involves no complicated facts and no genuine issue of material fact exists about the lack of disclosure in the specification.

BW's enablement arguments, including that enablement involves analyzing various factors and the '738 patent enables the skilled artisan to supply oil to a chain for lubrication, fail to raise an issue of fact. Here, no question exists that the '738 specification teaches one thing, *i.e.*, regulating the flow of fluid from one piston chamber/vane recess to another to create a phase change, while the claim recites something different, *i.e.*, regulating the flow of fluid from a source to a chain/belt in creating a phase change. No genuine issue of material fact exists that the specification does not enable the actual *claimed* method.

---

[2] Exs. 1-26 are found in Plaintiffs' Combined Appendix in Support of its Opening Summary Judgment Motions (D.I. 280). Exs. 27-48 are found in Plaintiffs' Combined Appendix in Support of its Summary Judgment Replies.

3

### III. BW'S FURTHER CLAIM CONSTRUCTION ARGUMENTS SHOULD BE ENTIRELY REJECTED

As noted, BW spends most of its brief rehashing its claim construction arguments.[3] BW argues that the preamble is not a claim limitation. Opp. at 8-9. That is wrong.[4] BW's revisionist assessment of the prosecution history with its new details should also be rejected. BW argues that application claim 11 (patent claim 10) was amended only to be directed to a "unified invention," which it argues means directed to internal combustion engine art. Opp. at 9 n.2. But that claim, as originally drafted, already recited "[i]n an internal combustion engine having a variable camshaft timing system." Ex. 35, '738 App. at 23. BW's extensive amendments, including to the preamble, plainly went well beyond just specifying an internal combustion engine having a variable camshaft timing system. They were made to address prior art. BW's proffered rationale for the preamble amendments makes no sense.[5]

---

[3] Amazingly, BW shifts by 180 degrees regarding whether validity considerations impact claim construction. In its Responsive Claim Construction brief (D.I. 291), BW contends that the Court should reject Hitachi's Section 112 arguments in the claim construction process, because "[a]lleged enablement or written description deficiencies are a separate inquiry from claim construction and are not relevant here" (at 10). Now, in opposing the present motion, BW takes the opposite view, arguing that the Federal Circuit has dictated that claims should be construed to uphold their validity. Opp. at 1, 4-5.

[4] Contrary to BW's assertion on page 8, Hitachi entirely disputes BW's position that the preamble is just a non-limiting statement of intended use. See Hitachi's Opening Claim Construction Brief (D.I. 264) at 20-21 and Responsive Claim Construction Brief (D.I. 288) at 18-19.

[5] Moreover, even amending the claim to be a "unified invention" with the other claims requires the preamble to be a claim limitation. Otherwise, the claim is not directed to a unified invention, entirely negating what the PTO Examiner required and BW accepted during prosecution for purposes of getting the claims allowed. Moreover, the fact is that BW substantively narrowed the claim, including the preamble, and never sought the broader claim coverage. The narrowing amendment was further made to address prior art. Hitachi's Reply for Summary Judgment of Non-infringement addresses BW's prosecution amendments and associated rationale in more detail.

In addition, BW's argument that amending the preamble does not per se create a claim limitation must fail. *See* Opp. at 9. Not only are BW's case citations inapposite,[6] more important, BW's isolationist treatment of the prosecution amendment fails to account for the numerous additional factors that, collectively with the prosecution amendment, demonstrate that the preamble is a claim limitation, including: (a) the preamble is closely intertwined with the body so that the body does not set out the whole method; (b) the preamble recites structure not found in the body, including "means for transmitting rotary movement from said crankshaft to a housing" that sets forth relationship between the crankshaft and housing; and (c) BW's arguments during prosecution are tied to terminology found in the preamble.[7]

BW further argues that the intrinsic record supports its claim interpretation and not Hitachi's. Opp. at 10-11. BW misstates Hitachi's interpretation, incorrectly characterizing Hitachi's interpretation of the regulating recitation as simply being splashing oil on the chain/belt and sprocket. Opp. at 10. Hitachi's interpretation tracks the plain claim words

