## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HITACHI, LTD. and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 05-048-SLR |
| BORGWARNER INC. and BORGWARNER MORSE TEC INC., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) **PUBLIC VERSION** |
| | ) |
| BORGWARNER INC., | ) |
| | ) |
| Counterclaimant, | ) |
| | ) |
| v. | ) |
| | ) |
| HITACHI, LTD. and HITACHI AUTOMOTIVE PRODUCTS (USA), INC., | ) |
| | ) |
| Counterdefendants. | ) |

## BORGWARNER'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT THAT THE BUTTERFIELD PAPER SUBMITTED TO IMECHE DOES NOT CONSTITUTE PRIOR ART UNDER 35 U.S.C. §§ 102(a) AND/OR 102(b)

*OF COUNSEL:*

SIDLEY AUSTIN LLP
Hugh A. Abrams
Thomas D. Rein
Lisa Schneider
Marc A. Cavan
Lara V. Hirshfeld
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Date: December 19, 2006
Redacted Version: December 28, 2006

Richard K. Herrmann (I.D. #405)
Mary B. Matterer (I.D. #2696)
Lewis H. Lazarus (I.D. #2374)
MORRIS JAMES LLP
500 Delaware Avenue
Suite 1500
Wilmington, DE 19801-1494
(302) 888-6800
mmatterer@morrisjames.com

*Attorneys for BorgWarner Inc. and BorgWarner Morse TEC Inc.*

## TABLE OF CONTENTS

**Page**

I.  The Butterfield Paper Did Not Become Prior Art Before The Critical Date. ........................2

    A.  Hitachi's Arguments Are Premised on the Testimony of Witnesses with No Personal Knowledge of the Operative Events. .....................................................3

    B.  There Is No Evidence That the Butterfield Paper Was Publicly Accessible on September 24, 1991. ...............................................................................................7

    C.  There Is No Evidence That the Butterfield Paper Was Publicly Accessible on October 24, 1991. .........................................................................................11

    D.  There Is No Evidence That the Butterfield Paper Was Publicly Accessible on September 17, 1992. .........................................................................................14

    E.  Hitachi's "Publicity" Argument Is Misplaced. .......................................................16

    F.  Whether Melchior Obtained a Copy Is Irrelevant. .................................................18

II.  BorgWarner's Motion is Appropriate Under Rule 56. .......................................................19

III.  Conclusion. ......................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

### CASES

*A.B. Dick Co. v. Burroughs Corp.*,
  798 F.2d 1392 (Fed. Cir. 1986)......................................................................18

*Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*,
  No. 95-218-SLR, 1998 WL. 151411 (D. Del. Mar. 13, 1998),
  *aff'd*, 228 F.3d 1338 (Fed. Cir. 2000) ..............................................................8

*AMP, Inc. v. Fujitsu Microelecs., Inc.*,
  853 F. Supp. 808 (M.D. Pa. 1994) ...................................................................20

*America Stock Ex., LLC v. Mopex, Inc.*,
  250 F. Supp. 2d 323 (S.D.N.Y. 2003)..................................................11, 12, 16

*Associated Hardware Supply Co. v. Big Wheel Distributing Co.*,
  355 F.2d 114 (3d Cir. 1965).............................................................................19

*Bergstrom v. Sears, Roebuck & Co.*,
  457 F. Supp. 213 (D. Minn. 1978), *aff'd*, 599 F.2d 62 (Fed. Cir. 1979)...........9

*Brooks v. America Centennial Insurance Co.*,
  327 F.3d 260 (3d Cir. 2003).............................................................................5

*Carella v. Starlight Archery & Pro Line Co.*,
  804 F.2d 135 (Fed. Cir. 1986)..........................................................................1

*Connelly v. Wolf, Block, Schorr & Solis-Cohen*,
  463 F. Supp. 914 (E.D. Pa. 1978) ....................................................................19

*DePuy Inc. v. Zimmer Holdings, Inc.*,
  343 F. Supp. 2d 675 (N.D. Ill. 2004) ...............................................................5

*Diamond Triumph Automobile Glass, Inc. v. Safelight Glass Corp.*,
  441 F. Supp. 2d 695 (M.D. Pa. 2006) ..............................................................6

*Gucci Am., Inc. v. Ashley Reed Trading, Inc.*,
  No. 00 CV 6041(RCC), 2003 WL. 22327162 (S.D. N.Y. Oct. 10, 2003)..........6

*In re Hall*,
  781 F.2d 897 (Fed. Cir. 1986)..........................................................................8

*Hilgraeve, Inc. v. Symantec Corp.*,
  271 F. Supp. 2d 964 (S.D. Mich. 2003) ...........................................................14

*Izumi Products Co. v. Koninklijke Philips Electrics N.V.*,
  315 F. Supp. 2d 589 (D. Del. 2004), *aff'd*, 140 Fed. Appx. 236,
  245 (Fed. Cir. 2005) ....................................................................................................19

*In re Klopfenstein*,
  380 F.3d 1345 (Fed. Cir. 2004).................................................................................10

*Massachusetts Institute of Tech. v. AB Fortia*,
  774 F.2d 1104 (Fed. Cir. 1985)...................................................................................9

*Neutrino Development Corp. v. Sonosite, Inc.*,
  *No. Civ. A. H-01-2484*, 2005 WL. 2121558 (S.D. Tex. Aug. 31, 2005) ............................19

*Nevada Power Co. v. Monsanto Co.*,
  891 F. Supp. 1406 (D. Nev. 1995) .................................................................................5

*Norian Corp. v. Stryker Corp.*,
  363 F.3d 1321 (Fed. Cir. 2004)....................................................................................8

*Regents of University of California v. Howmedica, Inc.*,
  530 F. Supp. 846 (D.N.J. 1981), *aff'd*, 676 F.2d 687 (3d Cir. 1982) ...............................10

*Scimed Life System, Inc. v. Johnson & Johnson*,
  *No. Civ. A. 99-904-SLR*, 2001 WL. 935623 (D. Del. August 15, 2001) ............................19