---

[6] *Tehrani v. Hamilton Medical, Inc.*, 331 F.3d 1355 (Fed. Cir. 2003) involved a preamble that was already understood to be a limitation, and the Court was only addressing whether a certain amendment mandated a particular meaning. *See id.* at 1362-63. In *Bristol-Myers Squibb Co. v. Ben Venue Laboratories., Inc.*, 246 F.3d 1368 (Fed. Cir. 2001), the preamble language had no suggestion as being a limitation and the amendment was made post-allowance. *Id.* at 1374-75. Also, the Court found significant that the patentee argued that the preamble was a limitation for validity, but not infringement. *See id.* at 1375. By contrast, here, BW specifically amended the preamble for purposes of gaining allowance, and nothing like the contrary positions taken in *Bristol-Myers* exists here.

[7] *See* Hitachi's Opening Claim Construction Brief at 20-21; Hitachi's Responsive Claim Construction Brief at 18-19; *Advanced Med. Optics, Inc. v. Alcon Inc.*, 361 F. Supp. 2d 370, 378 (D. Del. Mar. 18, 2005) (finding that method claim with antecedent basis in preamble made preamble a limitation and structure for carrying out step was clarified in the preamble); *Monster Cable Prods., Inc. v. Quest Group*, No. C 04-0005, 2005 WL 1875466 at *9-10 (N.D. Cal. Aug. 8, 2005) (finding the preamble to be a limitation because it provided antecedent basis, provided a relationship between components recited in body, and the prosecution history showed concern for amended preamble language).

5

requiring *regulating* the flow of fluid from a source to a chain/belt and outer sprocket, not an unregulated splashing of oil.

BW also merges the two differently worded "means for transmitting" limitations of claim 10. In particular, BW argues that the housing must be included as corresponding structure because the '738 patent repeatedly describes the housing as playing a role in transmitting rotary movement *to the camshaft*. Opp. at 11. Transmitting rotary movement *to the camshaft* is part of the means plus function limitation found in the supplying step. That means plus function limitation is different from the one in the regulating recitation in the preamble of claim 10 at issue in this motion. BW's attempt to obfuscate and merge these two means limitations should be rejected.

BW even argues that the housing must be part of the corresponding structure because otherwise the housing will not be rotated. Opp. at 11. That is entirely wrong. The corresponding structure is that disclosed structure in the '738 specification that transmits the rotary movement *to* the housing. The housing does not transmit rotary movement to itself, so it is not corresponding structure for the means limitation. That does not mean the housing cannot be rotated.

Moreover, BW's reliance on two cases as examples where a court included the structure being acted upon as corresponding structure do not hold up to scrutiny.[8] Instead,

---

[8] In *Beckson Marine, Inc. v. NFM, Inc.*, 144 Fed. Appx. 862 (Fed. Cir. 2005) (unpublished), the District Court's reference to a windowpane in identifying the corresponding structure was for convenience in specifying the actual structure carrying out the function. *Id.* at 865-66. The District Court did not state that the windowpane carried out the function. *See id.* Nor was there any specific dispute over whether the windowpane was corresponding structure, so the Federal Circuit had no reason to focus on it. *See id. Freeman v. Gerber Products Co.*, 357 F. Supp. 2d 1290 (D. Kan. 2005) is the same. The means limitation recited "attachable means for selectively maintaining said closure in covering relation with said container." *Id.* at 1295. For the specific means limitation at issue in that case, the Court found the corresponding structure

6

precedent Hitachi already cited in its Opening Claim Construction brief on this issue, *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576 (Fed. Cir. 1997), mandates that the housing is not part of the corresponding structure. In *O.I.*, the means limitation at issue recited "'means for passing' an analyte slug through a passage." *Id.* at 1580. The Federal Circuit squarely rejected the notion that the "passage" is considered part of the means plus function clause. *Id.* at 1581. The Court stated that the passage through which the slug travels is not the means that causes the passing. *Id.* According to the Court, the passage was "the place where the function occurs, not the structure that accomplishes it." *Id.* Precisely the same situation exists in claim 10 of the '738 patent. The housing is not part of the means that transmits rotary movement from the crankshaft, but rather is the object to which rotary movement is transmitted.