*South Corp. v. United States* ,
  690 F.2d 1368 (Fed. Cir. 1982).....................................................................................9

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*,
  F. Supp. 2d --, No. 04-1199 SLR, 2006 WL 2949142 at, *4
  (D. Del. Oct. 17, 2006) ........................................................................................12, 16

*In re Tenney*,
  254 F.2d 619 (CCPA 1958) ..........................................................................................9

*TypeRight Keyboard Corp. v. Microsoft Corp.*,
  374 F.3d 1151 (Fed. Cir. 2004).....................................................................................8

*United States v. J.M. Taylor*,
  166 F.R.D. 356 (M.D.N C.), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996)................................6

*Waters v. Genesis Health Ventures, Inc.*,
  400 F. Supp. 2d 814 (E.D. Pa. 2005) .............................................................................5

*In re Wyer*,
  655 F.2d 221, 227 (CCPA 1981) ............................................................................16, 17

## STATUTES AND RULES

35 U.S.C. § 102 ................................................................................................................2

35 U.S.C. §§ 102(a) ............................................................................................... passim

35 U.S.C. § 102(b) ................................................................................................. passim

Fed. R. Civ. P. 30(b)(6) .....................................................................................................5, 6

Fed. R. Civ. P. 56 ..........................................................................................................18, 19

BorgWarner Inc. and BorgWarner Morse Tec Inc. (collectively, "BorgWarner") hereby submit this reply in support of their motion for summary judgment that a paper authored by Mr. Butterfield titled "A Unique Approach to Design of a VCT Mechanism" ("Butterfield paper"), that is currently housed in the library of the Institute of Mechanical Engineers ("IMechE"), does not constitute prior art to U.S. Patent No. 5,497,738 ("the '738 patent") under 35 U.S.C. §§ 102(a) or 102(b).

In a brief rife with blatant mischaracterizations of the record, Hitachi, Ltd. and Hitachi Automotive Products (USA), Inc. (collectively, "Hitachi") also misstate the pertinent question: the question is not *whether* the Butterfield paper *ever* became a printed publication, but rather the question is *when* the Butterfield paper became a printed publication. Ignoring the operative question, Hitachi focuses in large part on the 2006 shelving and cataloging processes at IMechE and the fact that, long after the critical date, a third party obtained access to the paper. Hitachi's focus on irrelevant facts and its reluctance to focus on the pertinent question are understandable. The IMechE witnesses Hitachi deposed have no personal knowledge regarding the question of *when* the Butterfield paper was actually shelved and/or cataloged. Despite a trip to London and a visit to the IMechE library, Hitachi similarly has uncovered not a single contemporaneous document evidencing a shelving and cataloging date for the Butterfield paper.

Hitachi has the burden of demonstrating that the Butterfield paper is prior art by clear and convincing evidence. *Carella v. Starlight Archery & Pro Line Co.*, 804 F.2d 135, 138-39 (Fed. Cir. 1986). Absent compelling testimony that establishes the status of the Butterfield paper as prior art, Hitachi should not be allowed to argue to the jury that the Butterfield paper is prior art. On these facts, Hitachi cannot meet that burden and summary judgment should be granted in BorgWarner's favor.

## I.    THE BUTTERFIELD PAPER DID NOT BECOME PRIOR ART BEFORE THE CRITICAL DATE.

Hitachi goes to great pains to show that the Butterfield article is currently publicly accessible, going so far as to include a photograph in its briefing showing the current shelving arrangement and reproducing, in part, a computer screen shot from IMechE's current database that was printed out in 2006 shortly before the depositions in this case. But there is no dispute that, as of today, the Butterfield paper constitutes a printed publication. BorgWarner conceded that fact in its opening brief. *See* BorgWarner Opening Br. at 3.

Whether the Butterfield paper currently qualifies as a printed publication has no relevance to the instant motion or this case. What *does* matter is *when* the Butterfield paper became a printed publication. It is black-letter law that, to qualify as prior art under 35 U.S.C. § 102, the Butterfield paper must constitute a printed publication either before the date of invention of the '738 patent (*see* 35 U.S.C. § 102(a)) or more than one year before the application resulting in the '738 patent was filed (*see* 35 U.S.C. § 102(b)). Thus, to qualify as a printed publication under 35 U.S.C. § 102(b), the Butterfield paper must have been publicly accessible no later than May 3, 1992 (one year prior to the filing date of the application that directly resulted in the '738 patent). (*See* Schneider Decl., Ex. 2 at cover page).[1] Unless Hitachi proves that the Butterfield paper was publicly accessible prior to May 3, 1993 (the latest possible date of

---

[1]    References to "Schneider Decl., Ex. ___" are references to the Declaration of Lisa A. Schneider in Support of BorgWarner's Motion for Summary Judgment That the Butterfield Paper Submitted to IMechE Does Not Constitute Prior Art Under 35 U.S.C. §§ 102(a) Or 102(b) submitted with BorgWarner's Opening Brief. References to "Supp. Schneider Decl., Ex. ___" are references to the Supplemental Declaration of Lisa A. Schneider in Support of BorgWarner's Motion for Summary Judgment That the Butterfield Paper Submitted to IMechE Does Not Constitute Prior Art Under 35 U.S.C. §§ 102(a) Or 102(b) submitted concurrently with this brief. References to "Hitachi Ex. ___" are references to the exhibits submitted in support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment That the Butterfield Article Is Not Prior Art Under 35 U.S.C. §§ 102(a) Or (b).

invention based on the filing date), the Butterfield paper also cannot qualify as *prima facie* prior art under 35 U.S.C. § 102(a).

Even Hitachi is not confident of the date on which the Butterfield paper became publicly accessible.  Hitachi alleges in its reply brief that the date is either September 24, 1991 *or* "shortly after" October 24, 1991 *or* September 17, 1992.  (*See* Hitachi Opp. Br. at 2).  As discussed below, Hitachi's arguments are entirely unsupported by the record and no reasonable jury could conclude that the Butterfield paper was publicly accessible on any of these dates.