BW's further assertion based on arguing that Hitachi equates sprocket with housing (Opp. at 12) also lacks merit. As BW fully admits, the outer sprocket and housing are either integrated or bolted to one another. Opp. at 12 n. 4. Even if integrated, the claimed housing is still a separate component from the outer sprocket. For example, the '738 specification states that the vane structure is attached to the camshaft "by bolts which pass through the vane." Ex. 1, '738 patent at 6:25-30. Certainly, the vane and camshaft are still separate components, although bolted together. Indeed, BW itself lists the camshaft sprocket and housing as separate components in its claim construction.

Nor can BW deny the basic tenet that courts cannot rewrite claims to save them. Opp. at 13. Here, the interpretation of the means-plus-function limitation is statutorily driven under

---

to be a "friction fit" between the lid and the beverage container. *Id.* at 1301. The overall lid and beverage container were reference points. Indeed, contrary to BW's attempt to include every part of the housing as corresponding structure no matter how removed from the function (*e.g.*, the vanes and recesses), the Court in *Freeman* did not conclude that the entirety of the beverage container and the closure are part of the corresponding structure.

7

35 U.S.C. § 112, ¶ 6. Courts cannot interpret such terms in a manner contradicting the statute, as BW seeks to do here.[9] The corresponding structure is that which actually carries out the function, and further structure cannot be added at BW's convenience. BW throws out a red herring in arguing that Hitachi must show an example where a Court found a claim invalid under § 112 because of preamble language. Opp. at 14. A preamble limitation is susceptible to § 112 like every other claim limitation. Location of claim limitations make no difference.

Moreover, BW's pleas for avoiding an unjust result ignores the critical notice function of claims, and that competitors are fully entitled to rely on claim terms as the patentee himself drafted them. *See Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 951 (Fed. Cir. 1993). Claims are construed "as written, not as the patentees wish they had written it." *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004). Indeed, BW has no basis to argue that Hitachi's plain reading of the claim is nonsensical.

**REDACTED**

BW plainly seeks to have the Court rewrite the claim language, which is not permitted.

### IV. NO GENUINE ISSUE OF MATERIAL FACT EXISTS THAT THE REGULATING PHRASE LACKS WRITTEN DESCRIPTION SUPPORT IN THE '738 PATENT SPECIFICATION, AS BW'S OWN EXPERT ADMITS

BW does not dispute Hitachi's summary of the '738 patent specification in its Opening Memorandum (D.I. 279) regarding regulating the flow of fluid from one piston/vane chamber

---

[9] Because the plain claim words hurt its position, BW avoids the words and focuses on the specification and prosecution history. Yet, in numerous other instances, BW argues that the claim words control, and should not be limited or based on what the specification might disclose. *See generally* Hitachi's Responsive Claim Construction Brief at 1. BW's selective approach to claim construction to fit its different infringement and validity needs should be rejected.

to another, and the separate aspect of transmitting rotary movement from the crankshaft to the housing.

As part of its three total pages devoted to the Section 112 issues, BW improperly merges the written description and enablement requirements. Opp. at 16. They are separate and distinct requirements under Section 112, first paragraph. *See* Hitachi's Opening Memorandum at 9; *Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1378-79 (Fed. Cir. 2002) (stressing that written description and enablement are distinct requirements and each are necessary). The "purpose of the 'written description' requirement is broader than to merely explain how to 'make and use'; the applicant must also convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession *of the invention.* The invention is, for purposes of the 'written description' inquiry, *whatever is now claimed.*" *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991).

BW's Opposition never squarely argues that written description support exists for the regulating limitation under Hitachi's interpretation, thereby tacitly admitting that no written description support exists. Further, BW's expert candidly admitted that: "Kuhn asserts that 'there is no disclosure of or even a need to also regulate flow from a source to a sprocket and chain . . . ' *I agree*; Hitachi's proposed construction is contrary to the specification and the preferred embodiment." Ex. 28, Ribbens' Validity Report at ¶ 117 (emphasis added). He further conceded that "[i]n no embodiment of the '738 patent does oil flow from a source (taking either Hitachi's or BorgWarner's construction of 'source') to a chain or belt." *Id.* at ¶ 118.