A.    **Hitachi's Arguments Are Premised on the Testimony of Witnesses with No Personal Knowledge of the Operative Events.**

Hitachi repeatedly relies on the testimony of Ms. Rogers and Mr. Claxton for evidence of what occurred in the early 1990s.  While these witnesses may be competent to testify about current IMechE procedure, neither witness had any personal knowledge of the events that occurred in the early 1990s or any personal knowledge regarding when the Butterfield paper was shelved and/or cataloged.  That fact alone precludes reliance upon their testimony.

For example, Hitachi does not, and cannot, dispute that Ms. Rogers was not employed by IMechE until 2000 or that she was still a student in the early 1990s.  (*See* Schneider Dec., Ex. 4 at 9, 84).  Instead, Hitachi argues that "Ms. Rogers spoke with employees currently working on the IMechE Events staff who would have general, historical knowledge of the practices and procedures regarding seminars and article distribution, and library employees who could verify the practices and procedures regarding cataloging of articles presented at seminars." (Hitachi Opp. Br. at 31 n.16).  Not surprisingly, Hitachi provides no cite for this statement, because the testimony does not support the statement.  The entirety of Ms. Rogers' testimony regarding her interactions with the Events staff is as follows:

Q.    OK.  Is there kind of a minimum number of people that are required to have a seminar go forward?

A.    It's approximately -- probably the minimum would be round about 15 people.

Q.    And how do you know that?

A.    Because I have spoken to colleagues in the Events Department and they know that that's sort of their kind of -- that's about how many people they need to make an event viable.

(Schneider Decl., Ex. 4 at 52).  Thus, Ms. Rogers never stated whom in the Events department she spoke to, whether that person was employed in 1991-1992 or otherwise had knowledge of the events of 1991-1992, whether she spoke to those individual(s) regarding anything other than the minimum number of people required to hold a seminar, whether that same minimum applied in 1991-1992, or whether the individuals she spoke to "would have general, historical knowledge of the practices and procedures regarding seminars and article distribution."  (Hitachi Opp. Br. at 31 n.16).  Likewise, Ms. Rogers never testified that she spoke to "library employees who could verify the practices and procedures regarding cataloging of articles presented at seminars."  (*Id.*). Hitachi is simply pulling this alleged testimony out of thin air.

Mr. Claxton similarly has no personal knowledge regarding the events which may or may not have occurred in 1991-1992.  At that time, his responsibilities focused on the book side of the library and did not encompass the cataloging of seminar papers.  (*See* Schneider Decl., Ex. 5 at 10).  Once again, however, Hitachi makes statements suggesting a greater familiarity with the facts than is borne out by the testimony.  Specifically, Hitachi argues that Mr. Claxton "testified that he worked with the persons" who were "responsible" for inputting the Butterfield paper into the CAIRS database.  (*See* Hitachi Opp. Br. at 31).  However, a review of the cited testimony reveals that Mr. Claxton was simply shown an advertisement for the library

that contained pictures of some IMechE employees and testified that he worked with them "to some degree." (*See* Hitachi Ex. 14; Schneider Decl., Ex. 5 at 26). Mr. Claxton did not testify which, if any, of these individuals was responsible for inputting the Butterfield paper and, in fact, testified that it was "impossible to say who exactly" entered the information into the system and that he "couldn't tell you who input this particular thing." (Schneider Decl., Ex. 5 at 39).

In short, neither Ms. Rogers nor Mr. Claxton is qualified to provide any testimony regarding the events of the 1990s.[2] Their testimony is insufficient to survive summary judgment. *See, e.g., Brooks v. Am. Centennial Ins. Co.*, 327 F.3d 260, 268 (3d Cir. 2003) (requiring *in limine* hearing on remand to determine admissibility of testimony where witness was not employed at relevant time); *Waters v. Genesis Health Ventures, Inc.*, 400 F. Supp. 2d 814, 821-22 (E.D. Pa. 2005) (excluding testimony where witness was not employed at relevant time).

Effectively admitting the inadequacies in the knowledge base of Ms. Rogers and Mr. Claxton, Hitachi tries to hang its hat on the fact that these witnesses were testifying as Rule 30(b)(6) witnesses. However, that fact does not excuse the lack of personal knowledge. A Rule 30(b)(6) witness must have obtained knowledge from someone with personal knowledge or from corporate records. *DePuy Inc. v. Zimmer Holdings, Inc.*, 343 F. Supp. 2d 675, 682 (N.D. Ill. 2004) (noting that Rule 30(b)(6) allows a witness to testify about his or her personal knowledge and knowledge of the company, but dismissing testimony that was not gained from examining the company's employees or records); *Nevada Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1415 (D. Nev. 1995) ("[S]peculative testimony about how another might have acted without

---

[2] Hitachi also relies on the fact that Ms. Rogers produced a handful of documents, allegedly from what Hitachi terms a "past procedures" folder. However, Ms. Rogers provided no testimony as to the custodian of this file or the methodology by which this file was maintained and/or updated. She did not testify regarding whether she produced the entire file or only selective pieces from the file. Nor did she identify the author of these documents.

personal knowledge is not admissible as evidence. ... This rule controls whether Ryan testified individually or, as in this case, on behalf of the corporation through a Rule 30(b)(6) deposition.").