BW nowhere cites any part of the '738 specification that actually discloses regulating the flow of fluid from a source to a chain/belt. BW states that the specification discloses a MOG, and also discloses a chain. Opp. at 17. BW then argues that "one of skill in the art

9

would know that the chains need to be lubricated" and "accomplishing the flow of oil from the source to the chain would be well within the knowledge and purview of one of ordinary skill in the art reading the '738 patent." Opp. at 17-18. Nowhere does BW contend that *the specification discloses* the claimed *regulated oil flow* to the person of ordinary skill in the art. BW's arguments are directed to enablement, not written description.

This failure is fatal. Written description requires that the '738 patent specification actually describe the invention to the person of ordinary skill in the art: "an applicant must describe the invention, with *all its claimed limitations*, and not only what makes it obvious." *Enzo Life Sci., Inc. v. Digene Corp.*, 305 F. Supp. 2d 400, 403 (D. Del. 2004) (emphasis added) (citing *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1572 (Fed. Cir. 1997)). Thus, "the disclosure must show [the inventor] had invented each feature that is included as a claim limitation. The adequacy of the written description (i.e., the disclosure) is measured from the face of the application. . . ." *New Railhead Mfg., LLC v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1295 (Fed. Cir. 2002). The specification disclosure is paramount: "While the meaning of terms, phrases, or diagrams in a disclosure is to be explained or interpreted from the vantage point of one skilled in the art, *all the limitations must appear in the specification*." *Lockwood*, 107 F.3d at 1572 (emphasis added).[10] BW simply cannot rely on the knowledge of the person of ordinary skill in the art to fill in gaps in the specification.

---

[10] BW suggests that the specification, even for the written description requirement, need not disclose all the claim limitations if they are well known in the art. *See* Opp. at 6, citing *Union Oil Co. v. Atlantic Richfield Co.*, 208 F.3d 989, 997 (Fed. Cir. 2000) and *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1534 (Fed. Cir. 1987). Neither case helps BW. In *Union Oil*, there was support in the specification for the asserted claims, which the Court specifically outlined for exemplary claims. *Union Oil*, 208 F.3d at 998-99. By contrast, the '738 patent specification does not teach regulating the flow of hydraulic fluid from a source to a chain/belt. *Spectra Physics* only relates to enablement, not written description. *See Spectra Physics*, 827 F.2d at 1533-34. It has no impact on the present written description issue.

10

Here, the regulating recitation, most of which was added during prosecution, has no written description support. Summary judgment of no written description should be granted. *See TurboCare Div. of Demag Delaval Turbomach. Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1119-20 (Fed. Cir. 2001) (affirming grant of summary judgment of no written description for claim added during prosecution, because the "original disclosure is completely lacking in any description of an embodiment in which the spring is located between the casing shoulders and the inner surface of the outer ring portion of the ring segment" and rejecting patentee's expert statement that this location was the "only viable location" for mounting the spring).

Even if BW could properly rely on the knowledge of the skilled artisan when the specification fails to actually disclose the claim limitation, BW's expert (like Hitachi's expert, Mr. Kuhn) states that the person of ordinary skill in the art would recognize that chain-based systems are lubricated with oil splashed from the crankcase. Ex. 28, Ribbens Validity Report at ¶¶ 117-18 But, Hitachi's interpretation (following the claim language) requires a *regulated* oil flow from the source to a chain/belt. The splashing operation typically comes from an unregulated tap in the automobile engine. Ex. 18, Kuhn II Declaration at ¶ 16. It is not a regulated oil flow that creates a phase change between the camshaft and crankshaft. *Id.* BW's expert does not dispute this point. *See* Ex. 28, Ribbens Validity Report at ¶ 118 (stating that oil is supplied to chain by being splashed from the crankcase onto the chain); ¶ 119 (recognizing that the oil from a source to a chain/belt does not effectuate the phase change). BW also argues that "one of skill in the art would recognize that this lubricating oil would need to be delivered or regulated in an amount sufficient to facilitate movement of the chain, without being so

excessive as to impair normal chain movement. (*See id*)." Opp. at 18. This assertion by BW's counsel finds no support in the record.[11]

## V. NO GENUINE ISSUE OF MATERIAL FACT EXISTS THAT THE REGULATING PHRASE IS NOT ENABLED BY THE '738 PATENT SPECIFICATION, BECAUSE THE REGULATING PHRASE HAS ONE MEANING BUT THE SPECIFICATION TEACHES SOMETHING QUITE DIFFERENT

BW argues that regulating fluid flow from a source to a chain would be well within the knowledge of the skilled artisan and that one of skill in the art would have been able to practice the invention under Hitachi's interpretation without undue experimentation. Opp. at 18. BW's argument misses the mark.