The cases cited by Hitachi are not to the contrary. In *Diamond Triumph Auto Glass, Inc. v. Safelight Glass Corp.*, 441 F. Supp. 2d 695, 722 n.17 (M.D. Pa. 2006), Diamond moved to preclude Safelight from providing evidence on damages because the Rule 30(b)(6) witness was unable to answer questions regarding damages. The Court declined to preclude damages evidence and noted in passing only that a Rule 30(b)(6) witness testifies on behalf of the company. *See id.* The Court in no way altered the general rule that the testimony must be based on the knowledge of corporate employees or corporate documents. In *Gucci Am., Inc. v. Ashley Reed Trading, Inc.*, No. 00 CV 6041(RCC), 2003 WL 22327162, at *3 (S.D. N.Y. Oct. 10, 2003), while the Rule 30(b)(6) witness had no personal knowledge, the issue of whether the Rule 30(b)(6) witness had obtained knowledge from corporate employees and/or documents does not appear to have been raised. Here, neither witness indicated that he or she spoke to individuals with knowledge of the salient facts from the operative time frame. Finally, in *United States v. J.M. Taylor*, 166 F.R.D. 356 (M.D.N.C.), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996), the question pertained to the duty of a corporation to adequately prepare its Rule 30(b)(6) witness. Notably, the Court stated that "[i]f the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation." *See id.* at 361. Here, neither Ms. Rogers nor Mr. Claxton was adequately prepared. As discussed above, Ms. Rogers spoke only to Mr. Claxton and some unspecified person or persons from the Events department. Mr. Claxton spoke only to Ms. Rogers and

IMechE's attorney. (*See* Schneider Decl., Ex. 5 at 38). In short, neither witness was competent to testify regarding the activities in the early 1990s. Accepting the unsupported testimony of these witnesses simply because they were corporate designee would be grossly unfair and prejudicial to BorgWarner.

**B.    There Is No Evidence That the Butterfield Paper Was Publicly Accessible on September 24, 1991.**

Hitachi's argues that the Butterfield paper became publicly accessible on September 24, 1991, when it was presented and allegedly handed out at a technical seminar sponsored by IMechE. However, there is no evidence that the Butterfield paper was handed out at the seminar. In fact, Phil Mott -- the BorgWarner employee who presented the paper and the *only* person deposed who was actually present at the seminar -- clearly testified it was not:

> Q.    Mr. Mott, do you know whether there were any handouts given at the IMechE conference on your presentation?
>
> A.    I'm quite sure there wouldn't be.
>
> *        *        *
>
> Q.    And you're saying that you have absolutely no recollection of handouts of the article at the presentation?
>
> A.    I don't recall us ever giving handouts at a presentation so it – it would be unusual if we did.
>
> Q.    Do you recall IMechE or someone from IMechE giving handouts of either the presentation or the article or some form of the article at the presentation?
>
> A.    No, I don't.

(Schneider Decl., Ex. 9 at 249-50). Hitachi accused BorgWarner of "misquoting" this testimony. (*See* Hitachi Opp. Br. at 21). However, the cited pages of the transcript were submitted with

BorgWarner's opening brief and the Court can see for itself that this quote is accurate. Hitachi's false accusations serve only to highlight the compelling nature of this testimony.

Ignoring this testimony, Hitachi instead relies on the testimony of Ms. Rogers concerning a general practice of distributing papers. (*See* Hitachi Opp. Br. at 6-7). This testimony is seriously deficient and cannot defeat summary judgment. Ms. Rogers was not even employed by IMechE during the relevant time period and has no first-hand knowledge regarding any activities during that time period. (BorgWarner Opening Br. at 4). Furthermore, her testimony regarding distribution of papers was not focused on any particular time period. Hitachi's counsel, in response to an objection, clarified that he was "just talking generally right now. I haven't gotten into a timeframe yet." (Schneider Decl., Ex. 4 at 49-50).[3] Hitachi simply ignored this fact in its opposition brief. Thus, there is no testimony that, in the 1991 timeframe, papers were distributed to attendees. Even more importantly, there is no testimony that the Butterfield paper itself was distributed to attendees.[4] This fact is dispositive. *See Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1330 (Fed. Cir. 2004) ("Although there was testimony that it was the general practice at IADR meetings for presenters to hand out abstracts to interested

---

[3] These facts render this case distinguishable from *In re Hall*, in which the Court agreed that submitted declarations were "competent" to show a general library practice and no evidence was presented in rebuttal. *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986). Testimony of the sort submitted by Hitachi is insufficient to prove a general practice or procedure. *See, e.g., Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, No. 95-218-SLR, 1998 WL 151411, at *38 (D. Del. Mar. 13, 1998) (holding that thesis was not prior art where witness had no first-hand knowledge of procedures and was not present during relevant time period), *aff'd*, 228 F.3d 1338 (Fed. Cir. 2000).

[4] Hitachi cites *TypeRight Keyboard* for the proposition that summary judgment should be denied. However, in that case, the opposing party offered "specific facts that call[ed] into question the credibility of the movant's witnesses." *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1158 (Fed. Cir. 2004). No such "specific facts" exist here.

attendees, the lack of substantial evidence of actual availability of the Abstract adequately supports the court's conclusion that dissemination of the Abstract was not established.").[5]

        Hitachi also suggests that the mere fact that Mr. Mott presented at the conference somehow renders the Butterfield paper prior art.  Yet, it is black-letter law that a presentation *per se* in a foreign country is not prior art:

> It is to be noted that a "printed publication" may be an effective bar to the granting of a patent if it is "in this or a foreign country."  35 U.S.C. 102(a), (b).  For knowledge or use of the invention to be a statutory bar, however, it must be "in this country."  35 U.S.C. 102(a). ...  Bearing in mind the basic nature of the patent grant, as heretofore discussed, it becomes readily evident that what Congress was concerned with, both in 1836 and 1952, was the *probability* that the subject matter would be made known to the American public.  Knowledge and use in the United States would *probably* (or so Congress must have reasoned) come to the attention of the American people whereas the same probability would not be present with respect to such knowledge and use abroad.