First, BW's enablement argument directly undercuts its position that Hitachi's claim construction is nonsensical and flatly contradicts the intrinsic record, because BW itself argues that the '738 patent enables the skilled artisan to carry out the limitation under Hitachi's claim construction. BW's contradictory arguments demonstrates the inherent weakness in its position.

Second, BW's arguments fail to show enablement for the *claimed* method. The claimed method requires a *regulated oil flow* from a source[12] to a chain/belt and outer sprocket.

---

[11] The "*id.*" citation is to Ribbens Validity Report at ¶ 118. But, Dr. Ribbens never makes this statement. Paragraph 118 of Dr. Ribbens' report states as follows: "Reading the above claim recitation in a manner urged by Hitachi is, in fact, inconsistent with every description contained in the '738 patent specification and prosecution history. In no embodiment of the '738 patent does oil flow from a source (taking either Hitachi's or BorgWarner's construction of 'source') to a chain or belt. One of skill in the automotive art would understand that a chain that is used with a camshaft and crankshaft must be lubricated, and that such lubrication typically occurs by the splashing of oil from the crankcase onto the chain. One of skill in the art would understand that all chain driven camshafts typically have oil supplied to the chain in this manner, including those systems described in the '738 patent." Nowhere does Dr. Ribbens state that the oil flow to the chain is a *regulated* flow of a particular amount.

[12] It does not matter which party's interpretation of source is used for the present discussion.

"Regulating" does not mean merely splashing oil to the chain. It means controlling the oil flow (as BW's own claim construction fully recognizes) from the source to a chain/belt. The problem, as explained in Hitachi's Opening Memorandum, is that the '738 patent does not teach regulating oil flow to a chain/belt. Rather, the '738 patent teaches regulating the flow of fluid between opposed pistons or vane chambers. Ex. 18, Kuhn II Declaration at ¶¶ 11, 14. The flow from an engine galley to the chain is an unregulated flow that does not create a phase change. *Id.* at ¶ 16.

Dr. Ribbens entirely recognizes this point, stating that "[i]f the oil flowed from the source to the chain or belt, instead of to the vane housing, camshaft phasing could not be effectuated. The vanes would not be moved and the claimed phasing of the camshaft could not be accomplished." Ex. 28, Ribbens Validity Report at ¶ 119. Thus, Dr. Ribbens essentially admits that Claim 10 is not enabled under Hitachi's interpretation that follows the claim language. Claim 10 is therefore invalid. *See Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1197-98 (Fed. Cir. 1999) (affirming grant of summary judgment of no enablement where specification did not teach how to "perform the actual selection step" of the claimed method).

Nor does BW argue that the '738 patent enables the person of ordinary skill in the art to carry out the regulating limitation (*i.e.*, regulating the flow of fluid from a source to chain/belt) in order to create a phase change between a camshaft and crankshaft, the entire focus of the claimed method. BW's attempt to isolate the regulating recitation from the context of the overall claimed method, and then further misstate it, should be rejected.

## VI. CONCLUSION

BW has not raised any genuine issues of material fact. Claims 10 and 11, when construed in the only way reasonable, are invalid because they are not enabled and lack written description support under Section 112, first paragraph. Accordingly, Hitachi requests entry of summary judgment that these claims are invalid.

ASHBY & GEDDES

/s/ Tiffany Geyer Lydon

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Of Counsel:*

Kenneth E. Krosin
Michael D. Kaminski
Pavan K. Agarwal
C. Edward Polk
Mary M. Calkins
Liane M. Peterson
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5109
(202) 672-5300

William J. Robinson
FOLEY & LARDNER LLP
2029 Century Park East, Suite 3500
Los Angeles, CA 90067
(310) 277-2223

*Attorneys for Plaintiffs Hitachi Ltd. and Hitachi Automotive Products (USA), Inc.*

Dated: December 19, 2006
176209.1

14