*In re Tenney*, 254 F.2d 619, 626 (CCPA 1958) (emphasis added).[6]  Similarly, the mere fact that the seminar was advertised -- in a manner that did not even mention the BorgWarner presentation -- cannot somehow render the Butterfield paper a printed publication.  Hitachi relies

---

[5]  Hitachi suggests at page six of its opposition brief that transmission of the paper to IMechE somehow renders the Butterfield paper a printed publication.  Notably, Hitachi cites no evidence establishing when the final paper was provided to IMechE.  Moreover, the date a paper becomes a printed publication is not the date on which it was submitted to a publisher for publication but, rather, the date on which it becomes publicly accessible.  *See, e.g., Bergstrom v. Sears, Roebuck & Co.*, 457 F. Supp. 213, 223 (D. Minn. 1978) (noting that the critical moment is when a paper becomes accessible to the public and that it "does not occur when the library staff gains possession of the thesis."), *aff'd*, 599 F.2d 62 (Fed. Cir. 1979).  Indeed, although Hitachi argues that BorgWarner had no expectation of secrecy when it provided the paper to IMechE, Mr. Butterfield's actual testimony is "I don't have any specific recollection of what we thought at the time but most likely if it was going to be *published* in a form like that, we would expect it to be public knowledge." (Hitachi Ex. 16 at 137-38) (emphasis added).

[6]  Upon its creation, the Federal Circuit announced that it would adopt as precedent the decisions of its predecessor courts, the Court of Customs and Patent Appeals and the Court of Claims. *South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982).

on the *MIT* case to argue that a jury could conclude that the paper was distributed at the conference, but that reliance is misplaced. In that case, the evidence established that the paper discussed at the seminar was actually distributed to no less than six persons prior to the critical date. *See Massachusetts Inst. of Tech. v. AB Fortia*, 774 F.2d 1104, 1108-09 (Fed. Cir. 1985) ("Afterward, copies were distributed on request, without any restrictions, to as many as six persons, more than one year before the filing date."). No such evidence exists here.

Hitachi also argues that the use of slides at the seminar somehow turned the Butterfield paper into a printed publication. Hitachi does not contend that the slides themselves are a printed publication and submitted only an outline of slides, not the actual slides. (*See* Hitachi Ex. 7). In any event, Hitachi has cited no cases in which the fleeting presentation of *slides* somehow turned a *paper* into a printed publication.

Even those cases in which the slides themselves were held to constitute a printed publication are readily distinguishable. For example, in *In re Klopfenstein*, 380 F.3d 1345 (Fed. Cir. 2004), relied on by Hitachi, a presentation consisting of 14 slides was pasted onto poster boards that were continuously displayed for two and a half days at an industry meeting and part of a day at another meeting. *See id.* at 1347. The Federal Circuit noted that the "duration of the display is important in determining the opportunity of the public in capturing, processing and retaining the information conveyed by the reference. The more transient the display, the less likely it is to be considered a 'printed publication.'" *See id.* at 1350-51 (internal citations omitted). A presentation lasting approximately 30 minutes, such as the one at issue here, is simply insufficient to constitute a printed publication. *See Regents of Univ. of California v. Howmedica, Inc.*, 530 F. Supp. 846, 860 (D.N.J. 1981) (holding brief presentation of slides was not a printed publication; cited favorably in *Klopfenstein*), *aff'd*, 676 F.2d 687 (3d Cir. 1982).

C.    **There Is No Evidence That the Butterfield Paper Was Publicly Accessible on October 24, 1991.**

Hitachi alternatively contends that the Butterfield paper became publicly accessible "shortly after" October 24, 1991, the day it allegedly was received in the IMechE library. Hitachi bases this argument on its theories that the Butterfield paper was logically shelved, or placed on a card catalog, or placed on an electronic catalog shortly after receipt. Once again, the evidence belies Hitachi's assertion.

Hitachi argues that the fact that the Butterfield paper is currently "logically shelved" on the IMechE shelves renders the paper a printed publication.[7]  (Hitachi Opp. Br. at 21). Importantly, there is no testimony from anyone with personal knowledge or anyone who talked to somebody with personal knowledge regarding when the Butterfield paper was actually shelved. Ms. Rogers was not employed by IMechE in the 1991-1992 timeframe and Mr. Claxton's responsibilities at that time did not involve cataloging the seminar papers. (*See* BorgWarner Opening Br. at 4). Neither witness testified, even speculatively, as to the date that the book of proceedings containing the Butterfield paper was actually placed on the shelves. In fact, neither witness was even asked by Hitachi if he or she knew when the book of proceedings was placed on the shelves. Thus, even assuming shelving alone renders a paper a printed publication, there is no reliable testimony concerning the key question in this case -- when did the paper become accessible.

---

[7]    BorgWarner does not concede that the papers are logically grouped. The Butterfield paper is currently found under the letter "C" for camshaft, a word not even found in the title of the Butterfield paper. (*See* Schneider Decl., Ex. 5 at 30). And, while there may have been advertisements concerning the camshaft seminar, those advertisements did not mention BorgWarner. Indeed, as the quotes submitted by Hitachi demonstrate, the advertisements focused on "design and manufacture" and "performance requirements" of "belts and chains," not variable camshaft timing systems. (*See* Hitachi Opp. Br. at 5).

Furthermore, Hitachi has not cited a single case that supports the proposition that "logical" shelving alone renders a paper publicly accessible. For instance, in the *American Stock Exchange* case cited by Hitachi, there was some form of index and, perhaps even more importantly, the alleged prior art was located in a library "dedicated" to the subject matter at issue, thus rendering the "nature of that library's indexing system largely irrelevant." *Am. Stock Ex., LLC v. Mopex, Inc.*, 250 F. Supp. 2d 323, 330 (S.D.N.Y. 2003). The IMechE library is not so limited.[8] Likewise, in the *SRI* case, the inventor posted the article on an FTP site, and provided the FTP web address to other members of the interested community "specifically to inform colleagues of where they could find materials" on the relevant project. *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, -- F. Supp. 2d --, No. 04-1199 SLR, 2006 WL 2949142 at, *4 (D. Del. Oct. 17, 2006). The FTP site was commonly referenced by individuals on Google Groups, and to obtain the paper from the FTP site, one had only to choose between one of two folders and review the materials in a folder referred to by the project name. *Id.*, at *5. Given that the patents involved "complex computer software technology," a person of ordinary skill could have readily navigated through the two folders to find the paper. *See id.*

Hitachi also argues that the Butterfield paper was actually cataloged on a reference librarian card and in a computer database. With respect to the card catalog, Hitachi cites *no* evidence that the Butterfield paper was ever actually placed on such a card. Hitachi has not located a witness who recalls the card, has not located the actual card, has not located cards for any of the other papers presented at the same seminar, and elicited no testimony regarding the current location or existence of any such cards. Instead, Hitachi relies solely on the testimony of

---

[8] In 1991, IMechE hosted seminars on topics as varied as steam plants, automobile recycling, bulk materials in small containers, hazardous health substance regulations, fault and hazard analysis for nuclear plants, orthopedic implants, and major changes in railways. (*See* Supp. Schneider Decl., Exhibit 11).

Mr. Claxton regarding the general practice in an area for which he had no direct responsibility. And, even assuming Mr. Claxton's testimony on this point is admissible, the sum total of Mr. Claxton's testimony is that the index cards contained the title of the paper and the number of copies received by the library. (*See* Schneider Decl., Ex. 5 at 31-32). Mr. Claxton did not testify that this card was searchable, that it was used for searching, or, as Hitachi claims, that the librarian "would have had to look through a few index cards to identify" the paper or that the reference librarian had "a relatively few number of index cards." (Hitachi Opp. Br. at 12, 25).[9]

The evidence is likewise lacking with respect to the alleged cataloging in the CAIRS database. Hitachi relies heavily on a computer screen shot and even reproduces a portion of that screen shot in its brief. (*See* Hitachi Opp. Br. at 14). However, that screen shot is not even from the CAIRS database. The evidence is undisputed that the screen shot is actually from the current Olib database. (*See* Schneider Decl., Ex. 4 at 69, 76). In fact, it was printed out only a week or so before Ms. Rogers' deposition earlier this year. (*See* Schneider Decl., Ex. 4 at 95). Furthermore, Hitachi once again misrepresents the testimony regarding this screen shot. Hitachi reproduces only a single page of the screen shot and argues that the entry "Publication" means that the article was published in 1991. (Hitachi Opp. Br. at 14). However, Hitachi's argument is not borne out by either the document itself or the testimony. BorgWarner submitted the entire screen shot with its opening brief. (*See* Schneider Decl., Ex. 10). That screen shot contains an entry captioned "Cat. Date." Assuming Ms. Rogers' testimony is admissible, Ms. Rogers testified that the "Cat. Date" would be "the date that it would have been entered on the [CAIRS]

---

[9]    Hitachi cites Mr. Claxton's testimony at 19-25 for the proposition that the camshaft seminar booklet was available to interested members of the public. (Hitachi Opp. Br. at 13). However, that testimony discusses only who had access to materials in the library; it is silent on whether the camshaft seminar papers were available. (*See* Schneider Decl., Ex. 5 at 19-25).

system." (Schneider Decl., Ex. 4 at 70).[10]  Furthermore, the screen shot lists a "PD" of January 1, 1991.  (*See* Schneider Decl., Ex. 10).  There can be no question that the form does not accurately state the publication date, as the seminar did not even occur until September 1991.  In short, there is no evidence upon which a jury could reasonably conclude that the Butterfield paper was cataloged in 1991.

> **D.    There Is No Evidence That the Butterfield Paper Was Publicly Accessible on September 17, 1992.**

Hitachi's third alternative theory is that the Butterfield paper became publicly accessible on September 17, 1992, which Hitachi contends is the latest possible date the article was entered into a searchable computer database.  This argument is premised on a screen shot from IMechE's current computer database and, as BorgWarner explained in its opening brief at pages 14-17, the screen shot is inadmissible.

Hitachi does not deny that the print out is hearsay and inadmissible unless it falls within an exception to the hearsay rules.  *See Hilgraeve, Inc. v. Symantec Corp.*, 271 F. Supp. 2d 964, 974-75 (S.D. Mich. 2003).  Hitachi claims the screen shot falls within the business records exception.  The screen shot is indisputably from the Olib database, *not* from the CAIRS database.  (*See, e.g.*, Schneider Decl., Ex. 4 at 76).  Yet, Hitachi addresses the business records requirements as if the screen shot were from CAIRS, and then misleadingly intermingles testimony about both CAIRS and Olib to make its points.  For example, Hitachi admits that it is required to show that the information on the screen shot was "made by a declarant with

---

[10]  Hitachi points to later testimony from Ms. Rogers that the "Cat Date" might refer to the date of modification of the CAIRS entry and argues that this creates an issue of fact for the jury.  (*See* Hitachi Opp. Br. at 15 n.9).  However, there is no evidence that the entry for this paper was ever modified, nor is there even a hint that there was a need or basis for modifying the entry.  And, the "Authority Control Details" portion of the screen shot, which contains fields such as "Correction," "Amend.," and "Last Changed," does not show any such modifications.  (Schneider Decl., Ex. 10).  Hitachi is grasping at straws.

knowledge sufficient to accurately input data on the Butterfield Article into CAIRS." (Hitachi Opp. Br. at 25). But, Mr. Claxton testified that it was "impossible to say" who actually input the data into CAIRS. (Schneider Decl., Ex. 5 at 39). Hitachi alternatively relies on the fact that Ms. Rogers transferred information from CAIRS to Olib, (Hitachi Opp. Br. at 26), even though Ms. Rogers had no personal knowledge regarding the date of publication of the Butterfield article -- she was not even employed by IMechE until 2000. (Schneider Decl., Ex. 4 at 9).

Hitachi also argues that the requirement that the information must be entered into the database contemporaneously is met because the date on the database record was allegedly automatically generated by the CAIRS system. (Hitachi Opp. Br. at 25-26). However, the date that is automatically filled in according to the CAIRS instructions is the "Entry/mod date" in the CAIRS database. (Hitachi Ex. 11 at HIT 0445513). The screen shot is from the Olib database and does not even contain an entry captioned "Entry/mod date." (*See* Schneider Decl., Ex. 10).

Similarly, the screen shot is inadmissible under Federal Rule of Evidence 1002. Hitachi relies upon Federal Rule of Evidence 1001(3) which states that "[i]f data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.'" BorgWarner does not contest that, if shown to reflect the data accurately, the screen shot from the Olib database would constitute an original of the Olib database. That, however, is beside the point. The Olib database did not exist in the relevant time frame (*see* Schneider Decl., Ex. 4 at 76), and a screen shot from the Olib database cannot constitute an original of the CAIRS database.

Hitachi tries to create the impression that the transfer of information from one database to another is akin to moving a paper from one file to another. Hitachi is seriously mistaken. When a paper document is moved, nothing is added, deleted, or modified. Here, an

15

individual had to manually transfer the information -- an activity which could have easily resulted in errors or omissions with one simple keystroke. Hitachi has presented no evidence showing how the data was transferred from one database to the other, no evidence to show that the transfer process contained sufficient checks and balances to ensure accuracy, and no evidence that the Olib database accurately reflects the CAIRS database. In fact, as pointed out in BorgWarner's opening brief, the evidence demonstrates that the information on the screen shot appears to be incomplete and/or inaccurate. (*See* BorgWarner Opening Br. at 8-9). Hitachi fails to even address these arguments, and that failure is telling.

Finally, Hitachi argues that whether a party has offered sufficient evidence to prove the contents of lost or destroyed evidence is a question for the jury. However, in this case, Hitachi has introduced absolutely no evidence that the original is lost or destroyed. Hitachi did not even ask whether IMechE maintained back-up tapes of its old CAIRS database. There is thus no question for the jury.

### E.    Hitachi's "Publicity" Argument Is Misplaced.

Running throughout Hitachi's brief is the theme that, because BorgWarner allegedly sought publicity for its VCT system, the Butterfield paper *must* constitute prior art. Of course, the law is not so simple. One can easily imagine a situation in which an entity seeks publicity, drafts an article, and submits it for publication, yet the article is never published. Intent alone cannot turn something that is not a printed publication into a printed publication. This is explained in *In re Wyer*:[11]

> "While intent to make public, activity in disseminating information, production of a certain number of copies, and

---

[11]    Hitachi cites two cases in support of its intent argument. (*See* Hitachi Opp. Br. at 19 n.11). Both of these cases cite to *In re Wyer. See SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, -- F. Supp. 2d --, No. 04-1199 SLR, 2006 WL 2949142, at *6 (D. Del. Oct. 17, 2006); *Am. Stock Exch., LLC v. Mopex, Inc.*, 250 F. Supp. 2d 323, 330 n.14 (S.D.N.Y. 2003).

> production by a method allowing production of a large number of copies may aid in determining whether an item may be termed a 'printed publication,' they are neither always conclusive nor requisite. Each case must be decided on the basis of its own facts. Accordingly, . . . the one who wishes to characterize the information, in whatever form it may be, as a 'printed publication' . . . should produce sufficient proof of its dissemination or that it has otherwise been available and accessible to persons concerned with the art to which the document relates and thus most likely to avail themselves of its contents."

655 F.2d 221, 227 (CCPA 1981) (internal citations omitted) (ellipses in original and added).

Hitachi has not presented sufficient proof of the dissemination or accessibility of the Butterfield paper, and intent alone cannot get Hitachi over this hurdle.

Moreover, Hitachi blatantly misstates the testimony to create this argument. Although Roger Butterfield did testify that there was a desire for publicity for VCT, Hitachi is well aware that BorgWarner has multiple VCT technologies[12] and there is no testimony that BorgWarner desired publicity for any inventions not yet covered by a patent application. In fact, the evidence shows just the opposite. Mr. Butterfield's testimony is perfectly clear on this point:

> Q.    Why did you not want to discuss alternate control mechanisms?
>
> A.    Most likely because this was going to be a public presentation and many of the aspects of alternate control mechanisms had not yet been filed for patents, so we did not want to make any public disclosure relating to that.

(Hitachi Ex. 16 at 137). Thus, as Mr. Mott explained, the "focus of the talk was to get across what we thought was this revolutionary concept of using, harnessing the cam energy to actuate the device." (Supp. Schneider Decl., Ex. 12 at 220). As has been adequately explained in other papers, the focus of the patent-in-suit is not cam torque actuation.

---

[12]    Indeed, in its various summary judgment papers, Hitachi has repeatedly discussed both cam torque actuated CTA and oil pressure actuated CTA.

**F.    Whether Melchior Obtained a Copy Is Irrelevant.**

Hitachi devotes several pages to the argument that an individual by the name of Melchior apparently obtained a copy of the Butterfield paper prior to a deposition which occurred in August 1993. This fact has no bearing on the present dispute. As BorgWarner noted in its opening brief, BorgWarner does not contend that the Butterfield paper was never published. The operative question is precisely *when* the Butterfield paper was published. The deposition in the Melchior interference occurred in August 1993, months too late to qualify as prior art under 102(a) and a year and a half too late to qualify as prior art under 102(b).

Hitachi also asks this Court to draw an adverse inference that Melchior's testimony would be unfavorable to BorgWarner. (*See* Hitachi Opp. Br. at 15-16 n.10). Hitachi premises this request on an email suggesting that Hitachi contacted Mr. Melchior seeking information from him and that Mr. Melchior declined to assist Hitachi, allegedly in light of a license agreement with BorgWarner. (*See* Hitachi Ex. 20). BorgWarner was not even aware that Mr. Melchior had been contacted until receiving Hitachi's brief and in no way precluded Mr. Melchior from answering Hitachi's question. The bottom line is that Hitachi attempted to obtain informal discovery from an independent third-party witness residing in France, and that witness declined to assist. There is no basis for an adverse inference under these circumstances and the case cited by Hitachi does not hold otherwise. *See A.B. Dick Co. v. Burroughs Corp.*, 798 F.2d 1392, 1400 n.9 (Fed. Cir. 1986) ("An unfavorable inference may not be drawn from the lack of testimony by one who is equally available to be called by either party."). If Hitachi truly thought Mr. Melchior's testimony would be helpful to its case -- an assumption called into doubt by the fact that there is no reason to believe Mr. Melchior obtained the Butterfield paper early enough to constitute prior art -- Hitachi should have sought formal discovery from Mr. Melchior.

## II.    BORGWARNER'S MOTION IS APPROPRIATE UNDER RULE 56.

Hitachi asserts that BorgWarner's motion for summary judgment is inappropriate because it relates to one issue concerning Hitachi's invalidity defense, not Hitachi's entire invalidity defense. Hitachi's position is illogical. Federal Rule of Civil Procedure 56 specifically authorizes a defendant to seek summary judgment on any "claim, counterclaim, or cross-claim." Hitachi has asserted a claim that the Butterfield paper renders the asserted claims of the patent-in-suit invalid, and BorgWarner is entitled to seek summary judgment on that claim. While the cases cited by Hitachi may stand for the proposition that a single *issue* is not resolvable on summary judgment, they in no way stand for the proposition that the issue of whether a particular reference does not render the claims invalid is not resolvable on summary judgment. Indeed, not a single one of Hitachi's cases even involves patent invalidity.

Hitachi's position is also illogical. Hitachi effectively asks this Court to rule that a motion for summary judgment of no invalidity is never proper unless that motion addresses each and every prior art reference asserted by the accused infringer.[13] That, of course, cannot be the law, and is not the law.[14] This is evidenced by the cases in which such motions were decided, both in this jurisdiction and elsewhere. *See, e.g., Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.*, 315 F. Supp. 2d 589, 602-606 (D. Del. 2004) (Robinson, J.), *aff'd*, 140 Fed. Appx. 236, 245

---

[13]  In this case, Hitachi has asserted over 200 references. (*See* Supp. Schneider Decl. at Ex. 13 at 4-10).

[14]  Even if it were the law, which BorgWarner disputes, Hitachi ignores the fact that, under Rule 56(d), a court "shall if practicable ascertain what material facts exist without substantial controversy" and may make an order "specifying the facts that appear without substantial controversy." Fed. R. Civ. P. 56(d). This Rule "imposes a duty on a court that does not fully adjudicate a case on a motion for summary judgment to make an order formulating the issues for trial, to the extent practicable." *Connelly v. Wolf, Block, Schorr & Solis-Cohen*, 463 F. Supp. 914, 919-20 (E.D. Pa. 1978) *citing Associated Hardware Supply Co. v. Big Wheel Distrib. Co.*, 355 F.2d 114, 119-20 (3d Cir. 1965) (empowering the district court to "determine which issues involve disputed facts and those which do not.")). Thus, the Court should nevertheless enter an order that the Butterfield paper is not prior art.

(Fed. Cir. 2005) (holding that claims were not anticipated by one reference and finding a question of fact with respect to another reference); *Scimed Life Sys., Inc. v. Johnson & Johnson*, No. Civ. A. 99-904-SLR, 2001 WL 935623, at *1 (D. Del. August 15, 2001) (Robinson, J.) (granting motion for summary judgment that certain stent designs are not prior art and granting separate motion that asserted claims were not anticipated by another prior art reference); *Neutrino Dev. Corp. v. Sonosite, Inc.*, No. Civ. A. H-01-2484, 2005 WL 2121558, at *9 (S.D. Tex. Aug. 31, 2005) (deciding motion for partial summary judgment of no invalidity based on two references); *AMP, Inc. v. Fujitsu Microelecs., Inc.*, 853 F. Supp. 808, 816 (M.D. Pa. 1994) (granting summary judgment that one of several asserted prior art references did not constitute public use or sale).

## III.    CONCLUSION.

For the foregoing reasons, BorgWarner respectfully requests that this Court grant summary judgment that the Butterfield paper is not a prior art reference as to BorgWarner's '738 patent under either 35 U.S.C. § 102(a) or 102(b).  In the event the Court rules that the screen shot is admissible, BorgWarner requests that the Court rule that the earliest possible date on which the Butterfield paper became publicly available is September 17, 1992, thus precluding the Butterfield paper from being prior art under 35 U.S.C. § 102(b).

Dated:  December 21, 2006

_____
Richard K. Herrmann (I.D. #405)
Lewis H. Lazarus (I.D. #2374)
Mary B. Matterer (I.D. #2696)
Morris James Hitchens & Williams LLP
500 Delaware Avenue, Ste. 1500
Wilmington, DE 19899
(302) 888-6800

Hugh A. Abrams *(pro hac vice)*
Thomas D. Rein *(pro hac vice)*
Lisa A. Schneider *(pro hac vice)*
Paul E. Veith *(pro hac vice)*
Marc A. Cavan *(pro hac vice)*
Stephanie P. Koh *(pro hac vice)*
Lara V. Hirshfeld *(pro hac vice)*
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for BorgWarner Inc., and
BorgWarner Morse Tec Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of December, 2006, I electronically filed the foregoing document, **BORGWARNER'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT THAT THE BUTTERFIELD PAPER SUBMITTED TO IMECHE DOES NOT CONSTITUTE PRIOR ART UNDER 35 U.S.C. §§ 102(a) Or 102(b)** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Steven J. Balick, Esq.
John G. Day, Esq.
ASHBY & GEDDES
222 Delaware Avenue, 17th Floor
Wilmington, DE  19801

Additionally, I hereby certify that on the 19th day of December, 2006, the foregoing document was served via email on the following non-registered participants:

Michael D. Kaminski, Esq.
Liane Peterson, Esq.
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C.  20007-5109
mkaminski@foley.com
lpeterson@foley.com

                    */s/ Richard K. Herrmann*
MARY B. MATTERER (I.D.#2696)
MORRIS, JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
302.888.6800
mmatterer@morrisjames.com

Attorneys for Defendants and Counterclaimant,
BORGWARNER INC., and
BORGWARNER MORSE TEC INC.